Robert P. Goe - State Bar No. 137019
Donald W. Reid – State Bar No. 281743
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612
rgoe@goeforlaw.com
elarocque@goeforlaw.com
dreid@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for Mega RV Corp.,
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MEGA RV CORP., a California Corporation; d/b/a McMahon's RV; d/b/a McMahon's RV Irvine; d/b/a McMahon's RV Colton; d/b/a McMahon's RV Palm Desert,<br><br>            Debtor and Debtor-in-Possession. | Case No. 8:14-bk-13770-MW<br>Chapter 11 Proceeding<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING:**<br>**(1) SALE OF FIXED AND PERSONAL PROPERTY ASSETS LOCATED AT WESTMINSTER AND COLTON LOCATIONS;**<br>**(2) SALE OF ROLLING STOCK LOCATED AT COLTON LOCATION;**<br>**(3) SALE OF FRANCHISE RIGHTS;**<br>**(4) SALE OF GOODWILL AND OTHER INTANGIBLE ASSETS;**<br>**(5) SALE OF USED INVENTORY FOR ADDITIONAL CONSIDERATION; AND**<br>**(6) SETTING BID PROCEDURES**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF J. MICHAEL ISSA, ROBERT P. GOE, & BRIAN L. DAVIDOFF IN SUPPORT THEREOF**<br><br>[Application for Order Shortening Time Concurrently Filed]<br>Date:       TBD<br>Time:       TBD<br>Place:     411 West Fourth Street<br>             Courtroom 6C<br>             Santa Ana, CA 92701 |

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND TO ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that MEGA RV CORP., a California corporation, dba McMahon's RV; dba McMahon's RV Irvine; dba McMahon's RV Colton; and dba McMahon's RV Palm Desert ("Debtor"), a California corporation, hereby respectfully moves the Court for an Order approving, pursuant to 11 U.S.C. § § 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code"), the Asset Purchase and Sale Agreement ("APA"), dated February 10, 2015, and entered into by the Debtor and Dennis Dillon RV and Marine Center ("Buyer"), for (1) the sale free and clear of all liens, claims and encumbrances[1] ("Sale") of the following property (collectively referred to as the "Assets") for the purchase price of $235,000.00 ("Purchase Price"): (a) the Debtor's interest in fixed and personal property, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures located at 5400 Garden Grove Blvd, Westminster, CA 92683 ("Westminster Location") and 1313 RV Center Drive, Colton, CA 92324 ("Colton Location") (collectively, "FF&E")[2], (b) the Debtor's interests in all trucks, cars, trailers, fork lifts, and other equipment with wheels (but excluding Used Inventory as defined below) located at the Colton Location (collectively, "Rolling Stock"), (c) the Debtor's interests in all Franchise Agreements[3] ("Franchise Rights")[4], including those between the Debtor and Winnebago, Forest River, Thor, Eclipse,

---

[1] With the sole exception of the personal property lien in favor of Reyna Capital Corporation (discussed below).

[2] The FF&E located at the Westminster Location (which was previously abandoned by the Debtor on December 18, 2014) shall be herein referred to as the "Westminster FF&E" and the FF&E located at the Colton Location (that is owned by the Debtor and which has not been abandoned) shall be herein referred to as the "Colton FF&E." As discussed below, the Debtor is selling, at the request of the Buyer, whatever (if any) residual interest that the Debtor may have in the abandoned Westminster FF&E. Also, please note that there is additional FF&E located at the Colton Location that is not owned by the Debtor and not being sold in this Sale.

[3] The term "Franchise Agreements" shall refer to all Dealership Sales and Services Agreements entered into by the Debtor and the Manufacturers. The more general use of the term "franchise agreements" shall refer to any dealership sales and service agreement entered into between a dealership and a manufacturer.

[4] The Debtor's Franchise Rights include, among other things, the Debtor's exclusive right to sell the Manufacturers' new inventory in a dedicated geographic region. The Sale contemplates that the Buyer will enter into new franchise agreements with each of the Manufacturers. However, by selling its Franchise Rights, the Debtor is selling, among other things, the forbearance of its right to exercise its Franchise Rights to oppose any new franchise agreements entered into between the Buyer and the Manufacturers that would have otherwise violated the Debtor's Franchise Rights and a release of any and all claims that would have arisen from such violations of the Debtor's Franchise Rights, but only as to those Manufacturers who have entered into new franchise agreements with the Buyer.

Monaco, and Holiday Rambler (collectively, the "Manufacturers"), (d) the Debtor's goodwill and other intangible assets including but not limited to business name and logo, telephone and fax numbers, customer lists including mailing lists and email lists, vehicle and sales records, all internet domains, website code and databases for www.mcmahonrv.com, all digital media files including video, pictures, copy and content relating to or owned by the Debtor, and all social media accounts (collectively, "Intangible Assets"), and (e) certain units of the Debtor's used RV Inventory on an optional and non-obligatory per-unit-basis for consideration separate and in addition to the Purchase Price ("Used Inventory"); and (2) setting bid procedures in the event that there is more than one interested bidder, all as described herein and in the attached Memorandum of Points and Authorities ("Motion"). Attached in support of the Motion are the Declarations of J. Michael Issa ("Issa Declaration"), Robert P. Goe ("Goe Declaration"), and Brian L. Davidoff ("Davidoff Declaration").

The Debtor, in an exercise of its reasonable business judgment, has determined and believes that the Sale of the Assets (all as more specifically described in the APA) for the amount of $235,000 plus additional consideration for any purchased Used Inventory (as defined in the APA) is in the best interests of the Debtor's estate and its creditors. The following table is a summary of the basic terms of the APA, which are further discussed in the Memorandum of Points and Authorities. The terms of the APA control in the event of any inconsistency with this summary. A true and correct copy of the APA is attached to the Issa Declaration as **Exhibit "1"**.

| Sale Price: | $235,000.00 plus the purchase price for any Used Inventory |
|---|---|
| Good Faith Deposit: | $50,000.00 |
| Representations/Warranties: | None. The Assets shall be sold on an as-is, where-is basis and without representations or warranties of any kind, nature or description by the Debtor, except to the extent expressly set forth in the APA. |
| Closing Date: | Estimated March 15, 2015 |
| Buyer's Closing Contingencies: | The Buyer's contingencies to closing include:<br><br>**1. Manufacturer Approval**: Buyer's offer is subject to |

the Manufacturers' approval of Buyer and issuance of new franchise agreements for a dealership at the Westminster Location on terms and conditions agreeable to Buyer in its sole and absolute discretion.

**2. Flooring Financing**: Buyer's offer is subject to Buyer securing floor financing lines (on terms agreeable to Buyer in its sole and absolute discretion) for new and used RV inventories which meets the requirements of the Manufacturers.

**3. Due Diligence**: Buyer's offer is subject to Buyer's due diligence review of the Debtor's information, data and materials, and failing Buyer's review and approval of same, Buyer may elect to terminate the transaction.

**4. Real Property**: The Buyer's offer is subject to Buyer entering a new lease or purchase agreement with Old Ranch for the Westminster Location on terms and conditions acceptable to Buyer in its sole and absolute discretion.

**5. Court Approval**: The Buyer's offer is subject to the U.S. Bankruptcy Court's approval of this transaction.

**PLEASE TAKE FURTHER NOTICE** that in the event that there is more than one interested bidder other than the Buyer that submits a qualified bid, then the Debtor will conduct an auction at the time of the hearing on this Motion, in accordance with the procedures set forth in Memorandum of Points and Authorities.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests the Court make a finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m). The Debtor does not have any prior relation to Buyer and the APA represents an arms-length transaction between the parties.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the Court waive the 14-day stay as set forth in Bankruptcy Rule 6004(h).

**PLEASE TAKE FURTHER NOTICE** that the Debtor is concurrently filing an application for an order setting a hearing on this Motion on shortened notice. A supplemental notice will be served upon all interested parties as to the deadline to file an opposition or response to this Motion.

DATED: February 3, 2015

**GOE & FORSYTHE, LLP**

By: /s/Robert P. Goe
    Robert P. Goe, Counsel for Debtor and
    Debtor-in-Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

After months of marketing by its financial advisor, J. Michael Issa of GlassRatner Advisory & Capital Group, LLC and Brent McMahon, president of the Debtor, the Debtor has reached an agreement to sell the Assets to the Buyer for the amount of $235,000, plus any additional consideration agreed upon for any Used Inventory sold (on a per-unit and discretionary basis).  The Sale, as contemplated in the APA, includes the Debtor's FF&E, Rolling Stock, Franchise Rights, Intangible Assets, and Used Inventory (collectively, the "Assets"), on an as-is and where-is basis, for the intended purpose of allowing Buyer an opportunity to quickly and efficiently reopen an RV dealership business at the Westminster Location.   The APA contemplates and is contingent upon Buyer entering into new and separate franchise agreements with the Manufacturers, as well as obtaining a floor financing credit facility, negotiating a lease for the continued use and occupation of the Westminster Location, and concluding its due diligence.  The Debtor is informed that Buyer has completed a substantial amount of its due diligence, is negotiating terms on new franchise agreements with the Manufacturers, and has tentatively agreed to terms on a new lease for the Westminster Location.

The Debtor believes that the Sale set forth in the APA is in the best interests of the Debtor's bankruptcy estate and its creditors.  The Debtor, in the exercise of its reasonable business judgment, believes that the sale price of $235,000 for the Assets, plus any additional consideration agreed upon for any Used Inventory sold, is fair and reasonable, especially considering that the Debtor's operations have ceased and it will be up to the Buyer to negotiate new agreements with Old Ranch and the Manufacturers.    Since the Petition Date, and despite the best marketing efforts of the Debtor, Mr. Issa and Mr. McMahon, only the Buyer has expressed interest in reopening a RV dealership at the Westminster Location and purchasing the Assets for the purposes of doing so.  The Debtor believes that the APA is the best deal that it will obtain for the Assets and therefore respectfully requests that the Sale be approved pursuant to 11 U.S.C. § 363(b) and (f), that the Buyer be found to be a good faith purchaser pursuant to 11 U.S.C. § 363(m), and that the 14-day stay of Bankruptcy Rule 6004(h) be waived.

## II.    STATEMENT OF FACTS

The Debtor was formed on December 12, 2000, and operated as McMahon's RV until April 2014.  Brent McMahon is the Debtor's CEO and 100% shareholder.  From 2000 until 2014, the Debtor sold and serviced new and used RVs throughout Southern California.  The flagship dealership and the Debtor's principal place of business was located at 5400 Garden Grove Blvd., Westminster, California 92683 ("Westminster Location").  The Debtor also operated satellite dealerships in other locations, including Colton and Palm Desert, prior to its bankruptcy filing.

The Debtor leased the Westminster Location from Old Ranch Properties, LLC ("Old Ranch"), pursuant to a *Ground Lease*, dated April 1, 2012 ("Westminster Lease").  At the Westminster Location, the Debtor sold new RVs pursuant to the Franchise Agreements with the Manufacturers.  The Debtor is not currently in physical possession of copies of all of the Franchise Agreements but is informed and believes that the Debtor has Franchise Agreements with each of the Manufacturers.  Examples of the Franchise Agreements are attached to the Issa Declaration as **Exhibit "2"**.  The Debtor's Franchise Rights, particularly the exclusive right to sell the Manufacturer's new inventory in a dedicated geographic region, remain property of the Debtor's bankruptcy estate.  Any postpetition attempts by the Manufacturers to transfer the Debtor's exclusive Franchise Rights or grant new franchise rights to another dealership within the Debtor's exclusive geographic region are breaches of the Debtor's Franchise Agreements, violate the automatic stay, and are per se void.

In April 2014, GE Distribution Finance Corporation ("GE"), the Debtor's secured lender, swept all funds (approximately $5,063,756.74) from the Debtor's primary bank account, which left the Debtor with no funds to operate and forced the Debtor to cease operations.  On June 15, 2014, ("Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for chapter 11 relief.  The Debtor is currently liquidating its estate as a debtor-in-possession pursuant to 11 U.S.C. § 1107.  On July 3, 2014, the Committee of Unsecured Creditors ("Committee") was appointed.

1. Negotiations with GE

Shortly after the Petition Date, on June 26, 2014, GE moved for relief from stay to foreclose upon its collateral (including the Assets) [Docket No. 19], which was secured by a UCC Financing Statement encumbering all of the Debtor's personal property ("GE Lien"). According to GE, as of June 26, 2014, the outstanding balance secured by the GE Lien was at least $31,507,448.44, and the collateral secured by the GE Lien (including the Assets) was "at most $25,031,926." See Motion for Relief from the Automatic Stay, filed by GE on June 26, 2014 (BK Docket No. 19), at p. 8. The Debtor opposed GE's stay motion [Docket No. 42], arguing, among other things, that the Debtor held offsetting commercial tort claims against GE that needed to be adjudicated prior to granting GE relief from stay. Prior to a hearing on GE's stay motion on July 21, 2014, the Court issued a tentative ruling to deny GE's stay motion with a bar to refiling for 240 days. However, per a stipulation by the parties, the hearing on GE's stay motion was continued several times as the Debtor and GE negotiated a global agreement.

After several rounds of negotiation, including a formal mediation on October 13-14, 2014, the Debtor stipulated to grant GE relief from stay with respect to the new RV inventory ("New Inventory") that was purchased by the Debtor with financing from GE's credit facility. The stipulation ("Relief Stipulation") was executed by the Debtor, the Committee, and GE, and was approved by a court order entered on November 17, 2014 [Docket No. 303]. GE is applying the proceeds of the New Inventory to the outstanding amount of GE's claim against the Debtor. The Debtor is informed and believes that the GE Lien remains undersecured by millions of dollars.

Thereafter, the Debtor and GE continued negotiations as to the remaining issues between them and were ultimately successful in coming to terms on a compromise, which were memorialized in an *Agreement*, dated November 24, 2014 ("GE Agreement"). On November 24, 2014, the Debtor filed a motion to approve the GE Agreement [Docket No. 348], which was granted by the Court pursuant to an order entered on December 22, 2014 [Docket No. 398].

2. Negotiations with Old Ranch

The Debtor has also had extensive negotiations with Old Ranch, the lessor of the Westminster Location. On September 29, 2014, Old Ranch filed a motion to compel the Debtor's

abandonment of the Westminster Location for non-payment. The Debtor initially opposed the motion pending the outcome of its mediation with GE and requested a hearing. A hearing was set for November 19, 2014, by which time the Debtor had successfully mediated its disputes with GE and no longer opposed the motion. On November 24, 2014, an order was entered [Docket No. 347] compelling the Debtor to immediately turnover possession of the Westminster Location to Old Ranch, which the Debtor promptly did after GE moved the remainder of the New Inventory off the Westminster Location.

On December 11, 2014, Robert Goe, counsel for the Debtor, delivered a letter to Richard Golubow, counsel for Old Ranch, stating that the Westminster Lease was deemed rejected by operation of law.[5] The letter also surrendered and tendered, effective immediately, possession of the Westminster Location to Old Ranch, and requested confirmation that the Debtor could leave the Westminster FF&E at the Westminster Location free of charge pending ongoing negotiations between Buyer and Old Ranch as to the terms of a new lease agreement, and between Buyer and Debtor as to the sale of the Westminster FF&E. The letter requested further confirmation that if Buyer was unable to agree with Old Ranch as to terms on a new lease, or with Debtor as to the sale of the Westminster FF&E, then the Debtor could retrieve its Westminster FF&E. A true and correct copy of the letter Mr. Goe delivered to Mr. Golubow, dated December 11, 2014 is attached to the Goe Declaration as **Exhibit "3"**.

On December 16, 2014, Mr. Golubow responded by letter stating that Old Ranch had not agreed to let the Debtor to continue storing its Westminster FF&E at the Westminster Location free of charge pending the negotiations and arguing that the Debtor continued to incur administrative rent while its Westminster FF&E was stored at the Westminster Location. A true and correct copy of the letter Mr. Goe received from Mr. Golubow, dated December 16, 2014 is attached to the Goe Declaration as **Exhibit "4"**.

On December 18, 2014, Mr. Goe replied by letter stating that the Debtor immediately abandoned all of the Westminster FF&E located at the Westminster Location to Old Ranch and

---

[5] Pursuant to 11 U.S.C. § 365(d)(4), the Westminster Lease was deemed rejected on October 3, 2014.

that Old Ranch was immediately entitled to assume that all of the Westminster FF&E is abandoned. Accordingly, the Debtor has abandoned all interests in and rights to the Westminster FF&E. To the extent that the Debtor has any residual interests in the Westminster FF&E, the Debtor (at the request of the Buyer) has agreed to sell such interests to the Buyer pursuant to the APA. A true and correct copy of the letter Mr. Goe delivered to Mr. Golubow, dated December 18, 2014 is attached to the Goe Declaration as **Exhibit "5"**.

       3.   <u>Proposed Sale of the Debtor's Franchise Rights, FF&E, and Intangible Assets</u>

The Debtor has employed GlassRatner Advisory & Capital Group LLC ("GlassRatner"), as its financial advisor and investment banker [Docket No. 113]. Mr. J. Michael Issa, a principal of GlassRatner, and Mr. McMahon have spent months marketing the Assets to parties who have expressed interest in reopening an RV dealership at the Westminster Location. As a result of their efforts, the Debtor has found a prospective purchaser (Buyer) and has reached an agreement for the sale of the Assets.

The following table is a summary of the basic terms of the APA. The terms of the APA control in the event of any inconsistency with this summary.

| | |
|---|---|
| Sale Price: | $235,000.00 |
| Good Faith Deposit: | $50,000.00 |
| Assets to be Sold | a. <u>Westminster FF&E.</u> Buyer shall purchase all of the Debtor's residual interest, to the extent any such interest exists following the abandonment on December 18, 2014, in the personal property located at the Westminster Location, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures, parts and accessories, miscellaneous inventory and supplies, work in process and sublet repairs.<br><br>b. <u>Colton FF&E.</u> Buyer shall purchase all of the Debtor's personal property located at the Colton Location, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures, parts and accessories, miscellaneous inventory and supplies, work in process and sublet repairs.<br><br>c. <u>Rolling Stock.</u> Buyer shall purchase all of the Debtor's trucks, cars, trailers, fork lifts, and other equipment |

| | with wheels located at the Colton Location. |
|---|---|
| | **d.** <u>Franchise Rights.</u>  Buyer shall purchase the Debtor's interests in the Franchise Agreements, including the Debtor's exclusive right to sell the Manufacturers' new inventory in a dedicated geographic region, and the Debtor's forbearance to oppose or object to any new franchise agreement entered into between Buyer and the Manufacturers that would have otherwise violated the Debtor's Franchise Rights.  The Debtor shall retain and the Sale shall not include any claims and causes of action held by the Debtor that arise from the Franchise Agreements against those Manufacturers that do not enter into new franchise agreements with the Buyer.<br><br>**e.** <u>Goodwill, Covenant Not to Compete, and Other Intangible Assets.</u>  Buyer shall purchase the Debtor's goodwill and other intangible assets including but not limited to name, telephone and fax numbers, website domain name, sales customer lists and vehicle sales and service records.<br><br>**f.** <u>Used Inventory.</u>  Buyer may elect to purchase certain units of the Debtor's used RV inventory at the Colton Location on a per-unit basis for consideration separate and in addition to the Purchase Price.  In the event Buyer and Debtor cannot agree on a sale price for the Used Inventory, or that Debtor is not otherwise authorized to sell the Used Inventory, then those vehicles shall remain the property of the Debtor and Buyer shall not be obligated to purchase them nor shall Debtor be obligated to sell them. The Closing of the Sale shall not be conditioned or contingent on Buyer's purchase of any Used Inventory. |
| Representations/Warranties: | None.  The Assets shall be sold on an as-is, where-is basis and without representations or warranties of any kind, nature or description by the Debtor, except to the extent expressly set forth in the APA. |
| Closing Date: | Estimated March 15, 2015 |
| Buyer's Closing Contingencies: | The Buyer's contingencies to closing include:<br><br>**Manufacturer Approval**: Buyer's offer is subject to the Manufacturers' approval of Buyer and issuance of new franchise agreements for a dealership at the Westminster Location on terms and conditions agreeable to Buyer in its sole and absolute discretion.<br><br>**2. Flooring Financing**: Buyer's offer is subject to Buyer |

| | securing floor financing lines (on terms agreeable to Buyer in its sole and absolute discretion) for new and used RV inventories which meets the requirements of the Manufacturers. |
| | **3. Due Diligence**: Buyer's offer is subject to Buyer's due diligence review of the Debtor's information, data and materials, and failing Buyer's review and approval of same, Buyer may elect to terminate the transaction. |
| | **4. Real Property**: The Buyer's offer is subject to Buyer entering a new lease or purchase agreement with Old Ranch for the Westminster Location on terms and conditions acceptable to Buyer in its sole and absolute discretion. |
| | **5. Court Approval**: The Buyer's offer is subject to the U.S. Bankruptcy Court's approval of this transaction. |

4. <u>Overbidding</u>

The Debtor will continue to market the Assets for sale. The Debtor is seeking approval of the below bid procedures, which are subject to reasonable adjustment as may be required under the circumstances, by the Debtor in consultation with the Committee. The bid procedures are designed to ensure that there is a fair and expeditious process under which the Debtor can solicit bids for the sale and, if necessary, hold an auction thereon in a manner that will ensure that the Debtor's bankruptcy estate receives maximum value.

| Bid Procedures: | **1. Qualifications:** Each Bidding Party must submit to the Debtor: |
| | (a) A binding bid substantially similar to the APA, redlined to show changes, in an amount at least $10,000 more than the Purchase Price of Buyer. |
| | (b) Its Customer Service Index (CSI) statistics for its existing stores for the purpose of determining that such Bidding Party meets the Manufacturers' gating CSI requirements. |
| | (c) Proof of funds in advance of the auction for the purpose of demonstrating the financial ability of such Bidding Party to close if successful in winning the auction. |
| | (d) An earnest money deposit in the amount of $50,000 |

to the trust account of the Debtor's attorney together with submission of the binding bid. Deposit will be non-refundable once the due diligence contingencies are fulfilled.

