BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
JAMES C. BEHRENS (SBN 280365)
JBehrens@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for The Official Committee of
Unsecured Creditors

ROBERT P. GOE (SBN 137019)
rgoe@goeforlaw.com
DONALD W. REID (SBN 281743)
dreid@goeforlaw.com
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, California  92612
Telephone:  949.798.2460
Facsimile:  949.955.9437

Attorneys for Mega RV Corp.,
Debtor and Debtor in Possession

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MEGA RV CORP., a California corporation; d/b/a McMahon's RV; d/b/a McMahon's RV Irvine; d/b/a McMahon's RV Colton; d/b/a McMahon's RV Palm Desert,<br><br>       Debtor and Debtor in Possession. | Case No. 8:14-bk-13770-MW<br><br>Chapter 7<br><br>**DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED JUNE 19, 2015**<br><br><u>Disclosure Statement Hearing</u>:<br>Date:  July 27, 2015<br>Time:  9:00 a.m.<br>Place:  Courtroom 6C<br>       Ronald Reagan Federal Building<br>       411 West 4th Street<br>       Santa Ana, CA  92701 |

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | GENERAL DISCLAIMERS AND INFORMATION | | 2 |
| III. | DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING | | 4 |
| | A. | Time and Place of the Confirmation Hearing | 4 |
| | B. | Ballot Deadline and Voting Instructions | 4 |
| | C. | Identity of Person to Contact for More Information Regarding the Plan | 5 |
| | D. | Objecting to Plan Confirmation | 5 |
| IV. | THE PLAN OF LIQUIDATION | | 6 |
| | A. | Creation of the Liquidation Trust | 6 |
| | B. | Disbursements | 6 |
| V. | BACKGROUND ON THE DEBTOR, THE DEBTOR'S BUSINESS, EVENTS PRECIPITATING THE BANKRUPTCY FILING, AND THE CASE | | 7 |
| | A. | Historical Facts and Events Precipitating Chapter 11 | 7 |
| | | 1. Description and History of the Debtor's Business | 7 |
| | | 2. The Pre-Petition Inventory Financing Agreement with CDF | 8 |
| | | 3. Events Leading to Chapter 11 Filing | 9 |
| | B. | Significant Events During the Bankruptcy | 10 |
| | | 1. Commencement of the Bankruptcy Case | 10 |
| | | 2. Appointment of the Unsecured Creditors' Committee | 10 |
| | | 3. Professionals Retained by the Estate | 10 |
| | | 4. CDF's Relief from Stay Motion and the Subsequent Settlement | 11 |
| | | 5. Debtor's Ongoing Liquidation Efforts | 13 |
| | | 6. Debtor's Aborted Effort to Sell Business | 15 |
| | | 7. Forest River, Inc.'s Motion for Relief from Stay | 16 |
| | | 8. Unexpired Leases and Executory Contracts | 17 |
| | |    a. All Real Estate Leases Have Been Rejected as a Matter of Law | 17 |
| | |      i. Westminster Lease | 17 |
| | |      ii. Colton Lease | 19 |
| | |      iii. Palm Desert Lease | 20 |
| | |    b. Other Executory Contracts | 20 |
| | | 9. Other Relief from Stay Motions and Stipulations | 21 |
| VI. | Claims Filed Against the Estate and Treatment Thereof | | 23 |
| | A. | Schedules and Bar Dates | 23 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3  B. Scheduled Claims.................................................................................. 23

4  C. Filed Claims ........................................................................................... 24

   D. Secured Claims (Classes 1(a) – 1(j)).................................................... 24

5     1. Class 1(a) .................................................................................... 24

6     2. Class 1(b) .................................................................................... 25

7     3. Class 1(c) .................................................................................... 26

      4. Class 1(d) .................................................................................... 26

8     5. Class 1(e) .................................................................................... 27

9     6. Class 1(f) ..................................................................................... 27

10    7. Class 1(g) .................................................................................... 28

      8. Class 1(h) .................................................................................... 28

11    9. Class 1(i) ..................................................................................... 28

12    10. Class 1(j) ..................................................................................... 28

13 E. Priority Non-Tax Claims (Classes 2(a) – 2(b))..................................... 29

   F. Customer  Claims and Warranty Claims (Class 3) ................................ 30

14 G. General Unsecured Claims (Class 4) ..................................................... 31

15 H. Subordinated Claims (Class 5) .............................................................. 32

16 I. Interests (Class 6) .................................................................................. 32

   J. Unclassified Claims .............................................................................. 32

17    1. Administrative Claims ................................................................ 32

18    2. Priority Tax Claims .................................................................... 34

19 K. Claim Objections................................................................................... 35

20 L. Adversary Proceeding ........................................................................... 36

   M. Resolution of Other Litigation ............................................................. 36

21    1. Roadtrek Litigation .................................................................... 36

22       a. Federal Court Action ....................................................... 36

         b. State Court Action ........................................................... 37

23       c. Merits ............................................................................... 39

24    2. Rucker Litigation ....................................................................... 39

25    3. Hoffman Litigation..................................................................... 40

      4. Minard Litigation ....................................................................... 41

26    5. Reservation of Other Claims...................................................... 41

27 VII. TAX CONSEQUENCES OF THE PLAN.......................................................... 42

28    1. Federal Income Tax Consequences in General................................... 42

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF CONTENTS
### (continued)

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**Page**

2. Overview of the Federal Income Tax Consequences of Plan ................................ 43

    (a) Transfer of Assets to Liquidating Trust ..................................................... 43

    (b) Federal Income Tax Treatment of the Liquidating Trust......................... 44

3. Federal Income Tax Consequences to the Debtor.................................................. 44

4. Federal Income Tax Consequences to Holders of Allowed Claims Upon Funding of the Liquidating Trust .......................................................................... 44

    (a) Transfer of Assets to Liquidating Trust ..................................................... 45

    (b) Interests Included in Claim ........................................................................ 45

5. Tax Issues Related to the Liquidating Trust ......................................................... 45

    (a) Treatment of Grantor Trust ........................................................................ 45

    (b) Good Faith Valuation of Trust Assets........................................................ 46

    (c) Allocation of Trust Income to Beneficiaries and Tax Impact of Distributions ............................................................................................... 46

    (d) Liquidating Trust Claims Reserve ............................................................. 47

    (e) Priority Unsecured Claims ........................................................................ 48

    (f) Federal Income Tax Reporting................................................................... 48

    (g) Withholding ............................................................................................... 48

6. Importance of Obtaining Professional Tax Assistance ........................................ 49

VIII. CONFIRMATION REQUIREMENTS .............................................................................. 49

    A. Classification and Treatment of Claims and Interests ...................................... 50

    B. Who May Vote to Accept or Reject the Plan ................................................... 51

        1. Allowed Claims ....................................................................................... 51

        2. Voting Requirements ................................................................................ 52

        3. Votes Necessary to Confirm the Plan ...................................................... 52

        4. Votes Necessary for a Class to Confirm a Plan ....................................... 52

    C. Cramdown: Treatment of Non-Consenting Classes.......................................... 53

    D. Liquidation Analysis/Best Interests Test .......................................................... 53

    E. Feasibility ......................................................................................................... 56

IX. EFFECT OF CONFIRMATION OF THE PLAN ............................................................... 57

    A. No Discharge for Debtor .................................................................................. 57

    B. Post-Confirmation Injunction ........................................................................... 57

    C. Modification of Plan ......................................................................................... 58

    D. Post-Confirmation Status Report ...................................................................... 58

    E. Quarterly Fees .................................................................................................. 59

    F. Post-Confirmation Conversion/Dismissal......................................................... 59

**TABLE OF CONTENTS**
**(continued)**

Page

G.      Final Decree ................................................................................................. 59

X.      RECOMMENDATION AND CONCLUSION ............................................................. 60

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|:---:|:---|
| 1 | Joint Chapter 11 Plan of Liquidation Filed by Debtor and Official Committee of Unsecured Creditors Dated June 19, 2015 |
| 2 | Liquidation Trust Agreement |
| 3 | CDF Agreement |
| 4 | List of Inventory |
| 5 | Summary Financial Report for Administrative Period |
| 6 | Loan and Lien Assignment Agreement |
| 7 | Causes of Action and Reservation of Rights |
| 8 | Liquidation Analysis |
| 9 | Projected Cash Flow- High Case |
| 10 | Projected Cash Flow- Low Case |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# SUMMARY INFORMATION[1]

**Debtor:** Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert.

**Recommendation:** **The Debtor and the Official Committee of Unsecured Creditors (the "Creditors' Committee") recommend that you vote in favor of the Plan.**

**Vote Required to Accept the Plan:** Acceptance of the Plan requires the affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class of impaired Claims entitled to vote. Only entities holding Claims in Classes 1, 3 and 4 are impaired and entitled to vote. If any of these Classes rejects the Plan, however, the Court nevertheless may confirm the Plan if the "cramdown" requirements of Bankruptcy Code section 1129(b) are satisfied with respect to such Class.

**Voting Information:** If you are entitled to vote, you should have received a Ballot with this Disclosure Statement. After completing and signing your Ballot, you should return it by mail, fax or email to:

> Greenberg Glusker Fields Claman & Machtinger, LLP
> Attn: James C. Behrens
> 1900 Ave of the Stars, 21st Floor
> Los Angeles, CA. 90067
> Fax: 310-201-2328
> Email: jbehrens@greenbergglusker.com

For your Ballot to be counted, it must be received it not later than [TIME] Pacific Standard Time on [DATE].

**Treatment of Claims:** The treatment that creditors will receive if the Court confirms the Plan is set forth in the Plan and only summarized in this Disclosure Statement. The terms of the Plan are controlling, and all creditors and interested parties are urged to read the Plan in its entirety.

**The Effective Date:** The Effective Date of the Plan will be the first Business Day on which the following conditions have been satisfied or waived:(a) the Confirmation Order has been entered and is not stayed; (b)at least fourteen (14) days have passed since entry of the Confirmation Date; and (c) the Liquidation Trust Agreement has been executed by the parties thereto.

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the *Joint Chapter 11 Plan of Liquidation Filed by Debtor and Official Committee of Unsecured Creditors Dated June 18, 2015* (the "Plan"), a true and correct copy of which is attached hereto as Exhibit 1. The Plan, once confirmed, is the legally binding document regarding the treatment of Claims against the Debtor and the terms and conditions of the Debtor's liquidation. Accordingly, to the extent that there is any inconsistency between the terms contained herein and those contained in the Plan, the terms of the Plan will govern.

16118-00002/2327818.6     1

| | |
|---|---|
| Questions: | All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to: |

Greenberg Glusker Fields Claman & Machtinger, LLP
Attn: James C. Behrens
1900 Ave of the Stars, 21st Floor
Los Angeles, CA. 90067
Fax: 310-201-2328
Email: jbehrens@greenbergglusker.com

With a copy to:

Goe & Forsythe, LLP
Attn: Robert P. Goe
18101 Von Karman Avenue, Suite 510
Irvine, California  92612
Facsimile:  949.955.9437
Email: rgoe@goeforlaw.com

**IMPORTANT NOTICE:**  **THE PLAN, DISCLOSURE STATEMENT, AND BALLOT CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY.  THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS.  YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOT IN THEIR ENTIRETY.  YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN.**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## I.     **INTRODUCTION**

Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert (the "Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on June 15, 2014 (the "Petition Date"), thereby commencing the Case.  The Case is pending before the Honorable Mark S. Wallace, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division under case number 8:14-bk-13770-MW.  Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor is managing its affairs as a debtor and debtor in possession.

On November 24, 2014, the Debtor entered into a settlement agreement (as defined below, the "CDF Agreement") providing for, among other things, the liquidation of certain assets by the Debtor's largest secured creditor, GE Commercial Distribution Finance Corporation ("CDF"), the subordination of claims held by the Debtor's President, Brent McMahon ("McMahon"), and the proposal by the Official Committee of Unsecured Creditors (the "Committee") and the Debtor of a joint liquidating plan of reorganization to liquidate the Debtor's remaining assets.

The Debtor and the Committee (sometimes referred to as the "Plan Proponents") have filed the *Joint Chapter 11 Plan of Liquidation Filed by Debtor and Official Committee of Unsecured Creditors Dated June 19, 2015* (the "Plan") that is attached to this Disclosure Statement as Exhibit 1.  The Plan is a liquidating plan.  Pursuant to a liquidating trust (the "Liquidation Trust") established by the Plan, the Debtor's assets will be collected, divided, and distributed in accordance with the terms of the Plan.  The Liquidation Trust Agreement is attached to the Disclosure Statement as Exhibit 2.  The Liquidation Trust will be managed by J. Michael Issa of GlassRatner Advisory and Capital Group, LLC (the "Liquidation Trustee").  **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ACCOMPANYING PLAN**.  The Plan sets forth the manner in which the Claims against the Debtor will be treated if the Plan is confirmed by the Court and the Effective Date occurs.  This Disclosure Statement provides background information on the Debtor and its chapter 11 Case, describes certain aspects of the Plan, and discusses other related matters.

1   For a complete understanding of the Plan, you should read this Disclosure Statement,

2   the Plan, and the exhibits to these documents (the "Exhibits") in their entirety. To the extent of

3   any conflict or discrepancy between the Plan and the Disclosure Statement, the Plan will control.

4   Subject to the prior sentence, where a particular word (such as "Debtor") or a phrase (such as

5   "Allowed Claim") is capitalized in this Disclosure Statement, and not otherwise defined herein,

6   that word or phrase has the meaning provided in Section 2.1 (Definitions) of the Plan.

7   This Disclosure Statement sets forth the assumptions underlying the Plan, describes the

8   process that the Court will follow when determining whether to confirm the Plan, and describes

9   how the Plan will be implemented if it is confirmed by the Court and the Effective Date occurs.

10  Bankruptcy Code section 1125 requires that a disclosure statement contain "adequate

11  information" concerning a plan of reorganization.

12  **THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN**

13  **DESCRIBED IN THIS DISCLOSURE STATEMENT. THEREFORE, THE PLAN'S**

14  **TERMS ARE NOT YET BINDING ON ANYONE. IF THE COURT LATER CONFIRMS**

15  **THE PLAN AND THE EFFECTIVE DATE OCCURS, THEN THE PLAN WILL BE**

16  **BINDING ON THE DEBTOR AND ON ALL PARTIES IN INTEREST IN THIS CASE,**

17  **INCLUDING CREDITORS AND SHAREHOLDERS OF THE DEBTOR.**

18  The Debtor and the Committee believe that the Plan provides the best possible recoveries

19  to creditors under the circumstances, that acceptance of the Plan is in the best interests of all

20  parties in interest, and that any alternative would result in unnecessary delay, uncertainty, and

21  expense to the Estate. The Debtor and the Committee therefore recommend that all eligible

22  creditors entitled to vote on the Plan cast their Ballots to accept the Plan.

23  **II.    GENERAL DISCLAIMERS AND INFORMATION**

24  Please carefully read this document and the Exhibits. These documents explain who may

25  object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan, and the

26  treatment that creditors can expect to receive if the Court confirms the Plan and the Effective

27  Date occurs. The Disclosure Statement also describes the history of the Debtor, the events

28  precipitating the Case, certain events in the Case, the effect of confirmation of the Plan, and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    some of the things the Court may consider in deciding whether to confirm the Plan.  It also

2    addresses the Plan's feasibility and how your treatment under the Plan compares to the

3    hypothetical treatment you would receive under a chapter 7 liquidation.  The statements and

4    information contained in the Plan and Disclosure Statement, however, do not constitute financial

5    or legal advice.  You should therefore consult your own advisors if you have questions about the

6    impact of the Plan on your Claims.

7        The financial information used to prepare the Plan and Disclosure Statement was

8    prepared by the Debtor from information in its books and records and is the sole responsibility of

9    the Debtor.  The Debtor's and the Committee's professionals have prepared the Plan and

10   Disclosure Statement.  The Debtor's and the Committee's professionals have not independently

11   verified this information.

12       The statements and information that concern the Debtor that are set forth in this

13   document constitute the only statements and information that the Court has approved for the

14   purpose of soliciting votes to accept or reject the Plan.  Therefore, no statements or information

15   that are inconsistent with anything contained in this Disclosure Statement are authorized unless

16   otherwise ordered by the Court.

17       You may not rely on the Plan and Disclosure Statement for any purpose other than to

18   determine whether to vote to accept or reject the Plan.  Nothing contained in the Plan or

19   Disclosure Statement constitutes an admission of any fact or liability by any party or may be

20   deemed to constitute evidence of the tax or other legal effects that the transactions to be carried

21   out in furtherance of the Plan may have on entities holding Claims.

22       The exhibits attached or to be attached to the Disclosure Statement are incorporated into

23   the Disclosure Statement and will be deemed to be included in the Disclosure Statement when

24   they are filed with the Bankruptcy Court.

25   / / /

26   / / /

27   / / /

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

III.    **DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**

A.    **Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether or not to confirm the Plan will take place on [DATE], at [TIME], prevailing Pacific Standard Time, in Courtroom 6C of the Ronald Reagan Federal Building at 411 West 4th Street, Santa Ana, California 92701.

B.    **Ballot Deadline and Voting Instructions**

If you wish to vote to accept or reject the Plan, your Ballot must be returned to Greenberg Glusker Fields Claman & Machtinger, LLP at the address listed immediately below so that it is actually received by Greenberg Glusker Fields Claman & Machtinger, LLP at the following address by [TIME] prevailing Pacific Standard Time, on [DATE] (the "Ballot Deadline"):

> Greenberg Glusker Fields Claman & Machtinger, LLP
> Attn: James C. Behrens
> 1900 Ave of the Stars, 21st Floor
> Los Angeles, CA. 90067
> Fax: 310-201-2328
> Email: jbehrens@greenbergglusker.com

**If your Ballot is not timely received, it will not be counted.**

The Plan Proponents believe that Classes 1, 3 and 4 are impaired and that holders of Allowed Claims, if any, in those Classes are entitled to vote on the Plan.  Under the Plan, Class 2 is not impaired and is not entitled to vote on the Plan.  Classes 5 and 6 are impaired, will not receive any distributions under the Plan, and are therefore deemed to reject the Plan.  Entities holding Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

In voting to accept or reject the Plan, please use only the Ballot sent to you with this Disclosure Statement, and please carefully read the voting instructions on the Ballot for an explanation of the applicable voting procedures and deadlines.  If, after reviewing this Disclosure Statement, you believe that you are entitled to vote on the Plan, but you did not receive a Ballot, or if your Ballot is damaged or lost, please send a written request for a Ballot to Greenberg Glusker

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Fields Claman & Machtinger, LLP at the address set forth above or via email to

2   jbehrens@greenbergglusker.com.

3        If your Claim is subject to an objection and you nevertheless wish to vote on the Plan, you

4   will be required to request the Court to temporarily allow your Claim for voting purposes.  In order

5   to do so, you must promptly take action to make such a motion and arrange for the Court to hold a

6   hearing and adjudicate such motion no later than seven (7) days prior to the Ballot Deadline (i.e.,

7   no later than [DATE]).

8        **C.    Identity of Person to Contact for More Information Regarding the Plan**

9        Any interested party desiring further information with respect to the Plan or seeking an

10  additional copy of this document should contact in writing  to Greenberg Glusker Fields Claman

11  & Machtinger LLP, Attn: James C. Behrens, 1900 Avenue of the Stars, 21st Floor, Los Angeles,

12  California  90067-4590, Facsimile: (310) 201-2328 with a copy to: Goe & Forsythe, LLP, Attn:

13  Robert P. Goe, 18101 Von Karman Avenue, Suite 510, Irvine, California  92612, Facsimile: (949)

14  955-9437.  All pleadings and other papers filed in this Case may be inspected free of charge during

15  regular court hours at the Office of the Clerk, United States Bankruptcy Court, Central District of

16  California, Ronald Reagan Federal Building and Courthouse, 411 West 4th Street, Santa Ana,

17  California 92701.  Documents may be accessed for a fee through the Court's electronic records

18  system at http://www.cacb.uscourts.gov.

19       **D.    Objecting to Plan Confirmation**

20       Any party in interest in the Case – including any creditor that voted (or was deemed to

21  have voted) to accept or reject the Plan – may file an objection to confirmation of the Plan

22  assuming such party has standing to do so.  Any such objection must be filed and served on the

23  Debtor and its counsel; the U.S. Trustee; and counsel for the Committee by [DATE].  If you fail to

24  properly and timely file and serve an objection to Plan confirmation, you may be deemed to have

25  consented to the confirmation of the Plan.

26       The Debtor, the Committee, and other parties in interest will have the opportunity to file a

27  reply in support of the Plan and/or in response to any objection to confirmation of the Plan no later

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

1   than [DATE].  The deadline for the Debtor to file any declaration in support of confirmation of the

2   Plan is also [SAME DATE].

### IV.   THE PLAN OF LIQUIDATION

#### A.   Creation of the Liquidation Trust.

The Plan provides for a liquidation of the Debtor's Assets.  The terms of the liquidation are discussed in detail in Section V of the Plan and parties in interest are referred thereto, and to the Liquidation Trust (attached as Exhibit 2 hereto) for a full discussion of the liquidation.

In summary, on the Effective Date, all Assets of the Debtor and the Estate, will be transferred to and vested in the Liquidation Trust.  As of the Effective Date, the Trust Assets of the Liquidation Trust shall be free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.  To the fullest extent permitted by law, all rights under Section 365 including Section 365(f) of the Bankruptcy Code are preserved and may be exercised by the Liquidating Trustee, including prosecution and amendment of any motions to assume or reject executory contracts and leases that are pending on the Effective Date.  From and after the Effective Date, the Liquidation Trustee shall be authorized to, and shall take all such actions as required to implement the Liquidation Trust Agreement and the provisions of the Plan, including administering the Causes of Action.  The Liquidation Trustee shall be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.  The Liquidation Trustee shall be substituted and shall replace the Debtor, the Estate, and the Committee, as applicable, as the party in interest in all litigation pending as of the Effective Date.  The Debtor may be, but is not required to be, dissolved by the Liquidating Trustee.

#### B.   Disbursements

Except as otherwise provided in the Plan, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims shall be made by the Liquidation Trust at such periodic intervals as the Liquidation Trust determines to be reasonably prudent.  Distributions to Holders of Claims will be made, and Liquidation Trust Interests will be issued, only after, and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    only to the extent that, such Holders hold Allowed Claims.  The Liquidation Trust shall maintain

2    in reserve such Cash as it estimates to be necessary to satisfy the distributions required to be made

3    under the Plan if each Disputed Claim and Estimated Claim against the Liquidation Trust becomes

4    an Allowed Claim.  The Liquidation Trustee may set off, recoup, or withhold against the

5    Distributions to be made on account of any Allowed Claim or Liquidation Trust Interest any

6    claims that the Debtor, the Estate, or the Liquidation Trustee may have against the Holder of the

7    Allowed Claim or Liquidation Trust Interest.

8    **V.**      **BACKGROUND ON THE DEBTOR, THE DEBTOR'S BUSINESS, EVENTS**

9              **PRECIPITATING THE BANKRUPTCY FILING, AND THE CASE**

10    **A.**      **Historical Facts and Events Precipitating Chapter 11**

11         **1.**      **Description and History of the Debtor's Business**

12         The Debtor was formed on December 12, 2000 and operated as McMahon's RV until April

13    2014.  McMahon is the Debtor's CEO and 100% shareholder.  From 2000 until 2014, the Debtor

14    sold and serviced new and used RVs throughout Southern California, with locations in

15    Westminster, Colton, and Palm Desert.  The flagship dealership and the Debtor's principal place

16    of business was located at 5400 Garden Grove Blvd., Westminster, California 92683 (the

17    "Westminster Location").  The Debtor also operated satellite dealerships at 1312-1324 RV Center

18    Drive and 1030 E. Washington Street, Colton, California 92324 (the "Colton Location"), 77840

19    Varner Road, Palm Desert, California 92211 (the "Palm Desert Location"), and other locations

20    prior to bankruptcy filing.  The leases for all these locations have been rejected and the Debtor has

21    already vacated all of the premises.

22         During 2011 and 2012, the Debtor was the number one RV dealer in California (in terms of

23    gross sales) and, in 2013, was the number two RV dealer in California, per data compiled by

24    Statistical Surveys Inc.  Winnebago awarded the Debtor the largest dealer west of the Mississippi

25    designation in 2011, 2012, and 2013.  The Debtor's sales of new and used RVs, parts, and service

26    amounted to approximately $180 million annually.  Despite its strong sales efforts, the Debtor had

27    incurred operating losses for several years leading up to the Debtor's bankruptcy filing.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**2.     The Pre-Petition Inventory Financing Agreement with CDF**

On or about May 8, 2006, the Debtor entered into an Inventory Financing Agreement (the "IFA") with CDF, pursuant to which CDF extended credit to the Debtor to obtain and sell RVs.  In return, the Debtor granted CDF a security interest in substantially all of its assets, including inventory, equipment, fixtures, and accounts.  In connection with the IFA in 2006, CDF extended to Debtor a line of credit of up to $10,000,000.

Within the dealership industry, an IFA is known as "floor plan financing."  The IFA is self-limited to general terms because the specific terms for any advance depended on various factors, including the availability of vendor discounts, payment terms or other incentives, CDF's floor planning volume with the Debtor, and other economic factors.  Upon agreeing to finance an item of inventory for the Debtor, CDF would transmit a transaction statement to the Debtor that identified the collateral financed and the terms of the particular advance made.  Then, after the Debtor sold the financed inventory to a customer, the Debtor would remit payment of the financed amount with interest to CDF (i.e., a "floor payment").

CDF's advances under the IFA were secured and guaranteed in three separate ways.  First, the IFA limited the Debtor's inventory purchases to CDF-approved original equipment manufacturers ("OEM").  An OEM was approved by CDF when it and CDF entered into an agreement that required the OEM to, among other things, repurchase the financed inventory in the event that the dealership defaulted to CDF or became insolvent (the "Buy-Back Agreements").  CDF has Buy-Back Agreements with the following OEMs: Monaco, Winnebago, Thor, and Forest River.  Within the industry, Buy-Back Agreements typically have 12-month terms, and the buy-back price is increasingly curtailed the longer the vehicles are held as inventory by the dealership.  In addition to the Buy-Back Agreements with the OEMs, the IFA was also secured by a UCC-1 financing statement against substantially all of the Debtor's assets including the Debtor's inventory, equipment, fixtures, and accounts.  Finally, all amounts advanced by CDF to the Debtor under the IFA were personally and unconditionally guaranteed by McMahon and certain of his entities, including MIC Investments Company, LLC, McMahon's Rentals, LLC, Kinsale, LLC, and Nevada Street, LLC (collectively, the "Guarantors").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### 3.    Events Leading to Chapter 11 Filing

In August 2010, CDF approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $10,000,000 to $13,000,000.  At the same time, CDF notified the Debtor of the Debtor's multiple defaults, which CDF was willing to waive.  On June 9, 2011, CDF again approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $13,000,000 to $18,000,000.  Six months later, on December 20, 2011, CDF again approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $18,000,000 to $38,000,000.  In between June 9, 2011, and December 20, 2011, CDF purchased the Debtor's credit line held by Bank of America and thereby consolidated the Debtor's credit line.  On the same day that it more than doubled (and consolidated) the Debtor's credit line, CDF issued a notice of default to the Debtor, which, again, CDF simultaneously waived.  CDF subsequently extended the Debtor's line of credit, increasing it to $50,000,000 in August 2012.

On March 28, 2013, CDF sent the Debtor a notice of performance issues, covenant default and waiver, reservation of rights, and performance conditions agreement (the "March 2013 Letter Agreement").  According to the March 2013 Letter Agreement, the Debtor had approximately $2,593,999.87 of past due payments owed to CDF.  CDF and the Debtor signed a new IFA Amendment, dated December 10, 2013.  Pursuant to this Amendment, the Debtor established a deposit account with Wells Fargo, which would be subject to a deposit account control agreement.

By February 2014, the Debtor was allegedly in default, and CDF demanded payment of the entire accelerated balance, in the amount of $33,758,977.35, and CDF swept cash from the Debtor's bank accounts.  On April 4, 2014, CDF filed a complaint in the United States District Court for the Central District of California, Santa Ana Division (the "District Court"), initiating GE Commercial Distribution Finance Corporation v. Mega RV Corp. d/b/a McMahon RV and MCMRV, Inc., Case no. SACV 14-00522-JLS (ANx).  On April 9, 2014, the District Court issued a temporary restraining order enjoining the Debtor from selling or otherwise disposing of CDF's collateral until further order of the District Court ("TRO").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## B. Significant Events During the Bankruptcy

### 1. Commencement of the Bankruptcy Case

The Debtor filed a voluntary petition for chapter 11 relief under the Bankruptcy Code on June 15, 2014 (the "Petition Date"). Immediately after the Petition Date, the Debtor employed J. Michael Issa of GlassRatner Advisory and Capital Group, LLC ("GlassRatner") to serve as the Debtor's financial adviser and to manage the process of attempting to sell the Debtor's business to industry players. Mr. Issa aggressively marketed the Debtor's assets but was unable to find a buyer willing purchase them. Mr. Issa, as well as Brown Rudnick LLP, the Debtor's special litigation counsel, and Goe & Forsythe, LLP the Debtor's general counsel, and the Committee counsel turned their focus to settling the Debtor's litigation claims against CDF and reaching a global settlement with CDF. The Debtor and the Committee asserted certain claims against CDF for CDF's role in the closing of the Debtor's business, including causes of action for equitable subordination, fraudulent conveyance, lender liabilities, and preferential transfer, among others.

### 2. Appointment of the Unsecured Creditors' Committee

On July 3, 2013, the U.S. Trustee appointed the Unsecured Creditors' Committee (as defined above, the "Committee"). The three members appointed to the Committee were: (1) Bank of the West; (2) Forest River, Inc., and (3) Winnebago Industries, Inc. The Committee filed an application to employ Greenberg Glusker Fields Claman & Machtinger LLP as its bankruptcy counsel on August 13, 2014 [Docket No. 135], and the Court entered an order approving this application on September 4, 2014 [Docket No. 159].

### 3. Professionals Retained by the Estate

The Court has approved the Debtor's employment of the following professionals as well as the retention and compensation of a Chief Restructuring Officer:

- Goe & Forsythe, LLP as the Debtor's general bankruptcy counsel [Docket Nos. 52 (Application) and 112 (Order)];

- GlassRatner Advisory & Capital Group, LLC as the Debtor's Financial Advisor and Investment Banker [Docket Nos. 54 (Application) and 113 (Order)];

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    • Brown Rudnick LLP as special litigation counsel to the Debtor [Docket Nos. 195

2    (Application) and 245 (Order)];

3    • The Law Offices of John A. Belcher as special litigation counsel to the Debtor

4    [Docket Nos. 299 (Application) and 386 (Order)].

5    As noted above, the Committee sought and obtained approval to employ Greenberg

6    Glusker Fields Claman & Machtinger LLP, as its counsel [Docket Nos. 135 (Application) and

7    159 (Order)].

8                    **4.        CDF's Relief from Stay Motion and the Subsequent Settlement**

9    On June 26, 2014, CDF filed a motion for relief from the automatic stay ("CDF MRS") to

10   foreclose upon its collateral, including the Debtor's inventory.  Both the Debtor and the

11   Committee opposed this motion.  Before a hearing on July 21, 2014, the Court issued a tentative

12   ruling denying the CDF MRS with a bar to re-filing such motion for 240 days.  However, pursuant

13   to an agreement between the parties, the Court continued the hearing on the CDF MRS multiple

14   times up to November 10, 2014.

15   On October 13-14, 2014, the Debtor and CDF formally mediated their disputes before

16   Judge Mitchel Goldberg (retired).  After several meetings and follow up efforts, the mediation was

17   ultimately successful in helping the parties reach a global agreement as described below, which

18   should provide up to $4,700,000 to fund the Plan.

