BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Counsel For Official Committee of Unsecured
Creditors

ROBERT P. GOE - State Bar No. 137019
Donald W. Reid – State Bar No. 281743
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612
rgoe@goeforlaw.com
elarocque@goeforlaw.com

General Bankruptcy Attorneys for
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 8:14-bk-13770-MW |
| Mega RV Corp., dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, | Chapter 11 |
| | **JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR DATED JUNE 19, 2015** |
| Debtor and Debtor in Possession. | |

16118-00002/2327825.10

# TABLE OF CONTENTS

**Page(s)**

I. PLAN OBJECTIVES AND OVERVIEW ................................................................. 1

    Section 1.1.    General Objectives. ........................................................... 1

    Section 1.2.    Disclosure Statement. ........................................................ 1

II. DEFINITIONS AND RULES OF INTERPRETATION............................................ 1

    Section 2.1.    Definitions............................................................................ 1

    Section 2.2.    Rules of Interpretation. ..................................................... 12

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......... 14

    A.    Classification of Claims.................................................... 14

    Section 3.1.    Classification Generally.................................................... 14

    Section 3.2.    Classes of Claims and Interests........................................ 14

    B.    Unclassified Claims. ......................................................... 15

    Section 3.3.    Administrative Claims and Priority Tax Claims................ 15

    Section 3.4.    Administrative Claims. ...................................................... 15

    Section 3.5.    Administrative Claim Bar Date .......................................... 16

    Section 3.6.    Administrative Claim Objection Deadline.......................... 16

    Section 3.7.    U.S. Trustee Fees ............................................................. 17

    Section 3.8.    Professional Fee Claims.................................................... 17

    Section 3.9.    Priority Tax Claims............................................................ 18

    C.    Classified Claims. ............................................................. 18

    Section 3.10.    Classes of Secured Claims ............................................... 19

    Section 3.11.    Priority Non-Tax Claims..................................................... 27

    Section 3.12.    CUSTOMER Claims and Warranty Claims ....................... 29

    Section 3.13.    General Unsecured Claims. ............................................... 31

    Section 3.14.    Subordinated Claims......................................................... 31

    Section 3.15.    Interests.............................................................................. 32

IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................... 32

Section 4.1.    Rejection. ....................................................................................32

Section 4.2.    Rejection Claims. ...........................................................................32

V. PLAN IMPLEMENTATION .........................................................................................33

A.    General Implementation Provisions .............................................33

Section 5.1.    Conditions to Plan Effectiveness ..................................................33

Section 5.2.    Actions on the Effective Date. .....................................................33

Section 5.3.    Corporate Action ...........................................................................34

Section 5.4.    Vesting and Transfer of Assets ....................................................34

Section 5.5.    Provisions Relating to Federal Income Tax Compliance ............34

B.    Liquidation Trust. ........................................................................35

Section 5.6.    Authorization of Liquidation Trustee ...........................................35

Section 5.7.    Representative of the Estate ..........................................................36

Section 5.8.    Funding of Post Effective Date Trust Expenses ..........................36

Section 5.9.    Operating Reserve .........................................................................36

Section 5.10.    Abandonment ................................................................................37

Section 5.11.    37

Section 5.12 Termination of Liquidation Trust ...................................................37

C.    Provisions Governing Distributions ............................................38

Section 5.13.    Estimation. In order to establish reserves under this Plan and avoid
undue delay in the administration of ...........................................38

Section 5.14.    Distributions on Account of Allowed Claims. Except as otherwise
provided herein, a Final Order, ...................................................38

Section 5.15    Distributions on Account of Disputed Claims and Estimated
Claims.  Except as otherwise ......................................................38

Section 5.16.    No Distributions Pending Allowance. ..........................................38

Section 5.17.    Disputed and Estimated Claims Reserve.  On and after the Effective
Date, the Liquidation Trust ..........................................................38

Section 5.18.    Reduced or Disallowed Secured Claims .......................................39

Section 5.19.    Reserve Amounts for Disputed and Estimated Claims .................39

Section 5.20.  Settling Disputed Claims.  The Liquidation Trust shall be
authorized to settle, or withdraw any ...................................... 39

Section 5.21.  Cash Distributions .......................................................... 39

Section 5.22.  Setoff and Recoupment .................................................... 39

Section 5.23.  No De Minimis Distributions ............................................ 40

Section 5.24.  Fractional Cents ............................................................... 40

Section 5.25.  Undeliverable or Unclaimed Distributions ......................... 40

Section 5.26.  Undeliverable Distributions Reserve. ................................ 41

Section 5.27.  Negotiation of Checks ...................................................... 41

Section 5.28.  Record Date ..................................................................... 42

Section 5.29.  Postpetition Interest ......................................................... 42

Section 5.30.  Sequence of Payments ..................................................... 42

Section 5.31.  Withholding and Reporting Requirements ......................... 42

Section 5.32.  Claims Transfer ................................................................ 43

Section 5.33.  Maximum Amount of Distributions .................................... 44

Section 5.34.  Final Distributions On Liquidation Trust Interests. ............. 44

VI. LITIGATION AND CLAIMS OBJECTIONS .......................................... 44

Section 6.1.   Preservation of Causes of Action ...................................... 44

Section 6.2.   Objections to and Resolution of Disputed Claims ............... 46

VII. OTHER PLAN PROVISIONS .............................................................. 47

Section 7.1.   Recourse for Claims .......................................................... 47

Section 7.2.   Exculpation and Release of Debtor, Committee, and Professionals .......... 47

Section 7.3.   Injunction Enjoining Holders of Claims .............................. 48

Section 7.4.   Injunctions or Stays .......................................................... 49

Section 7.5.   Exemption from Stamp, Transfer, and Other Taxes; Exemption
from Securities Laws ...................................................... 49

Section 7.6.   No Admissions .................................................................. 49

Section 7.7.   Severability of Plan Provisions .......................................... 50

Section 7.8.   Governing Law ................................................................. 50

Section 7.9.    Successors and Assigns..................................................................................50

Section 7.10.    Nonconsensual Confirmation.......................................................................50

Section 7.11.    Revocation of the Plan.................................................................................51

Section 7.12.    Amendment.................................................................................................51

Section 7.13.    Saturday, Sunday, or Legal Holiday...........................................................51

Section 7.14.    Post-Effective Date Status Reports............................................................51

Section 7.15.    Post-Effective Date Notice........................................................................51

Section 7.16.    Maintenance and Disposition of Trust Records.........................................51

Section 7.17.    Retention of Jurisdiction...........................................................................52

Section 7.18.    Entry of a Final Decree.............................................................................54

VIII. RECOMMENDATIONS...............................................................................................54

Section 8.1.    Recommendations of the Committee and the Debtor.................................54

# I.

## PLAN OBJECTIVES AND OVERVIEW

**Section 1.1.    General Objectives.**The objectives of the Plan[1] are to complete the liquidation of any remaining Assets of the Debtor, and to transfer all Assets of the Debtor and the Estate, including the Causes of Action, to the Liquidation Trust, which shall liquidate the Causes of Action and all other Trust Assets, and distribute the proceeds thereof to Holders of Allowed Claims that will receive Liquidation Trust Interests in respect of their Allowed Claims.  The Plan divides Creditors and Interest Holders of the Debtor into Classes based on their legal rights and interests and provides for the satisfaction of Claims against the Debtor from the Assets transferred to the Liquidation Trust.  The Interest Holders of the Debtor will not receive or retain any property or value on account of their Interests.

**Section 1.2.    Disclosure Statement.**A detailed overview of the Case is set forth in the Disclosure Statement, and parties should review the Disclosure Statement carefully for an understanding of both the Case and the Plan.

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.1.    Definitions**.  The following terms (which appear in the Plan as capitalized terms), when used in the Plan, have the meanings set forth below:

"**Administrative Claim**" means a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Professional Fee Claims, and (d) all fees payable under 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" means unless another date is set by the Court, the date that is thirty (30) days after the Effective Date, or, if such date is not a Business Day, the next

---

[1]Capitalized terms have the meanings set forth in section 2.1.

Business Day thereafter; provided, however, that the Administrative Claim Bar Date for Professional Fee Claims is the date set forth in Section 3.8.

"**Administrative Claim Objection Deadline**" means the deadline set forth in Section 3.6.

"**Allowed" or "Allowed _____ Claim**" means

(a)      with respect to a Claim arising prior to the Petition Date

(i)      Either:  (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(ii)      Either:  (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

(b)      with respect to a Claim arising on or after the Petition Date, a Claim allowed pursuant to Sections 3.5 and 3.6 of the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Case is not an Allowed Claim.

"**Assets**" means all assets of the Estate, including property of the Estate under section 541 of the Bankruptcy Code, and all rights and privileges of the Debtor and the Estate, including attorney-client and similar privileges.

"**Available Cash**" means: all Cash of the Liquidation Trust, including Cash realized from the sale or other disposition of Trust Assets, recoveries from Causes of Action, proceeds from the CDF Agreement, or from any other source, and the interest earned on its funds, including on any reserves; less the amount of Cash estimated and reserved by the Liquidation Trust to pay all unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, Priority Non-Tax Claims, Customer and Warranty Claims, and Allowed Secured Claims (except those Secured Claims as to which the Collateral Election is made); and any other costs to carry out the provisions of the Plan and the Liquidation Trust Agreement on and after the Effective Date.

"**Avoidance Action**" means a Cause of Action, adversary proceeding, lawsuit, or other proceeding arising under or relating to Bankruptcy Code sections 502(d), 506, 510, 542, 543,

544, 545, 547, 548, 549, 550, 551, 552, or 553, or any fraudulent conveyance, fraudulent transfer, or preference laws, or any Cause of Action arising under or relating to any similar state law or federal law that constitutes, or the recoveries from which constitute, property of the Estate under Bankruptcy Code section 541, whether or not an adversary proceeding, lawsuit, or other proceeding is initiated before or after the Effective Date.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as applicable in the Case.

"**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure, as applicable in the Case.

"**Bankruptcy Schedules**" means the Schedule of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case.

