BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
JAMES C. BEHRENS (SBN 280365)
JBehrens@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for The Official Committee of
Unsecured Creditors

ROBERT P. GOE (SBN 137019)
rgoe@goeforlaw.com
DONALD W. REID (SBN 281743)
dreid@goeforlaw.com
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, California  92612
Telephone:  949.798.2460
Facsimile:  949.955.9437

Attorneys for Mega RV Corp.,
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MEGA RV CORP., a California corporation; d/b/a McMahon's RV; d/b/a McMahon's RV Irvine; d/b/a McMahon's RV Colton; d/b/a McMahon's RV Palm Desert,<br><br>    Debtor and Debtor in Possession. | Case No. 8:14-bk-13770-MW<br><br>Chapter 7<br><br>**SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AUGUST 4, 2015**<br><br>Confirmation Hearing:<br>Date: September 16, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 6C<br>    Ronald Reagan Federal Building<br>    411 West 4th Street<br>    Santa Ana, CA  92701 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | .................................................................. | 1 |
| II. | GENERAL DISCLAIMERS AND INFORMATION | ......................................... | 2 |
| III. | DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING | ...................................... | 4 |
| | A. | Time and Place of the Confirmation Hearing | ................................ | 4 |
| | B. | Ballot Deadline and Voting Instructions | ..................................... | 4 |
| | C. | Identity of Person to Contact for More Information Regarding the Plan | ..... | 5 |
| | D. | Objecting to Plan Confirmation | ........................................... | 5 |
| IV. | THE PLAN OF LIQUIDATION | ................................................ | 6 |
| | A. | Creation of the Liquidation Trust | ......................................... | 6 |
| | B. | Disbursements | ........................................................... | 6 |
| V. | BACKGROUND ON THE DEBTOR, THE DEBTOR'S BUSINESS, EVENTS PRECIPITATING THE BANKRUPTCY FILING, AND THE CASE | .................... | 7 |
| | A. | Historical Facts and Events Precipitating Chapter 11 | ...................... | 7 |
| | | 1. | Description and History of the Debtor's Business | ...................... | 7 |
| | | 2. | The Pre-Petition Inventory Financing Agreement with CDF | ............... | 8 |
| | | 3. | Events Leading to Chapter 11 Filing | ................................. | 9 |
| | B. | Significant Events During the Bankruptcy | ................................ | 10 |
| | | 1. | Commencement of the Bankruptcy Case | ............................ | 10 |
| | | 2. | Appointment of the Unsecured Creditors' Committee | .................. | 10 |
| | | 3. | Professionals Retained by the Estate | ............................... | 10 |
| | | 4. | CDF's Relief from Stay Motion and the Subsequent Settlement | .......... | 11 |
| | | 5. | Debtor's Ongoing Liquidation Efforts | ............................... | 13 |
| | | 6. | Debtor's Aborted Effort to Sell Business | ............................. | 15 |
| | | 7. | Forest River, Inc.'s Motion for Relief from Stay | ...................... | 16 |
| | | 8. | Unexpired Leases and Executory Contracts | .......................... | 17 |
| | | 9. | Other Relief from Stay Motions and Stipulations | ..................... | 21 |
| VI. | CLAIMS FILED AGAINST THE ESTATE AND TREATMENT THEREOF | ............ | 23 |
| | A. | Schedules and Bar Dates | ................................................. | 23 |
| | B. | Scheduled Claims | ....................................................... | 23 |
| | C. | Filed Claims | ............................................................ | 24 |
| | D. | Secured Claims (Classes 1(a) – 1(j)) | ..................................... | 24 |
| | | 1. | Class 1(a) | ......................................................... | 24 |
| | | 2. | Class 1(b) | ......................................................... | 25 |
| | | 3. | Class 1(c) | ......................................................... | 26 |
| | | 4. | Class 1(d) | ......................................................... | 26 |
| | | 5. | Class 1(e) | ......................................................... | 27 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.9

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6.    Class 1(f) ................................................................................ 27
7.    Class 1(g) ............................................................................... 28
8.    Class 1(h) ............................................................................... 28
9.    Class 1(i) ................................................................................ 28
10.   Class 1(j) ................................................................................ 28
E.    Priority Non-Tax Claims (Classes 2(a) – 2(b)) ............................. 29
F.    Customer Claims and Warranty Claims (Class 3) ......................... 30
G.    General Unsecured Claims (Class 4) ............................................ 31
H.    Subordinated Claims (Class 5) ..................................................... 32
I.    Interests (Class 6) ........................................................................ 32
J.    Unclassified Claims ...................................................................... 32
        1.    Administrative Claims ............................................................. 32
        2.    Priority Tax Claims ................................................................. 34
K.    Claim Objections .......................................................................... 35
L.    Adversary Proceeding ................................................................... 36
M.    Resolution of Other Litigation ..................................................... 36
        1.    Roadtrek Litigation .................................................................. 36
        2.    Rucker Litigation ..................................................................... 38
        3.    Hoffman Litigation .................................................................. 39
        4.    Minard Litigation .................................................................... 39
        5.    Reservation of Other Claims .................................................... 40
VII.    TAX CONSEQUENCES OF THE PLAN ................................................ 40
        1.    Federal Income Tax Consequences in General ......................... 40
        2.    Overview of the Federal Income Tax Consequences of Plan ................... 41
        3.    Federal Income Tax Consequences to the Debtor ..................... 42
        4.    Federal Income Tax Consequences to Holders of Allowed Claims
              upon Funding of the Liquidating Trust. .................................... 43
        5.    Tax Issues Related to the Liquidating Trust. ............................ 44
        6.    Importance of Obtaining Professional Tax Assistance. ............ 47
VIII.    CONFIRMATION REQUIREMENTS ................................................... 47
A.    Classification and Treatment of Claims and Interests ................... 48
B.    Who May Vote to Accept or Reject the Plan ................................ 49
        1.    Allowed Claims ....................................................................... 49
        2.    Voting Requirements ............................................................... 50
        3.    Votes Necessary to Confirm the Plan ....................................... 50
        4.    Votes Necessary for a Class to Confirm a Plan ........................ 51
C.    Cramdown: Treatment of Non-Consenting Classes ...................... 51

  D.  Liquidation Analysis/Best Interests Test ................................................ 51

  E.  Feasibility ............................................................................................. 54

IX. EFFECT OF CONFIRMATION OF THE PLAN ........................................ 56

  A.  No Discharge for Debtor ....................................................................... 56

  B.  Post-Confirmation Injunction ............................................................... 56

  C.  Modification of Plan ............................................................................. 57

  D.  Post-Confirmation Status Report .......................................................... 57

  E.  Quarterly Fees ...................................................................................... 57

  F.  Post-Confirmation Conversion/Dismissal.............................................. 58

  G.  Final Decree ......................................................................................... 58

X.  RECOMMENDATION AND CONCLUSION ............................................. 59

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

## LIST OF EXHIBITS

2

| EXHIBIT NO. | DESCRIPTION |
|:-----------:|-------------|
| 1 | Second Amended Joint Chapter 11 Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Debtor Dated August 4, 2015 |
| 2 | Liquidation Trust Agreement |
| 3 | CDF Agreement |
| 4 | List of Inventory |
| 5 | Summary Financial Report for Administrative Period |
| 6 | Lien Assignment Agreement |
| 7 | Causes of Action and Reservation of Rights |
| 8 | Liquidation Analysis |
| 9 | Projected Cash Flow- High Case |
| 10 | Projected Cash Flow- Low Case |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.9

### SUMMARY INFORMATION[1]

| | |
|---|---|
| Debtor: | Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert. |
| **Recommendation:** | **The Debtor and the Official Committee of Unsecured Creditors (the "Creditors' Committee") recommend that you vote in favor of the Plan.** |
| Vote Required to Accept the Plan: | Acceptance of the Plan requires the affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class of impaired Claims entitled to vote. Only entities holding Claims in Classes 1, 3 and 4 are impaired and entitled to vote. If any of these Classes rejects the Plan, however, the Court nevertheless may confirm the Plan if the "cramdown" requirements of Bankruptcy Code section 1129(b) are satisfied with respect to such Class. |
| Voting Information: | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement. After completing and signing your Ballot, you should return it by mail, fax or email to: |

> Greenberg Glusker Fields Claman & Machtinger, LLP
> Attn: James C. Behrens
> 1900 Ave of the Stars, 21st Floor
> Los Angeles, CA. 90067
> Fax: 310-201-2328
> Email: jbehrens@greenbergglusker.com

For your Ballot to be counted, it must be received it not later than 5:00 p.m. Pacific Standard Time on September 4, 2015.

| | |
|---|---|
| Treatment of Claims: | The treatment that creditors will receive if the Court confirms the Plan is set forth in the Plan and only summarized in this Disclosure Statement. The terms of the Plan are controlling, and all creditors and interested parties are urged to read the Plan in its entirety. |
| The Effective Date: | The Effective Date of the Plan will be the first Business Day on which the following conditions have been satisfied or waived:(a) the Confirmation Order has been entered and is not stayed; (b)at least fourteen (14) days have passed since entry of the Confirmation Date; and (c) the Liquidation Trust Agreement has been executed by the parties thereto. |

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the *Second Amended Joint Chapter 11 Plan of Liquidation Filed by Debtor and Official Committee of Unsecured Creditors Dated August 4, 2015* (the "Plan"), a true and correct copy of which is attached hereto as Exhibit 1. The Plan, once confirmed, is the legally binding document regarding the treatment of Claims against the Debtor and the terms and conditions of the Debtor's liquidation. Accordingly, to the extent that there is any inconsistency between the terms contained herein and those contained in the Plan, the terms of the Plan will govern.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Questions:    All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to:

> Greenberg Glusker Fields Claman & Machtinger, LLP
> Attn: James C. Behrens
> 1900 Ave of the Stars, 21st Floor
> Los Angeles, CA. 90067
> Fax: 310-201-2328
> Email: jbehrens@greenbergglusker.com

With a copy to:

> Goe & Forsythe, LLP
> Attn: Robert P. Goe
> 18101 Von Karman Avenue, Suite 510
> Irvine, California  92612
> Facsimile:  949.955.9437
> Email: rgoe@goeforlaw.com

**IMPORTANT NOTICE:**    **THE PLAN, DISCLOSURE STATEMENT, AND BALLOT CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY.  THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS.  YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOT IN THEIR ENTIRETY.  YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN.**

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## I.   **INTRODUCTION**

Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert (the "Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on June 15, 2014 (the "Petition Date"), thereby commencing the Case. The Case is pending before the Honorable Mark S. Wallace, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division under case number 8:14-bk-13770-MW. Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor is managing its affairs as a debtor and debtor in possession.

On November 24, 2014, the Debtor entered into a settlement agreement (as defined below, the "CDF Agreement") providing for, among other things, the liquidation of certain assets by the Debtor's largest secured creditor, GE Commercial Distribution Finance Corporation ("CDF"), the subordination of claims held by the Debtor's President, Brent McMahon ("McMahon"), and the proposal by the Official Committee of Unsecured Creditors (the "Committee") and the Debtor of a joint liquidating plan of reorganization to liquidate the Debtor's remaining assets.

The Debtor and the Committee (sometimes referred to as the "Plan Proponents") have filed the *Second Amended Joint Chapter 11 Plan of Liquidation Filed by Debtor and Official Committee of Unsecured Creditors Dated August 4, 2015* (the "Plan") that is attached to this Disclosure Statement as Exhibit 1. The Plan is a liquidating plan. Pursuant to a liquidating trust (the "Liquidation Trust") established by the Plan, the Debtor's assets will be collected, divided, and distributed in accordance with the terms of the Plan. The Liquidation Trust Agreement is attached to the Disclosure Statement as Exhibit 2. The Liquidation Trust will be managed by J. Michael Issa of GlassRatner Advisory and Capital Group, LLC (the "Liquidation Trustee"). **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ACCOMPANYING PLAN.** The Plan sets forth the manner in which the Claims against the Debtor will be treated if the Plan is confirmed by the Court and the Effective Date occurs. This Disclosure Statement provides background information on the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.9

1  Debtor and its chapter 11 Case, describes certain aspects of the Plan, and discusses other related

2  matters.

3      For a complete understanding of the Plan, you should read this Disclosure Statement,

4  the Plan, and the exhibits to these documents (the "Exhibits") in their entirety.  To the extent of

5  any conflict or discrepancy between the Plan and the Disclosure Statement, the Plan will

6  control.  Subject to the prior sentence, where a particular word (such as "Debtor") or a phrase

7  (such as "Allowed Claim") is capitalized in this Disclosure Statement, and not otherwise

8  defined herein, that word or phrase has the meaning provided in Section 2.1 (Definitions) of the

9  Plan.

10     This Disclosure Statement sets forth the assumptions underlying the Plan, describes the

11  process that the Court will follow when determining whether to confirm the Plan, and describes

12  how the Plan will be implemented if it is confirmed by the Court and the Effective Date occurs.

13  Bankruptcy Code section 1125 requires that a disclosure statement contain "adequate

14  information" concerning a plan of reorganization.

15     **THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN**

16  **DESCRIBED IN THIS DISCLOSURE STATEMENT.  THEREFORE, THE PLAN'S**

17  **TERMS ARE NOT YET BINDING ON ANYONE.  IF THE COURT LATER**

18  **CONFIRMS THE PLAN AND THE EFFECTIVE DATE OCCURS, THEN THE PLAN**

19  **WILL BE BINDING ON THE DEBTOR AND ON ALL PARTIES IN INTEREST IN**

20  **THIS CASE, INCLUDING CREDITORS AND SHAREHOLDERS OF THE DEBTOR.**

21     The Debtor and the Committee believe that the Plan provides the best possible

22  recoveries to creditors under the circumstances, that acceptance of the Plan is in the best

23  interests of all parties in interest, and that any alternative would result in unnecessary delay,

24  uncertainty, and expense to the Estate.  The Debtor and the Committee therefore recommend

25  that all eligible creditors entitled to vote on the Plan cast their Ballots to accept the Plan.

26          **II.    GENERAL DISCLAIMERS AND INFORMATION**

27     Please carefully read this document and the Exhibits.  These documents explain who

28  may object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan, and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    the treatment that creditors can expect to receive if the Court confirms the Plan and the

2    Effective Date occurs.  The Disclosure Statement also describes the history of the Debtor, the

3    events precipitating the Case, certain events in the Case, the effect of confirmation of the Plan,

4    and some of the things the Court may consider in deciding whether to confirm the Plan.  It also

5    addresses the Plan's feasibility and how your treatment under the Plan compares to the

6    hypothetical treatment you would receive under a chapter 7 liquidation.  The statements and

7    information contained in the Plan and Disclosure Statement, however, do not constitute

8    financial or legal advice.  You should therefore consult your own advisors if you have questions

9    about the impact of the Plan on your Claims.

10        The financial information used to prepare the Plan and Disclosure Statement was

11    prepared by the Debtor from information in its books and records and is the sole responsibility

12    of the Debtor.  The Debtor's and the Committee's professionals have prepared the Plan and

13    Disclosure Statement.  The Debtor's and the Committee's professionals have not independently

14    verified this information.

