# EXHIBIT 1

BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Counsel For Official Committee of Unsecured
Creditors

ROBERT P. GOE - State Bar No. 137019
rgoe@goeforlaw.com
DONALD W. REID - State Bar No. 281743
dreid@goeforlaw.com
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612

General Bankruptcy Attorneys for
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 8:14-bk-13770-MW |
| Mega RV Corp., dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, | Chapter 11 |
| | **SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR DATED AUGUST 4, 2015** |
| Debtor and Debtor in Possession. | |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I. PLAN OBJECTIVES AND OVERVIEW ...................................................................... 1

    Section 1.1.    General Objectives. ........................................................................ 1

    Section 1.2.    Disclosure Statement. ..................................................................... 1

II. DEFINITIONS AND RULES OF INTERPRETATION .............................................. 1

    Section 2.1.    Definitions ....................................................................................... 1

    Section 2.2.    Rules of Interpretation. ................................................................ 13

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......................... 14

    A.    Classification of Claims ................................................................ 14

    Section 3.1.    Classification Generally. ............................................................... 14

    Section 3.2.    Classes of Claims and Interests..................................................... 14

    B.    Unclassified Claims. ..................................................................... 15

    Section 3.3.    Administrative Claims and Priority Tax Claims............................ 15

    Section 3.4.    Administrative Claims. ................................................................. 15

    Section 3.5.    Administrative Claim Bar Date .................................................... 16

    Section 3.6.    Administrative Claim Objection Deadline.................................... 17

    Section 3.7.    U.S. Trustee Fees .......................................................................... 17

    Section 3.8.    Professional Fee Claims ................................................................ 17

    Section 3.9.    Priority Tax Claims....................................................................... 18

    C.    Classified Claims. ......................................................................... 19

    Section 3.10.    Classes of Secured Claims ............................................................ 19

    Section 3.11.    Priority Non-Tax Claims............................................................... 28

    Section 3.12.    CUSTOMER Claims and Warranty Claims ............................... 30

    Section 3.13.    General Unsecured Claims. ........................................................... 31

    Section 3.14.    Subordinated Claims ..................................................................... 32

    Section 3.15.    Interests. ........................................................................................ 32

IV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................................. 33

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12

Section 4.1.    Rejection. ....................................................................................... 33

Section 4.2.    Rejection Claims. ........................................................................... 33

V. PLAN IMPLEMENTATION ................................................................................. 34

A.        General Implementation Provisions.......................................... 34

Section 5.1.    Conditions to Plan Effectiveness ................................................ 34

Section 5.2.    Actions on the Effective Date. ..................................................... 34

Section 5.3.    Corporate Action............................................................................ 34

Section 5.4.    Vesting and Transfer of Assets .................................................... 34

Section 5.5.    Provisions Relating to Federal Income Tax Compliance ......... 35

B.        Liquidation Trust. .......................................................................... 36

Section 5.6.    Authorization of Liquidation Trustee ......................................... 36

Section 5.7.    Representative of the Estate .......................................................... 37

Section 5.8.    Funding of Post Effective Date Trust Expenses ......................... 37

Section 5.9.    Operating Reserve........................................................................... 37

Section 5.10.   Abandonment .................................................................................. 38

Section 5.11.   38

Section 5.12    Termination of Liquidation Trust ............................................... 38

C.        Provisions Governing Distributions............................................ 39

Section 5.13.   Estimation. In order to establish reserves under this Plan and avoid
                undue delay in the administration of.......................................... 39

Section 5.14.   Distributions on Account of Allowed Claims. Except as otherwise
                provided herein, a Final Order,..................................................... 39

Section 5.15    Distributions on Account of Disputed Claims and Estimated
                Claims.  Except as otherwise ....................................................... 39

Section 5.16.   No Distributions Pending Allowance. ......................................... 39

Section 5.17.   Disputed and Estimated Claims Reserve.  On and after the Effective
                Date, the Liquidation Trust .......................................................... 39

Section 5.18.   Reduced or Disallowed Secured Claims...................................... 40

Section 5.19.   Reserve Amounts for Disputed and Estimated Claims.............. 40

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Section 5.20.  Settling Disputed Claims.  The Liquidation Trust shall be authorized to settle, or withdraw any ........................................40

Section 5.21.  Cash Distributions ........................................................................40

Section 5.22.  Setoff and Recoupment ................................................................40

Section 5.23.  No De Minimis Distributions .......................................................41

Section 5.24.  Fractional Cents ...........................................................................41

Section 5.25.  Undeliverable or Unclaimed Distributions ..................................41

Section 5.26.  Undeliverable Distributions Reserve. ..........................................42

Section 5.27.  Negotiation of Checks .................................................................42

Section 5.28.  Record Date .................................................................................43

Section 5.29.  Postpetition Interest .....................................................................43

Section 5.30.  Sequence of Payments .................................................................43

Section 5.31.  Withholding and Reporting Requirements ...................................44

Section 5.32.  Claims Transfer ...........................................................................45

Section 5.33.  Maximum Amount of Distributions ............................................45

Section 5.34.  Final Distributions On Liquidation Trust Interests. ....................45

VI. LITIGATION AND CLAIMS OBJECTIONS ...........................................................46

Section 6.1.  Preservation of Causes of Action ................................................46

Section 6.2.  Objections to and Resolution of Disputed Claims .......................47

VII. OTHER PLAN PROVISIONS ...............................................................................48

Section 7.1.  Recourse for Claims ....................................................................48

Section 7.2.  Exculpation and Release of Debtor, Committee, and Professionals ..........49

Section 7.3.  Injunction Enjoining Holders of Claims .....................................49

Section 7.4.  Injunctions or Stays .....................................................................50

Section 7.5.  Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws ............................................................50

Section 7.6.  No Admissions .............................................................................51

Section 7.7.  Severability of Plan Provisions ...................................................51

Section 7.8.  Governing Law ............................................................................52

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Section 7.9.    Successors and Assigns ................................................................. 52

Section 7.10.    Nonconsensual Confirmation .......................................................... 52

Section 7.11.    Revocation of the Plan .................................................................... 52

Section 7.12.    Amendment ...................................................................................... 52

Section 7.13.    Saturday, Sunday, or Legal Holiday .............................................. 52

Section 7.14.    Post-Effective Date Status Reports ................................................ 53

Section 7.15.    Post-Effective Date Notice ............................................................. 53

Section 7.16.    Maintenance and Disposition of Trust Records ............................. 53

Section 7.17.    Retention of Jurisdiction ................................................................ 53

Section 7.18.    Entry of a Final Decree ................................................................... 55

VIII. RECOMMENDATIONS ................................................................................... 56

Section 8.1.    Recommendations of the Committee and the Debtor ...................... 56

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# I.

## PLAN OBJECTIVES AND OVERVIEW

**Section 1.1.  General Objectives.**  The objectives of the Plan[1] are to complete the liquidation of any remaining Assets of the Debtor, and to transfer the Assets of the Debtor and the Estate, including the Causes of Action but excluding the Administrative Claims Reserve, to the Liquidation Trust, which shall liquidate the Causes of Action and all other Trust Assets, and distribute the proceeds thereof to Holders of Allowed Claims that will receive Liquidation Trust Interests in respect of their Allowed Claims.  The Plan divides Creditors and Interest Holders of the Debtor into Classes based on their legal rights and interests and provides for the satisfaction of Claims against the Debtor from the Assets transferred to the Liquidation Trust.  The Interest Holders of the Debtor will not receive or retain any property or value on account of their Interests.

**Section 1.2.  Disclosure Statement.**  A detailed overview of the Case is set forth in the Disclosure Statement, and parties should review the Disclosure Statement carefully for an understanding of both the Case and the Plan.

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.1.    Definitions**.  The following terms (which appear in the Plan as capitalized terms), when used in the Plan, have the meanings set forth below:

"**Administrative Claim**" means a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Professional Fee Claims, and (d) all fees payable under 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" means unless another date is set by the Court, the date that is thirty (30) days after the Effective Date, or, if such date is not a Business Day, the next

---

[1] Capitalized terms have the meanings set forth in section 2.1.

Business Day thereafter; provided, however, that the Administrative Claim Bar Date for Professional Fee Claims is the date set forth in Section 3.8.

"**Administrative Claim Objection Deadline**" means the deadline set forth in Section 3.6.

"**Allowed" or "Allowed _____ Claim**" means

      (a)      with respect to a Claim arising prior to the Petition Date

          (i)      Either:  (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

          (ii)      Either:  (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

      (b)      with respect to a Claim arising on or after the Petition Date, a Claim allowed pursuant to Sections 3.5 and 3.6 of the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Case is not an Allowed Claim.

"**Administrative Claims Reserve**" means cash in an amount estimated to satisfy all known Administrative Claims that will be reserved by the Debtor on the Effective Date for the payment of Administrative Claims.

"**Assets**" means all assets of the Estate, including property of the Estate under section 541 of the Bankruptcy Code, and all rights and privileges of the Debtor and the Estate, including attorney-client and similar privileges.

"**Available Cash**" means: all Cash of the Liquidation Trust, including Cash realized from the sale or other disposition of Trust Assets, recoveries from Causes of Action, proceeds from the CDF Agreement, or from any other source, and the interest earned on its funds, including on any reserves; less the amount of Cash estimated and reserved by the Liquidation Trust to pay all unpaid Allowed Administrative Claims not paid from the Administrative Claims Reserve, Allowed Priority Tax Claims, Priority Non-Tax Claims, Customer and Warranty Claims, and Allowed Secured Claims (except those Secured Claims as to which the Collateral Election is made); and any other

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

costs to carry out the provisions of the Plan and the Liquidation Trust Agreement on and after the Effective Date.

"**Avoidance Action**" means a Cause of Action, adversary proceeding, lawsuit, or other proceeding arising under or relating to Bankruptcy Code sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553, or any fraudulent conveyance, fraudulent transfer, or preference laws, or any Cause of Action arising under or relating to any similar state law or federal law that constitutes, or the recoveries from which constitute, property of the Estate under Bankruptcy Code section 541, whether or not an adversary proceeding, lawsuit, or other proceeding is initiated before or after the Effective Date.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as applicable in the Case.

"**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure, as applicable in the Case.

"**Bankruptcy Schedules**" means the Schedule of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case.

"**Beneficiaries**" means, with respect to the Liquidation Trust and in accordance with Treasury Regulation section 301.7701-4(d), the beneficiaries of such Liquidation Trust that are in the Holders of Liquidation Trust Interests that will receive Distributions from the Liquidation Trust in accordance with the Plan, Confirmation Order, and Liquidation Trust Agreement.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Case**" means the chapter 11 case of the Debtor.

"**Cash**" means cash or cash equivalents including bank deposits, checks, or other similar items.

"**Causes of Action** " means any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, the right to object to Claims; all Claims pursuant to Section 362 of the Bankruptcy Code; all Avoidance Actions, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including rights, actions, causes of action, and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, or under any other theory of law.

**"CDF"** means GE Commercial Distribution Finance Corporation.

**"CDF Agreement"** means that certain agreement entered into dated as of November 24, 2014 between the Debtor, the Committee, CDF and others, and approved by the Court pursuant to order entered on December 22, 2014 [Docket No.395], pursuant to which parties thereto agreed to resolve, settle and compromise all disputes between and among them without admission of liability, and as a result of which CDF agreed to release from its collateral the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the Agreement), (b) the Contracts In Transit (as defined in the Agreement), (c) FF&E (as defined in the Agreement) and (ii) in accordance with, and subject to the limitations contained in the Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the Agreement) paid to Debtor by CDF, but not to exceed $4,700,000.

**"CDF Liens"** means those certain UCC-1 financing statements filed with the Secretary of State of the State of California April 26, 2006 file no**.** 06-7067960869 and UCC continuation statement filed on December 8, 2010 file number 06-7067960869.

**"Claim"** means a claim as defined in Bankruptcy Code section 101(5) against the Debtor.

**"Claims Bar Date"** means November 14, 2014 which is the date(s) fixed for filing proofs of claim against the Estate pursuant to the Court's Order entered on September 4, 2014, or any other applicable Court Order.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

"**Claims Objection Deadline**" means the deadline for the Liquidation Trustee to file objections to Claims other than Administrative Claims as set forth in Section 6.2.

"**Collateral**" means any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable federal, state, or international law.

"**Collateral Election**" means the election of the Liquidation Trustee with respect to Allowed Secured Claims under section 3.10, Class 1(j), or Allowed Customer Claims under section 312.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Case by the U.S. Trustee.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing Date**" means the first date on which the Court holds the hearing to consider the confirmation of the Plan pursuant to Bankruptcy Code section 1128(a).

"**Confirmation Order**" means the Order of the Court confirming the Plan under Bankruptcy Code section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California, or any other court that exercises jurisdiction over the Case.

"**Creditor**" means the Holder of a Claim against the Debtor.

"**Customer**" means a person who either (1) purchased or leased, or became obligated to purchase or lease, a motor vehicle to be used primarily for personal, family, or household purposes from the Debtor, or (2) consigned for sale a motor vehicle that was used primarily for personal, family, or household purposes to the Debtor.

"**Customer Claims**" means: an unsatisfied claim for economic loss from a Customer, as a result of the failure of the Debtor to do any of the following: (i) Remit license or registration fees received or contractually obligated to be paid from a Customer to the Department of Motor Vehicles; (ii) Pay to the legal owner of a vehicle that was transferred as a trade-in by a Customer to the Debtor the amount necessary to discharge the prior credit balance owed to the legal

owner; (iii) Pay to the lessor of a vehicle, transferred as a trade-in by a Customer to the Debtor, the amount the dealer or lessor-retailer agreed to pay to the lessor, if the vehicle was registered in accordance with Veh. Code § 4453.5; (iv) Pay the amount specified in a consignment agreement to a Customer after the sale of a consigned vehicle; or (v) Provide a Customer who purchased a vehicle from the Debtor with good title to the vehicle, free from any security interest or other lien, encumbrance, or claim, unless otherwise clearly and conspicuously provided for by the written sale agreement.

"**Debtor**" means Mega RV Corp., a California corporation dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert, debtor and debtor in possession in the Case.

"**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant to Bankruptcy Code section 1125.

"**Disclosure Statement Order**" means the Order entered by the Court approving the Disclosure Statement, which may be combined with the Confirmation Order.

"**Disputed Claim**" means any Claim: (a) as to which a proof of claim has been filed and the dollar amount of such Claim is not specified in a fixed liquidated amount; (b) as to which a proof of claim has been timely filed and the dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules as not being disputed, contingent, or unliquidated, or is listed in the Bankruptcy Schedules with a different priority than reflected in the proof of claim; (c) as to which a proof of claim has not been timely filed and such Claim is not included in the Bankruptcy Schedules or is listed in the Bankruptcy Schedules as contingent, disputed, or unliquidated; (d) as to which a proof of claim was required to be filed and was not timely filed; (e) as to which an objection has been filed and such objection has neither been overruled nor been denied by a Final Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to which an objection: (i) has been timely filed (or the deadline for objection to such Administrative

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Claim has not expired) and (ii) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed and Estimated Claim Reserve"** shall have the meaning set forth in Section 5.17.

"**Distribution**" means any transfer under the Plan or Liquidation Trust Agreement of Cash or other property to Holders of Liquidation Trust Interests.

"**Effective Date**" means the date the Plan becomes effective, as set forth in Section 5.1.

"**Estate**" means the estate created in the Case under Bankruptcy Code section 541.

**"Estimated Claim"** shall have the meaning set forth in Section 5.13 hereof.

"**Final Order**" means an Order of the Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any rights to appeal, petition for certiorari, or seek reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor and the Committee (on or prior to the Effective Date) or the Liquidation Trustee (after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing has been sought or filed, such Order of the Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or certiorari, reargument, and rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired as a result of which such Order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such Order shall not cause such Order not to be a Final Order.

"**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Customer Claim or a Warranty Claim, or a Subordinated Claim.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

"**Governmental Authority**" means any international, federal, state, or local government or other political subdivision, department or agency thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory, or administrative governmental powers or functions.

"**Holder**" means the holder of a Claim against or Interest in the Debtor or the holder of a Liquidation Trust Interest.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means the interest of any Person who holds an equity security in the Debtor no matter how held.

"**Lien**" means any mortgage, pledge, lien, encumbrance, charge, security interest, or other charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Liquidation Trust**" means the Mega Liquidation Trust.  The Liquidation Trust is to be organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), except to the extent that it is a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.

"**Liquidation Trust Agreement**" means that certain Liquidation Trust Agreement and Declaration of Trust by and between the Debtor and the Liquidation Trustee, to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form appended as an exhibit to the Disclosure Statement.

"**Liquidation Trustee**" means the trustee of the Liquidation Trust, who has the powers and responsibilities set forth in the Plan, Confirmation Order, and Liquidation Trust Agreement, or any successor trustee appointed pursuant to the Liquidation Trust Agreement.

"**Liquidation Trust Interest**" means a non-certificated beneficial interest in the Trust Assets entitling the Holder of an Allowed Claim to Distributions from the Liquidation Trust as

provided in the Plan, Confirmation Order, and Liquidation Trust Agreement, which Liquidation Trust Interest shall not be transferable.  Except as provided by an Order of the Court, a Holder's Liquidation Trust Interest shall be equal to the amount of such Holder's Allowed Claim.

"**Liquidation Trust Net Proceeds**" means, as determined by the Liquidation Trustee after: (a) all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims (except those Secured Claims and Customer and Warranty Claims as to which the Collateral Election is made) have been finally resolved such that no Disputed Administrative Claims, Disputed Priority Claims, Disputed Customer and Warranty Claims, Disputed Secured Claims, or other Disputed Claims remain ; and (b) no material assets of the Liquidation Trust remain to be recovered or liquidated to Cash, any and all Available Cash remaining after: (y) payment in full of all Post Effective Date Trust Expenses; and (z) the maintenance of the Operating Reserve sufficient for all projected Post Effective Date Trust Expenses until the later of the closing of the Case under Bankruptcy Code section 350 or the termination of such Liquidation Trust.

"**Operating Reserve**" means the Cash Reserve to be established by the Liquidation Trustee for the payment of all actual and projected Post Effective Date Trust Expenses.

"**Order**" means any writ, judgment, decree, injunction, or order of any Governmental Authority (whether preliminary or final).

"**Ordinary Course Administrative Claim**" means a Claim for an administrative cost or expense that is allowable under Bankruptcy Code section 503(b) that is incurred in the ordinary course of the Debtor's operations or the Case, or for which payment is authorized by a Final Order of the Court.

"**Penalty Claim**" means a Claim that would be subject to Bankruptcy Code 726(a)(4) if the Case had been filed under chapter 7 of the Bankruptcy Code.

"**Person**" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a Governmental Authority.

"**Petition Date**" means June 15, 2014, the date on which the Debtor filed its voluntary petition commencing the Case.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

"**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules thereto.

"**Post Effective Date Trust Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date related to the implementation of the Plan or the Liquidation Trust Agreement, including: (a) the expenses of the Liquidation Trustee in administering and implementing the Plan, including any Taxes incurred by the Liquidation Trust or on the Trust Assets and accrued on or after the Effective Date; (b) all U.S. Trustee Fees which are due on or after the Effective Date; (c) the expenses of the Liquidation Trustee and the Liquidation Trust in making the Distributions as required by the Plan or the Liquidation Trust Agreement, including paying Taxes, filing Tax returns, and paying professionals' fees with respect to such Distributions; (d) the expenses incurred by the Liquidation Trust and the Liquidation Trustee relating to the Liquidation Trust; (e) the expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Liquidation Trustee or the Liquidation Trust relating to the Liquidation Trust; and (f) the expenses related to the Liquidation Trust's indemnity obligations, the purchase of errors and omissions insurance, and/or other forms of indemnification.

"**Postpetition**" means the time after the Petition Date.

"**Priority Claims**" means Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority under Bankruptcy Code section 507(a).

"**Priority Tax Claim**" means a Claim entitled to priority under Bankruptcy Code section 502(i) or 507(a)(8).

"**Professional Fee Claim**" means: (a) a claim under Bankruptcy Code section 327, 328, 330, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date; or (b) a claim under Bankruptcy Code section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code section

1    503(b)(3)(D) for expenses incurred prior to the Effective Date in making a substantial contribution in

2    the Case.

3    "**Professionals**" means those Persons: (a) retained pursuant to an Order of the Court

4    in accordance with section 327, 1103, or 1106 of the Bankruptcy Code and to be compensated for

5    services rendered prior to the Effective Date pursuant to section 327, 328, 329, 330, or 331 of the

6    Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court

7    pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

8    "**Pro Rata Share**" means, for the purpose of Distributions on account of Liquidation

9    Trust Interests issued on account of Allowed Class 4, a proportionate share such that the ratio of

10    (a) the amount of consideration to be distributed on account of all such Liquidation Trust Interests to

11    such Class to (b) the amount of all such Liquidation Trust Interests in such Class; provided,

12    however, that for purposes of determining Interim Dividends, if any, the amounts of Disputed

13    Customer and Warranty Claims and Disputed General Unsecured Claims, if any, shall be included in

14    the calculation of (b) above.

15    "**Recovery Corporation**" means the Consumer Motor Vehicle Recovery Corporation

16    established pursuant to Section 12200 et. seq. of the California Vehicle Code.

17    "**Recovery Claim**" means a Claim submitted by a Customer to the Recovery

18    Corporation on account of a Customer Claim or a Warranty Claim.

19    "**Rejection Claims Bar Date**" shall have the meaning set forth in Article IV hereof.

20    "**Secured Claim**" means a Claim that is secured by a valid and unavoidable Lien

21    against property in which the Estate has an interest or that is subject to setoff under Bankruptcy

22    Code section 553.  A Claim is a Secured Claim only to the extent of the value of the Holder's interest

23    in the Collateral securing the Claim or to the extent of the amount subject to setoff, whichever is

24    applicable, and as determined under Bankruptcy Code section 506(a).

25    "**Secured Tax Claim**" means a Claim of a Governmental Authority that is secured by

26    a valid and unavoidable Lien against property in which the Estate has an interest or that is subject to

27    setoff under Bankruptcy Code section 553.  A Claim is a Secured Tax Claim only to the extent of the

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12                    -11-

1  value of the Holder's interest in the Collateral securing the Claim or to the extent of the amount

2  subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

3       "**Subordinated Claim**" means any Claim:  (a) that is a Penalty Claim; (b) that is

4  subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510; or that is

5  subordinated to General Unsecured Claims pursuant to the Plan or a Final Order of the Court.

6       "**Tax**" or "**Taxes**" means any federal, state, local, or foreign income, gross receipts,

7  license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits,

8  environmental (including taxes under Internal Revenue Code section 59A), customs duties, capital

9  stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real

10  property, personal property, sales, use, transfer, registration, value added, alternative or add-on

11  minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition

12  thereto, whether disputed or not and including any obligations to indemnify or otherwise assume or

13  succeed to the tax liability of any other Person.

14       "**Trust Assets**" means any and all Cash, the proceeds of the CDF Agreement

15  property, and all other Assets, including Causes of Action of the Liquidation Trust.

16       "**Unclassified Claim**" means any Claim which is not assigned to a Class under the

17  Plan.

18       "**Undeliverable Distributions Reserve**" means the Cash Reserve to be established by

19  the Liquidation Trustee for the purpose of holding undeliverable Distributions as provided in

20  Section 5.26.

21       "**U.S. Trustee**" means the Office of the United States Trustee for the Central District

22  of California.

23       "**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the

24  U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

25       "**Voting Deadline**" means the applicable deadline set by Court Order for timely

26  submitting a Ballot in connection with confirmation of the Plan.

27       "**Warranty Claim**" means the Claim of a Customer of the Debtor relating to a pre-

28  petition contract with the Debtor for a vehicle warranty, or for other parts or services that were

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

obligated to be provided for by the Debtor in connection with the delivery of a vehicle; provided that the Debtor was obligated to provide such warranty or other obligation in writing, and provided further such warranty or other obligation has been paid for by or on behalf of such Customer.

**Section 2.2.**    **Rules of Interpretation.**

a.    The rules of construction in Bankruptcy Code section 102 apply to the Plan.

b.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when determining any time period under the Plan.

c.    A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

d.    The definition given to any term or provision in the Plan supersedes and controls over any different meaning that may be given to that term or provision in the Disclosure Statement. In the event of any conflict or inconsistency between the Plan and the Disclosure Statement, the Plan shall control. In the event of any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control. In the event of any conflict or inconsistency between the Plan and the Liquidation Trust Agreement, the Plan shall control. For the sake of clarity, the hierarchy of controlling documents in the event of a conflict shall be: (i) the Confirmation Order; (ii) the Plan; (iii) the Liquidation Trust Agreement; and (iv) the Disclosure Statement.

e.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

f.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or substantially on those terms. Any reference to an existing document means the document as it has been, or may be, amended, modified, or supplemented.

g.    Unless otherwise indicated, the phrase "to the extent provided in the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

h.    Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Plan.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i.    Captions and headings in the Plan are used only as convenient references and do not affect the meaning of the Plan.

**III.**

**CLASSIFICATION AND TREATMENT OF**

**CLAIMS AND INTERESTS**

**A.    Classification of Claims**

Section 3.1.    **Classification Generally.**  The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  **NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

Section 3.2.    **Classes of Claims and Interests**.Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Classes 1(a) – 1(j) | Secured Claims | Impaired | Yes |
| Class 2(a) – 2(b) | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | Customer Claims and Warranty Claims | Impaired | Yes |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Subordinated Claims | Impaired – Deemed to Reject | No |
| Class 6 | Interests | Impaired – Deemed to Reject | No |

**B.      Unclassified Claims.**

  **Section 3.3.    Administrative Claims and Priority Tax Claims.**  Administrative Claims and Priority Tax Claims are not placed into Classes that are entitled to vote to accept or reject the Plan; instead, such Claims are unclassified.  Such Claims are not considered Impaired and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9.  Holders of Allowed Administrative Claims not paid from the Administrative Claims Reserve and Allowed Priority Tax Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

  **Section 3.4.    Administrative Claims.**  Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Administrative Claims Reserve, or Cash from the Liquidating Trust, if the Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable; provided, however, that

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Allowed Ordinary Course Administrative Claims shall be paid in Cash in full after the Effective

Date by the Debtor or the Liquidating Trust, in accordance with the terms and conditions of the

particular transactions, any applicable agreements, or as otherwise authorized by the Court.

**Administrative Claimant**                              **Estimated Amount at Effective Date**

**A.  Professional Fee Claimants[2]**

| | |
|---|---|
| Brown Rudnick LLP | $29,000 |
| GlassRatner Advisory & Capital Group LLC | $100,000 |
| Goe & Forsythe, LLP | $101,000 |
| Greenberg Glusker Fields Claman & Machtinger LLP | $197,000 |
| **Total Professional Fees** | $427,000 |

**B.  Ordinary Course Claimants[3]:**

| | |
|---|---|
| Altman Colton Properties, Inc. | $65,000 |
| Old Ranch Properties, LLC | $571,000 |
| **Total Ordinary Course Claims** | $636,000 |

      **Section 3.5.    Administrative Claim Bar Date.**  All requests for payment of an

Administrative Claim, except for U.S. Trustee Fees, shall be filed with the Court no later than the

Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan

shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered

prior to the Effective Date.  Within five (5) business days after the Effective Date, the Liquidation

Trustee shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the

Administrative Claim Objection Deadline on all creditors and parties in interest.

---

[2]This amount is through May 31, 2015.