(e) All bidders shall bear their own costs and expenses in connection with submission of bids, the auction, the sale process and preparation of those documents necessary to effectuate a transfer of title of the assets purchased.

**2. Subsequent Overbids**: $5,000.

**3. Bidding Deadline**: All bids and accompanying document are due no later than 3 business days before the court hearing.

**4. Participation:** The Debtor, in consultation with the Committee, will determine whether a party submitting a bid (a) has demonstrated the financial capacity to consummate the proposed purchase of assets, (b) is reasonably likely to consummate the contemplated transactions if selected as the buyer at the auction, (c) has obtained the consent of, or is reasonably likely to obtain the consent of, the Manufacturers to new Dealership Sale and Service Agreements, and (d) has, or is reasonably likely to, enter into a new lease or purchased agreement with Old Ranch for the Westminster Location; (e) has otherwise satisfied the requirements for a bid set forth above.

5. **Auction**: If the Debtor timely receives what the Debtor, in consultation with the Committee, determines to be a qualified bid from a bidder, the Debtor proposes that the auction be held in conjunction with the court hearing on this Motion.

5. Lienholders

The Committee has caused a third-party search to be conducted with the California Secretary of State for all active liens of record (including UCCs, Federal Tax Liens, State Tax Liens, and Judgments) against the Debtor ("Liens") and to identify the non-debtor parties named therein ("Lienholders"). A true and correct copy of the Committee's search results for active liens of record against the Debtor is attached to Davidoff Declaration as **Exhibit "6"**. The following summarizes the Liens in the order of their respective priority; however, please note that the Debtor does not currently physically possess the underlying security agreements and hereby expressly

reserves any and all right to contest the validity and extent of the Liens for any reason, including but not limited to the UCC financing statement being overbroad and not accurately describing the collateral as set forth in the underlying security agreement:

  *a. GE Commercial Distribution Finance Corporation (GE)*

  On April 26, 2006, GE recorded a UCC Financing Statement (Doc. No. 20067067960869) (the GE Lien).  A continuation statement was filed on December 8, 2010 (Doc. No. 201072536700) and an amendment was filed on March 30, 2012 (Doc. No. 201273068419). The GE Lien encumbers "all personal property of debtor, whether such property of debtor's right, title or interest therein or thereto is now owned or existing of hereafter acquired or arising, and wherever located …."  The Debtor believes that the GE Lien encumbers all Assets involved in the Sale and is undersecured by approximately $6,000,000.  See <u>Motion for Relief from the Automatic Stay</u>, filed by GE on June 26, 2014 (BK Docket No. 19), at p. 8.  As part of the GE Agreement, the required consent from GE was obtained as to the sale of the Assets free and clear of the GE Lien.

  *b. Southern California Auto Auction*

  On August 19, 2008, Southern California Auto Auction ("SCAA") recorded a UCC Financing Statement (Doc. No. 20087169280576) ("SCAA Lien").  A continuation statement was filed on May 10, 2013 (Doc. No. 201373599764).  The SCAA Lien encumbers "[a]ll motor vehicle inventory now or hereafter acquired by Debtor from [SCAA] (defined to include [SCAA] for itself and as agent for all direct and indirect subsidiaries of Manheim Auctions, Inc.), including the proceeds and products therefrom …."  The Debtor has reviewed its records and has found no indication that any of its Used Inventory was acquired by Debtor from SCAA or Manheim Auctions.  Accordingly, the Debtor believes that the SCAA does <u>not</u> encumber any of the Assets involved in the Sale.

  *c. Reyna Capital Corporation*

  On August 9, 2012, Reyna Capital Corporation ("Reyna") recorded a UCC Financing Statement (Doc. No. 20127324187025) ("Reyna Lien").  The Reyna Lien encumbers "all of Lessee/Debtor's right, title and interest, now owned or hereafter acquired, in and to any

Equipment and Software now or hereafter acquired and/or leased from [Reyna] …."  The Debtor believes that the Equipment and Software encumbered by the Reyna Lien is located as the Westminster Location and is categorized by this Motion as part of the Westminster FF&E.  Based upon the Debtor's abandonment of the Westminster FF&E, the Debtor believes that the Equipment and Software encumbered by the Reyna Lien is now owned by Old Ranch and remains subject to the Reyna Lien.  The Debtor provides no representation to the Buyer that the Sale is free and clear of the Reyna Lien.

>               *d.  HWH Corporation*

On October 9, 2012, HWH Corporation ("HWH") recorded a Notice of Judgment Lien (Doc. No. 20127332979831) ("HWH Lien").  The HWH Lien encumbers, pursuant to Cal. Code Civ. Proc. § 697.530, "all interests in the following personal property that are subject to enforcement of the money judgment against the judgment debtor … at the time when the lien is created if the personal property is, at that time, any of the following: (1) accounts receivable, (2) tangible chattel paper, (3) equipment, (4) farm products, (5) inventory, and (6) negotiable instruments."  The HWH Lien does not encumber the Used Inventory because, pursuant to California Vehicle Code § 6300, no security interest in any vehicle registered under the Vehicle Code is perfected unless the secured party has applied to the Department of Motor Vehicles (DMV) for an endorsed certificate of ownership which lists that lien.  Likewise, the HWH Lien does not encumber the Franchise Rights or Intangible Property because, pursuant to CCP § 697.530, a judgment lien does not encumber such intangible property.

The Debtor believes that the HWH Lien only encumbers the FF&E.  However, the HWH Lien is entirely valueless.  As noted above, on June 26, 2014, the claim and lien of GE was $31,507,448.44 and secured by collateral worth $25,031,926.  The GE Lien is senior to the HWH Lien.  Pursuant to section 506(a), the HWH Lien only attaches to the Debtor's interest in the FF&E and is an unsecured claim as to the balance.  Since the GE Lien exceeds the value of the FF&E, the claim of HWH is entirely unsecured.

/ / /

1

     *e.   American Express Bank, FSB*

2

     On August 1, 2013, American Express Bank, FSB ("AMEX") recorded a UCC Financing

3  Statement (Doc. No. 20137371981292) ("AMEX Lien"). The AMEX Lien encumbers "[a]ll

4  assets of the Debtor, whether now owned or hereafter acquired or arising." AMEX has not filed a

5  proof of claim in the Debtor's bankruptcy case. The Debtor scheduled AMEX as a general

6  unsecured creditor with a claim in the amount of $19,706.36. The Debtor does not believe that the

7  AMEX Lien encumbers any Assets involved in the Sale. However, to the extent that the AMEX

8  Lien does attach to the Assets involved in the Sale, the AMEX Lien is also fully undersecured for

9  the same reasons as the HWH Lien.

10

     *f.   Portfolio General Management Group, Inc.*

11

     On April 16, 2014, Portfolio General Management Group, Inc. ("PGMG") recorded two

12  UCC Financing Statements (Doc. Nos. 20147408013795 and 20147408014069) ("PGMG Liens").

13  The PGMG Liens encumber "1. Used Car Inventory – Equity value of Used Car Inventory owned

14  and controlled by the borrower that is in excess of any flooring or other lines of credit. 2. Current

15  and future Portfolio mechanical repair claim receivables. 3. Dealership Equity and Guarantee."

16  The Debtor is informed and believes that the PGMG Liens secure promissory notes that are dated

17  September 10, 2013. The Debtor further believes that the PGMG Liens were recorded within the

18  90-day period prior to the Petition Date, may be avoidable as preferential transfers and are

19  therefore subject to a bona fide dispute.

20

     6.  <u>Summary</u>

21

     The Debtor, in an exercise of its reasonable business judgment, has determined and

22  believes that the Sale of the Assets for the amount of $235,000 plus the purchase price for any

23  Used Inventory sold is in the best interests of the Debtor's estate and its creditors. The Debtor has

24  not received any better offers to purchase the Assets. The Debtor does not have any prior relation

25  to Buyer and the APA represents an arms-length transaction between the parties. Accordingly, the

26  Debtor herein moves for an order approving the sale of the assets free and clear of liens claims and

27  encumbrances pursuant to 11 U.S.C. § 363(b) and (f), finding that the Buyer is a good faith

28

purchaser pursuant to 11 U.S.C. § 363(m), and waiving the 14-day stay of Bankruptcy Rule 6004(h).

## III.    ARGUMENT

### A.    The Assets Are Property of the Estate

The Assets to be sold includes the Debtor's FF&E, Rolling Stock, Franchise Rights, and Intangible Assets.  As discussed above, the Westminster FF&E was abandoned to Old Ranch on December 18, 2014.  Accordingly, the Westminster FF&E is the property of Old Ranch and remains encumbered by the Reyna Lien.  In this Sale, the Debtor is selling whatever residual interests, if any, that the Debtor has in the Westminster FF&E following the abandonment.  The Debtor does not believe that it has any such interests in the Westminster FF&E because the abandonment was effective and enforceable.  Nonetheless, at the Buyer's request, the Debtor agrees to include in the Sale any and all interests in the Westminster FF&E that it has.  The Debtor still owns the Colton FF&E (which is substantially less valuable than the Westminster FF&E) and Rolling Stock.[6]  The Debtor will sell the Colton FF&E and Rolling Stock to the Buyer pursuant to the APA.

The Franchise Rights include the Debtor's interests in the Franchise Agreements that existed as of the Petition Date (June 15, 2014), including the exclusive right to sell the Manufacturers' new inventory in a dedicated geographic region.  The Debtor's Franchise Rights remain property of the Debtor's bankruptcy estate.  No Manufacturer validly terminated the Debtor's Franchise Rights prior to the Debtor's bankruptcy filing or obtained relief from the automatic stay, and the Debtor has not abandoned any of its Franchise Rights.  Any postpetition attempts by the Manufacturers to transfer, void, or otherwise violate the Debtor's Franchise Rights, including any attempt to transfer the Debtor's exclusive Franchise Rights to another dealership or grant new franchise rights to a separate dealer within the Debtor's exclusive geographic region, violate the automatic stay and are per se void under Ninth Circuit law.  See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1994) ("Our decision

---

[6] As discussed above, there is FF&E currently located at the Colton Location that is not owned by the Debtor.  That FF&E is not included in the definition of "Colton FF&E" and is not being sold in this Sale.

today clarifies this area of the law by making clear that violations of the automatic stay are void, not voidable.").  The APA is contingent upon the Buyer entering into new franchise agreements on terms acceptable to the Buyer, in its sole and complete discretion.  By selling the Franchise Rights, the Debtor has agreed to forbear its right assert its Franchise Rights in opposition to any new franchise agreement entered into between Buyer and the Manufacturers that would have otherwise violated the Debtor's Franchise Rights.  The Debtor has provided notice of the Motion to each Manufacturer but, as noted, the Debtor does not currently have physical possession of copies the Franchise Agreements.  The Debtor however retains all of its rights and remedies against the Manufacturers with which the Buyer does not enter into franchise agreements.

The Intangible Assets includes the Debtor's goodwill and other intangible assets including but not limited to business name and logo, telephone and fax numbers, customer lists including mailing lists and email lists, vehicle and sales records, all internet domains, website code and databases for www.mcmahonrv.com, all digital media files including video, pictures, copy and content relating to or owned by the Debtor, and all social media accounts.  The Debtor believes that the Intangible Assets are property of the Debtor and are not subject to any adverse claims (other than to the extent the Liens encumber the Intangible Assets under California law).

The Buyer intends to purchase certain of the Used Inventory on a per-unit basis and for separate consideration.  If the Debtor and the Buyer cannot agree on a sale price for the Used Inventory, or the Debtor is not otherwise authorized to sell the Used Inventory, then those vehicles shall remain the property of the Debtor and Buyer shall not be obligated to purchase them. The Sale is not conditioned or contingent on Buyer's purchase of any Used Inventory.

### B.    Sale Should Be Approved Pursuant to Section 363(b)

Section 363(b) of the Bankruptcy Code provides that after a notice and a hearing, a trustee or debtor in possession may sell property of the estate outside the ordinary course of business.  11 U.S.C. §§ 363(b), 1107(a). "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. The requirement of a notice and hearing operates to provide both a means of objecting and a method for attracting interest by potential purchasers. Ordinarily, the position of the trustee is afforded deference, particularly where business judgment

is entailed in the analysis or where there is no objection." <u>Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)</u>, 325 B.R. 282, 288-289 (B.A.P. 9th Cir. 2005); <u>see also</u> 3-363 Collier on Bankruptcy ¶ 363.02[4] ("In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test."). "[T]he bankruptcy court reviews the trustee's (or debtor in possession's) business judgment to determine independently whether the judgment is a reasonable one. The court should not substitute its judgment for the trustee's but should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms." 3-363 <u>Collier on Bankruptcy</u> ¶ 363.02[4].

The Debtor submits that the Sale as set forth in the APA for the Purchase Price of $235,000, plus additional consideration for the Used Inventory, is fair and reasonable for the Assets being sold. As discussed above, the Debtor has abandoned its Westminster FF&E to Old Ranch and the Colton FF&E has relatively little value. The majority of the purchase price is attributable to the Franchise Rights[7] and Intangible Assets, which are intangible assets that have far more value in a going concern sale than in a liquidation sale. The Debtor will not be assigning the Westminster Lease or the Franchise Agreements to the Buyer. Rather, the Buyer will enter into a new lease with Old Ranch and new franchise agreements with the Manufacturers.

To ensure that the highest price is received for the Assets, the Sale is subject to overbidding during an auction. As discussed in the Issa Declaration, the Assets have been extensively marketed by, among things, sending sale memoranda to more than 50 RV dealers and holding companies and following up with via emails and phone calls to them all. Since the Petition Date, the Buyer has made the best offer to the purchase of the Assets. Any future operation of a dealership at the Westminster Location ultimately requires the approval of Old Ranch and the Manufacturers. Without their cooperation and approval, any potential purchaser will not able to operate an RV business at the Westminster Location and the Debtor will not be able to obtain going concern value for the Assets. Thus, the universe of prospective purchasers for

---

[7] In the event that a given Manufacturer refuses to issue a franchise agreement to the Buyer, the Buyer may still at its election close the sale and the Debtor reserves all of its rights against such Manufacturer.

the Assets is limited to those parties that both Old Ranch and the Manufacturers will agree to do business with in the future. The Debtor has done its best to market the Assets to this universe of prospective purchasers and has accepted what it believes to be the highest and best offer for the Assets.

**C.** **The Sale of the Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f) Is Permitted Under the Circumstances.**

In accordance with the APA, the Debtor requests that the sale of assets to the Buyer, or any overbidder, be free and clear of any and all liens, claims and interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims and interests to attach to the proceeds of the sale with the same validity, priority, and extent as existed prior to the sale. Pursuant to Section 363(f), a debtor may sell property free and clear of liens, claims and interests if one of the following five conditions is satisfied:

1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2. such entity consents;
3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4. such interest is in bona fide dispute; or
5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the sale of the Debtor's assets "free and clear." In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002).

As discussed above, while there are only 6 entities that may assert liens on the Assets being sold in the Sale -- GE, SCAA, Reyna, HWH, AMEX, and PGMG -- for the reasons discussed above, only GE (and maybe Reyna) has a valid and enforceable lien.[8] However, even if one or more of the remaining junior lienholders ("Junior Lienholders") have enforceable liens ("Junior Liens"), the Assets may nonetheless be sold free and clear of such interests. Although the

---

[8] As noted, the Debtor is not selling free and clear of the Reyna Lien.

collateral of the Liens varies pursuant to the terms of the underlying security agreements and the financing statements, the Debtor believes that the GE Lien is the most senior Lien, encumbers all of the Assets in this Sale, and is undersecured by millions of dollars. GE has previously consented to the sale of the Assets free and clear of the GE Lien pursuant to the terms of the GE Agreement. Based upon the following, the Assets may be sold free and clear of the GE Lien pursuant to section 363(f)(2) and the Junior Liens pursuant to section 363(f)(5).

    1.   The Sale Should Be Free and Clear of the GE Lien Pursuant to Section 363(f)(2)

    Section 363(f)(2) of the Bankruptcy Code provides that a sale approved under section 363(b) may be made free and clear of liens and other interest in the property if such lienholder or interest holder consents. "The consent may be express or implied from circumstances surrounding the sale." 3-363 Collier on Bankruptcy ¶ 363.06[3]; see also Futuresource L.L.C. v. Reuters Ltd., 312 F.3d 281, 287 (7th Cir. 2002) (finding lack of objection to sale constituted consent); Veltman v. Whetzal, 93 F.3d 517, 521 (8th Cir. 1996) (finding stipulation authorizing sale free of interest constituted consent).

    Here, GE has previously consented to the sale of the Assets free and clear of the GE Lien pursuant to the GE Agreement. In the GE Agreement, pursuant to its terms, GE agreed that the Debtor could liquidate its collateral (other than the New Inventory) and deposit such funds in an escrow account, which will then be used to fund a liquidating plan jointly filed by the Debtor and Committee for the benefit of certain unsecured creditors.

    To the extent that any other party asserting a lien, claim or interest receives notice of this Motion and does not file a timely written objection hereto, such party should be deemed to have consented to the sale of the assets free and clear of its asserted Lien. See In re Channel One Commc'ns, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990). To the extent that any objection is received to this Motion on the basis that the proposed sale of assets cannot be free and clear of liens, claims and interests pursuant to section 363(f), the Debtor reserves the right to argue that any of the other bases for a sale "free and clear" under section 363(f) apply. Consequently and in the absence of any such objection, the proposed sale free and clear of all liens, claims, encumbrances, and interests satisfies section 363 of the Bankruptcy Code.

2. <u>The Sale Should Be Free and Clear of All Junior Liens Pursuant to Section 363(f)(5)</u>

Section 363(f)(5) of the Bankruptcy Code provides that a sale approved under section 363(b) made be made free and clear of any interests in the property if such interest holder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." The vast majority of courts have held that a lien constitutes an "interest in property" for the purposes of section 363(f)(5). <u>See e.g.</u>, <u>Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)</u>, 391 B.R. 25, 41-42 (B.A.P. 9th Cir. 2008) (citing § 101(37) which defines a "lien" as a "charge against or *interest* in property"). Thus, prior to selling property free and clear of a lien pursuant to § 363(f)(5), the sale proponent must identify a "legal or equitable proceeding" that could compel the junior lienholder to accept a "money satisfaction of such interest." When interpreting subsection (f)(5), courts have identified two such proceedings in which a junior lien could be extinguished without a full satisfaction of the secured debt: non-bankruptcy foreclosure sales and the cramdown provisions of § 1129(b). Both types of proceedings could be used in the present case to compel the Junior Lienholders to accept a less than full money satisfaction for the extinguishment of the Junior Liens.

### A. Non-Bankruptcy Foreclosure Sales

The majority of courts have held that judicial and nonjudicial foreclosure procedures are qualifying "legal or equitable proceedings" under section (f)(5). <u>See</u> Brad Erens and David Hall, <u>Article: Secured Lender Rights in 363 Sales and Related Issues of Lender Consent</u>, 18 Bankr. Inst. L. Rev. 535, 545 (2010) ("[M]ost courts interpret section 363(f)(5) as already providing that liens can be extinguished in a section 363 sale where that result is possible in a nonbankruptcy foreclosure or similar proceeding."). Two cases have adopted this view. <u>See In re Jolan</u>, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009) (holding that "a senior secured party's disposition of collateral uafter under the default remedies provided in part VI of Article 9, Secured Transactions, of Washington's Uniform Commercial Code, RCW 62A.9A" was a qualifying legal and equitable proceeding under § 363(f)(5)); <u>In re Boston Generating, LLC</u>, 440 B.R. 302, 333 (Bankr. S.D. N.Y. 2010) (holding that "judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5)").