19   On November 10, 2014, the Debtor, Committee, and CDF executed a stipulation granting

20   CDF relief from the automatic stay (the "CDF MRS Stipulation") [Docket No. 273].  Pursuant to

21   the CDF MRS Stipulation, CDF was granted relief from stay with respect to the Debtor's new

22   inventory ("New Inventory") that could still be resold to the OEMs pursuant to the Buy-Back

23   Agreements.  CDF assumed all responsibility, including taking possession and delivering the New

24   Inventory to the OEMs, and all costs incurred disposing of the New Inventory.  The parties further

25   agreed that all proceeds from the New Inventory ("New Inventory Proceeds") would be deposited,

26   subject to CDF's lien, into a trust account ("Relief Escrow Account").  The Stipulation

27   contemplated the release of the New Inventory Proceeds pursuant to the CDF Agreement (defined

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  below).  On November 17, 2014, the Court entered an order approving the CDF MRS Stipulation

2  and granting the CDF MRS with respect to the New Inventory [Docket No. 303].

3         Subsequently, on November 24, 2014, CDF, the Debtor, McMahon, McMahon's affiliates,

4  and the Committee entered into a settlement agreement (the "CDF Agreement").  The CDF

5  Agreement provides in part as follows (all capitalized terms are as defined in the CDF

6  Agreement)[1]:

7  • The Parties have and agree to resolve, settle and compromise all disputes between and
   among them and enter into the CDF Agreement solely for the purpose of resolving, settling
8  and compromising Claims and to avoid the further time and expense of litigation; and the
   Parties do not admit liability to any other Settling Party, and they do not admit the validity
9  or invalidity of any Claim or defense made by any other Settling Party;

10 • On the Effective Date of the CDF Agreement:

11    o All funds constituting the Collateral Proceeds in the Escrow Account shall be

12       disbursed to the Debtor, less: (i) any Escrow Advances or Pre-Escrow Advances;

13       and (ii) the Holdback Amount.

14    o The "Collateral Proceeds" means (i) the amounts obtained from the liquidation,

15       disposition, collection or other monetizing of the (a) Used Inventory, (b) the

16       Contracts In Transit, (c) FF&E and (ii) in accordance with, and subject to the

17       limitations contained in the CDF Agreement, a total of $2,750,000 including the

18       Holdback Amount to be paid to Debtor by CDF upon the release of the repurchase

19       amounts for the New Inventory to CDF.  The amount of Collateral Proceeds shall

20       be capped at $4,700,000.

21    o The Holdback Amount shall remain in the Escrow Account until 180 days after the

22       effective date of a Plan, and then shall be disbursed to the Debtor or to CDF in

23       accordance with the provisions of the CDF Agreement.

24    o The Debtor is permitted to file an employment application for McMahon effective

25       November 1, 2014 to compensate McMahon at the rate of $10,000 per month until

26       confirmation of a Plan, paid from proceeds of the Debtor's estate other than from

27

28 [1]Parties should refer to the terms of the CDF Agreement for the full content thereof.  *See* Docket No. 348.

1    the Collateral Proceeds (should the estate be able to realize these proceeds),

2    McMahon and/or Guarantors shall not, directly or indirectly, be paid, receive

3    distributions, or otherwise be compensated from any of the Collateral Proceeds.

4    o    The mutual and general releases by the Parties contained herein shall be effective.

5    o    McMahon and the Guarantors will subordinate any and all Claims they may have

6    against the Debtor's estate to all other unsecured creditors of the Debtor's estate.

7    o    All pending litigation between the Parties will be dismissed.

8    o    Notwithstanding the effectiveness of the releases provided to him, McMahon will

9    continue to reasonably cooperate with the Debtor's estate as requested after he is

10    released by the Debtor and/or no longer employed by the Debtor.

11    Also, Pursuant to the CDF Agreement, the Committee had the opportunity to investigate

12    any potential claims against the estate and causes of action against McMahon and/or any company

13    affiliated with him.  The Committee conducted an investigation and recommended approval of the

14    CDF Agreement.  The Debtor's motion to approve the CDF Agreement [Docket No. 348] was

15    granted by the Court on December 22, 2014 [Docket No. 395].  The Effective Date of the CDF

16    Agreement occurred on or about January 20, 2015.  The New Inventory was released to CDF

17    pursuant to the CDF MRS Stipulation and CDF transferred to the Debtor's account the sum of

18    $2,495,000.

19    **5.    Debtor's Ongoing Liquidation Efforts**

20    Pursuant to the terms of the CDF Agreement, New Inventory was returned to CDF but the

21    Debtor retained control over all Used Inventory, meaning all RV Inventory that is not New

22    Inventory and on which CDF held a perfected, first priority security interest, and on all the

23    Debtor's furniture, office fixtures, and equipment.

24    By December 10, 2014, the Debtor relocated all inventory to the Colton Location.  The

25    inventory is well displayed in the only RV Sales Mall on the West Coast, with extremely low

26    overhead.  Every effort is being made by the Debtor to maintain a seller gross in excess of what

27    the inventory would bring at auction, which is approximately 25% - 30% below NADA estimates.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Currently the inventory selling grosses are approximately 8% above NADA estimates. A list of the

2  inventory held by the Debtor as of May 31, 2015 is attached hereto as Exhibit 4.

3      In connection with the Used Inventory the Debtor had and currently has a number of

4  contracts in transit, meaning that the Debtor has uncompleted transactions with Customers, which

5  once completed may result in payment to the Debtor of amounts due from such Customers upon

6  delivery of good title to the vehicle to such Customer.  These contracts in transit were identified on

7  Exhibit A to the CDF Agreement.  A copy of the CDF Agreement and Exhibit A to the CDF

8  Agreement are attached as Exhibit 3 hereto.  The Debtor has since the Effective Date of the CDF

9  Settlement engaged on ongoing resolution of these contracts in transit.  Below is a summary of

10  contracts in transit that the Debtor has resolved through May 31, 2015, and the remaining contracts

11  in transit still to be resolved:

12  Contracts in Transit Resolved

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2014 | Thor | Hurricane | 1F65F5DY4D0A12520 |
| 2013 | Winnebago | Vista | 1F66F5DY8D0A07213 |
| 2014 | Forest River | Wildcat | 4X4TWDD26EC043627 |
| 2014 | Winnebago | Minnie Winnie | 1GB3G3CGXD1131914 |

Contracts in Transit Not Resolved

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2014 | Forest River | Sunseeker | 1FDXE4FSXEDA22843 |
| 2014 | Winnebago | Forza | 4UZAAJDT2ECFU8839 |
| 2005 | Carriage | Compass | 16F62F4P351F01418 |
| 2014 | Eclipse | Stellar | 5LZBW2821ER042451 |
| 2014 | Forest River | Rockwood | 4X4TRLW26ED130517 |
| 2014 | Coachmen | Encounter | 1F66F5DY8D0A08068 |
| 2014 | Forest River | Wilderness | 5SFNB2923EE279323 |
| 2014 | Forest River | Wildcat | 4X4FWCB21ET013400 |
| 2005 | Alfa | See Ya | 4UZAAHDC75CU01597 |
| 2014 | Pleasure Way | Pursuit | 1FDWE3FS7DDB03738 |
| 2014 | Monaco | Knight | 51Z4D5649E4060529 |
| 2014 | Fleetwood | Revolution | 4VZBT1D958C061402 |
| 2014 | Pleasure Way | Ascent | WD3PE7CC3E5829017 |
| 2014 | Thor | Miramar | 1F66F5DYXE0A04301 |
| 2014 | Coachmen | Mirada | 1F65F5DY7D0A13984 |
| 2013 | Pleasure Way | Plateau | WD3PF4CC9C5666477 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Customers whose claims arise from a contract in transit will be treated as a Customer

2    Claim under the Plan in Class 3.

3    Attached hereto as Exhibit 5 is an income and expense statement during the administrative

4    period through May 31, 2015.

5    **6.    Debtor's Aborted Effort to Sell Business**

6    Efforts were made to sell certain Assets outside the ordinary course of business, but these

7    efforts ultimately did not come to fruition.  On February 18, 2015, the Debtor filed its Notice of

8    Motion and Motion for Order Approving: (1) Sale of Fixed and Personal Property Assets Located

9    at Westminster and Colton Locations; (2) Sale of Rolling Stock Located at Colton Location; (3)

10   Sale of Franchise Rights; (4) Sale of Goodwill and Other Intangible Assets; (5) Sale of Used

11   Inventory for Additional Consideration; and (6) Setting Bid Procedures (the "Sale Motion")

12   [Docket No. 473].  The Sale Motion sought the approval of a sale of certain assets to Dennis

13   Dillon RV and Marine Center (the "Buyer").  The Sale Motion drew oppositions from Colton

14   Location landlord Altman Colton Properties, Inc. [Docket No. 503] and franchisor Forest River,

15   Inc. [Docket No. 504], and creditor Adeline L. Thifault [Docket No. 509]; a limited objection by

16   franchisors Thor Industries, Inc., Four Winds (a division of Thor Motor Coach), Heartland

17   Recreational Vehicles, LLC, and Keystone RV Company [Docket No. 507]; and a response by

18   Westminster Location landlord Old Ranch Properties, LLC ("Old Ranch") [Docket No. 505].  The

19   Debtor filed an omnibus response [Docket No. 515] to all oppositions, and the Committee filed a

20   limited response [Docket No. 516] to the response of Old Ranch.  Based on the objections, the

21   Debtor requested that the Court continue the hearing in an effort to reach an agreement with the

22   objecting parties and the Buyer.  The Court entered an order continuing the matter to March 18,

23   2015 [Docket No. 539]. The Buyer subsequently reneged on the sale, and the Debtor withdrew the

24   Sale Motion at the March 18, 2015 hearing.

25   On information and belief the Buyer entered into a lease agreement with Old Ranch for the

26   Westminster Location, and purchased from Old Ranch certain personal property that the Debtor

27   had abandoned on those premises.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

The Debtor reserves all of its rights and remedies against the Buyer and Old Ranch, and the Liquidating Trust may pursue claims against the Buyer on account of its failure to proceed and close the transaction contemplated by the sale motion, and/or against Old Ranch for interference in contractual relations and similar tort and contract theories, as a result of Old Ranch's participation in an agreement with the Buyer.

### 7.    Forest River, Inc.'s Motion for Relief from Stay

Forest River, Inc. ("Forest River") filed a motion for relief from stay [Docket No. 460] (the "Motion for Relief from Stay") to go before California's New Motor Vehicle Board to terminate the Debtor's franchise agreements with Forest River.  This motion was accompanied by a motion for an order from the Bankruptcy Court compelling the rejection of the Debtor's franchise agreements with Forest River [Docket No. 461] (the "Motion to Compel").  The Debtor and the Creditors' Committee filed oppositions to the Motion for Relief from Stay and the Motion to Compel [Docket No. 483 and Docket No. 488, respectively] (collectively, the "Oppositions").  Forest River filed a reply to the Oppositions [Docket No. 508].  The Court ordered supplemental briefing on the contractual issues raised by the Court and gave a deadline of March 23, 2015 for the Debtor and the Committee to file supplemental briefs and April 6, 2015 for Forest River to file its supplemental brief.  The Debtor's brief was filed with the Court as Docket No. 555.  The Committee's brief was filed with the Court as Docket No. 557.  Forest River's brief was filed with the Court as Docket No. 575.  The hearings on the Motion for Relief from Stay and Motion to Compel were held on April 20, 2015 at 2:00 p.m. before the Honorable Mark S. Wallace.  The Bankruptcy Court granted both motions and subsequently entered its Order Granting Relief From Stay as to Dealer Agreements on April 22, 2015 [Docket No. 601] and its Order Compelling the Rejection of Executory Contracts (Dealer Agreements) on April 30, 2015 [Docket No. 611].

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**8.**     **Unexpired Leases and Executory Contracts**

    **a.**     **All Real Estate Leases Have Been Rejected as a Matter of Law**

        **i.**     **Westminster Lease**

The Debtor leased the premises at 5400 Garden Grove Blvd., Westminster, CA 92683 from Old Ranch ("Old Ranch Lease"), pursuant to a lease dated on or about April 1, 2012. The initial term of the Old Ranch Lease was one year, with an option ("Option") held by the Debtor to extend the term of the Old Ranch Lease for fourteen (14) years.  Pursuant to Section 1.7 of the Old Ranch Lease and the terms of that certain Guarantee of Lease ("Guarantee"), by and between Old Ranch and Brent McMahon, the Debtor's principal and 100% shareholder ("McMahon") agreed to guarantee all of the Debtor's obligations under the Old Ranch Lease.  On September 15, 2012, Old Ranch and the Debtor entered into Amendment No. 1 to the Old Ranch  Lease, pursuant to which additional property owned by Old Ranch was added to the Premises leased to the Debtor under the lease.  On March 29, 2014, Old Ranch and the Debtor entered into Amendment No. 2 to the Old Ranch  Lease pursuant to which the parties agreed that the Debtor had exercised the option, extending the term of the Lease to April 1, 2027.

The Debtor had ceased operations prior to the Petition Date, and since the Petition Date the Debtor used the Westminster premises for storage of New Inventory until that inventory was returned to CDF pursuant to the CDF Agreement, and thereafter until the Debtor abandoned the Westminster premises on December 11, 2014, it used the Westminster premises for storage for other inventory.

On August 4, 2014, Old Ranch filed its Motion to Compel Payment of Chapter 11 Administrative Expense Claim [Docket No. 114] ("Motion to Compel Payment"), pursuant to which Old Ranch sought an order from the Court compelling the Debtor to perform its obligations under the Old Ranch Lease, specifically to pay the post-petition rent and cost of utilities due from the Petition Date onward. On September 18, 2014, the Court entered the Order to Compel Payment [Docket No. 199] granting the relief sought in the Motion to Compel Payment and ordering the Debtor to immediately perform its obligations under the unexpired Lease, specifically to pay the post-petition rent due from the Petition Date in the amount of $90,000 per month plus the cost of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  utilities paid by Old Ranch, until such date that the Old Ranch Lease is assumed or rejected by the

2  Debtor.

3      On September 29, 2014, Old Ranch filed its Motion to Compel Debtor to Surrender Non-

4  Residential Real Property [Docket No. 218] ("Motion to Compel Surrender"), pursuant to which

5  Old Ranch sought an order from the Court compelling the Debtor, under 11 U.S.C. § 365(d)(4)(A),

6  to immediately surrender the premises to Old Ranch and granting Old Ranch immediate relief

7  from the automatic stay in order to take possession of the Westminster Location and to exercise

8  any and all other rights and remedies available under the lease and applicable law.  On November

9  24, 2014, the Court entered the Order Granting Motion to Compel Debtor to Surrender Non-

10  Residential Real Property [Docket No. 347] ("Order Compelling Surrender"), compelling the

11  Debtor to surrender the Westminster Location to Old Ranch and granting Old Ranch relief from

12  the automatic stay in order to take possession of the Westminster Location and to exercise any and

13  all other rights and remedies available under the Old Ranch Lease and applicable law. Old Ranch

14  however did not exercise those rights.

15      On December 11, 2014 the Debtor confirmed in writing to Old Ranch that it had ceased

16  operations prior to the Petition Date, that it surrendered and tendered as of that date possession of

17  the Westminster Location to Old Ranch, and the personal property located on the Westminster

18  premises would remain there pending the possible consummation of an agreement with a potential

19  buyer. (See "Debtor's Aborted Effort to Sell Business, Section V.B.6., above.)

20      By order entered on March 19, 2015 [Docket No. 544], the Court ordered that the Debtor

21  must pay $355,360.06 to Old Ranch in full satisfaction of its administrative claim from the petition

22  date to the date of Debtor's rejection of the Old Ranch Lease (October 13, 2014), which payment

23  is without prejudice to any and all rights of the Debtor, the bankruptcy estate and all other parties

24  in interest to object to all pre-petition or further administrative claims of Old Ranch and for the

25  Debtor and the bankruptcy estate to seek all affirmative relief against Old Ranch Properties.  This

26  payment has been made.  The Court further ordered that Debtor shall reserve $571,674.50 for the

27  balance of the alleged administrative claim of Old Ranch, which reserve may be eliminated by

28  order of the Court on later motion of either the Debtor or the Creditors Committee. The reservation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    of such funds is without prejudice to any and all rights of the Debtor, the bankruptcy estate and all

2    other parties in interest to object to all further administrative claims of Old Ranch, and for the

3    Debtor and the bankruptcy estate to seek affirmative relief against Old Ranch. The Debtor does not

4    believe that the reserved amount is owing to Old Ranch and the Debtor, Committee, or the

5    Liquidating Trust, as the case may be, intends to object to the Old Ranch reserved amount, and is

6    considering filing an action against Old Ranch (See "Reserved Claims".)

7                        **ii.    Colton Lease**

8            The Debtor leased the premises the Colton Location from Altman Colton, pursuant to a

9    lease dated on or about August 1, 2012 (the "Altman Colton Lease").  The initial term of the

10   Altman Colton Lease was three years and four and a half months.

11           The Debtor had ceased operations prior to the Petition Date, and since the Petition Date the

12   Debtor used the Colton Location for storage of New Inventory until that inventory was returned to

13   CDF pursuant to the CDF Agreement, and thereafter until the Debtor abandoned the Colton

14   Location on December 11, 2014, it used the Colton Location for storage for other inventory and

15   certain fixtures, furniture and equipment.  On December 16, 2014 the Debtor turned over the keys

16   to the Colton Location.

17           On April 8, 2015, Altman Colton filed Motion And Application For Altman Colton

18   Properties, Inc.'s Application For Allowance Of Administrative Claim Under 11 U.S.C. §§

19   365(D)(3) And 503(B) [Docket No. 579] (the "Altman Colton Motion").  On April 27, 2015, the

20   Debtor and the Committee filed a joint opposition to the Altman Colton Motion [Docket No.

21   606].  On May 4, 2015, Altman Colton filed its Reply to Joint Opposition of Debtor and Official

22   Committee of Unsecured Creditors to Altman Colton Properties, Inc.'s Application for Allowance

23   of Administrative Claim Under 11 U.S.C. §§ 365(d)(3) and 503(b) [Docket No. 616].

24   On June 5, 2015 the Court entered an order approving a settlement among Altman Colton, the

25   Debtor and the Committee whereby Altman Colton: (i) was paid $97,704 on account of its

26   administrative claim under Bankruptcy Code §365(d)(3); (ii) will be paid an administrative claim

27   $65,000 at the same time as, and pro rata to the extent of, payment of professional administrative

28   fee claims, or at the time specified in any Plan confirmed by the Court for the payment of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    administrative claims; and (iii) shall have an Allowed General Unsecured Claim in the amount of

2    $266,963.30.

3                                    **iii.    Palm Desert Lease**

4          The Debtor leased the premises at 77840 Varner Road, Palm Desert, CA 92211 ("Palm

5    Desert Premises") from Edward Steve Banas and Sandra Weinrub Banas, individually and as

6    Trustee of the Banas Family Trust ("Banas"), pursuant to a lease dated on or about April 24, 2008

7    (the "Banas Lease"). The initial term of the Banas Lease was five years, with an option

8    ("Option") held by the Debtor to extend the term of the Lease for an additional sixty (60) months.

9    McMahon guaranteed the lease for the Palm Desert Premises.

10          On June 23, 2014, Banas filed its Motion for Relief from the Automatic Stay or for Order

11   Confirming that the Automatic Stay Does not Apply Under 11 U.S.C. § 362(I) [Docket No. 16]

12   ("Motion for Relief"). After a hearing on July 14, 2014, the Court entered an Order Denying

13   Motion for Relief from the Automatic Stay Under [Docket No. 65]

14          On August 4, 2014 Banas filed its Motion to Allow and Compel Payment of Chapter 11

15   Administrative Expense Claim [Docket No. 115] (the "Banas Motion to Compel"). The Debtor

16   and Banas entered into a settlement to settle the Banas Motion to Compel in terms of which,

17   among other things: (i) Banas was granted relief from the automatic stay so that it could take

18   possession of and re-let the Palm Desert Premises, (ii) the lease was deemed rejected; (iii) Banas

19   waived any administrative claims; (iv) Banas waived any and all claims it had against McMahon

20   pursuant to the Guarantee; and (v) Banas was granted an Allowed General Unsecured Claim in the

21   amount of $316,906.08.

22                                    **b.    Other Executory Contracts**

23          The Debtor will make decisions regarding the assumption or rejection of its remaining

24   executory contracts, if any, as soon as is practicable. Those decisions will be effectuated through

25   one or more motions filed with the Court or under the Plan. Pursuant to the Plan except for any

26   agreement between the Debtor and the Holder of a Class 3 Customer Claim which may be an

27   executory contract which gives rise to the Class 3 Claim (which executory contracts, if any, will

28   "ride through" the Plan Confirmation and be treated as set forth in Class 3), all executory contracts

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

not previously assumed and assigned or rejected in an Order entered prior to the Effective Date

will be rejected under the Plan.  The Confirmation Order shall constitute an Order approving the

rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you

object to the rejection of your contract or lease, the Plan provides that you must file and serve your

objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE DEADLINE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

FROM THE REJECTION OF A LEASE OR CONTRACT IS 30 DAYS AFTER THE

EFFECTIVE DATE OF THE PLAN.  Any claim based on the rejection of a contract or lease will

be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

### 9.    Other Relief from Stay Motions and Stipulations

Apart from the above mentioned matters, several motions and stipulations for relief from

stay have been filed in the Debtor's case.  These other motions and stipulations, along with their

dispositions, are summarized in the following chart:

| Docket No. | Movant | Type of Property or Action | Disposition |
|---|---|---|---|
| 22 | Arbogast Buick, Pontiac, GMC, Inc. | Personal Property | Denied with prejudice [Dkt. 82] |
| 46 | Ally Financial, Inc. | Personal Property | Stipulation Approved [Dkt. 108] |
| 132 | Estate of Elva M. Ayala, et al. | Action in Non-Bankruptcy Forum | Granted [Dkt. 184] |
| 137 | Phillip and Gail Cowan | Personal Property | Stipulation Approved [Dkt. 150] |
| 140 | Gary Collins | Personal Property | Stipulation Approved [Dkt. 198] |
| 147 | Portland Local 8 Federal Credit Union | Personal Property | Granted in part, denied in part [Dkt. 214] |
| 156 | Edward Steve Banas and Sandra Weinrub Banas, Individually and as Trustees of the Banas Family Trust | Unlawful Detainer | Stipulation Approved [Dkt. 158] |
| 164 | V.S.M, a minor, through GAL | Action in Non-Bankruptcy Forum | Granted [Dkt. 226] |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| 172 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc., an Assignee of Thor Credit Corporation | Personal Property | Granted [Dkt. 289] |
|---|---|---|---|
| 173 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc. | Personal Property | Granted [Dkt. 288] |
| 174 | Santander Consumer USA, Inc., Servicer for E*Trade Consumer Finance Corporation as Assignee of Thor Credit Corp. | Personal Property | Granted [Dkt. 287] |
| 175 | Santander Consumer USA, Inc., an Assignee of GE Capital Consumer Card Co. | Personal Property | Granted [Dkt. 305] |
| 176 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc. | Personal Property | Granted [Dkt. 304] |
| 216 | Bank of America | Personal Property | Granted [Dkt. 302] |
| 217 | Bank of America | Personal Property | Granted [Dkt. 301] |
| 240 | Bank of the West | Personal Property | Granted [Dkt. 382, 445] |
| 248 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 339] |
| 249 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 338] |
| 250 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 337] |
| 258 | Washington State Employees Credit Union | Personal Property | Denied without prejudice at Nov. 17, 2014 hearing [No order entered] |
| 291 | Traveland International, LLC | Action in Non-Bankruptcy Forum | Denied with prejudice [Dkt. 383] |
| 340 | Washington State Employees Credit Union | Personal Property | Denied without prejudice [Dkt. 403] |
| 419 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 568] |
| 431 | Dale Carson | Action in Non-Bankruptcy Forum | Granted [Dkt. 560] |
| 439 | First Interstate Bank | Personal Property | Stipulation Approved [Dkt. 444] |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| 441 | Washington State Employees Credit Union | Personal Property | Stipulation Approved [Dkt. 443]; Subsequent Stipulation to Set Aside Relief Order Approved [Dkt. 604] |
|-----|------|------|------|
| 460 | Forest River, Inc. | Action in Non-Bankruptcy Forum | Granted [Dkt. 601] |
| 535 | Mega RV Corp., Debtor | Action in Non-Bankruptcy Forum | Granted [Dkt. 581] |
| 587 | Brian and Monica Pollaccia | Personal Property | Stipulation Approved [Dkt. 589] |

**VI.     CLAIMS FILED AGAINST THE ESTATE AND TREATMENT THEREOF**

**A.     Schedules and Bar Dates**

The Debtor filed its Schedules of Assets and Liabilities (as amended, the "Schedules") and Statement of Financial Affairs ("SOFA") [Docket No. 79] on July 21, 2014.  The Debtor subsequently filed an amended version of its Schedule B (Personal Property) on November 6, 2014 [Docket No. 270].

The Court entered an order [Docket No. 160] setting the "Bar Date" for filing proofs of claim generally as November 14, 2014.  For claims of "governmental units," as that term is defined in 11 U.S.C. Section 101(27), proofs of claim are timely filed if filed (a) before 180 days after the date of the Order for Relief in this case, or (b) by November 14, 2014, whichever is later. 11 U.S.C. § 502(b)(9). *See* Docket No. 183 at p. 2.

**B.     Scheduled Claims**

In its Schedules, the Debtor estimated that the total amount of the non-contingent, undisputed, liquidated Claims against the Debtor as of the Petition Date was approximately $55,367,642.62.  Secured claims accounted for approximately $31,000,000.00. Unsecured Priority Claims accounted for approximately $2,493,800.28, and General Unsecured Claims accounted for approximately $21,873,842.34.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## C.    Filed Claims

To date, Secured Claims in the approximate amount of $38000,000 have been filed against the Estate.  Priority Non-Tax Claims of $315,424.46 have been filed against the Estate.  Customer Claims and Warranty Claims of approximately $9,519,000 have been filed against the estate.  General Unsecured Claims of approximately $12,454,000 have been filed against the estate.

The Debtor has not yet reconciled filed proofs of claim to the Schedules to eliminate duplicative claims or General Unsecured Claims incorrectly filed as Priority Claims.  The Debtor expects to begin this process shortly and expects that the Debtor or the Committee will object to or seek withdrawal of any such duplicative or incorrectly classified claims. However pursuant to the CDF Settlement, the Claim of CDF filed in the amount of $31,547,399.05 [Proof of Claim No. 79] and scheduled in the amount of $31,000,000.00, has been resolved, and the Claim of McMahon filed in the amount of $ 8,892,952.00 [Proof of Claim No. 111] and scheduled in the amount of $8,892,952.00, has been subordinated to all other creditors.

**THE DEBTOR, THE COMMITTEE, AND THE LIQUIDATION TRUST RESERVE ANY AND ALL RIGHTS, EXCEPT AS EXPRESSLY STATED IN THE PLAN, TO OBJECT TO, DEFEND AGAINST, AND REQUEST DISALLOWANCE, REDUCTION, SUBORDINATION, AND/OR RECHARACTERIZATION OF ANY CLAIM ASSERTED AGAINST THE DEBTOR OR ITS ESTATE, INCLUDING ANY CLAIM LISTED IN THE SCHEDULES.  THE DEBTOR ANTICIPATES THAT MANY CLAIM OBJECTIONS WILL BE FILED AFTER CONFIRMATION OF THE PLAN.**

### D.    Secured Claims (Classes 1(a) – 1(j))

Classes 1(a)-1(j) include claims that are purportedly secured by liens on property of the estate.  The claim of CDF is treated in Class 1(a).  The remaining claims, treated in Classes 1(b) – 1(j), purported to be secured by a UCC filing.  The Plan's treatment of these claims is discussed immediately below.

#### 1.    Class 1(a)

The Secured Claim of CDF is treated in Class 1(a) as follows.  The terms of the CDF Agreement are incorporated into the Plan, and CDF shall be treated pursuant thereto unless

1   modified in the Plan.  A copy of the CDF settlement agreement is attached as <u>Exhibit 3</u> hereto.

2   CDF has pursuant to the CDF Agreement released from its collateral to the Estate the "Collateral

3   Proceeds:" (i) the amounts obtained from the liquidation, disposition, collection or other

4   monetizing of the (a) Used Inventory (as defined in the CDF Agreement), (b) the Contracts In

5   Transit (as defined in the CDF Agreement), (c) FF&E (as defined in the CDF Agreement) and (ii)

6   in accordance with, and subject to the limitations contained in Sections 6 and 7 of the CDF

7   Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the CDF

8   Agreement) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New

9   Inventory (as defined in the CDF Agreement) to CDF (the "Repurchase Amount").  The amount of

10  Collateral Proceeds shall be capped at $4,700,000.  The Holdback Amount (as defined in the CDF

11  Agreement) shall remain in the Escrow Account until 180 days after the Effective Date and then

12  shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7 of the

13  CDF Agreement.  The CDF Lien, to the extent it remains effective after the CDF Agreement, shall

14  be transferred to the Liquidating Trustee without any representation or warranty as the

15  effectiveness thereof pursuant to that certain Loan and Lien Assignment Agreement, to be

16  executed on the Effective Date between the Liquidating Trustee and CDF, which is attached as

17  <u>Exhibit 6</u> hereto.

18          **2.      Class 1(b)**

19          The Class 1(b) Creditor, HWH Corporation, is treated as a General Unsecured Creditor

20  under the Plan for the following reasons.  The judgment Lien of HWH Corporation was recorded

21  with the Secretary of State of the State of California on October 9, 2012.  The judgment Lien of

22  HWH Corporation is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a

23  result of which pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien

24  were completely unsecured and of no value.  All Assets currently in the estate were obtained as a

25  result of the post-petition efforts of the Debtor and the Committee and are not subject to the

26  judgment Liens of HMH Corporation.  Substantially all of the Assets currently in the Estate were

27  created as a result of settlement of a commercial tort claim against CDF.  The notice of judgment

28  Lien filed by HWH Corporation does not satisfy the requirement of UCC section 9-108 for

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

perfection of a security interest in a commercial tort claim.  HWH Corporation does not have a

security interest in after acquired property, and as such, the security interest of HWH Corporation

does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including

avoidance recovery and the cash proceeds as a result of the CDF Agreement.  HWH Corporation,

the sole creditor in Class 1(b), will be treated pro rata with Class 4 Creditors, to the extent its

Claim is Allowed.

### 3.     Class 1(c)

The Class 1(c) Creditor, American Express, is treated as a General Unsecured Creditor

under the Plan for the following reasons.  The Lien of American Express was recorded with the

Secretary of State of the State of California on August 1, 2013.  The Lien of American Express is

junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which

pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien were completely

unsecured and of no value.  All Assets currently in the estate were obtained as a result of the post-

petition efforts of the Debtor and the Committee and are not subject to the Lien of American

Express.  Substantially all of the Assets currently in the Estate were created as a result of

settlement of a commercial tort claim against CDF.  The Lien filed by American Express does not

satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial

tort claim.  American Express, the sole creditor in Class 1(c), will be treated pro rata with Class 4

creditors, to the extent its Claim is Allowed.

### 4.     Class 1(d)

The Class 1(d) Creditors, Portfolio General Management Group, on behalf of itself and

related parties Standard Group Resources, Ltd. and Cade Phoenix, Ltd. ("Portfolio General"), are

treated as General Unsecured Creditors under the Plan for the following reasons.  The Lien of

Portfolio General was recorded with the Secretary of State of the State of California on April 16,

2014.  The Lien of Portfolio General is junior to the CDF Lien.  As of the Petition Date, CDF was

undersecured, as a result of which pursuant to Bankruptcy Code § 506 all secured creditors junior

to the CDF Lien were completely unsecured and of no value.  All Assets currently in the estate

were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   subject to the Lien of Portfolio General.  Substantially all of the Assets currently in the Estate were

2   created as a result of settlement of a commercial tort claim against CDF.  The Lien filed by

3   Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a

4   security interest in a commercial tort claim.  Portfolio General does not have a security interest in

5   after acquired property, and as such, the security interest of Portfolio General does not attach to

6   post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery

7   and the cash proceeds as a result of the CDF Agreement.  Each of the creditors in Class 1(d), will

8   be treated pro rata with Class 4 creditors, to the extent their Claims are Allowed.