"**Beneficiaries**" means, with respect to the Liquidation Trust and in accordance with Treasury Regulation section 301.7701-4(d), the beneficiaries of such Liquidation Trust that are in the Holders of Liquidation Trust Interests that will receive Distributions from the Liquidation Trust in accordance with the Plan, Confirmation Order, and Liquidation Trust Agreement.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Case**" means the chapter 11 case of the Debtor.

"**Cash**" means cash or cash equivalents including bank deposits, checks, or other similar items.

"**Causes of Action** " means any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, the right to object to Claims; all Claims pursuant to Section 362 of the Bankruptcy Code; all Avoidance Actions, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or

1  undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on

2  or after the Petition Date, including rights, actions, causes of action, and suits of the Debtor or the

3  Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, in

4  contract or in tort, at law or in equity, or under any other theory of law.

5  **"CDF"** means GE Commercial Distribution Finance Corporation.

6  **"CDF Agreement"** means that certain agreement entered into dated as of November

7  24, 2014 between the Debtor, the Committee, CDF and others, and approved by the Court pursuant

8  to order entered on December 22, 2014 [Docket No.395], pursuant to which parties thereto agreed to

9  resolve, settle and compromise all disputes between and among them without admission of liability,

10  and as a result of which CDF agreed to release from its collateral the amounts obtained from the

11  liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the

12  Agreement), (b) the Contracts In Transit (as defined in the Agreement), (c) FF&E (as defined in the

13  Agreement) and (ii) in accordance with, and subject to the limitations contained in the Agreement, a

14  total of $2,750,000 including the Holdback Amount (as defined in the Agreement) paid to Debtor by

15  CDF, but not to exceed $4,700,000.

16  **"CDF Liens"** means those certain UCC-1 financing statements filed with the

17  Secretary of State of the State of California April 26, 2006 file no**.** 06-7067960869 and UCC

18  continuation statement filed on December 8, 2010 file number 06-7067960869.

19  "**Claim**" means a claim as defined in Bankruptcy Code section 101(5) against the

20  Debtor.

21  "**Claims Bar Date**" means November 14, 2014 which is the date(s) fixed for filing

22  proofs of claim against the Estate pursuant to the Court's Order entered on September 4, 2014, or any

23  other applicable Court Order.

24  "**Claims Objection Deadline**" means the deadline for the Liquidation Trustee to file

25  objections to Claims other than Administrative Claims as set forth in Section 6.2.

26  "**Collateral**" means any property or interest in property of the Estate subject to a Lien

27  that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the

28  Bankruptcy Code or applicable federal, state, or international law.

"**Collateral Election**" means the election of the Liquidation Trustee with respect to Allowed Secured Claims under section 3.10, Class 1(j), or Allowed Customer Claims under section 312.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Case by the U.S. Trustee.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing Date**" means the first date on which the Court holds the hearing to consider the confirmation of the Plan pursuant to Bankruptcy Code section 1128(a).

"**Confirmation Order**" means the Order of the Court confirming the Plan under Bankruptcy Code section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California, or any other court that exercises jurisdiction over the Case.

"**Creditor**" means the Holder of a Claim against the Debtor.

"**Customer**" means a person who either (1) purchased or leased, or became obligated to purchase or lease, a motor vehicle to be used primarily for personal, family, or household purposes from the Debtor, or (2) consigned for sale a motor vehicle that was used primarily for personal, family, or household purposes to the Debtor.

"**Customer Claims**" means: an unsatisfied claim for economic loss from a Customer, as a result of the failure of the Debtor to do any of the following: (i) Remit license or registration fees received or contractually obligated to be paid from a Customer to the Department of Motor Vehicles; (ii) Pay to the legal owner of a vehicle that was transferred as a trade-in by a Customer to the Debtor the amount necessary to discharge the prior credit balance owed to the legal owner; (iii) Pay to the lessor of a vehicle, transferred as a trade-in by a Customer to the Debtor, the amount the dealer or lessor-retailer agreed to pay to the lessor, if the vehicle was registered in accordance with Veh. Code § 4453.5; (iv) Pay the amount specified in a consignment agreement to a Customer after the sale of a consigned vehicle; or (v) Provide a Customer who purchased a vehicle from the Debtor with good title to the vehicle, free from any security interest or other lien,

encumbrance, or claim, unless otherwise clearly and conspicuously provided for by the written sale agreement.

"**Debtor**" means Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, debtor and debtor in possession in the Case.

"**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant to Bankruptcy Code section 1125.

"**Disclosure Statement Order**" means the Order entered by the Court approving the Disclosure Statement, which may be combined with the Confirmation Order.

"**Disputed Claim**" means any Claim: (a) as to which a proof of claim has been filed and the dollar amount of such Claim is not specified in a fixed liquidated amount; (b) as to which a proof of claim has been timely filed and the dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules as not being disputed, contingent, or unliquidated, or is listed in the Bankruptcy Schedules with a different priority than reflected in the proof of claim; (c) as to which a proof of claim has not been timely filed and such Claim is not included in the Bankruptcy Schedules or is listed in the Bankruptcy Schedules as contingent, disputed, or unliquidated; (d) as to which a proof of claim was required to be filed and was not timely filed; (e) as to which an objection has been filed and such objection has neither been overruled nor been denied by a Final Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to which an objection: (i) has been timely filed (or the deadline for objection to such Administrative Claim has not expired) and (ii) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

"**Disputed and Estimated Claim Reserve**" shall have the meaning set forth in Section 5.17.

"**Distribution**" means any transfer under the Plan or Liquidation Trust Agreement of Cash or other property to Holders of Liquidation Trust Interests.

"**Effective Date**" means the date the Plan becomes effective, as set forth in Section 5.1.

"**Estate**" means the estate created in the Case under Bankruptcy Code section 541.

"**Estimated Claim**" shall have the meaning set forth in Section 5.13 hereof.

"**Final Order**" means an Order of the Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any rights to appeal, petition for certiorari, or seek reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor and the Committee (on or prior to the Effective Date) or the Liquidation Trustee (after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing has been sought or filed, such Order of the Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or certiorari, reargument, and rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired as a result of which such Order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such Order shall not cause such Order not to be a Final Order.

"**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Customer Claim or a Warranty Claim, or a Subordinated Claim.

"**Governmental Authority**" means any international, federal, state, or local government or other political subdivision, department or agency thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory, or administrative governmental powers or functions.

"**Holder**" means the holder of a Claim against or Interest in the Debtor or the holder of a Liquidation Trust Interest.

1        "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or

2  Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

3        "**Interest**" means the interest of any Person who holds an equity security in the

4  Debtor no matter how held.

5        "**Lien**" means any mortgage, pledge, lien, encumbrance, charge, security interest, or

6  other charge against or interest in property to secure payment of a debt or performance of an

7  obligation.

8        "**Liquidation Trust**" means the Mega Liquidation Trust.  The Liquidation Trust is to

9  be organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify

10  as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), except to

11  the extent that it is a "disputed ownership fund" within the meaning of Treasury Regulation section

12  1.468B-9.

13        "**Liquidation Trust Agreement**" means that certain Liquidation Trust Agreement

14  and Declaration of Trust by and between the Debtor and the Liquidation Trustee, to be entered into

15  pursuant to the Plan and the Confirmation Order, substantially in the form appended as an exhibit to

16  the Disclosure Statement.

17        "**Liquidation Trustee**" means the trustee of the Liquidation Trust, who has the

18  powers and responsibilities set forth in the Plan, Confirmation Order, and Liquidation Trust

19  Agreement, or any successor trustee appointed pursuant to the Liquidation Trust Agreement.

20        "**Liquidation Trust Interest**" means a non-certificated beneficial interest in the Trust

21  Assets entitling the Holder of an Allowed Claim to Distributions from the Liquidation Trust as

22  provided in the Plan, Confirmation Order, and Liquidation Trust Agreement, which Liquidation

23  Trust Interest shall not be transferable.  Except as provided by an Order of the Court, a Holder's

24  Liquidation Trust Interest shall be equal to the amount of such Holder's Allowed Claim.

25        "**Liquidation Trust Net Proceeds**" means, as determined by the Liquidation Trustee

26  after: (a) all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured

27  Claims (except those Secured Claims and Customer and Warranty Claims as to which the Collateral

28

Election is made) have been finally resolved such that no Disputed Administrative Claims, Disputed Priority Claims, Disputed Customer and Warranty Claims, Disputed Secured Claims, or other Disputed Claims remain ; and (b) no material assets of the Liquidation Trust remain to be recovered or liquidated to Cash, any and all Available Cash remaining after: (y) payment in full of all Post Effective Date Trust Expenses; and (z) the maintenance of the Operating Reserve sufficient for all projected Post Effective Date Trust Expenses until the later of the closing of the Case under Bankruptcy Code section 350 or the termination of such Liquidation Trust.

"**Operating Reserve**" means the Cash Reserve to be established by the Liquidation Trustee for the payment of all actual and projected Post Effective Date Trust Expenses.

"**Order**" means any writ, judgment, decree, injunction, or order of any Governmental Authority (whether preliminary or final).

"**Ordinary Course Administrative Claim**" means a Claim for an administrative cost or expense that is allowable under Bankruptcy Code section 503(b) that is incurred in the ordinary course of the Debtor's operations or the Case, or for which payment is authorized by a Final Order of the Court.

"**Penalty Claim**" means a Claim that would be subject to Bankruptcy Code 726(a)(4) if the Case had been filed under chapter 7 of the Bankruptcy Code.

"**Person**" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a Governmental Authority.

"**Petition Date**" means June 15, 2014, the date on which the Debtor filed its voluntary petition commencing the Case.

"**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules thereto.