15        The statements and information that concern the Debtor that are set forth in this

16    document constitute the only statements and information that the Court has approved for the

17    purpose of soliciting votes to accept or reject the Plan.  Therefore, no statements or information

18    that are inconsistent with anything contained in this Disclosure Statement are authorized unless

19    otherwise ordered by the Court.

20        You may not rely on the Plan and Disclosure Statement for any purpose other than to

21    determine whether to vote to accept or reject the Plan.  Nothing contained in the Plan or

22    Disclosure Statement constitutes an admission of any fact or liability by any party or may be

23    deemed to constitute evidence of the tax or other legal effects that the transactions to be carried

24    out in furtherance of the Plan may have on entities holding Claims.

25        The exhibits attached or to be attached to the Disclosure Statement are incorporated into

26    the Disclosure Statement and will be deemed to be included in the Disclosure Statement when

27    they are filed with the Bankruptcy Court.

28    / / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.9                3                SECOND AMENDED
                                                      DISCLOSURE STATEMENT

### III.      DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING

#### A.      Time and Place of the Confirmation Hearing

The hearing at which the Court will determine whether or not to confirm the Plan will take place on September 16, 2015, at 2:00 p.m., prevailing Pacific Standard Time, in Courtroom 6C of the Ronald Reagan Federal Building at 411 West 4th Street, Santa Ana, California 92701.

#### B.      Ballot Deadline and Voting Instructions

If you wish to vote to accept or reject the Plan, your Ballot must be returned to Greenberg Glusker Fields Claman & Machtinger, LLP at the address listed immediately below so that it is actually received by Greenberg Glusker Fields Claman & Machtinger, LLP at the following address by 5:00 p.m. prevailing Pacific Standard Time, on September 4, 2015 (the "Ballot Deadline"):

> Greenberg Glusker Fields Claman & Machtinger, LLP
> Attn: James C. Behrens
> 1900 Ave of the Stars, 21st Floor
> Los Angeles, CA. 90067
> Fax: 310-201-2328
> Email: jbehrens@greenbergglusker.com

**If your Ballot is not timely received, it will not be counted.**

The Plan Proponents believe that Classes 1, 3 and 4 are impaired and that holders of Allowed Claims, if any, in those Classes are entitled to vote on the Plan. Under the Plan, Class 2 is not impaired and is not entitled to vote on the Plan. Classes 5 and 6 are impaired, will not receive any distributions under the Plan, and are therefore deemed to reject the Plan. Entities holding Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

In voting to accept or reject the Plan, please use only the Ballot sent to you with this Disclosure Statement, and please carefully read the voting instructions on the Ballot for an explanation of the applicable voting procedures and deadlines. If, after reviewing this Disclosure Statement, you believe that you are entitled to vote on the Plan, but you did not receive a Ballot,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  or if your Ballot is damaged or lost, please send a written request for a Ballot to Greenberg

2  Glusker Fields Claman & Machtinger, LLP at the address set forth above or via email to

3  jbehrens@greenbergglusker.com.

4  　　　　If your Claim is subject to an objection and you nevertheless wish to vote on the Plan, you

5  will be required to request the Court to temporarily allow your Claim for voting purposes.  In

6  order to do so, you must promptly take action to make such a motion and arrange for the Court to

7  hold a hearing and adjudicate such motion no later than seven (7) days prior to the Ballot

8  Deadline (i.e., no later than August 28, 2015).

9  　　　　**C.**　　　**Identity of Person to Contact for More Information Regarding the Plan**

10  　　　　Any interested party desiring further information with respect to the Plan or seeking an

11  additional copy of this document should contact in writing  to Greenberg Glusker Fields Claman

12  & Machtinger LLP, Attn: James C. Behrens, 1900 Avenue of the Stars, 21st Floor, Los Angeles,

13  California  90067-4590, Facsimile: (310) 201-2328 with a copy to: Goe & Forsythe, LLP, Attn:

14  Robert P. Goe, 18101 Von Karman Avenue, Suite 510, Irvine, California  92612, Facsimile:

15  (949) 955-9437.  All pleadings and other papers filed in this Case may be inspected free of charge

16  during regular court hours at the Office of the Clerk, United States Bankruptcy Court, Central

17  District of California, Ronald Reagan Federal Building and Courthouse, 411 West 4th Street,

18  Santa Ana, California 92701.  Documents may be accessed for a fee through the Court's

19  electronic records system at http://www.cacb.uscourts.gov.

20  　　　　**D.**　　　**Objecting to Plan Confirmation**

21  　　　　Any party in interest in the Case – including any creditor that voted (or was deemed to

22  have voted) to accept or reject the Plan – may file an objection to confirmation of the Plan

23  assuming such party has standing to do so.  Any such objection must be filed and served on the

24  Debtor and its counsel; the U.S. Trustee; and counsel for the Committee by September 4, 2015.  If

25  you fail to properly and timely file and serve an objection to Plan confirmation, you may be

26  deemed to have consented to the confirmation of the Plan.

27  　　　　The Debtor, the Committee, and other parties in interest will have the opportunity to file a

28  reply in support of the Plan and/or in response to any objection to confirmation of the Plan no

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1  later than September 9, 2015.  The deadline for the Debtor to file any declaration or memorandum

2  in support of confirmation of the Plan is August 26, 2015.

3  ## IV.    THE PLAN OF LIQUIDATION

4  ### A.    Creation of the Liquidation Trust.

5       The Plan provides for a liquidation of the Debtor's Assets.  The terms of the liquidation

6  are discussed in detail in Section V of the Plan and parties in interest are referred thereto, and to

7  the Liquidation Trust (attached as Exhibit 2 hereto) for a full discussion of the liquidation.

8       In summary, on the Effective Date, all Assets of the Debtor and the Estate, other than the

9  Administrative Claims Reserve, will be transferred to and vested in the Liquidation Trust.  As of

10  the Effective Date, the Trust Assets of the Liquidation Trust shall be free and clear of all Liens,

11  Claims, and interests of Holders of Claims and Interests, pursuant to Sections 363(f), 1123, 1141

12  and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.  To the fullest

13  extent permitted by law, all rights under Section 365 including Section 365(f) of the

14  Bankruptcy Code are preserved and may be exercised by the Liquidating Trustee, including

15  prosecution and amendment of any motions to assume or reject executory contracts and leases

16  that are pending on the Effective Date.  From and after the Effective Date, the Liquidation

17  Trustee shall be authorized to, and shall take all such actions as required to implement the

18  Liquidation Trust Agreement and the provisions of the Plan, including administering the Causes

19  of Action.  The Liquidation Trustee shall be appointed as the representative of the Estate pursuant

20  to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.  The Liquidation Trustee

21  shall be substituted and shall replace the Debtor, the Estate, and the Committee, as applicable, as

22  the party in interest in all litigation pending as of the Effective Date.  The Debtor may be, but is

23  not required to be, dissolved by the Liquidating Trustee.

24

25  ### B.    Disbursements

26       Except as otherwise provided in the Plan, a Final Order, or as agreed by the relevant

27  parties, distributions on account of Allowed Claims shall be made by the Liquidation Trust at

28  such periodic intervals as the Liquidation Trust determines to be reasonably prudent.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Distributions to Holders of Claims will be made, and Liquidation Trust Interests will be issued,

2  only after, and only to the extent that, such Holders hold Allowed Claims.  The Liquidation Trust

3  shall maintain in reserve such Cash as it estimates to be necessary to satisfy the distributions

4  required to be made under the Plan if each Disputed Claim and Estimated Claim against the

5  Liquidation Trust becomes an Allowed Claim.  The Liquidation Trustee may set off, recoup, or

6  withhold against the Distributions to be made on account of any Allowed Claim or Liquidation

7  Trust Interest any claims that the Debtor, the Estate, or the Liquidation Trustee may have against

8  the Holder of the Allowed Claim or Liquidation Trust Interest.

9  **V.**    **BACKGROUND ON THE DEBTOR, THE DEBTOR'S BUSINESS, EVENTS**

10    **PRECIPITATING THE BANKRUPTCY FILING, AND THE CASE**

11  **A.**    **Historical Facts and Events Precipitating Chapter 11**

12    **1.**    **Description and History of the Debtor's Business**

13    The Debtor was formed on December 12, 2000 and operated as McMahon's RV until

14  April 2014.  McMahon is the Debtor's CEO and 100% shareholder.  From 2000 until 2014, the

15  Debtor sold and serviced new and used RVs throughout Southern California, with locations in

16  Westminster, Colton, and Palm Desert.  The flagship dealership and the Debtor's principal place

17  of business was located at 5400 Garden Grove Blvd., Westminster, California 92683 (the

18  "Westminster Location").  The Debtor also operated satellite dealerships at 1312-1324 RV Center

19  Drive and 1030 E. Washington Street, Colton, California 92324 (the "Colton Location"), 77840

20  Varner Road, Palm Desert, California 92211 (the "Palm Desert Location"), and other locations

21  prior to bankruptcy filing.  The leases for all these locations have been rejected and the Debtor

22  has already vacated all of the premises.

23    During 2011 and 2012, the Debtor was the number one RV dealer in California (in terms

24  of gross sales) and, in 2013, was the number two RV dealer in California, per data compiled by

25  Statistical Surveys Inc.  Winnebago awarded the Debtor the largest dealer west of the Mississippi

26  designation in 2011, 2012, and 2013.  The Debtor's sales of new and used RVs, parts, and service

27  amounted to approximately $180 million annually.  Despite its strong sales efforts, the Debtor

28  had incurred operating losses for several years leading up to the Debtor's bankruptcy filing.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1

2          **2.      The Pre-Petition Inventory Financing Agreement with CDF**

3          On or about May 8, 2006, the Debtor entered into an Inventory Financing Agreement (the

4  "IFA") with CDF, pursuant to which CDF extended credit to the Debtor to obtain and sell RVs.

5  In return, the Debtor granted CDF a security interest in substantially all of its assets, including

6  inventory, equipment, fixtures, and accounts.  In connection with the IFA in 2006, CDF extended

7  to Debtor a line of credit of up to $10,000,000.

8          Within the dealership industry, an IFA is known as "floor plan financing."  The IFA is

9  self-limited to general terms because the specific terms for any advance depended on various

10  factors, including the availability of vendor discounts, payment terms or other incentives, CDF's

11  floor planning volume with the Debtor, and other economic factors.  Upon agreeing to finance an

12  item of inventory for the Debtor, CDF would transmit a transaction statement to the Debtor that

13  identified the collateral financed and the terms of the particular advance made.  Then, after the

14  Debtor sold the financed inventory to a customer, the Debtor would remit payment of the

15  financed amount with interest to CDF (i.e., a "floor payment").

16          CDF's advances under the IFA were secured and guaranteed in three separate ways.  First,

17  the IFA limited the Debtor's inventory purchases to CDF-approved original equipment

18  manufacturers ("OEM").  An OEM was approved by CDF when it and CDF entered into an

19  agreement that required the OEM to, among other things, repurchase the financed inventory in the

20  event that the dealership defaulted to CDF or became insolvent (the "Buy-Back Agreements").

21  CDF has Buy-Back Agreements with the following OEMs: Monaco, Winnebago, Thor, and

22  Forest River.  Within the industry, Buy-Back Agreements typically have 12-month terms, and the

23  buy-back price is increasingly curtailed the longer the vehicles are held as inventory by the

24  dealership.  In addition to the Buy-Back Agreements with the OEMs, the IFA was also secured by

25  a UCC-1 financing statement against substantially all of the Debtor's assets including the

26  Debtor's inventory, equipment, fixtures, and accounts.  Finally, all amounts advanced by CDF to

27  the Debtor under the IFA were personally and unconditionally guaranteed by McMahon and

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

certain of his entities, including MIC Investments Company, LLC, McMahon's Rentals, LLC, Kinsale, LLC, and Nevada Street, LLC (collectively, the "Guarantors").

### 3.    Events Leading to Chapter 11 Filing

In August 2010, CDF approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $10,000,000 to $13,000,000.  At the same time, CDF notified the Debtor of the Debtor's multiple defaults, which CDF was willing to waive.  On June 9, 2011, CDF again approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $13,000,000 to $18,000,000.  Six months later, on December 20, 2011, CDF again approved an increase in the maximum extension of credit available to the Debtor, increasing its line from $18,000,000 to $38,000,000.  In between June 9, 2011, and December 20, 2011, CDF purchased the Debtor's credit line held by Bank of America and thereby consolidated the Debtor's credit line.  On the same day that it more than doubled (and consolidated) the Debtor's credit line, CDF issued a notice of default to the Debtor, which, again, CDF simultaneously waived.  CDF subsequently extended the Debtor's line of credit, increasing it to $50,000,000 in August 2012.

On March 28, 2013, CDF sent the Debtor a notice of performance issues, covenant default and waiver, reservation of rights, and performance conditions agreement (the "March 2013 Letter Agreement").  According to the March 2013 Letter Agreement, the Debtor had approximately $2,593,999.87 of past due payments owed to CDF.  CDF and the Debtor signed a new IFA Amendment, dated December 10, 2013.  Pursuant to this Amendment, the Debtor established a deposit account with Wells Fargo, which would be subject to a deposit account control agreement.

By February 2014, the Debtor was allegedly in default, and CDF demanded payment of the entire accelerated balance, in the amount of $33,758,977.35, and CDF swept cash from the Debtor's bank accounts.  On April 4, 2014, CDF filed a complaint in the United States District Court for the Central District of California, Santa Ana Division (the "District Court"), initiating GE Commercial Distribution Finance Corporation v. Mega RV Corp. d/b/a McMahon RV and MCMRV, Inc., Case no. SACV 14-00522-JLS (ANx).  On April 9, 2014, the District Court

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  issued a temporary restraining order enjoining the Debtor from selling or otherwise disposing of

2  CDF's collateral until further order of the District Court ("TRO").

3        **B.    Significant Events During the Bankruptcy**

4            **1.    Commencement of the Bankruptcy Case**

5        The Debtor filed a voluntary petition for chapter 11 relief under the Bankruptcy Code on

6  June 15, 2014 (the "Petition Date").  Immediately after the Petition Date, the Debtor employed

7  J. Michael Issa of GlassRatner Advisory and Capital Group, LLC ("GlassRatner") to serve as the

8  Debtor's financial adviser and to manage the process of attempting to sell the Debtor's business

9  to industry players.  Mr. Issa aggressively marketed the Debtor's assets but was unable to find a

10  buyer willing purchase them.  Mr. Issa, as well as Brown Rudnick LLP, the Debtor's special

11  litigation counsel, and Goe & Forsythe, LLP the Debtor's general counsel, and the Committee

12  counsel turned their focus to settling the Debtor's litigation claims against CDF and reaching a

13  global settlement with CDF.  The Debtor and the Committee asserted certain claims against CDF

14  for CDF's role in the closing of the Debtor's business, including causes of action for equitable

15  subordination, fraudulent conveyance, lender liabilities, and preferential transfer, among others.