[3]The amount for Altman Colton is set pursuant to Court Order.  The amount for Old Ranch Properties is the maximum administrative recovery for Old Ranch Properties and is subject to challenge by the Debtor and the Committee.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**Section 3.6.    Administrative Claim Objection Deadline.** All objections to the allowance of Administrative Claims, except for Professional Fee Claim subject to Section 3.8, must be filed by parties in interest no later than one hundred twenty (120) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the Holder of an Administrative Claim files a motion with the Bankruptcy Court to have such Administrative Claim become an Allowed Administrative.  The Administrative Claim Objection Deadline may be extended for a one-time ninety (90) day period by the Liquidation Trustee by filing a notice of the extended Administrative Claim Objection Deadline with the Court, and giving notice of such extension to all Creditors and parties in interest.  Thereafter, the Administrative Claim Objection Deadline may be further extended only by an Order of the Court.  If no objection to such Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

**Section 3.7.    U.S. Trustee Fees.** U.S. Trustee Fees shall be paid prior to the Effective Date by the Debtor, and after the Effective Date by the Liquidation Trust, in each case, when due in accordance with applicable law.  The Debtor shall continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, the Liquidation Trustee shall file such reports until the Case is closed under Bankruptcy Code section 350.

**Section 3.8.    Professional Fee Claims.** Each Holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date shall file such Holder's interim (if applicable) and final applications for the allowance of compensation for services rendered and the reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such other date as may be fixed by the Court.  All objections to the allowance of Professional Fee Claims through the Effective Date shall be filed in accordance with applicable Bankruptcy Rules, or such other date as may be fixed by Order of the Court.  To the extent granted by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Claims, by Cash from the Administrative Claims Reserve, or Cash from the Liquidating Trust, if the Administrative Claims Reserve has been exhausted, in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

      **Section 3.9.    Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof, as follows:

      i.     For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the Liquidation Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

      ii.     For all other Allowed Priority Tax Claims, equal quarterly payments over three years with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable (the "First Payment Date"). Subsequent quarterly payments following the First Payment Date, shall commence on the first business day of the third calendar month after the First Payment Date and shall continue quarterly thereafter, and the duration of payment shall not exceed five years from the Petition Date. Interest shall accrue on Allowed Priority Tax Claims to the Internal Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from the Effective Date.  Interest shall accrue on all other Allowed Priority Tax Claims on the amount outstanding from time to time at the rate at 6% per annum from the Effective Date, provided that for Claims owing to the California State Board of Equalization if the Plan is confirmed after December 31, 2015, then interest shall accrue on Claims owing to the California State Board of Equalization on the amount outstanding from time to time at the interest rate for unpaid tax liabilities published by the California State Board of Equalization at http://www.boe.ca.gov/sutax/interates.htm.

| Name | Description | Amount |
|------|-------------|--------|
| Internal Revenue Service | Unassessed payroll taxes based no returns having been filed. | $1,410,419[4] |
| State of Arizona-Dept. of Revenue | Transaction Privilege Tax | $77,997 |
| Franchise Tax Board | Minimum Franchise Fee | $822 |
| County of Orange | Personal property taxes | $2,667 |
| County of San Bernardino | Personal property taxes | $1,162 |
| California Employment Development Dept. | State payroll taxes | $371,672 |
| California State Board of Equalization | Sales and use tax and California Tire fee | $974,286.64 |

**C.    Classified Claims.**

The treatment of Classified Claims and Interests is as set forth below.

**Section 3.10.   Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing claims that purport to be secured by liens on property of the estate and their treatment under the Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| 1(a) | <u>Creditor Name</u>: GE Commercial Distribution Finance Corporation <u>Basis for Security Interest</u> UCC-1 filed on 4/26/06 file no. 06-7067960869; UCC continuation statement filed on 12/8/10 file number 06-7067960869 <u>Collateral</u> | Y- however pursuant to the CDF Agreement, CDF has agreed to their treatment | The Secured Claim of CDF is treated as follows: (i)  The terms of the CDF Agreement are incorporated herein and CDF shall be treated pursuant thereto unless modified herein. (ii) CDF has pursuant to the CDF |

---

[4]This is an amount assessed by the Internal Revenue Service.  The Debtor believes that the more accurate liability to the Internal Revenue Service is $588,000.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | All personal property of debtor, whether such property or debtor's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and whether located, including, without limitation, all accounts, inventory, equipment, fixtures other goods, general intangibles (including, without limitation, payment intangibles), chattel paper (whether tangible or electronic), instruments (including without limitation, promissory notes), deposit accounts, investment property and documents, and all products and proceeds of the foregoing. Without limiting the foregoing, the collateral includes debtor's right to all price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and any other amounts due debtor at any time from a person from whom the debtor has purchased inventory or other personal property. In addition, the collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and other devices in which records are stored. Value of Collateral at Petition Date $25,031,926<br><br>Claim Amount at Petition Date: $31,547,399.05 | and will vote in favor of the Plan. | Agreement released from its collateral to the Estate the "**Collateral Proceeds:**" (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined in the CDF Agreement), (b) the Contracts In Transit (as defined in the CDF Agreement), (c) FF&E (as defined in the CDF Agreement) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 of the CDF Agreement, a total of $2,750,000 including the Holdback Amount (as defined in the CDF Agreement) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined in the CDF Agreement) to CDF (the "**Repurchase Amount**"). The amount of Collateral Proceeds shall be capped at $4,700,000.<br><br>(iii) The Holdback Amount (as defined in the CDF Agreement) shall remain in the Escrow Account until 180 days after the Effective Date and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7 of the CDF Agreement.<br><br>(iv) The CDF Lien, to the extent it remains effective after the CDF Agreement, shall be transferred to the Liquidating Trustee without any representation or warranty as the effectiveness thereof pursuant to that certain Loan and Lien Assignment Agreement to be executed on the Effective Date between the Liquidating Trustee and CDF, |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | attached as Exhibit 4 to the Disclosure Statement. |
| 1(b) | Creditor Name: HWH Corporation<br>Basis for Security Interest: Judgment Lien<br>Collateral: All property subject to enforcement of a money judgment against the judgment debtor to which a judgment lien on personal property may attach under section 697 of the California Civil Code.<br>Claim Amount: $166,000<br>Value of Collateral: $0 | Y | HWH Corporation is treated as a General Unsecured Creditor under the Plan, for the following reasons:<br><br>(i) The judgment Lien of HWH Corporation was recorded with the Secretary of State of the State of California on October 9, 2012. The judgment Lien of HWH Corporation is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the judgment Liens of HMH Corporation.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The notice of judgment Lien filed by HWH Corporation does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) HWH Corporation does not have a security interest in after acquired property, and as such, the security interest of HWH Corporation does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | proceeds as a result of the CDF Agreement.<br><br>(v) HWH Corporation, the sole creditor in Class 1(b), will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(c) | Creditor Name: American Express Bank, FSB ("American Express")<br>Collateral: All assets of the Debtor, whether now owned or hereafter acquired or arising<br>Basis for security interest: UCC Financing Statement<br>Claim Amount: $19,706.36<br>Value of Collateral: $0 | Y | American Express is treated as a General Unsecured Creditor Under the Plan, for the following reasons:<br><br>(i)  The Lien of American Express was recorded with the Secretary of State of the State of California on August 1, 2013.  The Lien of American Express is junior to the CDF Lien.  As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien of American Express.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by American Express does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim.<br><br>(iv) American Express, the sole creditor in Class 1(c), will be treated as a Pro Rata Share with Class 4 |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | creditors, to the extent its Claim is Allowed. |
| 1(d) | Creditor Name: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Cade Phoenix, Ltd. ("Portfolio General") <br> Basis for Security Interest: UCC-1 Financing Statement <br> Collateral: (1) equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio mechanical repair claims receivables; and (3) dealership equity and guarantee. <br> Claim Amount: $1,088,165.30 <br> Value of Collateral: $0 | Y | The Class 1(d) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons: <br><br> (i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.  In addition, the Lien of Portfolio General may also be subject to avoidance under Bankruptcy Code §547. <br><br> (ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien of Portfolio General. <br><br> (iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of a security interest in a commercial tort claim. <br><br> (iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement.<br><br>(v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(e) | Creditor Name: Portfolio General Management Group, on behalf of itself and related parties Standard Group Resources, Ltd. and Dakota Sioux Co., Ltd.<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: (1) Equity value of used car inventory owned and controlled by the borrower that is in excess of any flooring or other lines of credit; (2) current and future Portfolio Group mechanical repair claims receivables.<br>Claim Amount: $1,185,377.32.<br>Value of Collateral: $0 | Y | The Class 1(e) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i)  The Lien of Portfolio General was recorded with the Secretary of State of the State of California on April 16, 2014.  The Lien of Portfolio General is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value.  In addition, the Lien of Portfolio General may also be subject to avoidance under Bankruptcy Code §547.<br><br>(ii) All Assets currently in the estate were obtained as a result of the post-petition efforts of the Debtor and the Committee and are not subject to the Lien of Portfolio General.<br><br>(iii) Substantially all of the Assets currently in the Estate were created as a result of settlement of a commercial tort claim against CDF. The Lien filed by Portfolio General does not satisfy the requirement of UCC section 9-108 for perfection of |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | a security interest in a commercial tort claim. (iv) Portfolio General does not have a security interest in after acquired property, and as such, the security interest of Portfolio General does not attach to post-petition Assets under section 552(a) of the Bankruptcy Code, including avoidance recovery and the cash proceeds as a result of the CDF Agreement. (v) Each of the creditors in Class 1(d), will be treated as a Pro Rata Share with Class 4 creditors, to the extent their Claims are Allowed. |
| 1(f) | Creditor Name: Roadtrek Motor Homes ("Roadtrek") Basis for Security Interest: UCC-1 Financing Statement; Dealer Security Agreement Collateral: none- lien lapsed Claim Amount: $454,964.43 purported secured Claim, $2,559,325.53 purported unsecured claim. Collateral Value: $0 | Y | The Class 1(f) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons: (i)  The Lien of Roadtrek was recorded with the Secretary of State of the State of California on April 24, 2009. The Lien of Roadtrek is junior to the CDF Lien. As of the Petition Date, CDF was undersecured, as a result of which pursuant to Bankruptcy Code §506 all secured creditors junior to the CDF Lien were completely unsecured and of no value. (ii) The Lien of Roadtrek lapsed on April 24, 2014. (iii) The Class 1(f) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(g) | Creditor Name: Reyna Capital Corporation ("Reyna") | Y | The Class 1(g) Creditors are treated as General Unsecured Creditors |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: any and all equipment and software acquired and/or leased from Reyna Capital Corporation, together with any and all (1) substitutions, replacements, upgrades or exchanges therefore, (2) replacement parts, additions, attachments and accessories incorporated therein or affixed thereto, or used in connection therewith, and (3) proceeds thereof including insurance proceeds (both cash and non-cash), all as more fully described on the UCC-1 Financing Statement filed by Reyna.<br>Collateral Value: $0;<br>Claim Amount: valued at $1- claim amount unknown by Debtor | | under the Plan, for the following reasons:<br><br>(i) Reyna Capital holds an unsecured claim against the estate because equipment and software securing Reyna Capital's Claim was abandoned by the Debtor to its prior landlord Old Ranch Properties.<br><br>(ii) The Class 1(g) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(h) | Creditor Name: Southern California Auto Auction<br>Basis for Security Interest: UCC-1 Financing Statement<br>Collateral: All motor vehicle inventory acquired by the Debtor from Southern California Auto Auction; UCC-1 Financing Statement included after-acquired property clause<br>Collateral Value: $0; Debtor is no longer in possession of any vehicles acquired from Southern California Auto Auction<br>Claim Amount: $ | Y | The Class 1(h) Creditors are treated as General Unsecured Creditors under the Plan, for the following reasons:<br><br>(i) The Debtor no longer holds any Assets subject to the Lien of Southern California Auto Auction.<br><br>(ii) The Class 1(h) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(i) | Creditor Name: Bank of America N.A. ("Bank of America")<br>Basis for Security Interest: Security Agreement dated December 12, 2014 granting to Bank of America a security interest in certain Deposits Accounts | Y | (i) The Class 1(i) Claim is secured by a certificate of deposit No. 3192 in the amount of $75,000 (the "Certificate of Deposit").<br><br>(ii) Any other funds of the Debtor held by the Class I(i) shall be released to the Liquidating Trustee |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
|  | Collateral Value: $78,621.45<br>Claim Amount: $1,142,056 |  | on the Effective Date.<br><br>(iii) On the Effective Date the Class I(i) Creditor may offset its Claim by the Certificate of Deposit, and the balance of the Class 1(i) Creditor will be treated as a Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed. |
| 1(j) | Creditor Name:  All other Creditors who have an Allowed Secured Claim other than those identified in Classes 1(a) to 1(i).<br>Basis for Security Interest: Unknown to the Debtor at this time.<br><br>Amount of Claim: Unknown to the Debtor at this time | Y | The Class 1(j) Creditors are treated as General Unsecured Creditors under the Plan as follows:<br><br>Except to the extent that the Holder of an Allowed Claim in Class 1(j) agrees to less favorable treatment, each Allowed Class 1(j) Claims shall be satisfied, discharged, exchanged, and released by, at the option of the Liquidation Trustee: (i) payment to the Holder of the amount of the Allowed Class 1(j) Claims in Cash in full from the Liquidation Trust; (ii) payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Claims to the extent of the value of the Collateral securing such Allowed Claims; (iii) surrender to the Holder of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the Holders is entitled with respect to such Allowed Claim.  In the event that an Allowed Claim in Class 1(j) is treated under clause (i) or (ii) above: (y) the Liens securing such Allowed Claim shall be deemed released and extinguished without further Order of the Court; and (z) Holders of Allowed Class 1(j) |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Claims shall be deemed to hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests. The Liquidation Trustee shall notify the Holder of an Allowed Class 1(j) Claim of the election made by the Liquidation Trustee under this section by the later of: (x) the Effective Date; and (y) the fifteenth (15th) Business Day after such Claim becomes an Allowed Class 1(j) Claim, or, in either case, as soon thereafter as is practicable, and the Liquidation Trustee shall perform such election within thirty (30) days thereafter. |

**Section 3.11.  Priority Non-Tax Claims.**

Certain priority Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of Claims are entitled to priority treatment as follows: the Code requires that each Holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a class of unsecured priority Claim Holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims.

The following chart lists all classes containing Debtor's 507(a)(3), (4), (5), (6), and (7) priority unsecured claims and their treatment under this Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2(a) | Claims for wages, salaries, commissions, including vacation, severance and sick leave pay, earned by an individual within 180 days before the Petition Date, each not to exceed $12,475. | N | Except to the extent that a Holder of an Allowed Claim in Class 2(a) agrees to less favorable treatment, each Holder of an Allowed Class 2(a) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an |

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| | | | aggregate amount equal to such Allowed Class 2(a) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(a) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(a) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests. |
| 2(b) | Unsecured Claims for deposits by individuals arising from the deposit before the Petition Date of money in connection with the purchase, lease or rental of property from the Debtor, or the purchase of services from the Debtor including Customer Claims and Warranty Claims, each not to exceed $2,775. | N | (i)      Except to the extent set forth in sub-paragraph (ii) below, each Holder of an Allowed Class 2(b) Claim shall receive in full satisfaction, discharge, exchange, and release of such Claim, Cash from the Liquidation Trust in an aggregate amount equal to such Allowed Class 2(b) Claim on the later of: (i) the Effective Date; and (ii) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable. Holders of Allowed Class 2(b) Claims shall be deemed to hold Liquidation Trust Interests in the amount of their Allowed Class 2(b) Claims, and payments on such Claims pursuant to the provisions of the Plan shall be deemed to be Distributions on such Liquidation Trust Interests.

(ii) No Customer shall be an Allowed Class 2(b) claimant if such Customer has of the Effective Date been paid a claim a Recovery Claim |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| | | | in excess of $2,775 by the Recovery Corporation. |

**Section 3.12.    Customer Claims and Warranty Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| 3 | Customer Claims and Warranty Claims | Y | Each Holder of an Allowed Customer Claim and/or a Warranty Claim shall, subject to sub-paragraphs (iii) and (iv) below, receive in full satisfaction, discharge, exchange, and release of each Allowed Customer Claim and/or a Warranty Claim: |
| | | | (i) To the extent such Creditor is also the Holder of a Class 2(b) Claim, treatment as a Class 2(b) Claimant; and to the extent the Class 3 Claim exceeds the amount of $2,775 at the option of the Liquidation Trustee: |
| | | | (ii) *(w)* payment of the Pro Rata Share with Class 4 creditors, to the extent its Claim is Allowed; *(x)* payment to the Holder of the sale or disposition proceeds of the Collateral securing such Allowed Class 3 Claim, if any, to the extent of the value of the Collateral securing such Class 3 Claim, if any; *(y)* surrender to the Allowed Class 3 Claim the Collateral securing such Allowed Class 3 Claim, if any; or *(z)* such other treatment as is agreed to among the Holder of the Class 3 Claim and the Liquidating Trustee that does not use Assets that are payable to other Creditors.  Upon the Liquidation Trustee electing any such treatment, the Liens, if any, securing such Class 3 Claim shall be deemed released and extinguished |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | without further Order of the Court; and Holders of Class 3 Claims and/or a Warranty Claim shall be deemed to  hold Liquidation Trust Interests in the amount of the payments to be made on such Claims, and such payments shall be deemed to be Distributions on account of such Liquidation Trust Interests.<br><br>(iii) The Claim of a Class 3 Creditor shall be reduced by, and to the extent of, any Recovery Claim paid by the Recovery Corporation as of the Effective Date.<br><br>(iv)  As a condition precedent to the Allowance of any Claim by the Holder of a Class 3 Claim, such Holder shall return to the Debtor any Assets of the Debtor that are held by the Class 3 Claim Holder.<br><br>(v) To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in this Class 3. |

**Section 3.13.  General Unsecured Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Claims that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Customer | Y | Each Holder of an Allowed Class 4 Claims shall receive in full and complete satisfaction, discharge, exchange, and release of its Allowed |

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| | Claims or Warranty Claims, or Subordinated Claims. | | Class 4 Claim, from the Liquidation Trust, a Pro Rata Share of the Liquidation Trust Net Proceeds, based upon the amount of such Liquidation Trust Interest to the extent provided in the Plan.  Holders of Allowed Class 4 Claims shall be deemed to hold Liquidation Trust Interests to the extent set forth above, and payments on such Claims pursuant to the provisions of the Plan shall deemed to be Distributions on such Liquidation Trust Interests. |

**Section 3.14.  Subordinated Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| 5 | The Claims of Brent McMahon, MIC Investments Company, LLC, McMahon's Rentals, LLC, Kinsale, LLC, and Nevada Street, LLC. | N; Deemed to Reject | The Holders of Class 5 Claims including but not limited to proof of claim number 111, whether such Claims are liquidated or non-liquidated, contingent or non-contingent, disputed or non-disputed, whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in right and time of payment, to the prior payment in full of all senior Classes. |

**Section 3.15.  Interests.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| 6 | Brent McMahon is the sole interest holder of the Debtor. | N; Deemed to Reject | Class 6 Interests shall be deemed cancelled on the Effective Date and Holders of Class 6 Interests shall receive no Distributions or any property under the Plan on account |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | of such Interests |

**IV.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 4.1.    Rejection.**  Effective upon the Effective Date and except as set forth in Class 3, the Debtor hereby rejects all contracts and leases subject to Bankruptcy Code section 365(a) in the Case which have not previously been rejected, except the Debtor does not reject those contracts and leases which have been or will be assumed, or assumed and assigned, with the approval of the Court by separate proceeding in the Case, which approval has been or will be set forth in an Order entered prior to the Effective Date. To the extent that any Holder of a Class 3 claim is a party to an executory contract with the Debtor which executory contract gives rise to the Class 3 claim, then notwithstanding anything else in this Plan to the contrary, such executory contract shall "ride through" the confirmation of the Plan and such executory contract shall be treated as set forth in Class 3.

**Section 4.2.    Rejection Claims.**  All Allowed Claims arising from the rejection of contracts or leases, whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims or, if applicable, Subordinated Claims.

a.    If the rejection of a contract or lease by the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trustee, the Liquidation Trust, or their property, unless a proof of claim is filed with the Court and served on the Liquidation Trustee within thirty (30) days after the Effective Date.

b.    The Rejection Claim Bar Date for contracts and leases rejected by Order entered prior to the Claims Bar Date shall be the later of : (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) the Claims Bar Date.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

c.      The Rejection Claim Bar Date for contracts and leases rejected by Order entered after the Claims Bar Date shall be the earlier of:  (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) thirty (30) days after the Effective Date.

## V.

## PLAN IMPLEMENTATION

**A.      General Implementation Provisions**

**Section 5.1.    Conditions to Plan Effectiveness.**  The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day on which the following conditions have been satisfied or waived:

(a)      the Confirmation Order, in form and substance acceptable to the Committee and the Debtor, has been entered and is not stayed;

(b)      at least fourteen (14) days have passed since entry of the Confirmation Date;

(c)      the Liquidation Trust Agreement has been executed by the parties thereto;

**Section 5.2.    Actions on the Effective Date.**  To the extent not previously completed, on the Effective Date, the following shall occur in implementation of the Plan:

(a)      all actions, documents, and agreements necessary to implement the Plan shall be effected or executed;

(b)      the Liquidation Trust Agreement shall become effective; and

(c)      the Committee shall terminate and disband and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from their service as Committee members.

**Section 5.3.    Corporate Action.**  Upon the Effective Date, all transactions and applicable matters provided for under the Plan shall be deemed to be authorized and approved by the Debtor without any requirement of further action by the Debtor, its shareholders, or its directors.

**Section 5.4.    Vesting and Transfer of Assets.**  On the Effective Date, all Assets of the Debtor and the Estate, other than the Administrative Claims Reserve, will be transferred to and

1    vested in the Liquidation Trust.  To the extent required to implement the transfer of the Assets from

2    the Debtor and the Estate to the Liquidation Trust as provided for herein, all Persons including

3    Governmental Authorities shall cooperate with the Debtor, the Estate, and the Liquidation Trustee to

4    assist in the implementation of such transfers.  On the Effective Date, and as provided in the Plan

5    and sections 1123, 1141, and 1146(a) of the Bankruptcy Code, the Debtor and its Estate are

6    authorized, and required, as provided in the Plan to transfer, grant, assign, convey, set over, and

7    deliver to the Liquidation Trustee, for the benefit of the Liquidation Trust, all of the Debtor's and the

8    Estate's right, title, and interest in and to the Assets, other than the Administrative Claims Reserve,

9    to be transferred free and clear of all Liens, Claims, encumbrances, or interests of any kind in such

10   property, except as otherwise expressly provided for in the Plan.  As of the Effective Date, the Trust

11   Assets of the Liquidation Trust shall be free and clear of all Liens, Claims, and interests of Holders

12   of Claims and Interests , pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy

13   Code, except as otherwise provided in the Plan.

14       **Section 5.5.    Provisions Relating to Federal Income Tax Compliance.**  Except to the

15   extent that the Liquidation Trust or a portion thereof is treated as a "disputed ownership fund" within

16   the meaning of Treasury Regulation section 1.468B-9, transfers to the Liquidation Trust shall be

17   treated for all purposes of the Internal Revenue Code of 1986, as amended, as transfers to Creditors

18   to the extent Creditors are Beneficiaries.  For example, such treatment shall apply for purposes of

19   Internal Revenue Code sections 61(a)(12), 483, 1001, 1012, and 1274.  Any such transfer shall be

20   treated for federal income tax purposes as a deemed transfer to the Beneficiary-Creditors followed

21   by a deemed transfer by the Beneficiary-Creditors to the Liquidation Trust.  The Beneficiaries shall

22   be treated for federal income Tax purposes as the grantors and deemed owners of the Liquidation

23   Trust.  Any valuation of the Trust Assets shall be made by the Liquidation Trustee in reliance on the

24   professionals engaged by the Liquidation Trust, and shall be used consistently by all parties

25   (including the Debtor, the Liquidation Trustee, and the Beneficiaries) for all federal and applicable

26   state and local income Tax purposes and all other applicable reporting purposes.

27       The Liquidation Trustee may, in the Liquidation Trustee's sole discretion, determine the best

28   way to report for Tax purposes with respect to the Liquidation Trust and any Reserve, including: (a)

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   filing a Tax election to treat the Liquidation Trust or any Reserve as a "disputed ownership fund"

2   within the meaning of Treasury Income Tax Regulation section 1.468B-9 for federal income Tax

3   purposes rather than to tax such Reserve as a part of the Liquidation Trust; or (b) electing to report

4   as a separate trust or sub-trust or other entity.  If an election is made to report the Liquidation Trust

5   or any Reserve as a "disputed ownership fund," the Liquidation Trust shall comply with all federal

6   and state tax reporting and Tax compliance requirements of the "disputed ownership fund,"

7   including the filing of a separate federal Tax return for the "disputed ownership fund" and the

8   payment of federal and/or state income Tax due.

9   **B.      Liquidation Trust.**

10      **Section 5.6.     Authorization of Liquidation Trustee.**  To the full extent permitted by law,

11   all rights under Section 363(h) of the Bankruptcy Code are preserved for the benefit of the

12   Liquidating Trust and may be exercised by the Liquidating Trustee.  To the fullest extent

13   permitted by law, all rights under Section 365 including Section 365(f) of the Bankruptcy Code

14   are preserved and may be exercised by the Liquidating Trustee, including prosecution and

15   amendment of any motions to assume or reject executory contracts and leases that are pending on

16   the Effective Date.  To the fullest extent permitted by law, and subject to the express provisions of

17   this Plan, on the Effective Date, the Debtor and its Estate shall be deemed to irrevocably transfer

18   to the Liquidating Trust, as its legal successor, all rights of the Debtor and its Estate to exercise or

19   waive any attorney-client privilege, accountant-client privilege, work-product privilege or other

20   privilege or immunity attaching to any documents or communications (whether written or oral),

21   and the Liquidating Trust is authorized to take any and all necessary actions to effectuate the

22   transfer of such privileges and available defenses.

23      On the Effective Date, the Debtor, the Estate, and the Liquidation Trustee shall be authorized

24   to, and shall, take all such actions as required to transfer the Assets from the Debtor and the Estate to

25   the Liquidation Trust to the extent provided in the Plan.  From and after the Effective Date, the

26   Liquidation Trustee shall be authorized to, and shall take all such actions as required to implement

27   the Liquidation Trust Agreement and the provisions of the Plan, including administering the Causes

28   of Action.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1      The Liquidation Trust is not obligated to file any tax returns on behalf of the Debtor,

2  provided that the Liquidation Trust may, but is not required to, file payroll tax returns of the Debtor

3  to the extent necessary to assist in resolving the claims of taxing authorities against the Liquidation

4  Trust.

5      **Section 5.7.    Representative of the Estate.**  The Liquidation Trustee shall be, and hereby

6  is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B)

7  of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the

8  Liquidation Trust Agreement) to: (a) administer, hold, and liquidate the Trust Assets; (b) administer,

9  investigate, prosecute, settle, and abandon all Causes of Action in the name of, and for the benefit of,

10  the Estate, subject to the limitations set forth in the Plan; and (c) make Distributions provided for in

11  the Plan, including on account of Allowed Claims and Liquidation Trust Interests.   As the

12  representative of the Estate, the Liquidation Trustee shall have all of the rights, powers, and

13  privileges of the Debtor and the Estate, including those with respect to all Causes of Action. The

14  Liquidation Trustee shall be substituted and shall replace the Debtor, the Estate, and the Committee,

15  as applicable, as the party in interest in all litigation pending as of the Effective Date.  In addition,

16  the Liquidation Trustee shall have the rights of the Debtor and the Committee for the purposes of

17  Bankruptcy Code section 1127(b).  As of the Effective Date, subject to the Liquidation Trust

18  Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall be authorized to

19  exercise and perform the rights, powers, and duties held by the Debtor or the Estate with respect to

20  the Causes of Action, including, without limitation, the authority under Bankruptcy Code section

21  1123(b)(3) to provide for the settlement, adjustment, retention, and enforcement of claims and

22  interests of the Estate, without the consent or approval of any third party, and without any further

23  Order of the Court, except as otherwise provided in the Plan or Confirmation Order.

24      **Section 5.8.    Funding of Post Effective Date Trust Expenses.**  All Post Effective Date

25  Trust Expenses shall be expenses of the Liquidation Trust, and the Liquidation Trustee shall disburse

26  funds from the Liquidation Trust for the purpose of paying such expenses.