Here, the GE Lien is the most senior Lien and encumbers all of the Assets. As the court noted in <u>Jolan</u> when addressing Washington's substantially similar version of the Uniform Commercial Code, GE could foreclose against the Assets because the Debtor is in default on the credit facility. <u>See</u> Cal. U. Comm. Code § 9610 ("After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing."). GE's foreclosure against the Assets would discharge any subordinate security interest or other subordinate lien in the Assets, including the Junior Liens. <u>See</u> Cal. U. Comm. Code § 9617(a) ("A secured party's disposition of collateral after default . . . [d]ischarges any subordinate security interest or other subordinate lien."). The sale proceeds would then be distributed pursuant to a priority scheme set forth in Cal. U. Comm. Code § 9615. Thus, in a non-bankruptcy foreclosure sale by GE, the Junior Liens would be extinguished and the Junior Lienholders would not receive any payment on behalf of their Junior Liens. In other words, the Junior Lienholders would be compelled in a non-bankruptcy foreclosure sale to accept a less than full satisfaction on account of the extinguished Junior Liens. <u>See</u> <u>Jolan</u>, 403 B.R. at 870.

### B. Cram-Down Provisions of 11 U.S.C. § 1129(b)

A majority of courts have also held that the cram-down provision of § 1129(b) constitutes a qualifying legal or equitable proceeding under § 363(f)(5); although, this has been more controversial than non-bankruptcy foreclosure sales. <u>See</u> <u>In re Terrace Chalet Apartments</u>, 159 B.R. 821, 829 (N.D. Ill. 1993) ("By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt. Section 1129(b)(2) cram down is such a provision."); <u>In re Gulf States Steel</u>, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002); <u>In re Ricco, Inc.</u>, 2014 Bankr. LEXIS 1265 (Bankr. N.D. W.V. 2014); <u>In re Grand Slam U.S.A.</u>, 178 B.R. 460 (E.D. Mich. 1995); <u>In re Boston Generating, LLC</u>, 440 B.R. 302 (Bankr. S.D. N.Y. 2010); 3 Collier on Bankruptcy ¶ 363.06[6] (citing <u>Terrace Chalet Apartments</u>). <u>But see</u> <u>In re PW, LLC</u>, 391 B.R. 25 (B.A.P. 9th Cir. 2008) (rejecting the use of § 1129(b)(2) as a qualifying proceeding under § 363(f)(5) because it requires "circular reasoning" and deprives the lienholder

of the procedural and substantive protections of § 1129).

Here, the GE Lien is undersecured by millions of dollars. According to GE, as of June 26, 2014, the outstanding balance secured by the GE Lien was at least $31,507,448.44, and the collateral secured by the GE Lien (including the Assets) was "at most $25,031,926." See Motion for Relief from the Automatic Stay, filed by GE on June 26, 2014 (BK Docket No. 19), at p. 8. The Debtor is informed and believes that the GE Lien still remains undersecured against the Debtor's assets. See Issa Declaration. Accordingly, all of the Junior Liens are unsecured pursuant to § 506(a), which "states that to be an 'allowed secured claim' . . . there must be value to which the lien of a secured creditor can attach." Smith v. Rojas (In re Smith), 435 B.R. 637, 644 (B.A.P. 9th Cir. 2010). "Thus, a determination under § 506(a) that a creditor is wholly unsecured effectively excuses debtors from treating the creditor's claim as secured under [a] plan." Id.

During a plan confirmation, the Debtor would be able to sell the Assets free and clear of the Liens, which would then attach to the sale proceeds, and the sale proceeds would then be used to pay the "indubitable equivalent" of such claims. See 11 U.S.C. § 1129(b)(2)(A)(ii)-(iii). If the sale proceeds were not sufficient to pay all Junior Liens, then the claims of the Junior Lienholders would be paid pro rata with other general unsecured claims.

Thus, under either scenario, a non-bankruptcy foreclosure sale or a cramdown during a plan confirmation, the Junior Lienholders could be compelled to accept a money satisfaction on behalf of the Junior Liens. Accordingly, the Sale should be approved free and clear of all Junior Liens pursuant to § 363(f)(5).

**D.     The Buyer Should Be Found to be a Good Faith Purchaser Pursuant to Section 363(m)**

Section 363(m) provides that a purchaser of property of the estate is protected from the effects of a reversal or modification on appeal of the authorization to sell as long as the purchaser acted in good faith and the appellant failed to obtain a stay of the sale. The Code does not define "good faith." Courts have adopted various definitions. A good faith purchaser is "one who buys property . . . for value, without knowledge of adverse claims." In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993). "Typically, lack of good faith is shown by fraud,

collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." In re Ewell, 958 F.2d 276, 279 (9th Cir. 1992).

Here, the Buyer is a third party purchaser identified by Mr. McMahon with no known connections to the Debtor. The Buyer is paying fair value for the Assets and the Sale is subject to overbidding pursuant to the bid procedures set forth in the APA.  Absent any allegations against the Buyer of fraud, collusion, or any attempt to take grossly unfair advantage of other bidders, the Court should find that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m).

**E.      The Court Should Waive the 14-Day Stay Set Forth in Bankruptcy Rule 6004(h)**

Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. Absent any objection to the Motion, the Debtor requests that the 14-day stay set forth in Bankruptcy Rule 6004(h) be waived as the Buyer is extremely eager to set up its operations in advance of the peak RV sales season, which takes place approximately from March through June.

**IV.      CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

1.      Granting the Motion in its entirety,

2.      Authorizing the Debtor to sell the Assets free and clear of all liens, claims and encumbrances to the Buyer, subject to overbidding as set forth in the APA, pursuant to 11 U.S.C. § 363(b) and (f),

3.      Finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m),

4.      Waiving the 14-day stay set forth in Bankruptcy Rule 6004(h), and

5.      Affording such other and further relief as is appropriate under the circumstances.

DATED:  February 3, 2015                          **GOE & FORSYTHE, LLP**


                                                                By: /s/Robert P. Goe_____

                                                                Robert P. Goe, Counsel for Debtor and
                                                                Debtor-in-Possession

## DECLARATION OF J. MICHAEL ISSA

I, J. Michael Issa, declare and state that I am a principal of GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), financial advisor to the debtor and debtor-in-possession, Mega RV Corp. ("Debtor"). I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto. I make this declaration in support of the *Motion for Order Approving (1) Sale of Fixed and Personal Property Assets Located at Westminster and Colton Locations; (2) Sale of Rolling Stock Located at Colton Location; (3) Sale of Franchise Rights; (4) Sale of Goodwill and Other Intangible Assets; (5) Sale of Used Inventory for Additional Consideration; and (6) Setting Bid Procedures* ("Motion"), to which this Declaration is attached. Any terms not otherwise defined herein have the same meanings as in the Motion.

1. By way of this Motion, the Debtor respectfully moves the Court for an Order (1) approving, pursuant to 11 U.S.C. § 363(b) and (f), the Asset Purchase and Sale Agreement ("APA"), dated February 10, 2015, and entered into by the Debtor and Dennis Dillon RV and Marine Center ("Buyer"), for the sale free and clear of all liens, claims and encumbrances ("Sale") of the following property (collectively referred to as the "Assets") for the purchase price of $235,000.00 ("Purchase Price"): (a) the Debtor's interest in fixed and personal property, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures located at 5400 Garden Grove Blvd, Westminster, CA 92683 ("Westminster Location") and 1313 RV Center Drive, Colton, CA 92324 ("Colton Location") (collectively, "FF&E")[1], (b) the Debtor's interests in all trucks, cars, trailers, fork lifts, and other equipment with wheels (but excluding Used Inventory as defined below) located at the Colton Location (collectively, "Rolling Stock"), (c) the Debtor's interests in all Franchise Agreements

/ / /

---

[1] The FF&E located at the Westminster Location (which was previously abandoned by the Debtor on December 18, 2014) shall be herein referred to as the "Westminster FF&E" and the Debtor's FF&E located at the Colton Location (which has not been abandoned) shall be herein referred to as the "Colton FF&E." As discussed below, the Debtor is selling, at the request of the Buyer, whatever residual interest that the Debtor may have in the abandoned Westminster FF&E. Also, please note that there is additional FF&E at the Colton Location that is owned by third parties, and which will not be sold pursuant to the Sale.

("Franchise Rights")[2], including those between the Debtor and Winnebago, Forest River, Thor, Eclipse, Monaco, and Holiday Rambler (collectively, the "Manufacturers"), (d) the Debtor's goodwill and other intangible assets including but not limited to business name and logo, telephone and fax numbers, customer lists including mailing lists and email lists, vehicle and sales records, all internet domains, website code and databases for www.mcmahonrv.com, all digital media files including video, pictures, copy and content relating to or owned by the Debtor, and all social media accounts (collectively, "Intangible Assets"), and (e) certain units of the Debtor's used RV Inventory on an optional and non-obligatory per-unit-basis for consideration separate and in addition to the Purchase Price ("Used Inventory"); and (2) setting bid procedures in the event that there is more than one interested bidder.  A true and correct copy of the APA is attached hereto as **<u>Exhibit "1"</u>**.

2.        The Debtor was formed on December 12, 2000, and operated as McMahon's RV until April 2014.  Brent McMahon is the Debtor's CEO and 100% shareholder.  From 2000 until 2014, the Debtor sold and serviced new and used RVs throughout Southern California.  The flagship dealership and the Debtor's principal place of business was located at 5400 Garden Grove Blvd., Westminster, California 92683 ("Westminster Location").  The Debtor also operated satellite dealerships in other locations, including Colton and Palm Desert, prior to its bankruptcy filing.

3.        The Debtor leased the Westminster Location from Old Ranch Properties, LLC ("Old Ranch"), pursuant to a *Ground Lease*, dated April 1, 2012 ("Westminster Lease").  At the Westminster Location, the Debtor sold new RVs pursuant to the Franchise Agreements with the Manufacturers.  The Debtor is not currently in physical possession of copies of all of the Franchise Agreements but is informed and believes that the Debtor has Franchise Agreements with each of the Manufacturers.  Examples of the Franchise Agreements are attached hereto as

---

[2] The Debtor's Franchise Rights include, among other things, the Debtor's exclusive right to sell the Manufacturers' new inventory in a dedicated geographic region.  The Sale contemplates that the Buyer will enter into new franchise agreements with each of the Manufacturers.  However, by selling its Franchise Rights, the Debtor is selling, among other things, the forbearance of its right to exercise its Franchise Rights to oppose any new franchise agreements entered into between the Buyer and the Manufacturers that would have otherwise violated the Debtor's Franchise Rights and a release of any and all claims that would have arisen from such violations of the Debtor's Franchise Rights.

**Exhibit "2"**.  The Debtor's Franchise Rights, particularly the exclusive right to sell the Manufacturer's new inventory in a dedicated geographic region, remain property of the Debtor's bankruptcy estate.  Any postpetition attempts by the Manufacturers to transfer the Debtor's exclusive Franchise Rights or grant new franchise rights to another dealership within the Debtor's exclusive geographic region are breaches of the Debtor's Franchise Agreements, violate the automatic stay, and are per se void.

4.       In April 2014, GE Distribution Finance Corporation ("GE"), the Debtor's secured lender, swept all funds (approximately $5,063,756.74) from the Debtor's primary bank account, which left the Debtor with no funds to operate and forced the Debtor to cease operations.  On June 15, 2014, ("Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for chapter 11 relief.  The Debtor is currently liquidating its estate as a debtor-in-possession pursuant to 11 U.S.C. § 1107.  On July 3, 2014, the Committee of Unsecured Creditors ("Committee") was appointed.

5.       Shortly after the Petition Date, on June 26, 2014, GE moved for relief from stay to foreclose upon its collateral (including the Assets) [Docket No. 19], which was secured by a UCC Financing Statement encumbering all of the Debtor's personal property ("GE Lien").  According to GE, as of June 26, 2014, the outstanding balance secured by the GE Lien was at least $31,507,448.44, and the collateral secured by the GE Lien (including the Assets) was "at most $25,031,926."  See Motion for Relief from the Automatic Stay, filed by GE on June 26, 2014 (BK Docket No. 19), at p. 8.  The Debtor opposed GE's stay motion [Docket No. 42], arguing, among other things, that the Debtor held offsetting commercial tort claims against GE that needed to be adjudicated prior to granting GE relief from stay.  Prior to a hearing on GE's stay motion on July 21, 2014, the Court issued a tentative ruling to deny GE's stay motion with a bar to refiling for 240 days.  However, per a stipulation by the parties, the hearing on GE's stay motion was continued several times as the Debtor and GE negotiated a global agreement.

6.       After several rounds of negotiation, including a formal mediation on October 13-14, 2014, the Debtor stipulated to grant GE relief from stay with respect to the new RV inventory ("New Inventory") that was purchased by the Debtor with financing from GE's credit facility.

The stipulation ("Relief Stipulation") was executed by the Debtor, the Committee, and GE, and was approved by a court order entered on November 17, 2014 [Docket No. 303]. GE is applying the proceeds of the New Inventory to the outstanding amount of GE's claim against the Debtor. I am informed and believe that the GE Lien was and remains undersecured against the Debtor's assets.

7.     Thereafter, the Debtor and GE continued negotiations as to the remaining issues between them and were ultimately successful in coming to terms on a compromise, which were memorialized in an *Agreement*, dated November 24, 2014 ("GE Agreement"). On November 24, 2014, the Debtor filed a motion to approve the GE Agreement [Docket No. 348], which was granted by the Court pursuant to an order entered on December 22, 2014 [Docket No. 398].

8.     The Debtor has also had extensive negotiations with Old Ranch, the lessor of the Westminster Location. On September 29, 2014, Old Ranch filed a motion to compel the Debtor's abandonment of the Westminster Location for non-payment. The Debtor initially opposed the motion pending the outcome of its mediation with GE and requested a hearing. A hearing was set for November 19, 2014, by which time the Debtor had successfully mediated its disputes with GE and no longer opposed the motion. On November 24, 2014, an order was entered [Docket No. 347] compelling the Debtor to immediately turnover possession of the Westminster Location to Old Ranch, which the Debtor promptly did after GE moved the remainder of the New Inventory off the Westminster Location.

9.     Since the Petition Date, GlassRatner has spent months marketing the Assets to parties who have expressed interest in reopening an RV dealership at the Westminster Location. As a result of our efforts, the Debtor has found a prospective purchaser (Buyer) and has reached an agreement for the sale of the Assets.

10.     The following table is a summary of the basic terms of the APA. The terms of the APA control in the event of any inconsistency with this summary.

| Sale Price: | $235,000.00 |
|---|---|
| Good Faith Deposit: | $50,000.00 |

| | |
|---|---|
| Assets to be Sold | **a. Westminster FF&E.** Buyer shall purchase all of the Debtor's residual interest, to the extent any such interest exists following the abandonment on December 18, 2014, in the personal property located at the Westminster Location, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures, parts and accessories, miscellaneous inventory and supplies, work in process and sublet repairs.<br><br>**b. Colton FF&E.** Buyer shall purchase all of the Debtor's personal property located at the Colton Location, including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures, parts and accessories, miscellaneous inventory and supplies, work in process and sublet repairs.<br><br>**c. Rolling Stock.** Buyer shall purchase all of the Debtor's trucks, cars, trailers, fork lifts, and other equipment with wheels located at the Colton Location.<br><br>**d. Franchise Rights.** Buyer shall purchase the Debtor's interests in the Franchise Agreements, including the Debtor's exclusive right to sell the Manufacturers' new inventory in a dedicated geographic region, and the Debtor's forbearance to oppose or object to any new franchise agreement entered into between Buyer and the Manufacturers that would have otherwise violated the Debtor's Franchise Rights. The Debtor shall retain and the Sale shall not include any claims and causes of action held by the Debtor that arise from the Franchise Agreements against those Manufacturers that do not enter into new franchise agreements with the Buyer.<br><br>**e. Goodwill, Covenant Not to Compete, and Other Intangible Assets.** Buyer shall purchase the Debtor's goodwill and other intangible assets including but not limited to name, telephone and fax numbers, website domain name, sales customer lists and vehicle sales and service records.<br><br>**f. Used Inventory.** Buyer may elect to purchase certain units of the Debtor's used RV inventory at the Colton Location on a per-unit basis for consideration separate and in addition to the Purchase Price ("Used Inventory"). In the event Buyer and Debtor cannot agree on a sale price for the Used Inventory, or that Debtor is not otherwise authorized to sell the Used Inventory, then those vehicles shall remain the property of the Debtor and Buyer shall not be obligated to purchase them nor shall Debtor be obligated to sell them. The Closing of the Sale shall not be conditioned or |

| | |
|---|---|
| | contingent on Buyer's purchase of any Used Inventory. |
| Representations/Warranties: | None. The Assets shall be sold on an as-is, where-is basis and without representations or warranties of any kind, nature or description by the Debtor, except to the extent expressly set forth in the APA. |
| Closing Date: | Estimated March 15, 2015 |
| Buyer's Closing Contingencies: | The Buyer's contingencies to closing include:<br><br>**1. Manufacturer Approval**: Buyer's offer is subject to the Manufacturers' approval of Buyer and issuance of new franchise agreements for a dealership at the Westminster Location on terms and conditions agreeable to Buyer in its sole and absolute discretion.<br><br>**2. Flooring Financing**: Buyer's offer is subject to Buyer securing floor financing lines (on terms agreeable to Buyer in its sole and absolute discretion) for new and used RV inventories which meets the requirements of the Manufacturers.<br><br>**3. Due Diligence**: Buyer's offer is subject to Buyer's due diligence review of the Debtor's information, data and materials, and failing Buyer's review and approval of same, Buyer may elect to terminate the transaction.<br><br>**4. Real Property**: The Buyer's offer is subject to Buyer entering a new lease or purchase agreement with Old Ranch for the Westminster Location on terms and conditions acceptable to Buyer in its sole and absolute discretion.<br><br>**5. Court Approval**: The Buyer's offer is subject to the U.S. Bankruptcy Court's approval of this transaction. |

11.     I have personally been involved in dozens of franchised dealership (mostly automotive) transactions in my career and have an extensive list of contacts in the industry. GlassRatner has extensively marketed the Assets for sale by sending out sale memoranda to more than 50 dealers and holding companies to solicit interest. GlassRatner specifically targeted successful RV dealers nationwide and automotive dealers in the Western U.S. We followed up via emails and phone calls to them all. The offer from the Buyer as set forth in the APA is the best and highest offer for the Assets that the Debtor has received since the Petition Date.

12. The Debtor, in an exercise of its reasonable business judgment, has determined and believes that the sale of the Assets for the amount of $235,000 is in the best interests of the Debtor's estate and its creditors. The Debtor has not received any better offers to purchase the Assets. It is my opinion, based on discussions with prospective asset buyers, that the liquidation value of the tangible personal property is a modest five-digit number and that the remainder of the Purchase Price ($235,000) represents "goodwill." This amount of goodwill for a dealership that has been closed for nearly a year and which had not been profitable in any the preceding five fiscal years is reasonable consideration in my expert opinion given the current circumstances. The goodwill component of the sale price cannot be extracted for the estate other than by a sale to the Buyer, given a lack of other offers.

13. I am informed by the Committee has caused a third-party search to be conducted with the California Secretary of State for all active liens of record (including UCCs, Federal Tax Liens, State Tax Liens, and Judgments) against the Debtor ("Liens") and to identify the non-debtor parties named therein ("Lienholders"). A copy of the Committee's search results for active liens of record against the Debtor is attached to Davidoff Declaration as **Exhibit "6"**. The Debtor does not currently physically possess the underlying security agreements to the Liens and hereby expressly reserves any and all right to contest the validity and extent of the Liens for any reason, including but not limited to the UCC financing statement being overbroad and not accurately describing the collateral as set forth in the underlying agreement. Notwithstanding, I am informed and believe that the GE Lien is valid and enforceable, is in first priority, encumbers all of the Assets, and is undersecured in an amount exceeding several million dollars.

14. The Debtor does not have any prior relation to Buyer and the APA represents an arms-length transaction between the parties.

15. Based upon the foregoing, the Debtor herein moves for an order approving the Sale pursuant to 11 U.S.C. § 363(b), authorizing the Sale free and clear of the Liens pursuant to 11 U.S.C. § 363(f), finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m), and waiving the 14-day stay of Bankruptcy Rule 6004(h).