9          **5.    Class 1(e)**

10         The Class 1(e) Creditors, Portfolio General Management Group, on behalf of itself and

11  related parties Standard Group Resources, Ltd. and Dakota Sioux Co., Ltd., are treated as General

12  Unsecured Creditors under the Plan for the following reasons.  The Lien of Portfolio General was

13  recorded with the Secretary of State of the State of California on April 16, 2014. The Lien of

14  Portfolio General is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a

15  result of which pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien

16  were completely unsecured and of no value.  All Assets currently in the estate were obtained as a

17  result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien

18  of Portfolio General.  Substantially all of the Assets currently in the Estate were created as a result

19  of settlement of a commercial tort claim against CDF.  The Lien filed by Portfolio General does

20  not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a

21  commercial tort claim.  Portfolio General does not have a security interest in after acquired

22  property, and as such, the security interest of Portfolio General does not attach to post-petition

23  Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash

24  proceeds as a result of the CDF Agreement.  Each of the creditors in Class 1(e), will be treated pro

25  rata with Class 4 creditors, to the extent their Claims are Allowed.

26         **6.    Class 1(f)**

27         The Class 1(f) Creditor, Roadtrek Motor Homes ("Roadtrek"), is treated as General

28  Unsecured Creditors under the Plan for the following reasons.  The Lien of Roadtrek was recorded

with the Secretary of State of the State of California on April 24, 2009.  The Lien of Roadtrek is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.  The Lien of Roadtrek lapsed on April 24, 2014.  The Class 1(f) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

### 7.    Class 1(g)

The Class 1(g) Creditor, Reyna Capital Corporation ("Reyna"), is treated as General Unsecured Creditors under the Plan for the following reasons.  Reyna Capital holds an unsecured claim against the estate because equipment and software securing Reyna Capital's Claim was abandoned by the Debtor to its prior landlord Old Ranch Properties.   The Class 1(g) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

### 8.    Class 1(h)

The Class 1(h) Creditor, Southern California Auto Auction, is treated as General Unsecured Creditors under the Plan for the following reasons.  The Debtor no longer holds any Assets subject to the Lien of Southern California Auto Auction.  The Class 1(h) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

### 9.    Class 1(i)

The Class 1(i) Creditor, Bank of America, is treated as having an Allowed Secured Claim in the amount of $75,000 secured by those certain bank accounts at Bank of America, account number.  The balance of the Claim of the Class 1(i) Claim will be treated as a Pro Rata Share with Class 4 creditors, to the extent the Claim is Allowed.  Any other funds of the Debtor held by the Class I(i) shall be released to the Liquidating Trustee on the Effective Date.

### 10.    Class 1(j)

Class 1(j) includes all other Creditors who assert a Secured Claim other than those identified in Classes 1(a) to 1(i).  The Class 1(j) Creditors are treated as under the Plan as follows: Except to the extent that the Holder of an Allowed Claim in Class 1(j) agrees to less favorable treatment, each Allowed Class 1(j) Claims shall be satisfied, discharged, exchanged, and released by, at the option of the Liquidation Trustee: (i) payment to the Holder of the amount of the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Allowed Class 1(j) Claims in Cash in full from the Liquidation Trust; (ii) payment to the Holder of

2   the sale or disposition proceeds of the Collateral securing such Allowed Claims to the extent of the

3   value of the Collateral securing such Allowed Claims; (iii) surrender to the Holder of the

4   Collateral securing such Allowed Claims; or (iv) such treatment that leaves unaltered the legal,

5   equitable, and contractual rights to which the Holders is entitled with respect to such Allowed

6   Claim.  In the event that an Allowed Claim in Class 1(j) is treated under clause (i) or (ii) above: (y)

7   the Liens securing such Allowed Claim shall be deemed released and extinguished without further

8   Order of the Court; and (z) Holders of Allowed Class 1(j) Claims shall be deemed to hold

9   Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such

10  payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.  The

11  Liquidation Trustee shall notify the Holder of an Allowed Class 1(j) Claim of the election made by

12  the Liquidation Trustee under this section by the later of: (x) the Effective Date; and (y) the

13  fifteenth (15th) Business Day after such Claim becomes an Allowed Class 1(j) Claim, or, in either

14  case, as soon thereafter as is practicable, and the Liquidation Trustee shall perform such election

15  within thirty (30) days thereafter.

16      **E.      Priority Non-Tax Claims (Classes 2(a) – 2(b))**

17          Class 2(a) includes Claims for wages, salaries, commissions, including vacation, severance

18  and sick leave pay, earned by an individual within 180 days before the Petition Date, not to exceed

19  $12,475.  Except to the extent that a Holder of an Allowed Claim in Class 2(a) agrees to less

20  favorable treatment, each Holder of an Allowed Class 2(a) Claim shall receive in full satisfaction,

21  discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate

22  amount equal to such Allowed Class 2(a) Claim on the later of: (i) the Effective Date; and (ii) the

23  fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either

24  case, as soon thereafter as is practicable.  Holders of Allowed Class 2(a) Claims shall be deemed

25  to hold Liquidation Trust Interests in the amount of their Allowed Class 2(a) Claims, and

26  payments on such Claims pursuant to the provisions of the Plan shall be deemed to be

27  Distributions on such Liquidation Trust Interests.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Class 2(b) includes Unsecured Claims for deposits by individuals arising from the deposit before the Petition Date of money in connection with the purchase, lease or rental of property from the Debtor, or the purchase of services from the Debtor including Warranty Claims, not to exceed $2,775.

- (i) Except to the extent set forth in sub-paragraph (ii) below, each Holder of an Allowed Class 2(b) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(b) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable.  Holders of Allowed Class 2(b) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(b) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

- (ii) No Customer shall be an Allowed Class 2(b) claimant if such Customer has of the Effective Date been paid a claim a Recovery Claim in excess of $2,775 by the Recovery Corporation.

- (iii)  As a condition precedent to the Allowance of any Claim by the Holder of a Class 3 Claim, such Holder shall return to the Debtor any Assets of the Debtor that are held by the Class 3 Claim Holder.

**F.    Customer Claims and Warranty Claims (Class 3)**

Class 3 includes Customer Claims and Warranty Claims.  Each Holder of an Allowed Customer Claim and/or a Warranty Claim shall, subject to sub-paragraph (iii) below immediately below, receive in full satisfaction, discharge, exchange, and release of each Allowed Customer Claim and/or a Warranty Claim:

- (i) To the extent such Creditor is also the Holder of a Class 2(b) Claim, treatment as a Class 2(b) Claimant; and to the extent the Class 3 Claim exceeds the amount of $2,775 at the option of the Liquidation Trustee:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

- (ii) *(w)* payment of the Pro Rata Share with Class 5 creditors, to the extent its Claim is Allowed; *(x)* payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Class 3 Claim, if any, to the extent of the value of the Collateral securing such Class 3 Claim, if any; *(y)* surrender to the Allowed Class 3 Claim the Collateral securing such Allowed Class 3 Claim, if any; or *(z)* such other treatment as is agreed to among the Holder of the Class 3 Claim and the Liquidating Trustee that does not use Assets that are payable to other Creditors.  Upon the Liquidation Trustee electing any such treatment, the Liens, if any, securing such Class 3 Claim shall be deemed released and extinguished without further Order of the Court; and Holders of Class 3 Claims and/or a Warranty Claim shall be deemed to hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.

- (iii) The Claim of a Class 3 Creditor shall be reduced by, and to the extent of, any Recovery Claim paid by the Recovery Corporation as of the Effective Date.

- (iv) To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract which gives rise to the Class 3 claim, then notwithstanding anything else in the Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in Class 3.

### G.    General Unsecured Claims (Class 4)

Class 4, General Unsecured Claims, includes all Claims that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Customer Claims or Warranty Claims, or Subordinated Claims.  Each Holder of an Allowed Class 4 Claims shall receive in full and complete satisfaction, discharge, exchange, and release of its Allowed Class 4 Claim, from the Liquidation Trust, a Pro Rata Share of the Liquidation Trust Net Proceeds, based upon the amount of such Liquidation Trust Interest to the extent provided in the Plan.  Holders of Allowed Class 4 Claims shall be deemed to hold Liquidation Trust Interests to the extent set forth above, and

1   payments on such Claims pursuant to the provisions of the Plan shall be deemed to be

2   Distributions on such Liquidation Trust Interests.

3       **H.**    **Subordinated Claims (Class 5)**

4       Class 5, Subordinated Claims, includes the Claims of McMahon, MIC Investments

5   Company, LLC., McMahon's Rentals, LLC., Kinsale, LLC., and Nevada Street, LLC.  The

6   Holders of Class 5 Claims including but not limited to proof of claim number 111, whether such

7   Claims are liquidated or non-liquidated, contingent or non- contingent, disputed or non-disputed,

8   whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and

9   Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in

10   right and time of payment, to the prior payment in full of all senior Classes.

11       **I.**    **Interests (Class 6)**

12       Class 6, Interests, includes only the Interests of McMahon, who is the sole Interest holder

13   of the Debtor.  Class 6 Interests shall be deemed cancelled on the Effective Date and Holders of

14   Class 6 Interests shall receive no Distributions or any property under the Plan on account of such

15   Interests.

16       **J.**    **Unclassified Claims**

17       Entities holding Administrative Claims and Priority Tax Claims are not classified and are

18   not entitled to vote on the Plan.

19       **1.**    **Administrative Claims**

20       Except to the extent that the Holder of an Allowed Administrative Claim agrees to less

21   favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed

22   Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof,

23   Cash from the Liquidation Trust in an aggregate amount equal to the amount of such Allowed

24   Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business

25   Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either

26   case, as soon thereafter as is practicable; provided, however, that Allowed Ordinary Course

27   Administrative Claims shall be paid in Cash in full after the Effective Date from the Liquidation

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Trust in accordance with the terms and conditions of the particular transactions, any applicable

2   agreements, or as otherwise authorized by the Court.

3       Pursuant to an order entered on March 19, 2015 [Docket No. 544], the Debtor has already

4   paid the following professional fees and costs:

5       Goe & Forsythe, LLP                    $296,037.89

6
    GlassRatner Advisory &
7   Capital Group, LLC                         $302,145.99

8       Brown Rudnick LLP                       $162,120.26

9       Greenberg Glusker
    Fields Claman &
10   Machtinger, LLP                            $345,620.88

11      Included among the Administrative Claims will be the claims of professionals employed to

12   assist the Debtor and the Committee.  The Administrative Claims also includes claims by the

13   Debtor's various landlords.

14      To date, the Debtor has already paid pursuant to Court Order to Old Ranch, the Debtor's

15   prior landlord for the Westminster premises, the sum of $355,360.06 in full satisfaction of its

16   administrative claim for base rent, utilities and tax payments to the Orange County Treasurer from

17   the petition date to the date of Debtor's rejection of its lease (October 13, 2014).  The Debtor has

18   also reserved $571,674.50 for the balance of the alleged administrative claim of Old Ranch which

19   reserve may be eliminated by order of the Court on later motion of either the Debtor, the

20   Committee or the Liquidating Trust.

21      The Debtor has also paid to Altman Colton the Debtor's prior landlord for the Palm Desert

22   premises the sum of $97,704 on account of its administrative claim under Bankruptcy Code

23   §365(d)(3) and will pay an administrative claim $65,000 at the same time as, and pro rata to the

24   extent of, payment of professional administrative fee claims, or at the time specified in any Plan

25   confirmed by the Court for the payment of administrative claims.

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

    **2.    Priority Tax Claims**

2       Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less

3   favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full

4   satisfaction, discharge, exchange, and release thereof, as follows:

5       i.    For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the

6   Liquidation Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of

7   the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an

8   Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

9       ii.    For all other Allowed Priority Tax Claims, equal annual payments over three years,

10  with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day

11  after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon

12  thereafter as is practicable (the "First Payment Date"), and each later payment on the anniversary

13  of the First Payment Date. Interest shall accrue on Allowed Priority Tax Claims to the Internal

14  Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from

15  the Effective Date. Interest shall accrue on all other Allowed Priority Tax Claims on the amount

16  outstanding from time to time at the rate at 6% per annum from the Effective Date.

17      The table below represents the filed Priority Tax Claims, some or all of which are subject

18  to objection. In particular, the Debtor believes that the Claim filed by the Internal Revenue Service

19  is incorrect and that the actual amount owing is not more than $588,000.

20

21

| Name | Description | Amount |
|------|-------------|--------|
| Internal Revenue Service | Unassessed payroll and income taxes based on no returns having been filed. | $1,410,419 |
| State of Arizona-Dept. of Revenue | Transaction Privilege Tax | $77,997 |
| Franchise Tax Board | Minimum Franchise Fee | $822 |
| County of Orange | Personal property taxes | $2,667 |

22

23

24

25

26

27

28

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| County of San Bernardino | Personal property taxes | $1,162 |
|---|---|---|
| California Employment Development Dept. | State payroll taxes | $371,672 |
| California State Board of Equalization | Sales and use tax and California Tire fee | $972,509 |

## K.    Claim Objections

Except as otherwise provided in the Plan or Confirmation Order, on or after the Effective Date, the Liquidation Trustee shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or withdraw such objections.  Specifically, except as otherwise provided in Sections 3.5, 3.6 and 3.8 of the Plan, Section 6.2 of the Plan provides that objections to Claims against the Debtor shall be filed and served upon the holders of the affected Claims no later than the Claims Objection Deadline: the date that is 180 days after the later of: (a) Effective Date; and (b) the date on which a proof of claim is filed.  These deadlines may be extended twice on notice by the Liquidating Trustee and thereafter by Order of the Court.

Creditors should assume that the Debtor or the Liquidation Trustee may file an objection to any proof of claim that differs in amount or priority from the amount or priority of that creditor's Claim against the Debtor as listed in the Schedules, or if such creditor's Claim against the Debtor is listed in the Schedules as disputed, contingent, or unliquidated.  Therefore, in voting on the Plan, no creditor may rely on the absence of an objection to its proof of claim as any indication that the Debtor, the Liquidation Trustee, or other parties in interest ultimately will not object to the amount, priority, security, or allowability of its Claim against the Debtor.  Moreover, the Debtor and the Liquidation Trustee reserve their rights with respect to all objections to Claims and counterclaims they may have with respect to Claims asserted against the Debtor and, except as specifically set forth in the Plan, reserve their rights to prosecute Claims of the Debtor and the Estate (including rights to affirmative recoveries, rights to subordinate Claims against the Debtor, as well as other rights).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**L.    Adversary Proceeding**

There is currently one pending adversary proceeding related to the Debtor: *Arbogast Buick, Pontia, GMC, Inc. v. Mega RV Corp*., Adversary Proceeding No. 8:14-ap-01315-MW (the "Arbogast Action" or "Adversary Proceeding").

In the Adversary Proceeding, plaintiff Arbogast Buick, Pontiac, GMC, Inc., an Ohio corporation ("Arbogast"), filed a complaint on December 4, 2014 alleging that the Debtor failed and refused to transfer to Arbogast proper title to two recreational vehicles.  Arbogast seeks declaratory relief.  The Debtor filed an answer on January 5, 2015.  The Abrogast Action remains pending.

**M.    Resolution of Other Litigation**

**1.    Roadtrek Litigation**

On March 16, 2015, the Debtor filed a motion for relief from stay [Docket No. 535] to continue its litigation with Roadtrek Motorhomes, Inc. ("Roadtrek"), and the Court entered an order granting relief from stay on April 8, 2015 [Docket No. 581].  This litigation related to Roadtrek includes (i) an action for damages filed by Roadtrek in the United States District Court in the Central District of California, Roadtrek Motorhomes, Inc. v. Mega RV Corporation, Inc. d/b/a McMahon's RV, Case No. CV 09-09466 SJO (the "Federal Court Action"), which is stayed pending resolution of a subsequently-filed State Court Action (as defined below) and the Debtor's Bankruptcy, and (ii) an appeal from a judgment entered in the Superior Court, County of Orange, that is currently pending before the Court of Appeal of the State of California, entitled *Roadtrek Motorhomes, Inc. v. New Motor Vehicle Board*, Fourth Appellate District, Case No. G049534 (the "State Court Action" and, collectively with the Federal Court Action, the "Roadtrek Litigation").

**a.    Federal Court Action**

The disputes between the Debtor and Roadtrek arose in or around 2008.  On December 28, 2009, Roadtrek filed a complaint against the Debtor alleging, among other things, breach of contract, conversion, tortious interference, unfair competition and defamation.  On April 9, 2010, the Debtor filed a first amended counterclaim against Roadtrek alleging breach of contract, unfair competition, bad faith, and various statutory violations of the Vehicle Code.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1       Prior to the filing of the Debtor's bankruptcy case, the Federal Court Action was stayed

2  pending conclusion of the subsequently-filed State Court Action.  The Debtor filed the State Court

3  Action so that it could exhaust its administrative remedies prior to asserting the counterclaims

4  (specifically the claims Roadtrek for Vehicle Code violations) in the Federal Court Action.  The

5  Federal Court agreed to stay the Federal Court Action until the Debtor exhausted its administrative

6  remedies.

7            **b.**     **State Court Action**

8       From January to July 2010, with leave of the Federal Court, the Debtor filed approximately

9  20 protests with the California New Motor Vehicle Board ("NMVB").  Roadtrek also filed certain

10  protests with the NMVB that were subsequently dismissed.  Thereafter, Administrative Law Judge

11  Anthony M. Skrocky heard several prehearing matters resulting in some of the protests being

12  dismissed and the remaining twelve protests being consolidated for the hearing.[2]  The consolidated

13  protests (collectively, the "Protests") included (1) protests that Roadtrek violated Vehicle Code §

14  3070(b) by entering into new franchise agreements with Mike Thompson's RV ("Mike

15  Thompson") at a location within the exclusive territory of the Debtor ("Modification Protests");

16  (2) protests that Roadtrek violated Vehicle Code § 3072(b)(5) by failing to give notice to the

17  Debtor of its intent to establish an additional Roadtrek dealer in Colton, CA ("Establishment

18  Protests"); (3) protests that Roadtrek violated Vehicle Code § 3075 by failing to pay the Debtor for

19  certain warranty claims ("Warranty Protests"); (4) protests that Roadtrek violated Vehicle Code §

20  3076 by failing to pay the Debtor for certain incentives related to Roadtrek's Incentive Program

21  ("Incentive Protests"); and (5) protests that Roadtrek improperly terminated the Debtor's Roadtrek

22  franchise ("Termination Protests").

23       Between August 2011 and February 2012, a hearing on the merits of the Protests (spanning

24  37 days) was held before Administrative Law Judge Diana Woodward Hagle, and the matters were

25

26  [2]Pursuant to Vehicle Code § 3060, a new motor vehicle dealership (franchisee) may file a "protest" with the NMVB to review a manufacturer's (franchisor) termination and/or breach of a dealership agreement.  The NMVB may elect to

27  have an Administrative Law Judge hear evidence on the protests and issue a proposed decision to the NMVB.  The NMVB then reviews the record and decides whether to adopt the proposed decision.

28

submitted to Judge Hagle for decision on May 3, 2012.  In July 2012, Judge Hagle issued

Proposed Decisions on each of the Protests.

Modification Protests: On July 30, 2012, Judge Hagle issued a Proposed Decision on the

Modification Protests finding that Roadtrek had not violated Vehicle Code § 3070(b) because it

had not modified the franchise agreement between Roadtrek and the Debtor.  On August 23, 2012,

the NMVB unanimously voted to reject Judge Hagle's Proposed Decision, announcing that it

would write a new decision on the Modification Protests and refer the matter to the Department of

Motor Vehicles.  The NMVB's new decision sustained the Debtor's Modification Protests finding

that Roadtrek had violated § 3070(b) by appointing Mike Thompson within the Debtor's exclusive

territory.

Establishment Protests: On July 30, 2012, Judge Hagle issued a Proposed Decision on the

Establishment Protests, finding that Roadtrek violated Vehicle Code § 3072(a) by failing to

provide notice of its intent to establish Mike Thompson as a Roadtrek dealer at its Colton location.

On August 23, 2012, the NMVB unanimously voted to accept Judge Hagle's Proposed Decision.

Warranty Protests: On July 25, 2012, Judge Hagle issued a Proposed Decision on the

Warranty Protests, finding that Roadtrek violated Vehicle Code § 3075 by failing to adequately

and fairly compensate the Debtor for certain warranty claims and failure to notify the Debtor that it

had offset certain warranty claims.  On August 23, 2012, the NMVB unanimously voted to accept

Judge Hagle's Proposed Decision.

Incentive Protests: On July 26, 2012, Judge Hagle issued a Proposed Decision on the

Incentive Protests, finding that Roadtrek violated Vehicle Code § 3076 because Roadtrek "failed

to fulfill obligations to [the Debtor] in regard to the franchisor incentive program claims."  On

August 23, 2012, the NMVB unanimously voted to accept Judge Hagle's Proposed Decision.

Termination Protests: On July 30, 2012, Judge Hagle issued a Proposed Decision on the

Termination Protests, finding that Roadtrek had met its burden of proof to establish that there was

good cause to terminate the Debtor's Roadtrek franchise.  On August 23, 2012, the NMVB voted

to accept Judge Hagle's Proposed Decision.

1    Roadtrek and the Debtor filed petitions with the California Superior Court for writs of

2    administrative mandate regarding the NMVB's decisions on the Protests.  On December 18, 2013,

3    the Superior Court entered an Order denying Roadtrek's petitions for writ of administrative

4    mandate.  The parties appealed to the California Court of Appeal, and on June 18, 2014, Roadtrek

5    filed its Opening Brief with the California Court of Appeal.

6    On June 15, 2014, the Debtor filed a voluntary petition for chapter 11 under the

7    Bankruptcy Code, commencing this Bankruptcy Case.  Although the Federal Court Action and

8    State Court Action were stayed by the filing of this Bankruptcy Case, as a result of the relief from

9    stay entered by the Court on April 8, 2015, the Roadtrek Litigation has resumed and the Debtor is

10   due to file an opening brief on or before June 24, 2015.

11                                **c.    Merits**

12   The Debtor believes that there is substantial merit to the Roadtrek litigation, and that the

13   estimated recovery could be in excess of $5 million.  However as with any litigation there is risk

14   associated with the outcome of such litigation.  In addition the Debtor will need to pay John A.

15   Belcher, the special counsel approved by the Court to handle the Roadtrek Litigation a

16   contingency fee of one third of any "net recovery" if and only if trial has not begun and no notice

17   of appeal has been filed; forty percent of any "net recovery" after initiation of a trial or the

18   beginning of testimony or submission of evidence in an agreed trial procedure or arbitration before

19   any notice of appeal is filed by any party; fifty percent of any "net recovery" after notice of appeal

20   is filed by any party. The State Court Action (NMVB Appeals) will be handled by Belcher for a

21   fixed sum of $25,000, plus costs. This fee is in addition to the contingency fee described above. If

22   there is no recovery from the Roadtrek State Court Action, the $25,000 plus costs does not have to

23   be paid by Mega RV or the estate.

24                          **2.    Rucker Litigation**

25   On or about September 12, 2013, Bruce Rucker and Marcy Rucker (collectively, "Rucker")

26   filed a civil action against Debtor in Orange County Superior Court under the name and style of

27   *Bruce Rucker, et al. v. Mega RV Corp. dba McMahon's RV*, Case No. 30-2013-00674989.  In this

28   action, Rucker alleges that Mega RV did not provide written disclosure to them that the Subject

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Vehicle's odometer reading at the time of sale was different than the actual miles traveled by the

2    Subject Vehicle.  Rucker alleged causes of action against Mega RV for (1) violation of the Federal

3    Odometer Act (49 U.S.C. § 32701, *et seq*.), and (2) violation of the Consumer Legal Remedies

4    Act.

5         Thereafter, on or about June 2, 2014, Rucker filed a First Amended Complaint adding

6    Great American Insurance Company ("GAIC") as a defendant to the lawsuit and adding a third

7    cause of action for fraud against Mega RV and a fourth cause of action against GAIC on the surety

8    bond under Vehicle Code § 11711.  (The First Amended Complaint filed in that action, together

9    with all allegations, claims, causes of action, demands and prayers for relief contained therein, are

10   collectively referred to as the "Civil Action.")  The defendants filed Answers to the First Amended

11   Complaint denying Rucker's various allegations and prayers for relief.  On or about July 24, 2014,

12   GAIC filed a cross-complaint in interpleader and indemnity, among other causes of action, against

13   various other cross-defendants, including Rucker.

14        The Debtor and Rucker filed their Notice of Motion and Motion to Approve Compromise

15   of Controversy Between Debtor and Debtor in Possession Mega RV Corp. and Bruce Rucker and

16   Marcy Rucker Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No. 391],

17   requesting approval of a settlement, pursuant to which the pending litigation is resolved, and the

18   Debtor's insurer is to pay $45,000 to Rucker.   The Bankruptcy Court approved this settlement in

19   its Order Granting Motion to Approve Compromise of Controversy Between Debtor and Debtor in

20   Possession Mega RV Corp. and Bruce Rucker and Marcy Rucker Pursuant to Federal Rules of

21   Bankruptcy Procedure Rule 9019 [Docket No. 420].

22        **3.    Hoffman Litigation**

23        On or about December 14, 2011, Glen Hoffman and Kimberly Hoffman filed a complaint

24   for damages against the Debtor, the Debtor's insurer Federated Mutual Insurance Company, and

25   former Mega RV employee Kevin Morrell, Sr. in the Superior Court of California for the County

26   of San Bernardino.  The complaint alleged conduct against these defendants, for, *inter alia*, fraud,

27   misrepresentation, false advertising, violation of the Consumer's Legal Remedies Act, and unfair

28   business practices, all with regard to the plaintiffs' attempted purchase of a 2012 Coachmen

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Freelander recreational vehicle, bearing the Vehicle Identification Number

2    1FDWE3FS5BDB04903.  The lawsuit was subsequently designated as Case No. CIVDS1114066.

3        The Debtor and Federated Mutual Insurance Company and Glen Hoffman and Kimberly

4    Hoffman filed their Notice of Motion and Motion to Approve Compromise of Controversy

5    Between Debtor and Debtor in Possession Mega RV Corp. and Federated Mutual Insurance

6    Company and Glen Hoffman and Kimberly Hoffman Pursuant to Federal Rules of Bankruptcy

7    Procedure Rule 9019 [Docket No. 530], requesting approval of a settlement, pursuant to which the

8    pending litigation is resolved, and the Debtor, by and through its insurer Federated Mutual

9    Insurance Company, is to pay $3,000 to Glenn Hoffman and Kimberly Hoffman.   The Bankruptcy

10   Court approved this settlement in its Order Approving Compromise Between Debtor and Debtor in

11   Possession Mega RV Corp. and Federated Mutual Insurance Company and Glen Hoffman and

12   Kimberly Hoffman Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No.

13   578].

14           **4.      Minard Litigation**

15       In *Lewis Minard and Patricia Minard v. Mega RV Corp.*, Adversary Proceeding No. 8:15-

16   ap-01236-MW (the "Minard Action"), plaintiffs filed claims for relief pursuant to 11 U.S.C. §

17   523(a)(2)(A), 523(a)(4), and 523(a)(6).  The plaintiffs allege that they traded in vehicles and put

18   down a deposit to purchase a Fleetwood RV, but the Debtor failed to pay off the balance owed on

19   the trade-in vehicles, failed to provide financing for the Fleetwood, failed to transfer title to the

20   Fleetwood, and failed to remove a prior lien on the Fleetwood.  The Debtor has not yet filed a

21   responsive pleading.  The Debtor has demanded that the plaintiffs dismiss the action on the basis

22   that a claim under 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and 523(a)(6) cannot  be brought against a

23   non-individual, and the Minard Action has been voluntarily dismissed.

24           **5.      Reservation of Other Claims**

25       The Debtor reserves all rights and remedies, and the Liquidation Trust may continue

26   litigation, pursue claims, and prosecute causes of action, including but not limited to as set forth in

27   the attached Exhibit 7 Causes of Action and Reservation of Rights.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## VII.    TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.  The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

### 1.    Federal Income Tax Consequences in General

The following summary addresses certain material federal income tax consequences of the Plan to the holders of Allowed Claims.  The summary is based upon the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service ("IRS"), all of which are subject to change possibly with retroactive effect.  Due to the differences in the nature of the various holders of Allowed Claims, their taxpayer status, residence and methods of accounting and prior actions taken by such holders with respect to their Allowed Claims, the tax consequences described below are general in nature and are subject to significant considerations applicable to each holder of an Allowed Claim.

This discussion of the federal income tax consequences is not binding on the IRS, and the Creditors' Committee has not and does not intend to request an administrative ruling from the IRS with respect to any of the federal income tax aspects of the Plan.  Consequently, there can be no assurance that the IRS will accept the treatment described in this Disclosure Statement.  No opinion of counsel has either been sought or obtained with respect to the federal, state, local or foreign tax aspects of the Plan.  Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Additionally, changes in the facts or circumstances relating to the consummation or operation of the Plan or the formation or operation of the Liquidating Trust, or other changes in circumstances

could likewise affect the tax consequences to such parties.  The federal income tax consequences of the Plan and distributions are complex and subject to significant uncertainties.  This summary does not address foreign, state or local tax consequences of the Plan except to the extent noted herein, nor does it purport to address all of the federal income tax consequences of the Plan.  This summary also does not purport to address the federal income tax consequences of the Plan to holders of Claims subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and foreign persons.

**The Debtor and Creditors' Committee CANNOT and DO NOT represent that the tax consequences below are the only tax consequences of the Plan because the Internal Revenue Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on the Debtor's tax liability or the tax implications to holders of Allowed Claims and Interests.  Holders of Allowed Claims and Interests are urged to consult with their tax advisors about the state, local and foreign tax consequences of the transactions contemplated under or in connection with the Plan.**

> **2.    Overview of the Federal Income Tax Consequences of Plan**

**(a)    Transfer of Assets to Liquidating Trust.**  For all federal income tax purposes, all parties (including the Debtor, the Trustee and holders of beneficial interests in the Liquidating Trust) shall treat the transfer of Assets to the Liquidating Trust, in accordance with the terms of the Plan, as a transfer of the Assets directly to the "Beneficiaries") followed by the transfer of the Assets by such holders to the Liquidating Trust.  Consistent therewith, all parties shall treat the Liquidating Trust as a grantor trust of which the Beneficiaries are to be treated as the grantors and beneficiaries. Thus, each Beneficiary shall be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes.  Accordingly, each Beneficiary will be required to report on its federal income tax return(s) such Beneficiary's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(b)     **Federal Income Tax Treatment of the Liquidating Trust.**  Consistent with the foregoing, the Liquidating Trust will be taxed as a grantor trust, of which the Beneficiaries will be treated as the grantors and beneficiaries.  Because a grantor trust is treated as a pass-through entity for federal income tax purposes, no federal income tax should be imposed on the Debtor on the income earned or gain recognized by the Liquidating Trust.  Instead, as the beneficiaries of the Liquidating Trust, the Beneficiaries will be taxed on their allocable shares of such net income or gain in each taxable year, whether or not the Beneficiaries receive any distributions from the Liquidating Trust in such taxable year.

**3.**     **Federal Income Tax Consequences to the Debtor.**  The Debtor is a California corporation that has elected to be treated as an S corporation for federal income tax purposes.  For federal income tax purposes, McMahon, the sole owner of the Debtor, is required to report on his personal federal income tax return all income, gain, loss, deduction or credit recognized or incurred by the Debtor.  As such, neither the Debtor nor the Debtor's estate will recognize or incur for federal income tax purposes any income, gain, loss, deduction or credit upon the deemed distribution of the Assets to the Beneficiaries.  While this disclosure does not in general address state or local tax issues, it is important to note that for state income tax purposes, California does impose an income tax on an S corporation at the rate of 1.5%.  Therefore, it is possible that the Debtor could incur income tax upon reporting the deemed transfer of Assets to the Beneficiaries.  Any such tax liability would be an obligation of and paid by the Liquidating Trust.