"**Post Effective Date Trust Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date related to the implementation of the Plan or the Liquidation Trust Agreement, including:  (a) the

expenses of the Liquidation Trustee in administering and implementing the Plan, including any

Taxes incurred by the Liquidation Trust or on the Trust Assets and accrued on or after the Effective

Date; (b) all U.S. Trustee Fees which are due on or after the Effective Date; (c) the expenses of the

Liquidation Trustee and the Liquidation Trust in making the Distributions as required by the Plan or

the Liquidation Trust Agreement, including paying Taxes, filing Tax returns, and paying

professionals' fees with respect to such Distributions; (d) the expenses incurred by the Liquidation

Trust and the Liquidation Trustee relating to the Liquidation Trust; (e) the expenses of independent

contractors and professionals (including, without limitation, attorneys, advisors, accountants,

brokers, consultants, experts, professionals, and other Persons) providing services to the Liquidation

Trustee or the Liquidation Trust relating to the Liquidation Trust; and (f) the expenses related to the

Liquidation Trust's indemnity obligations, the purchase of errors and omissions insurance, and/or

other forms of indemnification.

"**Postpetition**" means the time after the Petition Date.

"**Priority Claims**" means Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or

Priority Tax Claim, entitled to priority under Bankruptcy Code section 507(a).

"**Priority Tax Claim**" means a Claim entitled to priority under Bankruptcy Code

section 502(i) or 507(a)(8).

"**Professional Fee Claim**" means:  (a) a claim under Bankruptcy Code section 327,

328, 330, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or

expenses incurred prior to the Effective Date; or (b) a claim under Bankruptcy Code section

503(b)(4) for compensation for professional services rendered or under Bankruptcy Code section

503(b)(3)(D) for expenses incurred prior to the Effective Date in making a substantial contribution in

the Case.

"**Professionals**" means those Persons: (a) retained pursuant to an Order of the Court

in accordance with section 327, 1103, or 1106 of the Bankruptcy Code and to be compensated for

services rendered prior to the Effective Date pursuant to section 327, 328, 329, 330, or 331 of the

1    Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court

2    pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

3         "**Pro Rata Share**" means, for the purpose of Distributions on account of Liquidation

4    Trust Interests issued on account of Allowed Class 4, a proportionate share such that the ratio of

5    (a) the amount of consideration to be distributed on account of all such Liquidation Trust Interests to

6    such Class to (b) the amount of all such Liquidation Trust Interests in such Class; provided,

7    however, that for purposes of determining Interim Dividends, if any, the amounts of Disputed

8    Customer and Warranty Claims and Disputed General Unsecured Claims, if any, shall be included in

9    the calculation of (b) above.

10        "**Recovery Corporation**" means the Consumer Motor Vehicle Recovery Corporation

11   established pursuant to Section 12200 et. seq. of the California Vehicle Code.

12        "**Recovery Claim**" means a Claim submitted by a Customer to the Recovery

13   Corporation on account of a Customer Claim or a Warranty Claim.

14        "**Rejection Claims Bar Date**" shall have the meaning set forth in Article IV hereof.

15        "**Secured Claim**" means a Claim that is secured by a valid and unavoidable Lien

16   against property in which the Estate has an interest or that is subject to setoff under Bankruptcy

17   Code section 553.  A Claim is a Secured Claim only to the extent of the value of the Holder's interest

18   in the Collateral securing the Claim or to the extent of the amount subject to setoff, whichever is

19   applicable, and as determined under Bankruptcy Code section 506(a).

20        "**Secured Tax Claim**" means a Claim of a Governmental Authority that is secured by

21   a valid and unavoidable Lien against property in which the Estate has an interest or that is subject to

22   setoff under Bankruptcy Code section 553.  A Claim is a Secured Tax Claim only to the extent of the

23   value of the Holder's interest in the Collateral securing the Claim or to the extent of the amount

24   subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

25        "**Subordinated Claim**" means any Claim:  (a) that is a Penalty Claim; (b) that is

26   subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510; or that is

27   subordinated to General Unsecured Claims pursuant to the Plan or a Final Order of the Court.

28

1    "**Tax**" or "**Taxes**" means any federal, state, local, or foreign income, gross receipts,

2    license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits,

3    environmental (including taxes under Internal Revenue Code section 59A), customs duties, capital

4    stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real

5    property, personal property, sales, use, transfer, registration, value added, alternative or add-on

6    minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition

7    thereto, whether disputed or not and including any obligations to indemnify or otherwise assume or

8    succeed to the tax liability of any other Person.

9    "**Trust Assets**" means any and all Cash, the proceeds of the CDF Agreement

10    property, and all other Assets, including Causes of Action of the Liquidation Trust.

11    "**Unclassified Claim**" means any Claim which is not assigned to a Class under the

12    Plan.

13    "**Undeliverable Distributions Reserve**" means the Cash Reserve to be established by

14    the Liquidation Trustee for the purpose of holding undeliverable Distributions as provided in

15    Section 5.26.

16    "**U.S. Trustee**" means the Office of the United States Trustee for the Central District

17    of California.

18    "**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the

19    U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

20    "**Voting Deadline**" means the applicable deadline set by Court Order for timely

21    submitting a Ballot in connection with confirmation of the Plan.

22    "**Warranty Claim**" means the Claim of a Customer of the Debtor relating to a pre-

23    petition contract with the Debtor for a vehicle warranty, or for other parts or services that were

24    obligated to be provided for by the Debtor in connection with the delivery of a vehicle; provided that

25    the Debtor was obligated to provide such warranty or other obligation  in writing, and provided

26    further such warranty or other obligation  has been paid for by or on behalf of such Customer.

27    **Section 2.2.    Rules of Interpretation.**

28    a.    The rules of construction in Bankruptcy Code section 102 apply to the Plan.

b.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when determining any time period under the Plan.

c.      A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

d.      The definition given to any term or provision in the Plan supersedes and controls over any different meaning that may be given to that term or provision in the Disclosure Statement.  In the event of any conflict or inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  In the event of any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  In the event of any conflict or inconsistency between the Plan and the Liquidation Trust Agreement, the Plan shall control.  For the sake of clarity, the hierarchy of controlling documents in the event of a conflict shall be: (i) the Confirmation Order; (ii) the Plan; (iii) the Liquidation Trust Agreement; and (iv) the Disclosure Statement.

e.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

f.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or substantially on those terms.  Any reference to an existing document means the document as it has been, or may be, amended, modified, or supplemented.

g.      Unless otherwise indicated, the phrase "to the extent provided in the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

h.      Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Plan.

i.      Captions and headings in the Plan are used only as convenient references and do not affect the meaning of the Plan.

//

//

//

# III.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS

**A.**    **Classification of Claims**

**Section 3.1.**    **Classification Generally.**  The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  **NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

**Section 3.2.**    **Classes of Claims and Interests**.Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|---|---|---|---|
| Classes 1(a) – 1(j) | Secured Claims | Impaired | Yes |
| Class 2(a) – 2(b) | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | Customer Claims and Warranty Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 5 | Subordinated Claims | Impaired – Deemed to Reject | No |
| Class 6 | Interests | Impaired – Deemed to Reject | No |

**B.      Unclassified Claims.**

Section 3.3.    **Administrative Claims and Priority Tax Claims.**  Administrative Claims and Priority Tax Claims are not placed into Classes that are entitled to vote to accept or reject the Plan; instead, such Claims are unclassified.  Such Claims are not considered Impaired and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9.  Holders of Allowed Administrative Claims and Allowed Priority Tax Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

Section 3.4.    **Administrative Claims.**  Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Liquidation Trust in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in Cash in full after the Effective Date from the Liquidation Trust in accordance with the terms and conditions of the particular transactions, any applicable agreements, or as otherwise authorized by the Court.

| Administrative Claimant | Estimated Amount at Effective Date |
|---|---|

**A. Professional Fee Claimants[2]**

| | |
|---|---|
| Brown Rudnick LLP | $29,000 |
| GlassRatner Advisory & Capital Group LLC | $100,000 |
| Goe & Forsythe, LLP | $101,000 |
| Greenberg Glusker Fields Claman & Machtinger LLP | $197,000 |
| **Total Professional Fees** | $427,000 |

**B. Ordinary Course Claimants[3]:**

| | |
|---|---|
| Altman Colton Properties, Inc. | $65,000 |
| Old Ranch Properties, LLC | $571,000 |
| **Total Ordinary Course Claims** | $636,000 |

Section 3.5.    **Administrative Claim Bar Date.**  All requests for payment of an Administrative Claim, except for U.S. Trustee Fees, shall be filed with the Court no later than the Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered prior to the Effective Date.  Within five (5) business days after the Effective Date, the Liquidation Trustee shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the Administrative Claim Objection Deadline on all creditors and parties in interest.

Section 3.6.    **Administrative Claim Objection Deadline.**  All objections to the allowance of Administrative Claims, except for Professional Fee Claim subject to Section 3.8, must be filed by parties in interest no later than one hundred twenty (120) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set

---

[2]This amount is through May 31, 2015.

[3]The amount for Altman Colton is set pursuant to Court Order.  The amount for Old Ranch Properties is the maximum administrative recovery for Old Ranch Properties and is subject to challenge by the Debtor and the Committee.

forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the Holder of an Administrative Claim files a motion with the Bankruptcy Court to have such Administrative Claim become an Allowed Administrative.  The Administrative Claim Objection Deadline may be extended for a one-time ninety (90) day period by the Liquidation Trustee by filing a notice of the extended Administrative Claim Objection Deadline with the Court, and giving notice of such extension to all Creditors and parties in interest.  Thereafter, the Administrative Claim Objection Deadline may be further extended only by an Order of the Court.  If no objection to such Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

Section 3.7.    **U.S. Trustee Fees.**  U.S. Trustee Fees shall be paid prior to the Effective Date by the Debtor, and after the Effective Date by the Liquidation Trust, in each case, when due in accordance with applicable law.  The Debtor shall continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, the Liquidation Trustee shall file such reports until the Case is closed under Bankruptcy Code section 350.