16            **2.    Appointment of the Unsecured Creditors' Committee**

17        On July 3, 2013, the U.S. Trustee appointed the Unsecured Creditors' Committee (as

18  defined above, the "Committee").  The three members appointed to the Committee were: (1)

19  Bank of the West; (2) Forest River, Inc., and (3) Winnebago Industries, Inc.  The Committee filed

20  an application to employ Greenberg Glusker Fields Claman & Machtinger LLP as its bankruptcy

21  counsel on August 13, 2014 [Docket No. 135], and the Court entered an order approving this

22  application on September 4, 2014 [Docket No. 159].

23            **3.    Professionals Retained by the Estate**

24        The Court has approved the Debtor's employment of the following professionals as well

25  as the retention and compensation of a Chief Restructuring Officer:

26        • Goe & Forsythe, LLP as the Debtor's general bankruptcy counsel [Docket Nos. 52

27            (Application) and 112 (Order)];

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

- GlassRatner Advisory & Capital Group, LLC as the Debtor's Financial Advisor and Investment Banker [Docket Nos. 54 (Application) and 113 (Order)];
- Brown Rudnick LLP as special litigation counsel to the Debtor [Docket Nos. 195 (Application) and 245 (Order)];
- The Law Offices of John A. Belcher as special litigation counsel to the Debtor [Docket Nos. 299 (Application) and 386 (Order)].

As noted above, the Committee sought and obtained approval to employ Greenberg Glusker Fields Claman & Machtinger LLP, as its counsel [Docket Nos. 135 (Application) and 159 (Order)].

**4.     CDF's Relief from Stay Motion and the Subsequent Settlement**

On June 26, 2014, CDF filed a motion for relief from the automatic stay ("CDF MRS") to foreclose upon its collateral, including the Debtor's inventory.  Both the Debtor and the Committee opposed this motion.  Before a hearing on July 21, 2014, the Court issued a tentative ruling denying the CDF MRS with a bar to re-filing such motion for 240 days.  However, pursuant to an agreement between the parties, the Court continued the hearing on the CDF MRS multiple times up to November 10, 2014.

On October 13-14, 2014, the Debtor and CDF formally mediated their disputes before Judge Mitchel Goldberg (retired).  After several meetings and follow up efforts, the mediation was ultimately successful in helping the parties reach a global agreement as described below, which should provide up to $4,700,000 to fund the Plan.

On November 10, 2014, the Debtor, Committee, and CDF executed a stipulation granting CDF relief from the automatic stay (the "CDF MRS Stipulation") [Docket No. 273].  Pursuant to the CDF MRS Stipulation, CDF was granted relief from stay with respect to the Debtor's new inventory ("New Inventory") that could still be resold to the OEMs pursuant to the Buy-Back Agreements.  CDF assumed all responsibility, including taking possession and delivering the New Inventory to the OEMs, and all costs incurred disposing of the New Inventory.  The parties further agreed that all proceeds from the New Inventory ("New Inventory Proceeds") would be deposited, subject to CDF's lien, into a trust account ("Relief Escrow Account").  The Stipulation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

contemplated the release of the New Inventory Proceeds pursuant to the CDF Agreement (defined below).  On November 17, 2014, the Court entered an order approving the CDF MRS Stipulation and granting the CDF MRS with respect to the New Inventory [Docket No. 303].

Subsequently, on November 24, 2014, CDF, the Debtor, McMahon, McMahon's affiliates, and the Committee entered into a settlement agreement (the "CDF Agreement").  The CDF Agreement provides in part as follows (all capitalized terms are as defined in the CDF Agreement)[1]:

- The Parties have and agree to resolve, settle and compromise all disputes between and among them and enter into the CDF Agreement solely for the purpose of resolving, settling and compromising Claims and to avoid the further time and expense of litigation; and the Parties do not admit liability to any other Settling Party, and they do not admit the validity or invalidity of any Claim or defense made by any other Settling Party;

- On the Effective Date of the CDF Agreement:

    o  All funds constituting the Collateral Proceeds in the Escrow Account shall be disbursed to the Debtor, less: (i) any Escrow Advances or Pre-Escrow Advances; and (ii) the Holdback Amount.

    o  The "Collateral Proceeds" means (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory, (b) the Contracts In Transit, (c) FF&E and (ii) in accordance with, and subject to the limitations contained in the CDF Agreement, a total of $2,750,000 including the Holdback Amount to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory to CDF.  The amount of Collateral Proceeds shall be capped at $4,700,000.

    o  The Holdback Amount shall remain in the Escrow Account until 180 days after the effective date of a Plan, and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of the CDF Agreement.

    o  The Debtor is permitted to file an employment application for McMahon effective November 1, 2014 to compensate McMahon at the rate of $10,000 per month until

---

[1] Parties should refer to the terms of the CDF Agreement for the full content thereof.  *See* Docket No. 348.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    confirmation of a Plan, paid from proceeds of the Debtor's estate other than from

2    the Collateral Proceeds (should the estate be able to realize these proceeds),

3    McMahon and/or Guarantors shall not, directly or indirectly, be paid, receive

4    distributions, or otherwise be compensated from any of the Collateral Proceeds.

5    o    The mutual and general releases by the Parties contained herein shall be effective.

6    o    McMahon and the Guarantors will subordinate any and all Claims they may have

7        against the Debtor's estate to all other unsecured creditors of the Debtor's estate.

8    o    All pending litigation between the Parties will be dismissed.

9    o    Notwithstanding the effectiveness of the releases provided to him, McMahon will

10        continue to reasonably cooperate with the Debtor's estate as requested after he is

11        released by the Debtor and/or no longer employed by the Debtor.

12        Also, Pursuant to the CDF Agreement, the Committee had the opportunity to investigate

13    any potential claims against the estate and causes of action against McMahon and/or any

14    company affiliated with him.  The Committee conducted an investigation and recommended

15    approval of the CDF Agreement.  The Debtor's motion to approve the CDF Agreement [Docket

16    No. 348] was granted by the Court on December 22, 2014 [Docket No. 395].  The Effective Date

17    of the CDF Agreement occurred on or about January 20, 2015.  The New Inventory was released

18    to CDF pursuant to the CDF MRS Stipulation and CDF transferred to the Debtor's account the

19    sum of $2,495,000.

20        **5.    Debtor's Ongoing Liquidation Efforts**

21        Pursuant to the terms of the CDF Agreement, New Inventory was returned to CDF but the

22    Debtor retained control over all Used Inventory, meaning all RV Inventory that is not New

23    Inventory and on which CDF held a perfected, first priority security interest, and on all the

24    Debtor's furniture, office fixtures, and equipment.

25        By December 10, 2014, the Debtor relocated all inventory to the Colton Location.  The

26    inventory is well displayed in the only RV Sales Mall on the West Coast, with extremely low

27    overhead.  Every effort is being made by the Debtor to maintain a seller gross in excess of what

28    the inventory would bring at auction, which is approximately 25% - 30% below NADA estimates.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Currently the inventory selling grosses are approximately 8% above NADA estimates. A list of the inventory held by the Debtor as of May 31, 2015 is attached hereto as Exhibit 4.

In connection with the Used Inventory the Debtor had and currently has a number of contracts in transit, meaning that the Debtor has uncompleted transactions with Customers, which once completed may result in payment to the Debtor of amounts due from such Customers upon delivery of good title to the vehicle to such Customer. These contracts in transit were identified on Exhibit A to the CDF Agreement. A copy of the CDF Agreement and Exhibit A to the CDF Agreement are attached as Exhibit 3 hereto. The Debtor has since the Effective Date of the CDF Settlement engaged on ongoing resolution of these contracts in transit. Below is a summary of contracts in transit that the Debtor has resolved through May 31, 2015, and the remaining contracts in transit still to be resolved:

Contracts in Transit Resolved

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2014 | Thor | Hurricane | 1F65F5DY4D0A12520 |
| 2013 | Winnebago | Vista | 1F66F5DY8D0A07213 |
| 2014 | Forest River | Wildcat | 4X4TWDD26EC043627 |
| 2014 | Winnebago | Minnie Winnie | 1GB3G3CGXD1131914 |

Contracts in Transit Not Resolved

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 2014 | Forest River | Sunseeker | 1FDXE4FSXEDA22843 |
| 2014 | Winnebago | Forza | 4UZAAJDT2ECFU8839 |
| 2005 | Carriage | Compass | 16F62F4P351F01418 |
| 2014 | Eclipse | Stellar | 5LZBW2821ER042451 |
| 2014 | Forest River | Rockwood | 4X4TRLW26ED130517 |
| 2014 | Coachmen | Encounter | 1F66F5DY8D0A08068 |
| 2014 | Forest River | Wilderness | 5SFNB2923EE279323 |
| 2014 | Forest River | Wildcat | 4X4FWCB21ET013400 |
| 2005 | Alfa | See Ya | 4UZAAHDC75CU01597 |
| 2014 | Pleasure Way | Pursuit | 1FDWE3FS7DDB03738 |
| 2014 | Monaco | Knight | 51Z4D5649E4060529 |
| 2014 | Fleetwood | Revolution | 4VZBT1D958C061402 |
| 2014 | Pleasure Way | Ascent | WD3PE7CC3E5829017 |
| 2014 | Thor | Miramar | 1F66F5DYXE0A04301 |
| 2014 | Coachmen | Mirada | 1F65F5DY7D0A13984 |
| 2013 | Pleasure Way | Plateau | WD3PF4CC9C5666477 |

SECOND AMENDED
DISCLOSURE STATEMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Customers whose claims arise from a contract in transit will be treated as a Customer

2    Claim under the Plan in Class 3.

3    Attached hereto as Exhibit 5 is an income and expense statement during the administrative

4    period through May 31, 2015.

5    **6.    Debtor's Aborted Effort to Sell Business**

6    Efforts were made to sell certain Assets outside the ordinary course of business, but these

7    efforts ultimately did not come to fruition.  On February 18, 2015, the Debtor filed its Notice of

8    Motion and Motion for Order Approving: (1) Sale of Fixed and Personal Property Assets Located

9    at Westminster and Colton Locations; (2) Sale of Rolling Stock Located at Colton Location; (3)

10   Sale of Franchise Rights; (4) Sale of Goodwill and Other Intangible Assets; (5) Sale of Used

11   Inventory for Additional Consideration; and (6) Setting Bid Procedures (the "Sale Motion")

12   [Docket No. 473].  The Sale Motion sought the approval of a sale of certain assets to Dennis

13   Dillon RV and Marine Center (the "Buyer").  The Sale Motion drew oppositions from Colton

14   Location landlord Altman Colton Properties, Inc. [Docket No. 503] and franchisor Forest River,

15   Inc. [Docket No. 504], and creditor Adeline L. Thifault [Docket No. 509]; a limited objection by

16   franchisors Thor Industries, Inc., Four Winds (a division of Thor Motor Coach), Heartland

17   Recreational Vehicles, LLC, and Keystone RV Company [Docket No. 507]; and a response by

18   Westminster Location landlord Old Ranch Properties, LLC ("Old Ranch") [Docket No. 505].

19   The Debtor filed an omnibus response [Docket No. 515] to all oppositions, and the Committee

20   filed a limited response [Docket No. 516] to the response of Old Ranch.  Based on the objections,

21   the Debtor requested that the Court continue the hearing in an effort to reach an agreement with

22   the objecting parties and the Buyer.  The Court entered an order continuing the matter to March

23   18, 2015 [Docket No. 539]. The Buyer subsequently reneged on the sale, and the Debtor

24   withdrew the Sale Motion at the March 18, 2015 hearing.

25   On information and belief the Buyer entered into a lease agreement with Old Ranch for

26   the Westminster Location, and purchased from Old Ranch certain personal property that the

27   Debtor had abandoned on those premises.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1      The Debtor reserves all of its rights and remedies against the Buyer and Old Ranch, and

2   the Liquidating Trust may pursue claims against the Buyer on account of its failure to proceed

3   and close the transaction contemplated by the sale motion, and/or against Old Ranch for

4   interference in contractual relations and similar tort and contract theories, as a result of Old

5   Ranch's participation in an agreement with the Buyer.

6              **7.      Forest River, Inc.'s Motion for Relief from Stay**

7      Forest River, Inc. ("Forest River") filed a motion for relief from stay [Docket No. 460]

8   (the "Motion for Relief from Stay") to go before California's New Motor Vehicle Board to

9   terminate the Debtor's franchise agreements with Forest River.  This motion was accompanied by

10  a motion for an order from the Bankruptcy Court compelling the rejection of the Debtor's

11  franchise agreements with Forest River [Docket No. 461] (the "Motion to Compel").  The Debtor

12  and the Creditors' Committee filed oppositions to the Motion for Relief from Stay and the Motion

13  to Compel [Docket No. 483 and Docket No. 488, respectively] (collectively, the

14  "Oppositions").  Forest River filed a reply to the Oppositions [Docket No. 508].  The Court

15  ordered supplemental briefing on the contractual issues raised by the Court and gave a deadline of

16  March 23, 2015 for the Debtor and the Committee to file supplemental briefs and April 6, 2015

17  for Forest River to file its supplemental brief.  The Debtor's brief was filed with the Court as

18  Docket No. 555.  The Committee's brief was filed with the Court as Docket No. 557.  Forest

19  River's brief was filed with the Court as Docket No. 575.  The hearings on the Motion for Relief

20  from Stay and Motion to Compel were held on April 20, 2015 at 2:00 p.m. before the Honorable

21  Mark S. Wallace.  The Bankruptcy Court granted both motions and subsequently entered its

22  Order Granting Relief From Stay as to Dealer Agreements on April 22, 2015 [Docket No. 601]

23  and its Order Compelling the Rejection of Executory Contracts (Dealer Agreements) on April 30,

24  2015 [Docket No. 611].

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   **8.   Unexpired Leases and Executory Contracts**

2   **a.   All Real Estate Leases Have Been Rejected as a Matter of**

3   **Law**

4   **i.   Westminster Lease**

5   The Debtor leased the premises at 5400 Garden Grove Blvd., Westminster, CA 92683

6   from Old Ranch ("Old Ranch Lease"), pursuant to a lease dated on or about April 1, 2012. The

7   initial term of the Old Ranch Lease was one year, with an option ("Option") held by the Debtor to

8   extend the term of the Old Ranch Lease for fourteen (14) years.  Pursuant to Section 1.7 of the

9   Old Ranch Lease and the terms of that certain Guarantee of Lease ("Guarantee"), by and between

10   Old Ranch and Brent McMahon, the Debtor's principal and 100% shareholder ("McMahon")

11   agreed to guarantee all of the Debtor's obligations under the Old Ranch Lease.  On September 15,

12   2012, Old Ranch and the Debtor entered into Amendment No. 1 to the Old Ranch  Lease,

13   pursuant to which additional property owned by Old Ranch was added to the Premises leased to

14   the Debtor under the lease.  On March 29, 2014, Old Ranch and the Debtor entered into

15   Amendment No. 2 to the Old Ranch  Lease pursuant to which the parties agreed that the Debtor

16   had exercised the option, extending the term of the Lease to April 1, 2027.

17   The Debtor had ceased operations prior to the Petition Date, and since the Petition Date

18   the Debtor used the Westminster premises for storage of New Inventory until that inventory was

19   returned to CDF pursuant to the CDF Agreement, and thereafter until the Debtor abandoned the

20   Westminster premises on December 11, 2014, it used the Westminster premises for storage for

21   other inventory.