27      **Section 5.9.    Operating Reserve.**  Payments of all Post Effective Date Operating Expenses

28  shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12                    -37-

Operating Reserve shall be established by the Liquidation Trustee and funded by Cash to pay for all projected Post Effective Date Operating Expenses. The Liquidation Trustee shall continue to fund the Operating Reserve as needed from Trust Assets. Any Cash remaining in the Operating Reserve that the Liquidation Trustee believes is not necessary to fund Post Effective Date Operating Expenses of the Liquidation Trust shall be released from the Operating Reserve and used as Trust Assets in accordance with the Plan.

**Section 5.10.  Abandonment**. If, in the Liquidation Trustee's reasonable judgment, any Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidation Trustee believes in good faith that such property has inconsequential value to the Liquidation Trust or determines it to be too impractical to distribute such property to the Beneficiaries, the Liquidation Trustee may cause the Liquidation Trust to abandon or otherwise dispose of such property, including by donation of such property to a charity.

**Section 5.11.  Dissolution of Debtor.** The Debtor may be, but is not required to be, dissolved by the Liquidating Trustee. The Liquidating Trustee shall have full authority to take any action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Bankruptcy Court. To the extent necessary, any limited liability company agreement or operating agreement or other controlling organization or formation document or agreement for the Debtor shall be deemed amended to authorize the Liquidating Trustee to take such actions.

**Section 5.12 Termination of Liquidation Trust.** The Liquidation Trust will terminate as soon as practicable, but in no event later than the fifth (5th) anniversary of the Effective Date; provided, however, that, the Court, upon motion by the Liquidation Trustee, may, in accordance with the Liquidation Trust Agreement, one or more times extend the term of the Liquidation Trust for a finite period if such extension(s) are warranted by the facts and based upon a finding that such extension(s) are necessary to prosecute the Causes of Actions or to liquidate and distribute all of the Trust Assets.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

C.      **Provisions Governing Distributions.**

**Section 5.13.   Estimation.** In order to establish reserves under this Plan and avoid undue delay in the administration of this Chapter 11 Case, the Liquidation Trust shall have the right to seek an order of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code estimating the amount of any Claim.  All estimations hereunder shall be on notice to the Holder of such Claim, and such estimated amount: (a) shall be used in calculating reserves for such Claim; and (b) shall set the maximum allowed amount of such Claim for purposes of Distributions on account thereof.

**Section 5.14**.  **Distributions on Account of Allowed Claims**. Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims shall be made by the Liquidation Trust at such periodic intervals as the Liquidation Trust determines to be reasonably prudent.

**Section 5.15    Distributions on Account of Disputed Claims and Estimated Claims**. Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed Claims shall be made by the Liquidation Trust at such periodic intervals as the Liquidation Trust determines to be reasonably prudent.

**Section 5.16**.  **No Distributions Pending Allowance**.  Notwithstanding any other Plan provision: (a) Distributions to Holders of Claims will be made, and Liquidation Trust Interests will be issued, only after, and only to the extent that, such Holders hold Allowed Claims; and (b) unless otherwise agreed by the Liquidation Trustee, if any portion of a Claim is a Disputed Claim, the entire Claim shall be treated as a Disputed Claim and no Distribution or issuance of Liquidation Trust Interests to the Holder of such Claim shall be made on account of such Claim unless and until no portion of the Claim is a Disputed Claim.

**Section 5.17**.  **Disputed and Estimated Claims Reserve**.  On and after the Effective Date, the Liquidation Trust shall maintain in reserve such Cash as it estimates to be necessary to satisfy the distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against the Liquidation Trust becomes an Allowed Claim.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**Section 5.18.  Reduced or Disallowed Secured Claims**.  To the extent that a Disputed Claim for which Cash has been deposited into the Disputed Reserve is not allowed or becomes an Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the excess of the amount that was retained on account of such Claim over the amount actually distributed on account of such Claim, shall be released from the Disputed Reserve and used as Trust Assets in accordance with the Plan.

**Section 5.19.  Reserve Amounts for Disputed and Estimated Claims**.  For purposes of establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the stated liquidated "face amount" of such Claim, unless such Claim is estimated by Order of the Court. If such Disputed Claim does not set forth a stated liquidated "face amount", then the amount of such Claim shall be estimated by order of the Court.

**Section 5.20**.  **Settling Disputed Claims**.  The Liquidation Trust shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date.

**Section 5.21.  Cash Distributions.**  The sources of all Distributions and payments under the Plan are and will be Cash, except as provided in the Plan with respect to the Collateral Election for certain Allowed Secured Claims and Allowed Customer Claims.  Cash Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer from a domestic bank.

**Section 5.22.  Setoff and Recoupment**.  Notwithstanding anything to the contrary in the Plan, the Liquidation Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim or Liquidation Trust Interest any claims that the Debtor, the Estate, or the Liquidation Trustee may have against the Holder of the Allowed Claim or Liquidation Trust Interest.  The Debtor, the Estate, the Liquidation Trust, and the Liquidation Trustee will not waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim or Liquidation Trust Interest.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**Section 5.23.   No De Minimis Distributions**.  Notwithstanding anything to the contrary in the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or Liquidation Trust Interest on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

**Section 5.24.   Fractional Cents**.  When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder of an Allowed Claim or Liquidation Trust Interest.

**Section 5.25.   Undeliverable or Unclaimed Distributions**.

a.      Distributions to Holders of Allowed Claims (except Administrative Claims) and Liquidation Trust Interests will be made by mail as follows:

(i)      Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change that is received by the Liquidation Trustee no later than ten (10) Business Days prior to the date of any Distribution; or

(ii)     If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

b.      Distributions to Holders of Allowed Administrative Claims shall be made by mail to the address set forth in such Holder's request for payment, fee application, or transactional documents, as applicable.

c.      If no address is available on a proof of claim, the Bankruptcy Schedules, request for payment, fee application, or transactional documents, as applicable, the Distribution will be deemed to be undeliverable.  If a Distribution is actually returned to the Liquidation Trustee or is deemed to be an undeliverable Distribution under the prior sentence, the Liquidation Trustee will make no further Distributions to the Holder to which such undeliverable Distribution was made unless and until the Liquidation Trustee is timely notified in writing of that Person's current address. Subject to Section 5.25(d), until they become deliverable, the Liquidation Trustee shall deposit such

1  undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions

2  Reserve for the benefit of the Persons entitled to such Distributions.  Holders of Claims or

3  Liquidation Trust Interests subject to undeliverable Distributions will not be entitled to any interest

4  on account of the undeliverable Distributions.

5     d.  Any Person that is otherwise entitled to an undeliverable Distribution and that

6  does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable,

7  provide the Liquidation Trustee with a written notice asserting its claim to or interest in that

8  undeliverable Distribution and setting forth a current, deliverable address: (i) will be deemed to

9  waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from

10  receiving that undeliverable Distribution or asserting any claim with respect thereto against the

11  Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the

12  extent applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such

13  undeliverable Distribution reduced on account of such undeliverable Distribution.  Any

14  undeliverable Distributions that are not claimed timely under this Section will be withdrawn from

15  the Undeliverable Distribution Reserve and treated as Trust Assets of the Liquidation Trust.

16  Nothing in the Plan requires the Debtor or the Liquidation Trustee to attempt to locate any Person

17  holding an Allowed Claim or Liquidation Trust Interest and whose distribution is undeliverable.

18    **Section 5.26.  Undeliverable Distributions Reserve.**  On or as soon as practicable after the

19  Effective Date, the Liquidation Trustee shall establish an Undeliverable Distributions Reserve into

20  which Undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.25.

21    **Section 5.27.  Negotiation of Checks**.  Checks issued in respect of Claims or Liquidation

22  Trust Interests shall be null and void if not negotiated within ninety (90) days after the date of

23  issuance thereof.  Subject to Section 5.25, requests for reissuance of any check shall be made to the

24  Liquidation Trustee by the Holder of the Allowed Claim or Liquidation Trust Interest to whom such

25  check originally was issued and must be made on or before ninety (90) days after the expiration of

26  the ninety (90) day period following the date of issuance of such check.  Thereafter, the funds

27  represented by such voided check shall irrevocably revert to the Liquidation Trust and the Holder of

28  the claim relating to such voided check: (i) will be deemed to waive any claim to or interest in that

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

voided check and the funds related thereto; (ii) will be forever barred from receiving the funds represented by the voided check or asserting any claim with respect thereto against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property; and (iii) to the extent applicable, will have the Allowed Claim or Liquidation Trust Interest relating to such funds and voided check reduced on account of such funds.  The Liquidation Trustee, in his, her, or its sole discretion may waive or modify any requirement in Section 5.25, 5.26 or 5.27.

Section 5.28.   Record Date.  The record date for purposes of Distributions under this Plan shall be the Effective Date.  The Debtor and the Liquidation Trustee will rely on the register of proofs of claim filed in the Case except to the extent a notice of transfer of a Claim or Interest has been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

Section 5.29.   Postpetition Interest.  Except as otherwise provided by Final Court Order, interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on account of any Claims or Liquidation Trust Interests.

Section 5.30.   Sequence of Payments.  Notwithstanding any other provision of the Plan, Distributions shall be made by the Liquidation Trust on account of Liquidation Trust Interests in the following order:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

a) all outstanding and projected Post Effective Date Trust Expenses until they are paid in full or are fully reserved for;

b) all Allowed Administrative Claims until they are paid in full, to the extent such claims are not paid by the Debtor from the Administrative Claims Reserve;

c) all Allowed Secured Claims (except those as to which the Collateral Election is made) until they are paid in full;

d) all Allowed Priority Non-Tax Claims until they are paid in full;

e) all Allowed Priority Tax Claims until they are paid in full or are reserved for;

f) all Allowed Customer Claims and Warranty Claims are paid or are reserved for to the extent set forth in the treatment of Class 3 Claimants; and

g) all Allowed General Unsecured Claims

**Section 5.31. Withholding and Reporting Requirements**. In connection with the Distributions under the Plan, the Liquidation Trustee shall comply with all applicable withholding and reporting requirements imposed by any Governmental Authority, and all Distributions shall be subject to any such withholding or reporting requirements. All such amounts withheld and paid to the appropriate Governmental Authority shall be treated as distributed to such Holders. Notwithstanding the above, each Holder of an Allowed Claim or Liquidation Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Authority, including income, withholding, and other Tax obligations, on account of such Distribution. The Liquidation Trustee has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to the Liquidation Trustee for payment of any such Tax obligations. The Liquidation Trustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim or Liquidation Trust Interest provide a completed Form W-8, W-9, and/or other Tax information deemed necessary in the sole discretion of the Liquidation Trustee. If the Liquidation Trustee makes such a request and the Holder fails to comply before the date that is ninety (90) days after the request is made: (a) the amount of such Distribution shall irrevocably revert to the

Liquidation Trust; (b) the Holder of the claim relating to such Distribution will be deemed to waive any claim to or interest in that Distribution and the funds related thereto; (c) the Claim(s) and Liquidation Trust Interest(s) of such Holder shall be deemed to be disallowed and terminated and be entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds represented by that Distribution or any Distributions on such disallowed and terminated Claims and Liquidation Trust Interests, or asserting any claim with respect thereto against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property.

Section 5.32.  **Claims Transfer**.  The Liquidation Trustee shall not recognize any transfer of a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such Claim was held by the transferor.  The transferability of Liquidation Trust Interests shall be governed by the Liquidation Trust Agreement.

Section 5.33.  **Maximum Amount of Distributions.**  In no event shall a Holder of an Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the Liquidation Trust whether directly or on account of Liquidation Trust Interests, or any other source, more than the total amount of such Allowed Claim.

Section 5.34.  **Final Distributions On Liquidation Trust Interests.**  After: (a) all Claims have been resolved; (b) all Allowed Claims except General Unsecured Claims have been paid or, with respect to Allowed Secured Claims as to which the Collateral Election is made, satisfied as provided in the Plan; (c) all material Trust Assets have been converted to Cash; and (d) the Operating Reserve has been adequately funded, the Liquidation Trustee shall distribute all Liquidation Trust Net Proceeds to holders of Liquidation Trust Interests issued on account of Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of the Liquidation Trust Interests of such Holders and taking into account any prior distributions that have been made on account of such Liquidation Trust Interests.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# VI.

## LITIGATION AND CLAIMS OBJECTIONS

**Section 6.1.      Preservation of Causes of Action**.

a.      As of the Effective Date, the Liquidation Trustee shall hold and retain all rights and privileges on behalf of the Liquidation Trust, the Debtor, and the Estate to commence, pursue, and settle, as appropriate, any and all Causes of Action and Defenses (including, without limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, adversary proceeding(s) filed in the Case, including, without limitation, the Roadtrek litigation discussed in section IV.M.1. of the Disclosure Statement and the Causes of Action listed in Exhibit 7 to the Disclosure Statement.  Section IV.M.1. of the Disclosure Statement and Exhibit 7 to the Disclosure Statement are incorporated herein by this reference.  The failure to explicitly list any Causes of Action and other potential or existing claims of the Debtor or Estate is not intended to and shall not limit the rights of the Liquidation Trust, through the Liquidation Trustee, to pursue any Causes of Action and Defenses and claims not so identified. Exhibit 7 to the Disclosure statement includes a non-exhaustive list of Causes of Action that will be vested in the Liquidation Trust under the Plan.  The Debtor and the Committee may file an additional or amended non-exhaustive list of Causes of Action at least ten (10) Business Days prior to the Confirmation Hearing; provided, however, that notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze, or refer to any Cause of Action, or potential Cause of Action, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, Estate's, or the Liquidation Trustee's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Confirmation Date.  Subject to the limitations expressly set forth in the Liquidation Trust Agreement, the Liquidation Trustee may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in the Liquidation Trustee's sole discretion in accordance with what is in the best interests, and for the benefit, of the Liquidation Trust and its Beneficiaries.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

b.    Unless a Cause of Action and Defense is expressly waived, relinquished, released, compromised, or settled by Final Order, the Debtor and the Estate expressly reserve such Causes of Action for later adjudication (including, without limitation, Causes of Action of which the Debtor or the Estate may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Estate at this time, or facts or circumstances which may change or be different from those which the Debtor or the Estate now believes to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action and Defenses upon, or after, the Confirmation Date or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by Final Order.

c.    Any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or which has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from or to the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee, on behalf of the Liquidation Trust and Estate subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not:  (a) such Person has filed a proof of claim against the Debtor; (b) such Person's proof of claim has been objected to by the Debtor, the Liquidation Trustee, or any other Person; (c) such Person's Claim was included in the Bankruptcy Schedules; or (d) such Person's scheduled Claims have been objected to by the Debtor, the Liquidation Trustee, or any other Person, or has been identified as disputed, contingent, or unliquidated.

**Section 6.2.    Objections to and Resolution of Disputed Claims**.  Except as otherwise provided in the Plan or Confirmation Order, on and after the Effective Date, the Liquidation Trustee shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or withdraw such objections.  The Liquidation Trustee shall have the authority to compromise, settle, withdraw, or otherwise resolve any objections to any Claim without approval of the Court; provided,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    however, that the Liquidation Trustee may in his, her, or its discretion seek relief before the Court

2    with respect to any Disputed Claim.  The Liquidation Trustee shall file and serve all objections to

3    Claims (other than Administrative Claims that are subject to Sections 3.5, 3.6 and 3.8) upon the

4    Holder of the Claim as to which the objection is made no later than one-hundred eighty (180) days

5    after the later of:  (a) the Effective Date; and (b) the date on which a proof of claim is filed with the

6    Court (the "Claims Objection Deadline").  The Liquidation Trustee may extend the Claims Objection

7    Deadline for no more than two one-hundred eighty (180) day periods by filing a notice of the

8    extended deadline with the Court; provided, however, that nothing herein shall modify the statute of

9    limitations for any affirmative Cause of Action that the Liquidation Trustee may assert. Such

10    extensions may be based on the fact that the Liquidating Trustee is then still collecting Assets to pay

11    Claims senior to Unsecured Creditors. Thereafter, the Claims Objection Deadline may be further

12    extended only by an Order of the Court.  The filing of a motion to extend the Claims Objection

13    Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on

14    such motion.  In the event that such motion is denied by the Court, or approved by the Court and

15    reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims

16    Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final

17    Order denying the motion to extend the Claims Objection Deadline or reversing the Order approving

18    the motion.

19                                                    **VII.**

20                                **OTHER PLAN PROVISIONS**

21        **Section 7.1.    Recourse for Claims**.  All Holders of Claims and Interests are bound by the

22    Plan and the Confirmation Order.  No Holder of a Claim may receive any payment from, or seek

23    recourse against, any assets that are to be distributed under the Plan other than assets required to be

24    distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are

25    enjoined from asserting against any property that is to be distributed under the Plan any Claims,

26    rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission,

27    transaction, or other activity that occurred before the Confirmation Date except as expressly

28    provided in the Plan or the Confirmation Order.  As of the Effective Date, notes, contracts,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

1  judgments, and any other evidence of Claims will represent only the right to receive the

2  Distributions contemplated under the Plan.

3      **Section 7.2.     Exculpation and Release of Debtor, Committee, and Professionals**.

4  Except to the extent arising from willful misconduct or gross negligence, any and all Claims,

5  liabilities, Causes of Action, rights, damages, costs, and obligations held by any party against the

6  Debtor, the Committee, and their respective attorneys, accountants, agents, and other Professionals,

7  and their officers, directors, members, and employees, whether known or unknown, matured or

8  contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any

9  manner related to the post-Petition Date administration of the Case or the formulation, negotiation,

10  prosecution, or implementation of the Plan, shall be deemed fully waived, barred, released, and

11  discharged in all respects, except as to rights, obligations, duties, claims, and responsibilities

12  preserved, created, or established by the terms of the Plan.  Pursuant to section 1125(e) of the

13  Bankruptcy Code, the Debtor and the Committee and their present and former members, officers,

14  directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals

15  (acting in such capacity) employed by any of the foregoing entities will neither have nor incur any

16  liability to any Person for their role in soliciting acceptances or rejections of the Plan.

17      **Section 7.3.     Injunction Enjoining Holders of Claims**.

18          a.      The Plan is the sole means for resolving, paying, or otherwise dealing with

19  Claims and Interests with respect to the Estate, the Liquidation Trust, and their assets.  To that end,

20  except as expressly provided herein, at all times on and after the Effective Date, all Persons who

21  have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be

22  permanently enjoined from taking any of the following actions on account of any such Claims or

23  Interests, against the Estate, the Liquidation Trust, or their property (other than actions brought to

24  enforce any rights or obligations under the Plan and any claim, contested matters, or adversary

25  proceedings pending in the Case as of the Effective Date):

26          (1)      commencing, conducting, or continuing in any manner, directly or

27      indirectly, any suit, action, or other proceeding of any kind against the Estate, the

28      Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Court or by explicit provision of the Court, as of the Effective Date, which shall be deemed to be withdrawn or dismissed with prejudice);

(2)    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property;

(3)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property; and

(4)    proceeding in any place whatsoever against the Estate, the Liquidation Trust, or the Liquidation Trustee, their successors, or their respective property, in any manner that does not conform to or comply with the provisions of the Plan.

b.    No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of the Liquidation Trustee or Order of the Court acquired by motion on notice to the Liquidation Trustee.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Liquidation Trust may be entitled, the Claims of such Holder shall be disallowed and any Distributions made on account of such Claims shall be repaid by such Holder to the Liquidation Trust.

**Section 7.4.    Injunctions or Stays**.  Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Section 7.5.    Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax. The interests of Beneficiaries in the Liquidation Trust will constitute neither "securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan. Pursuant to Bankruptcy Code sections 1125 and 1145, the Liquidation Trust shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended. Further, because the assets of the Liquidation Trust will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

**Section 7.6.    No Admissions**. Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor, the Committee, or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estate. Notwithstanding anything to the contrary in the Plan, if the Plan is revoked or withdrawn or is not confirmed, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor, the Committee, or the Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Committee, or the Estate in any further proceedings.

**Section 7.7.    Severability of Plan Provisions**. If, before entry of the Confirmation Order, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or

1  interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will

2  in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial

3  determination providing that each Plan term and provision, as it may have been altered or interpreted

4  in accordance with this Section, is valid and enforceable under its terms.

5        **Section 7.8.   Governing Law**.  The rights and obligations arising under the Plan and any

6  agreements, contracts, documents, or instruments executed in connection with the Plan will be

7  governed by, and construed and enforced in accordance with, California law without giving effect to

8  California law's conflict of law principles, unless a rule of law or procedure is supplied by:

9  (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-

10  of-law provision in any document provided for, or executed under or in connection with, the Plan.

11        **Section 7.9.   Successors and Assigns**.  The rights, benefits, and obligations of any Person

12  referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor,

13  administrator, personal representative, successor, or assign of that Person.

14        **Section 7.10.   Nonconsensual Confirmation**.  In the event that any of the Classes entitled to

15  vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code

16  section 1129(a)(8): (a) the Debtor and the Committee reserve the right to modify the Plan in

17  accordance with Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that

18  do not accept the Plan or are deemed not to accept the Plan, the Debtor and the Committee seek

19  confirmation under section 1129(b) of the Bankruptcy Code.  Notwithstanding any other provision

20  of the Plan, the Debtor and the Committee reserve the right to modify the Plan.

21        **Section 7.11.   Revocation of the Plan**.  The Committee reserves the right to revoke or

22  withdraw the Plan before the Effective Date.

23        **Section 7.12.   Amendment.**  In accordance with section 1127 of the Bankruptcy Code, the

24  Debtor and the Committee reserve the right by joint decision to alter, amend, or modify the Plan,

25  including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

26        **Section 7.13.   Saturday, Sunday, or Legal Holiday**.  If any payment or act under the Plan

27  should be made or performed on a day that is not a Business Day, then the payment or act may be

28

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  completed on the next succeeding day that is a Business Day, in which event the payment or act will

2  be deemed to have been completed on the required day.

3       **Section 7.14.   Post-Effective Date Status Reports**.  The Liquidation Trustee shall file status

4  reports regarding the implementation of the Plan and the review, prosecution, and resolution of

5  Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date

6  through entry of a final decree closing the Case, or as otherwise ordered by the Court.

7       **Section 7.15.   Post-Effective Date Notice**.  From and after the Effective Date, any Person

8  who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided

9  shall file a request for post-Effective Date notice and shall serve the request on the Liquidation

10  Trustee and counsel for the Liquidation Trustee; provided, however, that the U.S. Trustee, the

11  Debtor, and Liquidation Trustee shall be deemed to have requested post-Effective Date notice.

12       **Section 7.16.   Maintenance and Disposition of Trust Records**.  The books and records

13  maintained by the Liquidation Trustee, including books and records provided by the Debtor, may be

14  disposed of by the Liquidation Trustee in his, her, or its discretion at the earlier of: (a) such time as

15  the Liquidation Trustee determines that the continued possession or maintenance of such books and

16  records is no longer necessary for the benefit of the Liquidation Trust; and (b) the termination of the

17  Liquidation Trust.

18       **Section 7.17.   Retention of Jurisdiction**.  The Court will retain and have such jurisdiction

19  regarding the Case, proceedings in the Case, the Plan, the Liquidation Trust, and the Liquidation

20  Trust Agreement, as such jurisdiction existed before the Effective Date, including with respect to the

21  following:

22       (a)     the resolution of any matters related to the assumption, assumption and

23                assignment, or rejection of any executory contract or unexpired lease to which

24                the Debtor is a party or with respect to which the Debtor may be liable, and to

25                hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

26       (b)     the entry of such Orders as may be necessary or appropriate to implement or

27                consummate the provisions of the Plan and all contracts, instruments, releases,

28                and other agreements or documents created in connection with the Plan;

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(c)  the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trustee after the Effective Date;

(d)  ensuring that Distributions to Holders of Allowed Claims and Liquidation Trust Interests are accomplished as provided in the Plan;

(e)  hearing and determining any objections to Administrative Claims or proofs of claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, in whole or in part;

(f)  the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)  the issuance of such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)  consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including the Confirmation Order;

(i)  hearing and determining all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)  hearing and determining disputes arising in connection with, or relating to, the Plan or the Liquidation Trust Agreement or the interpretation, implementation, or enforcement of the Plan and/or the Liquidation Trust Agreement, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan or the Liquidation Trust Agreement;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(k)    the recovery of all Assets of the Debtor and property of the Estate, wherever located, and the prosecution of all Causes of Action;

(l)    the issuance of injunctions or other Orders as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan or the Liquidation Trust Agreement;

(m)    the determination of any other matters that may arise in connection with, or are related to, the Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement or any contract, instrument, release, or other agreement or document created in connection with the Plan, including the Liquidation Trust Agreement;

(n)    hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    hearing any other matter that is not inconsistent with the Bankruptcy Code;

(p)    hearing and determining, to the fullest extent authorized by applicable law, any issue or dispute directly or indirectly arising from or related to the Liquidation Trust, the Trust Assets, the Liquidation Trust Agreement, or the Liquidation Trustee;

(q)    hearing and determining any other matter deemed relevant to the consummation of the Plan or the administration of the Case;

(r)    interpreting and enforcing Orders entered by the Court; and

(s)    entry of a final decree closing the Case.

**Section 7.18.   Entry of a Final Decree.**  Promptly following the liquidation or other disposition of all Trust Assets, including the Causes of Action, and distribution of all Trust Assets pursuant to the Plan and Liquidation Trust Agreement, and in accordance with the Liquidation Trust Agreement, the Liquidation Trustee will file a motion with the Court to obtain entry of a final decree closing the Case and authorizing the termination of the Liquidation Trust and discharge of the Liquidation Trustee.

# VIII.

## RECOMMENDATIONS

**Section 8.1.    Recommendations of the Committee and the Debtor**.  The Committee and

the Debtor believe that confirmation and implementation of the Plan are preferable to any other

alternative because, in their view, the Plan will provide Holders of Allowed Claims with the

maximum recovery.  Accordingly, the Committee and the Debtor urge Creditors that are entitled to

vote to vote to accept the Plan.

[Remainder of page intentionally left blank]

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   This Plan respectfully submitted by:        MEGA RV CORP.