1       I declare under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct. Executed this 17th day of February 2015 in IRVINE ,

3   California.

4

5   J. Michael Issa

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF ROBERT P. GOE**

I, Robert P. Goe, declare and state that I am a partner of Goe & Forsythe, LLP, general insolvency counsel to the debtor and debtor-in-possession, Mega RV Corp. ("Debtor"). I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto. I make this declaration in support of the *Motion for Order Approving (1) Sale of Fixed and Personal Property Assets Located at Westminster and Colton Locations; (2) Sale of Rolling Stock Located at Colton Location; (3) Sale of Franchise Rights; (4) Sale of Goodwill and Other Intangible Assets; (5) Sale of Used Inventory for Additional Consideration; and (6) Setting Bid Procedures* ("Motion"), to which this Declaration is attached. Any terms not otherwise defined herein have the same meanings as in the Motion.

1.      On December 11, 2014, I, as counsel for the Debtor, emailed a letter to Richard Golubow, counsel for Old Ranch, stating that the Westminster Lease was deemed rejected by operation of law. The letter also surrendered and tendered, effective immediately, possession of the Westminster Location to Old Ranch, and requested confirmation that the Debtor could leave its Westminster FF&E at the Westminster Location free of charge pending ongoing negotiations between Buyer and Old Ranch as to the terms of a new lease agreement, and between Buyer and Debtor as to the sale of the Westminster FF&E. The letter requested further confirmation that if Buyer was unable to agree with Old Ranch as to terms on a new lease, or with Debtor as to the sale of the Westminster FF&E, then the Debtor could retrieve its Westminster FF&E. A true and correct copy of my letter to Mr. Golubow, dated December 11, 2014 is attached hereto as **Exhibit "3"**.

2.      On December 16, 2014, Mr. Golubow responded by letter stating that Old Ranch had not agreed to let the Debtor to continue storing its Westminster FF&E on the Westminster Location free and charge pending the negotiations and asserting that the Debtor continued to incur administrative rent while its Westminster FF&E was stored at the Westminster Location. A true and correct copy of the letter I received from Mr. Golubow, dated December 16, 2014 is attached hereto as **Exhibit "4"**.

3. On December 18, 2014, I replied by letter stating that the Debtor immediately abandoned all of its Westminster FF&E located at the Westminster Location to Old Ranch and that Old Ranch was immediately entitled to assume that all of the Westminster FF&E is abandoned. Accordingly, the Debtor has abandoned all interests in and rights to the Westminster FF&E. To the extent that the Debtor has any rights or interests in the Westminster FF&E, such rights and interests are being sold by the Debtor to the Buyer pursuant to the APA. A true and correct copy of my letter to Mr. Golubow, dated December 18, 2014 is attached as **Exhibit "5"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 18th day of February, 2015 in Irvine, California.

*/s/ Robert P. Goe*
Robert P. Goe

# DECLARATION OF BRIAN L. DAVIDOFF

I, Brian L. Davidoff, declare and state that I am a partner of Greenberg Glusker Fields Claman & Machtinger LLP, general counsel to the Official Committee of Unsecured Creditors ("Committee") in the bankruptcy case of Mega RV Corp. ("Debtor"). I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto. I make this declaration in support of the *Motion for Order Approving (1) Sale of Fixed and Personal Property Assets Located at Westminster and Colton Locations; (2) Sale of Rolling Stock Located at Colton Location; (3) Sale of Franchise Rights; (4) Sale of Goodwill and Other Intangible Assets; (5) Sale of Used Inventory for Additional Consideration; and (6) Setting Bid Procedures* ("Motion"), to which this Declaration is attached. Any terms not otherwise defined herein have the same meanings as in the Motion.

1. On or around February 3, 2015, I ordered a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California from CLAS Information Services ("CLAS") for any active liens of record (including UCCs, Federal Tax Liens, State Tax Liens, and Judgments) against the Debtor.

2. On or around February 3, 2015, I received a UCC Search Report ("Search Report") from CLAS for its search results for active liens of record against the Debtor. A true and correct copy of the Search Report is attached hereto as **Exhibit "6"**.

3. On or around February 3, 2015, I emailed an electronic copy of the Search Report to Robert Goe, general counsel for the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3 th day of February, 2015 in Los Angeles, California.

_____
Brian L. Davidoff

EXHIBIT 1

EXHIBIT 1

# Asset Purchase and Sale Agreement

**Dennis Dillon RV, LLC** and/or assigns/affiliate or affiliated entity ("Buyer") and **Mega RV Corporation dba McMahon's RV, ("Seller")** desire to set out in this Agreement, effective as of the date of the latest signature below, the terms of their agreement regarding the sale and purchase of certain assets of Seller located at 5400 Garden Grove Blvd, Westminster, CA. (the "Westminster Premises") and 1313 RV Center Drive, Colton, CA (the "Colton Premises") (collectively, the "Premises"), including rights to obtain through assignment of existing or new dealership agreements with the manufacturers of RV's sold by Seller at the Premises: namely: **Winnebago, Forest River, Thor, Eclipse, Monaco, and Holiday Rambler** franchises (collectively the "Manufacturers"), under the following terms and conditions:

## 1. Assets:

**1.1    Assets to be Purchased:** At the Closing, Seller shall sell and Buyer shall purchase for the Purchase Price the following assets:

     **a.    Fixed and Personal Property Assets.**  Buyer shall purchase all of Seller's assets located at the Premises on November 18, 2004 including but not limited to machinery and shop equipment, special tools, parts, signs, office equipment, furniture and fixtures (collectively the "**FF&E**") and all all trucks, cars, trailers, fork lifts, and other equipment with wheels (but excluding Used Vehicles as defined below) located at the Colton Premises (collectively "**Rolling Stock**").  Within one (1) business day following the execution hereof, Seller will furnish Buyer an itemized list of the Rolling Stock which list will include year, model, make and serial numbers for each units. Buyer will appraise and assign a value to each item of Rolling Stock and at Closing such items will be transferred by Seller to one of Buyer's affiliated automotive dealerships for resale.  The 1) 2007 white diesel Ford one-ton truck, the desks, and office equipment previously removed from the Westminster Premises and 2) Employees' personal assets at the Colton Premises are excluded from this sale.

     **b.    Goodwill, Covenant Not to Compete, and Other Intangible Assets.**  Buyer shall purchase Seller's goodwill and other intangible assets including but not limited to business name and logo, trade names including "McMahon RV", telephone and fax numbers, customer lists including mailing lists and email lists, vehicle and sales records, all internet domains, website code and databases for www.mcmahonrv.com, all digital media files including video, pictures, copy and content relating to or owned by the Debtor, all social media accounts, and the Dealership Sales and Services Agreements pursuant to separate agreements with each of the Manufacturers. Seller will not retain and will deliver to Buyer the service and sales customer lists and vehicle sales and service records.  Buyer will allow Seller access to said records, as reasonably necessary post-closing.

     **c.    Parts and Accessories.**  Included in FF&E.

     **d.    Miscellaneous Inventory and Supplies.** Included in FF&E.

     **e.    Work in Process and Sublet Repairs.**  Included in FF&E.

**1.2  Used RV Inventory.**  Buyer may offer to purchase and Seller may agree to sell on a per-unit basis, units of used RV Inventory ("Used RV Inventory").  Within one (1) business day following the execution of this Agreement, Seller will furnish Buyer a detailed list of such units including year, make, model and serial number. In the event Buyer and Seller do not agree on a

price on any unit of Used RV Inventory, or if Seller is not authorized to deliver free and clear title, then those units shall remain the property of the Seller and Buyer shall not be obligated to purchase them nor shall Seller be obligated to sell them. The Closing of the sale of the Assets described in Section 1.1 shall not be conditioned or contingent on Buyer's purchase of any Used RV Inventory. At Closing, Seller will transfer all Assets by a duly executed bill of sale and where applicable, properly indorsed Certificates of Title for all Rolling Stock and all sold items of Used RV Inventory.

**2.      Real Properties and Improvements**.  The transaction described herein is contingent upon Buyer at the time of Closing, entering into a new lease or purchase agreement with the landlord of the Westminster Premises on terms and conditions acceptable to Buyer.  Seller agrees to take no action which will interfere with or impair landlord's ability or willingness to executed said new lease.

**3.      Assumption of Leases, Contracts and Purchase Orders.**  Except for: (i) any express post-Closing obligations under any assigned or new Manufacturers Dealership Sales and Services Agreement; and (ii) other than as expressed in a writing signed by Buyer, Buyer will not assume Seller's obligations under any equipment leases and contracts. Buyer is not responsible for any purchase orders for any vehicles that may be open at the Closing, unless Buyer expressly agrees in writing.

**4.      Sales and Transfer Tax.**  Sales, stamp or transfer taxes on all Assets which are subject to such tax shall be paid by the Buyer in good funds at Closing. Except for the foregoing, Buyer and Seller shall each be responsible for their respective taxes.

**5.      Debt.**  Except as otherwise expressly agreed in writing between Buyer and Seller, Buyer will not assume any debts or obligations of Seller.

**6.      Assignability.**  Buyer's may assign its rights under this Agreement as long as Buyer remains liable under the same.

**7.      Other Assets, Accounts Receivable, Avoidance Actions, and Other Claims Seller may have against third parties including litigation claims.**  Except as may otherwise be agreed in writing between Buyer and Seller, all other assets of Seller other than those identified in paragraph 1 above including but not limited to accounts receivable, avoidance actions, contracts in transit, and other claims Seller may have against third parties including but not limited to litigation claims of Seller will not be included in this sale.  Buyer agrees to assist in continuing to bill and accept payments for Seller's accounts receivable for a reasonable period of time after closing at no charge to Seller. Any such payments received by Buyer shall be held in trust for Seller and forthwith be transferred to Seller.

**8.      Bidding Procedures**

**a.      Stalking Horse.**  Buyer understands that Seller is involved in a Chapter 11 proceeding in the U.S. Bankruptcy Court and, as such, must sell the Seller's assets to the highest and best bidder.  Accordingly, Seller may select this offer as the Stalking Horse bid and may hold an auction if other potential buyers wish to purchase the assets described herein at a price higher that Buyer's offer.  Buyer consents to the foregoing.  Seller acknowledges that Buyer may choose to not overbid Buyer's original offer contained herein in the event of an auction.  Seller agrees to promptly file appropriate motion papers with the Bankruptcy Court and diligently pursue Court approval and consummation of the transaction contemplated here.

**b.  Auction Process.**  Buyer acknowledges that it is Seller's obligation to hold an auction for the subject assets.  In order to qualify to bid, Buyer and prospective bidders ("Bidding Party") will be required to follow certain procedures including the following:  (i) submit to Seller such Bidding Party's Sales and Service CSI statistics on its existing stores for the purpose of determining that such Bidding Party meets the Manufacturers gating CSI requirements; (ii) submit proof of funds to Seller in advance of the auction for the purpose of demonstrating the financial ability of such Bidding Party to close if successful in winning the auction; (iii) submit an earnest money deposit in the amount of $50,000 (which will be the $50,000 deposit described in Section 9 below and which will be applied to the purchase price) to the trust account of the Seller's attorney within three business days of the execution by both the Bidding Party and Seller of a definitive agreement to purchase the Assets.

**9.  Purchase Price.**  The purchase price for the Assets (excluding the Used RV Inventory) shall be the sum of Two Hundred Thirty Five Thousand Dollars ($235,000) (the **"Purchase Price"**). The Purchase Price shall not be increased or decreased notwithstanding that Buyer is not able to obtain assignment of or otherwise acquire a Dealership Sales and Service Agreement for all of the Manufacturers. The Purchase Price shall be increased for any items of Used RV Inventory that Buyer or Buyer's assignee purchases from Seller pursuant to paragraph 1.2 above. Buyer will provide a Fifty Thousand Dollar ($50,000) deposit payable to GlassRatner Advisory & Capital Group, LLC,  Attn: J. Michael Issa, 19800 MacArthur Blvd. Ste. 820, Irvine, CA 92612  upon execution of this Agreement.  Said deposit will be refundable unless the conditions precedent detailed in this Agreement are fulfilled and Buyer nevertheless fails to close, in which case said deposit will be forfeited.

**10.  Audit and Due Diligence.**  Seller will cooperate fully with Buyer's requests for information, data, documents, and reasonable access to the Premises if necessary for his due diligence. Buyer shall bear all costs and fees for all of its employees, professionals, and contractors conducting such diligence.  Buyer is aware that Seller is no longer operating and no longer has access to financial information stored at ADP.

**11.  Payment of Expenses; Attorney's Fees.**  Whether or not this transaction is consummated, Buyer and Seller each shall be responsible for its own costs and expenses incurred in connection with the negotiation of this transaction. In the event that any action or proceeding is instituted relating to or arising out of this Agreement, or the interpretation of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs.

**12.  Buyer Representations.**  Buyer represents and warrants to Seller as follows:

**12.1**  Buyer has made arrangements to have sufficient funds available to pay the Purchase Price and the purchase price for any Rolling Stock with the exception of flooring financing (section 13.2 hereof).

**12.2**  Buyer has the authority to execute and deliver this Agreement and any agreement pursuant hereto and to carry out its obligations hereunder.

**12.3**  Buyer agrees that time is of the essence in this matter.  In the event that Buyer is the winning bidder, Buyer agrees to submit completed applications for Manufacturers' approval within five business days of the auction.

**13.  Buyer's Contingencies to Close.**  Buyer's obligation to close is contingent upon the following:

       **13.1**    **Manufacturer Approval.** This offer is subject to Manufacturers' approval of Buyer and issuance to Buyer of Dealership Sales and Services Agreements for Buyer's operation of a dealership at the Westminster Premises, on terms and conditions agreeable to Buyer in its sole and absolute discretion. Seller agrees to use exercise all reasonable efforts and legal remedies available to Seller to transfer all Seller's franchise rights to Buyer and obtain Manufacturer approval. In the event that any Manufacturer refuses to issue a Dealership Sales and Services Agreement to Buyer for Buyer's operation of a dealership at the Westminster Premises on terms and conditions agreeable to Buyer, Buyer in its sole and absolute discretion may nonetheless agree to the Close without such Manufacturer's approval in which event Seller shall assign to Buyer all Seller's rights and remedies against such Manufacturer arising from such refusal.

       **13.2**    **Flooring Financing.** This offer is subject to Buyer securing flooring financing lines (on terms agreeable to Buyer in its sole and absolute discretion) for new and used RV inventories to be sold by Buyer at the Westminster Premises which meets the requirements of the Manufacturers.

       **13.3**    **Due Diligence.** This Agreement and any agreement pursuant to this Agreement is subject to Buyer's due diligence review of Seller's information, data and materials and failing Buyer's review and approval of same, Buyer may elect to terminate this transaction. Buyer agrees to diligently complete its review and unless Buyer notifies Seller at least five (5) days before the auction that Buyer has elected to terminate this Agreement, then Buyer shall be deemed to have waived this contingency.

       **13.4**    **Real Property.** This Agreement is subject to Buyer obtaining a new lease or the purchase for the Westminster Premises on terms and conditions acceptable to Buyer in its sole and absolute discretion.

       **13.5**    **Court Approval.** This purchase and sale contemplated by this Agreement is subject to U.S Bankruptcy Court's approval.

**14**.    **Sale As Is.** All of the Assets to be sold hereunder shall be sold "as is where is" without any representation or warranty of any kind (except as to title) including but not limited to any warranty of fitness or warranty for a particular purpose, and Buyer shall rely exclusively on its own investigation to determine that the Assets suit Buyer's needs.

**15.**    **Employees.** To the extent not already done, Seller agrees to terminate all employees effective as of the Closing.

**16.**    **Closing.** The closing of the sale contemplated hereby ("**Closing**") shall take place on the fifth business day after the following: (i) the entry of an order by the Court approving of this Agreement as contemplated by paragraph 13.5 above; (ii) assignment of, or issuance by, the Manufactures of a Dealership Sales and Services Agreement for Buyer's operation of a dealership at the Westminster Premises, except to the extent waived by Buyer.

**17.**    **Dispute Resolution.** The Court will retain jurisdiction over any dispute arising out of or relating to this Agreement and any agreement pursuant hereto.

**18.    Non-competition and Non-solicitation.**  Seller and by his/her signature below, the undersigned representative of Seller each agree, for a period ending December 31, 2016, to (i) refrain from engaging in the business of selling recreational vehicles in Orange County, CA, and (ii) refrain from soliciting any employee of Buyer to leave his/her employment.

**19.    Definitive Agreement.**  Subject to Bankruptcy Court approval, this Agreement shall be a binding agreement.  The parties intend that the terms and conditions set forth herein, and such additional terms that are consistent with agreements of this type and to be approved by the parties acting on advice of counsel, will be set forth in a definitive asset purchase agreement. However in the event that the parties do not execute such a definitive asset purchase agreement, this Agreement shall remain a binding agreement.

**20.    Further Assurance.**  Each of the parties hereto agrees to execute any other documents and do all things reasonably necessary or appropriate to effectuate the intention of the parties, as expressed in this Agreement.

**21.    Counterparts.**  This Agreement may be executed in two counterparts, each of which will be considered an original instrument and both of which together will be considered one and the same agreement, and will become effective when counterparts, which together contain the signatures of each party, will have been delivered to Buyer and Seller. Delivery of executed signature pages by facsimile transmission or a pdf file attached to internet mail will constitute effective and binding execution and delivery of this Agreement.

**22.    IN WITNESS WHEREOF,** the parties have duly executed this Asset Purchase and Sale Agreement effective as of the date of the latest signature below.

**DENNIS DILLON RV, LLC**


By _____          2/18/15
        Dennis E. Dillon, Managing Member          Date



AGREED AND ACCEPTED

**MEGA RV CORP dba McMAHON'S RV**


By:_____          _____
                                                                            Date


_____
Printed Name and Title

Asset Purchase and Sale Agreement          Page 5 of 5

**18.**   **Non-competition and Non-solicitation.**   Seller and by his/her signature below, the undersigned representative of Seller each agree, for a period ending December 31, 2016, to (i) refrain from engaging in the business of selling recreational vehicles in Orange County, CA, and (ii) refrain from soliciting any employee of Buyer to leave his/her employment.

**19.**   **Definitive Agreement.**   Subject to Bankruptcy Court approval, this Agreement shall be a binding agreement.  The parties intend that the terms and conditions set forth herein, and such additional terms that are consistent with agreements of this type and to be approved by the parties acting on advice of counsel, will be set forth in a definitive asset purchase agreement. However in the event that the parties do not execute such a definitive asset purchase agreement, this Agreement shall remain a binding agreement.

**20.**   **Further Assurance.**  Each of the parties hereto agrees to execute any other documents and do all things reasonably necessary or appropriate to effectuate the intention of the parties, as expressed in this Agreement.

**21.**   **Counterparts**.  This Agreement may be executed in two counterparts, each of which will be considered an original instrument and both of which together will be considered one and the same agreement, and will become effective when counterparts, which together contain the signatures of each party, will have been delivered to Buyer and Seller. Delivery of executed signature pages by facsimile transmission or a pdf file attached to internet mail will constitute effective and binding execution and delivery of this Agreement.

**22.**   IN WITNESS WHEREOF, the parties have duly executed this Asset Purchase and Sale Agreement effective as of the date of the latest signature below.

**DENNIS DILLON RV, LLC**


By_____        _____
    Dennis E. Dillon, Managing Member                Date



AGREED AND ACCEPTED

**MEGA RV CORP dba McMAHON'S RV**

By: _Brent McMah_____        _2/17/15_
                                                        Date

_Brent McMahon CEO_
Printed Name and Title

EXHIBIT 2

EXHIBIT 2

# Chaparral Fifth Wheels

# Forest River, Inc
## 55470 CR 1
## Elkhart, Indiana 46515-3030
## &
## Mega RV dba McMahon's RV
## 6441 Burt Rd. #10
## Irvine, CA 92618
## Dlr. # 0008780

## RV Dealer Sales and Service Agreement

This RV Dealer Sales and Service Agreement is made and entered into by and between Forest River, Inc (manufacturer) and the Dealer set forth in the Dealer Information Attachment (dealer).

## Appointment of Dealer

Manufacturer hereby appoints Dealer as an authorized retail dealer for the sale and service of manufacturer's brand line listed in the Product Line Attachment upon the terms and conditions set forth in the General Provisions Addendum and in the Service Policy Manual, both of which are incorporated herein by reference and will be considered part of this agreement.

## Location

Dealer shall operate only from the location(s) listed in the Dealer Information Attachment.

## Territory

The territory(ies) are listed in the Product Line Attachment and will be addressed in the General Provisions Addendum and will be based upon a dealer maintaining the minimum inventory and annual sales requirements for the assigned sales territory(ies) as listed in the Product Line Attachment. Manufacturer reserves the right to adjust the Territory as it deems necessary in the exercise of its business judgment based on facts and circumstances at the time of any adjustment, and will provide written notice to Dealer of any adjustment.

# General Provisions Addendum to Forest River, Inc's RV Dealer Sales and Service Agreement

## 1.) Territory

    A.) Manufacturer will not sell any product line granted to Dealer to any other retailer for sales from such retailer's permanent sales facility located within the territory and which would compete with Dealer's sale of the product line to retail customers in the territory.