**4.**     **Federal Income Tax Consequences to Holders of Allowed Claims upon Funding of the Liquidating Trust.**

The tax consequences of the implementation of the Plan to a Beneficiary will depend in part on whether the Beneficiary reports income on the accrual or cash basis, whether the Beneficiary receives consideration in more than one tax year of such Beneficiary, whether the Beneficiary has previously recognized a loss on its Allowed Claim, and whether the Beneficiary is a resident of the United States.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(a)    **Transfer of Assets to the Liquidating Trust**.  In general, each Beneficiary will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Beneficiary in satisfaction of its Allowed Claim, and (ii) such Beneficiary's adjusted tax basis in such Claim.  The "amount realized" by a Beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such pursuant to the Plan (such as a Beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust). Where gain or loss is recognized by a Beneficiary in respect of its Allowed Claim, the character of such gain or loss (i.e. long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the Beneficiary, whether the Claim constituted a capital asset in the hands of the Beneficiary and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the holder had previously claimed a bad debt deduction in respect of the Claim.

The tax treatment of a Beneficiary may differ depending on the type of debt and classification under the Plan.  For example, the tax treatment may depend on whether the Beneficiary was an original lender, a purchaser of a credit instrument, or a party for whom the debt arose in the ordinary course of a trade or business.  A debt that is created or acquired in connection with a creditor's trade or business or incurred during the operation of the creditor's trade or business is a business bad debt.  Debts not created or acquired in connection with a creditor's trade or business and not incurred during the operation of the creditor's trade or business are treated as non-business bad debts.

(b)    **Interest Included in Claim.**  A distribution paid to a Beneficiary that is attributable to accrued but unpaid interest should be treated as ordinary income. Although not free from doubt, the intent is to treat payments as applied first to principal, and if the principal amount is paid in full, then any interest portion of the Allowed Claim.

**5.**    **Tax Issues Related to the Liquidating Trust.**

(a)    **Treatment as Grantor Trust.**  The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes (except for any Liquidating Trust Claims Reserve that the Trustee may establish as addressed below).  In general, a liquidating trust is not a

separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust

(i.e., a pass-through entity).  The IRS, in Revenue Procedure 94-45, 1994-2 CB 684, set forth the

general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under

a chapter 11 plan.  The Liquidating Trust has been structured with the intention of complying with

such general criteria.  Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all

parties (including the Debtor, Trustee, and Beneficiaries) are required to treat for federal income

tax purposes, the Liquidating Trust as a grantor trust of which the Beneficiaries are the grantors

and beneficiaries.

   **(b)**  **Good Faith Valuation of Trust Assets.**  Pursuant to the Plan, the Trustee

will make a good faith valuation of the Liquidating Trust's assets.  All parties (including, without

limitation, the Debtor, Trustee and Beneficiaries) must consistently use such valuation for all

Federal income tax purposes.  The valuation will be made available to the parties, from time to

time, as relevant for tax reporting purposes.

   **(c)**  **Allocation of Trust Income to Beneficiaries and Tax Impact of**

**Distributions.**  The Liquidating Trust's taxable income will be allocated on a pro rata basis among

the Beneficiaries.  The character of items of income, deduction and credit to any Beneficiary and

the ability of such Beneficiary to benefit from any deductions or losses may depend on the

particular situation of such Beneficiary.  The income and deductions from the operations of the

assets held in the Liquidating Trust will be income or deduction to the holders of the beneficial

interests in the Liquidating Trust.  The Trustee will supply information for each of the

Beneficiaries to use in reporting the income or deduction on their respective returns.  There is no

assurance that if there is income from the Liquidating Trust allocated to any Beneficiary, that there

will be adequate cash distributed to such Beneficiary to pay the resulting federal and state tax

liability.

   After the Effective Date, any amount a Beneficiary receives as a distribution from the

Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be

included, for federal income tax purposes, in the Beneficiary's amount realized in respect of its

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Allowed Claim but should be separately treated as a distribution received in respect of such

2    Beneficiary's beneficial interest in the Trust.

3        The federal income tax reporting obligation of a Beneficiary is not dependent upon the

4    Liquidating Trust distributing any cash or other proceeds.  Therefore, a Beneficiary may incur a

5    federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will

6    not make, any concurrent or subsequent distributions to the Beneficiary-Creditor.

7        **(d)    Liquidating Trust Claims Reserve.**  The Trustee may elect to treat any

8    Liquidating Trust assets allocable to, or retained on account of the Undeliverable Claims Reserve

9    and the Disputed Claims Reserve (the "Liquidating Trust Claims Reserve") as a "disputed

10   ownership fund" governed by Treasury Regulation Section 1.468B-9.  For federal income tax

11   purposes, the Liquidating Trust Claims Reserve shall be treated as the owner of all assets that it

12   holds.  The Liquidating Trust Claims Reserve is treated as a C corporation for purposes of subtitle

13   F of the Internal Revenue Code relating to procedure and administration, and the administrator of

14   the fund must obtain an employer identification number for the fund, make all required income tax

15   and information returns and deposit all tax payments.  Accordingly, the Liquidating Trust Claims

16   Reserve will be subject to tax annually as a separate entity on any net income earned with respect

17   to the Liquidating Trust assets in such reserve, and all distributions from such reserve will be

18   treated as received by holders in respect of their Claims as if distributed by the Debtor.  All parties

19   (including, without limitation, the Debtor, Trustee and holders of Claims provided for in the

20   Liquidating Trust Claims Reserve) will be required to report for tax purposes consistently with the

21   foregoing.

22       The Liquidating Trust Claims Reserve will report its income and loss and pay its own taxes

23   with respect to the assets in the Liquidating Trust Claims Reserve.  Upon termination of the

24   Liquidating Trust Claims Reserve, if the Liquidating Trust Claims Reserve had unused net

25   operating loss carryover or an unused capital loss carryover or any unused tax credit carryover, or

26   if the Liquidating Trust Claims Reserve has deductions in excess of gross income for its last

27   taxable year, the creditor-claimants to which the Liquidating Trust Claims Reserve's net assets are

28   distributable will succeed to and take into account the Liquidating Trust Claims Reserve's unused

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

tax attributes. The tax attributes are allocated to the creditor-claimants in proportion to the assets values distributable to each creditor-claimant in the Liquidating Trust Claims Reserve.

(e) **Priority Unsecured Claims.** For federal income tax purposes, the Trustee will have the option of treating priority unsecured claims under the Plan as a liability of the Liquidating Trust, a separate reserve, a qualified settlement fund under Treasury Regulation Section 1.468B-1, or any other appropriate manner to reflect that such priority unsecured claims have priority with respect to distribution as opposed to non-priority unsecured claims.

(f) **Federal Income Tax Reporting.** The Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Trustee will also send to each Beneficiary a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return. The Trustee is not obligated to supply information regarding the Liquidating Trust's assets or any value with respect to such assets to a Beneficiary before the time for supplying information required for the Trustee to report the items of income, deduction and credit or other information to any Beneficiary-Creditor.

(g) **Withholding.** All distributions are subject to any applicable withholding (including employment tax withholding). Under the Internal Revenue Code, interest, dividends and other reportable payments may, under certain circumstances, be subject to "backup withholding" then in effect. Backup withholding generally applies if the payee (a) fails to furnish his or her social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**6.    Importance of Obtaining Professional Tax Assistance.**

**The foregoing is intended as a summary only, and is not a substitute for careful tax planning with a tax professional.  The U.S. federal, foreign, state and local income and other tax consequences of the Plan are complex and, in some cases, uncertain.  Such consequences may also vary based on the particular circumstances of each holder of an Allowed Claim.  Accordingly, each holder of an Allowed Claim is strongly urged to consult with his, her or its own tax advisor regarding the federal, foreign, state and local income and other tax consequences under the Plan.**

**To ensure compliance with requirements imposed by the Internal Revenue Service, acting on behalf of the United States Treasury, you must be informed that any tax information contained in** this **Disclosure Statement is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under any applicable law or regulation.  The tax information contained in this Disclosure Statement was written to support the promotion of the transactions described in this Disclosure Statement.**

### VIII.    CONFIRMATION REQUIREMENTS

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 or a chapter 11 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## A.    Classification and Treatment of Claims and Interests

The Bankruptcy Code requires that a plan divide the different claims against, and equity interests in, the debtor into separate classes based upon their legal nature.  Claims of a substantially similar legal nature are usually classified together.  The Bankruptcy Code does not require the classification of administrative claims and certain priority claims, and they are typically denominated "unclassified claims."

The Debtor and Committee believe that the classification of Claims specified in the Plan is appropriate and consistent with the requirements of the Bankruptcy Code.  The Court will determine the appropriateness of the classification of the Claims under the Plan in conjunction with the hearing on confirmation of the Plan.

A plan must designate each separate class of claims and interests either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan).  If a class of claims or interests is "impaired," under the Bankruptcy Code, the holders of claims or interests, as applicable, in that class are entitled (i) to vote to accept or reject the plan (unless the plan provides for no distribution to the class, in which case the class is deemed to reject the plan), and (ii) to receive property with a value at least equal to the value that the claimant would receive if a debtor were liquidated under chapter 7 of the Bankruptcy Code.  If a class of claims is unimpaired, the holders of claims in that class are deemed to accept the plan.

Under Bankruptcy Code section 1124, a class of claims is "impaired" unless the plan leaves unaltered the legal, equitable, and contractual rights of the holders of claims or interests, as applicable, in the class.  In addition, a class of claims is "impaired" unless the plan cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case, or non-performance of a non-monetary obligation, which need not be cured) that occurred before or after the commencement of the case, reinstates the maturity of the claims in the class, compensates the claimants for their actual damages incurred as a result of their reasonable reliance on any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights.  Except for any right to accelerate the debtor's obligations, the holder of an unimpaired claim will

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  be placed in the position in which it would have been, *inter alia*, if the debtor's case had not been

2  commenced.

3        The classification and treatment of each class of Claims and Interests are set forth in detail

4  in the Plan.  The Debtor incorporates the Plan herein by reference instead of duplicating the

5  contents of the Plan herein.

6        **B.**      **Who May Vote to Accept or Reject the Plan**

7        To vote to accept or reject the Plan, your Claim must be an impaired Claim against the

8  Debtor that has not been disallowed.  Holders of Claims against and Interest in the Debtor that do

9  not receive or retain any value under the Plan are deemed to reject the Plan, and are not entitled to

10  vote.

11        **1.**      **Allowed Claims**

12        With the exceptions explained below, under the Bankruptcy Code, a claim generally is

13  allowed only if a proof of the claim is properly filed before any applicable bar date, and either no

14  party in interest has objected or the court has entered an order allowing the claim.  Under certain

15  circumstances, as provided in the Bankruptcy Code, a creditor may have an allowed claim even if

16  a proof of claim was not filed and the applicable bar date for filing a proof of claim has passed.

17  For example, a claim may be deemed allowed if the claim is listed on a Debtor's schedules and is

18  not scheduled as disputed, contingent, or unliquidated.

19        A holder's claim must be an allowed claim for the holder of such claim to have the right to

20  vote on the Plan.  Generally, for voting purposes, a claim is deemed allowed to the extent that: (a)

21  either (1) a proof of claim is timely filed; or (2) a proof of claim is deemed timely filed either

22  under Bankruptcy Rule 3003(b)(1)-(2) or by an order of the bankruptcy court; and (b) either (1)

23  the claim is not subject to an objection; or (2) the claim is allowed by an order of the bankruptcy

24  court notwithstanding that objection.  A claim that is allowed for voting purposes may still be

25  subject to later objections and disallowance.

26        A creditor whose claim is not allowed may still be entitled to vote to accept or reject a plan

27  if the creditor has timely filed a proof of claim that is not the subject of an objection filed before

28  the hearing on plan confirmation or a bankruptcy court order disallowing the claim entered before

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    the confirmation hearing.  An entity whose claim is subject to an objection is not eligible to vote

2    on the plan unless and until that objection is resolved in the entity's favor or, after notice and a

3    hearing under Bankruptcy Rule 3018(a), a bankruptcy court temporarily allows the entity's claim

4    for the purpose of voting to accept or reject the plan.  Any entity that seeks temporary allowance

5    of its claim for voting purposes must promptly file an appropriate motion and take the steps

6    necessary to arrange an appropriate and timely hearing.

7              **2.        Voting Requirements**

8              Under the Bankruptcy Code, claims are placed in classes under a plan, and each class

9    entitled to vote accepts or rejects the plan as a class.  Certain types of claims are not classified

10   because the Bankruptcy Code requires that they be treated in a specific way.  These claims are

11   considered unimpaired, and their holders cannot vote.  Section III of the Plan sets forth a summary

12   of the types of Claims against the Debtor, their treatment under the Plan, and, where applicable,

13   the Classes in which they have been classified.

14             **3.        Votes Necessary to Confirm the Plan**

15             Under the Bankruptcy Code, a bankruptcy court may confirm a plan if at least one class of

16   impaired claims has voted to accept that plan (without counting the votes of any insiders whose

17   claims are classified within that class) and if certain statutory requirements are met both as to non-

18   consenting members within a consenting class and as to dissenting classes.

19             Even if a debtor receives the requisite number of votes to confirm a proposed plan, the plan

20   will not become binding unless and until, among other things, the Court makes an independent

21   determination that confirmation is appropriate.  This determination will be the subject of the

22   hearing on confirmation of the plan.

23             **4.        Votes Necessary for a Class to Confirm a Plan**

24             A class of claims has accepted the plan only when more than one-half (1/2) in number and

25   at least two-thirds (2/3) in amount of the allowed claims actually voting in that class vote to accept

26   the plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3)

27   in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

28

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### C.    Cramdown: Treatment of Non-Consenting Classes

Even if all classes do not consent to the proposed treatment of their claims under a plan, the plan nonetheless may be confirmed if each dissenting class is treated in the manner prescribed by the Bankruptcy Code.  The process by which a dissenting class is forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows a dissenting class to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable" as to such class.  The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment.  For a class of secured claims, "fair and equitable" can mean that the secured claimants retain their liens and receive deferred cash payments, the present value of which equals the value of their interests in the collateral.  For a class of unsecured claims, a plan is fair and equitable if the claims in that class receive value equal to the allowed amount of the claims, or, if the unsecured claims are not fully satisfied, no claim or interest that is junior to such claims receives or retains anything under the plan.

### D.    Liquidation Analysis/Best Interests Test

Bankruptcy Code section 1129(a)(7) requires that each holder of a Claim against the Debtor in an impaired class either (i) vote to accept the Plan, or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This is commonly referred to as the "Best Interests Test."

To determine if the Plan is in the best interest of the impaired Classes in the Plan, the present value of the distribution from the proceeds of the chapter 7 liquidation of the Debtor's assets available to pay claims is compared with the value of the property offered to each such class under the Plan.

Similar to a chapter 7 liquidation, much of the Debtor's assets have already been liquidated through the CDF Agreement and the Debtor's liquidation efforts, and the Plan provides for the orderly liquidation of the Debtor's remaining assets, and for the distribution of the proceeds in accordance with the priority scheme established by the Bankruptcy Code and applicable law, as set

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   forth in the Plan. See Sections V.B.4. and V.B.5. above for a discussion of the CDF Agreement

2   and for the Debtor's liquidation efforts.

3       If this chapter 11 Case were converted to a chapter 7 liquidation, the primary difference

4   would be that a trustee would be appointed by the Court.  That trustee would liquidate the

5   remaining assets of the Estate and distribute the proceeds in accordance with the priorities

6   established under the Bankruptcy Code, following the completion of the liquidation and resolution

7   of all claims.

8       The present value of the distributions to Creditors would be less in a chapter 7 than they

9   will be under the Plan for the following two primary reasons:  (1) the chapter 7 trustee would

10  likely incur additional costs, including the trustee's own fee and those of his professionals; and (2)

11  the distribution of cash by a chapter 7 trustee could be delayed for a significant period of time until

12  the chapter 7 case was fully administered.

13      The chapter 7 trustee and the trustee's professionals would not have the familiarity with the

14  Debtor's prior business operations, or any other potential claim objections and Causes of Action,

15  including Avoidance Actions, to recover more assets for the Estate.  The chapter 7 trustee might

16  have to engage new professionals, who would need to duplicate the learning curve of the

17  Committee's attorneys and the Debtor's professionals.  Moreover, the chapter 7 trustee would be

18  at a particular disadvantage with respect to the Roadtrek litigation.  As discussed in Section

19  VI.M.1. above, the Roadtrek litigation is still pending.

20      In addition, the chapter 7 trustee's fees could be as much as three percent (3%) of all funds

21  distributed, which would be well in excess of $4,200,000, resulting in a trustee's fee of no less

22  than $126,000.  All of these additional expenses would reduce the total amount distributed to

23  Holders of Claims in chapter 7.

24      Moreover, the distributions that would be made if this chapter 11 Case were converted to a

25  case under chapter 7 would likely be substantially delayed.  The chapter 7 trustee would likely also

26  seek to complete all Claim Objections and any litigation he or she chooses to pursue to recover on

27  account of Causes of Action.  In contrast, under the Plan, the Liquidation Trustee has the ability to

28  make interim distributions prior to completing the liquidation and resolution of all claims.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Thus, in a chapter 7 liquidation, it is likely that the total net liquidation proceeds would be

2    less than the proceeds under the Plan, and that the value of that distribution would be further

3    reduced by the delay in distribution which is likely to occur.

4    Attached hereto as <u>Exhibit 8</u> and incorporated herein by this reference is a liquidation

5    analysis which sets forth the Plan Proponents' best estimate of the distribution that will be made

6    Creditors.  In a chapter 7 liquidation the net proceeds projected would need to be further reduced

7    for trustee fees, additional professional fees and delay.  Accordingly the Debtor and the Committee

8    believe that all Creditors and Interest Holders will receive at least as much under the Plan as such

9    Creditor or Interest Holder would receive in a chapter 7 liquidation.

10    Based on the foregoing, the Plan Proponents believe that the Plan satisfies the requirements

11    of the "Best Interests Test," and provides Creditors at least as much present value as they would

12    receive in a chapter 7 liquidation.

13    **THE ANALYSIS ATTACHED AS <u>EXHIBIT 8</u> , INCLUDING THE CLAIMS**

14    **ESTIMATES, WAS PREPARED SOLELY TO ASSIST THE COURT IN MAKING THE**

15    **FINDINGS REQUIRED UNDER SECTION 1129(a)(7) OF THE BANKRUPTCY CODE**

16    **AND MAY NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.**

17    **THE PLAN PROPONENTS BELIEVE THAT ANY ANALYSIS OF A**

18    **HYPOTHETICAL LIQUIDATION REQUIRES ESTIMATES AND ASSUMPTIONS**

19    **ABOUT FUTURE EVENTS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT**

20    **LITIGATION AND OTHER UNCERTAINTIES AND CONTINGENCIES BEYOND THE**

21    **CONTROL OF THE PLAN PROPONENTS OR A CHAPTER 7 TRUSTEE.  NEITHER**

22    **THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH**

23    **IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT**

24    **ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE**

25    **AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.  THERE CAN BE**

26    **NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY**

27    **FROM THE HYPOTHETICAL RESULTS REPRESENTED IN THE LIQUIDATION**

28    **ANALYSIS ATTACHED AS <u>EXHIBIT 8</u>.**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### E.   Feasibility

The Bankruptcy Code provides that a plan may only be confirmed if confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, unless such liquidation or reorganization is proposed in the Plan.  11 U.S.C. § 1129(a)(11). This is referred to as the "feasibility" requirement.

There are at least two important aspects of the feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.

As noted on <u>Exhibits 9 and 10</u> (higher case and lower case projections) as of the Effective Date, the Debtor projects to have available on the Effective Date between $2,272.000 and $2,585,000 depending on the recovery from contracts in transit and sales of inventory. As described in <u>Exhibit 8</u> and Section V.B.5 above, the Debtor anticipates realizing during the administrative period prior to the Effective Date an additional amount on account of the sale of inventory, ranging from $466,000 to $696,000, and an additional $494,000 on account of closing CIT transactions through the Effective Date.  Through the Effective Date, the Plan Proponents estimate that at least an additional $300,000 in Professional Fee Claims will accrue.  *See* Liquidation Analysis attached as <u>Exhibits 8,9 and 10</u> for a summary of these amounts and the cash which it is estimated will be available on the Effective Date. Total expenses and Plan obligations to be paid as of the Effective Date are projected not to exceed $$1,700,000. Accordingly, the Debtor anticipates having excess cash of between $572,000 and $585,000 after payment of obligations due as of the Effective Date. Among the expenses to be paid as of the Effective Date is an amount of $571,000 reserved for Old Ranch.  As noted in Section V.B.8 above, the administrative claim of Old Ranch is subject to objection. For this reason, the Plan Proponents believe that the first aspect of feasibility is satisfied.

The second aspect of feasibility considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  Although the Plan is a liquidating Plan, the Plan Proponents believe that proceeds from avoidance actions and proceeds from the Roadtrek litigation will only be realized over the course of the next two to three years.  The Debtor's

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    bankruptcy schedules reflect payment to creditors within the 90 days prior to the Petition Date in

2    excess of $5,000,000 (excluding payments to CDF.)   The Debtor has not yet performed an

3    analysis of preference recoveries but projects likely preference recoveries of between $200,000 to

4    $1 million. The Roadtrek litigation is described in Section VI. M.1. Finally under the CDF

5    Settlement, CDF will pay to the Liquidating Trustee $250,000, 180 after the Effective Date. The

6    Plan contemplates that priority tax payment will be paid in three years to as to coincide with

7    recoveries identified above. As a result, the Plan Proponents believe that the Plan satisfies the

8    feasibility requirement set forth in Bankruptcy Code section 1129.

9                                IX.    **EFFECT OF CONFIRMATION OF THE PLAN**

10        **A.    No Discharge for Debtor**

11        The Plan is a liquidating Plan and the Debtor will not receive a discharge.

12        **B.    Post-Confirmation Injunction**

13        The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and

14    Interests with respect to the Estate, the Liquidation Trust, and their Assets.  To that end, except as

15    expressly provided herein, at all times on and after the Effective Date, all Persons who have been,

16    are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be

17    permanently enjoined from taking any of the following actions on account of any such Claims or

18    Interests, against the Estate, the Liquidation Trust, or their Assets (other than actions brought to

19    enforce any rights or obligations under the Plan and any Claim, contested matters, or adversary

20    proceedings pending in the Case as of the Effective Date):

21        1.    commencing, conducting, or continuing in any manner, directly or indirectly, any

22    suit, action, or other proceeding of any kind against the Estate, the Liquidation Trust, or the

23    Liquidation Trustee, their successors, or their respective property or assets (including, without

24    limitation, all suits, actions, and proceedings that are pending, other than before the Court or by

25    explicit provision of the Court, as of the Effective Date);

26        2.    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any

27    manner or means whether directly or indirectly any judgment, award, decree, or Order against the

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective

property;

3.      creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,

any Lien against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or

their respective Assets; and

4.      proceeding in any place whatsoever against the Estate, the Liquidation Trust, or the

Liquidation Trustee, their successors, or their respective Assets, in any manner that does not

conform to or comply with the provisions of the Plan.

5.      No suit, action, or other proceeding may be commenced, conducted, or continued in

any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or

Interest against the Debtor without the written consent of the Liquidation Trustee or Order of the

Court acquired by motion on notice to the Liquidation Trustee.  If the Holder of a Claim violates

this provision, in addition to any other recourse or damages to which the Liquidation Trust may be

entitled, the Claims of such Holder shall be disallowed and any Distributions made on account of

such Claims shall be repaid by such Holder to the Liquidation Trust.

**C.      Modification of Plan**

The Plan Proponents may modify the Plan at any time before confirmation.  However, the

Court may under certain circumstances require a new disclosure statement and/or revoting on the

Plan if the Plan Proponents modify the Plan prior to confirmation of the Plan.

After confirmation, modification of the Plan may occur in accordance with the provisions

of Bankruptcy Code section 1127(b).  Under the Plan, the Liquidation Trustee succeeds to the

rights of the Debtor and the Committee to modify the Plan.

**D.      Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Liquidation Trust shall

file a status report with the Court explaining what progress has been made toward consummation

of the confirmed Plan.  The status report shall be served on the United States Trustee, the Debtor,

and those parties who have requested post-Effective Date notice in accordance with Section 7.15

of the Plan.  Further status reports shall be filed every 120 days and served on the same entities.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

E.    **Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree.

F.    **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under Bankruptcy Code section 1112(b), after the Plan is confirmed.  If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property.

G.    **Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidation Trustee shall file a motion with the Court to obtain a final decree to close the Case.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

## X.    RECOMMENDATION AND CONCLUSION

2        The Debtor and the Committee believe that Plan confirmation and implementation are

3    preferable to any feasible alternative.  **Accordingly, the Debtor and the Committee urge**

4    **Persons who hold Claims entitled to vote to accept the Plan by checking the box marked**

5    **"Accept" on their Ballots and then returning the Ballots as directed the Disclosure**

6    **Statement.**

7

8    DATED AS OF:  June 18, 2015          MEGA RV CORP., a California Corporation;
                                         DBA McMahon's RV; DBA McMahon's RV
9                                        Irvine; DBA McMahon's RV Colton; DBA
                                         McMahon's RV Palm Desert
10

11                                       By
                                            GlassRatner Advisory & Capital Group, LLC
12                                          By: J. Michael Issa
                                            Financial Advisors to the Debtor
13

14

15   SUBMITTED BY:

     GOE & FORSYTHE, LLP
16

17   By:
         ROBERT P. GOE
18       DONALD W. REID
         General Bankruptcy Attorneys for Debtor and
19       Debtor in Possession

20   GREENBERG GLUSKER FIELDS CLAMAN &
     MACHTINGER LLP
21

22   By:
         BRIAN L. DAVIDOFF
23       COURTNEY E. POZMANTIER
         JAMES C. BEHRENS
24       Counsel for Official Committee of
         Unsecured Creditors
25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## X.     RECOMMENDATION AND CONCLUSION

The Debtor and the Committee believe that Plan confirmation and implementation are

preferable to any feasible alternative. **Accordingly, the Debtor and the Committee urge**

**Persons who hold Claims entitled to vote to accept the Plan by checking the box marked**

**"Accept" on their Ballots and then returning the Ballots as directed the Disclosure**

**Statement.**

DATED AS OF: June 18, 2015         MEGA RV CORP., a California Corporation;
DBA McMahon's RV; DBA McMahon's RV
Irvine; DBA McMahon's RV Colton; DBA
McMahon's RV Palm Desert


By:_____
     GlassRatner Advisory & Capital Group, LLC
     By: J. Michael Issa
     Financial Advisors to the Debtor


SUBMITTED BY:

GOE & FORSYTHE, LLP

By:_____
     ROBERT P. GOE
     DONALD W. REID
     General Bankruptcy Attorneys for Debtor and
     Debtor in Possession

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP

By:_____
     BRIAN L. DAVIDOFF
     COURTNEY E. POZMANTIER
     JAMES C. BEHRENS
     Counsel for Official Committee of
     Unsecured Creditors

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.6        60

# EXHIBIT 1

BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Counsel For Official Committee of Unsecured
Creditors

ROBERT P. GOE - State Bar No. 137019
Donald W. Reid – State Bar No. 281743
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612

rgoe@goeforlaw.com
elarocque@goeforlaw.com

General Bankruptcy Attorneys for
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 8:14-bk-13770-MW |
| | ) |
| Mega RV Corp., dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, | ) Chapter 11 |
| | ) **JOINT CHAPTER 11 PLAN OF** |
| | ) **LIQUIDATION FILED BY OFFICIAL** |
| | ) **COMMITTEE OF UNSECURED** |
| Debtor and Debtor in Possession. | ) **CREDITORS AND DEBTOR DATED JUNE** |
| | ) **19, 2015** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

16118-00002/2327825.10

EXHIBIT 1
62

## TABLE OF CONTENTS

**Page(s)**

I. PLAN OBJECTIVES AND OVERVIEW ................................................................. 1

    Section 1.1.   General Objectives. ...................................................................... 1

    Section 1.2.   Disclosure Statement. ................................................................... 1

II. DEFINITIONS AND RULES OF INTERPRETATION ............................................ 1

    Section 2.1.   Definitions. ................................................................................. 1

    Section 2.2.   Rules of Interpretation. ............................................................. 12

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................... 14

    A.          Classification of Claims ............................................................ 14

    Section 3.1.   Classification Generally. ........................................................... 14

    Section 3.2.   Classes of Claims and Interests ................................................. 14

    B.          Unclassified Claims. ................................................................ 15

    Section 3.3.   Administrative Claims and Priority Tax Claims ......................... 15

    Section 3.4.   Administrative Claims. ............................................................. 15

    Section 3.5.   Administrative Claim Bar Date ................................................. 16

    Section 3.6.   Administrative Claim Objection Deadline ................................. 16

    Section 3.7.   U.S. Trustee Fees ..................................................................... 17

    Section 3.8.   Professional Fee Claims ............................................................ 17

    Section 3.9.   Priority Tax Claims .................................................................. 18

    C.          Classified Claims. .................................................................... 18

    Section 3.10.  Classes of Secured Claims ........................................................ 19

    Section 3.11.  Priority Non-Tax Claims ........................................................... 27

    Section 3.12.   CUSTOMER Claims and Warranty Claims ............................... 29

    Section 3.13. General Unsecured Claims. ................................................... 31

    Section 3.14.  Subordinated Claims ................................................................ 31

    Section 3.15.  Interests. .................................................................................. 32

IV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................. 32

EXHIBIT 1
63

Section 4.1.    Rejection. ...................................................................................... 32

Section 4.2.    Rejection Claims. ............................................................................. 32

V. PLAN IMPLEMENTATION ......................................................................................... 33

A.    General Implementation Provisions.................................................33

Section 5.1.    Conditions to Plan Effectiveness ..................................................... 33

Section 5.2.    Actions on the Effective Date........................................................... 33

Section 5.3.    Corporate Action............................................................................... 34

Section 5.4.    Vesting and Transfer of Assets ........................................................ 34

Section 5.5.    Provisions Relating to Federal Income Tax Compliance ............. 34

B.    Liquidation Trust. ............................................................................35

Section 5.6.    Authorization of Liquidation Trustee .............................................. 35

Section 5.7.    Representative of the Estate.............................................................. 36

Section 5.8.    Funding of Post Effective Date Trust Expenses ............................ 36

Section 5.9.    Operating Reserve............................................................................. 36

Section 5.10.    Abandonment..................................................................................... 37

Section 5.11.    37

Section 5.12    Termination of Liquidation Trust .................................................... 37

C.    Provisions Governing Distributions.................................................38

Section 5.13.    Estimation. In order to establish reserves under this Plan and avoid
undue delay in the administration of............................................... 38

Section 5.14.    Distributions on Account of Allowed Claims. Except as otherwise
provided herein, a Final Order, ...................................................... 38

Section 5.15    Distributions on Account of Disputed Claims and Estimated
Claims.  Except as otherwise ......................................................... 38

Section 5.16.    No Distributions Pending Allowance. .............................................. 38

Section 5.17.    Disputed and Estimated Claims Reserve.  On and after the Effective
Date, the Liquidation Trust ............................................................. 38

Section 5.18.    Reduced or Disallowed Secured Claims........................................... 39

Section 5.19.    Reserve Amounts for Disputed and Estimated Claims.............................. 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1
64

Section 5.20.   Settling Disputed Claims.  The Liquidation Trust shall be
authorized to settle, or withdraw any ........................................... 39

Section 5.21.   Cash Distributions ........................................................................ 39

Section 5.22.   Setoff and Recoupment ................................................................ 39

Section 5.23.   No De Minimis Distributions ........................................................ 40

Section 5.24.   Fractional Cents ........................................................................... 40

Section 5.25.   Undeliverable or Unclaimed Distributions ................................... 40

Section 5.26.   Undeliverable Distributions Reserve. ........................................... 41

Section 5.27.   Negotiation of Checks .................................................................. 41

Section 5.28.   Record Date ................................................................................. 42

Section 5.29.   Postpetition Interest ..................................................................... 42

Section 5.30.   Sequence of Payments ................................................................. 42

Section 5.31.   Withholding and Reporting Requirements ................................... 42

Section 5.32.   Claims Transfer ........................................................................... 43

Section 5.33.   Maximum Amount of Distributions ............................................ 44

Section 5.34.   Final Distributions On Liquidation Trust Interests. ..................... 44

VI. LITIGATION AND CLAIMS OBJECTIONS ........................................................... 44

Section 6.1.    Preservation of Causes of Action ................................................ 44

Section 6.2.    Objections to and Resolution of Disputed Claims ....................... 46

VII. OTHER PLAN PROVISIONS ................................................................................. 47

Section 7.1.    Recourse for Claims .................................................................... 47

Section 7.2.    Exculpation and Release of Debtor, Committee, and Professionals ........... 47

Section 7.3.    Injunction Enjoining Holders of Claims ...................................... 48

Section 7.4.    Injunctions or Stays ..................................................................... 49

Section 7.5.    Exemption from Stamp, Transfer, and Other Taxes; Exemption
from Securities Laws ................................................................. 49

Section 7.6.    No Admissions ............................................................................. 49

Section 7.7.    Severability of Plan Provisions ................................................... 50

Section 7.8.    Governing Law ............................................................................ 50

EXHIBIT 1
65

Section 7.9.    Successors and Assigns................................................................50

Section 7.10.   Nonconsensual Confirmation..............................................................50

Section 7.11.   Revocation of the Plan ......................................................................51

Section 7.12.   Amendment.........................................................................................51

Section 7.13.   Saturday, Sunday, or Legal Holiday ..................................................51

Section 7.14.   Post-Effective Date Status Reports.....................................................51

Section 7.15.   Post-Effective Date Notice .................................................................51

Section 7.16.   Maintenance and Disposition of Trust Records..................................51

Section 7.17.   Retention of Jurisdiction ....................................................................52

Section 7.18.   Entry of a Final Decree .......................................................................54

VIII. RECOMMENDATIONS ........................................................................................54

Section 8.1.    Recommendations of the Committee and the Debtor..........................54

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1
66

# I.

## PLAN OBJECTIVES AND OVERVIEW

**Section 1.1.    General Objectives.**The objectives of the Plan[1] are to complete the liquidation of any remaining Assets of the Debtor, and to transfer all Assets of the Debtor and the Estate, including the Causes of Action, to the Liquidation Trust, which shall liquidate the Causes of Action and all other Trust Assets, and distribute the proceeds thereof to Holders of Allowed Claims that will receive Liquidation Trust Interests in respect of their Allowed Claims.  The Plan divides Creditors and Interest Holders of the Debtor into Classes based on their legal rights and interests and provides for the satisfaction of Claims against the Debtor from the Assets transferred to the Liquidation Trust.  The Interest Holders of the Debtor will not receive or retain any property or value on account of their Interests.