Section 3.8.    **Professional Fee Claims.**  Each Holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date shall file such Holder's interim (if applicable) and final applications for the allowance of compensation for services rendered and the reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such other date as may be fixed by the Court.  All objections to the allowance of Professional Fee Claims through the Effective Date shall be filed in accordance with applicable Bankruptcy Rules, or such other date as may be fixed by Order of the Court.  To the extent granted by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such Claims, by Cash from the Liquidation Trust in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

**Section 3.9.    Priority Tax Claims.**  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof, as follows:

i.    For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the Liquidation Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

ii.    For all other Allowed Priority Tax Claims, equal annual payments over three years with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable (the "First Payment Date"), and each later payment on the anniversary of the First Payment Date. Interest shall accrue on Allowed Priority Tax Claims to the Internal Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from the Effective Date. Interest shall accrue on all other Allowed Priority Tax Claims on the amount outstanding from time to time at the rate at 6% per annum from the Effective Date.

| Name | Description | Amount |
|---|---|---|
| Internal Revenue Service | Unassessed payroll taxes based no returns having been filed. | $1,410,419[4] |
| State of Arizona-Dept. of Revenue | Transaction Privelege Tax | $77,997 |
| Franchise Tax Board | Minimum Franchise Fee | $822 |
| County of Orange | Personal property taxes | $2,667 |
| County of San Bernadino | Personal property taxes | $1,162 |
| California Employment Development Dept. | State payroll taxes | $371,672 |
| California State Board of Equalization | Sales and use tax and California Tire fee | $972,509 |

**C.    Classified Claims.**

The treatment of Classified Claims and Interests is as set forth below.

---

[4]This is an amount assessed by the Internal Revenue Service.  The Debtor believes that the more accurate liability to the Internal Revenue Service is $588,000.

**Section 3.10.   Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing claims that purport to be secured by liens on property of the estate and their treatment under the Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1(a) | Creditor Name: GE Commercial Distribution Finance Corporation <br> Basis for Security Interest <br> UCC-1 filed on 4/26/06 file no. 06-7067960869; UCC continuation statement filed on 12/8/10 file number 06-7067960869 <br> Collateral <br> All personal property of debtor, whether such property or debtor's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and whether located, including, without limitation, all accounts, inventory, equipment, fixtures other goods, general intangibles (including, without limitation, payment intangibles), chattel paper (whether tangible or electronic), instruments (including without limitation, promissory notes), deposit accounts, investment property and documents, and all products and proceeds of the foregoing.  Without limiting the foregoing, the collateral includes debtor's right to all price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and any other amounts due debtor at any time from a person from whom the debtor has purchased inventory or other personal property. In addition, the collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and | Y- however pursuant to the CDF Agreement, CDF has agreed to their treatment and will vote in favor of the Plan. | The Secured Claim of CDF is treated as follows: <br><br> (i)  The terms of the CDF Agreement are incorporated herein and CDF shall be treated pursuant thereto unless modified herein. <br><br> (ii) CDF has pursuant to the CDF Agreement released from its collateral to the Estate the "**Collateral Proceeds:**" (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the CDF Agreement), (b) the Contracts In Transit (as defined in the CDF Agreement), (c) FF&E (as defined in the CDF Agreement) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 of the CDF Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the CDF Agreement) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined in the CDF Agreement) to CDF (the "**Repurchase Amount**"). The amount of Collateral Proceeds shall be capped at $4,700,000. <br><br> (iii) The Holdback Amount (as defined in the CDF Agreement) shall remain in the Escrow Account |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | other devices in which records are stored. <u>Value of Collateral at Petition Date</u> $25,031,926<br><br><u>Claim Amount at Petition Date</u>: $31,547,399.05 | | until 180 days after the Effective Date and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7 of the CDF Agreement.<br><br>(iv) The CDF Lien, to the extent it remains effective after the CDF Agreement, shall be transferred to the Liquidating Trustee without any representation or warranty as the effectiveness thereof pursuant to that certain Loan and Lien Assignment Agreement to be executed on the Effective Date between the Liquidating Trustee and CDF, attached as Exhibit 4 to the Disclosure Statement. |
| 1(b) | <u>Creditor Name</u>: HWH Corporation <u>Basis for Security Interest</u>: Judgment Lien <u>Collateral</u>: All property subject to enforcement of a money judgment against the judgment debtor to which a judgment lien on personal property may attach under section 697 of the California Civil Code. <u>Claim Amount</u>: $166,000 <u>Value of Collateral</u>: $0 | Y | HWH Corporation is treated as a General Unsecured Creditor under the Plan, for the following reasons:<br><br>(i) The judgment Lien of HWH Corporation was recorded with the Secretary of State of the State of California on October 9, 2012. The judgment Lien of HWH Corporation is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the judgment Liens of HMH Corporation.<br><br>(iii) Substantially all of the Assets currently in the Estate were created |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | as a result of settlement of a commercial tort claim against CDF. The notice of judgment Lien filed by HWH Corporation does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) HWH Corporation does not have a security interest in after acquired property, and as such, the security interest of HWH Corporation does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.<br><br>(v) HWH Corporation, the sole creditor in Class 1(b), will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(c) | <u>Creditor Name</u>: American Express Bank, FSB ("American Express") <u>Collateral</u>: All assets of the Debtor, whether now owned or hereafter acquired or arising <u>Basis for security interest</u>: UCC Financing Statement <u>Claim Amount</u>: $19,706.36 <u>Value of Collateral</u>: $0 | Y | American Express is treated as a General Unsecured Creditor Under the Plan, for the following reasons:<br><br>(i)  The Lien of American Express was recorded with the Secretary of State of the State of California on August 1, 2013.  The Lien of American Express is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Committee and are not subject to the Lien of American Express.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by American Express does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) American Express, the sole creditor in Class 1(c), will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(d) | <u>Creditor Name</u>: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Cade Phoenix, Ltd. ("Portfolio General")<br><u>Basis for Security Interest</u>: UCC-1 Financing Statement<br><u>Collateral</u>: (1) equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio mechanical repair claims receivables; and (3) dealership equity and guarantee.<br><u>Claim Amount</u>: $1,088,165.30<br><u>Value of Collateral</u>: $0 | Y | The Class 1(d) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien of Portfolio General.<br><br>(iii) Substantially all of the Assets currently in the Estate were created |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.<br><br>(v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(e) | Creditor Name: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Dakota Sioux Co., Ltd.<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: (1) Equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio Group mechanical repair claims receivables.<br>Claim Amount: $1,185,377.32.<br>Value of Collateral: $0 | Y | The Class 1(e) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Committee and are not subject to the Lien of Portfolio General.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.<br><br>(v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(f) | Creditor Name: Roadtrek Motor Homes ("Roadtrek")<br>Basis for Security Interest: UCC-1 Financing Statement; Dealer Security Agreement<br>Collateral: none- lien lapsed<br>Claim Amount: $454,964.43 purported secured Claim, $2,559,325.53 purported unsecured claim.<br>Collateral Value: $0 | Y | The Class 1(f) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Roadtrek was recorded with the Secretary of State of the State of California on April 24, 2009. The Lien of Roadtrek is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value. |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | (ii) The Lien of Roadtrek lapsed on April 24, 2014.<br><br>(iii) The Class 1(f) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(g) | Creditor Name: Reyna Capital Corporation ("Reyna")<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: any and all equipment and software acquired and/or leased from Reyna Capital Corporation, together with any and all (1) substitutions, replacements, upgrades or exchanges therefore, (2) replacement parts, additions, attachments and accessories incorporated therein or affixed thereto, or used in connection therewith, and (3) proceeds thereof including insurance proceeds (both cash and non-cash), all as more fully described on the UCC-1 Financing Statement filed by Reyna.<br>Collateral Value: $0;<br>Claim Amount: valued at $1- claim amount unknown by Debtor | Y | The Class 1(g) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i) Reyna Capital holds an unsecured claim against the estate because equipment and software securing Reyna Capital's Claim was abandoned by the Debtor to its prior landlord Old Ranch Properties.<br><br>(ii) The Class 1(g) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(h) | Creditor Name: Southern California Auto Auction<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: All motor vehicle inventory acquired by the Debtor from Southern California Auto Auction; UCC-1 Financing Statement included after-acquired property clause<br>Collateral Value: $0; Debtor is no longer in possession of any vehicles acquired from Southern | Y | The Class 1(h) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i) The Debtor no longer holds any Assets subject to the Lien of Southern California Auto Auction.<br><br>(ii) The Class 1(h) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | California Auto Auction<br>Claim Amount: $ | | |
| 1(i) | Creditor Name: Bank of America N.A. ("Bank of America")<br>Basis for Security Interest: Security Agreement dated December 12, 2014 granting to Bank of America a security interest in certain Deposits Accounts<br>Collateral Value: $78,621.45<br>Claim Amount: $1,142,056 | Y | (i) The Class 1(i) Claim is secured by a certificate of deposit No. 3192 in the amount of $75,000 (the "Certificate of Deposit").<br><br>(ii)  Any other funds of the Debtor held by the Class I(i) shall be released to the Liquidating Trustee on the Effective Date.<br><br>(iii) On the Effective Date the Class I(i) Creditor may offset it Claim by the Certificate of Deposit, and the balance of the Class 1(i) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(j) | Creditor Name:  All other Creditors who have an Allowed Secured Claim other than those identified in Classes 1(a) to 1(i).<br>Basis for Security Interest: Unknown to the Debtor at this time.<br><br>Amount of Claim: Unknown to the Debtor at this time | Y | The Class 1(j) Creditors are treated as General Unsecured Creditors under the Plan as follows:<br><br>Except to the extent that the Holder of an Allowed Claim in Class 1(j) agrees to less favorable treatment, each Allowed Class 1(j) Claims shall be satisfied, discharged, exchanged, and released by, at the option of the Liquidation Trustee: (i) payment to the Holder of the amount of the Allowed Class 1(j) Claims in Cash in full from the Liquidation Trust; (ii) payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Claims to the extent of the value of the Collateral securing such Allowed Claims; (iii) surrender to the Holder of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | and contractual rights to which the Holders is entitled with respect to such Allowed Claim.  In the event that an Allowed Claim in Class 1(j) is treated under clause (i) or (ii) above: (y) the Liens securing such Allowed Claim shall be deemed released and extinguished without further Order of the Court; and (z) Holders of Allowed Class 1(j) Claims shall be deemed to hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.  The Liquidation Trustee shall notify the Holder of an Allowed Class 1(j) Claim of the election made by the Liquidation Trustee under this section by the later of:  (x) the Effective Date; and (y) the fifteenth (15th) Business Day after such Claim becomes an Allowed Class 1(j) Claim, or, in either case, as soon thereafter as is practicable, and the Liquidation Trustee shall perform such election within thirty (30) days thereafter. |

**Section 3.11.  Priority Non-Tax Claims.**

Certain priority Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of Claims are entitled to priority treatment as follows: the Code requires that each Holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a class of unsecured priority Claim Holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims.