22   On August 4, 2014, Old Ranch filed its Motion to Compel Payment of Chapter 11

23   Administrative Expense Claim [Docket No. 114] ("Motion to Compel Payment"), pursuant to

24   which Old Ranch sought an order from the Court compelling the Debtor to perform its obligations

25   under the Old Ranch Lease, specifically to pay the post-petition rent and cost of utilities due from

26   the Petition Date onward. On September 18, 2014, the Court entered the Order to Compel

27   Payment [Docket No. 199] granting the relief sought in the Motion to Compel Payment and

28   ordering the Debtor to immediately perform its obligations under the unexpired Lease,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 specifically to pay the post-petition rent due from the Petition Date in the amount of $90,000 per

2 month plus the cost of utilities paid by Old Ranch, until such date that the Old Ranch Lease is

3 assumed or rejected by the Debtor.

4      On September 29, 2014, Old Ranch filed its Motion to Compel Debtor to Surrender Non-

5 Residential Real Property [Docket No. 218] ("Motion to Compel Surrender"), pursuant to which

6 Old Ranch sought an order from the Court compelling the Debtor, under 11 U.S.C. §

7 365(d)(4)(A), to immediately surrender the premises to Old Ranch and granting Old Ranch

8 immediate relief from the automatic stay in order to take possession of the Westminster Location

9 and to exercise any and all other rights and remedies available under the lease and applicable law.

10 On November 24, 2014, the Court entered the Order Granting Motion to Compel Debtor to

11 Surrender Non-Residential Real Property [Docket No. 347] ("Order Compelling Surrender"),

12 compelling the Debtor to surrender the Westminster Location to Old Ranch and granting Old

13 Ranch relief from the automatic stay in order to take possession of the Westminster Location and

14 to exercise any and all other rights and remedies available under the Old Ranch Lease and

15 applicable law. Old Ranch however did not exercise those rights.

16      On December 11, 2014 the Debtor confirmed in writing to Old Ranch that it had ceased

17 operations prior to the Petition Date, that it surrendered and tendered as of that date possession of

18 the Westminster Location to Old Ranch, and the personal property located on the Westminster

19 premises would remain there pending the possible consummation of an agreement with a

20 potential buyer. (See "Debtor's Aborted Effort to Sell Business, Section V.B.6., above.)

21      By order entered on March 19, 2015 [Docket No. 544], the Court ordered that the Debtor

22 must pay $355,360.06 to Old Ranch in full satisfaction of its administrative claim from the

23 petition date to the date of Debtor's rejection of the Old Ranch Lease (October 13, 2014), which

24 payment is without prejudice to any and all rights of the Debtor, the bankruptcy estate and all

25 other parties in interest to object to all pre-petition or further administrative claims of Old Ranch

26 and for the Debtor and the bankruptcy estate to seek all affirmative relief against Old Ranch

27 Properties.  This payment has been made.  The Court further ordered that Debtor shall reserve

28 $571,674.50 for the balance of the alleged administrative claim of Old Ranch, which reserve may

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   be eliminated by order of the Court on later motion of either the Debtor or the Creditors

2   Committee. The reservation of such funds is without prejudice to any and all rights of the Debtor,

3   the bankruptcy estate and all other parties in interest to object to all further administrative claims

4   of Old Ranch, and for the Debtor and the bankruptcy estate to seek affirmative relief against Old

5   Ranch. The Debtor does not believe that the reserved amount is owing to Old Ranch and the

6   Debtor, Committee, or the Liquidating Trust, as the case may be, intends to object to the Old

7   Ranch reserved amount, and is considering filing an action against Old Ranch (See "Reserved

8   Claims".)

9                    **ii.    Colton Lease**

10          The Debtor leased the premises the Colton Location from Altman Colton, pursuant to a

11   lease dated on or about August 1, 2012 (the "Altman Colton Lease").  The initial term of the

12   Altman Colton Lease was three years and four and a half months.

13          The Debtor had ceased operations prior to the Petition Date, and since the Petition Date

14   the Debtor used the Colton Location for storage of New Inventory until that inventory was

15   returned to CDF pursuant to the CDF Agreement, and thereafter until the Debtor abandoned the

16   Colton Location on December 11, 2014, it used the Colton Location for storage for other

17   inventory and certain fixtures, furniture and equipment.  On December 16, 2014 the Debtor

18   turned over the keys to the Colton Location.

19          On April 8, 2015, Altman Colton filed Motion And Application For Altman Colton

20   Properties, Inc.'s Application For Allowance Of Administrative Claim Under 11 U.S.C. §§

21   365(D)(3) And 503(B) [Docket No. 579] (the "Altman Colton Motion").  On April 27, 2015, the

22   Debtor and the Committee filed a joint opposition to the Altman Colton Motion [Docket No.

23   606].  On May 4, 2015, Altman Colton filed its Reply to Joint Opposition of Debtor and Official

24   Committee of Unsecured Creditors to Altman Colton Properties, Inc.'s Application for Allowance

25   of Administrative Claim Under 11 U.S.C. §§ 365(d)(3) and 503(b) [Docket No. 616].

26   On June 5, 2015 the Court entered an order approving a settlement among Altman Colton, the

27   Debtor and the Committee whereby Altman Colton: (i) was paid $97,704 on account of its

28   administrative claim under Bankruptcy Code §365(d)(3); (ii) will be paid an administrative claim

1  $65,000 at the same time as, and pro rata to the extent of, payment of professional administrative

2  fee claims, or at the time specified in any Plan confirmed by the Court for the payment of

3  administrative claims; and (iii) shall have an Allowed General Unsecured Claim in the amount of

4  $266,963.30.

5  ### iii.    Palm Desert Lease

6  The Debtor leased the premises at 77840 Varner Road, Palm Desert, CA 92211 ("Palm

7  Desert Premises") from Edward Steve Banas and Sandra Weinrub Banas, individually and as

8  Trustee of the Banas Family Trust ("Banas"), pursuant to a lease dated on or about April 24, 2008

9  (the "Banas Lease").  The initial term of the Banas Lease was five years, with an option

10  ("Option") held by the Debtor to extend the term of the Lease for an additional sixty (60) months.

11  McMahon guaranteed the lease for the Palm Desert Premises.

12  On June 23, 2014, Banas filed its Motion for Relief from the Automatic Stay or for Order

13  Confirming that the Automatic Stay Does not Apply Under 11 U.S.C. § 362(I) [Docket No. 16]

14  ("Motion for Relief").  After a hearing on July 14, 2014, the Court entered an Order Denying

15  Motion for Relief from the Automatic Stay Under [Docket No. 65]

16  On August 4, 2014 Banas filed its Motion to Allow and Compel Payment of Chapter 11

17  Administrative Expense Claim [Docket No. 115] (the "Banas Motion to Compel").   The Debtor

18  and  Banas entered into a settlement to settle the Banas Motion to Compel in terms of which,

19  among other things: (i) Banas was granted relief from the automatic stay so that it could take

20  possession of and re-let the Palm Desert Premises, (ii) the lease was deemed rejected; (iii) Banas

21  waived any administrative claims; (iv) Banas waived any and all claims it had against McMahon

22  pursuant to the Guarantee; and (v) Banas was granted an Allowed General Unsecured Claim in the

23  amount of $316,906.08.

24  ### b.    Other Executory Contracts

25  The Debtor will make decisions regarding the assumption or rejection of its remaining

26  executory contracts, if any, as soon as is practicable.  Those decisions will be effectuated through

27  one or more motions filed with the Court or under the Plan.  Pursuant to the Plan except for any

28  agreement between the Debtor and the Holder of a Class 3 Customer Claim which may be an

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

executory contract which gives rise to the Class 3 Claim (which executory contracts, if any, will "ride through" the Plan Confirmation and be treated as set forth in Class 3), all executory contracts not previously assumed and assigned or rejected in an Order entered prior to the Effective Date will be rejected under the Plan.  The Confirmation Order shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, the Plan provides that you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE DEADLINE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS 30 DAYS AFTER THE EFFECTIVE DATE OF THE PLAN.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## 9.    Other Relief from Stay Motions and Stipulations

Apart from the above mentioned matters, several motions and stipulations for relief from stay have been filed in the Debtor's case.  These other motions and stipulations, along with their dispositions, are summarized in the following chart:

| Docket No. | Movant | Type of Property or Action | Disposition |
|---|---|---|---|
| 22 | Arbogast Buick, Pontiac, GMC, Inc. | Personal Property | Denied with prejudice [Dkt. 82] |
| 46 | Ally Financial, Inc. | Personal Property | Stipulation Approved [Dkt. 108] |
| 132 | Estate of Elva M. Ayala, et al. | Action in Non-Bankruptcy Forum | Granted [Dkt. 184] |
| 137 | Phillip and Gail Cowan | Personal Property | Stipulation Approved [Dkt. 150] |
| 140 | Gary Collins | Personal Property | Stipulation Approved [Dkt. 198] |
| 147 | Portland Local 8 Federal Credit Union | Personal Property | Granted in part, denied in part [Dkt. 214] |
| 156 | Edward Steve Banas and Sandra | Unlawful Detainer | Stipulation Approved |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| | | | |
|---|---|---|---|
| | Weinrub Banas, Individually and as Trustees of the Banas Family Trust | | [Dkt. 158] |
| 164 | V.S.M, a minor, through GAL | Action in Non-Bankruptcy Forum | Granted [Dkt. 226] |
| 172 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc., an Assignee of Thor Credit Corporation | Personal Property | Granted [Dkt. 289] |
| 173 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc. | Personal Property | Granted [Dkt. 288] |
| 174 | Santander Consumer USA, Inc., Servicer for E*Trade Consumer Finance Corporation as Assignee of Thor Credit Corp. | Personal Property | Granted [Dkt. 287] |
| 175 | Santander Consumer USA, Inc., an Assignee of GE Capital Consumer Card Co. | Personal Property | Granted [Dkt. 305] |
| 176 | Santander Consumer USA, Inc., an Assignee of GEMB Lending Inc. | Personal Property | Granted [Dkt. 304] |
| 216 | Bank of America | Personal Property | Granted [Dkt. 302] |
| 217 | Bank of America | Personal Property | Granted [Dkt. 301] |
| 240 | Bank of the West | Personal Property | Granted [Dkt. 382, 445] |
| 248 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 339] |
| 249 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 338] |
| 250 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 337] |
| 258 | Washington State Employees Credit Union | Personal Property | Denied without prejudice at Nov. 17, 2014 hearing [No order entered] |
| 291 | Traveland International, LLC | Action in Non-Bankruptcy Forum | Denied with prejudice [Dkt. 383] |
| 340 | Washington State Employees Credit Union | Personal Property | Denied without prejudice [Dkt. 403] |
| 419 | U.S. Bank, N.A. | Personal Property | Granted [Dkt. 568] |
| 431 | Dale Carson | Action in Non-Bankruptcy Forum | Granted [Dkt. 560] |
| 439 | First Interstate Bank | Personal Property | Stipulation Approved |

SECOND AMENDED
DISCLOSURE STATEMENT

| | | | [Dkt. 444] |
|---|---|---|---|
| 441 | Washington State Employees Credit Union | Personal Property | Stipulation Approved [Dkt. 443]; Subsequent Stipulation to Set Aside Relief Order Approved [Dkt. 604] |
| 460 | Forest River, Inc. | Action in Non-Bankruptcy Forum | Granted [Dkt. 601] |
| 535 | Mega RV Corp., Debtor | Action in Non-Bankruptcy Forum | Granted [Dkt. 581] |
| 587 | Brian and Monica Pollaccia | Personal Property | Stipulation Approved [Dkt. 589] |

## VI.    CLAIMS FILED AGAINST THE ESTATE AND TREATMENT THEREOF

### A.    Schedules and Bar Dates

The Debtor filed its Schedules of Assets and Liabilities (as amended, the "Schedules") and Statement of Financial Affairs ("SOFA") [Docket No. 79] on July 21, 2014.  The Debtor subsequently filed an amended version of its Schedule B (Personal Property) on November 6, 2014 [Docket No. 270].

The Court entered an order [Docket No. 160] setting the "Bar Date" for filing proofs of claim generally as November 14, 2014.  For claims of "governmental units," as that term is defined in 11 U.S.C. Section 101(27), proofs of claim are timely filed if filed (a) before 180 days after the date of the Order for Relief in this case, or (b) by November 14, 2014, whichever is later. 11 U.S.C. § 502(b)(9).  *See* Docket No. 183 at p. 2.

### B.    Scheduled Claims

In its Schedules, the Debtor estimated that the total amount of the non-contingent, undisputed, liquidated Claims against the Debtor as of the Petition Date was approximately $55,367,642.62.  Secured claims accounted for approximately $31,000,000.00. Unsecured Priority Claims accounted for approximately $2,493,800.28, and General Unsecured Claims accounted for approximately $21,873,842.34.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**C.    Filed Claims**

To date, Secured Claims in the approximate amount of $38,000,000 have been filed against the Estate.  Priority Non-Tax Claims of $315,424.46 have been filed against the Estate. Customer Claims and Warranty Claims of approximately $9,519,000 have been filed against the estate.  General Unsecured Claims of approximately $12,454,000 have been filed against the estate.

The Debtor has not yet reconciled filed proofs of claim to the Schedules to eliminate duplicative claims or General Unsecured Claims incorrectly filed as Priority Claims.  The Debtor expects to begin this process shortly and expects that the Debtor or the Committee will object to or seek withdrawal of any such duplicative or incorrectly classified claims. However pursuant to the CDF Settlement, the Claim of CDF filed in the amount of $31,547,399.05 [Proof of Claim No. 79] and scheduled in the amount of $31,000,000.00, has been resolved, and the Claim of McMahon filed in the amount of $ 8,892,952.00 [Proof of Claim No. 111] and scheduled in the amount of $8,892,952.00, has been subordinated to all other creditors.

**THE DEBTOR, THE COMMITTEE, AND THE LIQUIDATION TRUST RESERVE ANY AND ALL RIGHTS, EXCEPT AS EXPRESSLY STATED IN THE PLAN, TO OBJECT TO, DEFEND AGAINST, AND REQUEST DISALLOWANCE, REDUCTION, SUBORDINATION, AND/OR RECHARACTERIZATION OF ANY CLAIM ASSERTED AGAINST THE DEBTOR OR ITS ESTATE, INCLUDING ANY CLAIM LISTED IN THE SCHEDULES.  THE DEBTOR ANTICIPATES THAT MANY CLAIM OBJECTIONS WILL BE FILED AFTER CONFIRMATION OF THE PLAN.**

**D.    Secured Claims (Classes 1(a) – 1(j))**

Classes 1(a)-1(j) include claims that are purportedly secured by liens on property of the estate.  The claim of CDF is treated in Class 1(a).  The remaining claims, treated in Classes 1(b) – 1(j), purported to be secured by a UCC filing.  The Plan's treatment of these claims is discussed immediately below.