2   Dated: August 4, 2015        Chapter 11 Debtor and Debtor in Possession

3        By: _____
        Name:  _J. M. ISSA_

4        Title:  _FINANCIAL ADVISER AND_

5        _PROPOSED LIQUIDATION_
        _TRUSTEE_

6

7

8   _____
    Brian L. Davidoff, a member of

9   Greenberg Glusker Fields Claman & Machtinger LLP
    Attorneys for the Committee

10

11

12   _____
    Robert P. Goe, a member of Goe & Forsythe, LLP
    Attorneys for the Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12        -57-

1    This Plan respectfully submitted by:

2    Dated:  August 4, 2015

3

4

5

6

7

8    Brian L. Davidoff, a member of
     Greenberg Glusker Fields Claman & Machtinger LLP
9    Attorneys for the Committee

10

11

12    Robert P. Goe, a member of Goe & Forsythe, LLP
      Attorneys for the Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEGA RV CORP.
Chapter 11 Debtor and Debtor in Possession

By: _____
    Name: _____
    Title: _____

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2327825.12                    -57-

# EXHIBIT 2

**LIQUIDATION TRUST AGREEMENT**

**AND**

**DECLARATION OF TRUST**

**By and Between**

**MEGA RV CORP., A CALIFORNIA CORPORATION DBA MCMAHON'S RV IRVINE, MCMAHON'S RV COLTON AND MCMAHON'S RV PALM DESERT**

**and**

**GLASS RATNER ADVISORY & CAPITAL GROUP, LLC,**

**as Liquidation Trustee**

**Dated**

**_____, 2015**

# TABLE OF CONTENTS

<u>Page</u>

RECITALS          1

SECTION 1         ORGANIZATION AND ESTABLISHMENT OF THE LIQUIDATION
                  TRUST ........................................................................................................... 3

       1.1        Definitions ................................................................................................... 3

       1.2        Rules of Interpretation ............................................................................... 5

       1.3        Name ........................................................................................................... 6

       1.4        Office .......................................................................................................... 6

       1.5        Declaration and Establishment of Liquidation Trust ............................. 6

       1.6        Liquidation Trust ....................................................................................... 7

       1.7        Title to Trust Assets ................................................................................... 8

       1.8        Reporting Of Transfer Of Trust Assets ................................................... 9

       1.9        Reservation of Bankruptcy Rights ............................................................ 9

       1.10       Transfer of Privileges ............................................................................... 10

       1.11       No Assumption of Liabilities ................................................................... 10

       1.12       Appointment of and Acceptance by Liquidation Trustee ..................... 10

       1.13       Valuation of Trust Assets ........................................................................ 10

SECTION 2         BENEFICIARIES ..................................................................................... 11

       2.1        Identification of Beneficiaries; Allocation of Interests......................... 11

       2.2        Register ...................................................................................................... 12

       2.3        Evidence of Liquidation Trust Interests................................................. 13

       2.4        Securities Law Registration .................................................................... 13

       2.5        Rights of Beneficiaries............................................................................. 14

       2.6        Limit on Transfer of Liquidation Trust Interests of Beneficiaries...................... 15

       2.7        No Legal Title in Beneficiaries................................................................ 18

SECTION 3         THE LIQUIDATION TRUSTEE .............................................................. 18

       3.1        Liquidation Trustee — Generally ........................................................... 18

       3.2        Manner of Acting ..................................................................................... 19

       3.3        Status of Liquidation Trustee ................................................................. 20

       3.4        Causes of Action ...................................................................................... 20

       3.5        Compensation and Reimbursement of Liquidation Trustee and
                  Professionals ............................................................................................. 21

       3.6        Tenure, Removal, and Replacement of the Liquidation Trustee ......................... 22

# TABLE OF CONTENTS

(continued)

Page

3.7 Continuance of Trust ................................................................................ 24

3.8 Acceptance of Appointment by Successor Liquidation Trustee ........................... 24

3.9 Bond or Insurance ................................................................................... 24

SECTION 4 AUTHORITY, LIMITATIONS, DUTIES, AND FINAL REPORT AND
DISCHARGE ........................................................................................ 25

4.1 Authority ............................................................................................... 25

4.2 Limitations on the Liquidation Trustee ........................................................ 30

4.3 Additional Duties of the Liquidation Trustee ................................................ 31

4.4 No Implied Obligations ............................................................................. 35

4.5 Unknown Property and Liabilities .............................................................. 35

4.6 Compliance with Laws ............................................................................. 36

4.7 Inquiries into Liquidation Trustee's Authority ............................................... 36

4.8 Final Report and Discharge of Liquidation Trustee ........................................ 36

4.9 Reliance by and on Liquidation Trustee ....................................................... 37

4.10 Standard of Care; Exculpation .................................................................. 38

SECTION 5 DISTRIBUTIONS ................................................................................ 39

5.1 Establishment of Reserves ........................................................................ 39

5.2 Distributions ......................................................................................... 40

SECTION 6 DURATION OF LIQUIDATION TRUST .................................................. 41

6.1 Duration of Liquidation Trust .................................................................... 41

6.2 Continuance of Liquidation Trust for Winding Up ......................................... 42

SECTION 7 INDEMNIFICATION; LIMITATIONS ON LIABILITY ............................... 42

7.1 Action Upon Instructions .......................................................................... 42

7.2 Indemnification ...................................................................................... 43

7.3 Limited Recourse .................................................................................... 46

7.4 No Liability for Acts of Predecessor ........................................................... 46

7.5 Scope ................................................................................................... 47

SECTION 8 REPORTS OTHER THAN THE FINAL REPORT ....................................... 47

8.1 Securities Laws and Investment Company Act ............................................... 47

8.2 Other Reports ........................................................................................ 48

SECTION 9 AMENDMENT AND WAIVER .............................................................. 48

# TABLE OF CONTENTS

(continued)

Page

9.1      Amendments Generally ..................................................................................... 48

9.2      Restriction on Amendments................................................................................ 48

SECTION 10      MISCELLANEOUS PROVISIONS........................................................... 49

10.1      Notices ............................................................................................................. 49

10.2      Post Effective Date Service List ...................................................................... 50

10.3      Effectiveness .................................................................................................... 51

10.4      Counterparts ..................................................................................................... 51

10.5      Governing Law ................................................................................................. 51

10.6      Severability of Provisions ............................................................................... 51

10.7      Entire Agreement ............................................................................................. 51

10.8      Effect of Death, Incapacity, or Bankruptcy of Beneficiary ............................ 52

10.9      Waiver............................................................................................................... 52

10.10      Reimbursement of Costs ................................................................................ 52

10.11      Jurisdiction..................................................................................................... 52

10.12      Fiscal Year ..................................................................................................... 53

EXHIBIT "A" PLAN
EXHIBIT "B" CONFIRMATION ORDER

This Liquidation Trust Agreement and Declaration of Trust (the "**Agreement**") is entered into as of _____, 2015, and shall be effective as of the Effective Date[1] pursuant to the Plan and the Confirmation Order, by and between:

    (i)    **MEGA RV CORP., A CALIFORNIA CORPORATION DBA MCMAHON'S RV IRVINE, MCMAHON'S RV COLTON AND MCMAHON'S RV PALM DESERT,** on behalf of the Debtor and the Estate, as transferor; and

    (ii)    **GLASS RATNER ADVISORY & CAPITAL GROUP, LLC**, not in its individual capacity, but solely in the capacity of Liquidation Trustee under the Agreement, as Liquidation Trustee of the Liquidation Trust.

## RECITALS

A.    On June 15, 2014, the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor continued in possession of its property and to manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    On _____, the Court entered the Confirmation Order.  Copies of the Plan and the Confirmation Order are attached hereto as Exhibits "A" and "B," respectively, and the Plan and the Confirmation Order are incorporated into the Agreement by this reference.

C.    The Plan provides for the creation of the Liquidation Trust and the irrevocable transfer and assignment to the Liquidation Trust of the Trust Assets, effective as of the Effective Date.

---

[1]    Capitalized terms not otherwise defined in the Agreement shall have the meanings set forth in the Plan.

D.     The Liquidation Trust is established for the benefit of the Beneficiaries.

E.     The primary purpose of the Liquidation Trust is to: (i) receive and maintain the Trust Assets for the benefit of the Beneficiaries; (ii) oversee and direct the orderly liquidation of the Trust Assets for the benefit of the Beneficiaries; and (iii) distribute the Trust Assets to the Beneficiaries pursuant to the terms of the Plan, the Confirmation Order, and the Agreement.  The Liquidation Trust will be administered consistent with the liquidating purpose of the Liquidation Trust, and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary, and consistent with, the liquidating purpose of the Liquidation Trust.

F.     Pursuant to the Plan and the Confirmation Order, the Liquidation Trustee was duly appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

G.     Except as provided below, the Liquidation Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), and a "grantor trust" for federal and applicable state income Tax purposes within the meaning of section 671 of the Internal Revenue Code (the "**Code**").  The Liquidation Trustee shall administer and maintain the Liquidation Trust in compliance with the guidelines for liquidation trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, Treasury Regulation section 1.671-4(a), and all subsequent guidelines regarding liquidation trusts issued by the Internal Revenue Service (the "**IRS**").  To the extent that the Liquidation Trustee makes the election set forth in section 4.3.8(c), that portion of the Liquidation Trust that consists of the Undeliverable Distributions Reserve and the Disputed Claims Reserve are

intended to qualify as a "disputed ownership funds" pursuant to Treasury Regulation section 1.468B-9 and shall be administered consistent with such Treasury Regulation.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises and the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Debtor and the Liquidation Trustee agree as set forth herein.

## SECTION 1

## ORGANIZATION AND ESTABLISHMENT

## OF THE LIQUIDATION TRUST

1.1    Definitions.

    1.1.1    Defined Terms.  Unless otherwise stated herein, capitalized terms used in the Agreement shall have the meanings assigned to them in the Plan.  Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

    1.1.2    Additional Defined Terms.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

        "Agreement" shall have the meaning set forth in the introductory paragraph hereof.

        "Code" shall have the meaning set forth in Recital "G".

"Disputed Claims Reserves" shall have the meaning set forth in Recital "G".

"Exchange Act" shall have the meaning set forth in section 2.4.

"Extension Period" shall have the meaning set forth in section 6.1.

"Final Decree" shall have the meaning set forth in section 6.1.

"Final Report" shall have the meaning set forth in section 4.8.1.

"Indemnified Person" shall have the meaning set forth in section 7.2.1.

"IRS" shall have the meaning set forth in Recital "G".

"Investment Company Act" shall have the meaning set forth in section 2.4.

"Post Effective Date Service List" shall have the meaning set forth in section 10.2.

"Privileged" shall mean such privileged or protected documents, other writings, or information in any form or format that is subject to privileges, including the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other applicable privileges and laws.

"Register" shall have the meaning set forth in section 2.2.1.

"SEC" shall have the meaning set forth in section 2.4.

"Securities Act" shall have the meaning set forth in section 2.4.

"Transfer" shall have the meaning set forth in section 2.6.2.

1.2     Rules of Interpretation.

1.2.1    The rules of construction in Bankruptcy Code section 102 apply to the

Agreement.

1.2.2    Except as otherwise provided in the Agreement, Bankruptcy Rule 9006(a)

applies when determining any time period under the Agreement.

1.2.3    In the event of any conflict or inconsistency between the Plan and the

Agreement, the Plan shall control.  In the event of any conflict or inconsistency between the Plan

and the Confirmation Order, the Confirmation Order shall control.  For the sake of clarity, the

hierarchy of controlling documents in the event of a conflict shall be: (a) the Confirmation

Order; (b) the Plan; (c) the Agreement; and (d) the Disclosure Statement.

1.2.4    Whenever it is appropriate from the context, each term, whether stated in

the singular or the plural, includes both the singular and the plural.

1.2.5    Any reference to a document or instrument being in a particular form or

on particular terms means that the document or instrument will be substantially in that form or

substantially on those terms.  Any reference to an existing document means the document as it

has been, or may be, amended, modified, or supplemented.

1.2.6    Unless otherwise indicated, the words and phrase "herein", "hereof", "to

the extent provided in the Agreement" and similar words or phrases refer to the Agreement in its

entirety rather than to only a portion of the Agreement.

1.2.7    Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Agreement.

1.2.8    Captions and headings in the Agreement are used only as convenient references and do not affect the meaning of the Agreement.

1.2.9    Any reference to a statute, rule, or regulation includes any amendments, modifications, supplements, replacements, or any other changes that may have occurred since the statute, rule, or regulation came into being, including changes that occur after the date of the Agreement to the extent they apply to the Agreement by their terms.

1.2.10    Any party may perform any of the requirements under the Agreement either directly or through others, and the right to cause something to be done rather than doing it directly shall be implicit in every requirement under the Agreement.  Unless a provision is restricted as to time or limited as to frequency, all provisions of the Agreement are implicitly available from time to time.

1.3    Name.  The Liquidation Trust shall be known as the "Mega Liquidation Trust," in which name the Liquidation Trustee may conduct the affairs of the Liquidation Trust.

1.4    Office.  The office of the Liquidation Trust shall be in care of the Liquidation Trustee at 19800 McArthur Boulevard, Suite 820, Irvine, CA. 92612 or at any other address that the Liquidation Trustee may designate by written notice to the Post Effective Date Service List.

1.5    Declaration and Establishment of Liquidation Trust.  For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the Plan and the Confirmation Order, the Debtor, on behalf of itself and the Estate, executes the

Agreement and, pursuant to the Plan, the Confirmation Order, and the Agreement, hereby establishes the Liquidation Trust and irrevocably transfers, absolutely grants, assigns, conveys, sets over, and delivers to the Liquidation Trustee, effective as of the Effective Date, all right, title, and interest in and to the Trust Assets, other than the Administrative Claims Reserve, free and clear of all Liens, Claims, encumbrances, or interests of any kind to be held in trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein, in the Plan, and in the Confirmation Order.  The Liquidation Trustee hereby agrees to accept and hold the Trust Assets in trust for the Beneficiaries subject to the terms of the Plan, the Confirmation Order, and the Agreement.  The Liquidation Trustee shall have all the rights, powers, and duties, set forth in the Plan, in the Confirmation Order, in the Agreement, and available under applicable law for accomplishing the purposes of the Liquidation Trust.  The Liquidation Trustee is hereby authorized to file with any Governmental Authorities any documents necessary or helpful to establish the Liquidation Trust.

     1.6 <u>Liquidation Trust.</u>

     1.6.1   <u>Beneficiaries</u>.  The Liquidation Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and a "grantor trust" within the meaning of section 671 of the Code, except to the extent that it is a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  If the Liquidation Trust is a "liquidating trust" and "grantor trust," then, in accordance with Treasury Regulation section 301.7701-4(d), the beneficiaries of the Liquidation Trust are the parties identified as the Beneficiaries.  The Beneficiaries will be treated as the grantors and deemed owners of the Liquidation Trust.

1.6.2    Purpose.  The primary purpose of the Liquidation Trust is to: (a) receive and maintain the Trust Assets for the benefit of the Beneficiaries; (b) oversee and direct the liquidation of the Trust Assets, other than the Administrative Reserve, for the benefit of the Beneficiaries, including the creation, maintenance, and administration of the reserves; (c) object to Claims filed (or deemed filed) in the Case; and (d) distribute the net proceeds of the Trust Assets, other than the Administrative Reserve, to the Beneficiaries pursuant to the terms of the Plan, the Confirmation Order, and the Agreement.  The Liquidation Trustee shall continue efforts to dispose of or liquidate all Trust Assets, other than the Administrative Reserve, and make Distributions to the Beneficiaries.  The Liquidation Trust will be administered consistent with the liquidating purpose of the Liquidation Trust, and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

1.7    Title to Trust Assets.  From and after the Effective Date, title to and all rights and interests in all of the Trust Assets, other than the Administrative Reserve, shall be transferred to the Liquidation Trust free and clear of all Liens, Claims, encumbrances, or interests of any kind of any other Person (including all Liens, Claims, encumbrances, or interests of Creditors and Holders of Claims against or Interests in the Debtor) in accordance with sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan or the Confirmation Order.  The transfer of the Trust Assets, other than the Administrative Reserve, to the Liquidation Trust is made for the benefit and on behalf of the Beneficiaries.  Upon the transfer of the Trust Assets, the Liquidation Trustee succeeds to all of the Debtor's and the Estate's right, title, and interest in the Trust Assets and the Debtor and the Estate will have no

further right or interest in or with respect to the Trust Assets or the Liquidation Trust, except for the Administrative Reserve.

   1.8 <u>Reporting Of Transfer Of Trust Assets</u>.  Subject to section 4.1(g), and except to the extent that the Liquidation Trust is treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9, for federal and applicable state income Tax purposes, the transfer of the Trust Assets to the Liquidation Trust pursuant to, and in accordance with, the Plan shall be deemed to be, and shall be reported as, a disposition of the Trust Assets, other than the Administrative Reserve, directly to, and for the benefit of, the Beneficiaries, for all purposes of the Code (including, but not limited to, sections 61(a)(12), 483, 1001, 1012, and 1274), as provided for in the Plan in satisfaction of the Allowed Claims held by such Beneficiaries, immediately followed by a contribution of the Trust Assets, other than the Administrative Reserve, by the Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests of the Beneficiaries.  Upon the transfer of the Trust Assets, other than the Administrative Reserve, to the Liquidation Trust, neither the Debtor nor the Estate will have any further interest in or with respect to the Trust Assets or the Liquidation Trust (except for the Administrative Reserve), and the Beneficiaries will be treated as the grantors and deemed owners of the Liquidation Trust.

   1.9 <u>Reservation of Bankruptcy Rights</u>.  To the full extent permitted by law and not inconsistent with any prior Orders entered by the Court, and without excluding or limiting other rights transferred to the Liquidation Trust, all rights under the Bankruptcy Code are preserved for the benefit of the Liquidation Trust and its Beneficiaries, and may be exercised by the Liquidation Trustee subject to the provisions of the Plan, the Confirmation Order, and the Agreement.

1.10    Transfer of Privileges.  The Trust Assets include all privileges of the Debtor and

the Estate to enable the Liquidation Trustee to fully access all Privileged documents, other

writings, and other material and information in any form or format to implement and perform the

Liquidation Trustee's duties and exercise the Liquidation Trustee's rights under the Plan, the

Confirmation Order, and the Agreement, including the prosecution of any Causes of Action

vested in the Liquidation Trust.  The Debtor shall provide to the Liquidation Trustee all of the

Debtor's and Estate's books and records and other documents, writings, and information in any

form or format as they currently or in the future exist.

1.11    No Assumption of Liabilities.  The Liquidation Trustee, on behalf of the

Liquidation Trust, shall receive the Trust Assets and agrees that all Trust Assets are being

transferred, assigned, and conveyed to the Liquidation Trust subject to no liabilities of the Debtor

or the Estate, except as provided in the Plan or the Confirmation Order.

1.12    Appointment of and Acceptance by Liquidation Trustee.  Glass Ratner Advisory

& Capital Group, LLC has been appointed as the Liquidation Trustee, as of the Effective Date.

By signature below, the Liquidation Trustee accepts and confirms the appointment, transfer of

Trust Assets, other than the Administrative Reserve, and obligations and duties imposed by the

Agreement.  The Liquidation Trustee agrees to receive, hold, administer, and distribute the Trust

Assets and income derived therefrom, and to meet the duties of Liquidation Trustee, all pursuant

to the terms of the Plan, the Confirmation Order, and the Agreement.

1.13    Valuation of Trust Assets.  As soon as practicable after the Effective Date, and

thereafter as may be required, the Liquidation Trustee shall, if reasonably deemed necessary or

desirable by the Liquidation Trustee, make or direct the preparation of a good faith valuation of

the Trust Assets, or cause a good faith valuation of the Trust Assets to be made by such professionals as the Liquidation Trustee may, in its sole and absolute discretion, retain on behalf of the Liquidation Trust for such purposes, and the Liquidation Trustee shall, upon written request, make available, through means adopted by the Liquidation Trustee in its sole and absolute discretion, to the Beneficiaries the general results of such valuation.  Any such valuations shall be used by the Liquidation Trustee and the Beneficiaries consistently for all purposes.  Such general results of the valuation shall be made available on written request from time to time, to the extent relevant as reasonably determined by the Liquidation Trustee in reliance on the professionals engaged by the Liquidation Trust, and shall be used consistently by all parties (including the Debtor, the Liquidation Trustee, and the Beneficiaries) for all federal and applicable state and local income Tax purposes and all other applicable reporting purposes.

## SECTION 2

## BENEFICIARIES

2.1    Identification of Beneficiaries; Allocation of Interests.

2.1.1    Trust Beneficiaries.  In accordance with the Plan, the beneficiaries of the Liquidation Trust shall be the parties identified as the Beneficiaries.

2.1.2    Allocation of Interests.  In accordance with the Plan, each Holder of an Allowed Claim shall be reflected on the books and records of the Liquidation Trust as holding uncertificated Liquidation Trust Interests in the Liquidation Trust, which Liquidation Trust Interests solely shall entitle the holder thereof to the Distributions from the Trust Assets, other than the Administrative Reserve, as provided for herein, in the Plan, and in the Confirmation Order.

2.1.3    <u>Interests Beneficial Only</u>.  The ownership of a Liquidation Trust Interest shall not entitle any Beneficiary to any title in or to the Trust Assets (which title shall be vested in the Liquidation Trustee) or to any right to call for a partition or division of the Trust Assets or to require an accounting or make any investment decision with respect to or in respect of the Trust Assets.

2.2    <u>Register.</u>

2.2.1    <u>Names and Addresses</u>.  The Liquidation Trustee shall cause to be kept a register (the **"Register"**) in which the Liquidation Trustee shall at all times maintain the names and addresses of the Holders of Liquidation Trust Interests, as applicable, and the respective interests of the Beneficiaries.  The Register shall be adjusted as Disputed Claims are determined to be Allowed Claims.  The Liquidation Trustee may rely upon the Register for the purposes of delivering Distributions or notices.  In preparing and maintaining the Register, the Liquidation Trustee may rely on the name and address of each Holder of a Claim as set forth in the Bankruptcy Schedules, unless: (a) a different name and/or address is set forth in a proof of claim filed by such Holder in the Case; or (b) proper notice of a name or address change has been delivered by such Beneficiary to the Liquidation Trustee in accordance section 10.1.

2.2.2    <u>Absolute Owners</u>.  The Liquidation Trustee may deem and treat the Beneficiary of record in the Register as the absolute owner of such Liquidation Trust Interests for the purpose of receiving Distributions and payments thereof and for all other purposes whatsoever.

2.3     <u>Evidence of Liquidation Trust Interests</u>.  The interests of the Holders of

Liquidation Trust Interests shall be represented by book entries on the books and records of the

Liquidation Trust.

2.4     <u>Securities Law Registration</u>.  To the extent the Liquidation Trust Interests (or

any underlying economic or other interest or part thereof) are deemed to be "securities," the

issuance of Liquidation Trust Interests to holders of Allowed Claims under the Plan shall be

exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the

Securities Act of 1933, as amended (the **<u>Securities Act</u>**") and any applicable state and local

laws requiring registration of securities.  If the Liquidation Trustee determines, with the

advice of counsel, that the Liquidation Trust is required to comply with registration and

reporting requirements of the Securities Exchange Act of 1934, as amended (the **<u>Exchange</u>**

**<u>Act</u>**"), or the Investment Company Act of 1940, as amended (the **<u>Investment Company</u>**

**<u>Act</u>**"), then the Liquidation Trustee shall take any and all actions to comply with such

registration and reporting requirements, if any, and file periodic reports with the Securities

and Exchange Commission (the **<u>SEC</u>**"), after the filing of a motion with the Court seeking

approval to do so, upon notice and opportunity for a hearing provided to the Post Effective

Date Service List, and the entry of a Final Order of the Court so directing.  Notwithstanding

the foregoing procedure, if the Liquidation Trustee determines, with the advice of counsel,

that the Liquidation Trust is required to comply with the registration and reporting

requirements of the Exchange Act or the Investment Company Act, then prior to the

registration of the Liquidation Trust under the Exchange Act or the Investment Company

Act, the Liquidation Trustee shall seek to amend this Agreement to make such changes as are

deemed necessary or appropriate to ensure that the Liquidation Trust is not subject to the

registration or reporting requirements of the Exchange Act, or the Investment Company Act,

and this Agreement, as so amended, shall be effective after notice and opportunity for a

hearing provided to the Post Effective Date Service List, and the entry of a Final Order of the

Court.  If the Agreement, as amended, is not approved by Final Order of the Court or the

Court otherwise determines in a Final Order that registration under one or both of the

Exchange Act or Investment Company Act is required, then the Liquidation Trustee shall

take such actions as may be required to satisfy the registration and reporting requirements of

the Exchange Act and/or the Investment Company Act, as applicable.

2.5    <u>Rights of Beneficiaries</u>.  Each Beneficiary will be entitled to participate in the

rights due to a Beneficiary hereunder, and under the Plan and Confirmation Order.  Each

Beneficiary shall take and hold any uncertificated Liquidation Trust Interests subject to all of the

terms and provisions of the Agreement, the Plan, and the Confirmation Order.  The interest of a

Beneficiary in the Liquidating Trust is in all respects personal property, and, subject to the

provisions of the Agreement, upon the death, insolvency, or incapacity of an individual

Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary

and such death, insolvency, or incapacity shall not terminate or affect the validity of the

Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or

control of the Trust Assets, or any right to call for a partition or division of the Trust Assets, or to

require an accounting, or any standing to direct the Liquidation Trustee to do or not to do any act

or to institute any action or proceeding upon or with respect to the Trust Assets, except as

expressly provided in the Agreement, the Plan, or the Confirmation Order.  Title to all the Trust

Assets, other than the Administrative Reserve, shall be vested in the Liquidation Trustee, and the

sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under the

Agreement, the Plan, and the Confirmation Order.

2.6  Limit on Transfer of Liquidation Trust Interests of Beneficiaries.

2.6.1  The Liquidation Trust Interest (including any economic or other interest or

part thereof) of a Beneficiary in the Liquidation Trust shall not be transferable, provided,

however, subject to the limitations set forth herein, including sections 2.6.2 and 2.6.3, a

Beneficiary may transfer a Liquidation Trust Interest by gift or sale, only upon death or

permanent incapacity, to such Beneficiary's guardian, conservator, executor, administrator,

trustee, or beneficiary of such Person's will; to such Beneficiary's spouse, children, stepchildren,

grandchildren, parents, siblings, or legal dependents of the Beneficiary; or to a trust of which the

beneficiary or beneficiaries of the corpus and the income shall be such Beneficiary's spouse,

children, stepchildren, grandchildren, parents, siblings, legal dependents, or such Beneficiary.

Any of the foregoing permitted transfers may only be effected if: (a) the transferee agrees in

writing to become bound as a party to the Agreement; and (b) such transfer is exempt from the

registration provisions of the Securities Act, if applicable, and from the qualification provisions

of any state securities law, if applicable.  In no circumstance can a Liquidation Trust Interest be

hypothecated or pledged as security for a debt.  The Liquidation Trustee need not reflect any

transfer (or make any Distribution to any transferee) and may, in his, her, or its sole and absolute

discretion, give notice to such Beneficiary that no transfer has been recognized in the event the

Liquidation Trustee reasonably believes that such transfer (or the Distribution to such

transferee): (i) may constitute a violation of applicable laws; (ii) might cause the Liquidation

Trust to be required to register the Liquidation Trust Interests under the Exchange Act; or

(iii) may not be permitted under the Agreement.