    B.) Manufacturer reserves the right to sell the product line directly for export and directly to governmental and political agencies, national and commercial accounts and organizations in the business of renting recreational vehicles and/or other vehicles.

    C.) Nothing in this Agreement precludes Dealer from representing RV products manufactured by others. However, if Dealer does add other Rv products in addition to those products represented at the time of execution of this Agreement, or if Dealer expands its representation of its existing products, Dealer will immediately notify Manufacturer in writing and Manufacturer may immediately revise the described territory, as Dealer's ability to penetrate the market area in the territory as agreed may be diluted by the addition of other products or expansion of representation of current products.

## 2.) Changes in Dealer's Location

    A.) Dealer may move its operations to a new location in the same vicinity within its territory with the prior written consent of the Manufacturer, which consent will not be unreasonably withheld.

    B.) Dealer agrees to notify Manufacturer confidentially in writing at least thirty (30) days before entering into any agreement or letter of intent with respect to a proposed sale, transfer, consolidation or merger of Dealer's business.

## 3.) Authorized Product Lines

    A.) **The obligations to maintain Required Minimum Inventory and meet the Annual Sales Levels are a condition of this contract.** Each Authorized Product Line requires Dealer's satisfaction of the Minimum Inventory and Sales Requirements per the individual product lines. Failure to do so may cause either a reduction in the territory or a termination with respect to a single Product Line or the whole Agreement.

B.) Manufacturer may discontinue or modify the Product at any time without notice or obligation, except Dealer will not be obligated to purchase Product that has been substantially changed after order was placed.

C.) Dealer's obligations to maintain Required Minimum Inventory and Annual Sales Level are dependent on the ability of Manufacturer to provide such inventory to Dealer. Manufacturer makes no representation or promise as to its ability to provide any specific number of Products at any specific times or dates in the future.

## 4.) Orders for Products

A.) Manufacturer reserves the right, in its sole discretion, to allocate products among dealers if there is a shortage, or if orders exceed Manufacturer's capacity.

B.) Manufacturer will use its best efforts to fill orders it accepts as promptly as practicable. Manufacturer will not be liable for any delay or failure to deliver product caused by labor disruption, shortages, civil strife, acts of God, or other causes beyond the control of the manufacturer.

C.) All sales shall be F.O.B. Manufacturer's plant and the risk of loss passes at the time of delivery to Dealer's representative or common carrier.

## 5.) Dealer's Financial Statements

A.) Dealer shall provide Manufacturer, not later than thirty (30) days following Dealer's execution of the Dealer Sales and Service Agreement, a copy of tts latest year-end financial statements prepared by independent public accounts or certified by a principal of Dealer. If Dealer's financial statements are audited, Dealer shall provide Manufacturer with its most recent audited financial statements.

## 6.) Confidentiality

A.) Dealer agrees to keep confidential and not disclose, directly or indirectly, any information that Manufacturer designates as confidential, except as required by law.

## 7.) Shows

A.) Dealer may only enter and display Products for sale in sanctioned shows within Dealer's assigned territory, in which Dealer's participation is permitted under the show rules.

B.) Manufacturer reserves the right to assign another Dealer to participate in any sanctioned retail show in which Dealer fails to provide adequate representation.

C.) Manufacturer reserves the right to designate dealer participants for industry sponsored shows and rallies (i.e., RVIA, RVDA, state associations, FMCA Shows and Rallies, not limited to) and/or any nationally-sponsored events.

## 8.) Warranty Service

- A.) Dealer agrees to comply with all requirements and procedures contained in the Policy and Procedure Manual.
- B.) Dealer agrees to notify Manufacturer's management immediately in writing when any problem accomplishing warranty repairs cannot be completed in a timely manner so Manufacturer can address the issue in a timely manner. Dealer further agrees to complete repairs through out the warranty period in compliance with all applicable state laws and regulations
- C.) Dealer will provide Manufacturer in writing with information as to what minimum retail labor rate is. Dealer will warrant that such rates are competitive. Dealer will keep this information up to date.

## 9.) Minimum Inventory Levels and Annual Sales Levels

- A.) Dealer agrees that any time inventory levels fall below the Minimum Inventory Levels required per product lines, this deficiency will be corrected within 10 days.
- B.) Dealer agrees that failure to maintain either Minimum Inventory Levels or Annual Sales Levels will be grounds for rightful termination by Manufacturer.

## 10,) Customer Relations and Advertising

- A.) Dealer agrees to maintain excellent relations with all customers for Manufacturer's products by using best efforts to achieve the highest possible level of customer satisfaction.
- B.) Dealer agrees to comply with the highest ethical standards in advertising Products to the public. Manufacturer reserves the right to require Dealer to terminate any and all advertising that it, in its sole discretion finds unethical and so advises Dealer in writing.

## 11.) Manufacturer's Indemnity of Dealer

A.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Dealer in an action concerning bodily injury or property damage arising out of an occurrence caused solely by a defect or alleged defect existing or claimed to have existed in a Manufacturer Product at the time title to said Product passed to Dealer, provided:
   I.) That the defect could not have reasonably been discovered by Dealer during the pre-delivery inspection of the Product required by this Agreement: and
   II.) Manufacturer did not notify Dealer in writing of such defect prior to delivery of the Product to the first retail customer.

B.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims that during the term of this Agreement may arise, commence or be asserted against Dealer in an action concerning state or federal "lemon" laws with respect to a Manufacturer's RV Product, provided;
   I.) Dealer complied with this Agreement and all requirements set forth in the Service Policies and Procedures Manual in effect at the time of the service of the RV Product subject to litigation.
   II.) Dealer was not negligent in the performance of warranty and other service work with respect to the RV Product subject to litigation.
   III.) Dealer has no independent responsibility for the customer's damages.

C.) Upon Dealer's timely written request, Manufacturer shall indemnify and hold Dealer harmless from any and all settlements made which are approved by Manufacturer and final judgments rendered with respect to any of the claims described in this Section 11; provided, however, Dealer promptly notifies Manufacturer in writing of the assertion of such claim and the commencement of such action against Dealer and cooperate fully with any action concerning product sold by Dealer even if Dealer was never a party of such action in such manner and to such extent as Manufacturer may require.

## 12.) Dealer's Indemnity of Manufacturer

Upon Manufacturer's timely written request, Dealer shall defend and indemnify Manufacturer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Manufacturer in an action concerning:

A.) Dealer's failure or alleged failure to comply, in whole or in part, with any obligation of Dealer under this Agreement;

B.) Any actual or alleged negligence, error, omission or act of Dealer in connection with the preparation, modification, repair or service (including warranty service) by Dealer of Manufacturer Products;

C.) Any act or omission of Dealer that allegedly damages Manufacturer's product or causes personal injury or other property damage;

D.) Any modification made by or on behalf of Dealer to Manufacturer Products, except those made pursuant to the express instruction or with the express approval of Manufacturer;

E.) Any actions regarding Dealer installed equipment;

F.) Dealer's breach or alleged breach of any agreement between Dealer and Dealer's customer or other third party; or

G.) Misleading statements, misrepresentations or deceptive or unfair practices or allegations of misleading statements, misrepresentations or deceptive or unfair practices by Dealer, directly or indirectly, to Manufacturer, a customer or third party.

## 13.) General Provision

A.) Entire Agreement. This Agreement is the entire agreement between the parties, and each acknowledges that any other agreement, statement, representation or promise will not be binding unless executed in writing by Dealer and by the authorized representative of Manufacturer and attached to this Agreement. An express, written waiver of any provision of the Agreement does not constitute a waiver of any other provisions, nor will any waiver constitute a continuing waiver. There shall be no implied or oral waivers of any term of this Agreement.

B.) Applicable Law. This agreement shall be governed by and construed in accordance with the laws of the State of Indiana.

C.) Notices. Any written notices required by this Agreement shall be sent by certified mail, return receipt requested.

# Product Line Attachment

Dealer is authorized to purchase from Forest River, Inc. and to sell the Forest River RV Product listed below and parts and accessories for that Product and agrees to maintain the inventory and sales levels spelled out as follows to service the assigned territory.

**Product Line:**

Chaparral Fifth Wheels

**Minimum inventory level (units) :**

18 (6 fifth wheels per location)

**Annual sales level (units):**

54

Territory Counties: All of Orange County, CA., all of Riverside County, CA., and San Bernardino County, CA. east of I-15 and south of I-210.

# Product Line Attachment

Dealer is authorized to purchase from Forest River, Inc. and to sell the Forest River RV Product listed below and parts and accessories for that Product and agrees to maintain the inventory and sales levels spelled out as follows to service the assigned territory.

**Product Line:**

Brookstone Fifth Wheels

**Minimum inventory level (units)** :

15 (5 units per location)

**Annual sales level (units):**

45

Territory Counties: All of Orange County, CA., all of Riverside County, CA., and San Bernardino County, CA. east of I-15 and south of I-210.

## Dealer Information Attachment

Dealership Legal Name:  Mega RV

Dealership Name (dba)   McMahons RV

Dealer Number: 0008780   Retail License Number:

Indicate which applies:

Corporation / Partnership / Limited Liability Company / Proprietorship

**Corporate (Orange County location)**
Street address:   6441 Burt Road #10
City:  Irvine
State:  California
Zip Code:  92618

**Corporate (Riverside County location)**
Street address:   77850 Varner Rd.
City:  Palm Desert
State:  California
Zip Code:  92211

**Corporate (San Bernardino County location)**
Street address:   1313 RV Center Dr. #12
City:  Colton
State:  California
Zip Code:  92324

The following person is authorized to act on behalf of Dealership on all matters
concerning this agreement:

Brent McMahon, Owner
Printed Name and Title

Signature                    Date  7/10/09

Authorized by Forest River, Inc:

Joe Greenlee, CFO
Printed Name and Title

Signature                    Date  7-23-09

EXHIBIT "2"        PAGE 51

## Term of Agreement

The term of this agreement shall begin on *July 1, 2009* and end on
*January 1, 2011* unless terminated sooner in accordance with the General Provisions
Addendum. The parties agree that this Agreement, including all attachments which have
been executed by their authorized officers, will be effective on the date signed by the
Manufacturer.

### Mega RV dba McMahons RV

By: _____  Date: 7/13/09

Name: Brent McMahon_____

Title: Owner, McMahon's RV_____

### Forest River, Inc.

By: _____  Date: 7.23.09

Name: Joe Greenlee_____

* Title: Chief Financial Officer_____

* Must be signed by the Forest River General Manager of the brand line listed in the
Product Line Attachment



2372 CENTURY DR.   *   GOSHEN, IN  46528   *   PH: (574) 642-3119   *   FX: (574) 970-6891

McMahons RV                                                     February 6, 2012
6441 Burt Rd #10
Irvine, CA 92618

Bobby,

Enclosed please find the following:
- Completed w/original signature OL124's for both Irvine & Colton locations.

- The original copies of Dealer Agreements/Contracts for both Irvine & Colton locations for Aviator.

  - Each contract is 9 pages. The first 7 pages are for you to retain for your records. The last 2 pages, already signed by Kevin McArt, Aviator GM, require a McMahon's RV authorized signature & originals returned to Aviator.
  - Page titled "Dealership Information Attachment" also requires your retail License # and choice of business structure. (Corp, LLC, etc) Please provide that information.

- Prepaid and prepared UPS overnight envelope to return original signed contracts.

  - Please retain a copy for your records.

If you have any questions or concerns regarding Dealer Agreements and/or OL124's, please do not hesitate contacting me.


Best regards,

Kristin Griffin
Forest River Inc.
Surveyor/r.pod Division #37
WC Surveyor/r.pod Division #47
Aviator Division #57
574/642.3119 x 213
574/970.6891 (FAX)
kgriffin@forestriverinc.com

IRVINE, CA

**Forest River, Inc**
**55470 CR 1**
**Elkhart, Indiana 46515-3030**

### RV Dealer Sales and Service Agreement

This RV Dealer Sales and Service Agreement is made and entered into by and between
Forest River, Inc (manufacturer) and the Dealer set forth in the Dealer Information
Attachment (dealer).

### Appointment of Dealer

Manufacturer hereby appoints Dealer as an authorized retail dealer for the sale and
service of manufacturer's brand line listed in the Product Line Attachment upon the terms
and conditions set forth in the General Provisions Addendum and in the Service Policy
Manual, both of which are incorporated herein by reference and will be considered part
of this agreement.

### Location

Dealer shall operate only from the location(s) listed in the Dealer Information
Attachment.

### Territory

The territory(ies) are listed in the Product Line Attachment and will be addressed in the
General Provisions Addendum and will be based upon a dealer maintaining the minimum
inventory and annual sales requirements for the assigned sales territory(ies) as listed in
the Product Line Attachment. Manufacturer reserves the right to adjust the Territory as it
deems necessary in the exercise of its business judgment based on facts and
circumstances at the time of any adjustment, and will provide written notice to Dealer of
any adjustment.

# General Provisions Addendum to Forest River, Inc's RV Dealer Sales and Service Agreement

## 1.) Territory

A.) Manufacturer will not sell any product line granted to Dealer to any other retailer for sales from such retailer's permanent sales facility located within the territory and which would compete with Dealer's sale of the product line to retail customers in the territory.

B.) Manufacturer reserves the right to sell the product line directly for export and directly to governmental and political agencies, national and commercial accounts and organizations in the business of renting recreational vehicles and/or other vehicles.

C.) Nothing in this Agreement precludes Dealer from representing RV products manufactured by others. However, if Dealer does add other RV products in addition to those products represented at the time of execution of this Agreement, or if Dealer expands its representation of its existing products, Dealer will immediately notify Manufacturer in writing and Manufacturer may immediately revise the described territory, as Dealer's ability to penetrate the market area in the territory as agreed may be diluted by the addition of other products or expansion of representation of current products.

## 2.) Changes in Dealer's Location

A.) Dealer may move its operations to a new location in the same vicinity within its territory with the prior written consent of the Manufacturer, which consent will not be unreasonably withheld.

B.) Dealer agrees to notify Manufacturer confidentially in writing at least thirty (30) days before entering into any agreement or letter of intent with respect to a proposed sale, transfer, consolidation or merger of Dealer's business.

## 3.) Authorized Product Lines

A.) **The obligations to maintain Required Minimum Inventory and meet the Annual Sales Levels are a condition of this contract.** Each Authorized Product Line requires Dealer's satisfaction of the Minimum Inventory and Sales Requirements per the individual product lines. Failure to do so may cause either a reduction in the territory or a termination with respect to a single Product Line or the whole Agreement.

B.) Manufacturer may discontinue or modify the Product at any time without notice or obligation, except Dealer will not be obligated to purchase Product that has been substantially changed after order was placed.

C.) Dealer's obligations to maintain Required Minimum Inventory and Annual Sales Level are dependent on the ability of Manufacturer to provide such inventory to Dealer. Manufacturer makes no representation or promise as to its ability to provide any specific number of Products at any specific times or dates in the future.

## 4.) Orders for Products

A.) Manufacturer reserves the right, in its sole discretion, to allocate products among dealers if there is a shortage, or if orders exceed Manufacturer's capacity.

B.) Manufacturer will use its best efforts to fill orders it accepts as promptly as practicable. Manufacturer will not be liable for any delay or failure to deliver product caused by labor disruption, shortages, civil strife, acts of God, or other causes beyond the control of the manufacturer.

C.) All sales shall be F.O.B. Manufacturer's plant and the risk of loss passes at the time of delivery to Dealer's representative or common carrier.

## 5.) Dealer's Financial Statements

A.) Dealer shall provide Manufacturer, not later than thirty (30) days following Dealer's execution of the Dealer Sales and Service Agreement, a copy of tts latest year-end financial statements prepared by independent public accounts or certified by a principal of Dealer. If Dealer's financial statements are audited, Dealer shall provide Manufacturer with its most recent audited financial statements.

## 6.) Confidentiality

A.) Dealer agrees to keep confidential and not disclose, directly or indirectly, any information that Manufacturer designates as confidential, except as required by law.

## 7.) Shows

A.) Dealer may only enter and display Products for sale in sanctioned shows within Dealer's assigned territory, in which Dealer's participation is permitted under the show rules.

B.) Manufacturer reserves the right to assign another Dealer to participate in any sanctioned retail show in which Dealer fails to provide adequate representation.

C.) Manufacturer reserves the right to designate dealer participants for industry sponsored shows and rallies (i.e., such as but not limited to: RVIA, RVDA, state associations, FMCA Shows and Rallies,) and/or any nationally-sponsored events.

## 8.) Warranty Service

A.) Dealer agrees to comply with all requirements and procedures contained in the Policy and Procedure Manual.

B.) Dealer agrees to notify Manufacturer's management immediately and in writing as to any problem accomplishing warranty repairs that cannot be completed in a timely manner so Manufacturer can address the issue. Dealer further agrees to complete repairs through out the warranty period in compliance with all applicable state laws and regulations.

C.) Dealer will provide Manufacturer in writing with information as to what Dealer's minimum retail labor rate is. Dealer will warrant that such rates are competitive. Dealer will keep this information up to date.

## 9.) Minimum Inventory Levels and Annual Sales Levels

A.) Dealer agrees that any time inventory levels fall below the Minimum Inventory Levels required per product lines, this deficiency will be corrected within 10 days.

B.) Dealer agrees that failure to maintain either Minimum Inventory Levels or Annual Sales Levels will be grounds for rightful termination by Manufacturer.

## 10,) Customer Relations and Advertising

A.) Dealer agrees to maintain excellent relations with all customers for Manufacturer's products by using best efforts to achieve the highest possible level of customer satisfaction.

B.) Dealer agrees to comply with the highest ethical standards in advertising Products to the public. Manufacturer reserves the right to require Dealer to terminate any and all advertising that it, in its sole discretion finds unethical and so advises Dealer in writing.

## 11.) Manufacturer's Indemnity of Dealer

A.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Dealer in an action concerning bodily injury or property damage arising out of an occurrence caused solely by a defect or alleged defect existing or claimed to have existed in a Manufacturer Product at the time title to said Product passed to Dealer, provided:

   I.) That the defect could not have reasonably been discovered by Dealer during the pre-delivery inspection of the Product required by this Agreement: and

   II.) Manufacturer did not notify Dealer in writing of such defect prior to delivery of the Product to the first retail customer.

B.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims that during the term of this Agreement may arise, commence or be asserted against Dealer in an action concerning state or federal "lemon" laws with respect to a Manufacturer's RV Product, provided;

   I.) Dealer complied with this Agreement and all requirements set forth in the Service Policies and Procedures Manual in effect at the time of the service of the RV Product subject to litigation.

   II.) Dealer was not negligent in the performance of warranty and other service work with respect to the RV Product subject to litigation.

   III.) Dealer has no independent responsibility for the customer's damages.

C.) Upon Dealer's timely written request, Manufacturer shall indemnify and hold Dealer harmless from any and all settlements made which are approved by Manufacturer and final judgments rendered with respect to any of the claims described in this Section 11; provided, however, Dealer promptly notifies Manufacturer in writing of the assertion of such claim and the commencement of such action against Dealer and cooperate fully with any action concerning product sold by Dealer even if Dealer was never a party of such action in such manner and to such extent as Manufacturer may require.

## 12.) Dealer's Indemnity of Manufacturer

Upon Manufacturer's timely written request, Dealer shall defend and indemnify Manufacturer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Manufacturer in an action concerning:

A.) Dealer's failure or alleged failure to comply, in whole or in part, with any obligation of Dealer under this Agreement;

B.) Any actual or alleged negligence, error, omission or act of Dealer in connection with the preparation, modification, repair or service (including warranty service) by Dealer of Manufacturer Products;

C.) Any act or omission of Dealer that allegedly damages Manufacturer's product or causes personal injury or other property damage;

D.) Any modification made by or on behalf of Dealer to Manufacturer Products, except those made pursuant to the express instruction or with the express approval of Manufacturer;

E.) Any actions regarding Dealer installed equipment;

F.) Dealer's breach or alleged breach of any agreement between Dealer and Dealer's customer or other third party; or

G.) Misleading statements, misrepresentations or deceptive or unfair practices or allegations of misleading statements, misrepresentations or deceptive or unfair practices by Dealer, directly or indirectly, to Manufacturer, a customer or third party.

## 13.) General Provision

A.) Entire Agreement. This Agreement is the entire agreement between the parties, and each acknowledges that any other agreement, statement, representation or promise will not be binding unless executed in writing by Dealer and by the authorized representative of Manufacturer and attached to this Agreement. An express, written waiver of any provision of the Agreement does not constitute a waiver of any other provisions, nor will any waiver constitute a continuing waiver. There shall be no implied or oral waivers of any term of this Agreement.

B.) Applicable Law. This agreement shall be governed by and construed in accordance with the laws of the State of Indiana.

C.) Notices. Any written notices required by this Agreement shall be sent by certified mail, return receipt requested.