**Section 1.2.    Disclosure Statement.**A detailed overview of the Case is set forth in the Disclosure Statement, and parties should review the Disclosure Statement carefully for an understanding of both the Case and the Plan.

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.1.    Definitions**.  The following terms (which appear in the Plan as capitalized terms), when used in the Plan, have the meanings set forth below:

"**Administrative Claim**" means a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Professional Fee Claims, and (d) all fees payable under 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" means unless another date is set by the Court, the date that is thirty (30) days after the Effective Date, or, if such date is not a Business Day, the next

---

[1]Capitalized terms have the meanings set forth in section 2.1.

-1-

EXHIBIT 1
67

Business Day thereafter; provided, however, that the Administrative Claim Bar Date for Professional

Fee Claims is the date set forth in Section 3.8.

"**Administrative Claim Objection Deadline**" means the deadline set forth in Section

3.6.

"**Allowed" or "Allowed _____ Claim**" means

(a)    with respect to a Claim arising prior to the Petition Date

(i)    Either:  (1) a proof of Claim was timely filed; or (2) a proof of Claim

is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(ii)    Either:  (1) the Claim is not a Disputed Claim; or (2) the Claim is

allowed by a Final Order or under the Plan; and

(b)    with respect to a Claim arising on or after the Petition Date, a Claim allowed

pursuant to Sections 3.5 and 3.6 of the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the

claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or

waived during the Case is not an Allowed Claim.

"**Assets**" means all assets of the Estate, including property of the Estate under section

541 of the Bankruptcy Code, and all rights and privileges of the Debtor and the Estate, including

attorney-client and similar privileges.

"**Available Cash**" means: all Cash of the Liquidation Trust, including Cash realized

from the sale or other disposition of Trust Assets, recoveries from Causes of Action, proceeds from

the CDF Agreement, or from any other source, and the interest earned on its funds, including on any

reserves; less the amount of Cash estimated and reserved by the Liquidation Trust to pay all unpaid

Allowed Administrative Claims, Allowed Priority Tax Claims, Priority Non-Tax Claims, Customer

and Warranty Claims, and Allowed Secured Claims (except those Secured Claims as to which the

Collateral Election is made); and any other costs to carry out the provisions of the Plan and the

Liquidation Trust Agreement on and after the Effective Date.

"**Avoidance Action**" means a Cause of Action, adversary proceeding, lawsuit, or

other proceeding arising under or relating to Bankruptcy Code sections 502(d), 506, 510, 542, 543,

EXHIBIT 1
68

544, 545, 547, 548, 549, 550, 551, 552, or 553, or any fraudulent conveyance, fraudulent transfer, or

preference laws, or any Cause of Action arising under or relating to any similar state law or federal

law that constitutes, or the recoveries from which constitute, property of the Estate under Bankruptcy

Code section 541, whether or not an adversary proceeding, lawsuit, or other proceeding is initiated

before or after the Effective Date.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as applicable in the

Case.

"**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure, as applicable

in the Case.

"**Bankruptcy Schedules**" means the Schedule of Assets and Liabilities and Statement

of Financial Affairs filed by the Debtor in the Case.

"**Beneficiaries**" means, with respect to the Liquidation Trust and in accordance with

Treasury Regulation section 301.7701-4(d), the beneficiaries of such Liquidation Trust that are in

the Holders of Liquidation Trust Interests that will receive Distributions from the Liquidation Trust

in accordance with the Plan, Confirmation Order, and Liquidation Trust Agreement.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as

defined in Bankruptcy Rule 9006(a)).

"**Case**" means the chapter 11 case of the Debtor.

"**Cash**" means cash or cash equivalents including bank deposits, checks, or other

similar items.

"**Causes of Action** " means any and all claims, causes of action, cross-claims,

counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights,

actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations,

liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, the right to object

to Claims; all Claims pursuant to Section 362 of the Bankruptcy Code; all Avoidance Actions,

powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown,

contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or

EXHIBIT 1
69

1  undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on

2  or after the Petition Date, including rights, actions, causes of action, and suits of the Debtor or the

3  Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, in

4  contract or in tort, at law or in equity, or under any other theory of law.

5  **"CDF"** means GE Commercial Distribution Finance Corporation.

6  **"CDF Agreement"** means that certain agreement entered into dated as of November

7  24, 2014 between the Debtor, the Committee, CDF and others, and approved by the Court pursuant

8  to order entered on December 22, 2014 [Docket No.395], pursuant to which parties thereto agreed to

9  resolve, settle and compromise all disputes between and among them without admission of liability,

10  and as a result of which CDF agreed to release from its collateral the amounts obtained from the

11  liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the

12  Agreement), (b) the Contracts In Transit (as defined in the Agreement), (c) FF&E (as defined in the

13  Agreement) and (ii) in accordance with, and subject to the limitations contained in the Agreement, a

14  total of $2,750,000 including the Holdback Amount (as defined in the Agreement) paid to Debtor by

15  CDF, but not to exceed $4,700,000.

16  **"CDF Liens"** means those certain UCC-1 financing statements filed with the

17  Secretary of State of the State of California April 26, 2006 file no**.** 06-7067960869 and UCC

18  continuation statement filed on December 8, 2010 file number 06-7067960869.

19  "**Claim**" means a claim as defined in Bankruptcy Code section 101(5) against the

20  Debtor.

21  "**Claims Bar Date**" means November 14, 2014 which is the date(s) fixed for filing

22  proofs of claim against the Estate pursuant to the Court's Order entered on September 4, 2014, or any

23  other applicable Court Order.

24  "**Claims Objection Deadline**" means the deadline for the Liquidation Trustee to file

25  objections to Claims other than Administrative Claims as set forth in Section 6.2.

26  "**Collateral**" means any property or interest in property of the Estate subject to a Lien

27  that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the

28  Bankruptcy Code or applicable federal, state, or international law.

EXHIBIT 1
70

1   "**Collateral Election**" means the election of the Liquidation Trustee with respect to

2   Allowed Secured Claims under section 3.10, Class 1(j), or Allowed Customer Claims under section

3   312.

4   "**Committee**" means the Official Committee of Unsecured Creditors appointed in the

5   Case by the U.S. Trustee.

6   "**Confirmation Date**" means the date on which the Court enters the Confirmation

7   Order on its docket.

8   "**Confirmation Hearing Date**" means the first date on which the Court holds the

9   hearing to consider the confirmation of the Plan pursuant to Bankruptcy Code section 1128(a).

10   "**Confirmation Order**" means the Order of the Court confirming the Plan under

11   Bankruptcy Code section 1129.

12   "**Court**" means the United States Bankruptcy Court for the Central District of

13   California, or any other court that exercises jurisdiction over the Case.

14   "**Creditor**" means the Holder of a Claim against the Debtor.

15   "**Customer**" means a person who either (1) purchased or leased, or became obligated

16   to purchase or lease, a motor vehicle to be used primarily for personal, family, or household

17   purposes from the Debtor, or (2) consigned for sale a motor vehicle that was used primarily for

18   personal, family, or household purposes to the Debtor.

19   "**Customer Claims**" means: an unsatisfied claim for economic loss from a

20   Customer, as a result of the failure of the Debtor to do any of the following: (i) Remit license or

21   registration fees received or contractually obligated to be paid from a Customer to the Department of

22   Motor Vehicles; (ii) Pay to the legal owner of a vehicle that was transferred as a trade-in by a

23   Customer to the Debtor the amount necessary to discharge the prior credit balance owed to the legal

24   owner; (iii) Pay to the lessor of a vehicle, transferred as a trade-in by a Customer to the Debtor, the

25   amount the dealer or lessor-retailer agreed to pay to the lessor, if the vehicle was registered in

26   accordance with Veh. Code § 4453.5; (iv) Pay the amount specified in a consignment agreement to a

27   Customer after the sale of a consigned vehicle; or (v) Provide a Customer who purchased a vehicle

28   from the Debtor with good title to the vehicle, free from any security interest or other lien,

EXHIBIT 1
71

1  encumbrance, or claim, unless otherwise clearly and conspicuously provided for by the written sale

2  agreement.

3  "**Debtor**" means Mega RV Corp., a California corporation dba McMahon's RV

4  Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, debtor and debtor in possession in

5  the Case.

6  "**Disclosure Statement**" means the disclosure statement relating to the Plan,

7  including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant

8  to Bankruptcy Code section 1125.

9  "**Disclosure Statement Order**" means the Order entered by the Court approving the

10  Disclosure Statement, which may be combined with the Confirmation Order.

11  "**Disputed Claim**" means any Claim: (a) as to which a proof of claim has been filed

12  and the dollar amount of such Claim is not specified in a fixed liquidated amount; (b) as to which a

13  proof of claim has been timely filed and the dollar amount of such Claim is specified in a fixed

14  liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such

15  Claim listed in the Bankruptcy Schedules as not being disputed, contingent, or unliquidated, or is

16  listed in the Bankruptcy Schedules with a different priority than reflected in the proof of claim; (c)

17  as to which a proof of claim has not been timely filed and such Claim is not included in the

18  Bankruptcy Schedules or is listed in the Bankruptcy Schedules as contingent, disputed, or

19  unliquidated; (d) as to which a proof of claim was required to be filed and was not timely filed; (e) as

20  to which an objection has been filed and such objection has neither been overruled nor been denied

21  by a Final Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to

22  which an objection: (i) has been timely filed (or the deadline for objection to such Administrative

23  Claim has not expired) and (ii) has neither been overruled nor been denied by a Final Order and has

24  not been withdrawn.

25  "**Disputed and Estimated Claim Reserve**" shall have the meaning set forth in

26  Section 5.17.

27  "**Distribution**" means any transfer under the Plan or Liquidation Trust Agreement of

28  Cash or other property to Holders of Liquidation Trust Interests.

EXHIBIT 1
72

"**Effective Date**" means the date the Plan becomes effective, as set forth in Section 5.1.

"**Estate**" means the estate created in the Case under Bankruptcy Code section 541.

"**Estimated Claim**" shall have the meaning set forth in Section 5.13 hereof.

"**Final Order**" means an Order of the Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any rights to appeal, petition for certiorari, or seek reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor and the Committee (on or prior to the Effective Date) or the Liquidation Trustee (after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing has been sought or filed, such Order of the Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or certiorari, reargument, and rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired as a result of which such Order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such Order shall not cause such Order not to be a Final Order.

"**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Customer Claim or a Warranty Claim, or a Subordinated Claim.

"**Governmental Authority**" means any international, federal, state, or local government or other political subdivision, department or agency thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory, or administrative governmental powers or functions.

"**Holder**" means the holder of a Claim against or Interest in the Debtor or the holder of a Liquidation Trust Interest.

EXHIBIT 1
73

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means the interest of any Person who holds an equity security in the Debtor no matter how held.

"**Lien**" means any mortgage, pledge, lien, encumbrance, charge, security interest, or other charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Liquidation Trust**" means the Mega Liquidation Trust.  The Liquidation Trust is to be organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), except to the extent that it is a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.

"**Liquidation Trust Agreement**" means that certain Liquidation Trust Agreement and Declaration of Trust by and between the Debtor and the Liquidation Trustee, to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form appended as an exhibit to the Disclosure Statement.

"**Liquidation Trustee**" means the trustee of the Liquidation Trust, who has the powers and responsibilities set forth in the Plan, Confirmation Order, and Liquidation Trust Agreement, or any successor trustee appointed pursuant to the Liquidation Trust Agreement.

"**Liquidation Trust Interest**" means a non-certificated beneficial interest in the Trust Assets entitling the Holder of an Allowed Claim to Distributions from the Liquidation Trust as provided in the Plan, Confirmation Order, and Liquidation Trust Agreement, which Liquidation Trust Interest shall not be transferable.  Except as provided by an Order of the Court, a Holder's Liquidation Trust Interest shall be equal to the amount of such Holder's Allowed Claim.

"**Liquidation Trust Net Proceeds**" means, as determined by the Liquidation Trustee after: (a) all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims (except those Secured Claims and Customer and Warranty Claims as to which the Collateral

EXHIBIT 1
74

1    Election is made) have been finally resolved such that no Disputed Administrative Claims, Disputed

2    Priority Claims, Disputed Customer and Warranty Claims, Disputed Secured Claims, or other

3    Disputed Claims remain ; and (b) no material assets of the Liquidation Trust remain to be recovered

4    or liquidated to Cash, any and all Available Cash remaining after: (y) payment in full of all Post

5    Effective Date Trust Expenses; and (z) the maintenance of the Operating Reserve sufficient for all

6    projected Post Effective Date Trust Expenses until the later of the closing of the Case under

7    Bankruptcy Code section 350 or the termination of such Liquidation Trust.

8         "**Operating Reserve**" means the Cash Reserve to be established by the Liquidation

9    Trustee for the payment of all actual and projected Post Effective Date Trust Expenses.

10        "**Order**" means any writ, judgment, decree, injunction, or order of any Governmental

11    Authority (whether preliminary or final).

12        "**Ordinary Course Administrative Claim**" means a Claim for an administrative cost

13    or expense that is allowable under Bankruptcy Code section 503(b) that is incurred in the ordinary

14    course of the Debtor's operations or the Case, or for which payment is authorized by a Final Order of

15    the Court.

16        "**Penalty Claim**" means a Claim that would be subject to Bankruptcy Code 726(a)(4)

17    if the Case had been filed under chapter 7 of the Bankruptcy Code.

18        "**Person**" means an individual, a partnership, a corporation, a limited liability

19    company, an association, a joint stock company, a trust, a joint venture, an unincorporated

20    organization, any other business entity, or a Governmental Authority.

21        "**Petition Date**" means June 15, 2014, the date on which the Debtor filed its voluntary

22    petition commencing the Case.

23        "**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code,

24    including, without limitation, all exhibits, supplements, appendices, and schedules thereto.

25        "**Post Effective Date Trust Expenses**" means all voluntary and involuntary costs,

26    expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or

27    unliquidated incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date

28    related to the implementation of the Plan or the Liquidation Trust Agreement, including:  (a) the

EXHIBIT 1
75

expenses of the Liquidation Trustee in administering and implementing the Plan, including any

Taxes incurred by the Liquidation Trust or on the Trust Assets and accrued on or after the Effective

Date; (b) all U.S. Trustee Fees which are due on or after the Effective Date; (c) the expenses of the

Liquidation Trustee and the Liquidation Trust in making the Distributions as required by the Plan or

the Liquidation Trust Agreement, including paying Taxes, filing Tax returns, and paying

professionals' fees with respect to such Distributions; (d) the expenses incurred by the Liquidation

Trust and the Liquidation Trustee relating to the Liquidation Trust; (e) the expenses of independent

contractors and professionals (including, without limitation, attorneys, advisors, accountants,

brokers, consultants, experts, professionals, and other Persons) providing services to the Liquidation

Trustee or the Liquidation Trust relating to the Liquidation Trust; and (f) the expenses related to the

Liquidation Trust's indemnity obligations, the purchase of errors and omissions insurance, and/or

other forms of indemnification.

     "**Postpetition**" means the time after the Petition Date.

     "**Priority Claims**" means Priority Non-Tax Claims and Priority Tax Claims.

     "**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or

Priority Tax Claim, entitled to priority under Bankruptcy Code section 507(a).

     "**Priority Tax Claim**" means a Claim entitled to priority under Bankruptcy Code

section 502(i) or 507(a)(8).

     "**Professional Fee Claim**" means:  (a) a claim under Bankruptcy Code section 327,

328, 330, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or

expenses incurred prior to the Effective Date; or (b) a claim under Bankruptcy Code section

503(b)(4) for compensation for professional services rendered or under Bankruptcy Code section

503(b)(3)(D) for expenses incurred prior to the Effective Date in making a substantial contribution in

the Case.

     "**Professionals**" means those Persons: (a) retained pursuant to an Order of the Court

in accordance with section 327, 1103, or 1106 of the Bankruptcy Code and to be compensated for

services rendered prior to the Effective Date pursuant to section 327, 328, 329, 330, or 331 of the

EXHIBIT 1
76

1    Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court

2    pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

3                "**Pro Rata Share**" means, for the purpose of Distributions on account of Liquidation

4    Trust Interests issued on account of Allowed Class 4, a proportionate share such that the ratio of

5    (a) the amount of consideration to be distributed on account of all such Liquidation Trust Interests to

6    such Class to (b) the amount of all such Liquidation Trust Interests in such Class; provided,

7    however, that for purposes of determining Interim Dividends, if any, the amounts of Disputed

8    Customer and Warranty Claims and Disputed General Unsecured Claims, if any, shall be included in

9    the calculation of (b) above.

10                "**Recovery Corporation**" means the Consumer Motor Vehicle Recovery Corporation

11    established pursuant to Section 12200 et. seq. of the California Vehicle Code.

12                "**Recovery Claim**" means a Claim submitted by a Customer to the Recovery

13    Corporation on account of a Customer Claim or a Warranty Claim.

14                "**Rejection Claims Bar Date**" shall have the meaning set forth in Article IV hereof.

15                "**Secured Claim**" means a Claim that is secured by a valid and unavoidable Lien

16    against property in which the Estate has an interest or that is subject to setoff under Bankruptcy

17    Code section 553.  A Claim is a Secured Claim only to the extent of the value of the Holder's interest

18    in the Collateral securing the Claim or to the extent of the amount subject to setoff, whichever is

19    applicable, and as determined under Bankruptcy Code section 506(a).

20                "**Secured Tax Claim**" means a Claim of a Governmental Authority that is secured by

21    a valid and unavoidable Lien against property in which the Estate has an interest or that is subject to

22    setoff under Bankruptcy Code section 553.  A Claim is a Secured Tax Claim only to the extent of the

23    value of the Holder's interest in the Collateral securing the Claim or to the extent of the amount

24    subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

25                "**Subordinated Claim**" means any Claim:  (a) that is a Penalty Claim; (b) that is

26    subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510; or that is

27    subordinated to General Unsecured Claims pursuant to the Plan or a Final Order of the Court.

28

EXHIBIT 1
77

"**Tax**" or "**Taxes**" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Internal Revenue Code section 59A), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not and including any obligations to indemnify or otherwise assume or succeed to the tax liability of any other Person.

"**Trust Assets**" means any and all Cash, the proceeds of the CDF Agreement property, and all other Assets, including Causes of Action of the Liquidation Trust.

"**Unclassified Claim**" means any Claim which is not assigned to a Class under the Plan.

"**Undeliverable Distributions Reserve**" means the Cash Reserve to be established by the Liquidation Trustee for the purpose of holding undeliverable Distributions as provided in Section 5.26.

"**U.S. Trustee**" means the Office of the United States Trustee for the Central District of California.

"**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means the applicable deadline set by Court Order for timely submitting a Ballot in connection with confirmation of the Plan.

"**Warranty Claim**" means the Claim of a Customer of the Debtor relating to a pre-petition contract with the Debtor for a vehicle warranty, or for other parts or services that were obligated to be provided for by the Debtor in connection with the delivery of a vehicle; provided that the Debtor was obligated to provide such warranty or other obligation  in writing, and provided further such warranty or other obligation  has been paid for by or on behalf of such Customer.

**Section 2.2.    Rules of Interpretation.**

a.    The rules of construction in Bankruptcy Code section 102 apply to the Plan.

EXHIBIT 1
78

b.         Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when determining any time period under the Plan.

c.         A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

d.         The definition given to any term or provision in the Plan supersedes and controls over any different meaning that may be given to that term or provision in the Disclosure Statement.  In the event of any conflict or inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  In the event of any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  In the event of any conflict or inconsistency between the Plan and the Liquidation Trust Agreement, the Plan shall control.  For the sake of clarity, the hierarchy of controlling documents in the event of a conflict shall be: (i) the Confirmation Order; (ii) the Plan; (iii) the Liquidation Trust Agreement; and (iv) the Disclosure Statement.

e.         Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

f.         Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or substantially on those terms.  Any reference to an existing document means the document as it has been, or may be, amended, modified, or supplemented.

g.         Unless otherwise indicated, the phrase "to the extent provided in the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

h.         Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Plan.

i.         Captions and headings in the Plan are used only as convenient references and do not affect the meaning of the Plan.

//

//

//

EXHIBIT 1
79

# III.

## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND INTERESTS

**A.     Classification of Claims**

    **Section 3.1.     Classification Generally.**  The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  **NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

    **Section 3.2.     Classes of Claims and Interests.** Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Classes 1(a) – 1(j) | Secured Claims | Impaired | Yes |
| Class 2(a) – 2(b) | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | Customer Claims and Warranty Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |

EXHIBIT 1
80

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 5 | Subordinated Claims | Impaired – Deemed to Reject | No |
| Class 6 | Interests | Impaired – Deemed to Reject | No |

**B.      Unclassified Claims.**

Section 3.3.    **Administrative Claims and Priority Tax Claims.**  Administrative Claims and Priority Tax Claims are not placed into Classes that are entitled to vote to accept or reject the Plan; instead, such Claims are unclassified.  Such Claims are not considered Impaired and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9.  Holders of Allowed Administrative Claims and Allowed Priority Tax Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

Section 3.4.    **Administrative Claims.**  Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Liquidation Trust in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in Cash in full after the Effective Date from the Liquidation Trust in accordance with the terms and conditions of the particular transactions, any applicable agreements, or as otherwise authorized by the Court.

EXHIBIT 1
81

| Administrative Claimant | Estimated Amount at Effective Date |
|---|---|

**A. Professional Fee Claimants[2]**

| | |
|---|---|
| Brown Rudnick LLP | $29,000 |
| GlassRatner Advisory & Capital Group LLC | $100,000 |
| Goe & Forsythe, LLP | $101,000 |
| Greenberg Glusker Fields Claman & Machtinger LLP | $197,000 |
| **Total Professional Fees** | $427,000 |

**B. Ordinary Course Claimants[3]:**

| | |
|---|---|
| Altman Colton Properties, Inc. | $65,000 |
| Old Ranch Properties, LLC | $571,000 |
| **Total Ordinary Course Claims** | $636,000 |

Section 3.5.    **Administrative Claim Bar Date.**  All requests for payment of an

Administrative Claim, except for U.S. Trustee Fees, shall be filed with the Court no later than the

Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan

shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered

prior to the Effective Date.  Within five (5) business days after the Effective Date, the Liquidation

Trustee shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the

Administrative Claim Objection Deadline on all creditors and parties in interest.

Section 3.6.    **Administrative Claim Objection Deadline.**  All objections to the

allowance of Administrative Claims, except for Professional Fee Claim subject to Section 3.8, must

be filed by parties in interest no later than one hundred twenty (120) days after the Administrative

Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set

[2]This amount is through May 31, 2015.

[3]The amount for Altman Colton is set pursuant to Court Order.  The amount for Old Ranch
Properties is the maximum administrative recovery for Old Ranch Properties and is subject to
challenge by the Debtor and the Committee.

EXHIBIT 1
82

1    forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the

2    Holder of an Administrative Claim files a motion with the Bankruptcy Court to have such

3    Administrative Claim become an Allowed Administrative.  The Administrative Claim Objection

4    Deadline may be extended for a one-time ninety (90) day period by the Liquidation Trustee by filing

5    a notice of the extended Administrative Claim Objection Deadline with the Court, and giving notice

6    of such extension to all Creditors and parties in interest.  Thereafter, the Administrative Claim

7    Objection Deadline may be further extended only by an Order of the Court.  If no objection to such

8    Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such

9    Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

10           **Section 3.7.    U.S. Trustee Fees.**  U.S. Trustee Fees shall be paid prior to the

11   Effective Date by the Debtor, and after the Effective Date by the Liquidation Trust, in each case,

12   when due in accordance with applicable law.  The Debtor shall continue to file reports to show the

13   calculation of such fees for the Estate until the Effective Date; after the Effective Date, the

14   Liquidation Trustee shall file such reports until the Case is closed under Bankruptcy Code

15   section 350.

16           **Section 3.8.    Professional Fee Claims.**  Each Holder of a Professional Fee Claim

17   seeking an award by the Court of compensation for services rendered or reimbursement of expenses

18   incurred through and including the Effective Date shall file such Holder's interim (if applicable) and

19   final applications for the allowance of compensation for services rendered and the reimbursement of

20   expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the

21   Effective Date or such other date as may be fixed by the Court.  All objections to the allowance of

22   Professional Fee Claims through the Effective Date shall be filed in accordance with applicable

23   Bankruptcy Rules, or such other date as may be fixed by Order of the Court.  To the extent granted

24   by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such

25   Claims, by Cash from the Liquidation Trust in such amounts as are allowed by the Court on the date

26   such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

27

28

EXHIBIT 1
83

**Section 3.9.    Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof, as follows:

i.    For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the Liquidation Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

ii.    For all other Allowed Priority Tax Claims, equal annual payments over three years with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable (the "First Payment Date"), and each later payment on the anniversary of the First Payment Date. Interest shall accrue on Allowed Priority Tax Claims to the Internal Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from the Effective Date. Interest shall accrue on all other Allowed Priority Tax Claims on the amount outstanding from time to time at the rate at 6% per annum from the Effective Date.

| Name | Description | Amount |
|---|---|---|
| Internal Revenue Service | Unassessed payroll taxes based no returns having been filed. | $1,410,419[4] |
| State of Arizona-Dept. of Revenue | Transaction Privilege Tax | $77,997 |
| Franchise Tax Board | Minimum Franchise Fee | $822 |
| County of Orange | Personal property taxes | $2,667 |
| County of San Bernadino | Personal property taxes | $1,162 |
| California Employment Development Dept. | State payroll taxes | $371,672 |
| California State Board of Equalization | Sales and use tax and California Tire fee | $972,509 |

**C.    Classified Claims.**

The treatment of Classified Claims and Interests is as set forth below.

---

[4]This is an amount assessed by the Internal Revenue Service.  The Debtor believes that the more accurate liability to the Internal Revenue Service is $588,000.

EXHIBIT 1
84

**Section 3.10.   Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing claims that purport to be secured by liens on property of the estate and their treatment under the Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1(a) | <u>Creditor Name</u>: GE Commercial Distribution Finance Corporation <u>Basis for Security Interest</u> UCC-1 filed on 4/26/06 file no. 06-7067960869; UCC continuation statement filed on 12/8/10 file number 06-7067960869 <u>Collateral</u> All personal property of debtor, whether such property or debtor's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and whether located, including, without limitation, all accounts, inventory, equipment, fixtures other goods, general intangibles (including, without limitation, payment intangibles), chattel paper (whether tangible or electronic), instruments (including without limitation, promissory notes), deposit accounts, investment property and documents, and all products and proceeds of the foregoing.  Without limiting the foregoing, the collateral includes debtor's right to all price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and any other amounts due debtor at any time from a person from whom the debtor has purchased inventory or other personal property. In addition, the collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and | Y- however pursuant to the CDF Agreement, CDF has agreed to their treatment and will vote in favor of the Plan. | The Secured Claim of CDF is treated as follows: (i)  The terms of the CDF Agreement are incorporated herein and CDF shall be treated pursuant thereto unless modified herein. (ii) CDF has pursuant to the CDF Agreement released from its collateral to the Estate the "**Collateral Proceeds:**" (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the CDF Agreement), (b) the Contracts In Transit (as defined in the CDF Agreement), (c) FF&E (as defined in the CDF Agreement) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 of the CDF Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the CDF Agreement) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined in the CDF Agreement) to CDF (the "**Repurchase Amount**"). The amount of Collateral Proceeds shall be capped at $4,700,000. (iii) The Holdback Amount (as defined in the CDF Agreement) shall remain in the Escrow Account |

EXHIBIT 1
85

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | other devices in which records are stored.<br>Value of Collateral at Petition Date $25,031,926<br><br>Claim Amount at Petition Date: $31,547,399.05 | | until 180 days after the Effective Date and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7 of the CDF Agreement.<br><br>(iv)  The CDF Lien, to the extent it remains effective after the CDF Agreement, shall be transferred to the Liquidating Trustee without any representation or warranty as the effectiveness thereof pursuant to that certain Loan and Lien Assignment Agreement to be executed on the Effective Date between the Liquidating Trustee and CDF, attached as Exhibit 4 to the Disclosure Statement. |
| 1(b) | Creditor Name: HWH Corporation<br>Basis for Security Interest: Judgment Lien<br>Collateral: All property subject to enforcement of a money judgment against the judgment debtor to which a judgment lien on personal property may attach under section 697 of the California Civil Code.<br>Claim Amount: $166,000<br>Value of Collateral: $0 | Y | HWH Corporation is treated as a General Unsecured Creditor under the Plan, for the following reasons:<br><br>(i)  The judgment Lien of HWH Corporation was recorded with the Secretary of State of the State of California on October 9, 2012.  The judgment Lien of HWH Corporation is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the judgment Liens of HMH Corporation.<br><br>(iii) Substantially all of the Assets currently in the Estate were created |

EXHIBIT 1
86

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
|  |  |  | as a result of settlement of a commercial tort claim against CDF. The notice of judgment Lien filed by HWH Corporation does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.

(iv) HWH Corporation does not have a security interest in after acquired property, and as such, the security interest of HWH Corporation does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.

(v) HWH Corporation, the sole creditor in Class 1(b), will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(c) | Creditor Name: American Express Bank, FSB ("American Express") Collateral: All assets of the Debtor, whether now owned or hereafter acquired or arising Basis for security interest: UCC Financing Statement Claim Amount: $19,706.36 Value of Collateral: $0 | Y | American Express is treated as a General Unsecured Creditor Under the Plan, for the following reasons:

(i)  The Lien of American Express was recorded with the Secretary of State of the State of California on August 1, 2013.  The Lien of American Express is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.