The following chart lists all classes containing Debtor's 507(a)(3), (4), (5), (6), and (7) priority unsecured claims and their treatment under this Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2(a) | Claims for wages, salaries, commissions, including vacation, severance and sick leave pay, earned by an individual within 180 days before the Petition Date, each not to exceed $12,475. | N | Except to the extent that a Holder of an Allowed Claim in Class 2(a) agrees to less favorable treatment, each Holder of an Allowed Class 2(a) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(a) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(a) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(a) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |
| 2(b) | Unsecured Claims for deposits by individuals arising from the deposit before the Petition Date of money in connection with the purchase, lease or rental of property from the Debtor, or the purchase of services from the Debtor including Customer Claims and Warranty Claims, each not to exceed $2,775. | N | (i)        Except to the extent set forth in sub-paragraph (ii) below, each Holder of an Allowed Class 2(b) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(b) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(b) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(b) Claims, and payments on such Claims pursuant to the provisions of |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.<br><br>(ii) No Customer shall be an Allowed Class 2(b) claimant if such Customer has of the Effective Date been paid a claim a Recovery Claim in excess of $2,775 by the Recovery Corporation. |

**Section 3.12.    CUSTOMER Claims and Warranty Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | Customer Claims and Warranty Claims | Y | Each Holder of an Allowed Customer Claim and/or a Warranty Claim shall, subject to sub-paragraphs (iii) and (iv) below, receive in full satisfaction, discharge, exchange, and release of each Allowed Customer Claim and/or a Warranty Claim:<br><br>(i) To the extent such Creditor is also the Holder of a Class 2(b) Claim, treatment as a Class 2(b) Claimant; and to the extent the Class 3 Claim exceeds the amount of $2,775 at the option of the Liquidation Trustee:<br><br>(ii) *(w)* payment of the Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed; *(x)* payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Class 3 Claim, if any, to the extent of the value of the Collateral securing such Class 3 Claim, if any; *(y)* surrender to the Allowed Class 3 Claim the Collateral securing such Allowed Class 3 Claim, if any; or *(z)* such other treatment as is agreed to |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | among the Holder of the Class 3 Claim and the Liquidating Trustee that does not use Assets that are payable to other Creditors.  Upon the Liquidation Trustee electing any such treatment, the Liens, if any, securing such Class 3 Claim shall be deemed released and extinguished without further Order of the Court; and Holders of Class 3 Claims and/or a Warranty Claim shall be deemed to  hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.<br><br>(iii) The Claim of a Class 3 Creditor shall be reduced by, and to the extent of, any Recovery Claim paid by the Recovery Corporation as of the Effective Date.<br><br>(iv)  As a condition precedent to the Allowance of any Claim by the Holder of a Class 3 Claim, such Holder shall return to the Debtor any Assets of the Debtor that are held by the Class 3 Claim Holder.<br><br>(v) To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in this Class 3. |

**Section 3.13.  General Unsecured Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Claims that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, , Customer Claims or Warranty Claims, or Subordinated Claims,. | Y | Each Holder of an Allowed Class 4 Claims shall receive in full and complete satisfaction, discharge, exchange, and release of its Allowed Class 4 Claim, from the Liquidation Trust, a Pro Rata Share of the Liquidation Trust Net Proceeds, based upon the amount of such Liquidation Trust Interest to the extent provided in the Plan.  Holders of Allowed Class 4 Claims shall be deemed to hold Liquidation Trust Interests to the extent set forth above, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |

**Section 3.14.  Subordinated Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 5 | The Claims of Brent McMahon, MIC Investments Company, LLC., McMahon's Rentals, LLC., Kinsale, LLC., and Nevada Street, LLC. | N; Deemed to Reject | The Holders of Class 5 Claims including but not limited to proof of claim number 111, whether such Claims are liquidated or non-liquidated, contingent or non-contingent, disputed or non-disputed, whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in right and time of payment, to the prior payment in full of all senior Classes. |

**Section 3.15.  Interests.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6 | Brent McMahon is the sole interest holder of the Debtor. | N; Deemed to Reject | Class 6 Interests shall be deemed cancelled on the Effective Date and Holders of Class 6 Interests shall receive no Distributions or any property under the Plan on account of such Interests |

## IV.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 4.1.    Rejection.**  Effective upon the Effective Date and except as set forth in Class 3, the Debtor hereby rejects all contracts and leases subject to Bankruptcy Code section 365(a) in the Case which have not previously been rejected, except the Debtor does not reject those contracts and leases which have been or will be assumed, or assumed and assigned, with the approval of the Court by separate proceeding in the Case, which approval has been or will be set forth in an Order entered prior to the Effective Date. To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in Class 3.

**Section 4.2.    Rejection Claims.**  All Allowed Claims arising from the rejection of contracts or leases, whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims or, if applicable, Subordinated Claims.

a.    If the rejection of a contract or lease by the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trustee, the Liquidation Trust, or their property, unless a proof of claim is filed with the Court and served on the Liquidation Trustee within thirty (30) days after the Effective Date.

b.　　The Rejection Claim Bar Date for contracts and leases rejected by Order entered prior to the Claims Bar Date shall be the later of : (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) the Claims Bar Date.

c.　　The Rejection Claim Bar Date for contracts and leases rejected by Order entered after the Claims Bar Date shall be the earlier of:  (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) thirty (30) days after the Effective Date.

## V.

## PLAN IMPLEMENTATION

**A.**　　**General Implementation Provisions**

**Section 5.1.**　　**Conditions to Plan Effectiveness.**  The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day on which the following conditions have been satisfied or waived:

(a)　　the Confirmation Order, in form and substance acceptable to the Committee and the Debtor, has been entered and is not stayed;

(b)　　at least fourteen (14) days have passed since entry of the Confirmation Date;

(c)　　the Liquidation Trust Agreement has been executed by the parties thereto;

**Section 5.2.**　　**Actions on the Effective Date.**  To the extent not previously completed, on the Effective Date, the following shall occur in implementation of the Plan:

(a)　　all actions, documents, and agreements necessary to implement the Plan shall be effected or executed;

(b)　　the Liquidation Trust Agreement shall become effective; and

(c)　　the Committee shall terminate and disband and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from their service as Committee members.

**Section 5.3.    Corporate Action.**  Upon the Effective Date, all transactions and applicable matters provided for under the Plan shall be deemed to be authorized and approved by the Debtor without any requirement of further action by the Debtor, its shareholders, or its directors.

**Section 5.4.    Vesting and Transfer of Assets.**  On the Effective Date, all Assets of the Debtor and the Estate, will be transferred to and vested in the Liquidation Trust.  To the extent required to implement the transfer of the Assets from the Debtor and the Estate to the Liquidation Trust as provided for herein, all Persons including Governmental Authorities shall cooperate with the Debtor, the Estate, and the Liquidation Trustee to assist in the implementation of such transfers. On the Effective Date, and as provided in the Plan and sections 1123, 1141, and 1146(a) of the Bankruptcy Code, the Debtor and its Estate are authorized, and required, as provided in the Plan to transfer, grant, assign, convey, set over, and deliver to the Liquidation Trustee, for the benefit of the Liquidation Trust, all of the Debtor's and the Estate's right, title, and interest in and to the Assets to be transferred free and clear of all Liens, Claims, encumbrances, or interests of any kind in such property, except as otherwise expressly provided for in the Plan.  As of the Effective Date, the Trust Assets of the Liquidation Trust shall be free and clear of all Liens, Claims, and interests of Holders of Claims and Interests , pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.

**Section 5.5.    Provisions Relating to Federal Income Tax Compliance.**  Except to the extent that the Liquidation Trust or a portion thereof is treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9, transfers to the Liquidation Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as transfers to Creditors to the extent Creditors are Beneficiaries.  For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012, and 1274.  Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the Beneficiary-Creditors followed by a deemed transfer by the Beneficiary-Creditors to the Liquidation Trust.  The Beneficiaries shall be treated for federal income Tax purposes as the grantors and deemed owners of the Liquidation Trust.  Any valuation of the Trust Assets shall be made by the Liquidation Trustee in reliance on the professionals engaged by the Liquidation Trust, and shall be used consistently by all parties

1    (including the Debtor, the Liquidation Trustee, and the Beneficiaries) for all federal and applicable

2    state and local income Tax purposes and all other applicable reporting purposes.

3        The Liquidation Trustee may, in the Liquidation Trustee's sole discretion, determine the best

4    way to report for Tax purposes with respect to the Liquidation Trust and any Reserve, including: (a)

5    filing a Tax election to treat the Liquidation Trust or any Reserve as a "disputed ownership fund"

6    within the meaning of Treasury Income Tax Regulation section 1.468B-9 for federal income Tax

7    purposes rather than to tax such Reserve as a part of the Liquidation Trust; or (b) electing to report

8    as a separate trust or sub-trust or other entity.  If an election is made to report the Liquidation Trust

9    or any Reserve as a "disputed ownership fund," the Liquidation Trust shall comply with all federal

10   and state tax reporting and Tax compliance requirements of the "disputed ownership fund,"

11   including the filing of a separate federal Tax return for the "disputed ownership fund" and the

12   payment of federal and/or state income Tax due.

13   **B.    Liquidation Trust.**

14        **Section 5.6.    Authorization of Liquidation Trustee.**  To the full extent permitted by law,

15   all rights under Section 363(h) of the Bankruptcy Code are preserved for the benefit of the

16   Liquidating Trust and may be exercised by the Liquidating Trustee.  To the fullest extent

17   permitted by law, all rights under Section 365 including Section 365(f) of the Bankruptcy Code

18   are preserved and may be exercised by the Liquidating Trustee, including prosecution and

19   amendment of any motions to assume or reject executory contracts and leases that are pending on

20   the Effective Date.  To the fullest extent permitted by law, and subject to the express provisions of

21   this Plan, on the Effective Date, the Debtor and its Estate shall be deemed to irrevocably transfer

22   to the Liquidating Trust, as its legal successor, all rights of the Debtor and its Estate to exercise or

23   waive any attorney-client privilege, accountant-client privilege, work-product privilege or other

24   privilege or immunity attaching to any documents or communications (whether written or oral),

25   and the Liquidating Trust is authorized to take any and all necessary actions to effectuate the

26   transfer of such privileges and available defenses.