**1.    Class 1(a)**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

The Secured Claim of CDF is treated in Class 1(a) as follows.  The terms of the CDF Agreement are incorporated into the Plan, and CDF shall be treated pursuant thereto unless modified in the Plan.  A copy of the CDF settlement agreement is attached as <u>Exhibit 3</u> hereto. CDF has pursuant to the CDF Agreement released from its collateral to the Estate the "Collateral Proceeds:" (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the CDF Agreement), (b) the Contracts In Transit (as defined in the CDF Agreement), (c) FF&E (as defined in the CDF Agreement) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 of the CDF Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the CDF Agreement) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined in the CDF Agreement) to CDF (the "Repurchase Amount").  The amount of Collateral Proceeds shall be capped at $4,700,000.  The Holdback Amount (as defined in the CDF Agreement) shall remain in the Escrow Account until 180 days after the Effective Date and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7 of the CDF Agreement.  The CDF Lien, to the extent it remains effective after the CDF Agreement, shall be transferred to the Liquidating Trustee without any representation or warranty as the effectiveness thereof pursuant to that certain Loan and Lien Assignment Agreement, to be executed on the Effective Date between the Liquidating Trustee and CDF, which is attached as <u>Exhibit 6</u> hereto.

**2.    Class 1(b)**

The Class 1(b) Creditor, HWH Corporation, is treated as a General Unsecured Creditor under the Plan for the following reasons.  The judgment Lien of HWH Corporation was recorded with the Secretary of State of the State of California on October 9, 2012.  The judgment Lien of HWH Corporation is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.  All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the judgment Liens of HMH Corporation.  Substantially all of the Assets currently in the Estate were

1  created as a result of settlement of a commercial tort claim against CDF.  The notice of judgment

2  Lien filed by HWH Corporation does not satisfy the requirement of UCC section 9-108 for

3  perfection of a security interest in a commercial tort claim.  HWH Corporation does not have a

4  security interest in after acquired property, and as such, the security interest of HWH Corporation

5  does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including

6  avoidance recovery and the cash proceeds as a result of the CDF Agreement.  HWH Corporation,

7  the sole creditor in Class 1(b), will be treated pro rata with Class 4 Creditors, to the extent its

8  Claim is Allowed.

9                    **3.        Class 1(c)**

10          The Class 1(c) Creditor, American Express, is treated as a General Unsecured Creditor

11  under the Plan for the following reasons.  The Lien of American Express was recorded with the

12  Secretary of State of the State of California on August 1, 2013.  The Lien of American Express is

13  junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which

14  pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien were completely

15  unsecured and of no value.  All Assets currently in the estate were obtained as a result of the post-

16  petition efforts of the Debtor and the Committee and are not subject to the Lien of American

17  Express.  Substantially all of the Assets currently in the Estate were created as a result of

18  settlement of a commercial tort claim against CDF.  The Lien filed by American Express does not

19  satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial

20  tort claim.  American Express, the sole creditor in Class 1(c), will be treated pro rata with Class 4

21  creditors, to the extent its Claim is Allowed.

22                    **4.        Class 1(d)**

23          The Class 1(d) Creditors, Portfolio General Management Group, on behalf of itself and

24  related parties Standard Group Resources, Ltd. and Cade Phoenix, Ltd. ("Portfolio General"), are

25  treated as General Unsecured Creditors under the Plan for the following reasons.  The Lien of

26  Portfolio General was recorded with the Secretary of State of the State of California on April 16,

27  2014.  The Lien of Portfolio General is junior to the CDF Lien.  As of the Petition Date, CDF was

28  undersecured, as a result of which pursuant to Bankruptcy Code § 506 all secured creditors junior

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    to the CDF Lien were completely unsecured and of no value. All Assets currently in the estate

2    were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not

3    subject to the Lien of Portfolio General. Substantially all of the Assets currently in the Estate

4    were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by

5    Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a

6    security interest in a commercial tort claim. Portfolio General does not have a security interest in

7    after acquired property, and as such, the security interest of Portfolio General does not attach to

8    post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery

9    and the cash proceeds as a result of the CDF Agreement. Each of the creditors in Class 1(d), will

10   be treated pro rata with Class 4 creditors, to the extent their Claims are Allowed.

11            **5.      Class 1(e)**

12           The Class 1(e) Creditors, Portfolio General Management Group, on behalf of itself and

13   related parties Standard Group Resources, Ltd. and Dakota Sioux Co., Ltd., are treated as General

14   Unsecured Creditors under the Plan for the following reasons. The Lien of Portfolio General was

15   recorded with the Secretary of State of the State of California on April 16, 2014. The Lien of

16   Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a

17   result of which pursuant to Bankruptcy Code § 506 all secured creditors junior to the CDF Lien

18   were completely unsecured and of no value. All Assets currently in the estate were obtained as a

19   result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien

20   of Portfolio General. Substantially all of the Assets currently in the Estate were created as a

21   result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General

22   does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a

23   commercial tort claim. Portfolio General does not have a security interest in after acquired

24   property, and as such, the security interest of Portfolio General does not attach to post-petition

25   Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash

26   proceeds as a result of the CDF Agreement. Each of the creditors in Class 1(e), will be treated

27   pro rata with Class 4 creditors, to the extent their Claims are Allowed.

28            **6.      Class 1(f)**

The Class 1(f) Creditor, Roadtrek Motor Homes ("Roadtrek"), is treated as General Unsecured Creditors under the Plan for the following reasons. The Lien of Roadtrek was recorded with the Secretary of State of the State of California on April 24, 2009. The Lien of Roadtrek is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value. The Lien of Roadtrek lapsed on April 24, 2014. The Class 1(f) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

**7.     Class 1(g)**

The Class 1(g) Creditor, Reyna Capital Corporation ("Reyna"), is treated as General Unsecured Creditors under the Plan for the following reasons. Reyna Capital holds an unsecured claim against the estate because equipment and software securing Reyna Capital's Claim was abandoned by the Debtor to its prior landlord Old Ranch Properties. The Class 1(g) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

**8.     Class 1(h)**

The Class 1(h) Creditor, Southern California Auto Auction, is treated as General Unsecured Creditors under the Plan for the following reasons. The Debtor no longer holds any Assets subject to the Lien of Southern California Auto Auction. The Class 1(h) Creditor will be treated pro rata with Class 4 creditors, to the extent its Claim is Allowed.

**9.     Class 1(i)**

The Class 1(i) Creditor, Bank of America, is treated as having an Allowed Secured Claim in the amount of $75,000 secured by those certain bank accounts at Bank of America, account number. The balance of the Claim of the Class 1(i) Claim will be treated as a Pro Rata Share with Class 4 creditors, to the extent the Claim is Allowed. Any other funds of the Debtor held by the Class I(i) shall be released to the Liquidating Trustee on the Effective Date.

**10.     Class 1(j)**

Class 1(j) includes all other Creditors who assert a Secured Claim other than those identified in Classes 1(a) to 1(i). The Class 1(j) Creditors are treated as under the Plan as follows:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Except to the extent that the Holder of an Allowed Claim in Class 1(j) agrees to less favorable

2   treatment, each Allowed Class 1(j) Claims shall be satisfied, discharged, exchanged, and released

3   by, at the option of the Liquidation Trustee: (i) payment to the Holder of the amount of the

4   Allowed Class 1(j) Claims in Cash in full from the Liquidation Trust; (ii) payment to the Holder

5   of the sale or disposition proceeds of the Collateral securing such Allowed Claims to the extent of

6   the value of the Collateral securing such Allowed Claims; (iii) surrender to the Holder of the

7   Collateral securing such Allowed Claims; or (iv) such treatment that leaves unaltered the legal,

8   equitable, and contractual rights to which the Holders is entitled with respect to such Allowed

9   Claim.  In the event that an Allowed Claim in Class 1(j) is treated under clause (i) or (ii) above:

10   (y) the Liens securing such Allowed Claim shall be deemed released and extinguished without

11   further Order of the Court; and (z) Holders of Allowed Class 1(j) Claims shall be deemed to hold

12   Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such

13   payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.  The

14   Liquidation Trustee shall notify the Holder of an Allowed Class 1(j) Claim of the election made

15   by the Liquidation Trustee under this section by the later of: (x) the Effective Date; and (y) the

16   fifteenth (15th) Business Day after such Claim becomes an Allowed Class 1(j) Claim, or, in either

17   case, as soon thereafter as is practicable, and the Liquidation Trustee shall perform such election

18   within thirty (30) days thereafter.

19       **E.**       **Priority Non-Tax Claims (Classes 2(a) – 2(b))**

20       Class 2(a) includes Claims for wages, salaries, commissions, including vacation, severance

21   and sick leave pay, earned by an individual within 180 days before the Petition Date, not to

22   exceed $12,475.  Except to the extent that a Holder of an Allowed Claim in Class 2(a) agrees to

23   less favorable treatment, each Holder of an Allowed Class 2(a) Claim shall receive in full

24   satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in

25   an aggregate amount equal to such Allowed Class 2(a) Claim on the later of: (i) the Effective

26   Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed

27   Claim, or, in either case, as soon thereafter as is practicable.  Holders of Allowed Class 2(a)

28   Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2(a) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

Class 2(b) includes Unsecured Claims for deposits by individuals arising from the deposit before the Petition Date of money in connection with the purchase, lease or rental of property from the Debtor, or the purchase of services from the Debtor including Warranty Claims, not to exceed $2,775.

- (i) Except to the extent set forth in sub-paragraph (ii) below, each Holder of an Allowed Class 2(b) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(b) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable.  Holders of Allowed Class 2(b) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(b) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

- (ii) No Customer shall be an Allowed Class 2(b) claimant if such Customer has of the Effective Date been paid a claim a Recovery Claim in excess of $2,775 by the Recovery Corporation.

- (iii)  As a condition precedent to the Allowance of any Claim by the Holder of a Class 3 Claim, such Holder shall return to the Debtor any Assets of the Debtor that are held by the Class 3 Claim Holder.

**F.     Customer Claims and Warranty Claims (Class 3)**

Class 3 includes Customer Claims and Warranty Claims.  Each Holder of an Allowed Customer Claim and/or a Warranty Claim shall, subject to sub-paragraph (iii) below immediately below, receive in full satisfaction, discharge, exchange, and release of each Allowed Customer Claim and/or a Warranty Claim:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

- (i) To the extent such Creditor is also the Holder of a Class 2(b) Claim, treatment as a Class 2(b) Claimant; <u>and</u> to the extent the Class 3 Claim exceeds the amount of $2,775 at the option of the Liquidation Trustee:

- (ii) *(w)* payment of the Pro Rata Share with Class 5 creditors, to the extent its Claim is Allowed; *(x)* payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Class 3 Claim, if any, to the extent of the value of the Collateral securing such Class 3 Claim, if any; *(y)* surrender to the Allowed Class 3 Claim the Collateral securing such Allowed Class 3 Claim, if any; or *(z)* such other treatment as is agreed to among the Holder of the Class 3 Claim and the Liquidating Trustee that does not use Assets that are payable to other Creditors.  Upon the Liquidation Trustee electing any such treatment, the Liens, if any, securing such Class 3 Claim shall be deemed released and extinguished without further Order of the Court; and Holders of Class 3 Claims and/or a Warranty Claim shall be deemed to hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.

- (iii) The Claim of a Class 3 Creditor shall be reduced by, and to the extent of, any Recovery Claim paid by the Recovery Corporation as of the Effective Date.

- (iv) To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract which gives rise to the Class 3 claim, then notwithstanding anything else in the Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in Class 3.

### G.    General Unsecured Claims (Class 4)

Class 4, General Unsecured Claims, includes all Claims that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Customer Claims or Warranty Claims, or Subordinated Claims.  Each Holder of an Allowed Class 4 Claims shall receive in full and complete satisfaction, discharge, exchange, and release of its Allowed Class 4 Claim, from the Liquidation Trust, a Pro Rata Share of the Liquidation Trust Net Proceeds, based

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

upon the amount of such Liquidation Trust Interest to the extent provided in the Plan.  Holders of

Allowed Class 4 Claims shall be deemed to hold Liquidation Trust Interests to the extent set forth

above, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be

Distributions on such Liquidation Trust Interests.

**H.    Subordinated Claims (Class 5)**

Class 5, Subordinated Claims, includes the Claims of McMahon, MIC Investments

Company, LLC., McMahon's Rentals, LLC., Kinsale, LLC., and Nevada Street, LLC.  The

Holders of Class 5 Claims including but not limited to proof of claim number 111, whether such

Claims are liquidated or non-liquidated, contingent or non- contingent, disputed or non-disputed,

whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and

Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in

right and time of payment, to the prior payment in full of all senior Classes.

**I.    Interests (Class 6)**

Class 6, Interests, includes only the Interests of McMahon, who is the sole Interest holder

of the Debtor.  Class 6 Interests shall be deemed cancelled on the Effective Date and Holders of

Class 6 Interests shall receive no Distributions or any property under the Plan on account of such

Interests.

**J.    Unclassified Claims**

Entities holding Administrative Claims and Priority Tax Claims are not classified and are

not entitled to vote on the Plan.

**1.    Administrative Claims**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to less

favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed

Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof,

Cash from the Administrative Claims Reserve, or Cash from the Liquidating Trust, if the

Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount

of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth

(15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    or, in either case, as soon thereafter as is practicable; provided, however, that Allowed Ordinary

2    Course Administrative Claims shall be paid in Cash in full after the Effective Date from the

3    Liquidation Trust in accordance with the terms and conditions of the particular transactions, any

4    applicable agreements, or as otherwise authorized by the Court.

5        Pursuant to an order entered on March 19, 2015 [Docket No. 544], the Debtor has already

6    paid the following professional fees and costs:

7    Goe & Forsythe, LLP                          $296,037.89

8
     GlassRatner Advisory &
9    Capital Group, LLC                           $302,145.99

10   Brown Rudnick LLP                            $162,120.26

11   Greenberg Glusker
     Fields Claman &
12   Machtinger, LLP                              $345,620.88

13   Included among the Administrative Claims will be the claims of professionals employed to

14   assist the Debtor and the Committee.  The Administrative Claims also includes claims by the

15   Debtor's various landlords.

16       To date, the Debtor has already paid pursuant to Court Order to Old Ranch, the Debtor's

17   prior landlord for the Westminster premises, the sum of $355,360.06 in full satisfaction of its

18   administrative claim for base rent, utilities and tax payments to the Orange County Treasurer

19   from the petition date to the date of Debtor's rejection of its lease (October 13, 2014).  The

20   Debtor has also reserved $571,674.50 for the balance of the alleged administrative claim of Old

21   Ranch which reserve may be eliminated by order of the Court on later motion of either the

22   Debtor, the Committee or the Liquidating Trust.

23       The Debtor has also paid to Altman Colton the Debtor's prior landlord for the Palm Desert

24   premises the sum of $97,704 on account of its administrative claim under Bankruptcy Code

25   §365(d)(3) and will pay an administrative claim $65,000 at the same time as, and pro rata to the

26   extent of, payment of professional administrative fee claims, or at the time specified in any Plan

27   confirmed by the Court for the payment of administrative claims.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

2

3

## 2.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof, as follows:

i.    For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the Liquidation Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

ii.    For all other Allowed Priority Tax Claims, equal quarterly payments over three years, with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable (the "First Payment Date").  Subsequent quarterly payments following the First Payment Date shall commence on the first business day of the third calendar month after the First Payment Date and shall continue quarterly thereafter, and the duration of payment shall not exceed Five Years from the Petition Date.  Interest shall accrue on Allowed Priority Tax Claims to the Internal Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from the Effective Date. Interest shall accrue on all other Allowed Priority Tax Claims on the amount outstanding from time to time at the rate at 6% per annum from the Effective Date, provided that for Claims owing to the California State Board of Equalization if the Plan is confirmed after December 31, 2015, then interest shall accrue on Claims owing ot the State Board of Equalization on the amount outstanding from time to time at the interest rate for unpaid tax liabilities published by the California State Board of Equalization at http://www.boe.ca.gov/sutax/interates.htm..