2.6.2    Prior to any transfer, assignment, or conveyance of a Liquidation Trust Interest (including any economic or other interest or part thereof) pursuant to section 2.6.1 (each, a **"Transfer"**), the transferring Beneficiary shall submit to the Liquidation Trustee a duly endorsed assignment of the Liquidation Trust Interest to be transferred (in a form reasonably acceptable to the Liquidation Trustee) together with the service charge, if any, to be specified by the Liquidation Trustee pursuant to section 2.6.3.  No such Transfer shall be effected until, and the transferee shall succeed to the rights of a Beneficiary only upon, final acceptance and registration of the Transfer by the Liquidation Trustee in the Register.  No transfer, assignment, or other disposition of a Liquidation Trust Interest may be effected until either: (a) the Liquidation Trustee shall have received such legal advice or other information that the Liquidation Trustee, in his, her, or its sole and absolute discretion, deems necessary or appropriate to assure that any such disposition shall not require the Liquidation Trust to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act; or (b) the Liquidation Trustee in his, her, or its sole and absolute discretion has determined to register and/or make periodic reports in order to enable such disposition to be made.  In the event that any such disposition is allowed, the Liquidation Trustee may add such restrictions upon Transfer and other terms to the Agreement as are deemed necessary or appropriate by the Liquidation Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.  Further, notwithstanding anything to the contrary in the Agreement, no Transfer or other disposition of a Liquidation Trust Interest shall be permitted or recognized (within the meaning of Treasury Regulation section 1.7704-1(d)), and the Liquidation Trust may not issue any Liquidation Trust Interest relating thereto, until the Liquidation Trustee has received such legal advice or other information that the Liquidation Trustee, in his, her, or its

sole and absolute discretion, deems necessary or appropriate to assure that any such Transfer or other disposition shall not cause the Liquidation Trust to be treated as a "publicly traded partnership" pursuant to section 7704 of the Code (assuming the Liquidation Trust were treated as a partnership for federal Tax purposes).  To ensure that Liquidation Trust Interests are not treated as "traded on an established securities market" within the meaning of Treasury Regulation section 1.7704-1(b) or "readily tradable on a secondary market or the substantial equivalent thereof" within the meaning of Treasury Regulation section 1.7704-1(c) in the event the Liquidation Trust were taxed as a partnership, the Liquidation Trust shall not: (i) participate in the establishment of any such market or the inclusion of the Liquidation Trust Interests thereon; or (ii) recognize any Transfer or other disposition made on any market by: (A) redeeming the transferor (in the case of a redemption or repurchase by the Liquidation Trust); or (B) admitting the transferee as a Beneficiary of the Liquidation Trust or otherwise recognizing any rights of the transferee, such as a right of the transferee to receive Distributions (directly or indirectly) from the Liquidation Trust or otherwise to acquire a Liquidation Trust Interest.

       2.6.3   Prior to the registration of any Transfer by a Beneficiary, the Liquidation Trustee shall: (a) treat the Person in whose name the Liquidation Trust Interest is registered as the owner for all purposes, and the Liquidation Trustee shall not be affected by notice to the contrary; and (b) not be liable for making any Distribution to the transferring Beneficiary.  When a request to register the Transfer of a Liquidation Trust Interest is presented to the Liquidation Trustee, the Liquidation Trustee shall register the Transfer as requested if the requirements for Transfers hereunder are met.  The Liquidation Trustee may, in his, her, or its sole and absolute discretion, charge a service charge in an amount sufficient to cover the expenses of the

Liquidation Trustee and its agents and any Tax or governmental charge that may be imposed on any Transfer of a Liquidation Trust Interest.  Failure of any Beneficiary to comply with these provisions, including the payment of the service charge, shall void any Transfer of the related Liquidation Trust Interest, and the proposed transferee shall have no rights under the Agreement, the Plan, or the Confirmation Order with respect thereto.  Upon the Transfer of a transferring Beneficiary's entire Liquidation Trust Interest as evidenced by the Register, such transferring Beneficiary shall have no further right, title, interest in the Trust Assets or the Liquidation Trust.

2.7    <u>No Legal Title in Beneficiaries</u>.  No Beneficiary or transferee shall have legal title to any part of the Trust Assets.  No transfer, by operation of law or otherwise, of the right, title, and interest of any Beneficiary in and to the Trust Assets or the Liquidation Trust shall operate to terminate the Liquidation Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Assets.

## SECTION 3

## THE LIQUIDATION TRUSTEE

3.1    <u>Liquidation Trustee — Generally.</u>

3.1.1    The Liquidation Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Liquidation Trust.

3.1.2    The provisions of the Agreement relating to the Liquidation Trust are intended to create a trust and a trust relationship and are to be governed and construed in all respects as a trust.  The Liquidation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock

company, or association, nor shall the Liquidation Trustee nor the Beneficiaries, or any of them, for any purpose be, or be deemed to be, or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Beneficiaries to the Liquidation Trust and the Liquidation Trustee shall be solely that of beneficiaries of a trust to a trust and its trustee and shall not be deemed a principal and agency relationship, and the rights of the Beneficiaries shall be limited to those expressly conferred upon them by the Agreement, the Plan, and the Confirmation Order.

3.2    <u>Manner of Acting</u>.  The Liquidation Trustee shall oversee the liquidation of the Trust Assets in good faith and in a cost-effective manner in a reasonable time.  The Liquidation Trustee shall make continuing efforts to liquidate the Trust Assets, make timely Distributions, and not unduly prolong the duration of the Liquidation Trust.  In overseeing the selling of the Trust Assets, or otherwise monetizing them, the Liquidation Trustee shall use reasonable efforts to maximize the amount of the net proceeds derived therefrom.  The liquidation of the Trust Assets may be accomplished in part through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or Causes of Action, subject to the terms of the Plan, the Confirmation Order, and the Agreement.  Any and all proceeds generated from such Trust Assets shall be held and used and distributed by the Liquidation Trust in accordance with the terms of the Plan, Confirmation Order and this Agreement.  The Liquidation Trustee on behalf of the Liquidation Trustee may incur any reasonable and necessary expenses in liquidating the Trust Assets and may engage on behalf of the Liquidation Trust such professionals and other employees as the Liquidation Trustee believes appropriate in liquidating the Trust Assets, including the prosecution of Causes of Action. The Liquidating Trustee shall

engage the law firm of Greenberg Glusker Fields Claman & Machtinger, LLP as general counsel for the Liquidating Trustee.

3.3    <u>Status of Liquidation Trustee</u>.  The Liquidation Trustee shall be the sole authorized representative of the Estate from and after the Effective Date within the meaning of sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code for purposes of administering, investigating, litigating, and settling, the Trust Assets, including the Causes of Action, and with respect thereto shall have all the rights and powers of the Debtor and the Estate as provided for in the Bankruptcy Code with respect to the Liquidation Trust and the Trust Assets in addition to any rights and powers granted in the Agreement, the Plan, and the Confirmation Order.  The Liquidation Trustee shall be a party in interest as to all matters relating to the Trust Assets.

3.4    <u>Causes of Action.</u>

3.4.1    Except as to any Cause of Action validly released, waived, enjoined, extinguished, or otherwise no longer existing prior to the Effective Date, or under the Plan or Confirmation Order, the Liquidation Trustee shall be the successor-in-interest to the Debtor and the Estate with respect to any Cause of Action that was or could have been commenced by the Debtor or the Estate prior to the Effective Date, or thereafter, until the Liquidation Trust disposes of them.  All such Causes of Action, including the right to subordinate Claims under section 510 of the Bankruptcy Code, shall be retained by the Liquidation Trustee.

3.4.2    The Liquidation Trustee shall have discretion to pursue or not to pursue any and all Causes of Action, as determined to be in the best interests of the Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of its decision, provided, however, that the Liquidation Trustee may, but is not required to, seek

direction from the Court with respect to the disposition of Causes of Action.  With respect to any

Cause of Action, the Liquidation Trust and the Liquidation Trustee shall be bound by, and shall

give effect to, any release, exculpation, waiver, estoppel, or injunction provided by the Plan or

the Confirmation Order.

3.5    Compensation and Reimbursement of Liquidation Trustee and Professionals.

3.5.1    The Liquidation Trustee shall be engaged on terms consistent with the

Liquidation Trustee's current appointment as financial advisor to the Debtor.

3.5.2    Any professional or any Person retained by the Liquidation Trustee on

behalf of the Liquidation Trust will be entitled to reasonable compensation for services rendered

at a rate reflecting actual time billed by such professional or Person on an hourly basis, at the

standard billing rates in effect at the time of service, or such other rate or basis of compensation

that is agreed upon by the Liquidation Trustee.

3.5.3    Any and all reasonable and necessary costs and expenses incurred by the

Liquidation Trustee and any professional or other Person retained by the Liquidation Trustee on

behalf of the Liquidation Trust in performing their respective duties under the Agreement will be

reimbursed by the Liquidation Trust from the Trust Assets.

3.5.4    The Liquidation Trustee will have authority to pay reasonable

compensation and reimburse reasonable expenses incurred by each professional engaged by the

Liquidation Trustee on behalf of the Liquidation Trust.  By no later than the twentieth (20th) day

of the succeeding month, the Liquidation Trustee shall file with the Court and serve on the Post

Effective Date Service List a report showing the amount of fees and expenses paid by the

Liquidation Trustee to the professionals employed by the Liquidation Trustee in the preceding month.

3.6    Tenure, Removal, and Replacement of the Liquidation Trustee.

3.6.1    The appointment and authority of the Liquidation Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until the termination of the Liquidation Trust and such authority as provided for in section 6.

3.6.2    The service of the Liquidation Trustee will be subject to the following:

(a)    The Liquidation Trustee will serve until death, resignation pursuant to section 3.6.2(a)(i), or removal pursuant to section 3.6.2(a)(ii):

(i)    The Liquidation Trustee may resign upon not less than sixty (60) days' prior written notice to the Post Effective Date Service List and the Court, provided, however, that no such resignation will be effective until a successor Liquidation Trustee has been appointed and approved in accordance with section 3.6 and such successor Liquidation Trustee has accepted such appointment in accordance with section 3.8.  Immediately upon the effectiveness of the resignation, the resigning Liquidation Trustee shall file a report comparable to the Final Report described in section 4.8 but for the period of such Person's service.  Upon the resignation of the Liquidation Trustee and the appointment and acceptance of a successor, the resigning Liquidation Trustee will convey, transfer, and set over to the successor Liquidation Trustee by appropriate instrument or instruments all of the funds, if any, then unconveyed

or otherwise undisposed of and all other Trust Assets then in the resigning Liquidation

Trustee's control and held under the Agreement.

(ii)    The Liquidation Trustee may be removed upon motion by

any Beneficiary if the Court determines that such removal is in the best interests of the

Beneficiaries.  Such removal shall become effective upon the entry of an Order of the

Court granting such motion and directing such removal.  Prior to the effective date of

removal of the Liquidation Trustee, a successor to the Liquidation Trustee shall be

appointed pursuant section 3.6.2(b). The former Liquidation Trustee having been

removed shall file a report comparable to the Final Report described in section 4.8 but for

the period of his, her, or its service.

(b)    A successor Liquidation Trustee may be nominated by the

Liquidation Trustee during his, her, or its tenure, and if not so nominated within thirty days after

issuance of notice of resignation by the Liquidation Trustee, or upon the death or removal of the

Liquidation Trustee, by any Beneficiary, in each case subject to Court approval on notice

provided to the Post Effective Date Service List, and which appointment shall take effect upon

the entry of the Order reflecting Court approval.  In the event that multiple candidates are

proposed by Beneficiaries to be successor Liquidation Trustee, the Court shall determine which

candidate is to be selected and take into account the dollar amount of the Liquidation Trust

Interests held by Beneficiaries supporting each candidate in such determination.  Upon the

appointment of and acceptance by a successor Liquidation Trustee, the successor Liquidation

Trustee shall file a notice of such appointment and acceptance with the Court, which notice shall

be served upon the Post Effective Date Service List and shall include the name, address, and

telephone number of the successor Liquidation Trustee; provided that the filing of such notice

shall not be a condition precedent to the vesting in the successor Liquidation Trustee of all the properties, rights, powers, trust, and duties of his, her, or its predecessor.

(c)     Immediately upon appointment of any successor Liquidation Trustee and acceptance of such appointment by the successor Liquidation Trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidation Trustee hereunder will be vested in and undertaken by the successor Liquidation Trustee without any further act.

3.7     <u>Continuance of Trust</u>.  The death, resignation, or removal of the Liquidation Trustee shall not operate to terminate the Liquidation Trust or to revoke any existing agency (other than any agency of the former Liquidation Trustee as the Liquidation Trustee) created pursuant to the terms of the Agreement, or invalidate any action taken by the Liquidation Trustee, and the provisions of the Agreement shall be binding upon and inure to the benefit of the Liquidation Trustee and the Liquidation Trustee's successors, as the case may be.

3.8     <u>Acceptance of Appointment by Successor Liquidation Trustee</u>.  Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations as and of the Liquidation Trustee under the Agreement, and the successor Liquidation Trustee shall become vested with all the properties, rights, powers, trusts, and duties of its predecessor as Liquidation Trustee hereunder with like effect as if originally named herein.  The successor Liquidation Trustee will not be personally liable for any act or omission of the predecessor Liquidation Trustee.

3.9     <u>Bond or Insurance</u>.  The Liquidation Trustee, may at its option, obtain a trustee's bond to protect the Beneficiaries with respect to its obligations as Liquidation Trustee, and in such event shall pay the premiums for such bond with Trust Assets as an expense of

administering the Liquidation Trust.  Alternatively, or in addition thereto, the Liquidation

Trustee may satisfy the requirement of a bond with insurance coverage for the liabilities, duties,

and obligations of the Liquidation Trustee and its agents, employees, and professionals (in the

form of an errors and omissions policy or otherwise) which may, at the sole option of the

Liquidation Trustee, remain in effect for a reasonable period after the conclusion of the

Liquidation Trustee's service.  The Liquidation Trustee shall further be authorized to obtain all

reasonably necessary insurance coverage with respect to any property that is or may in the future

become Trust Assets.

## SECTION 4

## AUTHORITY, LIMITATIONS, DUTIES, AND

## FINAL REPORT AND DISCHARGE

4.1    <u>Authority</u>.  In connection with the administration of the Liquidation Trust, the

Liquidation Trustee is authorized to and shall perform, in good faith, in accordance with the

Agreement, the Plan, and the Confirmation Order, any and all acts necessary or desirable to

accomplish the purposes of the Liquidation Trust, and to take such actions, in good faith, as

required under the Agreement, the Plan, and the Confirmation Order.  Except as expressly

required in the Agreement, the Plan, or the Confirmation Order, no prior or subsequent Court

approval is required for any act of the Liquidation Trustee.  Subject to any specific limitations

contained in, or as otherwise provided by the Agreement, the Plan, or the Confirmation Order,

the Liquidation Trustee shall have the authority, power, and obligation, as applicable, in the

capacity as Liquidation Trustee, to:

(a)    receive, control, manage, liquidate, and dispose of all Trust Assets, other than the Administrative Reserve, for the benefit of the Beneficiaries;

(b)    act as custodian of the Trust Assets, liquidate and reduce the Trust Assets, other than the Administrative Reserve, to Cash at such times as the Liquidation Trustee deems appropriate to accomplish the purpose of the Liquidation Trust, in accordance with the terms of the Agreement, the Plan, and the Confirmation Order;

(c)    hold legal title to any and all rights of the Beneficiaries in or arising from the Trust Assets, other than the Administrative Reserve, including, but not limited to, collecting any and all money and other property belonging to the Liquidation Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein, which title shall be held by the Liquidation Trustee solely in the capacity as Liquidation Trustee and not in any individual capacity;

(d)    perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including the assertion all rights vested thereby and the filing, commencement, or prosecution of Causes of Action (including objections to Claims under section 502 of the Bankruptcy Code, turnover actions under section 542 of the Bankruptcy Code, Avoidance Actions, equitable subordination claims under section 510 of the Bankruptcy Code, and any other and all Causes of Action of the Debtor or the Estate);

(e)    protect and enforce the rights to the Trust Assets by any method deemed appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law, and general principles of equity;

(f)     establish and maintain any necessary reserves pursuant to the terms of the Plan, the Confirmation Order, and any order of the Court;

(g)     file or cause to be filed, if necessary, any and all Tax and information returns, and any other statements or disclosures relating to the Liquidation Trust that are required to be filed by any Governmental Authority with respect to the Debtor for the 2013 calendar year and with respect to the Liquidation Trust, and withhold and pay Taxes properly payable by the Liquidation Trust, if any; provided that, the Liquidation Trustee is not obligated to file any tax returns on behalf of the Debtor, but it may file payroll tax returns to the extent necessary to assist in resolving the claims of taxing authorities.

(h)     determine and satisfy any and all liabilities created, incurred, or assumed by the Liquidation Trust;

(i)     execute offsets against Claims as provided for in the Plan and Confirmation Order;

(j)     pay all expenses and make other payments relating to the Trust Assets, including the reasonable fees and expenses of the Liquidation Trustee and any professional engaged by the Liquidation Trustee on behalf of the Liquidation Trust;

(k)     take or refrain from taking any action the Liquidation Trustee reasonably deems necessary to protect, preserve, and maximize the Trust Assets, including improving or repairing Trust Assets and purchasing insurance of any kind;

(l)     enter into contracts in the course of operating the Trust Assets for liquidation or in conjunction with their disposition under the Plan, the Confirmation Order, and the Agreement;

(m)       manage, sell, and convert all or any portion of the Trust Assets to Cash;

(n)       make Distributions;

(o)       release, convey, or assign any right, title, or interest in or about the Trust

Assets or any portion thereof;

(p)       open and maintain bank accounts on behalf of the Liquidation Trust,

deposit funds therein, and draw checks thereon, as appropriate under the Plan, the Confirmation

Order, and the Agreement;

(q)       engage, employ, and/or pay on behalf of the Liquidation Trust such

attorneys, accountants, engineers, agents, tax specialists, financial advisors, appraisers,

investment bankers, other professionals, and other Persons as may, in the sole and absolute

discretion of the Liquidation Trustee, be deemed necessary to fulfill the duties under the Plan,

the Confirmation Order, and the Agreement, including former employees of the Debtor and any

professionals previously engaged by the Debtor or the Committee, and waive any conflicts of

interest as deemed appropriate in the sole and absolute discretion of the Liquidation Trustee;

(r)       sue and be sued in the name of the Liquidation Trust and file or pursue

Causes of Action, including objections to Claims, and seek to settle or disallow, recharacterize,

reclassify, or subordinate any of them, and compromise, adjust, arbitrate, sue on or defend,

pursue, prosecute, abandon, or otherwise deal with and settle any Causes of Action in favor of or

against the Liquidation Trust as the Liquidation Trustee shall deem advisable, including seeking

estimation of contingent or unliquidated Claims;

(s)    assert, enforce, waive, or release rights, privileges, or immunities of any kind, including any privilege or defense of the Debtor or the Estate;

(t)    request any appropriate Tax determination with respect to the Liquidation Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(u)    seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(v)    pay obligations or expenses of, or relating to, the Trust Assets when the Liquidation Trustee, considering the purposes, terms, distributional requirements, and other circumstances of the Plan, deems it prudent to do so;

(w)    abandon any property, including cash by way of donation to a charity, which the Liquidation Trustee determines in its reasonable discretion to be of de minimis value or otherwise burdensome to the Liquidation Trust, including any pending adversary proceeding or other legal action;

(x)    except as otherwise set forth in the Agreement or in the Plan, to seek such orders, judgments, injunctions, and rulings as deemed necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan and the Confirmation Order; and

(y)    in general, without in any manner limiting any of the foregoing, deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any Person owning the same to deal therewith, whether similar to or different from the ways herein specified, or take such other actions as may be necessary or helpful to accomplish the purposes of the Plan and the Confirmation Order.

4.2     <u>Limitations on the Liquidation Trustee.</u>

4.2.1    Notwithstanding anything in the Agreement to the contrary, without an Order of the Court after notice to the Post Effective Date Service List, the Liquidation Trustee shall not do or undertake any of the following on behalf of the Liquidation Trust:

(a)     guaranty any debt;

(b)     loan Trust Assets;

(c)     borrow on an unsecured or secured basis;

(d)     grant any liens to a third-party on the Trust Assets;

(e)     transfer Trust Assets to another trust with respect to which the Liquidation Trustee serves as trustee (except to such sub-trust as may be otherwise authorized by this Agreement); or

(f)     make any transfer or Distribution of Trust Assets, other than those authorized under the Plan, the Confirmation Order, and the Agreement.

4.2.2    Notwithstanding anything herein to the contrary, the Liquidation Trustee, acting in the capacity of Liquidation Trustee, other than to the extent reasonably necessary to, and consistent with the liquidating purpose of the Trust, shall not and shall not be authorized to engage in any trade or business, and shall take such actions consistent with the orderly liquidation of the Trust Assets as are required by applicable law, and such actions permitted hereunder.  Notwithstanding any other authority granted herein, the Liquidation Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the

Liquidation Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

        4.2.3   The Liquidation Trust shall not hold 50% or more of the stock (in either vote or value) of any Person that is treated as a corporation for federal income Tax purposes, nor have any interest in any Person that is treated as a partnership for federal income Tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including through foreclosure of security interests and execution of judgments, in order to preserve the value of the Trust Assets; provided, however, the Liquidation Trust shall not hold more than 4.9% of the issued and outstanding securities of any public reporting company.

        4.2.4   In the absence of a Final Order of the Court to the contrary the Liquidation Trustee shall not facilitate the development of an active trading market for the Liquidation Trust Interests in the Liquidation Trust, and shall not encourage any other Person to do so (including taking steps to list such interests on any national securities exchange or on NASDAQ, engaging the services of a market maker, placing any advertisements in the media promoting investment in the Liquidation Trust, or collecting or publishing information about prices at which such interests may be transferred).

        4.3   <u>Additional Duties of the Liquidation Trustee</u>.  Without limiting the authority, power, and obligations set forth in section 4.1, subject to any limitations contained in, or as otherwise provided by the Agreement, the Plan, or the Confirmation Order, the Liquidation Trustee, in the capacity of Liquidation Trustee, shall have the following duties:

        4.3.1   <u>Bond</u>.  [Intentionally omitted]

4.3.2    [Intentionally omitted]

4.3.3    <u>Maintenance of Post Effective Date Service List</u>.  Pursuant to section 10.2, the Liquidation Trustee shall maintain the Post Effective Date Service List.

4.3.4    <u>Maintenance of Books and Records</u>.  The Liquidation Trustee shall store and maintain the books and records turned over to the Liquidation Trust, subject to section 6.2**.**

4.3.5    <u>Maintenance of Cash and Proceeds of the Trust Assets</u>.  Cash received on or collected subsequent to the Effective Date, and all proceeds and income therefrom (pending periodic distributions in accordance with the provisions of the Plan and the Confirmation Order), shall be held by the Liquidation Trustee in Cash, money market investments, and similar investments, all as permissible under section 345 of the Bankruptcy Code, or as otherwise approved by Order of the Court, for the benefit of Beneficiaries entitled to Distributions under the Plan, the Confirmation Order, and the Agreement, provided, however, that:  (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; and (b) the Liquidation Trustee may retain any proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets to Cash.

4.3.6    <u>Reports to Beneficiaries</u>.  On written request, the Liquidation Trustee shall provide such reports as described in sections 4.8 and 8 to Beneficiaries.

4.3.7    [Intentionally Deleted]

4.3.8    Tax Returns.

(a)    The Liquidation Trustee shall not be responsible for the
preparation and filing of the Tax returns for the Debtor, provided that Liquidation Trust may, but
is not required to, file payroll tax returns for the Debtor to the extent necessary to assist in
resolving the claims of taxing authorities against the Liquidation Trust.

(b)    Except to the extent that the Liquidation Trust is a "disputed
ownership fund" within the meaning of Treasury Regulation section 1.468B-9, and subject to
section 4.3.8(c) and section 4.3.8(e), the Liquidation Trustee shall cause the timely preparation,
distribution, and/or filing of any necessary Tax returns and other documents or filings as a
grantor trust as required by applicable law (including but not limited to those pursuant to
Treasury Regulation sections 1.671-1(a) and 1.671-4(a) and any federal, state, and local Tax
returns), and pay any Taxes shown as due thereon and which are payable by the Liquidation
Trust by virtue of its existence and operations.  Except to the extent that the Liquidation Trust is
a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9, and
subject to section 4.3.8(c) and section 4.3.8(e), the Liquidation Trust's taxable income, gain, loss,
deduction, or credit will be allocated to the Beneficiaries in accordance with their relative
interests in the Liquidation Trust, and Beneficiaries shall be responsible for the payment of any
Tax due on said items of income, gain, loss, deduction, or credit.

(c)    The Liquidation Trustee shall create, and may, at his, her, or its
sole discretion, timely elect to treat, any reserve that may be established for Disputed Claims,
including the Disputed Claims Reserves (each a **"Disputed Claims Fund"**) as a "disputed

ownership fund" pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). Consistent therewith, the Liquidation Trustee shall prepare and timely file income Tax returns for any Disputed Claims Fund (which shall be separate and apart from any income Tax returns prepared and filed for the Liquidation Trust) as a C corporation or a qualified settlement fund, as the case may be, and shall include in the income of the Disputed Claims Fund all income received or accrued (as applicable) from assets allocated to, or retained on account of, Disputed Claims in the Disputed Claims Fund and shall pay any income Taxes owing by or imposed on the Disputed Claims Fund. The Liquidation Trustee shall make such election by attaching a statement to that effect to the timely filed federal income Tax return of the Disputed Claims Fund for the first taxable year of the Liquidation Trust's existence and shall include the legend, in boldfaced type, "§1.468B-9(c) Election" at the top of the page. To the extent permitted by applicable law, the Liquidation Trustee shall report consistent with the foregoing for state and local income Tax purposes. The Liquidation Trustee shall file any information returns and make any Tax deposits required to be made by applicable federal, state, or local law.

(d)     All Beneficiaries shall report, for Tax purposes, consistent with the provisions of this section 4.3.8.

(e)     The Liquidation Trustee shall pay: (i) out of the Trust Assets, any Taxes imposed on the Liquidation Trust or the Trust Assets; and (ii) out of a Disputed Claims Fund, any Taxes imposed on such Disputed Claims Fund. In the event, and to the extent, any Cash retained on account of Disputed Claims in a Disputed Claims Fund is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed Claims Fund, such Taxes shall be: (x) reimbursed from any subsequent Cash amounts retained on account of such Disputed Claims Fund; or (y) to the

extent Disputed Claims in such Disputed Claims Fund have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trustee as a result of the resolutions of such Disputed Claims.

(f)    The Liquidation Trustee shall be authorized to, and shall, exercise all powers regarding the Liquidation Trust's Tax matters, including filing Tax returns and preparing, distributing, and filing Tax statements and notices, to the same extent as if the Liquidation Trustee were the debtor in possession.  The Liquidation Trustee may request an expedited determination of any unpaid Tax liability of the Liquidation Trust under section 505(b) of the Bankruptcy Code prior to termination of the Liquidation Trust, and shall represent the interest and account of the Liquidation Trust before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

4.4    <u>No Implied Obligations</u>.  No covenants or obligations shall be implied into the Agreement, the Plan, or the Confirmation Order.  The Liquidation Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any document or instrument evidencing or otherwise constituting a part of the Trust Assets.

4.5    <u>Unknown Property and Liabilities</u>.  The Liquidation Trustee shall be responsible for only that property delivered to him, her, or it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

4.6    <u>Compliance with Laws</u>.  Any and all Distributions of Trust Assets shall be in compliance with applicable laws.

4.7    <u>Inquiries into Liquidation Trustee's Authority</u>.  Except as otherwise set forth in the Plan, the Confirmation Order, or the Agreement, no Person dealing with the Liquidation Trust shall be obligated to inquire into the authority of the Liquidation Trustee in connection with the protection, conservation, or disposition of the Trust Assets.

4.8    <u>Final Report and Discharge of Liquidation Trustee</u>.