# Product Line Attachment

Dealer is authorized to purchase from Forest River, Inc. and to sell the Forest River RV Product listed below and parts and accessories for the Product and agrees to maintain the inventory and sales levels spelled out as follows to service the assigned territory.

**Product Line:** _____ Aviator _____

**Minimum Inventory Level (units):** _____ Two  (2) _____

**Annual Sales Level (units):** _____ Eight  (8) _____

**Territory (counties):** _____ Los Angeles, Orange, Riverside and San Bernardino _____

# Terms of Agreement

The term of this agreement shall begin on **February 7, 2012** and end on **February 7, 2013** unless terminated sooner in accordance with the General Provisions Addendum. The parties agree that this Agreement, including all attachments which have been executed by their authorized officers, will be effective on the date signed by the Manufacturer.

**Dealer:** _____

    **By:** _____    **Date:** _____

    **Name:** _____

    **Title:** _____

**Forest River, Inc.:** _AVIATOR_ _DIVISION_

    **By:** _____    **Date:** 2/6/2012

    **Name:** Kevin McArt

    **Title:** General Manager

# Dealership Information Attachment

**Dealership Legal Name:** _Mega RV_

**Dealership Name (dba):** _McMahon RV_

**Dealer Number:** _0008708_

**Retail License Number:** _____

**Indicate which applies:**

      Corporation / Partnership / Limited Liability Company / Proprietorship

**Street Address:** _6441 Burt Road #10_

**City:** _Irvine_

**State:** _California_

**Zip Code:** _92618_

The following person is authorized to act on behalf of Dealership on all matters concerning this agreement:

_____

Printed Name and Title             Signature           Date

Authorized by Forest River, Inc:

Kevin McArt _2/6/2012_

Kevin McArt, Aviator General Manager (print)     Signature         Date


Colton, CA

**Forest River, Inc**
**55470 CR 1**
**Elkhart, Indiana 46515-3030**

### RV Dealer Sales and Service Agreement

This RV Dealer Sales and Service Agreement is made and entered into by and between Forest River, Inc (manufacturer) and the Dealer set forth in the Dealer Information Attachment (dealer).

### Appointment of Dealer

Manufacturer hereby appoints Dealer as an authorized retail dealer for the sale and service of manufacturer's brand line listed in the Product Line Attachment upon the terms and conditions set forth in the General Provisions Addendum and in the Service Policy Manual, both of which are incorporated herein by reference and will be considered part of this agreement.

### Location

Dealer shall operate only from the location(s) listed in the Dealer Information Attachment.

### Territory

The territory(ies) are listed in the Product Line Attachment and will be addressed in the General Provisions Addendum and will be based upon a dealer maintaining the minimum inventory and annual sales requirements for the assigned sales territory(ies) as listed in the Product Line Attachment. Manufacturer reserves the right to adjust the Territory as it deems necessary in the exercise of its business judgment based on facts and circumstances at the time of any adjustment, and will provide written notice to Dealer of any adjustment.

# General Provisions Addendum to Forest River, Inc's RV Dealer Sales and Service Agreement

### 1.) Territory

    A.) Manufacturer will not sell any product line granted to Dealer to any other retailer for sales from such retailer's permanent sales facility located within the territory and which would compete with Dealer's sale of the product line to retail customers in the territory.

    B.) Manufacturer reserves the right to sell the product line directly for export and directly to governmental and political agencies, national and commercial accounts and organizations in the business of renting recreational vehicles and/or other vehicles.

    C.) Nothing in this Agreement precludes Dealer from representing RV products manufactured by others. However, if Dealer does add other RV products in addition to those products represented at the time of execution of this Agreement, or if Dealer expands its representation of its existing products, Dealer will immediately notify Manufacturer in writing and Manufacturer may immediately revise the described territory, as Dealer's ability to penetrate the market area in the territory as agreed may be diluted by the addition of other products or expansion of representation of current products.

### 2.) Changes in Dealer's Location

    A.) Dealer may move its operations to a new location in the same vicinity within its territory with the prior written consent of the Manufacturer, which consent will not be unreasonably withheld.

    B.) Dealer agrees to notify Manufacturer confidentially in writing at least thirty (30) days before entering into any agreement or letter of intent with respect to a proposed sale, transfer, consolidation or merger of Dealer's business.

### 3.) Authorized Product Lines

    A.) **The obligations to maintain Required Minimum Inventory and meet the Annual Sales Levels are a condition of this contract.** Each Authorized Product Line requires Dealer's satisfaction of the Minimum Inventory and Sales Requirements per the individual product lines. Failure to do so may cause either a reduction in the territory or a termination with respect to a single Product Line or the whole Agreement.

B.) Manufacturer may discontinue or modify the Product at any time without notice or obligation, except Dealer will not be obligated to purchase Product that has been substantially changed after order was placed.

C.) Dealer's obligations to maintain Required Minimum Inventory and Annual Sales Level are dependent on the ability of Manufacturer to provide such inventory to Dealer. Manufacturer makes no representation or promise as to its ability to provide any specific number of Products at any specific times or dates in the future.

## 4.) Orders for Products

A.) Manufacturer reserves the right, in its sole discretion, to allocate products among dealers if there is a shortage, or if orders exceed Manufacturer's capacity.

B.) Manufacturer will use its best efforts to fill orders it accepts as promptly as practicable. Manufacturer will not be liable for any delay or failure to deliver product caused by labor disruption, shortages, civil strife, acts of God, or other causes beyond the control of the manufacturer.

C.) All sales shall be F.O.B. Manufacturer's plant and the risk of loss passes at the time of delivery to Dealer's representative or common carrier.

## 5.) Dealer's Financial Statements

A.) Dealer shall provide Manufacturer, not later than thirty (30) days following Dealer's execution of the Dealer Sales and Service Agreement, a copy of tts latest year-end financial statements prepared by independent public accounts or certified by a principal of Dealer. If Dealer's financial statements are audited, Dealer shall provide Manufacturer with its most recent audited financial statements.

## 6.) Confidentiality

A.) Dealer agrees to keep confidential and not disclose, directly or indirectly, any information that Manufacturer designates as confidential, except as required by law.

## 7.) Shows

A.) Dealer may only enter and display Products for sale in sanctioned shows within Dealer's assigned territory, in which Dealer's participation is permitted under the show rules.

B.) Manufacturer reserves the right to assign another Dealer to participate in any sanctioned retail show in which Dealer fails to provide adequate representation.

C.) Manufacturer reserves the right to designate dealer participants for industry sponsored shows and rallies (i.e., such as but not limited to: RVIA, RVDA, state associations, FMCA Shows and Rallies,) and/or any nationally-sponsored events.

## 8.) Warranty Service

A.) Dealer agrees to comply with all requirements and procedures contained in the Policy and Procedure Manual.

B.) Dealer agrees to notify Manufacturer's management immediately and in writing as to any problem accomplishing warranty repairs that cannot be completed in a timely manner so Manufacturer can address the issue. Dealer further agrees to complete repairs through out the warranty period in compliance with all applicable state laws and regulations.

C.) Dealer will provide Manufacturer in writing with information as to what Dealer's minimum retail labor rate is. Dealer will warrant that such rates are competitive. Dealer will keep this information up to date.

## 9.) Minimum Inventory Levels and Annual Sales Levels

A.) Dealer agrees that any time inventory levels fall below the Minimum Inventory Levels required per product lines, this deficiency will be corrected within 10 days.

B.) Dealer agrees that failure to maintain either Minimum Inventory Levels or Annual Sales Levels will be grounds for rightful termination by Manufacturer.

## 10,) Customer Relations and Advertising

A.) Dealer agrees to maintain excellent relations with all customers for Manufacturer's products by using best efforts to achieve the highest possible level of customer satisfaction.

B.) Dealer agrees to comply with the highest ethical standards in advertising Products to the public. Manufacturer reserves the right to require Dealer to terminate any and all advertising that it, in its sole discretion finds unethical and so advises Dealer in writing.

## 11.) Manufacturer's Indemnity of Dealer

A.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Dealer in an action concerning bodily injury or property damage arising out of an occurrence caused solely by a defect or alleged defect existing or claimed to have existed in a Manufacturer Product at the time title to said Product passed to Dealer, provided:

    I.) That the defect could not have reasonably been discovered by Dealer during the pre-delivery inspection of the Product required by this Agreement: and

    II.) Manufacturer did not notify Dealer in writing of such defect prior to delivery of the Product to the first retail customer.

B.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims that during the term of this Agreement may arise, commence or be asserted against Dealer in an action concerning state or federal "lemon" laws with respect to a Manufacturer's RV Product, provided;

    I.) Dealer complied with this Agreement and all requirements set forth in the Service Policies and Procedures Manual in effect at the time of the service of the RV Product subject to litigation.

    II.) Dealer was not negligent in the performance of warranty and other service work with respect to the RV Product subject to litigation.

    III.) Dealer has no independent responsibility for the customer's damages.

C.) Upon Dealer's timely written request, Manufacturer shall indemnify and hold Dealer harmless from any and all settlements made which are approved by Manufacturer and final judgments rendered with respect to any of the claims described in this Section 11; provided, however, Dealer promptly notifies Manufacturer in writing of the assertion of such claim and the commencement of such action against Dealer and cooperate fully with any action concerning product sold by Dealer even if Dealer was never a party of such action in such manner and to such extent as Manufacturer may require.

## 12.) Dealer's Indemnity of Manufacturer

Upon Manufacturer's timely written request, Dealer shall defend and indemnify Manufacturer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Manufacturer in an action concerning:

A.) Dealer's failure or alleged failure to comply, in whole or in part, with any obligation of Dealer under this Agreement;

B.) Any actual or alleged negligence, error, omission or act of Dealer in connection with the preparation, modification, repair or service (including warranty service) by Dealer of Manufacturer Products;

C.) Any act or omission of Dealer that allegedly damages Manufacturer's product or causes personal injury or other property damage;

D.) Any modification made by or on behalf of Dealer to Manufacturer Products, except those made pursuant to the express instruction or with the express approval of Manufacturer;

E.) Any actions regarding Dealer installed equipment;

F.) Dealer's breach or alleged breach of any agreement between Dealer and Dealer's customer or other third party; or

G.) Misleading statements, misrepresentations or deceptive or unfair practices or allegations of misleading statements, misrepresentations or deceptive or unfair practices by Dealer, directly or indirectly, to Manufacturer, a customer or third party.

## 13.) General Provision

A.) Entire Agreement. This Agreement is the entire agreement between the parties, and each acknowledges that any other agreement, statement, representation or promise will not be binding unless executed in writing by Dealer and by the authorized representative of Manufacturer and attached to this Agreement. An express, written waiver of any provision of the Agreement does not constitute a waiver of any other provisions, nor will any waiver constitute a continuing waiver. There shall be no implied or oral waivers of any term of this Agreement.

B.) Applicable Law. This agreement shall be governed by and construed in accordance with the laws of the State of Indiana.

C.) Notices. Any written notices required by this Agreement shall be sent by certified mail, return receipt requested.

## Product Line Attachment

Dealer is authorized to purchase from Forest River, Inc. and to sell the Forest River RV Product listed below and parts and accessories for the Product and agrees to maintain the inventory and sales levels spelled out as follows to service the assigned territory.

**Product Line:**     Aviator

**Minimum Inventory Level (units):**    Two  (2)

**Annual Sales Level (units):**     Eight  (8)

**Territory (counties):**  Los Angeles, Orange, Riverside and San Bernardino

## Dealership Information Attachment

**Dealership Legal Name:** _Mega RV_

**Dealership Name (dba):** _McMahon RV_

**Dealer Number:** _0008708_

**Retail License Number:** _____

**Indicate which applies:**

Corporation / Partnership / Limited Liability Company / Proprietorship

**Street Address:** _1313 RV Center Drive #12_

**City:** _Colton_

**State:** _California_

**Zip Code:** _92324_

The following person is authorized to act on behalf of Dealership on all matters concerning this agreement:

| Printed Name and Title | Signature | Date |

Authorized by Forest River, Inc:

Kevin McArt, Aviator General Manager (print)        Signature        2/6/2012
                                                                      Date

# Terms of Agreement

The term of this agreement shall begin on **February 7, 2012** and end on **February 7, 2013** unless terminated sooner in accordance with the General Provisions Addendum. The parties agree that this Agreement, including all attachments which have been executed by their authorized officers, will be effective on the date signed by the Manufacturer.

**Dealer:** _____

    **By:** _____ **Date:** _____

    **Name:** _____

    **Title:** _____

**Forest River, Inc.:** _AVIATOR   DIVISION_____

    **By:** _____ **Date:** 2/6/2012

    **Name:** Kevin McArt_____

    **Title:** General Manager_____

Coachmen RV, a division of Forest River, Inc.
Chaparral Fifth Wheels / Brookstone Fifth Wheels

Manufacturer:

## Forest River, Inc
## 55470 CR 1
## Elkhart, Indiana 46515-3030

Dealer:

Mega RV Corp dba McMahon's RV

2425 E. Main Street, Mesa, AZ 85213

### RV Dealer Sales and Service Agreement

This RV Dealer Sales and Service Agreement is made and entered into by and between Forest River, Inc (manufacturer) and the Dealer set forth in the Dealer Information Attachment (dealer).

### Appointment of Dealer

Manufacturer hereby appoints Dealer as an authorized retail dealer for the sale and service of manufacturer's brand line listed in the Product Line Attachment upon the terms and conditions set forth in the General Provisions Addendum and in the Service Policy Manual, both of which are incorporated herein by reference and will be considered part of this agreement.

### Location

Dealer shall operate only from the location(s) listed in the Dealer Information Attachment.

### Territory

The territory(ies) are listed in the Product Line Attachment and will be addressed in the General Provisions Addendum and will be based upon a dealer maintaining the minimum inventory and annual sales requirements for the assigned sales territory(ies) as listed in the Product Line Attachment. Manufacturer reserves the right to adjust the Territory as it deems necessary in the exercise of its business judgment based on facts and circumstances at the time of any adjustment, and will provide written notice to Dealer of any adjustment.

# General Provisions Addendum to Forest River, Inc's RV Dealer Sales and Service Agreement

## 1.) Territory

A.) Manufacturer will not sell any product line granted to Dealer to any other retailer for sales from such retailer's permanent sales facility located within the territory and which would compete with Dealer's sale of the product line to retail customers in the territory.

B.) Manufacturer reserves the right to sell the product line directly for export and directly to governmental and political agencies, national and commercial accounts and organizations in the business of renting recreational vehicles and/or other vehicles.

C.) Nothing in this Agreement precludes Dealer from representing RV products manufactured by others. However, if Dealer does add other RV products in addition to those products represented at the time of execution of this Agreement, or if Dealer expands its representation of its existing products, Dealer will immediately notify Manufacturer in writing and Manufacturer may immediately revise the described territory, as Dealer's ability to penetrate the market area in the territory as agreed may be diluted by the addition of other products or expansion of representation of current products.

## 2.) Changes in Dealer's Location

A.) Dealer may move its operations to a new location in the same vicinity within its territory with the prior written consent of the Manufacturer, which consent will not be unreasonably withheld.

B.) Dealer agrees to notify Manufacturer confidentially in writing at least thirty (30) days before entering into any agreement or letter of intent with respect to a proposed sale, transfer, consolidation or merger of Dealer's business.

## 3.) Authorized Product Lines

A.) **The obligations to maintain Required Minimum Inventory and meet the Annual Sales Levels are a condition of this contract.** Each Authorized Product Line requires Dealer's satisfaction of the Minimum Inventory and Sales Requirements per the individual product lines. Failure to do so may cause either a reduction in the territory or a termination with respect to a single Product Line or the whole Agreement.

B.) Manufacturer may discontinue or modify the Product at any time without notice or obligation, except Dealer will not be obligated to purchase Product that has been substantially changed after order was placed.

C.) Dealer's obligations to maintain Required Minimum Inventory and Annual Sales Level are dependent on the ability of Manufacturer to provide such inventory to Dealer. Manufacturer makes no representation or promise as to its ability to provide any specific number of Products at any specific times or dates in the future.

## 4.) Orders for Products

A.) Manufacturer reserves the right, in its sole discretion, to allocate products among dealers if there is a shortage, or if orders exceed Manufacturer's capacity.

B.) Manufacturer will use its best efforts to fill orders it accepts as promptly as practicable. Manufacturer will not be liable for any delay or failure to deliver product caused by labor disruption, shortages, civil strife, acts of God, or other causes beyond the control of the manufacturer.

C.) All sales shall be F.O.B. Manufacturer's plant and the risk of loss passes at the time of delivery to Dealer's representative or common carrier.

## 5.) Dealer's Financial Statements

A.) Dealer shall provide Manufacturer, not later than thirty (30) days following Dealer's execution of the Dealer Sales and Service Agreement, a copy of tts latest year-end financial statements prepared by independent public accounts or certified by a principal of Dealer. If Dealer's financial statements are audited, Dealer shall provide Manufacturer with its most recent audited financial statements.

## 6.) Confidentiality

A.) Dealer agrees to keep confidential and not disclose, directly or indirectly, any information that Manufacturer designates as confidential, except as required by law.

## 7.) Shows

A.) Dealer may only enter and display Products for sale in sanctioned shows within Dealer's assigned territory, in which Dealer's participation is permitted under the show rules.

B.) Manufacturer reserves the right to assign another Dealer to participate in any sanctioned retail show in which Dealer fails to provide adequate representation.

C.) Manufacturer reserves the right to designate dealer participants for industry sponsored shows and rallies (i.e., such as but not limited to: RVIA, RVDA, state associations, FMCA Shows and Rallies,) and/or any nationally-sponsored events.

## 8.) Warranty Service

A.) Dealer agrees to comply with all requirements and procedures contained in the Policy and Procedure Manual.

B.) Dealer agrees to notify Manufacturer's management immediately and in writing as to any problem accomplishing warranty repairs that cannot be completed in a timely manner so Manufacturer can address the issue. Dealer further agrees to complete repairs through out the warranty period in compliance with all applicable state laws and regulations.

C.) Dealer will provide Manufacturer in writing with information as to what Dealer's minimum retail labor rate is. Dealer will warrant that such rates are competitive. Dealer will keep this information up to date.

## 9.) Minimum Inventory Levels and Annual Sales Levels

A.) Dealer agrees that any time inventory levels fall below the Minimum Inventory Levels required per product lines, this deficiency will be corrected within 10 days.

B.) Dealer agrees that failure to maintain either Minimum Inventory Levels or Annual Sales Levels will be grounds for rightful termination by Manufacturer.

## 10,) Customer Relations and Advertising

A.) Dealer agrees to maintain excellent relations with all customers for Manufacturer's products by using best efforts to achieve the highest possible level of customer satisfaction.

B.) Dealer agrees to comply with the highest ethical standards in advertising Products to the public. Manufacturer reserves the right to require Dealer to terminate any and all advertising that it, in its sole discretion finds unethical and so advises Dealer in writing.

## 11.) Manufacturer's Indemnity of Dealer

A.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Dealer in an action concerning bodily injury or property damage arising out of an occurrence caused solely by a defect or alleged defect existing or claimed to have existed in a Manufacturer Product at the time title to said Product passed to Dealer, provided:

    I.) That the defect could not have reasonably been discovered by Dealer during the pre-delivery inspection of the Product required by this Agreement: and

    II.) Manufacturer did not notify Dealer in writing of such defect prior to delivery of the Product to the first retail customer.

B.) Upon Dealer's timely written request, Manufacturer shall defend Dealer against claims that during the term of this Agreement may arise, commence or be asserted against Dealer in an action concerning state or federal "lemon" laws with respect to a Manufacturer's RV Product, provided;

    I.) Dealer complied with this Agreement and all requirements set forth in the Service Policies and Procedures Manual in effect at the time of the service of the RV Product subject to litigation.

    II.) Dealer was not negligent in the performance of warranty and other service work with respect to the RV Product subject to litigation.

    III.) Dealer has no independent responsibility for the customer's damages.

C.) Upon Dealer's timely written request, Manufacturer shall indemnify and hold Dealer harmless from any and all settlements made which are approved by Manufacturer and final judgments rendered with respect to any of the claims described in this Section 11; provided, however, Dealer promptly notifies Manufacturer in writing of the assertion of such claim and the commencement of such action against Dealer and cooperate fully with any action concerning product sold by Dealer even if Dealer was never a party of such action in such manner and to such extent as Manufacturer may require.