(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the |

EXHIBIT 1
87

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Committee and are not subject to the Lien of American Express.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by American Express does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) American Express, the sole creditor in Class 1(c), will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(d) | Creditor Name: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Cade Phoenix, Ltd. ("Portfolio General")<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: (1) equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio mechanical repair claims receivables; and (3) dealership equity and guarantee.<br>Claim Amount: $1,088,165.30<br>Value of Collateral: $0 | Y | The Class 1(d) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien of Portfolio General.<br><br>(iii) Substantially all of the Assets currently in the Estate were created |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.<br><br>(v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(e) | Creditor Name: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Dakota Sioux Co., Ltd.<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: (1) Equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio Group mechanical repair claims receivables.<br>Claim Amount: $1,185,377.32.<br>Value of Collateral: $0 | Y | The Class 1(e) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the |

EXHIBIT 1
89

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Committee and are not subject to the Lien of Portfolio General. |
| | | | (iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim. |
| | | | (iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement. |
| | | | (v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(f) | Creditor Name: Roadtrek Motor Homes ("Roadtrek") Basis for Security Interest: UCC-1 Financing Statement; Dealer Security Agreement Collateral: none- lien lapsed Claim Amount: $454,964.43 purported secured Claim, $2,559,325.53 purported unsecured claim. Collateral Value: $0 | Y | The Class 1(f) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons: (i)  The Lien of Roadtrek was recorded with the Secretary of State of the State of California on April 24, 2009. The Lien of Roadtrek is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value. |

EXHIBIT 1
90

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| | | | (ii) The Lien of Roadtrek lapsed on April 24, 2014. |
| | | | (iii) The Class 1(f) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(g) | Creditor Name: Reyna Capital Corporation ("Reyna") Basis for Security Interest: UCC-1 Financing Statement Collateral: any and all equipment and software acquired and/or leased from Reyna Capital Corporation, together with any and all (1) substitutions, replacements, upgrades or exchanges therefore, (2) replacement parts, additions, attachments and accessories incorporated therein or affixed thereto, or used in connection therewith, and (3) proceeds thereof including insurance proceeds (both cash and non-cash), all as more fully described on the UCC-1 Financing Statement filed by Reyna. Collateral Value: $0; Claim Amount: valued at $1- claim amount unknown by Debtor | Y | The Class 1(g) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i) Reyna Capital holds an unsecured claim against the estate because equipment and software securing Reyna Capital's Claim was abandoned by the Debtor to its prior landlord Old Ranch Properties.<br><br>(ii) The Class 1(g) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(h) | Creditor Name: Southern California Auto Auction Basis for Security Interest: UCC-1 Financing Statement Collateral: All motor vehicle inventory acquired by the Debtor from Southern California Auto Auction; UCC-1 Financing Statement included after-acquired property clause Collateral Value: $0; Debtor is no longer in possession of any vehicles acquired from Southern | Y | The Class 1(h) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i) The Debtor no longer holds any Assets subject to the Lien of Southern California Auto Auction.<br><br>(ii) The Class 1(h) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | California Auto Auction<br>Claim Amount: $ | | |
| 1(i) | Creditor Name: Bank of America N.A. ("Bank of America")<br>Basis for Security Interest: Security Agreement dated December 12, 2014 granting to Bank of America a security interest in certain Deposits Accounts<br>Collateral Value: $78,621.45<br>Claim Amount: $1,142,056 | Y | (i) The Class 1(i) Claim is secured by a certificate of deposit No. 3192 in the amount of $75,000 (the "Certificate of Deposit").<br><br>(ii) Any other funds of the Debtor held by the Class I(i) shall be released to the Liquidating Trustee on the Effective Date.<br><br>(iii) On the Effective Date the Class I(i) Creditor may offset it Claim by the Certificate of Deposit, and the balance of the Class 1(i) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(j) | Creditor Name: All other Creditors who have an Allowed Secured Claim other than those identified in Classes 1(a) to 1(i).<br>Basis for Security Interest: Unknown to the Debtor at this time.<br><br>Amount of Claim: Unknown to the Debtor at this time | Y | The Class 1(j) Creditors are treated as General Unsecured Creditors under the Plan as follows:<br><br>Except to the extent that the Holder of an Allowed Claim in Class 1(j) agrees to less favorable treatment, each Allowed Class 1(j) Claims shall be satisfied, discharged, exchanged, and released by, at the option of the Liquidation Trustee: (i) payment to the Holder of the amount of the Allowed Class 1(j) Claims in Cash in full from the Liquidation Trust; (ii) payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Claims to the extent of the value of the Collateral securing such Allowed Claims; (iii) surrender to the Holder of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, |

EXHIBIT 1
92

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | and contractual rights to which the Holders is entitled with respect to such Allowed Claim. In the event that an Allowed Claim in Class 1(j) is treated under clause (i) or (ii) above: (y) the Liens securing such Allowed Claim shall be deemed released and extinguished without further Order of the Court; and (z) Holders of Allowed Class 1(j) Claims shall be deemed to hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests. The Liquidation Trustee shall notify the Holder of an Allowed Class 1(j) Claim of the election made by the Liquidation Trustee under this section by the later of: (x) the Effective Date; and (y) the fifteenth (15th) Business Day after such Claim becomes an Allowed Class 1(j) Claim, or, in either case, as soon thereafter as is practicable, and the Liquidation Trustee shall perform such election within thirty (30) days thereafter. |

**Section 3.11.  Priority Non-Tax Claims.**

Certain priority Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of Claims are entitled to priority treatment as follows: the Code requires that each Holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a class of unsecured priority Claim Holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims.

The following chart lists all classes containing Debtor's 507(a)(3), (4), (5), (6), and (7) priority unsecured claims and their treatment under this Plan:

EXHIBIT 1
93

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2(a) | Claims for wages, salaries, commissions, including vacation, severance and sick leave pay, earned by an individual within 180 days before the Petition Date, each not to exceed $12,475. | N | Except to the extent that a Holder of an Allowed Claim in Class 2(a) agrees to less favorable treatment, each Holder of an Allowed Class 2(a) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(a) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(a) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(a) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |
| 2(b) | Unsecured Claims for deposits by individuals arising from the deposit before the Petition Date of money in connection with the purchase, lease or rental of property from the Debtor, or the purchase of services from the Debtor including Customer Claims and Warranty Claims, each not to exceed $2,775. | N | (i)      Except to the extent set forth in sub-paragraph (ii) below, each Holder of an Allowed Class 2(b) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(b) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(b) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(b) Claims, and payments on such Claims pursuant to the provisions of |

EXHIBIT 1
94

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |
| | | | (ii) No Customer shall be an Allowed Class 2(b) claimant if such Customer has of the Effective Date been paid a claim a Recovery Claim in excess of $2,775 by the Recovery Corporation. |

**Section 3.12.   CUSTOMER Claims and Warranty Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | Customer Claims and Warranty Claims | Y | Each Holder of an Allowed Customer Claim and/or a Warranty Claim shall, subject to sub-paragraphs (iii) and (iv) below, receive in full satisfaction, discharge, exchange, and release of each Allowed Customer Claim and/or a Warranty Claim: |
| | | | (i) To the extent such Creditor is also the Holder of a Class 2(b) Claim, treatment as a Class 2(b) Claimant; and to the extent the Class 3 Claim exceeds the amount of $2,775 at the option of the Liquidation Trustee: |
| | | | (ii) *(w)* payment of the Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed; *(x)* payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Class 3 Claim, if any, to the extent of the value of the Collateral securing such Class 3 Claim, if any; *(y)* surrender to the Allowed Class 3 Claim the Collateral securing such Allowed Class 3 Claim, if any; or *(z)* such other treatment as is agreed to |

EXHIBIT 1
95

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | among the Holder of the Class 3 Claim and the Liquidating Trustee that does not use Assets that are payable to other Creditors.  Upon the Liquidation Trustee electing any such treatment, the Liens, if any, securing such Class 3 Claim shall be deemed released and extinguished without further Order of the Court; and Holders of Class 3 Claims and/or a Warranty Claim shall be deemed to  hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.

(iii) The Claim of a Class 3 Creditor shall be reduced by, and to the extent of, any Recovery Claim paid by the Recovery Corporation as of the Effective Date.

(iv)  As a condition precedent to the Allowance of any Claim by the Holder of a Class 3 Claim, such Holder shall return to the Debtor any Assets of the Debtor that are held by the Class 3 Claim Holder.

(v) To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in this Class 3. |

EXHIBIT 1
96

### Section 3.13.  General Unsecured Claims.

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Claims that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, , Customer Claims or Warranty Claims, or Subordinated Claims,. | Y | Each Holder of an Allowed Class 4 Claims shall receive in full and complete satisfaction, discharge, exchange, and release of its Allowed Class 4 Claim, from the Liquidation Trust, a Pro Rata Share of the Liquidation Trust Net Proceeds, based upon the amount of such Liquidation Trust Interest to the extent provided in the Plan.  Holders of Allowed Class 4 Claims shall be deemed to hold Liquidation Trust Interests to the extent set forth above, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |

### Section 3.14.  Subordinated Claims.

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 5 | The Claims of Brent McMahon, MIC Investments Company, LLC., McMahon's Rentals, LLC., Kinsale, LLC., and Nevada Street, LLC. | N; Deemed to Reject | The Holders of Class 5 Claims including but not limited to proof of claim number 111, whether such Claims are liquidated or non-liquidated, contingent or non-contingent, disputed or non-disputed, whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in right and time of payment, to the prior payment in full of all senior Classes. |

EXHIBIT 1
97

**Section 3.15.  Interests.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6 | Brent McMahon is the sole interest holder of the Debtor. | N; Deemed to Reject | Class 6 Interests shall be deemed cancelled on the Effective Date and Holders of Class 6 Interests shall receive no Distributions or any property under the Plan on account of such Interests |

**IV.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 4.1.    Rejection.**  Effective upon the Effective Date and except as set forth in Class 3, the Debtor hereby rejects all contracts and leases subject to Bankruptcy Code section 365(a) in the Case which have not previously been rejected, except the Debtor does not reject those contracts and leases which have been or will be assumed, or assumed and assigned, with the approval of the Court by separate proceeding in the Case, which approval has been or will be set forth in an Order entered prior to the Effective Date. To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in Class 3.

**Section 4.2.    Rejection Claims.**  All Allowed Claims arising from the rejection of contracts or leases, whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims or, if applicable, Subordinated Claims.

a.    If the rejection of a contract or lease by the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trustee, the Liquidation Trust, or their property, unless a proof of claim is filed with the Court and served on the Liquidation Trustee within thirty (30) days after the Effective Date.

16118-00002/2327825.10                                    -32-

EXHIBIT 1
98

b.      The Rejection Claim Bar Date for contracts and leases rejected by Order entered prior to the Claims Bar Date shall be the later of : (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) the Claims Bar Date.

c.      The Rejection Claim Bar Date for contracts and leases rejected by Order entered after the Claims Bar Date shall be the earlier of:  (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) thirty (30) days after the Effective Date.

**V.**

**PLAN IMPLEMENTATION**

**A.      General Implementation Provisions**

**Section 5.1.      Conditions to Plan Effectiveness.**  The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day on which the following conditions have been satisfied or waived:

(a)      the Confirmation Order, in form and substance acceptable to the Committee and the Debtor, has been entered and is not stayed;

(b)      at least fourteen (14) days have passed since entry of the Confirmation Date;

(c)      the Liquidation Trust Agreement has been executed by the parties thereto;

**Section 5.2.      Actions on the Effective Date.**  To the extent not previously completed, on the Effective Date, the following shall occur in implementation of the Plan:

(a)      all actions, documents, and agreements necessary to implement the Plan shall be effected or executed;

(b)      the Liquidation Trust Agreement shall become effective; and

(c)      the Committee shall terminate and disband and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from their service as Committee members.

EXHIBIT 1
99

**Section 5.3.    Corporate Action.**  Upon the Effective Date, all transactions and applicable matters provided for under the Plan shall be deemed to be authorized and approved by the Debtor without any requirement of further action by the Debtor, its shareholders, or its directors.

**Section 5.4.    Vesting and Transfer of Assets.**  On the Effective Date, all Assets of the Debtor and the Estate, will be transferred to and vested in the Liquidation Trust.  To the extent required to implement the transfer of the Assets from the Debtor and the Estate to the Liquidation Trust as provided for herein, all Persons including Governmental Authorities shall cooperate with the Debtor, the Estate, and the Liquidation Trustee to assist in the implementation of such transfers. On the Effective Date, and as provided in the Plan and sections 1123, 1141, and 1146(a) of the Bankruptcy Code, the Debtor and its Estate are authorized, and required, as provided in the Plan to transfer, grant, assign, convey, set over, and deliver to the Liquidation Trustee, for the benefit of the Liquidation Trust, all of the Debtor's and the Estate's right, title, and interest in and to the Assets to be transferred free and clear of all Liens, Claims, encumbrances, or interests of any kind in such property, except as otherwise expressly provided for in the Plan.  As of the Effective Date, the Trust Assets of the Liquidation Trust shall be free and clear of all Liens, Claims, and interests of Holders of Claims and Interests , pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.

**Section 5.5.    Provisions Relating to Federal Income Tax Compliance.**  Except to the extent that the Liquidation Trust or a portion thereof is treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9, transfers to the Liquidation Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as transfers to Creditors to the extent Creditors are Beneficiaries.  For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012, and 1274.  Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the Beneficiary-Creditors followed by a deemed transfer by the Beneficiary-Creditors to the Liquidation Trust.  The Beneficiaries shall be treated for federal income Tax purposes as the grantors and deemed owners of the Liquidation Trust.  Any valuation of the Trust Assets shall be made by the Liquidation Trustee in reliance on the professionals engaged by the Liquidation Trust, and shall be used consistently by all parties

EXHIBIT 1
100

1  (including the Debtor, the Liquidation Trustee, and the Beneficiaries) for all federal and applicable

2  state and local income Tax purposes and all other applicable reporting purposes.

3      The Liquidation Trustee may, in the Liquidation Trustee's sole discretion, determine the best

4  way to report for Tax purposes with respect to the Liquidation Trust and any Reserve, including: (a)

5  filing a Tax election to treat the Liquidation Trust or any Reserve as a "disputed ownership fund"

6  within the meaning of Treasury Income Tax Regulation section 1.468B-9 for federal income Tax

7  purposes rather than to tax such Reserve as a part of the Liquidation Trust; or (b) electing to report

8  as a separate trust or sub-trust or other entity.  If an election is made to report the Liquidation Trust

9  or any Reserve as a "disputed ownership fund," the Liquidation Trust shall comply with all federal

10  and state tax reporting and Tax compliance requirements of the "disputed ownership fund,"

11  including the filing of a separate federal Tax return for the "disputed ownership fund" and the

12  payment of federal and/or state income Tax due.

13  **B.      Liquidation Trust.**

14      **Section 5.6.    Authorization of Liquidation Trustee.**  To the full extent permitted by law,

15  all rights under Section 363(h) of the Bankruptcy Code are preserved for the benefit of the

16  Liquidating Trust and may be exercised by the Liquidating Trustee.  To the fullest extent

17  permitted by law, all rights under Section 365 including Section 365(f) of the Bankruptcy Code

18  are preserved and may be exercised by the Liquidating Trustee, including prosecution and

19  amendment of any motions to assume or reject executory contracts and leases that are pending on

20  the Effective Date.  To the fullest extent permitted by law, and subject to the express provisions of

21  this Plan, on the Effective Date, the Debtor and its Estate shall be deemed to irrevocably transfer

22  to the Liquidating Trust, as its legal successor, all rights of the Debtor and its Estate to exercise or

23  waive any attorney-client privilege, accountant-client privilege, work-product privilege or other

24  privilege or immunity attaching to any documents or communications (whether written or oral),

25  and the Liquidating Trust is authorized to take any and all necessary actions to effectuate the

26  transfer of such privileges and available defenses.

27      On the Effective Date, the Debtor, the Estate, and the Liquidation Trustee shall be authorized

28  to, and shall, take all such actions as required to transfer the Assets from the Debtor and the Estate to

16118-00002/2327825.10          -35-

EXHIBIT 1
101

the Liquidation Trust to the extent provided in the Plan.  From and after the Effective Date, the

Liquidation Trustee shall be authorized to, and shall take all such actions as required to implement

the Liquidation Trust Agreement and the provisions of the Plan, including administering the Causes

of Action.

Section 5.7.    **Representative of the Estate.**  The Liquidation Trustee shall be, and hereby

is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B)

of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the

Liquidation Trust Agreement) to: (a) administer, hold, and liquidate the Trust Assets; (b) administer,

investigate, prosecute, settle, and abandon all Causes of Action in the name of, and for the benefit of,

the Estate, subject to the limitations set forth in the Plan; and (c) make Distributions provided for in

the Plan, including on account of Allowed Claims and Liquidation Trust Interests.   As the

representative of the Estate, the Liquidation Trustee shall have all of the rights, powers, and

privileges of the Debtor and the Estate, including those with respect to all Causes of Action. The

Liquidation Trustee shall be substituted and shall replace the Debtor, the Estate, and the Committee,

as applicable, as the party in interest in all litigation pending as of the Effective Date.  In addition,

the Liquidation Trustee shall have the rights of the Debtor and the Committee for the purposes of

Bankruptcy Code section 1127(b).  As of the Effective Date, subject to the Liquidation Trust

Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall be authorized to

exercise and perform the rights, powers, and duties held by the Debtor or the Estate with respect to

the Causes of Action, including, without limitation, the authority under Bankruptcy Code section

1123(b)(3) to provide for the settlement, adjustment, retention, and enforcement of claims and

interests of the Estate, without the consent or approval of any third party, and without any further

Order of the Court, except as otherwise provided in the Plan or Confirmation Order.

Section 5.8.    **Funding of Post Effective Date Trust Expenses.**  All Post Effective Date

Trust Expenses shall be expenses of the Liquidation Trust, and the Liquidation Trustee shall disburse

funds from the Liquidation Trust for the purpose of paying such expenses.

Section 5.9.    **Operating Reserve.**  Payments of all Post Effective Date Operating Expenses

shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the

EXHIBIT 1
102

1  Operating Reserve shall be established by the Liquidation Trustee and funded by Cash to pay for all

2  projected Post Effective Date Operating Expenses.  The Liquidation Trustee shall continue to fund

3  the Operating Reserve as needed from Trust Assets.  Any Cash remaining in the Operating Reserve

4  that the Liquidation Trustee believes is not necessary to fund Post Effective Date Operating

5  Expenses of the Liquidation Trust shall be released from the Operating Reserve and used as Trust

6  Assets in accordance with the Plan.

7  **Section 5.10.  Abandonment**.  If, in the Liquidation Trustee's reasonable judgment, any

8  Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidation

9  Trustee believes in good faith that such property has inconsequential value to the Liquidation Trust

10  or determines it to be too impractical to distribute such property to the Beneficiaries, the Liquidation

11  Trustee may cause the Liquidation Trust to abandon or otherwise dispose of such property, including

12  by donation of such property to a charity.

13  **Section 5.11.  Dissolution of Debtor.** The Debtor may be, but is not required to be,

14  dissolved by the Liquidating Trustee.  The Liquidating Trustee shall have full authority to take any

15  action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor

16  under applicable state laws and in accordance with the rights, powers and responsibilities conferred

17  by the Bankruptcy Code, this Plan and any order of the Bankruptcy Court.  To the extent necessary,

18  any limited liability company agreement or operating agreement or other controlling organization

19  or formation document or agreement for the Debtor shall be deemed amended to authorize the

20  Liquidating Trustee to take such actions.

21  **Section 5.12 Termination of Liquidation Trust.**  The Liquidation Trust will terminate as

22  soon as practicable, but in no event later than the fifth (5th) anniversary of the Effective Date;

23  provided, however, that, the Court, upon motion by the Liquidation Trustee, may, in accordance with

24  the Liquidation Trust Agreement, one or more times extend the term of the Liquidation Trust for a

25  finite period if such extension(s) are warranted by the facts and based upon a finding that such

26  extension(s) are necessary to prosecute the Causes of Actions or to liquidate and distribute all of the

27  Trust Assets.

28

EXHIBIT 1
103

1  **C.      Provisions Governing Distributions.**

2      **Section 5.13.   Estimation.** In order to establish reserves under this Plan and avoid undue

3  delay in the administration of this Chapter 11 Case, the Liquidation Trust shall have the right to seek

4  an order of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code estimating the

5  amount of any Claim.  All estimations hereunder shall be on notice to the Holder of such Claim, and

6  such estimated amount: (a) shall be used in calculating reserves for such Claim; and (b) shall set the

7  maximum allowed amount of such Claim for purposes of Distributions on account thereof.

8      **Section 5.14**.  **Distributions on Account of Allowed Claims**. Except as otherwise provided

9  herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed

10  Claims shall be made by the Liquidation Trust at such periodic intervals as the Liquidation Trust

11  determines to be reasonably prudent.

12      **Section 5.15    Distributions on Account of Disputed Claims and Estimated Claims**.

13  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions

14  on account of Disputed Claims and Estimated Claims that become Allowed Claims shall be made by

15  the Liquidation Trust at such periodic intervals as the Liquidation Trust determines to be reasonably

16  prudent.

17      **Section 5.16**.  **No Distributions Pending Allowance**.  Notwithstanding any other Plan

18  provision: (a) Distributions to Holders of Claims will be made, and Liquidation Trust Interests will

19  be issued, only after, and only to the extent that, such Holders hold Allowed Claims; and (b) unless

20  otherwise agreed by the Liquidation Trustee, if any portion of a Claim is a Disputed Claim, the

21  entire Claim shall be treated as a Disputed Claim and no Distribution or issuance of Liquidation

22  Trust Interests to the Holder of such Claim shall be made on account of such Claim unless and until

23  no portion of the Claim is a Disputed Claim.

24      **Section 5.17**.  **Disputed and Estimated Claims Reserve**.  On and after the Effective Date,

25  the Liquidation Trust shall maintain in reserve such Cash as it estimates to be necessary to satisfy the

26  distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against

27  the Liquidation Trust becomes an Allowed Claim.

28

16118-00002/2327825.10                         -38-

EXHIBIT 1
104

1     **Section 5.18.   Reduced or Disallowed Secured Claims**.  To the extent that a Disputed

2     Claim for which Cash has been deposited into the Disputed Reserve is not allowed or becomes an

3     Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to

4     such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the

5     excess of the amount that was retained on account of such Claim over the amount actually

6     distributed on account of such Claim, shall be released from the Disputed Reserve and used as Trust

7     Assets in accordance with the Plan.

8     **Section 5.19.   Reserve Amounts for Disputed and Estimated Claims**.  For purposes of

9     establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the

10    stated liquidated "face amount" of such Claim, unless such Claim is estimated by Order of the Court.

11    If such Disputed Claim does not set forth a stated liquidated "face amount", then the amount of such

12    Claim shall be estimated by order of the Court.

13    **Section 5.20.  Settling Disputed Claims**.  The Liquidation Trust shall be authorized to settle,

14    or withdraw any objections to, any Disputed Claims following the Effective Date.

15    **Section 5.21.   Cash Distributions.**   The sources of all Distributions and payments under the

16    Plan are and will be Cash, except as provided in the Plan with respect to the Collateral Election for

17    certain Allowed Secured Claims and Allowed Customer Claims.  Cash Distributions made pursuant

18    to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer

19    from a domestic bank.

20    **Section 5.22.   Setoff and Recoupment**.  Notwithstanding anything to the contrary in the

21    Plan, the Liquidation Trustee may set off, recoup, or withhold against the Distributions to be made

22    on account of any Allowed Claim or Liquidation Trust Interest any claims that the Debtor, the

23    Estate, or the Liquidation Trustee may have against the Holder of the Allowed Claim or Liquidation

24    Trust Interest.  The Debtor, the Estate, the Liquidation Trust, and the Liquidation Trustee will not

25    waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by

26    allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an

27    Allowed Claim or Liquidation Trust Interest.

28

EXHIBIT 1
105

**Section 5.23.   No De Minimis Distributions**.  Notwithstanding anything to the contrary in the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or Liquidation Trust Interest on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

**Section 5.24.   Fractional Cents**.  When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder of an Allowed Claim or Liquidation Trust Interest.

**Section 5.25.   Undeliverable or Unclaimed Distributions**.

a.      Distributions to Holders of Allowed Claims (except Administrative Claims) and Liquidation Trust Interests will be made by mail as follows:

(i)      Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change that is received by the Liquidation Trustee no later than ten (10) Business Days prior to the date of any Distribution; or

(ii)     If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

b.      Distributions to Holders of Allowed Administrative Claims shall be made by mail to the address set forth in such Holder's request for payment, fee application, or transactional documents, as applicable.

c.      If no address is available on a proof of claim, the Bankruptcy Schedules, request for payment, fee application, or transactional documents, as applicable, the Distribution will be deemed to be undeliverable.  If a Distribution is actually returned to the Liquidation Trustee or is deemed to be an undeliverable Distribution under the prior sentence, the Liquidation Trustee will make no further Distributions to the Holder to which such undeliverable Distribution was made unless and until the Liquidation Trustee is timely notified in writing of that Person's current address. Subject to Section 5.25(d), until they become deliverable, the Liquidation Trustee shall deposit such

EXHIBIT 1
106

1  undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions

2  Reserve for the benefit of the Persons entitled to such Distributions.  Holders of Claims or

3  Liquidation Trust Interests subject to undeliverable Distributions will not be entitled to any interest

4  on account of the undeliverable Distributions.

5              d.        Any Person that is otherwise entitled to an undeliverable Distribution and that

6  does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable,

7  provide the Liquidation Trustee with a written notice asserting its claim to or interest in that

8  undeliverable Distribution and setting forth a current, deliverable address: (i) will be deemed to

9  waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from

10  receiving that undeliverable Distribution or asserting any claim with respect thereto against the

11  Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the

12  extent applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such

13  undeliverable Distribution reduced on account of such undeliverable Distribution.  Any

14  undeliverable Distributions that are not claimed timely under this Section will be withdrawn from

15  the Undeliverable Distribution Reserve and treated as Trust Assets of the Liquidation Trust.

16  Nothing in the Plan requires the Debtor or the Liquidation Trustee to attempt to locate any Person

17  holding an Allowed Claim or Liquidation Trust Interest and whose distribution is undeliverable.

18       **Section 5.26.   Undeliverable Distributions Reserve.**  On or as soon as practicable after the

19  Effective Date, the Liquidation Trustee shall establish an Undeliverable Distributions Reserve into

20  which Undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.25.

21       **Section 5.27.   Negotiation of Checks**.  Checks issued in respect of Claims or Liquidation

22  Trust Interests shall be null and void if not negotiated within ninety (90) days after the date of

23  issuance thereof.  Subject to Section 5.25, requests for reissuance of any check shall be made to the

24  Liquidation Trustee by the Holder of the Allowed Claim or Liquidation Trust Interest to whom such

25  check originally was issued and must be made on or before ninety (90) days after the expiration of

26  the ninety (90) day period following the date of issuance of such check.  Thereafter, the funds

27  represented by such voided check shall irrevocably revert to the Liquidation Trust and the Holder of

28  the claim relating to such voided check: (i) will be deemed to waive any claim to or interest in that

EXHIBIT 1
107

1    voided check and the funds related thereto; (ii) will be forever barred from receiving the funds

2    represented by the voided check or asserting any claim with respect thereto against the Debtor, the

3    Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the extent

4    applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such funds and

5    voided check reduced on account of such funds.  The Liquidation Trustee, in his, her, or its sole

6    discretion may waive or modify any requirement in Section 5.25, 5.26 or 5.27.

7        **Section 5.28.   Record Date**.  The record date for purposes of Distributions under this Plan

8    shall be the Effective Date.  The Debtor and the Liquidation Trustee will rely on the register of

9    proofs of claim filed in the Case except to the extent a notice of transfer of a Claim or Interest has

10   been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

11       **Section 5.29.   Postpetition Interest**.  Except as otherwise provided by Final Court Order,

12   interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on

13   account of any Claims or Liquidation Trust Interests.

14       **Section 5.30.   Sequence of Payments**.  Notwithstanding any other provision of the Plan,

15   Distributions shall be made by the Liquidation Trust on account of Liquidation Trust Interests in the

16   following order:

17           a)   all outstanding and projected Post Effective Date Trust Expenses until they

18                are paid in full or are fully reserved for;

19           b)   all Allowed Administrative Claims until they are paid in full;

20           c)   all Allowed Secured Claims (except those as to which the Collateral Election

21                is made) until they are paid in full;

22           d)   all Allowed Priority Non-Tax Claims until they are paid in full;

23           e)   all Allowed Priority Tax Claims until they are paid in full or are reserved for;

24           f)   all Allowed Customer Claims and Warranty Claims are paid or are reserved

25                for to the extent set forth in the treatment of Class 3 Claimants; and

26           g)   all Allowed General Unsecured Claims

27       **Section 5.31.   Withholding and Reporting Requirements**.  In connection with the

28   Distributions under the Plan, the Liquidation Trustee shall comply with all applicable withholding

EXHIBIT 1
108

1   and reporting requirements imposed by any Governmental Authority, and all Distributions shall be

2   subject to any such withholding or reporting requirements.  All such amounts withheld and paid to

3   the appropriate Governmental Authority shall be treated as distributed to such Holders.

4   Notwithstanding the above, each Holder of an Allowed Claim or Liquidation Trust Interest that is to

5   receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and

6   payment of any Tax obligations imposed by any Governmental Authority, including income,

7   withholding, and other Tax obligations, on account of such Distribution.  The Liquidation Trustee

8   has the right, but not the obligation, to not make a Distribution until such Holder has made

9   arrangements satisfactory to the Liquidation Trustee for payment of any such Tax obligations.  The

10  Liquidation Trustee may require, as a condition to receipt of a Distribution, that the Holder of an

11  Allowed Claim or Liquidation Trust Interest provide a completed Form W-8, W-9, and/or other Tax

12  information deemed necessary in the sole discretion of the Liquidation Trustee.  If the Liquidation

13  Trustee makes such a request and the Holder fails to comply before the date that is ninety (90) days

14  after the request is made: (a) the amount of such Distribution shall irrevocably revert to the

15  Liquidation Trust; (b) the Holder of the claim relating to such Distribution will be deemed to waive

16  any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) and

17  Liquidation Trust Interest(s) of such Holder shall be deemed to be disallowed and terminated and be

18  entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds

19  represented by that Distribution or any Distributions on such disallowed and terminated Claims and

20  Liquidation Trust Interests, or asserting any claim with respect thereto against the Debtor, the Estate,

21  the Liquidation Trust, the Liquidation Trustee, or their property.

22          **Section 5.32.  Claims Transfer**.  The Liquidation Trustee shall not recognize any transfer of

23  a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity

24  of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall

25  not affect or alter the classification and treatment of such Claim under the Plan and any such

26  transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such

27  Claim was held by the transferor.  The transferability of Liquidation Trust Interests shall be

28  governed by the Liquidation Trust Agreement.

EXHIBIT 1
109

1      **Section 5.33.   Maximum Amount of Distributions.**  In no event shall a Holder of an

2  Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the

3  Liquidation Trust whether directly or on account of Liquidation Trust Interests, or any other source,

4  more than the total amount of such Allowed Claim.

5      **Section 5.34.   Final Distributions On Liquidation Trust Interests.**  After: (a) all Claims

6  have been resolved; (b) all Allowed Claims except General Unsecured Claims have been paid or,

7  with respect to Allowed Secured Claims as to which the Collateral Election is made, satisfied as

8  provided in the Plan; (c) all material Trust Assets have been converted to Cash; and (d) the

9  Operating Reserve has been adequately funded, the Liquidation Trustee shall distribute all

10  Liquidation Trust Net Proceeds to holders of Liquidation Trust Interests issued on account of

11  Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of the

12  Liquidation Trust Interests of such Holders and taking into account any prior distributions that have

13  been made on account of such Liquidation Trust Interests.