27        On the Effective Date, the Debtor, the Estate, and the Liquidation Trustee shall be authorized

28   to, and shall, take all such actions as required to transfer the Assets from the Debtor and the Estate to

1   the Liquidation Trust to the extent provided in the Plan.  From and after the Effective Date, the

2   Liquidation Trustee shall be authorized to, and shall take all such actions as required to implement

3   the Liquidation Trust Agreement and the provisions of the Plan, including administering the Causes

4   of Action.

5        **Section 5.7.**    **Representative of the Estate.**  The Liquidation Trustee shall be, and hereby

6   is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B)

7   of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the

8   Liquidation Trust Agreement) to: (a) administer, hold, and liquidate the Trust Assets; (b) administer,

9   investigate, prosecute, settle, and abandon all Causes of Action in the name of, and for the benefit of,

10   the Estate, subject to the limitations set forth in the Plan; and (c) make Distributions provided for in

11   the Plan, including on account of Allowed Claims and Liquidation Trust Interests.   As the

12   representative of the Estate, the Liquidation Trustee shall have all of the rights, powers, and

13   privileges of the Debtor and the Estate, including those with respect to all Causes of Action. The

14   Liquidation Trustee shall be substituted and shall replace the Debtor, the Estate, and the Committee,

15   as applicable, as the party in interest in all litigation pending as of the Effective Date.  In addition,

16   the Liquidation Trustee shall have the rights of the Debtor and the Committee for the purposes of

17   Bankruptcy Code section 1127(b).  As of the Effective Date, subject to the Liquidation Trust

18   Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall be authorized to

19   exercise and perform the rights, powers, and duties held by the Debtor or the Estate with respect to

20   the Causes of Action, including, without limitation, the authority under Bankruptcy Code section

21   1123(b)(3) to provide for the settlement, adjustment, retention, and enforcement of claims and

22   interests of the Estate, without the consent or approval of any third party, and without any further

23   Order of the Court, except as otherwise provided in the Plan or Confirmation Order.

24        **Section 5.8.**    **Funding of Post Effective Date Trust Expenses.**  All Post Effective Date

25   Trust Expenses shall be expenses of the Liquidation Trust, and the Liquidation Trustee shall disburse

26   funds from the Liquidation Trust for the purpose of paying such expenses.

27        **Section 5.9.**    **Operating Reserve.**  Payments of all Post Effective Date Operating Expenses

28   shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the

Operating Reserve shall be established by the Liquidation Trustee and funded by Cash to pay for all projected Post Effective Date Operating Expenses.  The Liquidation Trustee shall continue to fund the Operating Reserve as needed from Trust Assets.  Any Cash remaining in the Operating Reserve that the Liquidation Trustee believes is not necessary to fund Post Effective Date Operating Expenses of the Liquidation Trust shall be released from the Operating Reserve and used as Trust Assets in accordance with the Plan.

**Section 5.10.  Abandonment**.  If, in the Liquidation Trustee's reasonable judgment, any Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidation Trustee believes in good faith that such property has inconsequential value to the Liquidation Trust or determines it to be too impractical to distribute such property to the Beneficiaries, the Liquidation Trustee may cause the Liquidation Trust to abandon or otherwise dispose of such property, including by donation of such property to a charity.

**Section 5.11.  Dissolution of Debtor.** The Debtor may be, but is not required to be, dissolved by the Liquidating Trustee.  The Liquidating Trustee shall have full authority to take any action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Bankruptcy Court.  To the extent necessary, any limited liability company agreement or operating agreement or other controlling organization or formation document or agreement for the Debtor shall be deemed amended to authorize the Liquidating Trustee to take such actions.

**Section 5.12 Termination of Liquidation Trust.** The Liquidation Trust will terminate as soon as practicable, but in no event later than the fifth (5th) anniversary of the Effective Date; provided, however, that, the Court, upon motion by the Liquidation Trustee, may, in accordance with the Liquidation Trust Agreement, one or more times extend the term of the Liquidation Trust for a finite period if such extension(s) are warranted by the facts and based upon a finding that such extension(s) are necessary to prosecute the Causes of Actions or to liquidate and distribute all of the Trust Assets.

1    **C.      Provisions Governing Distributions.**

2        **Section 5.13.   Estimation.** In order to establish reserves under this Plan and avoid undue

3    delay in the administration of this Chapter 11 Case, the Liquidation Trust shall have the right to seek

4    an order of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code estimating the

5    amount of any Claim.  All estimations hereunder shall be on notice to the Holder of such Claim, and

6    such estimated amount: (a) shall be used in calculating reserves for such Claim; and (b) shall set the

7    maximum allowed amount of such Claim for purposes of Distributions on account thereof.

8        **Section 5.14**.  **Distributions on Account of Allowed Claims**. Except as otherwise provided

9    herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed

10   Claims shall be made by the Liquidation Trust at such periodic intervals as the Liquidation Trust

11   determines to be reasonably prudent.

12       **Section 5.15    Distributions on Account of Disputed Claims and Estimated Claims**.

13   Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions

14   on account of Disputed Claims and Estimated Claims that become Allowed Claims shall be made by

15   the Liquidation Trust at such periodic intervals as the Liquidation Trust determines to be reasonably

16   prudent.

17       **Section 5.16**.  **No Distributions Pending Allowance**.  Notwithstanding any other Plan

18   provision: (a) Distributions to Holders of Claims will be made, and Liquidation Trust Interests will

19   be issued, only after, and only to the extent that, such Holders hold Allowed Claims; and (b) unless

20   otherwise agreed by the Liquidation Trustee, if any portion of a Claim is a Disputed Claim, the

21   entire Claim shall be treated as a Disputed Claim and no Distribution or issuance of Liquidation

22   Trust Interests to the Holder of such Claim shall be made on account of such Claim unless and until

23   no portion of the Claim is a Disputed Claim.

24       **Section 5.17**.  **Disputed and Estimated Claims Reserve**.  On and after the Effective Date,

25   the Liquidation Trust shall maintain in reserve such Cash as it estimates to be necessary to satisfy the

26   distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against

27   the Liquidation Trust becomes an Allowed Claim.

28

**Section 5.18.  Reduced or Disallowed Secured Claims**.  To the extent that a Disputed Claim for which Cash has been deposited into the Disputed Reserve is not allowed or becomes an Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the excess of the amount that was retained on account of such Claim over the amount actually distributed on account of such Claim, shall be released from the Disputed Reserve and used as Trust Assets in accordance with the Plan.

**Section 5.19.  Reserve Amounts for Disputed and Estimated Claims**.  For purposes of establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the stated liquidated "face amount" of such Claim, unless such Claim is estimated by Order of the Court. If such Disputed Claim does not set forth a stated liquidated "face amount", then the amount of such Claim shall be estimated by order of the Court.

**Section 5.20**.  **Settling Disputed Claims**.  The Liquidation Trust shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date.

**Section 5.21.  Cash Distributions.**  The sources of all Distributions and payments under the Plan are and will be Cash, except as provided in the Plan with respect to the Collateral Election for certain Allowed Secured Claims and Allowed Customer Claims.  Cash Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer from a domestic bank.

**Section 5.22.  Setoff and Recoupment**.  Notwithstanding anything to the contrary in the Plan, the Liquidation Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim or Liquidation Trust Interest any claims that the Debtor, the Estate, or the Liquidation Trustee may have against the Holder of the Allowed Claim or Liquidation Trust Interest.  The Debtor, the Estate, the Liquidation Trust, and the Liquidation Trustee will not waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim or Liquidation Trust Interest.

1      **Section 5.23.  No De Minimis Distributions**.  Notwithstanding anything to the contrary in

2 the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or

3 Liquidation Trust Interest on account thereof.  No consideration will be provided in lieu of the *de*

4 *minimis* Distributions that are not made under this Section.

5      **Section 5.24.  Fractional Cents**.  When any payment of a fraction of a cent would otherwise

6 be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent

7 (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more);

8 provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder

9 of an Allowed Claim or Liquidation Trust Interest.

10      **Section 5.25.  Undeliverable or Unclaimed Distributions**.

11         a.     Distributions to Holders of Allowed Claims (except Administrative Claims)

12 and Liquidation Trust Interests will be made by mail as follows:

13                (i)     Distributions will be sent to the address, if any, set forth on a filed

14                   proof of claim as amended by any written notice of address change

15                   that is received by the Liquidation Trustee no later than ten (10)

16                   Business Days prior to the date of any Distribution; or

17                (ii)    If no such address is available, Distributions will be sent to the

18                   address set forth on the Bankruptcy Schedules.

19         b.     Distributions to Holders of Allowed Administrative Claims shall be made by

20 mail to the address set forth in such Holder's request for payment, fee application, or transactional

21 documents, as applicable.

22         c.     If no address is available on a proof of claim, the Bankruptcy Schedules,

23 request for payment, fee application, or transactional documents, as applicable, the Distribution will

24 be deemed to be undeliverable.  If a Distribution is actually returned to the Liquidation Trustee or is

25 deemed to be an undeliverable Distribution under the prior sentence, the Liquidation Trustee will

26 make no further Distributions to the Holder to which such undeliverable Distribution was made

27 unless and until the Liquidation Trustee is timely notified in writing of that Person's current address.