The table below represents the filed Priority Tax Claims, some or all of which are subject to objection. In particular, the Debtor believes that the Claim filed by the Internal Revenue Service is incorrect and that the actual amount owing is not more than $588,000.

| Name | Description | Amount |
|------|-------------|--------|
| Internal Revenue Service | Unassessed payroll and income taxes based on no returns having been filed. | $1,410,419 |
| State of Arizona-Dept. of Revenue | Transaction Privilege Tax | $77,997 |
| Franchise Tax Board | Minimum Franchise Fee | $822 |
| County of Orange | Personal property taxes | $2,667 |
| County of San Bernardino | Personal property taxes | $1,162 |
| California Employment Development Dept. | State payroll taxes | $371,672 |
| California State Board of Equalization | Sales and use tax and California Tire fee | $974,286.64 |

### K.    Claim Objections

Except as otherwise provided in the Plan or Confirmation Order, on or after the Effective

Date, the Liquidation Trustee shall have the exclusive right to make and file objections to Claims

and to prosecute, settle, and/or withdraw such objections.  Specifically, except as otherwise

provided in Sections 3.5, 3.6 and 3.8 of the Plan, Section 6.2 of the Plan provides that objections

to Claims against the Debtor shall be filed and served upon the holders of the affected Claims no

later than the Claims Objection Deadline: the date that is 180 days after the later of: (a) Effective

Date; and (b) the date on which a proof of claim is filed.  These deadlines may be extended twice

on notice by the Liquidating Trustee and thereafter by Order of the Court.

Creditors should assume that the Debtor or the Liquidation Trustee may file an objection

to any proof of claim that differs in amount or priority from the amount or priority of that

creditor's Claim against the Debtor as listed in the Schedules, or if such creditor's Claim against

the Debtor is listed in the Schedules as disputed, contingent, or unliquidated.  Therefore, in voting

on the Plan, no creditor may rely on the absence of an objection to its proof of claim as any

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    indication that the Debtor, the Liquidation Trustee, or other parties in interest ultimately will not

2    object to the amount, priority, security, or allowability of its Claim against the Debtor.  Moreover,

3    the Debtor and the Liquidation Trustee reserve their rights with respect to all objections to Claims

4    and counterclaims they may have with respect to Claims asserted against the Debtor and, except

5    as specifically set forth in the Plan, reserve their rights to prosecute Claims of the Debtor and the

6    Estate (including rights to affirmative recoveries, rights to subordinate Claims against the Debtor,

7    as well as other rights).

8         **L.    Adversary Proceeding**

9         There is currently one pending adversary proceeding related to the Debtor: *Arbogast*

10    *Buick, Pontia, GMC, Inc. v. Mega RV Corp.*, Adversary Proceeding No. 8:14-ap-01315-MW (the

11    "Arbogast Action" or "Adversary Proceeding").

12         In the Adversary Proceeding, plaintiff Arbogast Buick, Pontiac, GMC, Inc., an Ohio

13    corporation ("Arbogast"), filed a complaint on December 4, 2014 alleging that the Debtor failed

14    and refused to transfer to Arbogast proper title to two recreational vehicles.  Arbogast seeks

15    declaratory relief.  The Debtor filed an answer on January 5, 2015.  The Abrogast Action remains

16    pending.

17         **M.    Resolution of Other Litigation**

18         **1.    Roadtrek Litigation**

19         On March 16, 2015, the Debtor filed a motion for relief from stay [Docket No. 535] to

20    continue its litigation with Roadtrek Motorhomes, Inc. ("Roadtrek"), and the Court entered an

21    order granting relief from stay on April 8, 2015 [Docket No. 581].  This litigation related to

22    Roadtrek includes (i) an action for damages filed by Roadtrek in the United States District Court

23    in the Central District of California, Roadtrek Motorhomes, Inc. v. Mega RV Corporation, Inc.

24    d/b/a McMahon's RV, Case No. CV 09-09466 SJO (the "Federal Court Action"), which is stayed

25    pending resolution of a subsequently-filed State Court Action (as defined below) and the Debtor's

26    Bankruptcy, and (ii) an appeal from a judgment entered in the Superior Court, County of Orange,

27    that is currently pending before the Court of Appeal of the State of California, entitled *Roadtrek*

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

*Motorhomes, Inc. v. New Motor Vehicle Board*, Fourth Appellate District, Case No. G049534 (the "State Court Action" and, collectively with the Federal Court Action, the "Roadtrek Litigation").

The Debtor believes that there is substantial merit to the Roadtrek Litigation, and that the estimated recovery could be in excess of $5 million.  Specifically, an expert retained by the Debtor in the Roadtrek Litigation estimates that the Debtor's recovery in the Roadtrek Litigation could range from $3,821,670 to $5,646,483.   However as with any litigation there is risk associated with the outcome of such litigation.  In addition, as described below Roadtrek vigorously disputes the estimated range of recovery for the Debtor from the Roadtrek Litigation and the merits of the litigation.  The Debtor will also need to pay John A. Belcher, the special counsel approved by the Court to handle the Roadtrek Litigation a contingency fee of one third of any "net recovery" if and only if trial has not begun and no notice of appeal has been filed; forty percent of any "net recovery" after initiation of a trial or the beginning of testimony or submission of evidence in an agreed trial procedure or arbitration before any notice of appeal is filed by any party; fifty percent of any "net recovery" after notice of appeal is filed by any party. The State Court Action (New Motor Vehicle Board Appeals) will be handled by Belcher for a fixed sum of $25,000, plus costs. This fee is in addition to the contingency fee described above.  If there is no recovery from the Roadtrek State Court Action, the $25,000 plus costs does not have to be paid by Mega RV or the estate.  The cash flow projections attached as Exhibits 9 and 10 hereto take into account Mr. Belcher's fees, and estimate the best-case recovery from the Roadtrek Litigation as $3,240,000 and the worst-case recovery from the Roadtrek Litigation as $2,160.000.

Roadtrek strongly believes that it is has no liability for money damages to Mega RV in the State Court Action or the Federal Court Action.   Roadtrek strongly believes that the Court of Appeals will affirm the New Motor Vehicle Board's and Superior Court's decisions allowing the termination of Mega RV's dealer agreements with Roadtrek.   Roadtrek believes that Mega RV owes Roadtrek over $600,000, net of amounts owed to Mega RV for warranty and parts.  Roadtrek also has other claims in the Federal Court Action that it believes will result in an award of damages against Mega RV in excess of $1.5 million.  Roadtrek contends that the damages range referenced above by Mega RV is not from an expert in the Roadtrek Litigation,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

rather it was from a case between Mega RV and Mike Thompson RV which was dismissed with prejudice by Mega RV.

### 2. Rucker Litigation

On or about September 12, 2013, Bruce Rucker and Marcy Rucker (collectively, "Rucker") filed a civil action against Debtor in Orange County Superior Court under the name and style of *Bruce Rucker, et al. v. Mega RV Corp. dba McMahon's RV*, Case No. 30-2013-00674989. In this action, Rucker alleges that Mega RV did not provide written disclosure to them that the Subject Vehicle's odometer reading at the time of sale was different than the actual miles traveled by the Subject Vehicle. Rucker alleged causes of action against Mega RV for (1) violation of the Federal Odometer Act (49 U.S.C. § 32701, *et seq*.), and (2) violation of the Consumer Legal Remedies Act.

Thereafter, on or about June 2, 2014, Rucker filed a First Amended Complaint adding Great American Insurance Company ("GAIC") as a defendant to the lawsuit and adding a third cause of action for fraud against Mega RV and a fourth cause of action against GAIC on the surety bond under Vehicle Code § 11711. (The First Amended Complaint filed in that action, together with all allegations, claims, causes of action, demands and prayers for relief contained therein, are collectively referred to as the "Civil Action.") The defendants filed Answers to the First Amended Complaint denying Rucker's various allegations and prayers for relief. On or about July 24, 2014, GAIC filed a cross-complaint in interpleader and indemnity, among other causes of action, against various other cross-defendants, including Rucker.

The Debtor and Rucker filed their Notice of Motion and Motion to Approve Compromise of Controversy Between Debtor and Debtor in Possession Mega RV Corp. and Bruce Rucker and Marcy Rucker Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No. 391], requesting approval of a settlement, pursuant to which the pending litigation is resolved, and the Debtor's insurer is to pay $45,000 to Rucker. The Bankruptcy Court approved this settlement in its Order Granting Motion to Approve Compromise of Controversy Between Debtor and Debtor in Possession Mega RV Corp. and Bruce Rucker and Marcy Rucker Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No. 420].

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### 3.    Hoffman Litigation

On or about December 14, 2011, Glen Hoffman and Kimberly Hoffman filed a complaint for damages against the Debtor, the Debtor's insurer Federated Mutual Insurance Company, and former Mega RV employee Kevin Morrell, Sr. in the Superior Court of California for the County of San Bernardino.  The complaint alleged conduct against these defendants, for, *inter alia*, fraud, misrepresentation, false advertising, violation of the Consumer's Legal Remedies Act, and unfair business practices, all with regard to the plaintiffs' attempted purchase of a 2012 Coachmen Freelander recreational vehicle, bearing the Vehicle Identification Number 1FDWE3FS5BDB04903.  The lawsuit was subsequently designated as Case No. CIVDS1114066.

The Debtor and Federated Mutual Insurance Company and Glen Hoffman and Kimberly Hoffman filed their Notice of Motion and Motion to Approve Compromise of Controversy Between Debtor and Debtor in Possession Mega RV Corp. and Federated Mutual Insurance Company and Glen Hoffman and Kimberly Hoffman Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No. 530], requesting approval of a settlement, pursuant to which the pending litigation is resolved, and the Debtor, by and through its insurer Federated Mutual Insurance Company, is to pay $3,000 to Glenn Hoffman and Kimberly Hoffman.   The Bankruptcy Court approved this settlement in its Order Approving Compromise Between Debtor and Debtor in Possession Mega RV Corp. and Federated Mutual Insurance Company and Glen Hoffman and Kimberly Hoffman Pursuant to Federal Rules of Bankruptcy Procedure Rule 9019 [Docket No. 578].

### 4.    Minard Litigation

In *Lewis Minard and Patricia Minard v. Mega RV Corp*., Adversary Proceeding No. 8:15-ap-01236-MW (the "Minard Action"), plaintiffs filed claims for relief pursuant to 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and 523(a)(6).  The plaintiffs allege that they traded in vehicles and put down a deposit to purchase a Fleetwood RV, but the Debtor failed to pay off the balance owed on the trade-in vehicles, failed to provide financing for the Fleetwood, failed to transfer title to the Fleetwood, and failed to remove a prior lien on the Fleetwood.  The Debtor has not yet filed a responsive pleading.  The Debtor has demanded that the plaintiffs dismiss the action on the basis

that a claim under 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and 523(a)(6) cannot be brought against a non-individual, and the Minard Action has been voluntarily dismissed. The parties have reached an agreement in principle regarding a consensual resolution of the remaining issues relating to the Minard matter, and are working to document the agreement.

### 5. Reservation of Other Claims

The Debtor reserves all rights and remedies, and the Liquidation Trust may continue litigation, pursue claims, and prosecute causes of action, including but not limited to as set forth in the attached Exhibit 7 Causes of Action and Reservation of Rights.

## VII. TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor. The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

### 1. Federal Income Tax Consequences in General

The following summary addresses certain material federal income tax consequences of the Plan to the holders of Allowed Claims. The summary is based upon the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service ("IRS"), all of which are subject to change possibly with retroactive effect. Due to the differences in the nature of the various holders of Allowed Claims, their taxpayer status, residence and methods of accounting and prior actions taken by such holders with respect to their Allowed Claims, the tax consequences described below are general in nature and are subject to significant considerations applicable to each holder of an Allowed Claim.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   This discussion of the federal income tax consequences is not binding on the IRS, and the

2   Creditors' Committee has not and does not intend to request an administrative ruling from the

3   IRS with respect to any of the federal income tax aspects of the Plan.  Consequently, there can be

4   no assurance that the IRS will accept the treatment described in this Disclosure Statement.  No

5   opinion of counsel has either been sought or obtained with respect to the federal, state, local or

6   foreign tax aspects of the Plan.  Legislative, judicial or administrative changes or interpretations

7   may be forthcoming that could alter or modify the statements and conclusions set forth herein.

8   Additionally, changes in the facts or circumstances relating to the consummation or operation of

9   the Plan or the formation or operation of the Liquidating Trust, or other changes in circumstances

10  could likewise affect the tax consequences to such parties.  The federal income tax consequences

11  of the Plan and distributions are complex and subject to significant uncertainties.  This summary

12  does not address foreign, state or local tax consequences of the Plan except to the extent noted

13  herein, nor does it purport to address all of the federal income tax consequences of the Plan.  This

14  summary also does not purport to address the federal income tax consequences of the Plan to

15  holders of Claims subject to special treatment under the federal income tax laws, such as broker-

16  dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small

17  business investment companies, mutual funds, regulated investment companies, foreign

18  corporations, and foreign persons.

19      **The Debtor and Creditors' Committee CANNOT and DO NOT represent that the**

20  **tax consequences below are the only tax consequences of the Plan because the Internal**

21  **Revenue Code embodies many complicated rules which make it difficult to state completely**

22  **and accurately all the tax implications of any action on the Debtor's tax liability or the tax**

23  **implications to holders of Allowed Claims and Interests.  Holders of Allowed Claims and**

24  **Interests are urged to consult with their tax advisors about the state, local and foreign tax**

25  **consequences of the transactions contemplated under or in connection with the Plan.**

26      **2.      Overview of the Federal Income Tax Consequences of Plan**

27      **(a)      Transfer of Assets to Liquidating Trust.**  For all federal income tax

28  purposes, all parties (including the Debtor, the Trustee and holders of beneficial interests in the

16118-00002/2327818.9                        41                    SECOND AMENDED
                                                                   DISCLOSURE STATEMENT

1  Liquidating Trust) shall treat the transfer of Assets to the Liquidating Trust, in accordance with

2  the terms of the Plan, as a transfer of the Assets directly to the "Beneficiaries") followed by the

3  transfer of the Assets by such holders to the Liquidating Trust.  Consistent therewith, all parties

4  shall treat the Liquidating Trust as a grantor trust of which the Beneficiaries are to be treated as

5  the grantors and beneficiaries. Thus, each Beneficiary shall be treated as the direct owners of an

6  undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax

7  purposes.  Accordingly, each Beneficiary will be required to report on its federal income tax

8  return(s) such Beneficiary's allocable share of all income, gain, loss, deduction or credit

9  recognized or incurred by the Liquidating Trust.