4.8.1    <u>Final Report</u>.  Prior to termination of the Liquidation Trust, the Liquidation Trustee shall prepare a final report (the **<u>"Final Report"</u>**), which shall contain the following information:  (a) all Trust Assets, including assets originally under the Liquidation Trustee's control; (b) all funds transferred into and out of any reserves established by the Liquidation Trustee; (c) an accounting of all purchases, sales, gains, losses, and income and expenses in connection with the Trust Assets during the Liquidation Trustee's term of service (including any predecessor Liquidation Trustee); (d) a statement setting forth each Beneficiary's share of items of income, gain, loss, deduction, or credit and the Distributions to Beneficiaries; (e) the ending balance of all Trust Assets; (f) a narrative describing actions taken by the Liquidation Trustee in the performance of duties which materially affect the Liquidation Trust; and (g) schedule(s) reflecting that:

(i)    all adversary proceedings and contested matters have been finally adjudicated by the entry of a Final Order or dismissal;

(ii)    all Claims, except Subordinated Claims, shall have either: (A) become Allowed Claims and the Holders thereof paid pursuant to the Plan; or (B) been disallowed by a Final Order or been deemed to be disallowed in accordance with the terms of the Plan and the Confirmation Order;

(iii)    all Trust Assets (including Causes of Action) have been either: (A) reduced to Cash; or (B) abandoned by the Liquidation Trustee, in accordance with the provisions of the Agreement, the Plan, and the Confirmation Order; and

(iv)    all expenses of the Liquidation Trust have been paid (or will be paid) and all payments and final Distributions to be made to Beneficiaries have been made (or will be made) by the Liquidation Trustee in accordance with the provisions of the Agreement, the Plan, and the Confirmation Order.

4.8.2    Approval of Final Report and Discharge of the Liquidation Trustee.  The Liquidation Trustee's Final Report shall be filed with the Court and served on each Person listed on the Post Effective Date Service List, along with a motion for approval of the Final Report, discharge of the Liquidation Trustee, and entry of the Final Decree.  Subject to section 6.2, upon the entry of the Order of the Court approving the Final Report, the Liquidation Trustee shall be discharged from all liability to the Liquidation Trust or any Person who or which has had or may then or thereafter have a claim against the Liquidation Trust for acts or omissions in the Liquidation Trustee's capacity as the Liquidation Trustee or in any other capacity contemplated by the Agreement, the Plan, or the Confirmation Order, unless the Court orders otherwise for good cause.

4.9    Reliance by and on Liquidation Trustee.

4.9.1    Except as otherwise provided herein, the Liquidation Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, Order, or other paper or document believed reasonably by the

Liquidation Trustee to be genuine and to have been signed or presented by the proper party or parties.

4.9.2    Except as otherwise provided herein, Persons dealing with the Liquidation Trustee shall look only to the assets of the Liquidation Trust to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy any such liability.

4.10    <u>Standard of Care; Exculpation</u>.  Neither the Liquidation Trustee nor any of the Liquidation Trust's agents, representatives, or professionals shall be liable for any act or omission taken or omitted to be taken by the Liquidation Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Liquidation Trustee or the agents, representatives, or professionals of the Liquidation Trust as determined by a Final Order.  The Liquidation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with attorneys, accountants, financial advisors, or agents, and the good faith determination to not do so shall not result in the imposition of liability on the Liquidation Trustee, unless such determination is based on recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud as determined by a Final Order.  The Liquidation Trustee and the employees, agents, professionals, and representatives of the Liquidation Trust shall be and hereby are exculpated by all Persons, including Beneficiaries and other parties in interest, from any and all claims, Causes of Action, and other assertions of

38

liability arising out of any act or omission of the Liquidation Trustee, except only for claims,

Causes of Action, and other assertions of liability to the extent based on the Liquidation Trustee's

recklessness, gross negligence, willful misconduct, knowing and material violation of law, or

fraud as determined by a Final Order.  No Beneficiary or other party in interest will have or be

permitted to pursue any claim or Cause of Action against the Liquidation Trustee or the

employees, agents, representative, or professionals of the Liquidation Trust for making payments

in accordance with the Plan or the Confirmation Order.  Any act taken or not taken by the

Liquidation Trustee with the approval of the Court will be conclusively deemed not to constitute

recklessness, gross negligence, willful misconduct, knowing and material violation of law, or

fraud.

## SECTION 5

## DISTRIBUTIONS

5.1     Establishment of Reserves.

5.1.1    On or as soon as practicable after the Effective Date, the Liquidation

Trustee shall establish such reserves as and when determined to be appropriate by the

Liquidation Trustee.

5.1.2    The Liquidation Trustee shall initially fund the Operating Reserve from

Cash transferred to the Liquidation Trust on the Effective Date, and shall periodically review and

may modify the funding level, in the reasonable discretion of the Liquidation Trustee, in an

amount necessary to pay in full in Cash the Post Effective Date Trust Expenses.  The Operating

Reserve may be funded thereafter as determined by the Liquidation Trustee in the Liquidation

Trustee's reasonable discretion as necessary with Cash and Cash proceeds from the liquidation of Trust Assets.

5.2    Distributions.

5.2.1    The Liquidation Trustee shall be responsible for making Distributions to the Beneficiaries.  The Liquidation Trustee shall first make Distributions to the Holders of all Allowed Administrative Claims (except to the extent previously paid by the Administrative Claims Reserve), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims (except for Allowed Secured Claims for which the Collateral Election is made), and Class 3 Customer and Warranty Claims, in accordance with the Plan and Confirmation Order.  After such Claims have been satisfied and the appropriate Disputed Claims Reserve has been made, then the Liquidation Trustee shall make Distributions of Liquidation Trust Net Proceeds to the Holders of Liquidation Trust Interests issued on account of Class 4 Claims to the extent permitted and as set forth in the Plan, the Confirmation Order, and the Agreement.

5.2.2    All Distributions made by the Liquidation Trustee to the Beneficiaries shall be payable to the Beneficiaries of record, as set forth in the Register, as of the thirtieth (30th) day prior to the date scheduled for the Distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  No Distribution of less than $10.00 will be made, and no consideration will be provided in lieu of such de minimis distributions not made. The Liquidation Trustee shall distribute Cash by wire from a domestic bank, by check drawn on a Liquidation Trust bank account, or by such other method as the Liquidation Trustee deems appropriate under the circumstances.  The Liquidation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidation Trustee's

reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other legal requirement, or in order to establish the Disputed Claims Reserve.

5.2.3    All Distributions made to the Beneficiaries under the Plan and this Agreement shall be made only from Trust Assets, and only to the extent that the Liquidation Trustee shall have sufficient Trust Assets to make such Distributions in accordance with the terms of the Plan, the Confirmation Order, and the Agreement, including adequate funding of the reserves.  Each Beneficiary shall look solely to the Trust Assets, and not to the Liquidation Trustee in a personal, individual, or corporate capacity, for Distributions to such Beneficiary.

5.2.4    <u>Calculations; Source of Distributions</u>.  The Liquidation Trustee shall maintain records of: (a) the calculations performed by the Liquidation Trustee and the Liquidation Trust's professionals in respect of any Distributions and disbursements made pursuant to the Plan, the Confirmation Order, and the Agreement; and (b) the accounts from which any such Distributions or disbursements were made.

## SECTION 6

## <u>DURATION OF LIQUIDATION TRUST</u>

6.1    <u>Duration of Liquidation Trust</u>.  Subject to section 6.2, the Liquidation Trust shall terminate by entry of an Order of the Court concurrently entered with a final decree closing the Case (the "**<u>Final Decree</u>**"), provided that the Liquidation Trustee has administered all of the Trust Assets and performed all duties required by the Plan and the Agreement, but in any event no later than five (5) years after the Effective Date.  Notwithstanding the foregoing, the Liquidation Trustee may, if it is in the best interests of the Beneficiaries, file a motion with the Court, upon notice and an opportunity for a hearing to the Post Effective Date Service List,

seeking an extension of the term of the Liquidation Trust for one or more finite periods based upon the particular facts and circumstances at that time (each, an **Extension Period**).  The Court may approve multiple Extension Periods in accordance with section 6.1.

6.2     Continuance of Liquidation Trust for Winding Up.  After the termination of the Liquidation Trust and for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until the duties pursuant to the Plan, the Confirmation Order, and the Agreement are fully executed.  Prior to the final distribution of all of the remaining Trust Assets, the Liquidation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the costs and expenses to complete the winding up of the Liquidation Trust.  At the Liquidation Trustee's sole and absolute discretion, the Liquidation Trustee may, but need not, destroy all remaining books, records, Register, and other documents and files not previously destroyed as provided in the Plan, the Confirmation Order, or the Agreement, at any time after six (6) months from the completion and winding up of the affairs of the Liquidation Trust.  Upon the later of the discharge of all responsibilities of the Liquidation Trustee, final Distribution of the entire Trust Assets, and entry of the Final Decree, the Liquidation Trustee shall have no further duties or obligations hereunder.

## SECTION 7

## INDEMNIFICATION; LIMITATIONS ON LIABILITY

7.1     Action Upon Instructions.  If in performing the Liquidation Trustee's duties, the Liquidation Trustee is required to decide between alternative courses of action, or the Liquidation Trustee is unsure of the application of any provision of the Agreement, the Plan, or the Confirmation Order, then the Liquidation Trustee shall be under no duty to take or refrain

from taking such action as the Liquidation Trustee shall deem advisable.  The Liquidation

Trustee may consult with legal counsel for the Liquidation Trustee and shall be fully protected in

respect of any action taken or not taken with the advice of legal counsel.  The Liquidation

Trustee may at any time apply to the Court for a determination as to the course of action to be

taken by the Liquidation Trustee, or at any time seek instructions from the Court concerning the

management or disposition of the Trust Assets.

      7.2    <u>Indemnification.</u>

        7.2.1   <u>Indemnification of Indemnified Persons.</u>  To the fullest extent permitted

by law, the Liquidation Trust, to the extent of its Trust Assets only, and not the personal assets of

any Beneficiary, shall indemnify, defend, and hold harmless any Person who was, or is, a party,

or is threatened to be made a party, to any pending or contemplated action, suit, or proceeding,

whether civil, criminal, administrative or investigative, by reason of the fact that such Person is

or was at any time after the Effective Date: (a) the Liquidation Trustee; or (b) an employee,

contractor, agent, attorney, accountant, or other professional of the Liquidation Trustee or the

Liquidation Trust (collectively, an **"<u>Indemnified Person</u>"**), from and against any and all losses,

liabilities, costs, damages, expenses (including fees and expenses of attorneys and other advisors

and any court costs incurred by an Indemnified Person), judgments, fines, and amounts paid in

settlement actually and reasonably incurred by such Person in connection with such action, suit,

or proceeding, or the defense or settlement of any claim, Cause of Action, issue, or matter

therein, to the fullest extent, except to the extent such liability is determined by a Final Order to

be the result of such Person's recklessness, gross negligence, willful misconduct, knowing and

material violation of law, or fraud, and provided that the Indemnified Person acted in good faith

or omitted to take action in good faith and in a manner reasonably believed to be in or not

inconsistent with the best interests of the Beneficiaries and the obligations imposed upon the

Liquidation Trustee by the Plan, the Confirmation Order, or the Agreement, and with respect to

any criminal action or proceeding, had no reasonable cause to believe the conduct was unlawful,

provided that nothing in the Agreement shall preclude actions for professional malpractice by the

Liquidation Trustee against any professionals engaged by the Liquidation Trustee on behalf of

the Liquidation Trust.  Costs or expenses incurred by any such Indemnified Person in defending

any such action, suit, or proceeding may be paid by the Liquidation Trust in advance of the

institution or final disposition of such action, suit, or proceeding, if authorized by the Liquidation

Trustee.  Any action taken or omitted to be taken with the express approval of the Court will

conclusively be deemed not to constitute recklessness, gross negligence, willful misconduct,

knowing and material violation of law, or fraud.  Notwithstanding anything to the contrary

herein, no Person shall be indemnified by the Liquidation Trust under section 7.2.1 for any costs,

expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement arising

from or relating to any claim, demand, or Cause of Action arising, or liability by reason of any

act or omission by the Indemnified Person occurring prior to the existence of the Liquidation

Trust, or from the Indemnified Person's recklessness, gross negligence, willful misconduct,

knowing and material violation of law, or fraud.  Subject to the foregoing, the Liquidation

Trustee shall not be liable except with respect to the performance or non-performance of such

duties and obligations as are specifically set forth herein, or in the Plan or the Confirmation

Order, and no implied duties or obligations shall be read into the Agreement, the Plan, or the

Confirmation Order against the Liquidation Trustee.

7.2.2    <u>Waiver</u>.  Any Indemnified Person may waive the benefits of indemnification under section 7.2, but only by an instrument in writing executed by such Indemnified Person.

7.2.3    <u>Non-Exclusive Rights</u>.  The rights to indemnification under section 7.2 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including common law rights to indemnification or contribution.

7.2.4    <u>Advice of Counsel</u>.  The fact that an act or omission of an Indemnified Person was based upon advice of counsel shall be evidence of good faith and reasonable judgment.  Each Indemnified Person may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, Order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties, and any Order of the Court.

7.2.5    <u>Status of Indemnification Claims</u>.  Any Persons entitled to indemnification shall have a priority distribution right on the corpus of the Liquidation Trust ranking pari passu with other Persons entitled to indemnification hereunder, provided, however, that such rights to payment shall be treated in all respects as Post Effective Date Trust Expenses.

7.2.6    <u>Insurance</u>.  The Liquidation Trustee may use Trust Assets to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under section 7.2, for the benefit of the Liquidation Trust, the Liquidation Trustee, and any agents, representatives, attorneys, accountants, advisors, or other professionals employed by the Liquidation Trustee on behalf of the Liquidation Trustee.

7.3     <u>Limited Recourse</u>.  No recourse shall ever be had, directly or indirectly, against

the Liquidation Trustee personally, or against any employee, contractor, agent, attorney,

accountant, or other professional retained in accordance with the terms of the Agreement, the

Plan, or the Confirmation Oder by the Liquidation Trustee, by legal or equitable proceedings or

by virtue of any statute or otherwise, based upon any promise, contract, instrument, undertaking,

obligation, covenant, or agreement whatsoever executed by the Liquidation Trustee in

implementation of the Agreement, the Plan, or the Confirmation Order, or by reason of the

creation of any indebtedness by the Liquidation Trustee for any purpose authorized by the

Agreement, the Plan, or the Confirmation Order, it being expressly understood and agreed that

all such liabilities, covenants, and agreements of the Liquidation Trustee, whether in writing or

otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such

part thereof as shall under the term of any such agreement be liable therefore or shall be evidence

only of a right of payment out of the Trust Assets.  Notwithstanding the foregoing, the

Liquidation Trustee may be held liable for his, her, or its recklessness, gross negligence, willful

misconduct, knowing and material violation of law, or fraud, as determined by a Final Order.

The Liquidation Trustee shall be discharged from all liability and obligations to any Beneficiary

which has received a final Distribution from the Liquidation Trust.

7.4     <u>No Liability for Acts of Predecessor</u>.  No successor Liquidation Trustee shall be

in any way responsible or liable for the acts or omissions of any predecessor Liquidation Trustee,

nor shall such successor Liquidation Trustee be obligated to inquire into the validity or propriety

of any such act or omission unless such successor Liquidation Trustee expressly assumes such

responsibility in writing.  Any successor Liquidation Trustee shall be entitled to accept as

conclusive any final accounting and statement of Trust Assets furnished to such successor

Liquidation Trustee by the predecessor Liquidation Trustee and shall further be responsible only for those Trust Assets properly includable in such statement.

7.5    Scope.  For the avoidance of doubt, the provisions of section 7 shall apply to the Liquidation Trustee and Indemnified Persons acting pursuant to, or in furtherance of the matters that are the subject of, the Plan, the Confirmation Order, or the Agreement, as applicable, regardless of whether such actions are taken in connection with the Liquidation Trustee's role as representative of the Estate or otherwise.

## SECTION 8

## REPORTS OTHER THAN THE FINAL REPORT

8.1    Securities Laws and Investment Company Act.  If the Liquidation Trust Interests are determined by Final Order of the Court (or any other judicial or quasi-judicial authority with applicable jurisdiction) to be securities as defined in applicable federal and state securities laws, then under section 1145 of the Bankruptcy Code, the issuance of the Liquidation Trust Interests pursuant to the Plan shall be exempt from registration under the Securities Act and applicable state and local laws requiring registration of securities.  The Liquidation Trust is organized as a liquidating Person in the process of liquidation, and therefore should not be considered, and the Liquidation Trust does not and will not hold itself out as, an "investment company" or a Person "controlled" by an "investment company" as such terms are defined in the Investment Company Act.  Notwithstanding the foregoing, if the Court enters an Order determining that the Liquidation Trust is required to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act, as amended, then the Liquidation Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports

with the SEC and under such circumstances, for purposes of section 1145 of the Bankruptcy

Code the Liquidation Trust shall be successor-in-interest to the Estate.

8.2     Other Reports.  The Liquidation Trustee shall prepare all such other reports and

financial statements as may be required by law and concurrent with filing or delivery of the same

as may be required by law shall serve a copy on any Person listed on the Post Effective Date

Service List.  Any Beneficiary may receive a copy of any such report by making a written

request to the Liquidation Trustee.

## SECTION 9

## AMENDMENT AND WAIVER

9.1     Amendments Generally.  Any substantive provision of the Agreement may be

amended or waived by the Liquidation Trustee, with the approval of the Court upon notice and

an opportunity for a hearing to the Post Effective Date Service List; provided, however, that no

change may be made to the Agreement that would adversely affect the Distributions to be made

under the Agreement to any of the Beneficiaries, or adversely affect the U.S. federal income Tax

status of the Liquidation Trust as a "liquidating trust."

9.2     Restriction on Amendments.  Notwithstanding section 9, any amendments to the

Agreement shall not be inconsistent with the purpose and intention of the Liquidation Trust to

liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury

Regulation section 301.7701-4(d).

## SECTION 10

## MISCELLANEOUS PROVISIONS

10.1    <u>Notices</u>.  All notices, requests, elections, demands, or other communications in connection with the Agreement, including any change of address of any Holder of an Allowed Claim or Liquidation Trust Interest for the purposes of receiving any Distributions under the Agreement or the Plan and any request to be included on the Post Effective Date Service List, shall be served upon the following Persons:

      (a)    <u>Liquidation Trustee</u>

      Glass Ratner Advisory & Capital Group, LLC
      19800 MacArthur Boulevard, Suite 820
      Irvine, CA. 92612
      Attention: Michael Issa
      Fax (949) 863-9274
      Email: missa@glassratner.com

      **WITH A COPY TO:**

      Greenberg Glusker Fields Claman & Machtinger, LLP
      1900 Ave. of the Stars
      21st Floor
      Attention: Brian L. Davidoff
             Courtney Pozmantier
      Los Angeles, CA. 90067
      Fax (310) 201-2328
      Email: bdavidoff@greenbergglusker.com
          cpozmantier@greenbergglusker.com

10.1.1 The Liquidation Trustee shall be authorized to collect such Tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as the Liquidation Trustee, in his, her, or its sole and absolute discretion, deems necessary to effectuate the Plan, the Confirmation Order, and the Agreement. The Liquidation Trustee may require, as a condition to receipt of a Distribution, that a

Beneficiary provide a completed Form W-8, W-9, and/or other Tax information deemed necessary in the sole discretion of the Liquidation Trustee.  If the Liquidation Trustee makes such a request and the Beneficiary fails to comply before the date that is ninety (90) days after the request is made: (a) the amount of such Distribution shall irrevocably revert to the Liquidation Trust; (b) the Beneficiary will be deemed to waive any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) and Liquidation Trust Interest(s) of such Beneficiary shall be deemed to be disallowed and terminated and be entitled to no Distributions; and (d) the Beneficiary will be forever barred from receiving the funds represented by that Distribution or any Distributions on such disallowed and terminated Claims and Liquidation Trust Interests, or asserting any claim with respect thereto against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their property.

10.1.2  In connection with the Liquidation Trust and all Distributions made pursuant hereto, the Liquidation Trustee and the Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to such Beneficiaries for all purposes of the Agreement.

10.2    Post Effective Date Service List.  The Liquidation Trustee shall maintain a list of all Persons to whom notice is to be given under Federal Rule of Bankruptcy Procedure 1007. Other Persons requesting notices under the Agreement shall make such request in accordance with section 10.1.  A list setting forth the name, address, e-mail address, if any, and telephone number, if any, of such Persons shall be maintained by the Liquidation Trustee (the **"Post Effective Date Service List"**).  The Persons listed in section 10.1, the Office of The United

States Trustee for the Central District of California, and the Debtor shall be automatically placed on the Post Effective Date Service List without any further action or direction.

10.3    <u>Effectiveness</u>.  This Agreement shall become effective upon the Effective Date.

10.4    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

10.5    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the Agreement shall be governed by, construed under, and interpreted in accordance with, the laws of the State of California, without giving effect to conflict-of-law principles.

10.6    <u>Severability of Provisions</u>.  If any provision of the Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of the Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of the Agreement shall be valid and enforced to the fullest extent permitted by law.

10.7    <u>Entire Agreement</u>.  The Agreement (including the Recitals and exhibits) constitutes the entire agreement by and between the parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein.  The Agreement, the Plan, and the Confirmation Order supersede all prior agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Plan, or in the Confirmation

Order, nothing in the Agreement is intended or shall be construed to confer upon or to give any

Person other than the parties hereto and their permitted heirs, administrators, executors,

successors, or assigns any right to remedies under or by reason of the Agreement.

10.8    Effect of Death, Incapacity, or Bankruptcy of Beneficiary.  The death, incapacity

or bankruptcy of a Beneficiary during the term of the Agreement shall not operate to terminate

the Agreement, nor shall it entitle the representatives or creditors of the deceased Beneficiary to

an accounting, or to take any action in the courts or elsewhere for the distribution of the Trust

Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any

Beneficiary.

10.9    Waiver.  No failure or delay of any party to exercise any right or remedy pursuant

to the Agreement shall affect such right or remedy or constitute a waiver by such party of any

right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of

alternative remedies.

10.10    Reimbursement of Costs.  The prevailing party in any dispute regarding the

provisions of the Agreement or the enforcement thereof shall be entitled to collect any and all

costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees,

from the non-prevailing party incurred in connection with such dispute or enforcement action.

To the extent that the Liquidation Trust has advanced such amounts, the Liquidation Trust may

recover such amounts from the non-prevailing party.

10.11    Jurisdiction.  Without limiting any Person or Person's right to appeal any order of

the Court or to seek withdrawal of the reference with regard to any matter: (a) the Court shall

retain exclusive jurisdiction to enforce the terms of the Agreement and to decide any claims or

disputes which may arise or result from, or be connected with, the Agreement, any breach or

default hereunder, or the transactions contemplated hereby; and (b) any and all actions or matters

related to the foregoing shall be filed and maintained only in the Court, and the parties, including

the Beneficiaries, and Holders of Claims, hereby consent to and submit to the jurisdiction and

venue of the Court.  In the event that the Court and the United States District Court for the

Central District of California are without jurisdiction over, or decline to accept jurisdiction or

otherwise abstain from hearing, an action or matter, any such action or matter may be filed in the

Superior Court for the County of Los Angeles.

     10.12    <u>Fiscal Year</u>.  The first fiscal year of the Liquidation Trust will begin on the

Effective Date and end on the last day of December of that year.  All subsequent fiscal years of

the Liquidation Trust will begin on the first day of January and end of the last day of December

of each such year.

**IN WITNESS WHEREOF**, the parties hereto have executed the Agreement or caused the Agreement to be duly executed by their respective duly authorized agents as of the day and year first written above.

MEGA RV CORP., a California corporation; d/b/a McMahon's RV; d/b/a McMahon's RV Irvine; d/b/a McMahon's RV Colton; d/b/a McMahon's RV Palm Desert

By: _____

Name: _____

Title: _____

**GLASS RATNER ADVISORY & CAPITAL GROUP, LLC**

By: _____

Name: _____

Title: _____

# EXHIBIT "A"

# PLAN

**EXHIBIT "B"**

**CONFIRMATION ORDER**

# EXHIBIT 3

## AGREEMENT

This Agreement (the "**Agreement**") is made as of November 24, 2014 by and among MEGA RV, CORP., as Debtor and Debtor-in-Possession ("**Debtor**"), THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, duly appointed in the chapter 11 bankruptcy cases of the Debtor (the "**Committee**"), GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION ("**CDF**") and BRENT MCMAHON ("**McMahon**"), MIC INVESTMENTS COMPANY, LLC, McMAHON'S RENTALS, LLC, KINSALE, LLC and NEVADA STREET, LLC (together with McMahon, each a "**Guarantor**" and collectively "**Guarantors**") (the aforementioned parties collectively referred to as, the "**Parties**").

### DEFINITIONS

The definitions for the following terms shall apply to this Agreement:

a. "**Claim**" or "**Claims**" have the meaning set forth in 11 U.S.C. § 101(5) and include, without limitation, actions, suits, accounts, contracts, controversies, damages, judgments, and rights to payment.

b. "**Collateral Proceeds**" means  (i) the amounts obtained from the liquidation, disposition, collection or other monetizing of the (a) Used Inventory (as defined herein), (b) the Contracts In Transit (as defined herein), (c) FF&E (as defined herein) and (ii) in accordance with, and subject to the limitations contained in Sections 6 and 7 hereof, a total of $2,750,000 including the Holdback Amount (as defined herein) to be paid to Debtor by CDF upon the release of the repurchase amounts for the New Inventory (as defined herein) to CDF (the "**Repurchase Amount**").  The amount of Collateral Proceeds shall be capped at $4,700,000.

c. "**Consumer Creditors**" means those certain unsecured creditors who hold claims against the Debtor for deposits and/or down payments arising from unconsummated purchases of RVs from Debtor and unpaid trade-in lien payoffs.

d. "**CITs**" means "**Contracts in Transit**" for the RVs listed on Exhibit A hereto.

e. "**Court**" means the United States Bankruptcy Court, Central District of California, Santa Ana Division.

f. "**Effective Date**" of the Agreement shall be the first business date after the occurrence of the later of: (i) Court approval of this Agreement and  entry of the Compromise Order, and (ii) the expiration of the Investigation Period, as defined below, without the

Committee delivering a Disapproval Notice, as defined below (unless waived earlier by the Committee in writing).

g.    "**Escrow Account**" shall mean the account as defined in the Relief Stipulation or such other account agreed upon in writing by the Parties.

h.    "**FF& E**" means all of Debtor's furniture, office fixtures and equipment.

i.    "**Holdback Amount**" means the sum of $250,000 either deposited by CDF in the Escrow Account from the New Inventory Proceeds, or if the New Inventory Proceeds in the Escrow Account do not equal $2,750,000 then additional cash by CDF.

j.    "**Inventory**" means inventory as defined in the California Commercial Code Section 9102(48).

k.    "**New Inventory**" means all RV Inventory that is subject to repurchase agreements with a manufacturer.

l.    "**Plan**" has the meaning set forth in Section 7 of this Agreement;

m.    "**Relief Stipulation**" means the Relief Stipulation Order entered by the Bankruptcy Court on November 12, 2014, attached as <u>Exhibit B</u>.

n.    "**RV**" means recreational vehicles.

o.    "**Compromise Order**" has the meaning set forth in Section 1 hereof.

p.    "**Used Inventory**" means all RV Inventory that is not New Inventory and on which CDF holds a perfected, first priority security interest.