## 12.) Dealer's Indemnity of Manufacturer

Upon Manufacturer's timely written request, Dealer shall defend and indemnify Manufacturer against claims, causes of action, lawsuits or other legal or equitable actions that may arise, commence or be asserted against Manufacturer in an action concerning:

A.) Dealer's failure or alleged failure to comply, in whole or in part, with any obligation of Dealer under this Agreement;

B.) Any actual or alleged negligence, error, omission or act of Dealer in connection with the preparation, modification, repair or service (including warranty service) by Dealer of Manufacturer Products;

C.) Any act or omission of Dealer that allegedly damages Manufacturer's product or causes personal injury or other property damage;

D.) Any modification made by or on behalf of Dealer to Manufacturer Products, except those made pursuant to the express instruction or with the express approval of Manufacturer;

E.) Any actions regarding Dealer installed equipment;

F.) Dealer's breach or alleged breach of any agreement between Dealer and Dealer's customer or other third party; or

G.) Misleading statements, misrepresentations or deceptive or unfair practices or allegations of misleading statements, misrepresentations or deceptive or unfair practices by Dealer, directly or indirectly, to Manufacturer, a customer or third party.

## 13.) General Provision

A.) <u>Entire Agreement.</u> This Agreement is the entire agreement between the parties, and each acknowledges that any other agreement, statement, representation or promise will not be binding unless executed in writing by Dealer and by the authorized representative of Manufacturer and attached to this Agreement. An express, written waiver of any provision of the Agreement does not constitute a waiver of any other provisions, nor will any waiver constitute a continuing waiver. There shall be no implied or oral waivers of any term of this Agreement.

B.) <u>Applicable Law</u>. This agreement shall be governed by and construed in accordance with the laws of the State of Indiana.

C.) <u>Notices.</u> Any written notices required by this Agreement shall be sent by certified mail, return receipt requested.

# Term of Agreement

The term of this agreement shall begin on <u>January 1, 2011</u> and end on <u>December 31, 2012</u> unless terminated sooner in accordance with the General Provisions Addendum. The parties agree that this Agreement, including all attachments which has been executed by their authorized officers, will be effective on the date signed by the Manufacturer.

## Dealer

By: ✕ _____   Date: <u>2/15/11</u>

Name: <u>Brent McMahon</u>

Title: <u>President</u>

## Forest River, Inc.

By: _____   Date: _____

Name: _____

* Title: _____

* Must be signed by the Forest River General Manager of the brand line listed in the Product Line Attachment

**Dealer Information Attachment**

Dealership Legal Name:  Mega RV Corp

Dealership Name (dba): McMahons RV

Dealer Number:          Retail License Number

Indicate which applies:

Corporation / Partnership / Limited Liablility Company / Proprietorship

Arizona Main Location- Mesa
2425 E. Main St. Mesa, AZ. 85213

Yuma Location
6772 E. 32nd St. Yuma, AZ. 85362

Quartzsite Location
640 So. Central Blvd./Hwy 95 Quartzsite, AZ. 85346

Parker Location
900 Riverside Dr. Parker, AZ. 85344

The following person is authorized to act on behalf of Dealership in all matters
Concerning this agreement:

Brent McMahon, President    ✕ _____    Date _____
Printed Name and Title              Signature

Authorized by Forest River, Inc.

_____Date_____
Printed Name and Title

# Product Line Attachment

Dealer is authorized to purchase from Forest River, Inc. and to sell the Forest River RV Product listed below and parts and accessories for that Product and agrees to maintain the inventory and sales levels spelled out as follows to service the assigned territory.

Product Line ____Chapparal Fifth Wheels_____

_____Brookstone Fifth Wheels_____

_____

_____

Minimum inventory level (units) _____

_____Chapparal - 4_____

_____Brookstone - 4_____

_____

Annual sales level (units) _____

_____Chapparal - 16_____

_____Brookstone - 16_____

_____

Territory ____The following counties in the State of Arizona: Mohave County;

Coconino County; Navajo County; Apache County; Gila County; Yavapai County;

La Paz County; Yuma County; Maricopa County; Pinal County; Graham County;

Pima County; Cochise County; Greenlee County

# EXHIBIT 3

EXHIBIT 3

# GOE & FORSYTHE, LLP

Robert P. Goe
California State Bar No. 137019

18101 Von Karman Avenue, Suite 510
Irvine, CA 92612
(949) 798-2460

Direct Dial (949) 798-2461
Facsimile (949) 955-9437
rgoe@goeforlaw.com

December 11, 2014

**Via E-mail:  rgolubow@winthropcouchot.com**
Richard H. Golubow, Esq.
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, 4th Floor
Newport Beach, CA 92660

> **Re:   Leased Property Located at 5400 Garden Grove Blvd.,**
> **Westminster, CA 92683**
> **Mega RV Corp., USBC Case No. 8:14-bk-13770-MW**

Dear Richard:

This firm represents Mega RV Corp. ("Debtor") in the above-referenced bankruptcy case.

Old Ranch Properties, LLC ("Old Ranch") is the owner and landlord of the commercial real property commonly known as 5400 Garden Grove Boulevard, Westminster, CA 92683 ("Property"). Old Ranch and the Debtor have entered into a series of agreements related to the Property.

The Debtor has ceased operations and since then has used the Property for storage of its personal property. On or about June 15, 2014 (the "Petition Date"), the Debtor filed for protection under chapter 11 of the Bankruptcy Code. While Old Ranch was granted relief to take possession of the Property by the above-entitled Court, Old Ranch did not commence any such proceeding and the Debtor continued to store its personal property on the Properties.

As you are further aware, there are on-going negotiations between Debtor, Old Ranch and a third-party buyer ("Buyer"), who desire to keep Debtor's FF and E in place which is to the benefit of all parties.

Accordingly, the Debtor hereby surrenders and tenders, effective immediately, possession of the Property to Old Ranch. Further, pursuant to my discussions with Mike Issa, Old Ranch has agreed Debtor can leave its FF and E on the Property pending on-going negotiations with Buyer, free of charge. In the event the Buyer is unable to consummate a sale, Old Ranch agrees Debtor can retrieve its FF and E. Please confirm.

Richard H. Golubow, Esq.
Page 2
December 11, 2014

Debtor reserves all its rights and remedies against Old Ranch.

Very truly yours,

GOE & FORSYTHE, LLP

By: _____
    Robert P. Goe

RPG/ss

cc:   Client
      J. Michael Issa (via email)
      Brian L. Davidoff, Esq. (via email)
      Courtney Pozmantier, Esq. (via email)

# EXHIBIT 4

EXHIBIT 4



660 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660
TEL: (949) 720-4100
FAX: (949) 720-4111
WWW.WINTHROPCOUCHOT.COM

PAUL J. COUCHOT
RICHARD H. GOLUBOW
GARRICK A. HOLLANDER
JEANNIE KIM
ANDREW LEVIN

PETER W. LIANIDES
*SEAN A. O'KEEFE
ROBERT E. OPERA
MARC J. WINTHROP

*OF COUNSEL

December 16, 2014

rgoe@goeforlaw.com
Robert P. Goe, Esq.
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612

   **Re:**  *Mega RV Corp and Old Ranch Properties, LLC*

Dear Rob:

This letter is in response to your letter dated December 11, 2014.

I am aware that there are ongoing negotiations with a third party interested in purchasing the Debtor's FF&E and entering into a lease for the Property. While Old Ranch and the third party are engaged in good faith negotiations, no agreement has been reached. Furthermore, we understand that any purchase of the FF&E and the parts and inventory that are property of the Debtor's estate, is contingent upon the third party being approved by several franchisors for the sale and or lease of RVs. Such approval is beyond the control of Old Ranch and ultimately may not be provided.

Contrary to Mike Issa's belief or understanding, I have been informed that Old Ranch has NOT agreed to store the FF&E, parts and inventory free of charge. Thus, post-petition administrative rental charges continue to accrue. Old Ranch will, however, consider providing a financial accommodation to the Debtor's estate upon (i) payment of or satisfactory assurances that its administrative claim will be paid in full; (ii) the estate's delivery of a tenant that will purchase forthwith the estate assets stored at the Property at a price acceptable to the Debtor and buyer; and (iii) agreement between Old Ranch and a new tenant to terms of a lease and execution of same.

Furthermore, the motion filed by Old Ranch to compel surrender of the Property was granted by Court order entered on November 24, 2014. Therefore, Old Ranch's right to immediate possession and to exercise all rights and remedies available under the lease and applicable state law accrued from the date of the deemed rejection. In other words, Old Ranch is NOT required



Robert P. Goe, Esq.
GOE & FORSYTHE, LLP
December 16, 2014
Page 2

to initiate an action in state court seeking a warrant of eviction of the Debtor via an unlawful detainer action.[1]

Thus, I'm not clear about the reference you've made to Old Ranch not proceeding with commencing a proceeding to take possession of the Property. Old Ranch can immediately exercise eviction proceedings as against the Debtor, **but has elected not to do so at the Debtor's request.** Old Ranch's consent to the Debtor's request does not eliminate, abridge or obviate the need for the Debtor to pay administrative rent while it continues to occupy the Property.

Very truly yours,

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

Richard H. Golubow

Cc:     Brian Davidoff, Esq. (via email)
        Courtney Pozmantier, Esq. (via email)
        Mike Issa (via email)

---

[1] See e.g., In re Elm Inn, Inc., 942 F.2d 630, 633-34 (9th Cir. 1991) ("By operation of law, the debtor's possessory interest in the lease terminated on that date [of the deemed rejection], and the lessor's **right to immediate surrender of the property simultaneously accrued**. When the Andersons filed their application for a surrender order on August 22, therefore, they were **fully entitled** to have the debtor vacate the premises."); In re Tri-Glied, Ltd., 179 B.R. 1014, 1023-24 (Bankr. E.D.N.Y. 1995) ("Since 11 U.S.C. § 365(d)(4) **mandates** that when a lease is deemed rejected 'the trustee shall immediately surrender such non residential real property to the lessor,' [lessor] is **entitled to an order** directing the Debtor to **immediately surrender** possession of the Premises."); In re Lifequest of Mt. Pleasant, Inc., 1997 WL 33344252 (Bankr. D.S.C. Nov. 19, 1997) ("In light of the clear and unambiguous wording of this statute, [lessor] is **entitled** to an **order requiring surrender**, and under these circumstances is not required to seek relief from the automatic stay or to pursue state court eviction procedures."); In re Hurst Lincoln-Mercury, Inc., 70 B.R. 815, 817 (Bankr. S.D. Ohio 1987) ("Movant is therefore **entitled** to an order that debtor surrender the real property in question to it."); In re O.P. Held, Inc., 77 B.R. 388, 391 (Bankr. N.D.N.Y. 1987) ("[T]he clear language of § 365(d)(4) **entitles** [lessor] to an **immediate surrender** of the premises by Debtor, rather than to relegation to an action in state court seeking a warrant of eviction. Code § 365(d)(4) provides that if the trustee does not properly assume the non-residential real property lease, then he 'shall immediately surrender such non-residential property to the lessor.' There can be no other interpretation that this language warrants an order of surrender, rather than an order lifting the Code § 362 stay so that state court eviction proceedings may continue."); In re Southwest Aircraft Servs., Inc., 53 B.R. 805, 811 (Bankr. C.D. Cal. 1985) ("Section 365(d)(4) **mandates** that upon the rejection of the lease that [lessor] '[s]hall immediately surrender such nonresidential real property to the lessor.' ... [Debtor] **must immediately surrender** the leased premises to the lessor.").

EXHIBIT "4"

EXHIBIT 5

EXHIBIT 5

**GOE & FORSYTHE, LLP**

Robert P. Goe
California State Bar No. 137019

18101 Von Karman Avenue, Suite 510
Irvine, CA 92612
(949) 798-2460

Direct Dial (949) 798-2461
Facsimile (949) 955-9437
rgoe@goeforlaw.com

December 18, 2014

**Via E-mail:  rgolubow@winthropcouchot.com**
Richard H. Golubow, Esq.
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, 4th Floor
Newport Beach, CA 92660

      Re:    **Leased Property Located at 5400 Garden Grove Blvd.,
             Westminster, CA 92683
             Mega RV Corp., USBC Case No. 8:14-bk-13770-MW**

Dear Richard:

      We are in receipt of your letter, dated December 16, 2014, advising that Old Ranch Properties, LLC ("Old Ranch") does not consent to Mega RV Corp. ("Debtor") storing its FF&E, parts and inventory at 5400 Garden Grove Boulevard, Westminster, CA 92683 ("Property") and claiming that post-petition administrative rental charges continue to accrue on account for such storage.

      As you know the lease agreement was previously rejected in the Debtor's bankruptcy case and the Debtor has previously surrendered possession of the Property.  As noted in my letter of December 11, the Debtor has operated under the assumption that its personal property remaining on the Property was being kept free of charge in light of the pending sale discussions.

      However in light of your letter of December 16 asserting the contrary, the Debtor hereby abandons all of its personal property on the Property and Old Ranch shall be immediately entitled to assume that all personal property of the Debtor, including, but not limited to, all furniture, fixtures, and equipment and anything else remaining on the Property owned by the Debtor are abandoned by the Debtor.  The Debtor waives effective immediately its right to notice under California Civil Code § 1993.03(a) regarding any such remaining personal property remaining on the Property, and Old Ranch may dispose of any such personal property as Old Ranch sees fit.

/ / /

/ / /

/ / /

Richard H. Golubow, Esq.
Page 2
December 18, 2014

The Debtor herein reserves all rights the challenge and oppose any and all claims asserted by Old Ranch, including those for post-petition administrative rent, as well assert affirmative claims against Old Ranch.

Very truly yours,

GOE & FORSYTHE, LLP

By: _____
Robert P. Goe

RPG/dwr

cc:     Client
        J. Michael Issa (via email)
        Brian L. Davidoff, Esq. (via email)
        Courtney Pozmantier, Esq. (via email)

EXHIBIT 6

EXHIBIT 6

ASK US ABOUT UCC eZFILE[(R)]
800.952.5696



# CLAS INFORMATION SERVICES

2020 Hurley Way, Suite 350, Sacramento, CA 95825

Local: 916/564-7800 Fax: 916/564-7900 Toll Free: 800/952-5696

## UCC Search Report

| | |
|---|---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Indexed Through** | Jan. 28, 2015 |
| **Subject Search Name** | MEGA RV CORP. |
| **Search Key Entered** | MEG* RV |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

### 1. UCC Financing Statement

| | | |
|---|---|---|
| **Document No.** | 20067067960869 | Lapses 4/26/2016 |
| **Filed** | 4/26/2006 | |
| **Debtor** | MEGA RV CORP. | |
| | 5400 GARDEN GROVE BLVD. | |
| | WESTMINSTER CA 92683 | |
| **Debtor** | MEGA RV CORP. | |
| | 6441 BURT ROAD, #10 | |
| | IRVINE CA 92618 | |
| **Secured Party** | GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION | |
| | 2625 S. PLAZA DRIVE, SUITE 201 | |
| | TEMPE AZ 85282 | |
| **Amendment Type** | Continuation | |
| **File No.** | 201072536700 | |
| **Filed** | 12/8/2010 9:55:00 AM | |
| **Amendment Type** | Amendment | |
| **File No.** | 201273068419 | |
| **Filed** | 3/30/2012 3:23:00 PM | |

### 2. UCC Financing Statement

| | | |
|---|---|---|
| **Document No.** | 20087169280576 | Lapses 8/19/2018 |
| **Filed** | 8/19/2008 | |
| **Debtor** | MEGA RV CORP | |
| | 6441 BURT RD 10 | |
| | IRVINE CA 92618 | |

Secured Party SOUTHERN CALIFORNIA AUTO AUCTION FOR ITSELF AND AS AGENT
435 METROPLEX DR ATTN: HAROLD SMITH
NASHVILLE TN 37211

Amendment Type Continuation
File No. 201373599764
Filed 5/10/2013 12:00:00 AM

### 3. UCC Financing Statement

Document No. 20097194570395                    **Lapsed 4/24/2014**
Filed 4/24/2009

Debtor MEGA RV CORPORATION
6441 BURT ROAD #10
IRVINE CA 92618

Secured Party ROADTREK MOTORHOMES, INC.
100 SHIRLEY AVENUE
KITCHENER ON N2B2E1

### 4. UCC Financing Statement

Document No. 20127324187025                    Lapses 8/9/2017
Filed 8/9/2012

Debtor MEGA RV CORP.
5400 GARDEN GROVE BOULEVARD
WESTMINSTER CA 92683

Secured Party REYNA CAPITAL CORPORATION
P.O. BOX 1474
DAYTON OH 45401

### 5. Judgement lien

Document No. 20127332979831                    Lapses 10/9/2017
Filed 10/9/2012

Debtor MEGA RV CORPORATION
5400 GARDEN GROVE BLVD.
WESTMINSTER CA 92683

Secured Party HWH CORPORATION
5 CORPORATE PARK, SUITE 220
WESTMINSTER CA 92606

### 6. UCC Financing Statement

Document No. 20137371981292                    Lapses 8/1/2018
Filed 8/1/2013

Debtor MEGA RV CORP.
5400 GARDEN GROVE BLVD
WESTMINSTER CA 92683

Secured Party AMERICAN EXPRESS BANK, FSB
4315 SOUTH 2700 WEST
SALT LAKE CITY UT 84184

### 7. UCC Financing Statement

Document No. 20147408013795                    Lapses 4/16/2019
Filed 4/16/2014

Debtor MCMAHON'S RV
5400 GARDEN GROVE BLVD.
WESTMINSTER CA 92683

Debtor MEGA RV CORP.
5400 GARDEN GROVE BLVD.
WESTMINSTER CA 92683

| Secured Party | CADE PHOENIX, LTD. |
| | 103 SHAM PENG TONG PLAZA |
| | VICTORIA MA |
| Secured Party | PORTFOLIO GENERAL MANAGEMENT GROUP, INC. |
| | 14651 DALLAS PARKWAY, SUITE 502 |
| | DALLAS TX 75254 |
| Secured Party | STANDARD GROUP RESOURCES, LTD. |
| | 14651 DALLAS PARKWAY, SUITE 502 |
| | DALLAS TX 75254 |

## 8. UCC Financing Statement

| Document No. | 20147408014069 | Lapses 4/16/2019 |
| Filed | 4/16/2014 | |
| Debtor | MCMAHON'S RV |
| | 5400 GARDEN GROVE BLVD. |
| | WESTMINSTER CA 92683 |
| Debtor | MEGA RV CORP. |
| | 5400 GARDEN GROVE BLVD. |
| | WESTMINSTER CA 92683 |
| Secured Party | DAKOTA SIOUX CO., LTD. |
| | 103 SHAM PENG TONG PLAZA |
| | VICTORIA MA |
| Secured Party | PORTFOLIO GENERAL MANAGEMENT GROUP, INC. |
| | 14651 DALLAS PARKWAY, SUITE 502 |
| | DALLAS TX 75254 |
| Secured Party | STANDARD GROUP RESOURCES, LTD. |
| | 14651 DALLAS PARKWAY, SUITE 502 |
| | DALLAS TX 75254 |

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

---------- **END OF REPORT** ----------

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Jenna Shaver<br>800-289-4488 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>GE Commercial Distribution Finance Corporation<br>P O BOX 2380<br>2625 South Plaza Drive, Suite 201<br>TEMPE, AZ 85282<br>USA | **DOCUMENT NUMBER:** 7796000002<br>**FILING NUMBER:** 06-7067960869<br>**FILING DATE:** 04/26/2006 15:49<br>**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| OR | **1a. ORGANIZATION'S NAME**<br>Mega RV Corp. | | | |

| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **1c. MAILING ADDRESS**<br>6441 Burt Road, #10 | **CITY**<br>Irvine | **STATE**<br>CA | **POSTAL CODE**<br>92618 | **COUNTRY**<br>USA |
|---|---|---|---|---|

| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION**<br>Corporation | **1f. JURISDICTION OF ORGANIZATION**<br>CA | **1g. ORGANIZATIONAL ID#, if any**<br>C2203993 ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | |
|---|---|
| OR | **2a. ORGANIZATION'S NAME** |

| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | |
|---|---|
| OR | **3a. ORGANIZATION'S NAME**<br>GE Commercial Distribution Finance Corporation |

| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **3c. MAILING ADDRESS**<br>2625 S. Plaza Drive, Suite 201 | **CITY**<br>Tempe | **STATE**<br>AZ | **POSTAL CODE**<br>85282 | **COUNTRY**<br>USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

"This financing statement covers all personal property of debtor, whether such property or debtor's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including, without limitation, all accounts, inventory, equipment, fixtures, other goods, general intangibles (including, without limitation, payment intangibles), chattel paper (whether tangible or electronic), instruments (including, without limitation, promissory notes), investment property and documents, and all products and proceeds of the foregoing. Without limiting the foregoing, the collateral includes debtor's right to all price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and any other amounts due debtor at any time from a person from whom debtor has purchased inventory or other

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| 9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| **9a. ORGANIZATION'S NAME** Mega RV Corp. | | |
| **OR** **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |

**10. MISCELLANEOUS:**

**DOCUMENT NUMBER:** 7796000002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | |
|---|---|---|
| **11a. ORGANIZATION'S NAME** | | |

| **OR** **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

| **11d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| | | |
|---|---|---|
| **12a. ORGANIZATION'S NAME** | | |

| **OR** **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

personal property. In addition, the collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and other devices in which such records are stored."