## VI.

## LITIGATION AND CLAIMS OBJECTIONS

**Section 6.1.    Preservation of Causes of Action.**

        a.       As of the Effective Date, the Liquidation Trustee shall hold and retain all

rights and privileges on behalf of the Liquidation Trust, the Debtor, and the Estate to commence,

pursue, and settle, as appropriate, any and all Causes of Action and Defenses (including, without

limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or

other tribunal, including, without limitation, adversary proceeding(s) filed in the Case.  The failure to

explicitly list any Causes of Action and other potential or existing claims of the Debtor or Estate is

not intended to and shall not limit the rights of the Liquidation Trust, through the Liquidation

Trustee, to pursue any Causes of Action and Defenses and claims not so identified.  The Debtor and

the Committee may file a non-exhaustive list of Causes of Action at least ten (10) Business Days

prior to the Confirmation Hearing; provided, however, that notwithstanding any otherwise applicable

principle of law or equity, including any principles of judicial estoppel, res judicata, collateral

EXHIBIT 1
110

estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze, or refer to any Cause of Action, or potential Cause of Action, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, Estate's, or the Liquidation Trustee's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Confirmation Date.  Subject to the limitations expressly set forth in the Liquidation Trust Agreement, the Liquidation Trustee may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in the Liquidation Trustee's sole discretion in accordance with what is in the best interests, and for the benefit, of the Liquidation Trust and its Beneficiaries.

b.    Unless a Cause of Action and Defense is expressly waived, relinquished, released, compromised, or settled by Final Order, the Debtor and the Estate expressly reserve such Causes of Action for later adjudication (including, without limitation, Causes of Action of which the Debtor or the Estate may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Estate at this time, or facts or circumstances which may change or be different from those which the Debtor or the Estate now believes to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action and Defenses upon, or after, the Confirmation Date or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by Final Order.

c.    Any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or which has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from or to the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee, on behalf of the Liquidation Trust and Estate subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not:  (a) such Person has filed a proof of claim against the Debtor; (b) such Person's proof of claim has been objected to by the Debtor, the

EXHIBIT 1
111

1  Liquidation Trustee, or any other Person; (c) such Person's Claim was included in the Bankruptcy

2  Schedules; or (d) such Person's scheduled Claims have been objected to by the Debtor, the

3  Liquidation Trustee, or any other Person, or has been identified as disputed, contingent, or

4  unliquidated.

5      **Section 6.2.    Objections to and Resolution of Disputed Claims**.  Except as otherwise

6  provided in the Plan or Confirmation Order, on and after the Effective Date, the Liquidation Trustee

7  shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or

8  withdraw such objections.  The Liquidation Trustee shall have the authority to compromise, settle,

9  withdraw, or otherwise resolve any objections to any Claim without approval of the Court; provided,

10 however, that the Liquidation Trustee may in his, her, or its discretion seek relief before the Court

11 with respect to any Disputed Claim.  The Liquidation Trustee shall file and serve all objections to

12 Claims (other than Administrative Claims that are subject to Sections 3.5, 3.6 and 3.8) upon the

13 Holder of the Claim as to which the objection is made no later than one-hundred eighty (180) days

14 after the later of:  (a) the Effective Date; and (b) the date on which a proof of claim is filed with the

15 Court (the "Claims Objection Deadline").  The Liquidation Trustee may extend the Claims Objection

16 Deadline for no more than two one-hundred eighty (180) day periods by filing a notice of the

17 extended deadline with the Court; provided, however, that nothing herein shall modify the statute of

18 limitations for any affirmative Cause of Action that the Liquidation Trustee may assert. Such

19 extensions may be based on the fact that the Liquidating Trustee is then still collecting Assets to pay

20 Claims senior to Unsecured Creditors. Thereafter, the Claims Objection Deadline may be further

21 extended only by an Order of the Court.  The filing of a motion to extend the Claims Objection

22 Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on

23 such motion.  In the event that such motion is denied by the Court, or approved by the Court and

24 reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims

25 Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final

26 Order denying the motion to extend the Claims Objection Deadline or reversing the Order approving

27 the motion.

28

16118-00002/2327825.10                         -46-

EXHIBIT 1
112

# VII.

## OTHER PLAN PROVISIONS

**Section 7.1.    Recourse for Claims**.  All Holders of Claims and Interests are bound by the Plan and the Confirmation Order.  No Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.  As of the Effective Date, notes, contracts, judgments, and any other evidence of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**Section 7.2.    Exculpation and Release of Debtor, Committee, and Professionals**. Except to the extent arising from willful misconduct or gross negligence, any and all Claims, liabilities, Causes of Action, rights, damages, costs, and obligations held by any party against the Debtor, the Committee, and their respective attorneys, accountants, agents, and other Professionals, and their officers, directors, members, and employees, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any manner related to the post-Petition Date administration of the Case or the formulation, negotiation, prosecution, or implementation of the Plan, shall be deemed fully waived, barred, released, and discharged in all respects, except as to rights, obligations, duties, claims, and responsibilities preserved, created, or established by the terms of the Plan.  Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and the Committee and their present and former members, officers, directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals (acting in such capacity) employed by any of the foregoing entities will neither have nor incur any liability to any Person for their role in soliciting acceptances or rejections of the Plan.

EXHIBIT 1
113

**Section 7.3.    Injunction Enjoining Holders of Claims**.

a.    The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Liquidation Trust, and their assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Liquidation Trust, or their property (other than actions brought to enforce any rights or obligations under the Plan and any claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

(1)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Court or by explicit provision of the Court, as of the Effective Date, which shall be deemed to be withdrawn or dismissed with prejudice);

(2)    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property;

(3)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property; and

(4)    proceeding in any place whatsoever against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property, in any manner that does not conform to or comply with the provisions of the Plan.

b.    No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of the Liquidation Trustee or Order

EXHIBIT 1
114

of the Court acquired by motion on notice to the Liquidation Trustee.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Liquidation Trust may be entitled, the Claims of such Holder shall be disallowed and any Distributions made on account of such Claims shall be repaid by such Holder to the Liquidation Trust.

Section 7.4.    **Injunctions or Stays**.  Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 7.5.    **Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax.  The interests of Beneficiaries in the Liquidation Trust will constitute neither "securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan.  Pursuant to Bankruptcy Code sections 1125 and 1145, the Liquidation Trust shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended.  Further, because the assets of the Liquidation Trust will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

Section 7.6.    **No Admissions**.  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor, the Committee, or the Estate with respect to any matter set forth in the Plan, including the amount or

EXHIBIT 1
115

allowability of any Claim, or the value of any property of the Estate.  Notwithstanding anything to

the contrary in the Plan, if the Plan is revoked or withdrawn or is not confirmed, the Plan will be null

and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor,

the Committee, or the Estate with respect to any matter discussed in the Plan, including liability on

any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement,

or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in

any manner the rights of the Debtor, the Committee, or the Estate in any further proceedings.

**Section 7.7.    Severability of Plan Provisions**.  If, before entry of the Confirmation Order,

the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may

alter or interpret that term or provision so that it is valid and enforceable to the maximum extent

possible consistent with the original purpose of that term or provision.  That term or provision will

then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or

interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will

in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial

determination providing that each Plan term and provision, as it may have been altered or interpreted

in accordance with this Section, is valid and enforceable under its terms.

**Section 7.8.    Governing Law**.  The rights and obligations arising under the Plan and any

agreements, contracts, documents, or instruments executed in connection with the Plan will be

governed by, and construed and enforced in accordance with, California law without giving effect to

California law's conflict of law principles, unless a rule of law or procedure is supplied by:

(a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-

of-law provision in any document provided for, or executed under or in connection with, the Plan.

**Section 7.9.    Successors and Assigns**.  The rights, benefits, and obligations of any Person

referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor,

administrator, personal representative, successor, or assign of that Person.

**Section 7.10.    Nonconsensual Confirmation**.  In the event that any of the Classes entitled to

vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code

section 1129(a)(8): (a) the Debtor and the Committee reserve the right to modify the Plan in

EXHIBIT 1
116

accordance with Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that do not accept the Plan or are deemed not to accept the Plan, the Debtor and the Committee seek confirmation under section 1129(b) of the Bankruptcy Code.  Notwithstanding any other provision of the Plan, the Debtor and the Committee reserve the right to modify the Plan.

Section 7.11.  **Revocation of the Plan**.  The Committee reserves the right to revoke or withdraw the Plan before the Effective Date.

Section 7.12.  **Amendment.**  In accordance with section 1127 of the Bankruptcy Code, the Debtor and the Committee reserve the right by joint decision to alter, amend, or modify the Plan, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

Section 7.13.  **Saturday, Sunday, or Legal Holiday**.  If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

Section 7.14.  **Post-Effective Date Status Reports**.  The Liquidation Trustee shall file status reports regarding the implementation of the Plan and the review, prosecution, and resolution of Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date through entry of a final decree closing the Case, or as otherwise ordered by the Court.

Section 7.15.  **Post-Effective Date Notice**.  From and after the Effective Date, any Person who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided shall file a request for post-Effective Date notice and shall serve the request on the Liquidation Trustee and counsel for the Liquidation Trustee; provided, however, that the U.S. Trustee, the Debtor, and Liquidation Trustee shall be deemed to have requested post-Effective Date notice.

Section 7.16.  **Maintenance and Disposition of Trust Records**.  The books and records maintained by the Liquidation Trustee, including books and records provided by the Debtor, may be disposed of by the Liquidation Trustee in his, her, or its discretion at the earlier of: (a) such time as the Liquidation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidation Trust; and (b) the termination of the Liquidation Trust.

EXHIBIT 1
117

**Section 7.17.  Retention of Jurisdiction**.  The Court will retain and have such jurisdiction regarding the Case, proceedings in the Case, the Plan, the Liquidation Trust, and the Liquidation Trust Agreement, as such jurisdiction existed before the Effective Date, including with respect to the following:

(a)     the resolution of any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(b)     the entry of such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(c)     the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trustee after the Effective Date;

(d)     ensuring that Distributions to Holders of Allowed Claims and Liquidation Trust Interests are accomplished as provided in the Plan;

(e)     hearing and determining any objections to Administrative Claims or proofs of claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, in whole or in part;

(f)     the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)     the issuance of such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

EXHIBIT 1
118

1      (h)     consideration of any modifications of the Plan, to cure any defect or omission,

2            or reconcile any inconsistency in any Order of the Court, including the

3            Confirmation Order;

4      (i)     hearing and determining all applications for awards of compensation for

5            services rendered and reimbursement of expenses incurred prior to the

6            Effective Date;

7      (j)     hearing and determining disputes arising in connection with, or relating to, the

8            Plan or the Liquidation Trust Agreement or the interpretation,

9            implementation, or enforcement of the Plan and/or the Liquidation Trust

10           Agreement, or the extent of any Person's obligations incurred in connection

11           with or released or exculpated under the Plan or the Liquidation Trust

12           Agreement;

13     (k)    the recovery of all Assets of the Debtor and property of the Estate, wherever

14           located, and the prosecution of all Causes of Action;

15     (l)     the issuance of injunctions or other Orders as may be necessary or appropriate

16           to restrain interference by any Person with consummation, implementation, or

17           enforcement of the Plan or the Liquidation Trust Agreement;

18    (m)   the determination of any other matters that may arise in connection with, or

19           are related to, the Plan, the Disclosure Statement, the Confirmation Order, the

20           Liquidation Trust Agreement or any contract, instrument, release, or other

21           agreement or document created in connection with the Plan, including the

22           Liquidation Trust Agreement;

23     (n)    hearing and determining matters concerning state, local, and federal Taxes in

24           accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

25     (o)    hearing any other matter that is not inconsistent with the Bankruptcy Code;

26     (p)    hearing and determining, to the fullest extent authorized by applicable law,

27           any issue or dispute directly or indirectly arising from or related to the

28

EXHIBIT 1
119

1    Liquidation Trust, the Trust Assets, the Liquidation Trust Agreement, or the

2    Liquidation Trustee;

3    (q)    hearing and determining any other matter deemed relevant to the

4    consummation of the Plan or the administration of the Case;

5    (r)    interpreting and enforcing Orders entered by the Court; and

6    (s)    entry of a final decree closing the Case.

7    **Section 7.18.   Entry of a Final Decree.**  Promptly following the liquidation or other

8    disposition of all Trust Assets, including the Causes of Action, and distribution of all Trust Assets

9    pursuant to the Plan and Liquidation Trust Agreement, and in accordance with the Liquidation Trust

10    Agreement, the Liquidation Trustee will file a motion with the Court to obtain entry of a final decree

11    closing the Case and authorizing the termination of the Liquidation Trust and discharge of the

12    Liquidation Trustee.

13    **VIII.**

14    **RECOMMENDATIONS**

15    **Section 8.1.     Recommendations of the Committee and the Debtor**.  The Committee and

16    the Debtor believe that confirmation and implementation of the Plan are preferable to any other

17    alternative because, in their view, the Plan will provide Holders of Allowed Claims with the

18    maximum recovery.  Accordingly, the Committee and the Debtor urge Creditors that are entitled to

19    vote to vote to accept the Plan.

20    [Remainder of page intentionally left blank]

21

22

23

24

25

26

27

28

EXHIBIT 1
120

This Plan respectfully submitted by:

Dated: __June 19__, 2015

MEGA RV CORP.
Chapter 11 Debtor and Debtor in Possession

By: _____

Name: __J. MICHAEL ISSA__

Title: __FINANCIAL ADVISOR TO THE
DEBTOR
GLASSRATNER ADVISORY &
CAPITAL GROUP, LLC__

_____
Brian L. Davidoff, a member of
Greenberg Glusker Fields Claman & Machtinger LLP
Attorneys for the Committee

_____
Robert P. Goe, a member of Goe & Forsythe, LLP
Attorneys for the Debtor

16118-00002/2327825.10

-55-

EXHIBIT 1
121

1  This Plan respectfully submitted by:

2  Dated:  __June 19__, 2015

MEGA RV CORP.
Chapter 11 Debtor and Debtor in Possession

3  By: _____
   Name: _____
4  Title: _____

5

6

7

8  _____
   Brian L. Davidoff, a member of
9  Greenberg Glusker Fields Claman & Machtinger LLP
   Attorneys for the Committee
10

11  _____
    Robert P. Goe, a member of Goe & Forsythe, LLP
12  Attorneys for the Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16118-00002/2327825.10                    -55-

EXHIBIT 1
122

# EXHIBIT 2

[TO BE FILED]

EXHIBIT 2
124

# EXHIBIT 3

## AGREEMENT

This Agreement (the "**Agreement**") is made as of November 24, 2014 by and among MEGA RV, CORP., as Debtor and Debtor-in-Possession ("**Debtor**"), THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, duly appointed in the chapter 11 bankruptcy cases of the Debtor (the "**Committee**"), GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION ("**CDF**") and BRENT MCMAHON ("**McMahon**"), MIC INVESTMENTS COMPANY, LLC, McMAHON'S RENTALS, LLC, KINSALE, LLC and NEVADA STREET, LLC (together with McMahon, each a "**Guarantor**" and collectively "**Guarantors**") (the aforementioned parties collectively referred to as, the "**Parties**").

## DEFINITIONS

The definitions for the following terms shall apply to this Agreement:

a.  "**Claim**" or "**Claims**" have the meaning set forth in 11 U.S.C. § 101(5) and include, without limitation, actions, suits, accounts, contracts, controversies, damages, judgments, and rights to payment.

b.  "**Collateral Proceeds**" means  (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined herein), (b) the Contracts In Transit (as defined herein), (c) FF&E (as defined herein) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 hereof, a total of $2,750,000 including the Holdback Amount (as defined herein) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined herein) to CDF (the "**Repurchase Amount**").  The amount of Collateral Proceeds shall be capped at $4,700,000.

c.  "**Consumer Creditors**" means those certain unsecured creditors who hold claims against the Debtor for deposits and/or down payments arising from unconsummated purchases of RVs from Debtor and unpaid trade-in lien payoffs.

d.  "**CITs**" means "**Contracts in Transit**" for the RVs listed on Exhibit A hereto.

e.  "**Court**" means the United States Bankruptcy Court, Central District of California, Santa Ana Division.

f.  "**Effective Date**" of the Agreement shall be the first business date after the occurrence of the later of: (i) Court approval of this Agreement and  entry of the Compromise Order, and (ii) the expiration of the Investigation Period, as defined below, without the

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

Committee delivering a Disapproval Notice, as defined below (unless waived earlier by the Committee in writing).

g.    "**Escrow Account**" shall mean the account as defined in the Relief Stipulation or such other account agreed upon in writing by the Parties.

h.    "**FF& E**" means all of Debtor's furniture, office fixtures and equipment.

i.    "**Holdback Amount**" means the sum of $250,000 either deposited by CDF in the Escrow Account from the New Inventory Proceeds, or if the New Inventory Proceeds in the Escrow Account do not equal $2,750,000 then additional cash by CDF.

j.    "**Inventory**" means inventory as defined in the California Commercial Code Section 9102(48).

k.    "**New Inventory**" means all RV Inventory that is subject to repurchase agreements with a manufacturer.

l.    "**Plan**" has the meaning set forth in Section 7 of this Agreement;

m.    "**Relief Stipulation**" means the Relief Stipulation Order entered by the Bankruptcy Court on November 12, 2014, attached as Exhibit B.

n.    "**RV**" means recreational vehicles.

o.    "**Compromise Order**" has the meaning set forth in Section 1 hereof.

p.    "**Used Inventory**" means all RV Inventory that is not New Inventory and on which CDF holds a perfected, first priority security interest.

## RECITALS

**WHEREAS,** on June 15, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "**Bankruptcy Court**"), Case No. 8:14-bk-13770-MW (the "**Bankruptcy Case**");

**WHEREAS**, the Debtor is a Debtor-in-Possession under Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** on July 3, 2014, the Office of the United States Trustee appointed the Committee;

**WHEREAS,** the Debtor sold and serviced new and used RVs throughout Southern California;

2

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

**WHEREAS,** CDF served as Debtor's floorplan lender and financed Debtor's purchase of RVs pursuant to that certain Inventory Financing Agreement between CDF and Debtor dated May 8, 2006 (as amended and restated from time to time the "**Inventory Financing Agreement**");

**WHEREAS**, to secure the advances made to Debtor by CDF, Debtor granted CDF a security interest in Debtor's personal property as provided in the Inventory Financing Agreement, the "**Collateral**");

**WHEREAS,** as of the Petition Date, CDF asserts that the Debtor had an outstanding obligation to CDF of approximately $31,547,399.05, which is secured by the Collateral;

**WHEREAS,** McMahon is the principal and 100% shareholder of Debtor.

**WHEREAS,** Guarantors, to secure advances made to Debtor by CDF, provided CDF with unconditional guarantees of the obligations of Debtor ("**Guaranties**");

**WHEREAS**, the Debtors, the Committee, McMahon and the Guarantors assert that they may hold Claims against CDF arising, *inter alia*, under the Bankruptcy Code, the Inventory Financing Agreement, the Guaranties and applicable state and federal law;

**WHEREAS**, CDF asserts it has Claims against Debtor and Guarantors;

**WHEREAS**, the Parties have and agree to resolve, settle and compromise all disputes between and among them as set forth herein, the Parties enter into this Agreement solely for the purpose of resolving, settling and compromising Claims and to avoid the further time and expense of litigation; by entering into this Agreement, the Parties do not admit liability to any other Party, and they do not admit the validity or invalidity of any Claim or defense made by any other Party.

**NOW, THEREFORE**, in consideration of the foregoing recitals, of the agreements hereinafter set forth and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1.      Bankruptcy Court Approval.  On November 24, 2014, the Debtor shall file, and the Committee shall support, a motion on a shortened time basis and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Compromise Motion**"), seeking entry of an order approving this Agreement in its entirety (which order shall be substantially in the form attached hereto as Exhibit C, the "**Compromise Order**").

3

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

2.    Investigation Period.

a)    The Committee shall have until December 19, 2014 (the "**Investigation Period**") to investigate to its sole and exclusive satisfaction potential claims and causes of action that the Debtor may have against McMahon and/or any company or party affiliated with McMahon (the "**McMahon Investigation**"). The Committee shall have the right to make application to the Bankruptcy Court to extend the Investigation Period up to January 19, 2015 for good cause in the event that the Debtor and/or McMahon do not reasonably cooperate in providing information to the Committee regarding the McMahon Investigation. The Parties reserve the right to seek additional relief from the Bankruptcy Court to compel the cooperation of Debtor and/or McMahon with the Committee's investigation.

b)    If the Committee at any time during the Investigation Period determines in its sole and absolute discretion as a result of the McMahon Investigation that the Debtor has grounds for commencing an action against McMahon and/or any company or party affiliated with McMahon, the Committee shall give written notice to the Debtor, McMahon, Guarantors and CDF of disapproval ("**Disapproval Notice**").  Unless the Committee delivers a Disapproval Notice within the Investigation Period, the Committee shall be deemed to have approved the release of McMahon and/or any company or party affiliated with McMahon.

c)    McMahon and the Debtor will cooperate in supplying information to the Committee as part of the McMahon Investigation, including but not limited to:  The Debtor will cooperate with the Committee in providing financial information regarding McMahon's and/or any company or party affiliated with McMahon, financial dealings with the Debtor.

d)    Information will be provided to the Committee about the other guarantees that McMahon, and/or any company or party affiliated with McMahon, has made to third party creditors.

e)    The Committee reserves the right to request a 2004 examination of McMahon during the Investigation Period if sufficient information is not provided through informal means, and McMahon agrees to cooperate to conduct such examination on shortened time within the Investigation Period.

f)    During the Investigation Period, McMahon will cooperate with the estate in liquidating assets and complying with the Disposition Actions (as defined in the Relief Stipulation) and otherwise assisting the

4

Debtor in complying with the administrative requirements of the chapter 11 of the Debtor.

3.      <u>Actions Pending Effective Date</u>.  Prior to the Effective Date, and thereafter:

a.   The Parties shall perform their obligations under the Relief Stipulation;

b.   The Parties shall make such motions to the Court and file such pleadings as are reasonably necessary to seek the Compromise Order;

c.   The Debtor shall commence and diligently liquidate its assets other than the New Inventory pursuant to the terms of the Agreement;

d.   In order to facilitate the liquidation of its assets pending the Effective Date, CDF agrees to advance funds to the Debtor according to the budget attached hereto as <u>Exhibit D</u> (the "Budget"). Such advances shall in the first instance be from funds in the Escrow Account ("**Escrow Advances**"), and in such event any Escrow Advances will be deducted from the Collateral Proceeds on the Effective Date.  In the event that there are no funds in the Escrow Account at the time that the Debtor is in need of funds pursuant to the Budget to facilitate the liquidation of its assets pending the Effective Date, then CDF shall advance such funds to the Debtor ("**Pre-Escrow Advances**").  Any such Pre-Escrow Advances shall be deducted from the Collateral Proceeds assuming the Effective Date of the Agreement. If for any reason the Effective Date does not occur, then all such Pre-Escrow Advances shall constitute an allowed administrative expense of the Debtor's estate pursuant to Bankruptcy Code §503(b) *pari passu* with all other administrative expenses.

e.   In order to facilitate CDF making any such advances, Glass Ratner/Mike Issa shall do all things necessary to become a payee in the General Electric Capital Corporation/CDF system and shall provide CDF invoices for all expenses together with all other supporting documentation reasonably requested by CDF.

4.      <u>Disapproval Notice</u>.  In the event of a timely Disapproval Notice, then except for the items identified in Sections 2 and 3 above, the balance of the Agreement shall be null and void, and no part of the Collateral Proceeds or the New Inventory Proceeds shall be released from the Escrow Account without further orders of the Court.  In this case the Parties reserve all of their rights and remedies against each other.

5.      <u>Collateral Proceeds</u>.  As provided for in the Relief Stipulation, CDF shall deposit all New Inventory Proceeds into the Escrow Account until the Effective Date.  As provided in the Relief Stipulation, the Debtor shall place all proceeds constituting Collateral Proceeds (other than New Inventory Proceeds) into a separate segregated Escrow Account until the Effective Date.

5

In Re Mega RV, Corp.<br>Case No. 8:14-bk-13770-MW

6.    <u>On the Effective Date</u>.  On the Effective Date:

    a.    All of the terms and conditions of this Agreement shall become effective.

    b.    All funds constituting the Collateral Proceeds in the Escrow Account shall be disbursed to the Debtor, <u>less</u>: (i) any Escrow Advances or Pre-Escrow Advances; and (ii) the Holdback Amount.

    c.    If as of the Effective Date, there has not been deposited in the Escrow Account the full amount of the Repurchase Amount, then as such Repurchase Amount is paid to CDF, CDF shall forthwith remit such Repurchase Amount to the Debtor until the aggregate of the Repurchase Amount is paid to the Debtor <u>less</u>: (i) any Escrow Advances or Pre-Escrow Advances; and (ii) the Holdback Amount, not previously deducted under Section 6(b) above.

    d.    The Holdback Amount shall remain in the Escrow Account until 180 days after the effective date of a Plan, and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7.

    e.    Except for the amounts set forth in Section 7b-d above, any other New Inventory Proceeds (as defined in the Relief Stipulation) required to be deposited in the Escrow Account by CDF pursuant to the Relief Stipulation in excess of the Repurchase Amount shall be disbursed to CDF.

    f.    Any Collateral Proceeds deposited by the Debtor in an Escrow Account pursuant to Section 5 hereof shall be disbursed to the Debtor.

    g.    The Debtor shall file an employment application for McMahon effective November 1, 2014 to compensate McMahon at the rate of $10,000 per month until confirmation of a Plan, paid from proceeds of the Debtor's estate other than from the Collateral Proceeds (should the estate be able to realize these proceeds), McMahon and/or Guarantors shall not, directly or indirectly, be paid, receive distributions, or otherwise be compensated from any of the Collateral Proceeds.

    h.    The mutual and general releases by the Parties contained herein shall be effective.

    i.    McMahon and the Guarantors (collectively, the "**<u>McMahon Release Parties</u>**") will subordinate any and all Claims they may have against the Debtor's estate to all other unsecured creditors of the Debtor's estate, as provided for in Section 9 hereof.

    j.    Notwithstanding the effectiveness of the releases provided to him, McMahon will continue to reasonably cooperate with the Debtor's estate as requested after he is released by the Debtor and/or no longer employed by the Debtor.

6

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

7.   Joint Liquidating Plan.

    a.   Within 30 days after the entry of the Compromise Order or so soon thereafter as can reasonably be accomplished, the Committee, with the Debtor's cooperation shall propose a joint liquidating plan of reorganization (the "**Plan**") that pays all administrative claims and priority claims, and thereafter Consumer Creditors and then general unsecured creditors to the extent of available funds. If so requested by the Debtor and the Committee, CDF shall assign to the Consumer Creditors under the Plan a portion of the Repurchase Amount that constitutes Collateral Proceeds. The Plan shall be funded by the Collateral Proceeds and other amounts in the Debtor's estate, including amounts from payments to the Debtor from transferees of avoidable transfers, if any, and the liquidation of assets of the Debtor.

    b.   The Plan proposed in the case shall provide for a liquidating trust (the "**Liquidating Trust**") to be created pursuant to the Plan to consummate an orderly wind-down of the Debtor and to make distributions to creditors in accordance with the Agreement and as otherwise required by law. All claims and causes of action belonging to the Debtor will transfer to and vest in the Liquidating Trust on the Effective Date. Mike Issa of Glass Ratner will be appointed as Liquidating Trustee and Greenberg Glusker Fields Claman & Machinger LLP will serve as counsel to the Liquidating Trust.

    c.   The Liquidating Trust shall promptly investigate any avoidance actions under Bankruptcy Code §§544-550 inclusive and shall prosecute any such bona fide claims expeditiously, and shall negotiate in good faith to reduce administrative and priority claims against the Debtor's estate (collectively the "**Recovery Action Proceeds**").

    d.   In the event that within 180 days from the effective date of a Plan, the aggregate recovery from: (i) Recovery Action Proceeds (less any fees and costs directly attributable to such Recovery Action Proceeds), plus (ii) Collateral Proceeds, are less than $4,700,000 (a "**Shortfall**"), then the Holdback Amount shall be disbursed from the Escrow Account to the Debtor to the Extent of such Shortfall and the excess, if any, shall be released to CDF.

    e.   In the event that within 180 days from the effective date of a Plan, the aggregate recovery from: (i)Recovery Action Proceeds (less any fees and costs directly attributable to such Recovery Action Proceeds), plus (ii) Collateral Proceeds, are equal to or more than $4,700,000 , then the Holdback Amount shall be disbursed from the Escrow Account to CDF.

CHD-650265-2
16118-00002/2296765.2

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

8.    <u>Pending Litigation</u>. Within 15 days of the Effective Date: (i) Guarantors shall dismiss, with prejudice, their Petition to Vacate Arbitration Award filed in the Superior Court for Orange County, California – Case #30-2014-00752598-CU-PT-CJC; (ii) Debtor shall stipulate to a relief from stay to allow CDF to dismiss the lawsuit with prejudice currently stayed in the U.S. District Court for the Central District of California – Case #SACV 14-00522-JLS-ANx and recover its surety bond; and (ii) CDF shall dismiss that certain Arbitration Award obtained against McMahon and Guarantors, identified as USA&M Case No. 211168, or alternatively, if the Arbitration Award is not subject to dismissal by rule of the arbitration forum, then CDF shall agree never to enforce said Arbitration Award against McMahon and/or Guarantors and further agrees that the mutual releases set forth in this Agreement as between CDF and McMahon and Guarantors apply with equal force to the Arbitration Award.

9.    <u>Mutual Release of Claims and Subordination</u>. Subject to section 10 below, and except for the Parties obligations under this Agreement,

      a.   <u>Debtor/McMahon Release Parties and CDF</u>. On the Effective Date, (i) the McMahon Release Parties, for themselves and on behalf of their respective representatives, agents, employees, officers, directors, shareholders and managers, if any and (ii) the Debtor for itself and on behalf of its estate, and the Committee, and on behalf of their respective representatives, agents, employees, officers, directors, shareholders and managers, if any (collectively, the "**Debtor Party Releasors**"), knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against CDF, its current and former officers, directors, shareholders, and each of their respective current managers, employees, agents, attorneys, consultants, advisors, insurers, representatives, (collectively, the "**CDF Release Parties**") that the Debtor Party Releasors and McMahon Release Parties have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the CDF Release Parties based in whole or in part upon any act or omission, transaction or occurrence taking place on or prior to the Effective Date.

      b.   <u>CDF and Debtor/McMahon Release Parties</u>. On the Effective Date, CDF Release Parties knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against the Debtor Party Releasors and the McMahon Release Parties that the CDF Release Parties have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the Debtor Party Releasors and the McMahon Release Parties based in whole or in part upon any act or omission, transaction

8

In Re Mega RV, Corp.<br>Case No. 8:14-bk-13770-MW

or occurrence taking place on or prior to the Effective Date. The foregoing shall include the release of all Claims that the CDF Release Parties may have against the Debtor Party Releasors. On the Effective Date, CDF authorizes the Debtor Party Releasors to file a release of any UCC-1 or other security interest filed by the CDF Release Parties.

c. <u>Debtor, Committee and McMahon</u>. On the Effective Date, the Debtor Party Releasors, knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against the McMahon Release Parties that the Debtor Party Releasors have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the McMahon Release Parties based in whole or in part upon any act or omission, transaction or occurrence taking place on or prior to the Effective Date.

d. On the Effective Date, McMahon Release Parties covenant and agree that the payment of all of the Claims held by the McMahon Release Parties (including but not limited to proof of claim number 111) , whether such Claims are liquidated or non-liquidated, contingent or non- contingent, disputed or non-disputed, whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in right and time of payment, to the prior payment in full of the Consumer Creditors and the Claims of all other general unsecured creditors of the Debtor's estate.

e. As an integral part of the subordination of the Claims of the McMahon Release Parties, McMahon represents and warrants that no McMahon Release Parties have or will file Claims (including administrative claims) against the Debtor other than proof of claim number 111 filed by Brent McMahon.

f. The Parties, and each of them, understand and acknowledge that there are laws that may invalidate releases of claims that may be unknown to the releasing party.  The Parties, and each of them, expressly acknowledge and agree that they are hereby waiving and relinquishing any and all rights that they have or might have against the other Parties they release pursuant to this Agreement, or any of them, under such laws, including but not limited to any and all rights afforded under California Civil Code § 1542.  That statute reads as follows:

> A RELEASE DOES NOT EXTEND TO CLAIMS WHICH A CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

9

HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR.   EACH
PARTY AGREES THAT NO SUCH COMMON
LAW OR STATUTORY RULE OR PRINCIPLE,
INCLUDING   SECTION   1542   OF   THE
CALIFORNIA CIVIL CODE OR SIMILAR LAW
IN ANOTHER JURISDICTION, SHALL AFFECT
THE VALIDITY OR SCOPE OR ANY OTHER
ASPECT OF THIS RELEASE.