28 Subject to Section 5.25(d), until they become deliverable, the Liquidation Trustee shall deposit such

undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions Reserve for the benefit of the Persons entitled to such Distributions. Holders of Claims or Liquidation Trust Interests subject to undeliverable Distributions will not be entitled to any interest on account of the undeliverable Distributions.

d.    Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable, provide the Liquidation Trustee with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address: (i) will be deemed to waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from receiving that undeliverable Distribution or asserting any claim with respect thereto against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the extent applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such undeliverable Distribution reduced on account of such undeliverable Distribution. Any undeliverable Distributions that are not claimed timely under this Section will be withdrawn from the Undeliverable Distribution Reserve and treated as Trust Assets of the Liquidation Trust. Nothing in the Plan requires the Debtor or the Liquidation Trustee to attempt to locate any Person holding an Allowed Claim or Liquidation Trust Interest and whose distribution is undeliverable.

**Section 5.26.    Undeliverable Distributions Reserve.** On or as soon as practicable after the Effective Date, the Liquidation Trustee shall establish an Undeliverable Distributions Reserve into which Undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.25.

**Section 5.27.    Negotiation of Checks**. Checks issued in respect of Claims or Liquidation Trust Interests shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Subject to Section 5.25, requests for reissuance of any check shall be made to the Liquidation Trustee by the Holder of the Allowed Claim or Liquidation Trust Interest to whom such check originally was issued and must be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check. Thereafter, the funds represented by such voided check shall irrevocably revert to the Liquidation Trust and the Holder of the claim relating to such voided check: (i) will be deemed to waive any claim to or interest in that

voided check and the funds related thereto; (ii) will be forever barred from receiving the funds represented by the voided check or asserting any claim with respect thereto against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the extent applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such funds and voided check reduced on account of such funds.  The Liquidation Trustee, in his, her, or its sole discretion may waive or modify any requirement in Section 5.25, 5.26 or 5.27.

Section 5.28.  **Record Date**.  The record date for purposes of Distributions under this Plan shall be the Effective Date.  The Debtor and the Liquidation Trustee will rely on the register of proofs of claim filed in the Case except to the extent a notice of transfer of a Claim or Interest has been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

Section 5.29.  **Postpetition Interest**.  Except as otherwise provided by Final Court Order, interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on account of any Claims or Liquidation Trust Interests.

Section 5.30.  **Sequence of Payments**.  Notwithstanding any other provision of the Plan, Distributions shall be made by the Liquidation Trust on account of Liquidation Trust Interests in the following order:

    a)  all outstanding and projected Post Effective Date Trust Expenses until they are paid in full or are fully reserved for;

    b)  all Allowed Administrative Claims until they are paid in full;

    c)  all Allowed Secured Claims (except those as to which the Collateral Election is made) until they are paid in full;

    d)  all Allowed Priority Non-Tax Claims until they are paid in full;

    e)  all Allowed Priority Tax Claims until they are paid in full or are reserved for;

    f)  all Allowed Customer Claims and Warranty Claims are paid or are reserved for to the extent set forth in the treatment of Class 3 Claimants; and

    g)  all Allowed General Unsecured Claims

Section 5.31.  **Withholding and Reporting Requirements**.  In connection with the Distributions under the Plan, the Liquidation Trustee shall comply with all applicable withholding

1    and reporting requirements imposed by any Governmental Authority, and all Distributions shall be

2    subject to any such withholding or reporting requirements.  All such amounts withheld and paid to

3    the appropriate Governmental Authority shall be treated as distributed to such Holders.

4    Notwithstanding the above, each Holder of an Allowed Claim or Liquidation Trust Interest that is to

5    receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and

6    payment of any Tax obligations imposed by any Governmental Authority, including income,

7    withholding, and other Tax obligations, on account of such Distribution.  The Liquidation Trustee

8    has the right, but not the obligation, to not make a Distribution until such Holder has made

9    arrangements satisfactory to the Liquidation Trustee for payment of any such Tax obligations.  The

10   Liquidation Trustee may require, as a condition to receipt of a Distribution, that the Holder of an

11   Allowed Claim or Liquidation Trust Interest provide a completed Form W-8, W-9, and/or other Tax

12   information deemed necessary in the sole discretion of the Liquidation Trustee.  If the Liquidation

13   Trustee makes such a request and the Holder fails to comply before the date that is ninety (90) days

14   after the request is made: (a) the amount of such Distribution shall irrevocably revert to the

15   Liquidation Trust; (b) the Holder of the claim relating to such Distribution will be deemed to waive

16   any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) and

17   Liquidation Trust Interest(s) of such Holder shall be deemed to be disallowed and terminated and be

18   entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds

19   represented by that Distribution or any Distributions on such disallowed and terminated Claims and

20   Liquidation Trust Interests, or asserting any claim with respect thereto against the Debtor, the Estate,

21   the Liquidation Trust, the Liquidation Trustee, or their property.

22        **Section 5.32.   Claims Transfer**.  The Liquidation Trustee shall not recognize any transfer of

23   a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity

24   of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall

25   not affect or alter the classification and treatment of such Claim under the Plan and any such

26   transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such

27   Claim was held by the transferor.  The transferability of Liquidation Trust Interests shall be

28   governed by the Liquidation Trust Agreement.

**Section 5.33.  Maximum Amount of Distributions.**  In no event shall a Holder of an Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the Liquidation Trust whether directly or on account of Liquidation Trust Interests, or any other source, more than the total amount of such Allowed Claim.

**Section 5.34.  Final Distributions On Liquidation Trust Interests.**  After: (a) all Claims have been resolved; (b) all Allowed Claims except General Unsecured Claims have been paid or, with respect to Allowed Secured Claims as to which the Collateral Election is made, satisfied as provided in the Plan; (c) all material Trust Assets have been converted to Cash; and (d) the Operating Reserve has been adequately funded, the Liquidation Trustee shall distribute all Liquidation Trust Net Proceeds to holders of Liquidation Trust Interests issued on account of Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of the Liquidation Trust Interests of such Holders and taking into account any prior distributions that have been made on account of such Liquidation Trust Interests.

# VI.

# LITIGATION AND CLAIMS OBJECTIONS

**Section 6.1.    Preservation of Causes of Action**.

a.    As of the Effective Date, the Liquidation Trustee shall hold and retain all rights and privileges on behalf of the Liquidation Trust, the Debtor, and the Estate to commence, pursue, and settle, as appropriate, any and all Causes of Action and Defenses (including, without limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, adversary proceeding(s) filed in the Case.  The failure to explicitly list any Causes of Action and other potential or existing claims of the Debtor or Estate is not intended to and shall not limit the rights of the Liquidation Trust, through the Liquidation Trustee, to pursue any Causes of Action and Defenses and claims not so identified.  The Debtor and the Committee may file a non-exhaustive list of Causes of Action at least ten (10) Business Days prior to the Confirmation Hearing; provided, however, that notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral

estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze, or refer to any Cause of Action, or potential Cause of Action, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, Estate's, or the Liquidation Trustee's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Confirmation Date.  Subject to the limitations expressly set forth in the Liquidation Trust Agreement, the Liquidation Trustee may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in the Liquidation Trustee's sole discretion in accordance with what is in the best interests, and for the benefit, of the Liquidation Trust and its Beneficiaries.

b.      Unless a Cause of Action and Defense is expressly waived, relinquished, released, compromised, or settled by Final Order, the Debtor and the Estate expressly reserve such Causes of Action for later adjudication (including, without limitation, Causes of Action of which the Debtor or the Estate may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Estate at this time, or facts or circumstances which may change or be different from those which the Debtor or the Estate now believes to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action and Defenses upon, or after, the Confirmation Date or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by Final Order.

c.      Any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or which has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from or to the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee, on behalf of the Liquidation Trust and Estate subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not:  (a) such Person has filed a proof of claim against the Debtor; (b) such Person's proof of claim has been objected to by the Debtor, the

1  Liquidation Trustee, or any other Person; (c) such Person's Claim was included in the Bankruptcy

2  Schedules; or (d) such Person's scheduled Claims have been objected to by the Debtor, the

3  Liquidation Trustee, or any other Person, or has been identified as disputed, contingent, or

4  unliquidated.

5      **Section 6.2.    Objections to and Resolution of Disputed Claims**.  Except as otherwise

6  provided in the Plan or Confirmation Order, on and after the Effective Date, the Liquidation Trustee

7  shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or

8  withdraw such objections.  The Liquidation Trustee shall have the authority to compromise, settle,

9  withdraw, or otherwise resolve any objections to any Claim without approval of the Court; provided,

10  however, that the Liquidation Trustee may in his, her, or its discretion seek relief before the Court

11  with respect to any Disputed Claim.  The Liquidation Trustee shall file and serve all objections to

12  Claims (other than Administrative Claims that are subject to Sections 3.5, 3.6 and 3.8) upon the

13  Holder of the Claim as to which the objection is made no later than one-hundred eighty (180) days

14  after the later of:  (a) the Effective Date; and (b) the date on which a proof of claim is filed with the

15  Court (the "Claims Objection Deadline").  The Liquidation Trustee may extend the Claims Objection

16  Deadline for no more than two one-hundred eighty (180) day periods by filing a notice of the

17  extended deadline with the Court; provided, however, that nothing herein shall modify the statute of

18  limitations for any affirmative Cause of Action that the Liquidation Trustee may assert. Such

19  extensions may be based on the fact that the Liquidating Trustee is then still collecting Assets to pay

20  Claims senior to Unsecured Creditors. Thereafter, the Claims Objection Deadline may be further

21  extended only by an Order of the Court.  The filing of a motion to extend the Claims Objection

22  Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on

23  such motion.  In the event that such motion is denied by the Court, or approved by the Court and

24  reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims

25  Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final

26  Order denying the motion to extend the Claims Objection Deadline or reversing the Order approving

27  the motion.

28

# VII.

## OTHER PLAN PROVISIONS

**Section 7.1.    Recourse for Claims**.  All Holders of Claims and Interests are bound by the Plan and the Confirmation Order.  No Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.  As of the Effective Date, notes, contracts, judgments, and any other evidence of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**Section 7.2.    Exculpation and Release of Debtor, Committee, and Professionals**.  Except to the extent arising from willful misconduct or gross negligence, any and all Claims, liabilities, Causes of Action, rights, damages, costs, and obligations held by any party against the Debtor, the Committee, and their respective attorneys, accountants, agents, and other Professionals, and their officers, directors, members, and employees, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any manner related to the post-Petition Date administration of the Case or the formulation, negotiation, prosecution, or implementation of the Plan, shall be deemed fully waived, barred, released, and discharged in all respects, except as to rights, obligations, duties, claims, and responsibilities preserved, created, or established by the terms of the Plan.  Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and the Committee and their present and former members, officers, directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals (acting in such capacity) employed by any of the foregoing entities will neither have nor incur any liability to any Person for their role in soliciting acceptances or rejections of the Plan.