10  **(b)      Federal Income Tax Treatment of the Liquidating Trust.**  Consistent

11  with the foregoing, the Liquidating Trust will be taxed as a grantor trust, of which the

12  Beneficiaries will be treated as the grantors and beneficiaries.  Because a grantor trust is treated as

13  a pass-through entity for federal income tax purposes, no federal income tax should be imposed

14  on the Debtor on the income earned or gain recognized by the Liquidating Trust.  Instead, as the

15  beneficiaries of the Liquidating Trust, the Beneficiaries will be taxed on their allocable shares of

16  such net income or gain in each taxable year, whether or not the Beneficiaries receive any

17  distributions from the Liquidating Trust in such taxable year.

18  **3.      Federal Income Tax Consequences to the Debtor.**  The Debtor is a

19  California corporation that has elected to be treated as an S corporation for federal income tax

20  purposes.  For federal income tax purposes, McMahon, the sole owner of the Debtor, is required

21  to report on his personal federal income tax return all income, gain, loss, deduction or credit

22  recognized or incurred by the Debtor.  As such, neither the Debtor nor the Debtor's estate will

23  recognize or incur for federal income tax purposes any income, gain, loss, deduction or credit

24  upon the deemed distribution of the Assets to the Beneficiaries.  While this disclosure does not in

25  general address state or local tax issues, it is important to note that for state income tax purposes,

26  California does impose an income tax on an S corporation at the rate of 1.5%.  Therefore, it is

27  possible that the Debtor could incur income tax upon reporting the deemed transfer of Assets to

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    the Beneficiaries.  Any such tax liability would be an obligation of and paid by the Liquidating

2    Trust.

3         **4.       Federal Income Tax Consequences to Holders of Allowed Claims upon**

4    **Funding of the Liquidating Trust.**

5         The tax consequences of the implementation of the Plan to a Beneficiary will depend in

6    part on whether the Beneficiary reports income on the accrual or cash basis, whether the

7    Beneficiary receives consideration in more than one tax year of such Beneficiary, whether the

8    Beneficiary has previously recognized a loss on its Allowed Claim, and whether the Beneficiary

9    is a resident of the United States.

10        **(a)       Transfer of Assets to the Liquidating Trust**.  In general, each

11   Beneficiary will recognize gain or loss in an amount equal to the difference between (i) the

12   "amount realized" by such Beneficiary in satisfaction of its Allowed Claim, and (ii) such

13   Beneficiary's adjusted tax basis in such Claim.  The "amount realized" by a Beneficiary will

14   equal the sum of cash and the aggregate fair market value of the property received by such

15   pursuant to the Plan (such as a Beneficiary's undivided beneficial interest in the assets transferred

16   to the Liquidating Trust).  Where gain or loss is recognized by a Beneficiary in respect of its

17   Allowed Claim, the character of such gain or loss (i.e. long-term or short-term capital, or ordinary

18   income) will be determined by a number of factors including the tax status of the Beneficiary,

19   whether the Claim constituted a capital asset in the hands of the Beneficiary and how long it had

20   been held, whether the Claim was originally issued at a discount or acquired at a market discount

21   and whether and to what extent the holder had previously claimed a bad debt deduction in respect

22   of the Claim.

23        The tax treatment of a Beneficiary may differ depending on the type of debt and

24   classification under the Plan.  For example, the tax treatment may depend on whether the

25   Beneficiary was an original lender, a purchaser of a credit instrument, or a party for whom the

26   debt arose in the ordinary course of a trade or business.  A debt that is created or acquired in

27   connection with a creditor's trade or business or incurred during the operation of the creditor's

28   trade or business is a business bad debt.  Debts not created or acquired in connection with a

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    creditor's trade or business and not incurred during the operation of the creditor's trade or business

2    are treated as non-business bad debts.

3        **(b)**    **Interest Included in Claim.**  A distribution paid to a Beneficiary that is

4    attributable to accrued but unpaid interest should be treated as ordinary income. Although not free

5    from doubt, the intent is to treat payments as applied first to principal, and if the principal amount

6    is paid in full, then any interest portion of the Allowed Claim.

7        **5.    Tax Issues Related to the Liquidating Trust.**

8        **(a)**    **Treatment as Grantor Trust.**  The Liquidating Trust is intended to

9    qualify as a liquidating trust for federal income tax purposes (except for any Liquidating Trust

10   Claims Reserve that the Trustee may establish as addressed below).  In general, a liquidating trust

11   is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor"

12   trust (i.e., a pass-through entity).  The IRS, in Revenue Procedure 94-45, 1994-2 CB 684, set forth

13   the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust

14   under a chapter 11 plan.  The Liquidating Trust has been structured with the intention of

15   complying with such general criteria.  Pursuant to the Plan, and in conformity with Revenue

16   Procedure 94-45, all parties (including the Debtor, Trustee, and Beneficiaries) are required to

17   treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the

18   Beneficiaries are the grantors and beneficiaries.

19       **(b)**    **Good Faith Valuation of Trust Assets.**  Pursuant to the Plan, the Trustee

20   will make a good faith valuation of the Liquidating Trust's assets.  All parties (including, without

21   limitation, the Debtor, Trustee and Beneficiaries) must consistently use such valuation for all

22   Federal income tax purposes.  The valuation will be made available to the parties, from time to

23   time, as relevant for tax reporting purposes.

24       **(c)**    **Allocation of Trust Income to Beneficiaries and Tax Impact of**

25   **Distributions.**  The Liquidating Trust's taxable income will be allocated on a pro rata basis

26   among the Beneficiaries.  The character of items of income, deduction and credit to any

27   Beneficiary and the ability of such Beneficiary to benefit from any deductions or losses may

28   depend on the particular situation of such Beneficiary.  The income and deductions from the

**GREENBERG GLUSKER FIELDS CLAMAN**
**& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    operations of the assets held in the Liquidating Trust will be income or deduction to the holders of

2    the beneficial interests in the Liquidating Trust.  The Trustee will supply information for each of

3    the Beneficiaries to use in reporting the income or deduction on their respective returns.  There is

4    no assurance that if there is income from the Liquidating Trust allocated to any Beneficiary, that

5    there will be adequate cash distributed to such Beneficiary to pay the resulting federal and state

6    tax liability.

7        After the Effective Date, any amount a Beneficiary receives as a distribution from the

8    Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be

9    included, for federal income tax purposes, in the Beneficiary's amount realized in respect of its

10   Allowed Claim but should be separately treated as a distribution received in respect of such

11   Beneficiary's beneficial interest in the Trust.

12       The federal income tax reporting obligation of a Beneficiary is not dependent upon the

13   Liquidating Trust distributing any cash or other proceeds.  Therefore, a Beneficiary may incur a

14   federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will

15   not make, any concurrent or subsequent distributions to the Beneficiary-Creditor.

16       **(d)**    **Liquidating Trust Claims Reserve.**  The Trustee may elect to treat any

17   Liquidating Trust assets allocable to, or retained on account of the Undeliverable Claims Reserve

18   and the Disputed Claims Reserve (the "Liquidating Trust Claims Reserve") as a "disputed

19   ownership fund" governed by Treasury Regulation Section 1.468B-9.  For federal income tax

20   purposes, the Liquidating Trust Claims Reserve shall be treated as the owner of all assets that it

21   holds.  The Liquidating Trust Claims Reserve is treated as a C corporation for purposes of subtitle

22   F of the Internal Revenue Code relating to procedure and administration, and the administrator of

23   the fund must obtain an employer identification number for the fund, make all required income

24   tax and information returns and deposit all tax payments.  Accordingly, the Liquidating Trust

25   Claims Reserve will be subject to tax annually as a separate entity on any net income earned with

26   respect to the Liquidating Trust assets in such reserve, and all distributions from such reserve will

27   be treated as received by holders in respect of their Claims as if distributed by the Debtor.  All

28   parties (including, without limitation, the Debtor, Trustee and holders of Claims provided for in

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

the Liquidating Trust Claims Reserve) will be required to report for tax purposes consistently

with the foregoing.

The Liquidating Trust Claims Reserve will report its income and loss and pay its own

taxes with respect to the assets in the Liquidating Trust Claims Reserve.  Upon termination of the

Liquidating Trust Claims Reserve, if the Liquidating Trust Claims Reserve had unused net

operating loss carryover or an unused capital loss carryover or any unused tax credit carryover, or

if the Liquidating Trust Claims Reserve has deductions in excess of gross income for its last

taxable year, the creditor-claimants to which the Liquidating Trust Claims Reserve's net assets

are distributable will succeed to and take into account the Liquidating Trust Claims Reserve's

unused tax attributes.  The tax attributes are allocated to the creditor-claimants in proportion to

the assets values distributable to each creditor-claimant in the Liquidating Trust Claims Reserve.

(e)    **Priority Unsecured Claims.**  For federal income tax purposes, the Trustee

will have the option of treating priority unsecured claims under the Plan as a liability of the

Liquidating Trust, a separate reserve, a qualified settlement fund under Treasury Regulation

Section 1.468B-1, or any other appropriate manner to reflect that such priority unsecured claims

have priority with respect to distribution as opposed to non-priority unsecured claims.

(f)    **Federal Income Tax Reporting.**  The Trustee will file with the IRS

returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section

1.671-4(a).  The Trustee will also send to each Beneficiary a separate statement setting forth the

holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to

report such items on its federal income tax return.  The Trustee is not obligated to supply

information regarding the Liquidating Trust's assets or any value with respect to such assets to a

Beneficiary before the time for supplying information required for the Trustee to report the items

of income, deduction and credit or other information to any Beneficiary-Creditor.

(g)    **Withholding.**  All distributions are subject to any applicable withholding

(including employment tax withholding).  Under the Internal Revenue Code, interest, dividends

and other reportable payments may, under certain circumstances, be subject to "backup

withholding" then in effect.  Backup withholding generally applies if the payee (a) fails to furnish

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

his or her social security number or other taxpayer identification number ("TIN"), (b) furnishes an

incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances,

fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his

correct number and that he is not subject to backup withholding.  Backup withholding is not an

additional tax but merely an advance payment, which may be refunded to the extent it results in

an overpayment of tax.  Certain persons are exempt from backup withholding, including, in

certain circumstances, corporations and financial institutions.

**6.    Importance of Obtaining Professional Tax Assistance.**

**The foregoing is intended as a summary only, and is not a substitute for careful tax planning with a tax professional.  The U.S. federal, foreign, state and local income and other tax consequences of the Plan are complex and, in some cases, uncertain.  Such consequences may also vary based on the particular circumstances of each holder of an Allowed Claim. Accordingly, each holder of an Allowed Claim is strongly urged to consult with his, her or its own tax advisor regarding the federal, foreign, state and local income and other tax consequences under the Plan.**

**To ensure compliance with requirements imposed by the Internal Revenue Service, acting on behalf of the United States Treasury, you must be informed that any tax information contained in this Disclosure Statement is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under any applicable law or regulation.  The tax information contained in this Disclosure Statement was written to support the promotion of the transactions described in this Disclosure Statement.**

**VIII.    CONFIRMATION REQUIREMENTS**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 or a chapter 11 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

### A.    Classification and Treatment of Claims and Interests

The Bankruptcy Code requires that a plan divide the different claims against, and equity interests in, the debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are usually classified together. The Bankruptcy Code does not require the classification of administrative claims and certain priority claims, and they are typically denominated "unclassified claims."

The Debtor and Committee believe that the classification of Claims specified in the Plan is appropriate and consistent with the requirements of the Bankruptcy Code. The Court will determine the appropriateness of the classification of the Claims under the Plan in conjunction with the hearing on confirmation of the Plan.

A plan must designate each separate class of claims and interests either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan). If a class of claims or interests is "impaired," under the Bankruptcy Code, the holders of claims or interests, as applicable, in that class are entitled (i) to vote to accept or reject the plan (unless the plan provides for no distribution to the class, in which case the class is deemed to reject the plan), and (ii) to receive property with a value at least equal to the value that the claimant would receive if a debtor were liquidated under chapter 7 of the Bankruptcy Code. If a class of claims is unimpaired, the holders of claims in that class are deemed to accept the plan.

Under Bankruptcy Code section 1124, a class of claims is "impaired" unless the plan leaves unaltered the legal, equitable, and contractual rights of the holders of claims or interests, as applicable, in the class. In addition, a class of claims is "impaired" unless the plan cures all

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    defaults (other than those arising from the debtor's insolvency, the commencement of the case, or

2    non-performance of a non-monetary obligation, which need not be cured) that occurred before or

3    after the commencement of the case, reinstates the maturity of the claims in the class,

4    compensates the claimants for their actual damages incurred as a result of their reasonable

5    reliance on any acceleration rights, and does not otherwise alter their legal, equitable, and

6    contractual rights.  Except for any right to accelerate the debtor's obligations, the holder of an

7    unimpaired claim will be placed in the position in which it would have been, *inter alia*, if the

8    debtor's case had not been commenced.

9        The classification and treatment of each class of Claims and Interests are set forth in detail

10   in the Plan.  The Debtor incorporates the Plan herein by reference instead of duplicating the

11   contents of the Plan herein.

12       **B.    Who May Vote to Accept or Reject the Plan**

13       To vote to accept or reject the Plan, your Claim must be an impaired Claim against the

14   Debtor that has not been disallowed.  Holders of Claims against and Interest in the Debtor that do

15   not receive or retain any value under the Plan are deemed to reject the Plan, and are not entitled to

16   vote.

17           **1.    Allowed Claims**

18       With the exceptions explained below, under the Bankruptcy Code, a claim generally is

19   allowed only if a proof of the claim is properly filed before any applicable bar date, and either no

20   party in interest has objected or the court has entered an order allowing the claim.  Under certain

21   circumstances, as provided in the Bankruptcy Code, a creditor may have an allowed claim even if

22   a proof of claim was not filed and the applicable bar date for filing a proof of claim has passed.

23   For example, a claim may be deemed allowed if the claim is listed on a Debtor's schedules and is

24   not scheduled as disputed, contingent, or unliquidated.

25       A holder's claim must be an allowed claim for the holder of such claim to have the right

26   to vote on the Plan.  Generally, for voting purposes, a claim is deemed allowed to the extent that:

27   (a) either (1) a proof of claim is timely filed; or (2) a proof of claim is deemed timely filed either

28   under Bankruptcy Rule 3003(b)(1)-(2) or by an order of the bankruptcy court; and (b) either (1)

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

the claim is not subject to an objection; or (2) the claim is allowed by an order of the bankruptcy court notwithstanding that objection.  A claim that is allowed for voting purposes may still be subject to later objections and disallowance.