## RECITALS

**WHEREAS,** on June 15, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "**Bankruptcy Court**"), Case No. 8:14-bk-13770-MW (the "**Bankruptcy Case**");

**WHEREAS**, the Debtor is a Debtor-in-Possession under Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** on July 3, 2014, the Office of the United States Trustee appointed the Committee;

**WHEREAS,** the Debtor sold and serviced new and used RVs throughout Southern California;

**WHEREAS,** CDF served as Debtor's floorplan lender and financed Debtor's purchase of RVs pursuant to that certain Inventory Financing Agreement between CDF and Debtor dated May 8, 2006 (as amended and restated from time to time the "**Inventory Financing Agreement**");

**WHEREAS**, to secure the advances made to Debtor by CDF, Debtor granted CDF a security interest in Debtor's personal property as provided in the Inventory Financing Agreement, the "**Collateral**");

**WHEREAS,** as of the Petition Date, CDF asserts that the Debtor had an outstanding obligation to CDF of approximately $31,547,399.05, which is secured by the Collateral;

**WHEREAS,** McMahon is the principal and 100% shareholder of Debtor.

**WHEREAS,** Guarantors, to secure advances made to Debtor by CDF, provided CDF with unconditional guarantees of the obligations of Debtor ("**Guaranties**");

**WHEREAS**, the Debtors, the Committee, McMahon and the Guarantors assert that they may hold Claims against CDF arising, *inter alia*, under the Bankruptcy Code, the Inventory Financing Agreement, the Guaranties and applicable state and federal law;

**WHEREAS**, CDF asserts it has Claims against Debtor and Guarantors;

**WHEREAS**, the Parties have and agree to resolve, settle and compromise all disputes between and among them as set forth herein, the Parties enter into this Agreement solely for the purpose of resolving, settling and compromising Claims and to avoid the further time and expense of litigation; by entering into this Agreement, the Parties do not admit liability to any other Party, and they do not admit the validity or invalidity of any Claim or defense made by any other Party.

**NOW, THEREFORE**, in consideration of the foregoing recitals, of the agreements hereinafter set forth and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1.   Bankruptcy Court Approval.  On November 24, 2014, the Debtor shall file, and the Committee shall support, a motion on a shortened time basis and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Compromise Motion**"), seeking entry of an order approving this Agreement in its entirety (which order shall be substantially in the form attached hereto as Exhibit C, the "**Compromise Order**").

3

2.    <u>Investigation Period</u>.

a)    The Committee shall have until December 19, 2014 (the "**Investigation Period**") to investigate to its sole and exclusive satisfaction potential claims and causes of action that the Debtor may have against McMahon and/or any company or party affiliated with McMahon (the "**McMahon Investigation**"). The Committee shall have the right to make application to the Bankruptcy Court to extend the Investigation Period up to January 19, 2015 for good cause in the event that the Debtor and/or McMahon do not reasonably cooperate in providing information to the Committee regarding the McMahon Investigation. The Parties reserve the right to seek additional relief from the Bankruptcy Court to compel the cooperation of Debtor and/or McMahon with the Committee's investigation.

b)    If the Committee at any time during the Investigation Period determines in its sole and absolute discretion as a result of the McMahon Investigation that the Debtor has grounds for commencing an action against McMahon and/or any company or party affiliated with McMahon, the Committee shall give written notice to the Debtor, McMahon, Guarantors and CDF of disapproval ("**Disapproval Notice**").  Unless the Committee delivers a Disapproval Notice within the Investigation Period, the Committee shall be deemed to have approved the release of McMahon and/or any company or party affiliated with McMahon.

c)    McMahon and the Debtor will cooperate in supplying information to the Committee as part of the McMahon Investigation, including but not limited to:  The Debtor will cooperate with the Committee in providing financial information regarding McMahon's and/or any company or party affiliated with McMahon, financial dealings with the Debtor.

d)    Information will be provided to the Committee about the other guarantees that McMahon, and/or any company or party affiliated with McMahon, has made to third party creditors.

e)    The Committee reserves the right to request a 2004 examination of McMahon during the Investigation Period if sufficient information is not provided through informal means, and McMahon agrees to cooperate to conduct such examination on shortened time within the Investigation Period.

f)    During the Investigation Period, McMahon will cooperate with the estate in liquidating assets and complying with the Disposition Actions (as defined in the Relief Stipulation) and otherwise assisting the

4

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

Debtor in complying with the administrative requirements of the chapter 11 of the Debtor.

3.    <u>Actions Pending Effective Date</u>.  Prior to the Effective Date, and thereafter:

a.    The Parties shall perform their obligations under the Relief Stipulation;

b.    The Parties shall make such motions to the Court and file such pleadings as are reasonably necessary to seek the Compromise Order;

c.    The Debtor shall commence and diligently liquidate its assets other than the New Inventory pursuant to the terms of the Agreement;

d.    In order to facilitate the liquidation of its assets pending the Effective Date, CDF agrees to advance funds to the Debtor according to the budget attached hereto as <u>Exhibit D</u> (the "Budget"). Such advances shall in the first instance be from funds in the Escrow Account ("**Escrow Advances**"), and in such event any Escrow Advances will be deducted from the Collateral Proceeds on the Effective Date.  In the event that there are no funds in the Escrow Account at the time that the Debtor is in need of funds pursuant to the Budget to facilitate the liquidation of its assets pending the Effective Date, then CDF shall advance such funds to the Debtor ("**Pre-Escrow Advances**").  Any such Pre-Escrow Advances shall be deducted from the Collateral Proceeds assuming the Effective Date of the Agreement. If for any reason the Effective Date does not occur, then all such Pre-Escrow Advances shall constitute an allowed administrative expense of the Debtor's estate pursuant to Bankruptcy Code §503(b) *pari passu* with all other administrative expenses.

e.    In order to facilitate CDF making any such advances, Glass Ratner/Mike Issa shall do all things necessary to become a payee in the General Electric Capital Corporation/CDF system and shall provide CDF invoices for all expenses together with all other supporting documentation reasonably requested by CDF.

4.    <u>Disapproval Notice</u>.  In the event of a timely Disapproval Notice, then except for the items identified in Sections 2 and 3 above, the balance of the Agreement shall be null and void, and no part of the Collateral Proceeds or the New Inventory Proceeds shall be released from the Escrow Account without further orders of the Court.  In this case the Parties reserve all of their rights and remedies against each other.

5.    <u>Collateral Proceeds</u>.  As provided for in the Relief Stipulation, CDF shall deposit all New Inventory Proceeds into the Escrow Account until the Effective Date.  As provided in the Relief Stipulation, the Debtor shall place all proceeds constituting Collateral Proceeds (other than New Inventory Proceeds) into a separate segregated Escrow Account until the Effective Date.

5

6.   <u>On the Effective Date</u>.  On the Effective Date:

a.   All of the terms and conditions of this Agreement shall become effective.

b.   All funds constituting the Collateral Proceeds in the Escrow Account shall be disbursed to the Debtor, <u>less</u>: (i) any Escrow Advances or Pre-Escrow Advances; and (ii) the Holdback Amount.

c.   If as of the Effective Date, there has not been deposited in the Escrow Account the full amount of the Repurchase Amount, then as such Repurchase Amount is paid to CDF, CDF shall forthwith remit such Repurchase Amount to the Debtor until the aggregate of the Repurchase Amount is paid to the Debtor <u>less</u>: (i) any Escrow Advances or Pre-Escrow Advances; and (ii) the Holdback Amount, not previously deducted under Section 6(b) above.

d.   The Holdback Amount shall remain in the Escrow Account until 180 days after the effective date of a Plan, and then shall be disbursed to the Debtor or to CDF in accordance with the provisions of Section 7.

e.   Except for the amounts set forth in Section 7b-d above, any other New Inventory Proceeds (as defined in the Relief Stipulation) required to be deposited in the Escrow Account by CDF pursuant to the Relief Stipulation in excess of the Repurchase Amount shall be disbursed to CDF.

f.   Any Collateral Proceeds deposited by the Debtor in an Escrow Account pursuant to Section 5 hereof shall be disbursed to the Debtor.

g.   The Debtor shall file an employment application for McMahon effective November 1, 2014 to compensate McMahon at the rate of $10,000 per month until confirmation of a Plan, paid from proceeds of the Debtor's estate other than from the Collateral Proceeds (should the estate be able to realize these proceeds), McMahon and/or Guarantors shall not, directly or indirectly, be paid, receive distributions, or otherwise be compensated from any of the Collateral Proceeds.

h.   The mutual and general releases by the Parties contained herein shall be effective.

i.   McMahon and the Guarantors (collectively, the "**McMahon Release Parties**") will subordinate any and all Claims they may have against the Debtor's estate to all other unsecured creditors of the Debtor's estate, as provided for in Section 9 hereof.

j.   Notwithstanding the effectiveness of the releases provided to him, McMahon will continue to reasonably cooperate with the Debtor's estate as requested after he is released by the Debtor and/or no longer employed by the Debtor.

6

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

7.    Joint Liquidating Plan.

    a.    Within 30 days after the entry of the Compromise Order or so soon thereafter as can reasonably be accomplished, the Committee, with the Debtor's cooperation shall propose a joint liquidating plan of reorganization (the "**Plan**") that pays all administrative claims and priority claims, and thereafter Consumer Creditors and then general unsecured creditors to the extent of available funds.  If so requested by the Debtor and the Committee, CDF shall assign to the Consumer Creditors under the Plan a portion of the Repurchase Amount that constitutes Collateral Proceeds.  The Plan shall be funded by the Collateral Proceeds and other amounts in the Debtor's estate, including amounts from payments to the Debtor from transferees of avoidable transfers, if any, and the liquidation of assets of the Debtor.

    b.    The Plan proposed in the case shall provide for a liquidating trust (the "**Liquidating Trust**") to be created pursuant to the Plan to consummate an orderly wind-down of the Debtor and to make distributions to creditors in accordance with the Agreement and as otherwise required by law.  All claims and causes of action belonging to the Debtor will transfer to and vest in the Liquidating Trust on the Effective Date.  Mike Issa of Glass Ratner will be appointed as Liquidating Trustee and Greenberg Glusker Fields Claman & Machinger LLP will serve as counsel to the Liquidating Trust.

    c.    The Liquidating Trust shall promptly investigate any avoidance actions under Bankruptcy Code §§544-550 inclusive and shall prosecute any such bona fide claims expeditiously, and shall negotiate in good faith to reduce administrative and priority claims against the Debtor's estate (collectively the "**Recovery Action Proceeds**").

    d.    In the event that within 180 days from the effective date of a Plan, the aggregate recovery from: (i) Recovery Action Proceeds (less any fees and costs directly attributable to such Recovery Action Proceeds), plus (ii) Collateral Proceeds, are less than $4,700,000 (a "**Shortfall**"), then the Holdback Amount shall be disbursed from the Escrow Account to the Debtor to the Extent of such Shortfall and the excess, if any, shall be released to CDF.

    e.    In the event that within 180 days from the effective date of a Plan, the aggregate recovery from: (i)Recovery Action Proceeds (less any fees and costs directly attributable to such Recovery Action Proceeds), plus (ii) Collateral Proceeds, are equal to or more than $4,700,000 , then the Holdback Amount shall be disbursed from the Escrow Account to CDF.

7

8.      Pending Litigation.  Within 15 days of the Effective Date: (i) Guarantors shall dismiss, with prejudice, their Petition to Vacate Arbitration Award filed in the Superior Court for Orange County, California – Case #30-2014-00752598-CU-PT-CJC;  (ii) Debtor shall stipulate to a relief from stay to allow CDF to dismiss the lawsuit with prejudice currently stayed in the U.S. District Court for the Central District of California – Case #SACV 14-00522-JLS-ANx and recover its surety bond; and (ii) CDF shall dismiss that certain Arbitration Award obtained against McMahon and Guarantors, identified as USA&M Case No. 211168, or alternatively, if the Arbitration Award is not subject to dismissal by rule of the arbitration forum, then CDF shall agree never to enforce said Arbitration Award against McMahon and/or Guarantors and further agrees that the mutual releases set forth in this Agreement as between CDF and McMahon and Guarantors apply with equal force to the Arbitration Award.

9.      Mutual Release of Claims and Subordination.  Subject to section 10 below, and except for the Parties obligations under this Agreement,

     a.   Debtor/McMahon Release Parties and CDF.  On the Effective Date, (i) the McMahon Release Parties, for themselves and on behalf of their respective representatives, agents, employees, officers, directors, shareholders and managers, if any and (ii) the Debtor for itself and on behalf of its estate, and the Committee, and on behalf of their respective representatives, agents, employees, officers, directors, shareholders and managers, if any (collectively, the "**Debtor Party Releasors**"), knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against CDF, its current and former officers, directors, shareholders, and each of their respective current managers, employees, agents, attorneys, consultants, advisors, insurers, representatives, (collectively, the "**CDF Release Parties**") that the Debtor Party Releasors and McMahon Release Parties have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the CDF Release Parties based in whole or in part upon any act or omission, transaction or occurrence taking place on or prior to the Effective Date.

     b.   CDF and Debtor/McMahon Release Parties. On the Effective Date, CDF Release Parties knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against the Debtor Party Releasors and the McMahon Release Parties that the CDF Release Parties have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the Debtor Party Releasors and the McMahon Release Parties based in whole or in part upon any act or omission, transaction

8

or occurrence taking place on or prior to the Effective Date. The foregoing shall include the release of all Claims that the CDF Release Parties may have against the Debtor Party Releasors. On the Effective Date, CDF authorizes the Debtor Party Releasors to file a release of any UCC-1 or other security interest filed by the CDF Release Parties.

c.   <u>Debtor, Committee and McMahon</u>. On the Effective Date, the Debtor Party Releasors, knowingly and voluntarily, unconditionally, irrevocably and absolutely waives, releases, covenants not to sue and discharges all Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities against the McMahon Release Parties that the Debtor Party Releasors have, may have or are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, against the McMahon Release Parties based in whole or in part upon any act or omission, transaction or occurrence taking place on or prior to the Effective Date.

d.   On the Effective Date, McMahon Release Parties covenant and agree that the payment of all of the Claims held by the McMahon Release Parties (including but not limited to proof of claim number 111) , whether such Claims are liquidated or non-liquidated, contingent or non- contingent, disputed or non-disputed, whether in law or equity, as such Claims may be set forth in the Debtor's Schedules of Assets and Liabilities whether or not a proof of claim has or may be filed, shall be subordinate and subject in right and time of payment, to the prior payment in full of the Consumer Creditors and the Claims of all other general unsecured creditors of the Debtor's estate.

e.   As an integral part of the subordination of the Claims of the McMahon Release Parties, McMahon represents and warrants that no McMahon Release Parties have or will file Claims (including administrative claims) against the Debtor other than proof of claim number 111 filed by Brent McMahon.

f.   The Parties, and each of them, understand and acknowledge that there are laws that may invalidate releases of claims that may be unknown to the releasing party.  The Parties, and each of them, expressly acknowledge and agree that they are hereby waiving and relinquishing any and all rights that they have or might have against the other Parties they release pursuant to this Agreement, or any of them, under such laws, including but not limited to any and all rights afforded under California Civil Code § 1542.  That statute reads as follows:

> A RELEASE DOES NOT EXTEND TO CLAIMS WHICH A CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

9

HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR. EACH PARTY AGREES THAT NO SUCH COMMON LAW OR STATUTORY RULE OR PRINCIPLE, INCLUDING SECTION 1542 OF THE CALIFORNIA CIVIL CODE OR SIMILAR LAW IN ANOTHER JURISDICTION, SHALL AFFECT THE VALIDITY OR SCOPE OR ANY OTHER ASPECT OF THIS RELEASE.

10.     Condition Precedent.  The Agreement is subject to the satisfaction of each of the following conditions precedent: (i) the absence of a material breach of any representation, warranty or agreement of any Settling Party set forth herein, and (ii) the occurrence of the Effective Date.

11.     Miscellaneous.

(a)     No Reliance. Each of the Parties declares that, except as set forth in writing in this Agreement, the decision to execute this Agreement is not predicated on or influenced by any express or implied declarations, representations or warranties of any kind, whether written or oral, by any of the other Parties.

(b)     No Admissions. This Agreement is a compromise of disputed claims, and neither this Agreement nor any of its contents, nor any other action undertaken pursuant to this Agreement, is to be construed as an admission for any purpose other than as necessary to enforce the terms of this Agreement.

(c)     Entire Agreement. This Agreement together with the Relief Stipulation contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements of the Parties with respect to such subject matter.

(d)     Authority. Each of the undersigned represents and warrants that they are authorized to execute this Agreement on behalf of their respective clients.

(e)     Modification. No change or modification of this Agreement shall be valid unless it is made in writing and signed by all of the Parties.

10

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

(f)     <u>Joint Drafting</u>.  This Agreement was jointly-drafted and negotiated by the Parties with the benefit of advice from counsel, and the Parties agree that it will be so construed.  As such, no Settling Party will claim that any ambiguity in this Agreement shall be construed against any other Settling Party by reason of the identity of the drafter.

(g)     <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall have the effect of a fully-executed Agreement when counterparts have been signed by each of the Parties.  Each counterpart may be delivered by facsimile transmission or e-mail, and a faxed or e-mailed signature shall have the same force and effect as an original signature.

(h)     <u>No Assignment</u>.  Each of the Parties warrants and represents that he or it has not assigned or transferred any released matter or any right to any consideration provided pursuant to this Agreement.  The Parties each agree to defend, indemnify and hold the others harmless from any and all claims based on or arising out of any such assignment or transfer made, purported or claimed.

(i)     <u>Applicable Law</u>.  The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of California.

(j)     <u>No Waiver of Breach</u>.   A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same term or condition, or any other term or condition.

(k)     <u>Binding Effect</u>.  This Agreement shall be binding on and shall inure to the benefit of each of the Parties and their respective agents, employees, attorneys, affiliates, successors and assigns.

(L)     <u>Cooperation</u>. Each of the Parties agrees to execute such documents and perform such acts as may be reasonably necessary to carry out the terms of this Agreement.

(M)     <u>Notices</u>.  All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when: (a) delivered by hand, with written confirmation of receipt, (b) sent by facsimile, with written confirmation of receipt,

11

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

(c) delivered by overnight or other express delivery mail, or (e) by electronic transmission, in each case to the appropriate addresses, representative (if applicable) and facsimile numbers or email addresses set forth below, or to such other addresses, representative, facsimile numbers and email addresses as a Settling Party may designate by notice to the other Parties in accordance with this paragraph:

12

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

If to the Debtor:

Mega RV, Corp.

c/o J. Michael Issa

GlassRatner Advisory & Capital Group LLC

19800 MacArthur Blvd.

Suite 820

Irvine, CA 92612

Telephone:    (949) 407-6620

Fax:            (949) 863-9274

Email: missa@glassratner.com


With a copy to:

Robert P. Goe, Esq.

GOE & FORSYTHE, LLP

18101 Von Karman

Suite 510

Irvine, CA 92612

Phone:  (949) 798-2460

Direct:  (949) 798-2461

Cell:     (949) 283-1501

Fax:      (949) 955-9437

rgoe@goeforlaw.com


Joel S. Miliband

Partner and General Counsel

Brown Rudnick LLP

2211 Michelson Drive

Seventh Floor

Irvine, CA 92612

Telephone:  (949) 752-7100

Facsimile (9490 252-1514

jmiliband@brownrudnick.com


If to the Committee:

Brian L. Davidoff
Courtney Pozmantier
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067
Telephone:      (310) 553-3610
Facsimile:       (310) 553-0687
Email:  bdavidoff@greenbergglusker.com

13

cpozmantier@greenbergglusker.com

If to any of the McMahon Release Parties:

Brent McMahon
7545 Irvine Center Dr. Ste 200
Irvine, CA. 92618
Email: brent@megarv.com

With a copy to:

Adam Obeid, Esq.
Smaili & Associates, P.C.
600 W. Santa Ana Blvd., Suite 202
Santa Ana, California 92701
Telephone:  (714) 547-4700
Facsimile: (714) 547 -4710
aobeid.law@gmail.com


If to CDF:

Robert A. Chiocchio
General Electric Capital Corporation
10 Riverview Drive
Danbury, CT 06810
Telephone:  (20) 749-6398
Facsimile:  (203) 663-8562
robert.chiocchio@ge.com


With a copy to:

Jennifer Ziegenhorn, Esq.
Office Managing Partner
HUSCH BLACKWELL LLP
1661 International Drive, Suite 300
Memphis, TN 38120-1431
Direct:  (901) 529-3005
Fax:  (901) 523-7472
Jennifer.Ziegenhorn@huschblackwell.com

12.    <u>Continuing Bankruptcy Court Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes regarding the validity, interpretation or performance of this Agreement, and each of the Parties consents to personal jurisdiction and venue in the Bankruptcy Court in connection with any such disputes.

14

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

15

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

GE Commercial Distribution Finance Corporation

By: _____

Name: Robert Chiocchio

Its Authorized Signatory

16

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

Brent McMahon

By: _____

LAW OFFICES OF ADAM OBEID

By: _____
Adam Obeid, Attorney for Brent McMahon


MIC Investments Company, LLC

By: _____
Name: _____
     Its Authorized Signatory

McMahon's Rentals, LLC

By: _____
Name: _____
     Its Authorized Signatory

Kinsale, LLC

By: _____
Name: _____
     Its Authorized Signatory

Nevada Street, LLC

By: _____
Name: _____
     Its Authorized Signatory

17

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: _____
BRIAN DAVIDOFF
Attorneys for the Official Committee of
Unsecured Creditors

18

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

MEGA RV

By: _____
BRENT MCMAHON, President

GOE & FORSYTHE, LLP

By: _____
ROB GOE
Attorneys for Mega RV Corporation

BROWN RUDNICK LLP

By: _____
JOEL S. MILIBAND
Attorneys for Mega RV Corporation

19

MEGA RV

By:_____
BRENT MCMAHON, President


GOE & FORSYTHE, LLP

By:_____
ROB GOE
Attorneys for Mega RV Corporation


BROWN RUDNICK LLP

By:_____
JOEL S. MILIBAND
Attorneys for Mega RV Corporation

19

# EXHIBIT A

## BANK OF THE WEST

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WINNEBAGO INDUSTRIES | VISTA 35F | 5Z7J71J302X00284 | Ballard | | 137,916.60 | 77,041.00 | 24,968.00 | 37,000.00 | 69,655.31 | (32,655.31) | 7,897.31 | 4,493.00 | 11,695.00 | 583.00 | 211.25 | 7,897.31 | Trade Pay off with US Bank |
| ECLIPSE RECREATION | STT-128DRG | 1F66F50Y0D0A13984 | Bassford | CDA613 | 94,569.25 | 67,954.00 | 9,000.00 | 45,000.00 | 47,500.00 | (2,500.00) | 6,500.00 | 895.00 | 6,995.00 | 561.00 | 200.25 | 6,918.00 | Trade Pay off with Bank of the West |
| THOR MOTOR COACH | N534300016DS | 1F66F50Y0A0D7720 | Battaglia | W558 | 149,712.25 | 108,084.00 | 15,000.00 | | | | 15,000.00 | 8,890.00 | 13,992.00 | 904.00 | 209.25 | 10,722.00 | No Pay off |
| FOREST RIVER, INC | SUN3155HQ | 5ZT8W3KB211R0A24145 | Camp | 5T295 | 46,696.12 | 31,101.00 | | | | | | 1,639.00 | 2,600.00 | 250.00 | | 3,851.90 | Trade Pay off with Bank of America |
| FOREST RIVER, INC | ROCKWOOD LIT | 51J4E5K69A0N06525 | Coffman | MN251 | 204,957.25 | 207,770.00 | 72,000.00 | 40,000.00 | 16,055.17 | (10,055.17) | 74,000.00 | 7,840.00 | 18,990.00 | | 132.25 | | Out of State Delivery; Trade Pay off with Bank of America |
| MONACO RV, LLC | 40 DFT | 4UZAADTREY3V9931 | Crawford | | 190,430.65 | 135,620.00 | | | | 2,000.00 | | | | 164.00 | 210.25 | 2,287.64 | No Pay off |
| WINNEBAGO INDUSTRIES | SIGHTSEER 33C | 55PHU29219A1279123 | Cyr | HRT239 | 24,997.69 | 20,149.00 | 3,000.00 | 10,000.00 | | | 3,000.00 | | | 159.00 | 211.25 | 1,966.00 | No Pay off |
| HEARTLAND RECREATION | 2650BH WIDE | 4X4TRLW26E0130517 | Gean | FRT2168 | 17,926.25 | 18,776.00 | 1,800.00 | | | 10,000.00 | 11,800.00 | 695.00 | 2,895.00 | 383.00 | 210.25 | 5,316.30 | No Pay off |
| WINNEBAGO INDUSTRIES | MINNIE WD38 | 16385DG501131135 | Hesqua | W594 | 61,604.55 | 50,606.00 | 5,795.00 | | | | 5,795.00 | 995.00 | 2,500.00 | 755.00 | 200.25 | 9,286.40 | No Pay off |
| FOREST RIVER, INC | ENCOUNTER | 1F66F50Y6D0A07213 | Lukis/Carne Garage | W560 | 112,778.65 | 95,426.00 | 25,000.00 | | | | 25,000.00 | 1,000.00 | 11,537.00 | 843.00 | 211.25 | 10,618.00 | No Pay off |
| FOREST RIVER, INC | TRILOGY | 1F66F50Y8D0A08068 | Rahimi | CDA565 | 48,727.64 | 100,836.00 | 23,500.00 | 4,000.00 | | 4,000.00 | 27,000.00 | 4,990.00 | 12,176.00 | 636.00 | 211.25 | 8,826.75 | No Pay off |
| FOREST RIVER, INC | CROSS COUNTR | 1F66F3JF5D0A93738 | Rosenwald | PW895 | 47,668.00 | 85,000.00 | 30,000.00 | 30,000.00 | | 30,000.00 | 60,000.00 | | | 818.00 | 211.25 | 10,356.80 | No Pay off |
| FOREST RIVER, INC | PLEASURE WAY | 1F66F50Y0A0A04301 | Slanden | TMW096 | 82,378.05 | 97,802.00 | 30,000.00 | | | | 68,183.00 | 10,890.00 | 13,490.00 | | 211.25 | | No Pay off |
| PLEASURE-WAY INDUSTRIES | MIRADA | WD3FF40CD0C566477 | Shapiro | T66207A | 99,994.00 | 73,250.00 | 3,600.00 | 17,000.00 | 10,650.00 | 6,350.00 | 9,950.00 | 1,649.00 | 8,429.00 | 596.00 | 220.00 | 596.00 | Trade Pay off with Kiretta FCU |
| PLEASURE-WAY INDUSTRIES | 13 PURSUIT | 1F0X43FX0A3A22843 | Sorrell | FR899 | 63,270.10 | 64,737.00 | 30,000.00 | | | | 30,000.00 | 995.00 | 4,995.00 | 526.00 | 269.50 | 6,489.00 | No Pay off |
| | | | | | 1,383,071.25 | | | | | | | | | | | | |

## US BANK

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLEASURE-WAY INDUSTRIES | 14 ASCENT | WD3FF7CEC5X50V57 | Avellisino | PW933 | 78,240.00 | 87,550.00 | 40,000.00 | | | | 40,000.00 | 3,195.00 | 9,195.00 | 653.00 | 209.25 | 7,636.95 | No Pay off |
| USED | 05 ALFA SEE YA | 4UZAAHCF5CU01597 | Robinson | T48071A | 59,575.00 | 50,000.00 | 12,000.00 | | 8,000.00 | 8,000.00 | 20,000.00 | 1,395.00 | | | 80.00 | | Out of State Delivery |
| WINNEBAGO INDUSTRIES | 13 SIGHTSEER | 1F66F50Y0D0A06802 | Buzzetti | W548 | 87,871.50 | 113,496.00 | 50,000.00 | | | | 50,000.00 | 1,795.00 | 5,941.00 | 791.00 | 209.25 | 9,140.25 | QUESTIONABLE DEAL |
| | | | | | 225,686.50 | | | | | | | | | | | | |

## BANK OF AMERICA

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WINNEBAGO INDUSTRIES | 14 FORZA | 4U5ZAAHTFEC5829017 | Ford | W372 | 87,599.43 | 150,999.00 | 20,000.00 | | 26,897.00 | 103.00 | 20,103.00 | 3,900.00 | 10,090.00 | 1,156.00 | 210.25 | 15,466.18 | |
| USED | 08 FLEETWOOD REVO | 4V0BF10F50C061402 | Minard | T4783AA | 185,310.00 | 100,000.00 | 25,000.00 | 97,250.00 | 78,152.00 | 19,098.00 | 44,098.00 | 5,745.00 | 14,490.00 | 132.00 | | | Out of State Delivery |
| | | | | | 272,838.43 | | | | | | | | | | | | |