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Corporation Service Company<br>800-858-5294 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703<br>USA | **DOCUMENT NUMBER:** 27192930002<br>**FILING NUMBER:** 10-72536700<br>**FILING DATE:** 12/08/2010 09:55<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>06-7067960869 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only <u>one</u> of these.
Also check <u>one</u> of the following three boxes <u>and</u> provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | | | |
|---|---|---|---|
| **6a. ORGANIZATION'S NAME** | | | |

OR

| **6b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| **7a. ORGANIZATION'S NAME** |
|---|
| |

OR

| **7b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **7c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **7d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|
| | | | | |

**8. AMENDMENT (COLLATERAL CHANGE):** check only <u>one</u> box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| **a. ORGANIZATION'S NAME**<br>GE Commercial Distribution Finance Corporation |
|---|

OR

| **b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
[54575505]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Corporation Service Company<br>800-858-5294 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703<br>USA | **DOCUMENT NUMBER:** 32586370002<br>**FILING NUMBER:** 12-73068419<br>**FILING DATE:** 03/30/2012 15:23<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>06-7067960869 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☑ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| OR | **6a. ORGANIZATION'S NAME**<br>MEGA RV CORP. | | | |
|---|---|---|---|---|
| | **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| OR | **7a. ORGANIZATION'S NAME**<br>MEGA RV CORP. | | | | |
|---|---|---|---|---|---|
| | **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |

| **7c. MAILING ADDRESS**<br>5400 Garden Grove Blvd. | **CITY**<br>Westminster | **STATE**<br>CA | **POSTAL CODE**<br>92683- | **COUNTRY**<br>USA |
|---|---|---|---|---|
| **7d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **7e. TYPE OF ORGANIZATION**<br>Corporation | **7f. JURISDICTION OF ORGANIZATION**<br>CA | **7g. ORGANIZATIONAL ID#, if any**<br>☑NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| OR | **a. ORGANIZATION'S NAME**<br>GE Commercial Distribution Finance Corporation | | | |
|---|---|---|---|---|
| | **b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**10. OPTIONAL FILER REFERENCE DATA**
CDF - RV - RV - 1350780001 Debtor:MEGA RV CORP. [65734968]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Kaye Causey<br>770-752-3946 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>ChoicePoint, Inc<br>1000 Alderman Drive<br>Alpharetta, GA 30005<br>USA | **DOCUMENT NUMBER:** 18106410002<br>**FILING NUMBER:** 08-7169280576<br>**FILING DATE:** 08/19/2008 18:30<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| OR | 1a. ORGANIZATION'S NAME<br>MEGA RV CORP | | | |
|---|---|---|---|---|
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS<br>6441 BURT RD 10 | CITY<br>IRVINE | STATE<br>CA | POSTAL CODE<br>92618 | COUNTRY<br>USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION<br>Corporation | 1f. JURISDICTION OF ORGANIZATION<br>CA | 1g. ORGANIZATIONAL ID#, if any<br>C2203993 ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| OR | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any<br>☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| OR | 3a. ORGANIZATION'S NAME<br>SOUTHERN CALIFORNIA AUTO AUCTION FOR ITSELF AND AS AGENT | | | |
|---|---|---|---|---|
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS<br>435 METROPLEX DR ATTN: HAROLD SMITH | CITY<br>NASHVILLE | STATE<br>TN | POSTAL CODE<br>37211 | COUNTRY<br>USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

"All motor vehicle inventory now or hereafter acquired by Debtor from Secured Party (defined to include the Secured Party explicitly indentified on this financing statement for itself and as agent for all direct and indirect subsidiaries of Manheim Auctions, Inc.), including the proceeds and products therefrom and all increases, substitutions, replacements, additions and accessions thereto, as well as proceeds of insurance policies insuring any of the foregoing."

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]   [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Kaye Causey<br>678-694-3946 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>ChoicePoint, Inc<br>1000 Alderman Drive<br>Alpharetta, GA 30005<br>USA | **DOCUMENT NUMBER:** 37673470002<br>**FILING NUMBER:** 13-73599764<br>**FILING DATE:** 05/10/2013 05:22<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>08-7169280576 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| OR | **6a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| OR | **7a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| **7d. SEE INSTRUCTIONS** | ADD'L DEBTOR INFO | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any**<br>☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| OR | **a. ORGANIZATION'S NAME**<br>SOUTHERN CALIFORNIA AUTO AUCTION FOR ITSELF AND AS AGENT | | | |
|---|---|---|---|---|
| | **b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Gisella Melendez |
| 800-331-3282 |

| B. SEND ACKNOWLEDGMENT TO: (Name and Address) | |
|---|---|
| CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | **DOCUMENT NUMBER:** 34167540002<br>**FILING NUMBER:** 12-7324187025<br>**FILING DATE:** 08/09/2012 05:17<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| OR | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | MEGA RV CORP. | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5400 Garden Grove Boulevard | Westminster | CA | 92683 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any □ NONE |
|---|---|---|---|---|
| | | Corporation | CA | C2203993 |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| OR | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any □ NONE |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| OR | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Reyna Capital Corporation | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 1474 | Dayton | OH | 45401 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

This financing statement covers all of Lessee/Debtor's right, title and interest, now owned or hereafter acquired, in and to any Equipment and Software now or hereafter acquired and/or leased from Reyna Capital Corporation, together with any and all (1) substitutions, replacements, upgrades or exchanges therefore, (2) replacement parts, additions, attachments and accessories incorporated therein or affixed thereto, or used in connection therewith, and (3) proceeds thereof including insurance proceeds (both cash and non-cash), including, but not limited to the following:

ERA, POWER, GM Interated Dealer Management Systems, Document Management, PC Client, Intellipath, Electronic Parts Catalog, Dealer
Communication Systems, and ERA 'ASP' Equipment & Services, Intellipath Programming and Software, PC Computer Based Training System, PC
or Peripheral Equipment, IVDS Services, and Contact Management Systems; and any associated CPU, monitor, printer, keyboard, terminal,

**5. ALT DESIGNATION:** □ LESSEE/LESSOR □ CONSIGNEE/CONSIGNOR □ BAILEE/BAILOR □ SELLER/BUYER □ AG. LIEN □ NON-UCC FILING

| □ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] □ All Debtors □ Debtor 1 □ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
CA-0-34311079-46721675

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| | MEGA RV CORP. |

| OR | **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |
|---|---|---|---|
| | | | |

**10. MISCELLANEOUS:**

**DOCUMENT NUMBER:** 34167540002
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | |
|---|---|
| **11a. ORGANIZATION'S NAME** | |

| OR | **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|---|
| | | | | |

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **11d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| | |
|---|---|
| **12a. ORGANIZATION'S NAME** | |

| OR | **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|---|
| | | | | |

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**
**14. Description of real estate:**

**16. Additional collateral description:**

communication equipment or other peripherals.

**15. Name and address of RECORD OWNER of above-described real estate**
**(if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate
**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

**FILING OFFICE COPY**

**NOTICE OF JUDGMENT LIEN**
FOLLOW INSTRUCTIONS CAREFULLY (front and back of form )

A. NAME & PHONE OF FILER'S CONTACT (optional)
David B. Dimitruk (949) 660 9090

B. SEND ACKNOWLEDGMENT TO: (NAME AND ADDRESS)

David B. Dimitruk, Esq.
5 Corporate Park, Suite 220
Irvine, CA 92606

FILED
CALIFORNIA
SECRETARY OF STATE

SOS

34991100002  UCC 1 FILING

THIS SPACE FOR FILING OFFICE USE ONLY

**1. JUDGMENT DEBTOR'S EXACT LEGAL NAME** –Insert only one name, either 1a or 1b.  Do not  abbreviate or combine names.

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Mega RV Corporation | | | | |

| 1b. INDIVIDUAL'S  LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5400 Garden Grove Blvd. | Westminster | CA | 92683 | US |

**2. JUDGMENT CREDITOR'S  NAME**– Do not abbreviate or combine names.

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HWH Corporation | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5 Corporate Park, Suite 220 | Westminster | CA | 92606 | US |

**3. ALL PROPERTY SUBJECT TO ENFORCEMENT OF A MONEY JUDGMENT AGAINST THE JUDGMENT DEBTOR TO WHICH A JUDGMENT LIEN ON PERSONAL PROPERTY MAY ATTACH UNDER SECTION 697.530 OF THE CODE OF CIVIL PROCEDURE IS SUBJECT TO THIS JUDGMENT LIEN.**

A.  Title of court where judgment was entered: Orange County Superior Court

B.  Title of the action: John Ertz, etc. v. Country Coach, Inc., et al.

C.  Number of this action: 30-2007-00100242

D.  Date judgment was entered: September 25, 2012

E.  Date of subsequent renewals of judgment (if any):

F.  Amount required to satisfy judgment at date of this notice:  $ 166,000.00

G.  Date of this notice: October 2, 2012

**4.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:**

SIGNATURE – SEE INSTRUCTION NO. 4

Dated: October 2, 2012
(If not indicated, use same as date in item 3G.)

FOR: HWH Corporation

# UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Gisella Melendez
800-331-3282

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 38823220002
FILING NUMBER: 13-7371981292
FILING DATE: 08/01/2013 13:07
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | |
|---|---|
| **1a. ORGANIZATION'S NAME** MEGA RV CORP. | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5400 GARDEN GROVE BLVD | WESTMINSTER | CA | 92683 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION CA | 1g. ORGANIZATIONAL ID#, if any ☑ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | |
|---|---|
| **2a. ORGANIZATION'S NAME** | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | |
|---|---|
| **3a. ORGANIZATION'S NAME** AMERICAN EXPRESS BANK, FSB | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4315 South 2700 West | Salt Lake City | UT | 84184 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
All assets of the Debtor, whether now owned or hereafter acquired or arising

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
CA-0-39224700-47657381

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

415-421-0730

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Benjamin, Weill & Mazer, APC
90 New Montgomery St., Suite 1400
San Francisco, CA 94105
USA

---

**DOCUMENT NUMBER: 42600110002**
**FILING NUMBER: 14-7408013795**
**FILING DATE: 04/16/2014 14:37**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| OR | **1a. ORGANIZATION'S NAME** Mega RV Corp. | | | |
| | **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

| **1c. MAILING ADDRESS** | **CITY** | | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|---|
| 5400 Garden Grove Blvd. | Westminster | | CA | 92683 | USA |

| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION** Corporation | **1f. JURISDICTION OF ORGANIZATION** CA | **1g. ORGANIZATIONAL ID#, if any** C2203993 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| OR | **2a. ORGANIZATION'S NAME** McMahon's RV | | | |
| | **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

| **2c. MAILING ADDRESS** | **CITY** | | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|---|
| 5400 Garden Grove Blvd. | Westminster | | CA | 92683 | USA |

| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any** | ☑ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| OR | **3a. ORGANIZATION'S NAME** Portfolio General Management Group, Inc. | | | |
| | **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 14651 Dallas Parkway, Suite 502 | Dallas | TX | 75254 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

1. Used Car Inventory -- Equity value of Used Car Inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit.

2. Current and future Portfolio mechanical repair claims receivables

3. Dealership Equity and Guarantee

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]   [optional] ☑ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

EXHIBIT "6"                    PAGE 100

# UCC FINANCING STATEMENT ADDENDUM
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| Mega RV Corp. | |

| OR | **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |
|---|---|---|---|
| | | | |

**10. MISCELLANEOUS:**

**DOCUMENT NUMBER:** 42600110002
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | | |

| OR | **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|---|
| | | | | |

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **11d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**12. ☑ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| | |
|---|---|
| **12a. ORGANIZATION'S NAME** | |
| Standard Group Resources, Ltd. | |

| OR | **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|---|
| | | | | |

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 14651 Dallas Parkway, Suite 502 | Dallas | TX | 75254 | USA |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDITIONAL PARTY

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| 19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| **19a. ORGANIZATION'S NAME** Mega RV Corp. | | |
| OR **19b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |

**20. MISCELLANEOUS:**

**DOCUMENT NUMBER:** 42600110002
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (21a or 21b) - do not abbreviate or combine names**

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR **21b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **21c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

| 21d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (22a or 22b) - do not abbreviate or combine names**

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR **22b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **22c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

| 22d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (23a or 23b) - do not abbreviate or combine names**

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR **23b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **23c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

| 23d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**24. ☑ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (24a or 24b)**

| 24a. ORGANIZATION'S NAME Cade Phoenix, Ltd. | | | | |
|---|---|---|---|---|
| OR **24b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **24c. MAILING ADDRESS** 103 Sham Peng Tong Plaza | **CITY** Victoria | **STATE** Mahe | **POSTAL CODE** | **COUNTRY** SYC |

**25. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (25a or 25b)**

| 25a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR **25b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **25c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

# UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

415-421-0730

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Benjamin, Weill & Mazer, APC
90 New Montgomery St., Suite 1400
San Francisco, CA 94105
USA

**DOCUMENT NUMBER: 42600110005**
**FILING NUMBER: 14-7408014069**
**FILING DATE: 04/16/2014 14:42**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** Mega RV Corp. | | | | |
| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |

**OR**

| **1c. MAILING ADDRESS** 5400 Garden Grove Blvd. | **CITY** Westminster | **STATE** CA | **POSTAL CODE** 92683 | **COUNTRY** USA |
|---|---|---|---|---|

| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION** Corporation | **1f. JURISDICTION OF ORGANIZATION** CA | **1g. ORGANIZATIONAL ID#, if any** C2203993 ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** McMahon's RV | | | | |
| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |

**OR**

| **2c. MAILING ADDRESS** 5400 Garden Grove Blvd. | **CITY** Westminster | **STATE** CA | **POSTAL CODE** 92683 | **COUNTRY** USA |
|---|---|---|---|---|

| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any** ☑ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Portfolio General Management Group, Inc. | | | | |
| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |

**OR**

| **3c. MAILING ADDRESS** 14651 Dallas Parkway, Suite 502 | **CITY** Dallas | **STATE** TX | **POSTAL CODE** 75254 | **COUNTRY** USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

1. Used Car Inventory -- Equity value of Used Car Inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit.

2. Current and future Portfolio mechanical repair claims receivables

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable]**

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]** [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
| --- |
| Mega RV Corp. |

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
| --- | --- | --- | --- |
| | | | |

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 42600110005
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME |
| --- |
| |

| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- | --- |
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any |
| --- | --- | --- | --- | --- |
| | | | | NONE |

**12. ☑ADDITIONAL SECURED PARTY'S or ☐ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| 12a. ORGANIZATION'S NAME |
| --- |
| Standard Group Resources, Ltd. |

| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- | --- |
| | | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 14651 Dallas Parkway, Suite 502 | Dallas | TX | 75254 | USA |

**13.** This FINANCING STATEMENT covers ☐timber to be cut or☐ as-extracted collateral, or is filed as a ☐fixture filing.

**14.** Description of real estate:

**15.** Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or☐ Trustee acting with respect to property held in trust or☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

# UCC FINANCING STATEMENT ADDITIONAL PARTY
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| 19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT |
|---|

| | 19a. ORGANIZATION'S NAME |
|---|---|
| | Mega RV Corp. |

| OR | 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|---|
| | | | |

**20. MISCELLANEOUS:**

DOCUMENT NUMBER: 42600110005
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (21a or 21b) - do not abbreviate or combine names**

| | 21a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (22a or 22b) - do not abbreviate or combine names**

| | 22a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (23a or 23b) - do not abbreviate or combine names**

| | 23a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 23d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**24. ☑ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (24a or 24b)**

| | 24a. ORGANIZATION'S NAME |
|---|---|
| OR | Dakota Sioux Co., Ltd. |

| | 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 103 Sham Peng Tong Plaza | Victoria | Mahe | | SYC |

**25. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (25a or 25b)**

| | 25a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18101 Von Karman Avenue, Suite 510, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING: (1) SALE OF FIXED AND PERSONAL PROPERTY ASSETS LOCATED AT WESTMINSTER AND COLTON LOCATIONS; (2) SALE OF ROLLING STOCK LOCATED AT COLTON LOCATION; (3) SALE OF FRANCHISE RIGHTS; (4) SALE OF GOODWILL AND OTHER INTANGIBLE ASSETS; (5) SALE OF USED INVENTORY FOR ADDITIONAL CONSIDERATION; AND (6) SETTING BID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF J. MICHAEL ISSA, ROBERT P. GOE, & BRIAN L. DAVIDOFF IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 18, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) February 18, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 18, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Mark Wallace, USBC, 411 West Fourth Street, Santa Ana, CA 92701

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 18, 2015 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Marc Andrews    sandra.g.mcmasters@wellsfargo.com**
- **Robert R Barnes    bbarnes@allenmatkins.com, jbatiste@allenmatkins.com**
- **James C Bastian    jbastian@shbllp.com**
- **James C Behrens    jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com**
- **Alex L Benedict    bkinfo.ablaw@gmail.com, alexbenedict2000@yahoo.com**
- **Michelle M Bertolino    mbertolino@fwwlaw.com, dgeorge@fwwlaw.com**
- **Mark S Blackman    MBlackman@AlpertBarr.Com**
- **J Scott Bovitz    bovitz@bovitz-spitzer.com**
- **Keith Butler    kbutler@fgppr.com**
- **Ryan S Carrigan    rscarriganecf@gmail.com, rscarriganlaw@gmail.com**
- **Louis S Chronowski    lchronowski@dykema.com**
- **Donald H Cram    dhc@severson.com, jc@severson.com**
- **Brian L Davidoff    bdavidoff@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com**
- **Rennee R Dehesa    rdehesa@rstlegal.com, alopez@rstlegal.com**
- **Andrew S Elliott    ase@severson.com, pag@severson.com;jc@severson.com**
- **Lauren N Gans    lgans@shensonlawgroup.com**
- **Duane M Geck    dmg@severson.com, pag@severson.com**
- **Janel M Glynn    janel.glynn@gknet.com, rachel.milazzo@gknet.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com**
- **Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com**
- **Gregory K Jones    GJones@dykema.com, CPerez@dykema.com**
- **John H Kim    jkim@cookseylaw.com**
- **Andy Kong    Kong.Andy@ArentFox.com**
- **Andrew B Levin    alevin@winthropcouchot.com, bayrelevin@hotmail.com;pj@winthropcouchot.com;mconour@winthropcouchot.com**
- **Erica T Loftis    bknotice@rcolegal.com**
- **Elizabeth A Lossing    elizabeth.lossing@usdoj.gov**
- **Marc S Mazer    mazer@bwmlaw.com, elizabeth@bwmlaw.com**
- **David W. Meadows    david@davidwmeadowslaw.com**
- **Joel S. Miliband    jmiliband@brownrudnick.com**
- **Scott Montgomery    smontgomery@abbeylaw.com, ldabbs@abbeylaw.com**
- **Gerard W O'Brien    gerardwobrien@gmail.com, missjanperalta@gmail.com**
- **Barry L O'Connor    udlawBK@aol.com**
- **Aram Ordubegian    ordubegian.aram@arentfox.com**
- **R G Pagter    gibson@ppilawyers.com, ecf@ppilawyers.com**
- **Courtney E Pozmantier    cpozmantier@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com**
- **Holly Roark    holly@roarklawoffices.com, G2978@notify.cincompass.com**
- **Yuval M Rogson    yuval@rogsonlaw.com, chris@rogsonfirm.com**
- **Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com**
- **Allan D Sarver    ADSarver@aol.com**
- **Kenneth Schnur    schnur@bwmlaw.com, elizabeth@bwmlaw.com**
- **Summer Shaw    hanlaw@aol.com**
- **Jonathan Shenson    jshenson@shensonlawgroup.com**
- **Arash Shirdel    ashirdel@pacificpremierlaw.com, ECF@pacificpremierlaw.com**
- **Ramesh Singh    claims@recoverycorp.com**
- **Arjun Sivakumar    asivakumar@brownrudnick.com**

- **Wayne R Terry    wterry@hemar-rousso.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
- **Danielle K Wakefield    danielle@wakefieldlawfirm.com**
- **Sam X J Wu    wuefile@yahoo.com**
- **Sam S Yebri    syebri@mylawllp.com**

**TO BE SERVED BY UNITED STATES MAIL**:

BROWN RUDNICK LLP
2211 Michelson Dr 7th Floor
Irvine, CA 92612

Credit Union of Southern California
c/o Buchalter Nemer
18400 Von Karman Ave., Suite 800
Irvine, CA 92612

Greenberg Glusker et al.
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067

Daniel King
c/o Law Offices of Steven R. Fox
17835 Ventura Blvd.
Suite 306
Encino, CA 91316

The Law Offices of John A. Belcher
55 S Lake Ave Ste 801
Pasadena, CA 91101