10.   <u>Condition Precedent</u>.  The Agreement is subject to the satisfaction of each of the
following conditions precedent: (i) the absence of a material breach of any representation,
warranty or agreement of any Settling Party set forth herein, and (ii) the occurrence of the
Effective Date.

11.   <u>Miscellaneous</u>.

(a)   <u>No Reliance</u>. Each of the Parties declares that, except as set
forth in writing in this Agreement, the decision to execute
this Agreement is not predicated on or influenced by any
express or implied declarations, representations or
warranties of any kind, whether written or oral, by any of
the other Parties.

(b)   <u>No Admissions</u>. This Agreement is a compromise of
disputed claims, and neither this Agreement nor any of its
contents, nor any other action undertaken pursuant to this
Agreement, is to be construed as an admission for any
purpose other than as necessary to enforce the terms of this
Agreement.

(c)   <u>Entire Agreement</u>. This Agreement together with the Relief
Stipulation contains the entire agreement of the Parties with
respect to the subject matter hereof and supersedes and
cancels any prior understandings and agreements of the
Parties with respect to such subject matter.

(d)   <u>Authority</u>. Each of the undersigned represents and warrants
that they are authorized to execute this Agreement on
behalf of their respective clients.

(e)   <u>Modification</u>. No change or modification of this Agreement
shall be valid unless it is made in writing and signed by all
of the Parties.

10

CHD-650265-2
16118-00002/2296765.2

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

(f)  <u>Joint Drafting</u>.  This Agreement was jointly-drafted and negotiated by the Parties with the benefit of advice from counsel, and the Parties agree that it will be so construed. As such, no Settling Party will claim that any ambiguity in this Agreement shall be construed against any other Settling Party by reason of the identity of the drafter.

(g)  <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall have the effect of a fully-executed Agreement when counterparts have been signed by each of the Parties.  Each counterpart may be delivered by facsimile transmission or e-mail, and a faxed or e-mailed signature shall have the same force and effect as an original signature.

(h)  <u>No Assignment</u>.  Each of the Parties warrants and represents that he or it has not assigned or transferred any released matter or any right to any consideration provided pursuant to this Agreement.  The Parties each agree to defend, indemnify and hold the others harmless from any and all claims based on or arising out of any such assignment or transfer made, purported or claimed.

(i)  <u>Applicable Law</u>.  The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of California.

(j)  <u>No Waiver of Breach</u>.  A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same term or condition, or any other term or condition.

(k)  <u>Binding Effect</u>.  This Agreement shall be binding on and shall inure to the benefit of each of the Parties and their respective agents, employees, attorneys, affiliates, successors and assigns.

(L)  <u>Cooperation</u>. Each of the Parties agrees to execute such documents and perform such acts as may be reasonably necessary to carry out the terms of this Agreement.

(M)  <u>Notices</u>.  All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when: (a) delivered by hand, with written confirmation of receipt, (b) sent by facsimile, with written confirmation of receipt,

11

Case 8:14-bk-13770-MW    Doc 348    Filed 11/24/14    Entered 11/24/14 15:28:12    Desc
Main Document    Page 40 of 73

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

(c) delivered by overnight or other express delivery mail, or
(e) by electronic transmission, in each case to the
appropriate addresses, representative (if applicable) and
facsimile numbers or email addresses set forth below, or to
such other addresses, representative, facsimile numbers and
email addresses as a Settling Party may designate by notice
to the other Parties in accordance with this paragraph:

12

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

If to the Debtor:

Mega RV, Corp.
c/o J. Michael Issa
GlassRatner Advisory & Capital Group LLC
19800 MacArthur Blvd.
Suite 820
Irvine, CA 92612
Telephone:     (949) 407-6620
Fax:           (949) 863-9274
Email: missa@glassratner.com


With a copy to:

Robert P. Goe, Esq.
GOE & FORSYTHE, LLP
18101 Von Karman
Suite 510
Irvine, CA 92612
Phone:  (949) 798-2460
Direct:  (949) 798-2461
Cell:    (949) 283-1501
Fax:     (949) 955-9437
rgoe@goeforlaw.com


Joel S. Miliband
Partner and General Counsel
Brown Rudnick LLP
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
Telephone:  (949) 752-7100
Facsimile (9490 252-1514
jmiliband@brownrudnick.com


If to the Committee:

Brian L. Davidoff
Courtney Pozmantier
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067
Telephone:     (310) 553-3610
Facsimile:     (310) 553-0687
Email:  bdavidoff@greenbergglusker.com

13

In Re Mega RV, Corp.<br>Case No. 8:14-bk-13770-MW

cpozmantier@greenbergglusker.com

If to any of the McMahon Release Parties:

Brent McMahon
7545 Irvine Center Dr. Ste 200
Irvine, CA. 92618
Email: brent@megarv.com

With a copy to:

Adam Obeid, Esq.
Smaili & Associates, P.C.
600 W. Santa Ana Blvd., Suite 202
Santa Ana, California 92701
Telephone:  (714) 547-4700
Facsimile: (714) 547 -4710
aobeid.law@gmail.com


If to CDF:

Robert A. Chiocchio
General Electric Capital Corporation
10 Riverview Drive
Danbury, CT 06810
Telephone:  (20) 749-6398
Facsimile:  (203) 663-8562
robert.chiocchio@ge.com


With a copy to:

Jennifer Ziegenhorn, Esq.
Office Managing Partner
HUSCH BLACKWELL LLP
1661 International Drive, Suite 300
Memphis, TN 38120-1431
Direct:  (901) 529-3005
Fax:  (901) 523-7472
Jennifer.Ziegenhorn@huschblackwell.com


12.    Continuing Bankruptcy Court Jurisdiction.  The Parties agree that the Bankruptcy
Court shall have exclusive jurisdiction over any disputes regarding the validity,
interpretation or performance of this Agreement, and each of the Parties consents
to personal jurisdiction and venue in the Bankruptcy Court in connection with any
such disputes.

14

15

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

GE Commercial Distribution Finance Corporation

By: _____

Name: _Robert Chiocchio_

Its Authorized Signatory

16

Case 8:14-bk-13770-MW   Doc 348   Filed 11/24/14   Entered 11/24/14 15:28:12   Desc
Main Document      Page 45 of 73

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

Brent McMahon

By: _____

LAW OFFICES OF ADAM OBEID

By: _____
Adam Obeid, Attorney for Brent McMahon

MIC Investments Company, LLC

By: _____
Name: _____
      Its Authorized Signatory

McMahon's Rentals, LLC

By: _____
Name: _____
      Its Authorized Signatory

Kinsale, LLC

By: _____
Name: _____
      Its Authorized Signatory

Nevada Street, LLC

By: _____
Name: _____
      Its Authorized Signatory

17

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: _____
BRIAN DAVIDOFF
Attorneys for the Official Committee of
Unsecured Creditors

18

CHD-650265-2
16118-00002/2296765.2

EXHIBIT "1"                              PAGE 46

EXHIBIT 3
143

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

MEGA RV

By:_____
BRENT MCMAHON, President


GOE & FORSYTHE, LLP

By:_____
ROB GOE
Attorneys for Mega RV Corporation


BROWN RUDNICK LLP

By:_____
JOEL S. MILIBAND
Attorneys for Mega RV Corporation

19

EXHIBIT "1"                                    PAGE 47


EXHIBIT 3
144

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

MEGA RV

By:_____
BRENT MCMAHON, President

GOE & FORSYTHE, LLP

By:_____
ROB GOE
Attorneys for Mega RV Corporation

BROWN RUDNICK LLP

By: _____
JOEL S. MILIBAND
Attorneys for Mega RV Corporation

19

CHD-650265-2
16118-00002/2296765.2

EXHIBIT "1"                                                     PAGE 48

EXHIBIT 3
145

# EXHIBIT A

**BANK OF THE WEST**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WINNEBAGO INDUSTRIES | VISTA 35F | 52T3TL38 3C000288 | C04413 | Ballard | 137,050.40 | 77,041.00 | 24,948.00 | 37,000.00 | 69,865.31 | (32,865.31) | 17,697.31 | 4,493.00 | 11,690.00 | 583.00 | 211.25 | 7,897.31 | Trade Pay off with US Bank |
| ECLIPSE RECREATION | 35T LOBO86 | 1F65F5DY70 6A11984 | | Bassford | 94,560.25 | 67,954.00 | 9,000.00 | 45,000.00 | 47,500.00 | (2,500.00) | 6,500.00 | 895.00 | 6,995.00 | 561.00 | 200.25 | 6,918.00 | Trade Pay off with Bank of the West |
| THOR MOTOR COACH | XD342SD700 | 1F66F5DY80A07700 | WV58 | Taniguchi | 149,712.25 | 108,084.00 | 15,000.00 | | | | 15,000.00 | 8,895.00 | 13,993.00 | 904.00 | 200.25 | 10,722.00 | No Pay off |
| FOREST RIVER, INC | SUNSEEKER | 5LZ8W2821R042451 | S7295 | Casa | 46,806.32 | 31,031.00 | | 6,000.00 | 16,055.17 | (10,055.17) | (10,055.17) | 8,000.00 | 1,619.00 | 2,600.00 | 210.25 | 3,851.90 | Trade Pay off with Bank of America |
| FOREST RIVER, INC | ROCKWOOD UT | 5146F5e99e406029 | MRJ51 | Coffman | 204,957.25 | 207,770.00 | 72,000.00 | 40,000.00 | 38,000.00 | (2,000.00) | 74,000.00 | 7,840.00 | 18,990.00 | 250.00 | 132.25 | | Out of State Delivery, Trade Pay off with Bank of America |
| MONACO RV, LLC | 40 DFT | 4UZAAXFEXCCV0831 | | Crawford | 190,430.65 | 135,620.00 | | | | | | | | | | | |
| WINNEBAGO INDUSTRIES | SIGHTSEER 33C | 5DF6D30338127B123 | HRT239 | Cyran | 24,997.69 | 20,149.00 | 3,000.00 | | | | 3,000.00 | | | 164.00 | 210.25 | 2,287.44 | No Pay off |
| HEARTLAND RECREATION | 2650BH WEDGE | 4X4TRLJ92E3318517 | FRT2358 | Gray | 17,516.25 | 18,776.00 | 3,000.00 | 10,000.00 | | 10,000.00 | 11,000.00 | 695.00 | 2,895.00 | 159.00 | 210.25 | 1,966.00 | No Pay off |
| WINNEBAGO INDUSTRIES | MINNIE WD58 | 108J56J1G5013135 | V056 | Hinojos | 63,404.55 | 50,606.00 | 5,795.00 | | | | 5,795.00 | 995.00 | 2,500.00 | 383.00 | 210.25 | 3,316.30 | No Pay off |
| FOREST RIVER, INC | ENCOUNTER | 1F66F5DY80A07213 | C04565 | Lucio/Dmw Carraige | 112,778.65 | 95,426.00 | 25,000.00 | | | | 25,000.00 | 1,000.00 | 11,537.00 | 755.00 | 200.25 | 9,286.40 | No Pay off |
| FOREST RIVER, INC | TRILOGY | 1F66F5DY80A06068 | IWS051 | Rahmi | 48,727.64 | 100,886.00 | 23,500.00 | 4,000.00 | | 4,000.00 | 27,500.00 | 4,900.00 | 12,176.00 | 663.00 | 211.25 | 10,618.00 | No Pay off |
| FOREST RIVER, INC | CROSS COUNTR | 1F0HE3F370D807338 | PW985 | Rosenwald | 47,668.60 | 85,000.00 | 30,000.00 | 30,000.00 | | 30,000.00 | 60,000.00 | | 13,490.00 | 636.00 | 210.25 | 8,826.75 | No Pay off |
| USED | PLEASURE WAY | 1F65F5DY60A04001 | THM096 | Sundon | 82,578.05 | 97,802.00 | 64,183.00 | | | | 64,183.00 | 8,890.00 | 13,490.00 | 818.00 | 211.25 | 10,556.80 | No Pay off |
| FOREST RIVER, INC | MIRADA | WD1PF4CC9C5866477 | T6623FA | Okojie | 99,994.00 | 73,250.00 | 30,000.00 | 17,000.00 | 10,650.00 | 6,350.00 | 9,940.00 | 1,650.00 | 8,429.00 | 596.00 | 230.00 | 596.00 | Trade Pay off with Kinetka FCU |
| PLEASURE-WAY INDUSTRIES | 13 PURSUIT | 1F0XE4F5X1DA22843 | F4899 | Sorrell | 63,270.10 | 64,737.00 | 30,000.00 | | | | 30,000.00 | 995.00 | 4,995.00 | 526.00 | 208.50 | 6,489.00 | No Pay off |
| | | | | | 1,263,071.25 | | | | | | | | | | | | |

**US BANK**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLEASURE_WAY INDUSTRIES | 14 ASCENT | WD1PF1CC1E5826017 | PW903 | Arellano | 78,240.00 | 87,350.00 | 40,000.00 | | | | 40,000.00 | 3,195.00 | 9,195.00 | 653.00 | 209.25 | 7,636.95 | No Pay off |
| USED | 05 AVA SKY VA | 4UDAAHCP5GGN53197 | T680TVA | Robinson | 59,575.00 | 50,000.00 | 12,000.00 | | | 8,000.00 | 20,000.00 | 1,995.00 | 5,941.00 | 791.00 | 209.25 | 9,140.25 | Out of State Delivery |
| WINNEBAGO INDUSTRIES | 1350FTSEER | 1F65F5DY90A00802 | WV58 | Buzzetti | 87,871.50 | 113,496.00 | 50,000.00 | | | | 50,000.00 | 1,795.00 | | | 209.25 | | QUESTIONABLE DEAL |
| | | | | | 225,686.50 | | | | | | | | | | | | |

**BANK OF AMERICA**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WINNEBAGO INDUSTRIES | 14 FORZA | 4UZACXDT1CCRU5889 | W672 | Figel | 87,599.43 | 150,000.00 | 25,000.00 | 27,000.00 | 26,957.00 | (0.00) | 25,000.00 | 3,999.00 | 10,900.00 | 1,156.00 | 210.25 | 15,466.18 | No Pay off |
| USED | 08 FLEETWOOD 80 H2 | 4VZBF1D99D8001402 | T478MA | Mizard | 185,219.00 | 100,000.00 | 23,000.00 | 97,250.00 | 78,152.00 | 19,098.00 | 44,088.00 | 5,745.00 | 14,490.00 | | 132.00 | | Out of State Delivery |
| | | | | | 272,818.43 | | | | | | | | | | | | |

**MEDALLION BANK**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USED | 05 Carriage | 1KF62F4F951F01418 | | Stuther, Gene | 16,087.79 | 29,370.00 | 3,200.00 | | | | 3,200.00 | 995.00 | | 337.00 | 395.00 | 1,565.79 | Contract N/A - Must still be at Medallion |
| | | | | | 16,087.79 | | | | | | | | | | | | |

**ALLY**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FOREST RIVER | 14 WILDWOOD | 4X4TW0026D3623627 | FRT2357 | Keooles | 25,093.86 | 16,175.00 | 2,500.00 | | | | 2,500.00 | 2,290.00 | 4,173.00 | 148.00 | 196.75 | 1,825.27 | |
| | | | | | 25,093.86 | | | | | | | | | | | | |

**ALLIANT**

| Manufacturer | Model | VIN | Stock # | Customer Name | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FOREST RIVER | 14 WILDCAT | 4X4FW3E31E3340 | FRT2128 | Kara | 40,818.00 | 29,970.00 | 6,000.00 | | | | 6,000.00 | | 3,695.00 | 357.00 | 211.25 | 3,170.90 | |
| HEARTLAND | 14 ROADWARRIOR | 53FCG1B2351E23930 | HRT201 | Chapman | 51,541.13 | 45,336.00 | 1,000.00 | 10,000.00 | 35,000.00 | 7,000.00 | 11,000.00 | 995.00 | 2,995.00 | 356.00 | 209.25 | 4,374.88 | |
| USED | 10 BROADSTONE | 527R34Z8BAA301862 | T481458 | Gill | 38,684.00 | 28,860.00 | 2,000.00 | | | | 9,000.00 | 995.00 | 3,500.00 | 831.00 | 408.00 | | |
| | | | | | 131,108.13 | | | | | | | | | | | | |

Total
2,013,865.96

# EXHIBIT 4

**Mega RV Corporation**

**Inventory Schedule**

| STK # | TYPE | YEAR | MANUFACTURER | MODEL | NADA | Wholesale Bids | RETAIL | VIN | STATUS |
|---|---|---|---|---|---|---|---|---|---|
| T00003 L FW | 2005 | NEWMAR | KOUNTRY STAR | 22,600 | 10,000 | 32,998 | 1N8KS3320507028 | On Sale This Weekend |
| T0000 L FW | 2007 | NEWMAR | CYPRESS | 25,000 | 13,000 | 29,998 | 1NFRL332870221 | On Sale This Weekend |
| T0000 L FW | 2004 | ALPENLITE | SEVILLE | 25,950 | 12,000 | 27,995 | 1W53ATR274Y034 | On Sale This Weekend |
| T0000 L FW | 1995 | NUWA | HITCHHIKER | 5,150 | 500 | 10,998 | 1C932JM05SB020 | On Sale This Weekend |
| T0000 L FW | 2012 | CROSSROADS | CRUISER | 20,750 | 16,000 | 28,998 | 4V0FC3226CE008 | On Sale This Weekend |
| T0000 L FW | 2004 | NEWMAR | KOUNTRY STAR | 19,750 | 12,000 | 28,998 | 1N8BS362640702 | On Sale This Weekend |
| T0002 L FW | 2004 | KEYSTONE | MONTANA | 9,100 | 4,000 | 17,998 | 4YDF277254F702 | |
| T0002 L FW | 2006 | HOLIDAY RAMBLER | SAVOY | 11,500 | 5,000 | 19,998 | 1KB3B1K256E167 | |
| T0002 L FW | 2010 | NUWA | HITCHHIKER | 38,750 | 20,000 | 56,998 | 1NW33CR01AD07 | |
| T0003 L FW | 2006 | KEYSTONE | EVEREST | 15,100 | 9,000 | 19,998 | 4YDF293256H486 | Sold, Awaiting Delivery |
| T0003 L FW | 2005 | NUWA | HITCHHIKER | 21,750 | 11,000 | 31,998 | 1NW32KR0850075 | |
| T0004 L FW | 2009 | KEYSTONE | MONTANA | 29,450 | 21,000 | 42,998 | 4YDF34625947004 | |
| T0004 L FW | 2006 | KEYSTONE | EVEREST | 19,550 | 12,000 | 28,998 | 4YDF344226H486905 | |
| T0004 L FW | 2005 | NEWMAR | MOUTAIN AIRE | 34,450 | 22,000 | 49,998 | 1N8RL388750902512 | |
| M0000 L MA | 2009 | DAMON | DAYBREAK | 37,100 | 29,000 | 42,998 | 5B4LPE7G393435 | |
| M0000 L MA | 2004 | WINNEBAGO | ADVENTURER | 36,850 | 22,000 | 44,998 | 5B4MP67G343386 | Lots of Activity |
| M0002 L MA | 2006 | ITASCA | SUNOVA | 30,500 | 24,000 | 44,998 | 1F6MF53Y460A14 | |
| M0000 L MAD | 2009 | FOREST RIVER | BERKSHIRE | 80,350 | 60,000 | 99,998 | 4UZAB2DT28CAB | Appointment on 06/06 |
| M0002 L MC | 2014 | FOREST RIVER | SUNSEEKER | 55,400 | 52,000 | 69,998 | 1FDXE4FS2DDA40 | Sold, Awaiting Delivery |
| M0003 L MC | 2006 | FLEETWOOD | TIOGA | 35,100 | 24,000 | 45,998 | 1FDXE45S16HA19 | |
| T0001 L TT | 2011 | DUTCHMEN | FOURWINDS BREEZE | 7,500 | 4,500 | 12,998 | 47CTF3M24BT206 | |
| T0001 L TT | 2013 | COACHMEN | FREEDOM | 23,750 | 20,000 | 26,998 | 5ZT2FEVB3DA008 | |
| T0001 L TT | 2014 | COACHMEN | CLIPPER | 7,650 | 5,500 | 12,998 | 5ZT2CWDC2E510 | On Sale This Weekend |
| T0001 L TT | 2014 | OUTDOORS RV | TIMBER RIDGE | 22,300 | 17,000 | 32,998 | 51W123425E1007 | |
| T0001 L TT | 2013 | FOREST RIVER | SURVEYOR | 17,350 | 13,000 | 25,998 | 4X4TSVF25D2471 | |
| T0002 L TT | 2008 | FOREST RIVER | SIERRA | 15,500 | 9,000 | 22,998 | 4X4TSEE248T122 | |
| T0003 L TT | 2012 | FOREST RIVER | CHEROKEE | 11,900 | 7,500 | 18,998 | 4X4TCSB29CX112 | |
| T0004 L TT | 2012 | KEYSTONE | SPRINGDALE | 9,650 | 8,000 | 17,998 | 4YDT19020CG101 | On Sale This Weekend |
| T0005 L TT | 2007 | KEYSTONE | SPRINGDALE | 6,550 | 3,000 | 9,998 | 4YDT260297G104 | On Sale This Weekend |
| | | | | **Totals** | **696,300** | **466,000** | **959,939** | | |

EXHIBIT 4
149

# EXHIBIT 5

**Mega RV Corporation**

**Summary of Income & Expenses during Administrative Period through May 29, 2015**

| | |
|---|---:|
| Cash - Beginning of Period | 17,675 |
| | |
| Sources | |
| Inventory Sales | 465,746 |
| CIT Collections | 179,337 |
| Settlements | 2,498,650 |
| **Total Sources** | **3,143,732** |
| | |
| Uses | |
| Contract Labor | 74,500 |
| Insurance | 35,000 |
| Rent Expense | 75,000 |
| Delivery Services | 293 |
| Professional Fees | 1,105,925 |
| Administrative Rent | 355,360 |
| Claim Settlement | 3,500 |
| Bank Services Charges | 65 |
| US Trustee Fees | 6,825 |
| **Total Uses** | **1,656,468** |
| | |
| **Net Cash Flow** | **1,487,264** |
| | |
| **Cash - End of Period** | **1,504,939** |

EXHIBIT 5
151

# EXHIBIT 6

[TO BE FILED]

EXHIBIT 6
153

# EXHIBIT 7

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

EXHIBIT 7

**CAUSES OF ACTION AND RESERVATION OF RIGHTS**

1.      The Debtor reserves all rights and remedies, and the Liquidation Trust may initiate or continue litigation, pursue claims, and prosecute causes of action, including but not limited to those described below.  The following is a non-exclusive list of potential or actual Causes of Action (including Avoidance Actions) that will be vested in the Liquidation Trust under the Plan. As specifically provided in section 6.1 of the Plan, the Liquidation Trustee shall hold and retain all rights and privileges on behalf of the Liquidation Trust, the Debtor, and the Estate, to commence, pursue, and settle, as appropriate, any and all Causes of Action, including Avoidance Actions.  The Debtor and the Committee reserve their right to modify this list to amend such Causes of Action or otherwise update this list, but disclaim any obligation to do so.

2.      The Debtor reserves any and all claims and causes of action as a result of the failure of Dennis Dillon and Dennis Dillon RV and Marine Center to close the sale referenced in Section V.B.6. of the Disclosure Statement, including but not limited to breach of contract, breach of good faith and fair dealing, fraud, interference with economic advantage, and interference with contractual relations.  The Liquidation Trust may pursue and prosecute these and other claims and causes of action.

3.      The Debtor reserves any and all claims and causes of action against Old Ranch for Old Ranch's role in involvement in connection with the Debtor's attempted sale of assets to Dennis Dillon RV and Marine Center, as well as for Old Ranch's failure to perform under the lease agreement with the Debtor for the Westminster premises, including but not limited to the failure to deliver the premises as required under the lease and any modifications thereto, failure to deliver improvements to the premises leased, and failure to perform other obligations under the lease.  These claims and causes of action include but are not limited to breach of contract, interference with contractual relations, fraud, interference with economic advantage, and unjust

EXHIBIT 7
155

enrichment.  The Liquidation Trust may pursue and prosecute these and other claims and causes of action.

4.      The Debtor reserves any and all rights, claims, and causes of action against any and all customers who have RVs in their possession and have failed to perform with regard to their contracts, including but not limited to the right to repossess RVs, claims for deficiencies, and causes of action for breach of contract.  The Liquidation Trust may enforce these and other rights and may pursue and prosecute these and other claims and causes of action.

5.      The Debtor reserves all claims and causes of action against Stag Parkway and NTP Distribution for parts and other inventory that the Debtor transferred to either or both of them.

6.      The Debtor reserves all claims against parties who were paid funds by the Debtor or to whom Assets of the Debtor were transferred, within the preference period.

7.      The Debtor reserves all claims against MCC Corporation fka Monaco Coach Corp, based on or arising out of that certain proof of claim for $977,470.00 filed in the case of *In re MCC Corporation f/k/a Monaco Coach Corporation, et al.,* Case No. 09-10750 (KJC), U.S. Bankruptcy Court District of Delaware.

8.      The Debtor reserves all claims against Arizona RV Specialists, LLC in that certain state court action entitled *Arizona RV Specialists, LLC v. Mega RV Corp.*, Case No. CV2012-007863, Superior Court of State of Arizona, County of Maricopa.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

EXHIBIT 7
156

9.      The Debtor reserves any and all rights against various manufacturers and other parties for failure to provide and/or warranties to the Debtor and customers of the Debtor.  Such parties include but are not limited to:

| | |
|---|---|
| Schedule 16 (2232) ~ Heartland | $11,416.19 |
| Schedule 17 (2212) ~ Forest River | $74,238.95 |
| Schedule 18 (2203) ~ Coachmen | $16,173.80 |
| Schedule 21 (2200) ~ Atwood | $356.59 |
| Schedule 22 (2201) ~ Carefree | $110.00 |
| Schedule 25 (2206) ~ Dometic | $1,821.50 |
| Schedule 29 (2223) ~ Monaco | $8,749.33 |
| Schedule 30 (2209) ~ Eclipse | $8,487.65 |
| Schedule 32 (2213) ~ THOR/Fourwinds | $40,771.76 |
| Schedule 38 (2219) ~ Keystone | $2,736.12 |
| Schedule 43 (2222) ~ Lippert | $1,217.67 |
| Schedule 44 (2224) ~ Norcold/Thetford | $103.20 |
| Schedule 45 (2225) ~ Pacific Coachworks | $22,214.75 |
| Schedule 46 (2226) ~ Pleasure-Way | $2,531.05 |
| Schedule 49 (2228) ~ Suburban | $225.75 |
| Schedule 52 (2230) ~ Winnebago | 22458.99 |
| | |
| Total | $213,613.30 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 7
157

# EXHIBIT 8

Liquidation Analysis

**Mega RV Corporation**
Liquidation Analysis as of May 31, 2015

| | Book Value | Recovery (%) | | Recovery ($) | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **Assets** | | | | | |
| Cash on Hand | 1,378,831 | | | 1,378,831 | 1,378,831 |
| Inventory | 959,939 | 48.5% | 72.5% | 466,000 | 696,300 |
| Contracts-in-Transit (CIT) | 1,375,371 | 50.0% | 60.0% | 687,686 | 825,223 |
| Equipment | 15,000 | 100.0% | 100.0% | 15,000 | 15,000 |
| Contingent CDF Payment | 250,000 | 100.0% | 100.0% | 250,000 | 250,000 |
| Proceeds from Roadtrek Litigation [1] | 5,400,000 | 40.0% | 60.0% | 2,160,000 | 3,240,000 |
| Recovery from Preference Actions | 1,000,000 | 20.0% | 100.0% | 200,000 | 1,000,000 |
| **Total Assets at Liquidation Value** | **10,379,141** | | | **5,157,516** | **7,405,353** |
| | | | | | |
| **Less:** | | | | | |
| Current Chapter 11 Professional Fees | (426,346) | | | (426,346) | (426,346) |
| Additional Chapter 11 Professional Fees through Effective Date | (300,000) | | | (300,000) | (300,000) |
| Plan Administrative Expenses | (600,000) | | | (600,000) | (600,000) |
| Administrative Rent [2] | (636,000) | | | (636,000) | (636,000) |
| **Less:** | | | | | |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | | | (337,219) | (337,219) |
| **Less:** | | | | | |
| Priority Tax Claims | (2,014,208) | | | (2,014,208) | (2,014,208) |
| | | | | | |
| **Proceeds Available for Non-Priority Unsecured Claims** | | | | **843,743** | **3,091,581** |
| | | | | | |
| **Less:** | | | | | |
| Unsecured Creditors (excluding subordinated claims) | (19,395,237) | | | (843,743) | (3,091,581) |
| | | | | | |
| **Proceeds Available for Subordinated Claims** | | | | **-** | **-** |
| | | | | | |
| **Less:** | | | | | |
| Class 5 - Subordinated Claims | (8,892,952) | | | - | - |
| | | | | | |
| **Net Proceeds Available** | | | | **-** | **-** |
| | | | | | |
| **Claims and Class Recovery** | | | | | |
| Administrative Claims | | | | 100% | 100% |
| Priority Tax Claims | | | | 100% | 100% |
| Unsecured Creditors (excluding subordinated claims) | | | | 4% | 16% |
| Subordinated Claims | | | | 0% | 0% |

[1]    Estimated recovery net of litigation counsel's contingency fee.
[2]    Administrative Rent estimated based on reserve amounts of $571,000 and $65,000 for Westminster and Colton landlords respectively.

EXHIBIT 8
159

# EXHIBIT 9

**Mega RV Corporation**

Chapter 11 Plan Flow of Funds (3-Year) - Best Case Recovery

| PLAN FUND SOURCES | Effective Date 9/15/2015 | FISCAL YEARS ENDED | | | TOTAL |
|---|---|---|---|---|---|
| | | 9/15/2016 | 9/15/2017 | 9/15/2018 | |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 2,075,131 | | 0 | 0 | 2,075,131 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 494,626 | 330,597 | 0 | 0 | 825,223 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | 0 | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 3,240,000 | 0 | 3,240,000 |
| Recovery from Preference Actions | 0 | 1,000,000 | 0 | 0 | 1,000,000 |
| **GROSS PLAN FUNDS** | **2,584,757** | **1,580,597** | **3,240,000** | **0** | **7,405,353** |
| | | | | | |
| **Beginning Balance** | **0** | **885,192** | **1,472,633** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,584,757 | 1,580,597 | 3,240,000 | 0 | 7,405,353 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (726,346) | 0 | 0 | 0 | (726,346) |
| Admin Claims - Rent | (636,000) | 0 | 0 | 0 | (636,000) |
| Plan Administrative Expenses | 0 | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (2,876,324) | 0 | (2,876,324) |
| ### | 0 | 0 | 0 | 0 | 0 |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **885,192** | **1,472,633** | **843,155** | **(0)** | **(0)** |

[1]    Estimated higher recovery scenario.

EXHIBIT 9
161

# EXHIBIT 10

**Mega RV Corporation**

**Chapter 11 Plan Flow of Funds (3-Year) - Worst Case Recovery**

| PLAN FUND SOURCES | Effective Date 9/15/2015 | FISCAL YEARS ENDED | | | TOTAL |
|---|---|---|---|---|---|
| | | 9/15/2016 | 9/15/2017 | 9/15/2018 | |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 1,844,831 | | 0 | 0 | 1,844,831 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 412,188 | 275,497 | 0 | 0 | 687,686 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 2,160,000 | 0 | 2,160,000 |
| Recovery from Preference Actions | 0 | 200,000 | 0 | 0 | 200,000 |
| **GROSS PLAN FUNDS** | **2,272,019** | **725,497** | **2,160,000** | **0** | **5,157,516** |

| | | | | | |
|---|---|---|---|---|---|
| **Beginning Balance** | **0** | **572,454** | **304,796** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,272,019 | 725,497 | 2,160,000 | 0 | 5,157,516 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (726,346) | 0 | 0 | 0 | (726,346) |
| Admin Claims - Rent | (636,000) | | | | (636,000) |
| Plan Administrative Expenses | | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (628,486) | 0 | (628,486) |
| ### | 0 | 0 | 0 | 0 | 0 |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **572,454** | **304,796** | **843,155** | **(0)** | **(0)** |

[1]    Estimated lower recovery scenario.

EXHIBIT 10
163