1    **Section 7.3.    Injunction Enjoining Holders of Claims**.

2         a.    The Plan is the sole means for resolving, paying, or otherwise dealing with

3    Claims and Interests with respect to the Estate, the Liquidation Trust, and their assets.  To that end,

4    except as expressly provided herein, at all times on and after the Effective Date, all Persons who

5    have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be

6    permanently enjoined from taking any of the following actions on account of any such Claims or

7    Interests, against the Estate, the Liquidation Trust, or their property (other than actions brought to

8    enforce any rights or obligations under the Plan and any claim, contested matters, or adversary

9    proceedings pending in the Case as of the Effective Date):

10        (1)    commencing, conducting, or continuing in any manner, directly or

11   indirectly, any suit, action, or other proceeding of any kind against the Estate, the

12   Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property

13   or assets (including, without limitation, all suits, actions, and proceedings that are pending,

14   other than before the Court or by explicit provision of the Court, as of the Effective Date,

15   which shall be deemed to be withdrawn or dismissed with prejudice);

16        (2)    enforcing, levying, attaching, executing, collecting, or otherwise

17   recovering by any manner or means whether directly or indirectly any judgment, award,

18   decree, or Order against the the the Estate, the Liquidation Trust, or the Liquidation Trustee,

19   their successors, or their respective property;

20        (3)    creating, perfecting, or otherwise enforcing in any manner, directly or

21   indirectly, any Lien against the Estate, the Liquidation Trust, or the Liquidation Trustee,

22   their successors, or their respective property; and

23        (4)    proceeding in any place whatsoever against the Estate, the

24   Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property,

25   in any manner that does not conform to or comply with the provisions of the Plan.

26        b.    No suit, action, or other proceeding may be commenced, conducted, or

27   continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such

28   Claim or Interest against the Debtor without the written consent of the Liquidation Trustee or Order

of the Court acquired by motion on notice to the Liquidation Trustee.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Liquidation Trust may be entitled, the Claims of such Holder shall be disallowed and any Distributions made on account of such Claims shall be repaid by such Holder to the Liquidation Trust.

**Section 7.4.    Injunctions or Stays**.  Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Section 7.5.    Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax.  The interests of Beneficiaries in the Liquidation Trust will constitute neither "securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan.  Pursuant to Bankruptcy Code sections 1125 and 1145, the Liquidation Trust shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended.  Further, because the assets of the Liquidation Trust will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

**Section 7.6.    No Admissions**.  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor, the Committee, or the Estate with respect to any matter set forth in the Plan, including the amount or

allowability of any Claim, or the value of any property of the Estate.  Notwithstanding anything to

the contrary in the Plan, if the Plan is revoked or withdrawn or is not confirmed, the Plan will be null

and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor,

the Committee, or the Estate with respect to any matter discussed in the Plan, including liability on

any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement,

or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in

any manner the rights of the Debtor, the Committee, or the Estate in any further proceedings.

**Section 7.7.    Severability of Plan Provisions**.  If, before entry of the Confirmation Order,

the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may

alter or interpret that term or provision so that it is valid and enforceable to the maximum extent

possible consistent with the original purpose of that term or provision.  That term or provision will

then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or

interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will

in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial

determination providing that each Plan term and provision, as it may have been altered or interpreted

in accordance with this Section, is valid and enforceable under its terms.

**Section 7.8.    Governing Law**.  The rights and obligations arising under the Plan and any

agreements, contracts, documents, or instruments executed in connection with the Plan will be

governed by, and construed and enforced in accordance with, California law without giving effect to

California law's conflict of law principles, unless a rule of law or procedure is supplied by:

(a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-

of-law provision in any document provided for, or executed under or in connection with, the Plan.

**Section 7.9.    Successors and Assigns**.  The rights, benefits, and obligations of any Person

referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor,

administrator, personal representative, successor, or assign of that Person.

**Section 7.10.  Nonconsensual Confirmation**.  In the event that any of the Classes entitled to

vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code

section 1129(a)(8): (a) the Debtor and the Committee reserve the right to modify the Plan in

accordance with Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that do not accept the Plan or are deemed not to accept the Plan, the Debtor and the Committee seek confirmation under section 1129(b) of the Bankruptcy Code.  Notwithstanding any other provision of the Plan, the Debtor and the Committee reserve the right to modify the Plan.

**Section 7.11.   Revocation of the Plan**.  The Committee reserves the right to revoke or withdraw the Plan before the Effective Date.

**Section 7.12.   Amendment.**  In accordance with section 1127 of the Bankruptcy Code, the Debtor and the Committee reserve the right by joint decision to alter, amend, or modify the Plan, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

**Section 7.13.   Saturday, Sunday, or Legal Holiday**.  If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**Section 7.14.   Post-Effective Date Status Reports**.  The Liquidation Trustee shall file status reports regarding the implementation of the Plan and the review, prosecution, and resolution of Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date through entry of a final decree closing the Case, or as otherwise ordered by the Court.

**Section 7.15.   Post-Effective Date Notice**.  From and after the Effective Date, any Person who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided shall file a request for post-Effective Date notice and shall serve the request on the Liquidation Trustee and counsel for the Liquidation Trustee; provided, however, that the U.S. Trustee, the Debtor, and Liquidation Trustee shall be deemed to have requested post-Effective Date notice.

**Section 7.16.   Maintenance and Disposition of Trust Records**.  The books and records maintained by the Liquidation Trustee, including books and records provided by the Debtor, may be disposed of by the Liquidation Trustee in his, her, or its discretion at the earlier of: (a) such time as the Liquidation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidation Trust; and (b) the termination of the Liquidation Trust.

**Section 7.17.  Retention of Jurisdiction**.  The Court will retain and have such jurisdiction regarding the Case, proceedings in the Case, the Plan, the Liquidation Trust, and the Liquidation Trust Agreement, as such jurisdiction existed before the Effective Date, including with respect to the following:

(a)    the resolution of any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(b)    the entry of such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(c)    the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trustee after the Effective Date;

(d)    ensuring that Distributions to Holders of Allowed Claims and Liquidation Trust Interests are accomplished as provided in the Plan;

(e)    hearing and determining any objections to Administrative Claims or proofs of claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, in whole or in part;

(f)    the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)    the issuance of such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including the Confirmation Order;

(i)     hearing and determining all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     hearing and determining disputes arising in connection with, or relating to, the Plan or the Liquidation Trust Agreement or the interpretation, implementation, or enforcement of the Plan and/or the Liquidation Trust Agreement, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan or the Liquidation Trust Agreement;

(k)     the recovery of all Assets of the Debtor and property of the Estate, wherever located, and the prosecution of all Causes of Action;

(l)     the issuance of injunctions or other Orders as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan or the Liquidation Trust Agreement;

(m)     the determination of any other matters that may arise in connection with, or are related to, the Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement or any contract, instrument, release, or other agreement or document created in connection with the Plan, including the Liquidation Trust Agreement;

(n)     hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     hearing any other matter that is not inconsistent with the Bankruptcy Code;

(p)     hearing and determining, to the fullest extent authorized by applicable law, any issue or dispute directly or indirectly arising from or related to the

1       Liquidation Trust, the Trust Assets, the Liquidation Trust Agreement, or the

2       Liquidation Trustee;

3     (q)    hearing and determining any other matter deemed relevant to the

4       consummation of the Plan or the administration of the Case;

5     (r)    interpreting and enforcing Orders entered by the Court; and

6     (s)    entry of a final decree closing the Case.

7     **Section 7.18.  Entry of a Final Decree.**  Promptly following the liquidation or other

8 disposition of all Trust Assets, including the Causes of Action, and distribution of all Trust Assets

9 pursuant to the Plan and Liquidation Trust Agreement, and in accordance with the Liquidation Trust

10 Agreement, the Liquidation Trustee will file a motion with the Court to obtain entry of a final decree

11 closing the Case and authorizing the termination of the Liquidation Trust and discharge of the

12 Liquidation Trustee.

13            **VIII.**

14         **RECOMMENDATIONS**

15     **Section 8.1.    Recommendations of the Committee and the Debtor**.  The Committee and

16 the Debtor believe that confirmation and implementation of the Plan are preferable to any other

17 alternative because, in their view, the Plan will provide Holders of Allowed Claims with the

18 maximum recovery.  Accordingly, the Committee and the Debtor urge Creditors that are entitled to

19 vote to vote to accept the Plan.

20       [Remainder of page intentionally left blank]

21

22

23

24

25

26

27

28

1  This Plan respectfully submitted by:

2  Dated: _June 19_, 2015

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEGA RV CORP.
Chapter 11 Debtor and Debtor in Possession

By: _____
Name: _J. MICHAEL ISSA_
Title: _FINANCIAL ADVISORS TO THE DEBTOR GLASSRATNER ADVISORY & CAPITAL GROUP, LLC_

_____
Brian L. Davidoff, a member of
Greenberg Glusker Fields Claman & Machtinger LLP
Attorneys for the Committee

_____
Robert P. Goe, a member of Goe & Forsythe, LLP
Attorneys for the Debtor

Donald W. Reid

16118-00002/2327825.10                    -55-

1   This Plan respectfully submitted by:          MEGA RV CORP.
                                                  Chapter 11 Debtor and Debtor in Possession
2   Dated: ___June 19___, 2015

3                                                 By: _____
                                                     Name: _____
4                                                    Title: _____

5

6

7

8   _____
    Brian L. Davidoff, a member of
9   Greenberg Glusker Fields Claman & Machtinger LLP
    Attorneys for the Committee
10

11  _____
    Robert P. Goe, a member of Goe & Forsythe, LLP
12  Attorneys for the Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28