A creditor whose claim is not allowed may still be entitled to vote to accept or reject a plan if the creditor has timely filed a proof of claim that is not the subject of an objection filed before the hearing on plan confirmation or a bankruptcy court order disallowing the claim entered before the confirmation hearing.  An entity whose claim is subject to an objection is not eligible to vote on the plan unless and until that objection is resolved in the entity's favor or, after notice and a hearing under Bankruptcy Rule 3018(a), a bankruptcy court temporarily allows the entity's claim for the purpose of voting to accept or reject the plan.  Any entity that seeks temporary allowance of its claim for voting purposes must promptly file an appropriate motion and take the steps necessary to arrange an appropriate and timely hearing.

## 2.      Voting Requirements

Under the Bankruptcy Code, claims are placed in classes under a plan, and each class entitled to vote accepts or rejects the plan as a class.  Certain types of claims are not classified because the Bankruptcy Code requires that they be treated in a specific way.  These claims are considered unimpaired, and their holders cannot vote.  Section III of the Plan sets forth a summary of the types of Claims against the Debtor, their treatment under the Plan, and, where applicable, the Classes in which they have been classified.

## 3.      Votes Necessary to Confirm the Plan

Under the Bankruptcy Code, a bankruptcy court may confirm a plan if at least one class of impaired claims has voted to accept that plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to dissenting classes.

Even if a debtor receives the requisite number of votes to confirm a proposed plan, the plan will not become binding unless and until, among other things, the Court makes an independent determination that confirmation is appropriate.  This determination will be the subject of the hearing on confirmation of the plan.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

### 4. Votes Necessary for a Class to Confirm a Plan

A class of claims has accepted the plan only when more than one-half (1/2) in number and at least two-thirds (2/3) in amount of the allowed claims actually voting in that class vote to accept the plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### C. Cramdown: Treatment of Non-Consenting Classes

Even if all classes do not consent to the proposed treatment of their claims under a plan, the plan nonetheless may be confirmed if each dissenting class is treated in the manner prescribed by the Bankruptcy Code. The process by which a dissenting class is forced to abide by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows a dissenting class to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable" as to such class. The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment. For a class of secured claims, "fair and equitable" can mean that the secured claimants retain their liens and receive deferred cash payments, the present value of which equals the value of their interests in the collateral. For a class of unsecured claims, a plan is fair and equitable if the claims in that class receive value equal to the allowed amount of the claims, or, if the unsecured claims are not fully satisfied, no claim or interest that is junior to such claims receives or retains anything under the plan.

### D. Liquidation Analysis/Best Interests Test

Bankruptcy Code section 1129(a)(7) requires that each holder of a Claim against the Debtor in an impaired class either (i) vote to accept the Plan, or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. This is commonly referred to as the "Best Interests Test."

To determine if the Plan is in the best interest of the impaired Classes in the Plan, the present value of the distribution from the proceeds of the chapter 7 liquidation of the Debtor's

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

assets available to pay claims is compared with the value of the property offered to each such class under the Plan.

Similar to a chapter 7 liquidation, much of the Debtor's assets have already been liquidated through the CDF Agreement and the Debtor's liquidation efforts, and the Plan provides for the orderly liquidation of the Debtor's remaining assets, and for the distribution of the proceeds in accordance with the priority scheme established by the Bankruptcy Code and applicable law, as set forth in the Plan. See Sections V.B.4. and V.B.5. above for a discussion of the CDF Agreement and for the Debtor's liquidation efforts.

If this chapter 11 Case were converted to a chapter 7 liquidation, the primary difference would be that a trustee would be appointed by the Court. That trustee would liquidate the remaining assets of the Estate and distribute the proceeds in accordance with the priorities established under the Bankruptcy Code, following the completion of the liquidation and resolution of all claims.

The present value of the distributions to Creditors would be less in a chapter 7 than they will be under the Plan for the following two primary reasons: (1) the chapter 7 trustee would likely incur additional costs, including the trustee's own fee and those of his professionals; and (2) the distribution of cash by a chapter 7 trustee could be delayed for a significant period of time until the chapter 7 case was fully administered.

The chapter 7 trustee and the trustee's professionals would not have the familiarity with the Debtor's prior business operations, or any other potential claim objections and Causes of Action, including Avoidance Actions, to recover more assets for the Estate. The chapter 7 trustee might have to engage new professionals, who would need to duplicate the learning curve of the Committee's attorneys and the Debtor's professionals. Moreover, the chapter 7 trustee would be at a particular disadvantage with respect to the Roadtrek litigation. As discussed in Section VI.M.1. above, the Roadtrek litigation is still pending.

In addition, the chapter 7 trustee's fees could be as much as three percent (3%) of all funds distributed, which would be well in excess of $4,200,000, resulting in a trustee's fee of no

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

less than $126,000.  All of these additional expenses would reduce the total amount distributed to Holders of Claims in chapter 7.

Moreover, the distributions that would be made if this chapter 11 Case were converted to a case under chapter 7 would likely be substantially delayed.  The chapter 7 trustee would likely also seek to complete all Claim Objections and any litigation he or she chooses to pursue to recover on account of Causes of Action.  In contrast, under the Plan, the Liquidation Trustee has the ability to make interim distributions prior to completing the liquidation and resolution of all claims.

Thus, in a chapter 7 liquidation, it is likely that the total net liquidation proceeds would be less than the proceeds under the Plan, and that the value of that distribution would be further reduced by the delay in distribution which is likely to occur.

Attached hereto as Exhibit 8 and incorporated herein by this reference is a liquidation analysis which sets forth the Plan Proponents' best estimate of the distribution that will be made Creditors.  In a chapter 7 liquidation the net proceeds projected would need to be further reduced for trustee fees, additional professional fees and delay.  Accordingly the Debtor and the Committee believe that all Creditors and Interest Holders will receive at least as much under the Plan as such Creditor or Interest Holder would receive in a chapter 7 liquidation.

Based on the foregoing, the Plan Proponents believe that the Plan satisfies the requirements of the "Best Interests Test," and provides Creditors at least as much present value as they would receive in a chapter 7 liquidation.

**THE ANALYSIS ATTACHED AS EXHIBIT 8 , INCLUDING THE CLAIMS ESTIMATES, WAS PREPARED SOLELY TO ASSIST THE COURT IN MAKING THE FINDINGS REQUIRED UNDER SECTION 1129(a)(7) OF THE BANKRUPTCY CODE AND MAY NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.**

**THE PLAN PROPONENTS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION REQUIRES ESTIMATES AND ASSUMPTIONS ABOUT FUTURE EVENTS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT LITIGATION AND OTHER UNCERTAINTIES AND CONTINGENCIES BEYOND THE**

**CONTROL OF THE PLAN PROPONENTS OR A CHAPTER 7 TRUSTEE.  NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.  THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS REPRESENTED IN THE LIQUIDATION ANALYSIS ATTACHED AS <u>EXHIBIT 8</u>.**

  **E.**  **Feasibility**

   The Bankruptcy Code provides that a plan may only be confirmed if confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, unless such liquidation or reorganization is proposed in the Plan.  11 U.S.C. § 1129(a)(11).  This is referred to as the "feasibility" requirement.

   There are at least two important aspects of the feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.

   As noted on <u>Exhibits 9 and 10</u> (higher case and lower case projections) as of the Effective Date, the Debtor projects to have available on the Effective Date between $2,272.000 and $2,585,000 depending on the recovery from contracts in transit and sales of inventory. As described in <u>Exhibit 8</u> and Section V.B.5 above, the Debtor anticipates realizing during the administrative period prior to the Effective Date an additional amount on account of the sale of inventory, ranging from $466,000 to $696,000, and an additional $494,000 on account of closing CIT transactions through the Effective Date.  Through the Effective Date, the Plan Proponents estimate that at least an additional $300,000 in Professional Fee Claims will accrue.  *See* Liquidation Analysis and cash flow projections attached as <u>Exhibits 8, 9 and 10</u> for a summary of these amounts and the cash which it is estimated will be available on the Effective Date. Total expenses and Plan obligations to be paid as of the Effective Date are projected not to exceed $1,700,000. Accordingly, the Debtor anticipates having excess cash of between $572,000 and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

1    $585,000 after payment of obligations due as of the Effective Date. Among the expenses to be

2    paid as of the Effective Date is an amount of $571,000 reserved for Old Ranch.  As noted in

3    Section V.B.8 above, the administrative claim of Old Ranch is subject to objection. For this

4    reason, the Plan Proponents believe that the first aspect of feasibility is satisfied.

5         The second aspect of feasibility considers whether the Debtor will have enough cash over

6    the life of the Plan to make the required Plan payments.  Although the Plan is a liquidating Plan,

7    the Plan Proponents believe that proceeds from avoidance actions and proceeds from the

8    Roadtrek litigation will only be realized over the course of the next two to three years.

9         In regard to avoidance actions, the Debtor's bankruptcy schedules reflect payment to

10    creditors within the 90 days prior to the Petition Date in excess of $5,000,000 (excluding

11    payments to CDF.)   The Debtor has not yet performed an analysis of preference recoveries but

12    projects likely preference recoveries ranging from $200,000 to $1 million.  The Roadtrek

13    Litigation is described in Section VI.M.1, and as discussed, the Plan Proponents estimate that the

14    recovery from the Roadtrek Litigation, net of fees, will range from $2,160,000 to $3,240,000.

15         Another projected source of recovery is a $250,000 payment to the Liquidating Trustee

16    under the CDF Settlement (the "Holdback Amount").   There are, however, requirements that

17    must be satisfied before the Holdback Amount will be paid to the Liquidating Trustee, and it is

18    impossible to predict with certainty at this time whether those requirements will be met.

19    Specifically, the CDF Settlement provides that CDF will pay the Liquidating Trustee $250,000 in

20    the event that within 180 days after the Effective Date, the aggregate recovery from (i) Recovery

21    Action Proceeds (as defined in the CDF Settlement),[2] plus (ii) proceeds from the Debtor's

22    liquidation of the CIT, inventory and other collateral released to the Debtor by CDF, is less than

23    $4,700,000, but only to the extent of the Shortfall (as defined in the CDF Settlement).   The

24    payment of the $250,000 to the Liquidating Trustee is also contingent on the Debtor's diligent

25    efforts to liquidate its assets.

26

27    _____

28    [2] The proceeds of the Roadtrek Litigation are not included in the definition of Recovery Action Proceeds set
forth in the CDF Settlement and thus do not count toward the $4,700,000 cap under the CDF Settlement.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Finally, the Plan contemplates that that the priority tax payment will be paid in three years

2    to coincide with the litigation recoveries discussed above.  Therefore, the Plan Proponents believe

3    that the Plan satisfies the feasibility requirement set forth in Bankruptcy Code section 1129.

## IX.    EFFECT OF CONFIRMATION OF THE PLAN

5    **A.    No Discharge for Debtor**

6    The Plan is a liquidating Plan and the Debtor will not receive a discharge.

7    **B.    Post-Confirmation Injunction**

8    The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and

9    Interests with respect to the Estate, the Liquidation Trust, and their Assets.  To that end, except as

10   expressly provided herein, at all times on and after the Effective Date, all Persons who have been,

11   are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be

12   permanently enjoined from taking any of the following actions on account of any such Claims or

13   Interests, against the Estate, the Liquidation Trust, or their Assets (other than actions brought to

14   enforce any rights or obligations under the Plan and any Claim, contested matters, or adversary

15   proceedings pending in the Case as of the Effective Date):

16        1.    commencing, conducting, or continuing in any manner, directly or indirectly, any

17   suit, action, or other proceeding of any kind against the Estate, the Liquidation Trust, or the

18   Liquidation Trustee, their successors, or their respective property or assets (including, without

19   limitation, all suits, actions, and proceedings that are pending, other than before the Court or by

20   explicit provision of the Court, as of the Effective Date);

21        2.    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any

22   manner or means whether directly or indirectly any judgment, award, decree, or Order against the

23   Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective

24   property;

25        3.    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,

26   any Lien against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or

27   their respective Assets; and

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

4.	proceeding in any place whatsoever against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective Assets, in any manner that does not conform to or comply with the provisions of the Plan.

5.	No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of the Liquidation Trustee or Order of the Court acquired by motion on notice to the Liquidation Trustee.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Liquidation Trust may be entitled, the Claims of such Holder shall be disallowed and any Distributions made on account of such Claims shall be repaid by such Holder to the Liquidation Trust.

### C.	Modification of Plan

The Plan Proponents may modify the Plan at any time before confirmation.  However, the Court may under certain circumstances require a new disclosure statement and/or revoting on the Plan if the Plan Proponents modify the Plan prior to confirmation of the Plan.

After confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).  Under the Plan, the Liquidation Trustee succeeds to the rights of the Debtor and the Committee to modify the Plan.

### D.	Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Liquidation Trust shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the Debtor, and those parties who have requested post-Effective Date notice in accordance with Section 7.15 of the Plan.  Further status reports shall be filed every 120 days and served on the same entities.

### E.	Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED
DISCLOSURE STATEMENT

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under Bankruptcy Code section 1112(b), after the Plan is confirmed.  If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property.

### G.    Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidation Trustee shall file a motion with the Court to obtain a final decree to close the Case.

[remainder of page intentionally left blank]

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327818.9

58

SECOND AMENDED
DISCLOSURE STATEMENT

X.   **RECOMMENDATION AND CONCLUSION**

The Debtor and the Committee believe that Plan confirmation and implementation are preferable to any feasible alternative. **Accordingly, the Debtor and the Committee urge Persons who hold Claims entitled to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots as directed the Disclosure Statement.**

DATED AS OF:  August 4, 2015

MEGA RV CORP., a California Corporation; DBA McMahon's RV; DBA McMahon's RV Irvine; DBA McMahon's RV Colton; DBA McMahon's RV Palm Desert

By: _____

GlassRatner Advisory & Capital Group, LLC
By: J. Michael Issa
Financial Advisors to the Debtor

SUBMITTED BY:

GOE & FORSYTHE, LLP

By: _____
    ROBERT P. GOE
    DONALD W. REID
    General Bankruptcy Attorneys for Debtor and
    Debtor in Possession

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: _____
    BRIAN L. DAVIDOFF
    COURTNEY E. POZMANTIER
    JAMES C. BEHRENS
    Counsel for Official Committee of
    Unsecured Creditors

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## X.   RECOMMENDATION AND CONCLUSION

The Debtor and the Committee believe that Plan confirmation and implementation are preferable to any feasible alternative. **Accordingly, the Debtor and the Committee urge Persons who hold Claims entitled to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots as directed the Disclosure Statement.**

DATED AS OF:  August 4, 2015

MEGA RV CORP., a California Corporation; DBA McMahon's RV; DBA McMahon's RV Irvine; DBA McMahon's RV Colton; DBA McMahon's RV Palm Desert

By:_____
    GlassRatner Advisory & Capital Group, LLC
    By: J. Michael Issa
    Financial Advisors to the Debtor

SUBMITTED BY:

GOE & FORSYTHE, LLP

By:_____
    ROBERT P. GOE
    DONALD W. REID
    General Bankruptcy Attorneys for Debtor and
    Debtor in Possession

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By:_____
    BRIAN L. DAVIDOFF
    COURTNEY E. POZMANTIER
    JAMES C. BEHRENS
    Counsel for Official Committee of
    Unsecured Creditors

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590