## MEDALLION BANK

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USED | 05 Carriage | 16F02F497317D418 | Sosher, Gene | T47278A | 16,087.79 | 16,087.79 | | | | | 3,200.00 | 995.00 | | 337.00 | 395.00 | 1,565.79 | Contract NMA - Must still be at Medallion |
| | | | | | 16,087.79 | | | | | | | | | | | | |

## ALLY

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USED | 14 WILDWOOD | 4X4FWDD26EC045627 | Keckler | FRT2237 | 25,093.86 | 16,175.00 | 6,000.00 | | | | 2,500.00 | 2,230.00 | 4,173.00 | 148.00 | 196.75 | 1,825.27 | |
| | | | | | 25,093.86 | | | | | | | | | | | | |

## ALLIANT

| Manufacturer | Model | VIN | Customer Name | Stock # | Funding Amount | Initial Cost | Down Payment/CASH | Trade-Allowance | Trade Approx Pay Off | Trade Balance | Total Down Payment | Accessories | Extended Warranty | DMV Fees | Other Fees | Sales Tax | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FOREST RIVER | 14 WILDCAT | 4X4FWDD21E7D13400 | Kaus | FRT2218 | 51,541.13 | 29,970.00 | 10,000.00 | 10,000.00 | | | 11,000.00 | 995.00 | 1,695.00 | 257.00 | 211.25 | 3,170.40 | |
| HEARTLAND | 14 ROADWARRIOR | 55FCG630Z3E27493C | Chapman | HRT201 | 38,684.00 | 45,336.00 | 1,000.00 | | | | | 2,595.00 | | 356.00 | 209.25 | 4,374.88 | |
| USED | 10 ENDORSTONE | 5ZT3BKZ8XAXA01862 | Gill | T48148A | 38,480.00 | 28,880.00 | 2,000.00 | 42,000.00 | 35,000.00 | 7,000.00 | | 995.00 | 3,500.00 | 408.00 | | 813.00 | |
| | | | | | 131,138.13 | | | | | | | | | | | | |

Total   2,033,865.96

# EXHIBIT B

# EXHIBIT 4

# Mega RV Corporation

**Inventory Schedule**

| STK # | TYPE | YEAR | MANUFACTURER | MODEL | NADA | Wholesale Bids | RETAIL | VIN | STATUS |
|---|---|---|---|---|---|---|---|---|---|
| T00003 L | FW | 2005 | NEWMAR | KOUNTRY STAR | 22,600 | 10,000 | 32,998 | 1N8KS3320507028 | On Sale This Weekend |
| T0000 L | FW | 2007 | NEWMAR | CYPRESS | 25,000 | 13,000 | 29,998 | 1NFRL332870221 | On Sale This Weekend |
| T0000 L | FW | 2004 | ALPENLITE | SEVILLE | 25,950 | 12,000 | 27,995 | 1W53ATR274Y034 | On Sale This Weekend |
| T0000 L | FW | 1995 | NUWA | HITCHHIKER | 5,150 | 500 | 10,998 | 1C932JM05SB020 | On Sale This Weekend |
| T0000 L | FW | 2012 | CROSSROADS | CRUISER | 20,750 | 16,000 | 28,998 | 4V0FC3226CE008 | On Sale This Weekend |
| T0000 L | FW | 2004 | NEWMAR | KOUNTRY STAR | 19,750 | 12,000 | 28,998 | 1N8BS362640702 | On Sale This Weekend |
| T0002 L | FW | 2004 | KEYSTONE | MONTANA | 9,100 | 4,000 | 17,998 | 4YDF277254F702 | |
| T0002 L | FW | 2006 | HOLIDAY RAMBLER | SAVOY | 11,500 | 5,000 | 19,998 | 1KB3B1K256E167 | |
| T0002 L | FW | 2010 | NUWA | HITCHHIKER | 38,750 | 20,000 | 56,998 | 1NW33CR01AD07 | |
| T0003 L | FW | 2006 | KEYSTONE | EVEREST | 15,100 | 9,000 | 19,998 | 4YDF293256H486 | Sold, Awaiting Delivery |
| T0003 L | FW | 2005 | NUWA | HITCHHIKER | 21,750 | 11,000 | 31,998 | 1NW32KR0850075 | |
| T0004 L | FW | 2009 | KEYSTONE | MONTANA | 29,450 | 21,000 | 42,998 | 4YDF34625947004 | |
| T0004 L | FW | 2006 | KEYSTONE | EVEREST | 19,550 | 12,000 | 28,998 | 4YDF344226H486905 | |
| T0004 L | FW | 2005 | NEWMAR | MOUTAIN AIRE | 34,450 | 22,000 | 49,998 | 1N8RL388750902512 | |
| M0000 L | MA | 2009 | DAMON | DAYBREAK | 37,100 | 29,000 | 42,998 | 5B4LPE7G393435 | |
| M0000 L | MA | 2004 | WINNEBAGO | ADVENTURER | 36,850 | 22,000 | 44,998 | 5B4MP67G343386 | Lots of Activity |
| M0002 L | MA | 2006 | ITASCA | SUNOVA | 30,500 | 24,000 | 44,998 | 1F6MF53Y460A14 | |
| M0000 L | MAD | 2009 | FOREST RIVER | BERKSHIRE | 80,350 | 60,000 | 99,998 | 4UZAB2DT28CAB | Appointment on 06/06 |
| M0002 L | MC | 2014 | FOREST RIVER | SUNSEEKER | 55,400 | 52,000 | 69,998 | 1FDXE4FS2DDA40 | Sold, Awaiting Delivery |
| M0003 L | MC | 2006 | FLEETWOOD | TIOGA | 35,100 | 24,000 | 45,998 | 1FDXE45S16HA19 | |
| T0001 L | TT | 2011 | DUTCHMEN | FOURWINDS BREEZE | 7,500 | 4,500 | 12,998 | 47CTF3M24BT206 | |
| T0001 L | TT | 2013 | COACHMEN | FREEDOM | 23,750 | 20,000 | 26,998 | 5ZT2FEVB3DA008 | |
| T0001 L | TT | 2014 | COACHMEN | CLIPPER | 7,650 | 5,500 | 12,998 | 5ZT2CWDC2E510 | On Sale This Weekend |
| T0001 L | TT | 2014 | OUTDOORS RV | TIMBER RIDGE | 22,300 | 17,000 | 32,998 | 51W123425E1007 | |
| T0001 L | TT | 2013 | FOREST RIVER | SURVEYOR | 17,350 | 13,000 | 25,998 | 4X4TSVF25D2471 | |
| T0002 L | TT | 2008 | FOREST RIVER | SIERRA | 15,500 | 9,000 | 22,998 | 4X4TSEE248T122 | |
| T0003 L | TT | 2012 | FOREST RIVER | CHEROKEE | 11,900 | 7,500 | 18,998 | 4X4TCSB29CX112 | |
| T0004 L | TT | 2012 | KEYSTONE | SPRINGDALE | 9,650 | 8,000 | 17,998 | 4YDT19020CG101 | On Sale This Weekend |
| T0005 L | TT | 2007 | KEYSTONE | SPRINGDALE | 6,550 | 3,000 | 9,998 | 4YDT260297G104 | On Sale This Weekend |
| | | | | **Totals** | **696,300** | **466,000** | **959,939** | | |

# EXHIBIT 5

**Mega RV Corporation**

**Summary of Income & Expenses during Administrative Period through May 29, 2015**

| | | |
|---|---|---:|
| Cash - Beginning of Period | | 17,675 |
| | | |
| Sources | | |
| | Inventory Sales | 465,746 |
| | CIT Collections | 179,337 |
| | Settlements | 2,498,650 |
| **Total Sources** | | **3,143,732** |
| | | |
| Uses | | |
| | Contract Labor | 74,500 |
| | Insurance | 35,000 |
| | Rent Expense | 75,000 |
| | Delivery Services | 293 |
| | Professional Fees | 1,105,925 |
| | Administrative Rent | 355,360 |
| | Claim Settlement | 3,500 |
| | Bank Services Charges | 65 |
| | US Trustee Fees | 6,825 |
| **Total Uses** | | **1,656,468** |
| | | |
| **Net Cash Flow** | | **1,487,264** |
| | | |
| **Cash - End of Period** | | **1,504,939** |

# EXHIBIT 6

<u>**LIEN ASSIGNMENT AGREEMENT**</u>

This Agreement (the "**Agreement**") is made as of July __, 2015 by and among MEGA RV, CORP., as Debtor and Debtor-in-Possession ("**Debtor**"), THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, duly appointed in the chapter 11 bankruptcy case of the Debtor (the "**Committee**") and GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION ("**CDF**") (the aforementioned parties collectively referred to as, the "**Parties**").

**RECITALS**

**WHEREAS,** on June 15, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "**Bankruptcy Court**"), Case No. 8:14-bk-13770-MW (the "**Bankruptcy Case**");

**WHEREAS**, the Debtor is a Debtor-in-Possession under Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** on July 3, 2014, the Office of the United States Trustee appointed the Committee;

**WHEREAS,** the Debtor sold and serviced new and used RVs throughout Southern California;

**WHEREAS,** CDF served as Debtor's floorplan lender and financed Debtor's purchase of RVs pursuant to that certain Inventory Financing Agreement between CDF and Debtor dated May 8, 2006 (as amended and restated from time to time the "**Inventory Financing Agreement**");

**WHEREAS**, to secure the advances made to Debtor by CDF, Debtor granted CDF a security interest (the "Lien") in Debtor's personal property as provided in the Inventory Financing Agreement (the "**Collateral**");

**WHEREAS**, CDF filed UCC-1 financing statements to perfect its Lien in the Collateral with the California Secretary of State on April 26, 2006, Filing No. 067067960869, and the following continuation, Filing No. 10-72536700 on December 8, 2010; and on July 31, 2006, Filing No. 067079793907, and the following continuation, Filing No. 11-72592884 on February 1, 2011.

**WHEREAS,** as of the Petition Date, CDF asserts that the Debtor had an outstanding obligation to CDF of approximately $31,547,399.05, which was secured by the Collateral;

**WHEREAS**, on June 26, 2014, CDF filed a motion for relief from the automatic stay ("CDF MRS") to foreclose upon its collateral, including the Debtor's inventory.  Both the Debtor and the Committee opposed this motion;

**WHEREAS**, the Debtor and CDF formally mediated their disputes before Judge Mitchel Goldberg (retired).  Through the mediation, and subsequent follow up efforts, the parties reached a global agreement resolving, settling and compromising their disputes;

**WHEREAS**, the global agreement was implemented through (i) a stipulation granting CDF relief from the automatic stay (the "CDF MRS Stipulation") [Docket No. 273], which was approved by the Court on November 17, 2014 and (2) the settlement agreement dated November 24, 2014 entered into by CDF, the Debtor, the Committee, Brent McMahon ("McMahon") and McMahon's affiliates (the "CDF Agreement"), which became effective on or about January 20, 2015;

**WHEREAS**, pursuant to the CDF MRS Stipulation and the CDF Agreement, the Debtor's New Inventory (as defined in the CDF Agreement) was transferred to CDF and $2,495,149.86 was transferred by CDF to the Debtor.  An additional $250,000 will remain in escrow until 180 days after the effective date of the Plan, and will be distributed to the Debtor or to CDF in accordance with the provisions of the CDF Agreement.

**WHEREAS**, on or about June 19, 2015, the Debtor and the Committee proposed a liquidating plan of reorganization (the "Plan") and filed a disclosure statement describing the Plan (the "Disclosure Statement").

**WHEREAS**, the Plan provides for a liquidating trust (the "Liquidating Trust") to be created pursuant to the Plan to consummate an orderly wind-down of the Debtor and to make distributions to creditors in accordance with the CDF Agreement and as otherwise required by law.  All assets of the Debtor, including claims and causes of action belonging to the Debtor, will transfer to and vest in the Liquidating Trust on the Effective Date;

**WHEREAS**, in furtherance of the CDF Agreement and the global settlement among the parties, CDF has agreed to transfer its Lien to the Liquidating Trust upon the Effective Date of the Plan.

**NOW, THEREFORE**, in consideration of the foregoing recitals, of the agreements hereinafter set forth and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1.     <u>Lien Assignment</u>.  CDF hereby agrees to assign its Lien to the Liquidating Trust, subject to the occurrence of and effective upon the Effective Date of the Plan.

2.     <u>Implementation of Lien Assignment</u>.

    a.  Greenberg Glusker Fields Claman & Machtinger LLP ("Greenberg"), counsel for the Committee will prepare UCC-3 assignment forms ("Assignment

2

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

Forms") assigning the Lien to the Liquidating Trust, which forms will be subject to review and approval by CDF; and

b. As soon as practicable after the Effective Date of the Plan, Greenberg, on behalf of the Parties, will file the Assignment Forms with the California Secretary of State.

3.    <u>Miscellaneous</u>.

(a)    <u>No Reliance</u>. Each of the Parties declares that, except as set forth in writing in this Agreement, the decision to execute this Agreement is not predicated on or influenced by any express or implied declarations, representations or warranties of any kind, whether written or oral, by any of the other Parties.

(b)    <u>No Representations.</u> CDF makes no representations, expressly or impliedly, regarding the validity or enforceability of the Lien.

(c)    <u>Entire Agreement</u>. This Agreement together with the CDF MRS Stipulation and the CDF Agreement contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements of the Parties with respect to such subject matter.

(d)    <u>Authority</u>. Each of the undersigned represents and warrants that they are authorized to execute this Agreement on behalf of their respective clients.

(e)    <u>Modification</u>. No change or modification of this Agreement shall be valid unless it is made in writing and signed by all of the Parties.

(f)    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall have the effect of a fully-executed Agreement when counterparts have been signed by each of the Parties.  Each counterpart may be delivered by facsimile transmission or e-mail, and a faxed or e-mailed signature shall have the same force and effect as an original signature.

(g)    <u>No Assignment</u>.  Each of the Parties warrants and represents that he or it has not assigned or transferred any

3

In Re Mega RV, Corp.
Case No. 8:14-bk-13770-MW

released matter or any right to any consideration provided pursuant to this Agreement.  The Parties each agree to defend, indemnify and hold the others harmless from any and all claims based on or arising out of any such assignment or transfer made, purported or claimed.

(h)    Applicable Law.  The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of California.

(i)    Binding Effect.  This Agreement shall be binding on and shall inure to the benefit of each of the Parties and their respective agents, employees, attorneys, affiliates, successors and assigns.

(j)    Cooperation. Each of the Parties agrees to execute such documents and perform such acts as may be reasonably necessary to carry out the terms of this Agreement.

(k)    Notices.  All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when: (a) delivered by hand, with written confirmation of receipt, (b) sent by facsimile, with written confirmation of receipt, (c) delivered by overnight or other express delivery mail, or (e) by electronic transmission, in each case to the appropriate addresses, representative (if applicable) and facsimile numbers or email addresses set forth below, or to such other addresses, representative, facsimile numbers and email addresses as a Party may designate by notice to the other Parties in accordance with this paragraph:

4

If to the Debtor:

Mega RV, Corp.
c/o J. Michael Issa
GlassRatner Advisory & Capital Group LLC
19800 MacArthur Blvd.
Suite 820
Irvine, CA 92612
Telephone:      (949) 407-6620
Fax:             (949) 863-9274
Email: missa@glassratner.com


With a copy to:

Robert P. Goe, Esq.
GOE & FORSYTHE, LLP
18101 Von Karman
Suite 510
Irvine, CA 92612
Phone:  (949) 798-2460
Direct:  (949) 798-2461
Cell:     (949) 283-1501
Fax:      (949) 955-9437
rgoe@goeforlaw.com


If to the Committee:

Brian L. Davidoff
Courtney Pozmantier
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067
Telephone:      (310) 553-3610
Facsimile:      (310) 553-0687
Email: bdavidoff@greenbergglusker.com
          cpozmantier@greenbergglusker.com

5

<u>If to CDF</u>:

Robert A. Chiocchio
General Electric Capital Corporation
10 Riverview Drive
Danbury, CT 06810
Telephone:  (203) 749-6398
robert.chiocchio@ge.com


<u>With a copy to</u>:

Jennifer Ziegenhorn, Esq.
Office Managing Partner
HUSCH BLACKWELL LLP
1661 International Drive, Suite 300
Memphis, TN 38120-1431
Direct:  (901) 529-3005
Fax:  (901) 523-7472
Jennifer.Ziegenhorn@huschblackwell.com

4.    <u>Continuing Bankruptcy Court Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes regarding the validity, interpretation or performance of this Agreement, and each of the Parties consents to personal jurisdiction and venue in the Bankruptcy Court in connection with any such disputes.

6

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.


GE Commercial Distribution Finance Corporation

By: _____
Name: _____
          Its Authorized Signatory



GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By:_____
BRIAN DAVIDOFF
Attorneys for the Official Committee of
Unsecured Creditors




GOE & FORSYTHE, LLP


By:_____
ROB GOE
Attorneys for Mega RV Corporation

7

# EXHIBIT 7

<u>EXHIBIT 7</u>

**CAUSES OF ACTION AND RESERVATION OF RIGHTS**

1.    The Debtor reserves all rights and remedies, and the Liquidation Trust may initiate or continue litigation, pursue claims, and prosecute causes of action, including but not limited to those described below.  The following is a non-exclusive list of potential or actual Causes of Action (including Avoidance Actions) that will be vested in the Liquidation Trust under the Plan. As specifically provided in section 6.1 of the Plan, the Liquidation Trustee shall hold and retain all rights and privileges on behalf of the Liquidation Trust, the Debtor, and the Estate, to commence, pursue, and settle, as appropriate, any and all Causes of Action, including Avoidance Actions.  The Debtor and the Committee reserve their right to modify this list to amend such Causes of Action or otherwise update this list, but disclaim any obligation to do so.

2.    The Debtor reserves any and all claims and causes of action as a result of the failure of Dennis Dillon and Dennis Dillon RV and Marine Center to close the sale referenced in Section V.B.6. of the Disclosure Statement, including but not limited to breach of contract, breach of good faith and fair dealing, fraud, interference with economic advantage, and interference with contractual relations.  The Liquidation Trust may pursue and prosecute these and other claims and causes of action.

3.    The Debtor reserves any and all claims and causes of action against Old Ranch for Old Ranch's role in involvement in connection with the Debtor's attempted sale of assets to Dennis Dillon RV and Marine Center, as well as for Old Ranch's failure to perform under the lease agreement with the Debtor for the Westminster premises, including but not limited to the failure to deliver the premises as required under the lease and any modifications thereto, failure to deliver improvements to the premises leased, and failure to perform other obligations under the lease.  These claims and causes of action include but are not limited to breach of contract, interference with contractual relations, fraud, interference with economic advantage, and unjust

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

enrichment.  The Liquidation Trust may pursue and prosecute these and other claims and causes of action.

4.    The Debtor reserves any and all rights, claims, and causes of action against any and all customers who have RVs in their possession and have failed to perform with regard to their contracts, including but not limited to the right to repossess RVs, claims for deficiencies, and causes of action for breach of contract.  The Liquidation Trust may enforce these and other rights and may pursue and prosecute these and other claims and causes of action.

5.    The Debtor reserves all claims and causes of action against Stag Parkway and NTP Distribution for parts and other inventory that the Debtor transferred to either or both of them.

6.    The Debtor reserves all claims against parties who were paid funds by the Debtor or to whom Assets of the Debtor were transferred, within the preference period.

7.    The Debtor reserves all claims against MCC Corporation fka Monaco Coach Corp, based on or arising out of that certain proof of claim for $977,470.00 filed in the case of  *In re MCC Corporation f/k/a Monaco Coach Corporation, et al.,*  Case No. 09-10750 (KJC), U.S. Bankruptcy Court District of Delaware.

8.    The Debtor reserves all claims against Arizona RV Specialists, LLC in that certain state court action entitled *Arizona RV Specialists, LLC v. Mega RV Corp.*, Case No. CV2012-007863, Superior Court of State of Arizona, County of Maricopa.

9.    The Debtor reserves all claims against Focus Management Group USA, Inc. ("Focus") based on or arising out of that certain Agreement for Consulting Services by and between the Debtor and Focus dated February 19, 2014.

[remainder of page intentionally left blank]

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

10.    The Debtor reserves any and all rights against various manufacturers and other parties for failure to provide and/or warranties to the Debtor and customers of the Debtor.  Such parties include but are not limited to:

| | |
|---|---|
| Schedule 16 (2232) ~ Heartland | $11,416.19 |
| Schedule 17 (2212) ~ Forest River | $74,238.95 |
| Schedule 18 (2203) ~ Coachmen | $16,173.80 |
| Schedule 21 (2200) ~ Atwood | $356.59 |
| Schedule 22 (2201) ~ Carefree | $110.00 |
| Schedule 25 (2206) ~ Dometic | $1,821.50 |
| Schedule 29 (2223) ~ Monaco | $8,749.33 |
| Schedule 30 (2209) ~ Eclipse | $8,487.65 |
| Schedule 32 (2213) ~ THOR/Fourwinds | $40,771.76 |
| Schedule 38 (2219) ~ Keystone | $2,736.12 |
| Schedule 43 (2222) ~ Lippert | $1,217.67 |
| Schedule 44 (2224) ~ Norcold/Thetford | $103.20 |
| Schedule 45 (2225) ~ Pacific Coachworks | $22,214.75 |
| Schedule 46 (2226) ~ Pleasure-Way | $2,531.05 |
| Schedule 49 (2228) ~ Suburban | $225.75 |
| Schedule 52 (2230) ~ Winnebago | 22458.99 |
| | |
| Total | $213,613.30 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# EXHIBIT 8

Case 8:14-bk-13770-MW    Doc 690-1    Filed 08/04/15    Entered 08/04/15 19:21:55    Desc
Exhibit Exhibits 1 through 10 to Second Amended Disclosure Statement    Page 167 of 171

Liquidation Analysis

**Mega RV Corporation**

**Liquidation Analysis as of May 31, 2015**

| | Book Value | Recovery (%) | | | Recovery ($) | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Low | High | | Low | High |
| **Assets** | | | | | | |
| Cash on Hand | 1,378,831 | | | | 1,378,831 | 1,378,831 |
| Inventory | 959,939 | 48.5% | 72.5% | | 466,000 | 696,300 |
| Contracts-in-Transit (CIT) | 1,375,371 | 50.0% | 60.0% | | 687,686 | 825,223 |
| Equipment | 15,000 | 100.0% | 100.0% | | 15,000 | 15,000 |
| Contingent CDF Payment | 250,000 | 100.0% | 100.0% | | 250,000 | 250,000 |
| Proceeds from Roadtrek Litigation [1] | 5,400,000 | 40.0% | 60.0% | | 2,160,000 | 3,240,000 |
| Recovery from Preference Actions | 1,000,000 | 20.0% | 100.0% | | 200,000 | 1,000,000 |
| **Total Assets at Liquidation Value** | **10,379,141** | | | | **5,157,516** | **7,405,353** |
| | | | | | | |
| **Less:** | | | | | | |
| Current Chapter 11 Professional Fees | (426,346) | | | | (426,346) | (426,346) |
| Additional Chapter 11 Professional Fees through Effective Date | (300,000) | | | | (300,000) | (300,000) |
| Plan Administrative Expenses | (600,000) | | | | (600,000) | (600,000) |
| Administrative Rent [2] | (636,000) | | | | (636,000) | (636,000) |
| **Less:** | | | | | | |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | | | | (337,219) | (337,219) |
| **Less:** | | | | | | |
| Priority Tax Claims | (2,014,208) | | | | (2,014,208) | (2,014,208) |
| | | | | | | |
| **Proceeds Available for Non-Priority Unsecured Claims** | | | | | **843,743** | **3,091,581** |
| | | | | | | |
| **Less:** | | | | | | |
| Unsecured Creditors (excluding subordinated claims) | (19,395,237) | | | | (843,743) | (3,091,581) |
| | | | | | | |
| **Proceeds Available for Subordinated Claims** | | | | | - | - |
| | | | | | | |
| **Less:** | | | | | | |
| Class 5 - Subordinated Claims | (8,892,952) | | | | - | - |
| | | | | | | |
| **Net Proceeds Available** | | | | | - | - |
| | | | | | | |
| **Claims and Class Recovery** | | | | | | |
| Administrative Claims | | | | | 100% | 100% |
| Priority Tax Claims | | | | | 100% | 100% |
| Unsecured Creditors (excluding subordinated claims) | | | | | 4% | 16% |
| Subordinated Claims | | | | | 0% | 0% |

[1]    Estimated recovery net of litigation counsel's contingency fee.
[2]    Administrative Rent estimated based on reverse amounts of $571,000 and $65,000 for Westminster and Colton landlords respectively.

# EXHIBIT 9

## Mega RV Corporation

**Chapter 11 Plan Flow of Funds (3-Year) - Best Case Recovery**

| PLAN FUND SOURCES | Effective Date 9/15/2015 | 9/15/2016 | 9/15/2017 | 9/15/2018 | TOTAL |
|---|---|---|---|---|---|
| | | | **FISCAL YEARS ENDED** | | |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 2,075,131 | | 0 | 0 | 2,075,131 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 494,626 | 330,597 | 0 | 0 | 825,223 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 3,240,000 | 0 | 3,240,000 |
| Recovery from Preference Actions | 0 | 1,000,000 | 0 | 0 | 1,000,000 |
| **GROSS PLAN FUNDS** | **2,584,757** | **1,580,597** | **3,240,000** | **0** | **7,405,353** |
| | | | | | |
| **Beginning Balance** | **0** | **885,192** | **1,472,633** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,584,757 | 1,580,597 | 3,240,000 | 0 | 7,405,353 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (726,346) | 0 | 0 | 0 | (726,346) |
| Admin Claims - Rent | (636,000) | 0 | 0 | 0 | (636,000) |
| Plan Administrative Expenses | 0 | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (2,876,324) | 0 | (2,876,324) |
| ### | 0 | 0 | 0 | 0 | 0 |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **885,192** | **1,472,633** | **843,155** | **(0)** | **(0)** |

[1]     Estimated higher recovery scenario.

# EXHIBIT 10

**Mega RV Corporation**

**Chapter 11 Plan Flow of Funds (3-Year) - Worst Case Recovery**

| | Effective Date | FISCAL YEARS ENDED | | | |
|---|---|---|---|---|---|
| ***PLAN FUND SOURCES*** | **9/15/2015** | **9/15/2016** | **9/15/2017** | **9/15/2018** | **TOTAL** |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 1,844,831 | | 0 | 0 | 1,844,831 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 412,188 | 275,497 | 0 | 0 | 687,686 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 2,160,000 | 0 | 2,160,000 |
| Recovery from Preference Actions | 0 | 200,000 | 0 | 0 | 200,000 |
| **GROSS PLAN FUNDS** | **2,272,019** | **725,497** | **2,160,000** | **0** | **5,157,516** |
| | | | | | |
| | | | | | |
| **Beginning Balance** | **0** | **572,454** | **304,796** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,272,019 | 725,497 | 2,160,000 | 0 | 5,157,516 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (726,346) | 0 | 0 | 0 | (726,346) |
| Admin Claims - Rent | (636,000) | | | | (636,000) |
| Plan Administrative Expenses | | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (628,486) | 0 | (628,486) |
| ### | 0 | 0 | 0 | 0 | 0 |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **572,454** | **304,796** | **843,155** | **(0)** | **(0)** |

[1]    Estimated lower recovery scenario.