BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
COURTNEY E. POZMANTIER (SBN 242103)
CPozmantier@GreenbergGlusker.com
JAMES C. BEHRENS (SBN 280365)
JBehrens@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Official Committee
of Unsecured Creditors

ROBERT P. GOE (SBN 137019)
rgoe@goeforlaw.com
DONALD W. REID (SBN 281743)
dreid@goeforlaw.com
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, California 92612
Telephone: 949.798.2460
Facsimile: 949.955.9437

Attorneys for Mega RV Corp.,
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Mega RV Corp., dba McMahon's RV Irvine, McMahon's RV Colton and McMahon's RV Palm Desert<br><br>Debtor and Debtor in Possession. | Case No. 8:14-bk-13770-MW<br><br>Chapter 11<br><br>**MEMORANDUM OF PLAN PROPONENTS IN SUPPORT OF "SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR DATED AUGUST 4, 2015"; DECLARATIONS OF J. MICHAEL ISSA AND JOHN BELCHER**<br><br>Hearing Date<br>Date: September 16, 2015<br>Time: 2:00 p.m.<br>Ctrm: 6C<br>    411 West Fourth Street<br>    Santa Ana, CA 92701 |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2444931.4

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    PLAN CONFIRMATION.................................................................................. 1

    A.    The Plan Should be Confirmed Because it Complies with all Applicable
Requirements of Bankruptcy Code Section 1129(a)................................ 1

         1.    Bankruptcy Code Section 1129(a)(1) – The Plan Complies with
Applicable Provisions of the Bankruptcy Code ........................ 2

         2.    Bankruptcy Code Section 1129(a)(2): The Debtor Has Complied
With All Applicable Provisions of the Bankruptcy Code ......................... 7

         3.    Bankruptcy Code Section 1129(a)(3): The Debtor Has Proposed the
Plan in Good Faith ...................................... 8

         4.    Bankruptcy Code Section 1129(a)(4): The Plan Provides for
Requisite Court Approval of Payments for Services in Connection
with this Case ...................................... 9

         5.    Bankruptcy Code Section 1129(a)(5): The Plan Discloses Directors
and Officers .................................... 10

         6.    Bankruptcy Code Section 1129(a)(6): The Plan Does Not Effect
Any Change in Publicly Regulated Rates ........................ 10

         7.    Bankruptcy Code Section 1129(a)(7): The Plan is in the "Best
Interests" of Creditors .............................. 10

         8.    Bankruptcy Code Section 1129(a)(8): The Plan Has Been Accepted
by All Impaired Classes Entitled to Vote........................ 11

         9.    Bankruptcy Code Section 1129(a)(9): The Plan Complies with the
Required Treatment of Administrative Claims and Priority Claims......... 12

         10.    Bankruptcy Code Section 1129(a)(10): At Least One Impaired
Class of Claims Has Voted to Accept the Plan, Not Including Any
Votes of Insiders ................................... 14

         11.    Bankruptcy Code Section 1129(a)(11): The Plan is Feasible .................. 14

         12.    Bankruptcy Code Section 1129(a)(12): The Plan Provides for
Payment of all Statutory Fees ........................ 18

         13.    Bankruptcy Code Sections 1129(a)(13), (14), (15) and (16) are Not
Applicable to the Debtor ........................ 18

    B.    Reservation of Rights Regarding §1129(b) "Cramdown" ................... 18

III.    CONCLUSION............................................................................................ 20

DECLARATION OF J. MICHAEL ISSA ........................................................... 1

DECLARATION OF JOHN A. BELCHER............................................................ 1

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brite v. Sun Country Development, Inc.* (*In re Sun Country Development, Inc.*),
   764 F.2d 406 (5th Cir. 1985)................................................................................. 9

*In re Bonner Mall P'ship*,
   2 F.3d 899 (9th Cir. 1993), *cert. dismissed*, 513 U.S. 18 (1994) ............................ 9

*In re Club Associates*,
   107 B.R. 385 (Bankr. N.D. Ga. 1989) *aff'd* 956 F.2d 1065 (11th Cir. 1992)...................... 19

*In re Elsinore Shore Assocs.*,
   91 B.R. 238 (Bankr. D.N.J. 1988) ........................................................................... 9

*In re Future Energy Corp.*,
   83 B.R. 470 (Bankr. S.D. Ohio 1988) ..................................................................... 9

*In re Guilford Telecasters, Inc.*,
   128 B.R. 622 (Bankr. M.D.N.C. 1991) ................................................................... 19

*In re JZ L.L.C.*,
   371 B.R. 412 (9th Cir. B.A.P. 2007) ....................................................................... 6

*In re Orlando Investors, L.P.*,
   103 B.R. 593 (Bankr. E.D. Pa. 1989) .................................................................... 14

*In re Resort Int'l, Inc.*,
   145 B.R. 412 (Bankr. D.N.J. 1990) .......................................................................... 9

*In re Sound Radio, Inc.*,
   103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990)............................... 14

*In re Texaco Inc.*,
   84 B.R. 893 (Bankr. S.D.N.Y. 1988) ....................................................................... 8

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
   843 F.2d 636 (2d Cir. 1988) ................................................................................. 14

*Steelcase Inc. v. Johnston* (*In re Johnston*),
   21 F.3d 323 (9th Cir. 1994) .................................................................................... 2

*Stumpf v. McGee* (*In re O'Connor*),
   258 F.3d 392 (5th Cir. 2001) .................................................................................. 6

*United States v. Energy Resources Co., Inc.*,
   495 U.S. 545 (1990) ............................................................................................... 6

**STATUTES**

11 U.S.C. § 350..................................................................................................... 18

11 U.S.C. § 365(a) ................................................................................................... 6

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

**Page**

11 U.S.C. § 507(a)(2) ............................................................................................. 4

11 U.S.C. § 507(a)(3) ............................................................................................. 4

11 U.S.C. §§ 507(a)(4) and (5) ............................................................................ 12

11 U.S.C. § 507(a)(7) ........................................................................................... 13

11 U.S.C. § 507(a)(8) ............................................................................................. 4

11 U.S.C. § 1111(b) ............................................................................................. 11

11 U.S.C. § 1122 .............................................................................................. 2, 3

11 U.S.C. § 1122(a) ............................................................................................... 2

11 U.S.C. § 1123 ................................................................................................... 2

11 U.S.C. § 1123(a) ........................................................................................... 3, 4

11 U.S.C. § 1123(b) ................................................................................... 3, 5, 6, 7

11 U.S.C. § 1125(b) ............................................................................................... 8

11 U.S.C. § 1126(c) ............................................................................................. 11

11 U.S.C. § 1126(f) ............................................................................................. 11

11 U.S.C. § 1126(g) ............................................................................................. 11

11 U.S.C. § 1129 ................................................................................................. 17

11 U.S.C. § 1129(a) ..................................................................................... *passim*

11 U.S.C. § 1129(b) ....................................................................................... 18, 19

28 U.S.C. § 1930 ................................................................................................. 18

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3020(b)(2) .................................................................................. 8

Rule 201 of the Federal Rules of Evidence ............................................................ 1

H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) ........................................... 2

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

I.      **INTRODUCTION**

The Official Committee of Creditors (the "Committee") appointed in the bankruptcy case

of Mega RV Corp. (the "Debtor") and the Debtor (together, the "Plan Proponents") submit this

Memorandum of Points and Authorities (the "Memorandum" in support of confirmation of the

*Second Amended Joint Chapter 11 Plan of Liquidation filed by Debtor and Official Committee of*

*Unsecured Creditors Dated August 4, 2015* [Docket No. 691] (the "Plan").[1]  This Memorandum

presents a comprehensive analysis of the issues before this Court regarding the Plan,

demonstrates that the Plan complies with the applicable provisions of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") and with the applicable Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and provides the legal and evidentiary bases

necessary for this Court to confirm the Plan pursuant to section 1129(a) of the Bankruptcy Code.

In addition to the evidence contained in the attached Declarations of J. Michael Issa and

John A. Belcher, the Plan Proponents request that, pursuant to Rule 201 of the Federal Rules of

Evidence, the Court take judicial notice of all pleadings, papers, documents, and operating reports

on file with the Court and the Office of the United States Trustee.  The Plan Proponents reserve

the right to submit further documentary or oral evidence in support of confirmation at or prior to

the Confirmation Hearing, and to reply to any objections or votes to reject the Plan.

II.     **PLAN CONFIRMATION**

A.      **The Plan Should be Confirmed Because it Complies with all Applicable**

**Requirements of Bankruptcy Code Section 1129(a).**

Bankruptcy Code section 1129(a) provides that the Court shall confirm a chapter 11 plan

where each of the statute's applicable sixteen subsections has been satisfied.  11 U.S.C.

§ 1129(a).  As described below, the Plan satisfies every one of the applicable subsections of

Bankruptcy Code section 1129(a) and should therefore be confirmed.[2]

---

[1] Capitalized terms not otherwise defined herein have, as applicable, the meaning ascribed to them in the Plan and the *Second Amended Disclosure Statement Describing Second Amended Joint Chapter 11 Plan of Liquidation filed by Debtor and Official Committee of Unsecured Creditors Dated August 4, 2015* [Docket No. 690] (the "Disclosure Statement").

[2] As indicated below, Bankruptcy Code sections 1129(a)(13), (14) and (15) are not applicable to the Debtor because

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1.      **Bankruptcy Code Section 1129(a)(1) – The Plan Complies with
Applicable Provisions of the Bankruptcy Code.**

Bankruptcy Code section 1129(a)(1) requires that a plan "compl[y] with the applicable
provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of this subsection
indicates that it embodies and incorporates the requirements of Bankruptcy Code sections 1122
and 1123, which govern the classification of claims and interests and the requisite mandatory
contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977). As demonstrated
below, the Plan complies with Bankruptcy Code sections 1122 and 1123, and with all other
applicable provisions of the Bankruptcy Code, and thus satisfies the requirements of this
subsection.

a.      **The Plan Satisfies the Requirements of Bankruptcy Code
Section 1122.**

Bankruptcy Code section 1122 provides that "a plan may place a claim or interest in a
particular class only if such claim or interest is substantially similar to other claims or interests of
such class." 11 U.S.C. § 1122(a). By its plain language, Bankruptcy Code section 1122 prohibits
only the classification of dissimilar claims into the same class. *See* Alan J. Resnick, *et al.*, 7
COLLIER ON BANKRUPTCY at ¶ 1122.03[1] (16th ed. rev. 2015). As such, courts have broad
discretion to determine the propriety of classification schemes in light of the facts of each case.
*See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy
court judges must have discretionary power in classifying claims under § 1122(a)").

Here, Section 3.2 and Sections 3.10 – 3.15 of the Plan place claims in the following
classes:

| Class | Description | Impairment | Entitlement to Vote |
|---|---|---|---|
| Classes 1(a) – 1(j) | Secured Claims | Impaired | Yes |

it has no retiree benefits within the meaning of section 1129(a)(13) and is not an individual (sections 1129(a)(14) and (15)).

| Class | Description | Impairment | Entitlement to Vote |
|---|---|---|---|
| Class 2(a) – 2(b) | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | Customer Claims and Warranty Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Subordinated Claims | Impaired – Deemed to Reject | No |
| Class 6 | Interests | Impaired – Deemed to Reject | No |

Each claim placed in a particular class is substantially similar to the other claims in that class, and thus the Plan satisfies Bankruptcy Code section 1122. Thus, Classes 1(a) through 1(j) each contain only Secured Claims, Classes 2(a) and 2(b) contain only Priority Non-Tax Claims, Class 3 contains only Customer Claims and Warranty Claims, Class 4 contains only General Unsecured Claims, Class 5 contains only the subordinated claim of Brent McMahon, and Class 6 contains only interests.

   b.  **The Plan Satisfies the Mandatory Requirements of Bankruptcy Code Section 1123(a).**

Bankruptcy Code section 1123(a) sets forth eight mandatory requirements for the contents of a chapter 11 plan. 11 U.S.C. § 1123(a). Additionally, Bankruptcy Code section 1123(b) sets forth various provisions that may, but need not, be included within a chapter 11 plan. 11 U.S.C. § 1123(b). As shown below, the Plan complies with all applicable requirements of these subsections.[3]

   (1)  **Bankruptcy Code Section 1123(a)(1): The Plan Designates Classes of Claims.**

Bankruptcy Code section 1123(a)(1) requires that a chapter 11 plan designate classes of

---

[3] Section 1123(a)(8) is not applicable to the Debtor because the Debtor is not an individual.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   claims and interests other than claims of a kind specified in Bankruptcy Code section 507(a)(2)

2   (administrative expense claims), Bankruptcy Code section 507(a)(3) (claims arising during the

3   "gap" period in an involuntary bankruptcy case), and Bankruptcy Code section 507(a)(8) (priority

4   tax claims).  11 U.S.C. § 1123(a)(1).  Section 3.2 and Sections 3.10 – 3.15 of the Plan comply

5   with this requirement by expressly classifying all claims, other than Administrative Claims and

6   Priority Tax Claims.

7           (2)     **Bankruptcy Code Section 1123(a)(2): The Plan Identifies**

8                   **Unimpaired Classes of Claims.**

9           Bankruptcy Code section 1123(a)(2) requires that a plan "specify any class of claims or

10  interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2). Sections 3.2 and 3.11 of

11  the Plan satisfy this requirement by specifying that Classes 2(a) and 2(b) are unimpaired.

12          (3)     **Bankruptcy Code Section 1123(a)(3): The Plan Specifies**

13                  **the Treatment of Impaired Classes.**

14          Bankruptcy Code section 1123(a)(3) requires that a plan "specify the treatment of any

15  class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3 Sections 3.2,

16  3.10, and 3.12 - 3.15 of the Plan satisfy this requirement by specifying that Classes 1, 3, 4, 5 and

17  6 are impaired, and by specifying the treatment of the claims in each of those Classes.

18          (4)     **Bankruptcy Code Section 1123(a)(4): The Plan Provides**

19                  **for the Same Treatment of Claims within Each Class.**

20          Bankruptcy Code section 1123(a)(4) requires that a plan "provide the same treatment for

21  each claim or interest of a particular class, unless the holder of a particular claim or interest

22  agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).

23  Sections 3.10 – 3.15 of the Plan satisfy this requirement by providing the same treatment to each

24  claim that is classified in each particular class established under the Plan unless the holder of a

25  claim has agreed to less favorable treatment.

26          (5)     **Bankruptcy Code Section 1123(a)(5): The Plan Provides**

27                  **Adequate Means of Implementation.**

28          Bankruptcy Code section 1123(a)(5) requires that a plan "provide adequate means for the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  plan's implementation," and sets forth examples of adequate means for implementing a plan. 11

2  U.S.C. § 1123(a)(5).  Section V of the Plan satisfies this requirement by setting forth specific

3  means for its implementation.  Among other things, the Plan (a) provides for the Debtor to

4  establish the Administrative Claims Reserve, (b) provides for the establishment of the Liquidating

5  Trust, (c) vests all property of the estate other than the Administrative Claims Reserve, including

6  claims, causes of action and all other cash, in the Liquidating Trust; and (d) provides for the

7  Liquidating Trust to liquidate the balance of the inventory and institute avoidance and other

8  necessary actions.

9          (6)  **Bankruptcy Code Section 1123(a)(6): The Plan Provides**

10             **Appropriate Charters for the Reorganized Debtor.**

11       Bankruptcy Code section 1123(a)(6) requires, with respect to a corporate debtor, that a

12  chapter 11 plan provide for the inclusion in the charter of a reorganized debtor of a provision

13  prohibiting the issuance of non-voting equity securities and, if necessary, providing protections

14  for holders of preferred shares.  11 U.S.C. § 1123(a)(6).  Bankruptcy Code section 1123(a)(6) is

15  not applicable to the Plan because the Plan is a liquidating plan, and all assets of the Debtor other

16  than the Administrative Claims Reserve will be vested in the Liquidating Trust upon the Effective

17  Date.

18          (7)  **Bankruptcy Code Section 1123(a)(7): The Plan**

19             **Appropriately Provides for Officers and Directors.**

20       Finally, Bankruptcy Code section 1123(a)(7) provides that a plan must "contain only

21  provisions that are consistent with the interests of creditors and equity security holders and with

22  public policy with respect to the manner of selection of any officer, director, or trustee under the

23  plan and any successor to such officer, director or trustee."  11 U.S.C. § 1123(a)(7).  The Plan

24  satisfies this requirement by disclosing the identity of the proposed Liquidating Trustee.

25          c.  **The Plan Includes Appropriate Permissive Provisions under**

26          **Bankruptcy Code Section 1123(b).**

27       Bankruptcy Code section 1123(b) provides that a chapter 11 plan may provide for the

28  relief described in sections 1123(b)(1)-(b)(5), and may include, pursuant to section 1123(b)(6)

1    "any other appropriate provision not inconsistent with the applicable provisions of this title."  11

2    U.S.C. § 1123(b)(6).  In short, Bankruptcy Code section 1123(b) is intended to be a broad grant

3    of authority.  As stated by the United States Supreme Court: "The Code ... grants the bankruptcy

4    courts residual authority to approve reorganization plans including any appropriate provision not

5    inconsistent with the applicable provisions of this title."  *United States v. Energy Resources Co.,*

6    *Inc.*, 495 U.S. 545, 549 (1990) (internal quotations omitted).

7         The Plan contains a number of permissive provisions, all of which are intended to

8    facilitate a prompt resolution of this case and are appropriate under the circumstances and under

9    section 1123(b).

10                    (1)    **Treatment of Executory Contracts.**

11        As permitted by Bankruptcy Code section 1123(b)(2), Section IV of the Plan provides for

12   the rejection of the Debtor's remaining executory contracts and unexpired leases other than

13   executory contracts giving rise to Class 3 Claims.  *See* 11 U.S.C. § 1123(b)(2) (allowing the

14   assumption, rejection, or assignment of unexpired leases and executory contracts that have not

15   been previously rejected by the debtor).

16        To the extent that any Holder of a Class 3 claim is party to an executory contract which

17   gives rise to the Class 3 claim, then notwithstanding anything else in the Plan to the contrary,

18   such executory contract shall "ride through" the confirmation of the Plan and such executory

19   contract shall be treated as set forth in Class 3.  The ride-through of executory contracts is

20   appropriate under Bankruptcy Code sections 365(a), which provides that the Debtor "may assume

21   or reject any executory contract or unexpired lease of the debtor." (Emphasis added).   Thus, the

22   language of section 365 is permissive, not mandatory, and "leaves open the 'no action' possibility

23   of neither assuming or rejecting an Executory Contract."  *In re JZ L.L.C.*, 371 B.R. 412, 422 (9th

24   Cir. B.A.P. 2007) ("An executory contract that is not assumed in a Chapter 11 case is not

25   'deemed rejected.'").  As a matter of straight forward statutory construction, it follows that some

26   other alternative, i.e. 'ride through' must be available."). *See also Stumpf v. McGee* (*In re*

27   *O'Connor*), 258 F.3d 392, 404 (5th Cir. 2001) (holding that ride-through doctrine applies to

28   executory contracts that at chapter 11 debtor has neither assumed nor rejected prior to plan

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

confirmation).  Similarly, Bankruptcy Code section 1123(b)(2) of the Code states that "a plan

may" provide for assumption or rejection under section 365, further showing that ride-through of

executory contracts is permissible.

For these reasons, the Plan Proponents submit that the provisions of the Plan pertaining to

executory contracts are consistent with Bankruptcy Code sections 365(a) and 1123(b)(2).

(2)     **Preservation of Causes of Action.**

The Plan provides for the retention of claims in accordance with section 1123(b)(3)(B).  In

particular, the Plan provides that all Assets of the Debtor and the Estate, other than the

Administrative Claims Reserve, will be transferred to and vest in the Liquidating Trust, and that

the Liquidating Trustee shall hold and retain all rights and privileges on behalf of the Liquidating

Trust, the Debtor, and the Estate to commence, pursue, and settle, as appropriate, any and all

Causes of Action and Defenses (including, without limitation, Avoidance Actions), whether

arising before or after the Petition Date, in any court or other tribunal, including, without

limitation, adversary proceeding(s) filed in the Case, including, without limitation, the Roadtrek

litigation discussed in section IV.M.1. of the Disclosure Statement and the Causes of Action listed

in Exhibit 7 to the Disclosure Statement.  *See* Plan, §§ 5.4 and 6.1.  These provisions are

contemplated by, and fully consistent with, section 1123(b)(3).

(3)     **Retention of Jurisdiction.**

Pursuant to Section 7.17 of the Plan, the Court shall retain jurisdiction over the Case after

the Effective Date to the fullest extent provided by law, including the jurisdiction to enter

appropriate orders in aid of implementation of the Plan and/or the Confirmation Order; to allow,

disallow, determine, liquidate, classify, hear and determine any objections to Administrative

Claims or proof of claim, including any objections to the classification of any Claim and to allow,

disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured

status of any Claim, in whole or in part; and over the other matters set forth in section 7.17 of the

Plan.  This provision is permitted by section 1123(b) and does not conflict with any other section

of the Bankruptcy Code.

2.     **Bankruptcy Code Section 1129(a)(2): The Debtor Has Complied With**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**All Applicable Provisions of the Bankruptcy Code.**

Bankruptcy Code section 1129(a)(2) requires that the proponent of a chapter 11 plan "compl[y] with the applicable provisions of this title."  11 U.S.C. § 1129(a)(2).  The principal purpose of this subsection is to ensure that a proponent complies with the Bankruptcy Code's requirements regarding the solicitation of acceptances of a plan.  *See In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988).  By order entered on August 5, 2015 [Docket No. 695], the Court found that the Disclosure Statement contained adequate information within the meaning of Bankruptcy Code section 1125(b), and the Court thus authorized the Plan Proponents to disseminate the Plan, the Disclosure Statement, and other solicitation materials to parties in interest and to solicit votes pursuant to certain specified procedures.  As demonstrated by the previously filed certificate of service regarding solicitation [Docket No. 705], the Debtor has complied with the procedures set forth in this order and with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  In addition, in accordance with the *Order (1) Approving Second Amended Disclosure Statement; (2) Setting Hearing on Confirmation of Second Amended Plan; and (3) Setting Procedures and Deadlines* [Docket No. 695], the Ballot Tabulator will file the Plan Ballot Summary with the Court on or before September 9, 2015.  The Plan thus complies with the requirements of Bankruptcy Code section 1129(a)(2).

**3.     Bankruptcy Code Section 1129(a)(3): The Debtor Has Proposed the Plan in Good Faith.**

Bankruptcy Code section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Bankruptcy Rule 3020(b)(2) specifies that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."  Fed. R. Bankr. P. 3020(b)(2).

In accordance with Bankruptcy Rule 3020(b)(2), barring any objection to the Plan on the grounds of a lack of good faith, the Court should find that Bankruptcy Code section 1129(a)(3) is satisfied without further inquiry.

Even absent Bankruptcy Rule 3020(b)(2)'s presumption of good faith, the Debtor's good

1    faith is more than evident.  The primary purpose of chapter 11 is to reorganize the debtor and to

2    maximize the value of its estate.  *See In re Bonner Mall P'ship*, 2 F.3d 899, 915 (9th Cir. 1993),

3    *cert. dismissed*, 513 U.S. 18 (1994).  Accordingly, a plan satisfies Bankruptcy Code section

4    1129(a)(3) when it "is proposed with the legitimate and honest purpose to reorganize and has a

5    reasonable hope of success."  *Brite v. Sun Country Development, Inc.* (*In re Sun Country*

6    *Development, Inc.*), 764 F.2d 406, 408 (5th Cir. 1985).

7        The Plan is the culmination of the joint efforts of the Debtor and the Committee to

8    maximize the value of the Debtor's remaining assets for the benefit of all stakeholders.  The Plan

9    accomplishes this goal by providing a measure of recovery for unsecured creditors, paying

10    Administrative Claims in full, paying Priority Claims in full on the Effective Date or on the

11    timeline permitted by applicable law, and addressing the treatment of purported secured claims.

12    The Liquidating Trust will be established to implement distributions to many creditors, and to

13    liquidate the remaining assets of the Debtor, including Liquidation Claims.  This is a stark

14    contrast to the outset of this Case, when the Debtor was poised to litigate with its primary pre-

15    petition secured lender and the Estate bordered on administrative insolvency. Thus, the Plan

16    Proponents believe that the Plan provides the best possible recovery under the circumstances, and

17    that the Plan should be confirmed by the Court.

18        **4.        Bankruptcy Code Section 1129(a)(4): The Plan Provides for Requisite**

19            **Court Approval of Payments for Services in Connection with this Case.**

20        Bankruptcy Code section 1129(a)(4) requires that "[a]ny payment made or to be made by

21    the [plan] proponent, by the debtor, or by a person issuing securities or acquiring property under

22    the plan, for services or for costs and expenses in or in connection with the case, or in connection

23    with the plan and incident to the case," be approved by the Court as reasonable.  11 U.S.C. §

24    1129(a)(4); *see In re Resort Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Elsinore*

25    *Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (section 1129(a)(4) satisfied where plan

26    provides for payment of "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R.

27    470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses are

28    governed by various Bankruptcy Code provisions – e.g., §§ 328, 329, 330, 331 and 503(b) – and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   need not be explicitly provided for in a chapter 11 plan."). The Plan provides that Professional

2   Fee Claims will be paid under the Plan after approval of the final fee applications of the

3   professionals asserting those Professional Fee Claims. *See* Plan, § 3.8. In addition, the Plan

4   provides that other Administrative Claims will paid only after they are "Allowed" as set forth in

5   the Plan. *See* Plan, § 3.4. The Plan therefore complies with Bankruptcy Code section 1129(a)(4).

6   **5.      Bankruptcy Code Section 1129(a)(5): The Plan Discloses Directors and**

7   **Officers.**

8   Bankruptcy Code section 1129(a)(5) requires: (i) that the proponent of a plan disclose the

9   identity and affiliations of any individual proposed to serve after confirmation as a director,

10  officer, or voting trustee of the debtor; (ii) that the appointment or continuance in office of such

11  individuals be consistent with the interests of creditors and shareholders and with public policy;

12  and (iii) that the proponent disclose the identity of any insider that will be employed or retained

13  by the reorganized debtor and the nature of the compensation to be provided to such insider. 11

14  U.S.C. §§ 1129(a)(5)(A) and (B).

15  The identity of the Liquidating Trustee was disclosed in the Liquidating Trust Agreement

16  filed as Exhibit 2 Disclosure Statement. *See* Disclosure Statement, Exhibit 2.

17  **6.      Bankruptcy Code Section 1129(a)(6): The Plan Does Not Effect Any**

18  **Change in Publicly Regulated Rates.**

19  Bankruptcy Code section 1129(a)(6) requires that any regulatory commission with

20  jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan.

21  11 U.S.C. § 1129(a)(6). The Debtor is no longer operating and in any event would not be not

22  subject to any such regulation. Bankruptcy Code section 1129(a)(6) therefore is not applicable.

23  **7.      Bankruptcy Code Section 1129(a)(7): The Plan is in the "Best**

24  **Interests" of Creditors.**

25  Bankruptcy Code section 1129(a)(7) establishes what is commonly referred to as the "best

26  interests" test. Specifically, Bankruptcy Code section 1129(a)(7)(A) requires that, with respect to

27  each class of impaired claims or interests under a plan, every holder of a claim or interest in such

28  impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  effective date of the plan, that is not less than the amount that such holder would receive or retain

2  if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  11 U.S.C. §

3  1129(a)(7)(A).[4]

4      As discussed at length in the Disclosure Statement, *see* Disclosure Statement at

5  Section VIII.D, the Plan satisfies the best interests test as to all impaired creditors, whether or not

6  those holders voted to accept the Plan.  As illustrated by the liquidation analysis prepared by the

7  Debtor, *see* Disclosure Statement, Exhibit 8, all creditors are projected to receive less than the

8  recovery provided by the Plan (or nothing) if the Debtor is liquidated under chapter 7 of the

9  Bankruptcy Code.  Accordingly, the distribution to creditors under the Plan is more than creditors

10  would receive in a chapter 7 liquidation.  *See* Disclosure Statement at Section VIII and Exhibit 8.

11  **8.      Bankruptcy Code Section 1129(a)(8): The Plan Has Been Accepted by**

12  **All Impaired Classes Entitled to Vote.**

13      Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests

14  established under a plan either accept the plan or not be impaired under the plan.  11 U.S.C.

15  § 1129(a)(8).  "A class of claims has accepted a plan if such plan has been accepted by

16  creditors . . . that hold at least two-thirds in amount and more than one-half in number of the

17  allowed claims of such class held by creditors . . . that have accepted or rejected such plan."  11

18  U.S.C. § 1126(c).  A class of claims that is not impaired is deemed to have accepted the plan.  11

19  U.S.C. §§ 1126(f) and 1129(a)(8).  A class of claims that does not receive or retain any property

20  under the plan is deemed to reject.  11 U.S.C. § 1126(g).

21      Classes 1, 3 and 4 are impaired under the Plan and are therefore entitled to vote to accept

22  or reject the Plan.  Classes 5 and 6 are impaired under the Plan but will not receive any

23  distributions under the Plan and are therefore deemed to reject the Plan.  The deadline for

24  creditors entitled to vote on the Plan is September 4, 2015 at 5:00 p.m. Pacific time.  The Plan

25  Proponents will address whether the requirements of Section 1129(a)(8) have been satisfied in

26  connection with the Plan Ballot Summary that will be filed on or before September 9, 2015.

27  _____

28  [4] As no election has been made under Bankruptcy Code section 1111(b), section 1129(a)(7)(B) is not applicable.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**9.      Bankruptcy Code Section 1129(a)(9): The Plan Complies with the Required Treatment of Administrative Claims and Priority Claims.**

Section 1129(a)(9) of the Bankruptcy Code contains provisions generally requiring payment in cash of administrative and non-tax priority claims and permitting the deferred payment of priority tax claims over a period not exceeding five years. *See* 11 U.S.C. § 1129(a)(9).

The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).  First, as required by Bankruptcy Code sections 1129(a)(9)(A) and (B), (1) Section 3.4 of the Plan provides that unless agreed otherwise, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Administrative Claims Reserve, or Cash from the Liquidating Trust, if the Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable; (2) Section 3.4 of the Plan provides that Allowed Ordinary Course Administrative Claims shall be paid in Cash in full after the Effective Date by the Debtor or the Liquidating Trust, in accordance with the terms and conditions of the particular transactions, any applicable agreements, or as otherwise authorized by the Court; (3) section 3.7 of the Plan provides that U.S. Trustee Fees shall be paid prior to the Effective Date by the Debtor, and after the Effective Date by the Liquidating Trust, in each case, when due in accordance with applicable law; and (4) Section 3.8 of the Plan provides that each Professional Fee Claim allowed by the Court shall be paid in full satisfaction, discharge, exchange, and release of such Claims, by Cash from the Administrative Claims Reserve, or Cash from the Liquidating Trust, if the Administrative Claims Reserve has been exhausted, in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable .

Second, in accordance with Bankruptcy Code section 1129(a)(9)(B), Section 3.11 of the Plan provides that unless agreed otherwise, (1) Allowed Priority Claims against the Debtor in Class 2(a) (i.e. claims entitled to priority treatment under Bankruptcy Code sections 507(a)(4) and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(5)) will be paid in cash in full by the Liquidating Trust on the later of (a) the Effective Date, or (b) the fifteenth (15th) Business Day after such Class 2(a) Claim becomes an Allowed Claim, and (2)  Allowed Priority Claims against the Debtor in Class 2(b) (i.e. claims entitled to priority treatment under Bankruptcy Code sections 507(a)(7)) will be paid in cash in full by the Liquidating Trust on the later of (a) the Effective Date, or (b) the fifteenth (15th) Business Day after such Class 2(b) Claim becomes an Allowed Claim, unless the Holder of such Claim has as of the Effective Date been paid in excess of $2,775 by the Recovery Corporation.

Third, in accordance with Bankruptcy Code sections 1129(a)(9)(C)(i) and (ii), Section 3.9 of the Plan provides that, unless agreed otherwise, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof, as follows:

(i)    For all Allowed Priority Tax Claims in an amount less than $5,000, cash from the Liquidating Trust in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

(ii)    For all other Allowed Priority Tax Claims, equal quarterly payments over three years with the first payment due on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable (the "First Payment Date"). Subsequent quarterly payments following the First Payment Date, shall commence on the first business day of the third calendar month after the First Payment Date and shall continue quarterly thereafter, and the duration of payment shall not exceed five years from the Petition Date. Interest shall accrue on Allowed Priority Tax Claims to the Internal Revenue Service on the amount outstanding from time to time at the rate at 3.43% per annum from the Effective Date.  Interest shall accrue on all other Allowed Priority Tax Claims on the amount outstanding from time to time at the rate at 6% per annum from the Effective Date, provided

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   that for Claims owing to the California State Board of Equalization if the Plan is

2   confirmed after December 31, 2015, then interest shall accrue on Claims owing to

3   the California State Board of Equalization on the amount outstanding from time to

4   time at the interest rate for unpaid tax liabilities published by the California State

5   Board of Equalization at http://www.boe.ca.gov/sutax/interates.htm.

6        Since general unsecured creditors will not be paid in full under the plan, this treatment

7   also complies with Bankruptcy Code section 1129(a)(9)(C)(iii).

8        **10.      Bankruptcy Code Section 1129(a)(10): At Least One Impaired Class of**

9        **Claims Has Voted to Accept the Plan, Not Including Any Votes of**

10        **Insiders.**

11        Bankruptcy Code section 1129(a)(10) requires that at least one class of claims that is

12   impaired under the plan has voted to accept the plan, determined without including any

13   acceptance of the plan by any insider.  11 U.S.C. § 1129(a)(10).  The Plan Proponents will

14   provide evidence regarding satisfaction of Bankruptcy Code section 1129(a)(10) in the Plan

15   Ballot Summary.

16        **11.      Bankruptcy Code Section 1129(a)(11): The Plan is Feasible.**

17        Bankruptcy Code section 1129(a)(11) requires that the Court find that "[c]onfirmation of

18   the plan is not likely to be followed by the liquidation, or the need for further financial

19   reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation

20   or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  Bankruptcy Code section

21   1129(a)(11) does not require an absolute assurance of financial success by the debtor.  Rather, the

22   so-called feasibility standard requires only "a 'reasonable' prospect for financial stability and

23   success."  *In re Sound Radio, Inc.*, 103 B.R. 521, 524 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir.

24   1990); *accord Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 649 (2d

25   Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of

26   success.  Success need not be guaranteed."); *In re Orlando Investors, L.P.*, 103 B.R. 593, 600

27   (Bankr. E.D. Pa. 1989) ("The purpose behind the statutory requirement of feasibility is to prevent

28   confirmation of visionary schemes which promise creditors and equity security holders more

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  under a proposed plan than the debtor can possibly attain after confirmation.") (internal

2  quotations omitted).

3      Although no plan is without some risk, the Plan Proponents established sufficient

4  evidence that the Plan is feasible, i.e., that its confirmation is not likely to be followed by the need

5  for further financial reorganization.

6      The first aspect of feasibility is whether there will be adequate funds available on the

7  Effective Date to satisfy the obligations under the Plan that must be paid on or immediately

8  following the Effective Date.  As the Issa Declaration indicates, it is projected that the Debtor will

9  have sufficient cash on the Effective Date to satisfy all Allowed Administrative Claims (including

10  Allowed Professional Fee Claims) from either the Administrative Claims Reserve, or the cash

11  transferred to the Liquidating Trust if the Administrative Claims Reserve is exhausted.

12      Specifically, as shown on Exhibits 2 and 3 to the Issa Declaration (high case and low case

13  cash flow projections) as of the Effective Date, the Debtor projects to have available gross plan

14  funds of between $2,141,000 and $2,322,878 depending on the recovery from contracts in transit,

15  sales of inventory and equipment.  *See* Issa Declaration, ¶ 7 and Exhibits 1 and 2.  The Debtor

16  currently has $1,684,048 in cash on hand, and on or before the Effective Date expects to realize:

17  (1) an additional amount on account of the sale of inventory ranging from $372,892 to $540,693;

18  (2) an additional amount on account of closing CIT transactions through the Effective Date

19  ranging from $69,281 to $83,137, and (3) an additional amount on account of the sale of

20  equipment of $15,000.  *See id.*, ¶ 8.  Professional fees of $618,985 have been accrued through

21  July 31, 2015, and the Plan Proponents estimate that at least an additional $150,000 in

22  professional fees will accrue for the period of August 1, 2015 through Effective Date.[5]  *See id*.

23  Total expenses and Plan obligations to be paid as of the Effective Date are projected not to exceed

24  $1,740,000.  *See id*.  Accordingly, the Debtor anticipates having excess cash of between

25  $492,000 and $736,280 after payment of the obligations due as of the Effective Date.  *See id*., ¶ 9

26  _____

27  [5] The Liquidation Analysis attached to the Issa Declaration as Exhibit 1 and the cash flow projections attached as
Exhibits 2 and 3 to the Issa Declaration contain a summary of these amounts and the cash which it is estimated will

28  be available on the Effective Date.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

and Exhibits 2 and 3.  Among the expenses projected to be paid as of the Effective Date is an

amount of $571,000 reserved for payment of the Old Ranch administrative claim.[6]  For these

reasons, the Plan Proponents believe that the first aspect of feasibility is satisfied.

The second aspect of feasibility considers whether the Debtor will have enough cash over

the life of the Plan to make the required Plan payments.  Although the Plan is a liquidating Plan,

the Plan Proponents believe that proceeds from avoidance actions and proceeds from the

Roadtrek litigation will only be realized over the course of the next two to three years.

In regard to avoidance actions, the Debtor's bankruptcy schedules reflect payments to

creditors within the 90 days prior to the Petition Date in excess of $5,000,000 (excluding

payments to CDF).   The Debtor is in the process of analyzing preference recoveries, but based on

the analyses completed to date, preference recoveries are projected to range from $200,000 to

$300,000.   *See id.*, ¶ 11. The Roadtrek Litigation is described in Section VI.M.1 of the

Disclosure Statement, and as discussed, the Plan Proponents estimate that the recovery from the

Roadtrek Litigation, net of fees, will range from $2,160,000 to $3,240,000.  *See* Belcher

Declaration, ¶ 4.  This estimate is based on an expert report prepared in conjunction with the

litigation between the Debtor and Mike Thompson RV, which arose from the same set of facts as

the Roadtrek Litigation. *See id.*, ¶¶ 4-6.   Further, the Debtor's damages expert was deposed by

Roadtrek's counsel in the Mike Thompson action. *See id.*, ¶¶ 7-8.  Roadtrek vigorously disputes

the Debtor's estimated range of recovery in the Roadtrek Litigation and asserts that it is entitled

to affirmative recovery from the Debtor on certain claims. *See id.*, ¶ 9 and Disclosure Statement,

§ VI.M.1.

However, as discussed above, absolute certainty of the Debtor's success in the Roadtrek

Litigation is not required to satisfy the feasibility standard of Bankruptcy Code section

1129(a)(11), and the Plan Proponents believe that they have established sufficient evidence of the

expected recovery in the Roadtrek Litigation and of other sources of recovery to show that there

---

[6] As discussed in Section V.B.8 of the Disclosure Statement the administrative claim of Old Ranch is subject to objection.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   will be sufficient funds to make the required post-Effective Date payments.

2          Another projected source of recovery is a $250,000 payment to the Liquidating Trustee

3   under the CDF Settlement (the "Holdback Amount").   There are, however, requirements that

4   must be satisfied before the Holdback Amount will be paid to the Liquidating Trustee, and it is

5   impossible to predict with certainty at this time whether those requirements will be met.

6   Specifically, the CDF Settlement provides that CDF will pay the Liquidating Trustee $250,000 in

7   the event that within 180 days after the Effective Date, the aggregate recovery from (i) Recovery

8   Action Proceeds (as defined in the CDF Settlement),[7] plus (ii) proceeds from the Debtor's

9   liquidation of the CIT, inventory and other collateral released to the Debtor by CDF, is less than

10  $4,700,000, but only to the extent of the Shortfall (as defined in the CDF Settlement).   The

11  payment of the $250,000 to the Liquidating Trustee is also contingent on the Debtor's diligent

12  efforts to liquidate its assets.

13         Finally, the Plan contemplates that that the Priority Tax Claims will be paid in three years

14  to coincide with the litigation recoveries discussed above.  As shown on Exhibit 3 to the Issa

15  Declaration, even in a low case scenario, the Liquidating Trust is projected to have sufficient

16  funds to make all contemplated payments on account of Priority Tax Claims.  *See* Issa

17  Declaration, ¶ 12 and Exhibits 2 and 3.  Exhibit 4 to the Issa Declaration contains a schedule of

18  Priority Tax Claim accruals and projected the projected payments thereon.

19         Thus, the Plan is not a "visionary scheme," but instead a good faith, reasonable and

20  expeditious resolution to this case that will pay all Allowed Administrative Claims and all

21  Allowed Priority Claims against the estate in full and is also projected to provide a recovery for

22  general unsecured creditors.  The evidence strongly supports a finding that the Plan is feasible

23  and it not likely to be followed by the liquidation or need for further financial reorganization of

24  the Reorganized Debtor and that the feasibility requirement set forth in Bankruptcy Code section

25  1129 is satisfied.

26

27  _____

28  [7] The proceeds of the Roadtrek Litigation are not included in the definition of Recovery Action Proceeds set forth
in the CDF Settlement and thus do not count toward the $4,700,000 cap under the CDF Settlement.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**12.     Bankruptcy Code Section 1129(a)(12): The Plan Provides for Payment of all Statutory Fees.**

Bankruptcy Code section 1129(a)(12) requires that a chapter 11 plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of quarterly fees owing to the United States Trustee) be paid on or before the effective date of the plan ("U.S. Trustee Fees"). Section 3.7 of the Plan provides that U.S. Trustee Fees shall be paid prior to the Effective Date by the Debtor, and after the Effective Date by the Liquidating Trust, in each case, when due in accordance with applicable law. The Debtor shall continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, the Liquidating Trustee shall file such reports until the Case is closed under Bankruptcy Code section 350. The Plan thus satisfies Bankruptcy Code section 1129(a)(12).

**13.     Bankruptcy Code Sections 1129(a)(13), (14), (15) and (16) are Not Applicable to the Debtor.**

Bankruptcy Code section 1129(a)(13) is not applicable to the Debtor because the Debtor has no retiree benefits within the meaning of section 1129(a)(13). *See* 11 U.S.C. § 1129(a)(13). Bankruptcy Code sections 1129(a)(14) and (15) are only applicable to individual debtors. *See* 11 U.S.C. §§ 1129(a)(14) and (15). Finally, Bankruptcy Code section 1129(a)(16) is applicable only to transfers of property by a nonprofit corporation, and is therefore not applicable to the Debtor.

**B.     Reservation of Rights Regarding §1129(b) "Cramdown".**

The Plan Proponents reserve the right to argue that the Plan complies with all of the applicable provisions of 11 U.S.C. § 1129(b). Section 1129(b)(1) provides that, if all of the requirements of section 1129(a) are met, other than paragraph (8) dealing with acceptance by all classes of creditors, the Court may nonetheless confirm the Plan if (1) the Plan does not discriminate unfairly, and (2) the Plan is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. *See* 11 U.S.C. § 1129(b)(1).

As set forth in section 1129(b)(1), the requirements that the Plan must not discriminate unfairly and must be fair and equitable with respect to each Class of creditors is applicable only with respect to a Class of creditors that is impaired under the Plan and that has not accepted the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Plan.  *In re Guilford Telecasters, Inc.*, 128 B.R. 622, 628 (Bankr. M.D.N.C. 1991) (holding that

2  "[s]ince all classes of unsecured claims have accepted the plan, 'cram-down' as to these classes is

3  not required, thereby forgoing any discussion of the 'absolute priority rule' and the 'new value

4  exception'."  The absolute priority rule is not applicable with respect to an impaired class of

5  unsecured claims that has accepted the plan."); *In re Club Associates*, 107 B.R. 385, 400 (Bankr.

6  N.D. Ga. 1989) *aff'd* 956 F.2d 1065 (11th Cir. 1992) ("[the Debtor's] general unsecured creditors,

7  although impaired, accepted the Plan. Therefore, § 1129(b) is not applicable to [such] Class.")

8  Until the ballots are received, the Plan Proponents cannot know which Class(es), if any, have not

9  accepted the Plan.  Accordingly, the Plan Proponents reserve the right to make its arguments with

10  respect to the requirements of 11 U.S.C. § 1129(b) after the compiling all ballots received by the

11  September 4, 2015 deadline.

12      With respect to Classes 5 and 6, impaired classes deemed to reject the Plan, section

13  1129(b)(2)(C) of the Bankruptcy Code provides that the condition that a plan be "fair and

14  equitable" includes the following:  (i) the plan provides that each holder of an interest of such

15  class receive or retain on account of such interest property of a value, as of the effective date of

16  the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which

17  such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of

18  such interest; or (ii) the holder of any interest that is junior to the interests of such class will not

19  receive or retain under the plan on account of such junior interest any property. 11 U.S.C. §

20  1129(b)(2)(C). Here, Class 5 Claims and Class 6 interests are not entitled to receive any recovery

21  under the Plan.  Section 1129(b)(2)(C) is written in the disjunctive.  Alternatively, no class junior

22  to Classes 5 and 6 will receive or retain any property on account of such junior interests.

23  Accordingly, the requirements of 11 U.S.C. § 1129(b)(2)(C) are satisfied.

24

25

26

27

28

III.    **CONCLUSION**

Based upon all the foregoing, the Plan Proponents respectfully request and urge that this Court enter an order confirming the Plan and granting such other and further relief as is necessary and appropriate.

DATED: August 26, 2015

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP

By: /s/ *Courtney E. Pozmantier*
COURTNEY E. POZMANTIER
Attorneys for Official Committee
of Unsecured Creditors

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2444931.4                                        20

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## DECLARATION OF J. MICHAEL ISSA

I, J. Michael Issa, declare as follows:

1.      I am a principal of GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), which has been engaged as the Debtor's financial adviser.  I am over 18 years of age.  I have served as the Debtor's main financial advisor during the course of this chapter 11 case, and as a result am intimately familiar with the Debtor's business records, financial affairs and the events that have occurred in this case.  It is also contemplated that I will serve as the Liquidating Trustee of the Liquidating Trust to be established pursuant to the Plan.  Based upon my knowledge and review of the Debtor's business records and financial affairs, and my participation in preparation of the financial projections discussed herein, I am personally familiar with the matters discussed in this Declaration and if called to testify as a witness thereto, I could and would competently do so.

2.      I make this Declaration in support of the attached memorandum (the "Memorandum") of the Plan Proponents in support of confirmation of the *Second Amended Joint Chapter 11 Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Debtor Dated August 4, 2015* (the "Plan").  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum or the Plan, as applicable.

3.      Bankruptcy Code section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan.  The Debtor is not subject to any such regulation and the Plan does not propose any rate changes.  Therefore, I do not believe that Bankruptcy Code section 1129(a)(6) is applicable to the Debtor or the Plan.

4.      At my direction, an employee of GlassRatner prepared the Liquidation Analysis attached to the Disclosure Statement as Exhibit 8, and the high-case and low-case cash flow projections attached to the Disclosure Statement as Exhibits 9 and 10, respectively.  I reviewed and provided input regarding those Disclosure Statement Exhibits and know and understand their content.  Given that the Liquidation Analysis and financial projections included with the Disclosure Statement were prepared over two months ago, at my direction an employee of

16118-00002/2444931.4

1   GlassRatner prepared an updated Liquidation Analysis that is attached hereto as <u>Exhibit 1</u> and

2   updated high-case and low-case cash flow projections that are attached hereto as <u>Exhibits 2 and 3</u>,

3   respectively.  I reviewed and provided input regarding these Exhibits and know and understand

4   the information contained in these Exhibits.

5       5.      As illustrated by the Liquidation Analysis attached as Exhibit 1 hereto, all

6   creditors are projected to receive less than the recovery provided by the Plan if the Debtor is

7   liquidated under chapter 7 of the Bankruptcy Code.  Accordingly, the distribution to creditors

8   under the Plan is more than creditors would receive in a chapter 7 liquidation.  *See* 11 U.S.C. §

9   1129(a)(7)(A) and Exhibit 1.

10      6.      As shown on the cash flow projections attached hereto as Exhibits 2 and 3, it is

11  projected that the Debtor will have sufficient cash on the Effective Date to satisfy all Allowed

12  Administrative Claims (including Allowed Professional Fee Claims) from the Administrative

13  Claims Reserve.

14      7.      Specifically, as shown on Exhibits 2 and 3 hereto, as of the Effective Date, the

15  Debtor projects to have gross plan funds ranging from $2,141,000 to $2,322,878 depending on

16  the recovery from contracts in transit and sales of inventory and equipment.

17      8.      The Debtor currently has $1,684,048 in cash on hand, and on or before the

18  Effective Date expects to realize: (1) an additional amount on account of the sale of inventory

19  ranging from $372,892 to $540,693; (2) an additional amount on account of closing contract in

20  transit transactions through the Effective Date ranging from $69,281 to $83,137, and (3) an

21  additional amount on account of the sale of equipment of $15,000.  Professional fees of $618,985

22  have been accrued through July 31, 2015, and I estimate that at least an additional $150,000 in

23  professional fees will accrue through the Effective Date.

24      9.      Accordingly, I anticipate that the Debtor will have excess cash of between

25  $399,015 and $580,673 after payment of obligations due as of the Effective Date.   Among the

26  expenses projected to be paid as of the Effective Date is an amount of $571,000 reserved for

27  payment of the Old Ranch administrative claim.   As discussed in Section V.B.8 of the Disclosure

28  Statement the administrative claim of Old Ranch is subject to objection.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

10.    The Liquidation cash flow projections attached as Exhibit 2 and 3 hereto show that even in a low case scenario, the Debtor is projected to have enough cash over the life of the Plan to make the required Plan payments.  As set forth in the projections, the recovery from avoidance actions and the Roadtrek Litigation is likely to be realized over the next two years.

11.    In regard to avoidance actions, the Debtor's bankruptcy schedules reflect payments to creditors within the 90 days prior to the Petition Date in excess of $5,000,000 (excluding payments to CDF).   The Debtor is in the process of analyzing preference recoveries, but based on the analyses completed to date, preference recoveries are projected to range from $198,000 to $300,000.

12.    As noted, the Liquidation Analysis and cash flow projections have been updated to reflect, among other things, additional funds collected from the liquidation of contracts in transit and inventory, additional professional fees accrued during the months of June and July, and the results of the Debtor's preliminary preference analysis.   Notably, the cash on hand as of July 31, 2015 was $1,684,048, an increase of $305,217 over the $1,378,831 of cash on hand as of May 31, 2015 when the initial Liquidation Analysis and cash flow projections were prepared. Moreover, the updates to the Liquidation Analysis and cash flow projections did not result in a significant change to the most important projections, such as the range of gross funds expected to be available on the Effective Date.  Indeed, the only projection which changed significantly is the high case projected recovery from avoidance actions.

13.    The below chart illustrates the consistency between the Liquidation Analysis and cash flow projections filed as Exhibits 8 – 10 to the Disclosure Statement and the updated Liquidation Analysis and cash flow projections attached as Exhibits 1 -  3 hereto.

|  | Disclosure Statement Projections | Updated Projections |
| --- | --- | --- |
| High case - gross plan funds on Effective Date | $2,584,757 | $2,322,878 |
| Low Case - gross plan funds on Effective Date | $2,272,019 | $2,141,200 |
| Total Professional Fees projected to accrue by Effective Date | $726,346 | $768,985 |

|  | Disclosure Statement Projections | Updated Projections |
|---|---|---|
| High case - expected recovery from sales of inventory | $696,300 (equivalent to recovery of 72.5% of May 31, 2015 book value of inventory) | $540,693 (equivalent to recovery of 72.5% of current book value of inventory; reduction in projected amount to be collected attributable to recovery from inventory sales realized in June and July 2015) |
| Low case - total expected recovery from sales of inventory | $466,000 (equivalent to recovery of 48.5% of May 31, 2015 book value of inventory) | $372,892 (equivalent to recovery of 50% of current book value of inventory; reduction in projected amount to be collected attributable to recovery from inventory sales realized in June and July) |
| High case - total expected recovery from contracts in transit | $825,223 (equivalent to recovery of 60% of May 31, 2015 book value of contracts in transit) | $413,734 (equivalent to recovery of 60% of current book value of contracts in transit; reduction in projected amount to be collected attributable to liquidation of contracts in transit in June and July) |
| Low case - expected recovery from contracts in transit | $687,686 (equivalent to recovery of 50% of May 31, 2015 book value of contracts in transit) | $344,778 (equivalent to recovery of 50% of current book value of contracts in transit; reduction in projected amount to be collected attributable to liquidation of contracts in transit in June and July) |
| High case – expected recovery from preference actions | $1,000,000 | $300,000 |
| Low case – expected recovery from preference actions | $200,000 | $198,000 |

14.    The Plan contemplates that that Priority Tax Claims will be paid in three years to coincide with projected litigation recoveries.  As shown on Exhibit 3 hereto, even in a low case scenario, the Liquidating Trust is projected to have sufficient funds to make all contemplated payments on account of Priority Tax Claims.  A schedule of Priority Tax Claim accruals and projected the projected payments thereon is attached as Exhibit 4 hereto.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct.

3    Executed this 26th day of August, 2015, at __Irvine_____, California.

4                                                    _____

5                                                          J. Michael Issa

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2444931.4                                    5

# EXHIBIT 1

## Mega RV Corporation

**Liquidation Analysis as of July 31, 2015**

| | Book Value | Recovery (%) | | Recovery ($) | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **Assets** | | | | | |
| Cash | | | | | |
| Cash on Hand | 1,684,048 | | | 1,684,048 | 1,684,048 |
| Inventory | 745,783 | 50.0% | 72.5% | 372,892 | 540,693 |
| Contracts-in-Transit (CIT) | 689,556 | 50.0% | 60.0% | 344,778 | 413,734 |
| Equipment | 15,000 | 100.0% | 100.0% | 15,000 | 15,000 |
| Contingent CDF Payment | 250,000 | 100.0% | 100.0% | 250,000 | 250,000 |
| Proceeds from Roadtrek Litigation [1] | 5,400,000 | 40.0% | 60.0% | 2,160,000 | 3,240,000 |
| Recovery from Preference Actions | 300,000 | 66.0% | 100.0% | 198,000 | 300,000 |
| **Total Assets at Liquidation Value** | **9,084,387** | | | **5,024,718** | **6,443,474** |
| | | | | | |
| **Less:** | | | | | |
| Current Chapter 11 Professional Fees | (618,985) | | | (618,985) | (618,985) |
| Additional Chapter 11 Professional Fees through Effective Date | (150,000) | | | (150,000) | (150,000) |
| Plan Administrative Expenses | (600,000) | | | (600,000) | (600,000) |
| Administrative Rent [2] | (636,000) | | | (636,000) | (636,000) |
| **Less:** | | | | | |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | | | (337,219) | (337,219) |
| **Less:** | | | | | |
| Priority Tax Claims | (2,014,208) | | | (2,014,208) | (2,014,208) |
| | | | | | |
| **Proceeds Available for Non-Priority Unsecured Claims** | | | | **668,305** | **2,087,062** |
| | | | | | |
| **Less:** | | | | | |
| Unsecured Creditors (excluding subordinated claims) | (19,395,237) | | | (668,305) | (2,087,062) |
| | | | | | |
| **Proceeds Available for Subordinated Claims** | | | | **-** | **-** |
| | | | | | |
| **Less:** | | | | | |
| Class 5 - Subordinated Claims | (8,892,952) | | | - | - |
| | | | | | |
| **Net Proceeds Available** | | | | **-** | **-** |

**Claims and Class Recovery**

| | | | | | |
|---|---|---|---|---|---|
| Administrative Claims | | | | 100% | 100% |
| Priority Tax Claims | | | | 100% | 100% |
| Unsecured Creditors (excluding subordinated claims) | | | | 3% | 11% |
| Subordinated Claims | | | | 0% | 0% |

[1]    Estimated recovery net of litigation counsel's contingency fee.
[2]    Administrative Rent estimated based on reverve amounts of $571,000 and $65,000 for Westminster and Colton landlords respectively.

# EXHIBIT 2

**Mega RV Corporation**

**Chapter 11 Plan Flow of Funds (3-Year) - Higher Estimate Case Recovery**

| *PLAN FUND SOURCES* | Effective Date 9/15/2015 | FISCAL YEARS ENDED | | | |
|---|---|---|---|---|---|
| | | 9/15/2016 | 9/15/2017 | 9/15/2018 | TOTAL |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 2,224,741 | | 0 | 0 | 2,224,741 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 83,137 | 330,597 | 0 | 0 | 413,734 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | 0 | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 3,240,000 | 0 | 3,240,000 |
| Recovery from Preference Actions | 0 | 300,000 | 0 | 0 | 300,000 |
| **GROSS PLAN FUNDS** | **2,322,878** | **880,597** | **3,240,000** | **0** | **6,443,474** |
| | | | | | |
| **Beginning Balance** | **0** | **580,673** | **468,114** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,322,878 | 880,597 | 3,240,000 | 0 | 6,443,474 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (768,985) | 0 | 0 | 0 | (768,985) |
| Admin Claims - Rent | (636,000) | 0 | 0 | 0 | (636,000) |
| Plan Administrative Expenses | 0 | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (1,871,805) | 0 | (1,871,805) |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **580,673** | **468,114** | **843,155** | **(0)** | **(0)** |

[1]    Estimated higher recovery scenario.

# EXHIBIT 3

## Mega RV Corporation

**Chapter 11 Plan Flow of Funds (3-Year) - Lower Estimate Case Recovery**

| PLAN FUND SOURCES | Effective Date 9/15/2015 | FISCAL YEARS ENDED | | | |
|---|---|---|---|---|---|
| | | 9/15/2016 | 9/15/2017 | 9/15/2018 | TOTAL |
| *Near-Term Sources* | | | | | |
| Cash at Effective Date | 2,056,940 | | 0 | 0 | 2,056,940 |
| Inventory | 0 | 0 | 0 | 0 | 0 |
| Contracts-in-Transit (CIT) | 69,281 | 275,497 | 0 | 0 | 344,778 |
| Equipment | 15,000 | 0 | 0 | 0 | 15,000 |
| Contingent CDF Payment | | 250,000 | 0 | 0 | 250,000 |
| *Long-Term Sources* | | | | | |
| Proceeds from Roadtrek Litigation [1] | 0 | 0 | 2,160,000 | 0 | 2,160,000 |
| Recovery from Preference Actions | 0 | 198,000 | 0 | 0 | 198,000 |
| **GROSS PLAN FUNDS** | **2,141,220** | **723,497** | **2,160,000** | **0** | **5,024,718** |
| | | | | | |
| **Beginning Balance** | **0** | **399,015** | **129,358** | **843,155** | **0** |
| **Plus:** | | | | | |
| Gross Plan Funds | 2,141,220 | 723,497 | 2,160,000 | 0 | 5,024,718 |
| **Less:** | | | | | |
| Admin Claims - Professional Fees | (768,985) | 0 | 0 | 0 | (768,985) |
| Admin Claims - Rent | (636,000) | | | | (636,000) |
| Plan Administrative Expenses | | (250,000) | (250,000) | (100,000) | (600,000) |
| Priority Tax Claims | 0 | (743,155) | (743,155) | (743,155) | (2,229,465) |
| Class 2(a) & 2(b) - Priority Non-Tax Claims | (337,219) | 0 | 0 | 0 | (337,219) |
| Unsecured Creditors (excluding subordinated claims) | 0 | 0 | (453,048) | 0 | (453,048) |
| Class 5 - Subordinated Claims | 0 | 0 | 0 | 0 | 0 |
| **Ending Balance** | **399,015** | **129,358** | **843,155** | **(0)** | **(0)** |

[1]    Estimated lower recovery scenario.

# EXHIBIT 4

## Mega RV Corporation

**Priority Tax Claim Accruals**

| | Rate | Effective | 9/15/2016 | 9/15/2017 | 9/15/2018 | TOTAL |
|---|---|---|---|---|---|---|
| **EDD** | 6.00% | | | | | |
| Beginning Balance | | 371,675 | 371,675 | 254,928 | 131,177 | 371,675 |
| Interest | | | 22,300 | 15,296 | 7,871 | 45,467 |
| Payments | | | (139,047) | (139,047) | (139,047) | (417,142) |
| Ending Balance | | 371,675 | 254,928 | 131,177 | 0 | 0 |
| | | | | | | |
| **Internal Revenue Service** | 3.43% | | | | | |
| Beginning Balance | | 588,000 | 588,000 | 398,572 | 202,646 | 588,000 |
| Interest | | | 20,168 | 13,671 | 6,951 | 40,790 |
| Payments | | | (209,597) | (209,597) | (209,597) | (628,790) |
| Ending Balance | | 588,000 | 398,572 | 202,646 | (0) | - |
| | | | | | | |
| **State Board of Equalization** | 6.00% | | | | | |
| Beginning Balance | | 974,287 | 974,287 | 668,254 | 343,859 | 974,287 |
| Interest | | | 58,457 | 40,095 | 20,632 | 119,184 |
| Payments | | | (364,490) | (364,490) | (364,490) | (1,093,471) |
| Ending Balance | | 974,287 | 668,254 | 343,859 | 0 | 0 |
| | | | | | | |
| **City of Riverside** | 6.00% | | | | | |
| Beginning Balance | | - | - | - | - | - |
| Interest | | | | | | - |
| Payments | | | 0 | 0 | 0 | - |
| Ending Balance | | - | - | - | - | - |
| | | | | | | |
| **Arizona Attorney General** | 6.00% | | | | | |
| Beginning Balance | | 77,996 | 77,996 | 53,497 | 27,527 | 77,996 |
| Interest | | | 4,680 | 3,210 | 1,652 | 9,541 |
| Payments | | | (29,179) | (29,179) | (29,179) | (87,537) |
| Ending Balance | | 77,996 | 53,497 | 27,527 | 0 | 0 |
| | | | | | | |
| **Franchise Tax Board** | 6.00% | | | | | |
| Beginning Balance | | 822 | 822 | 564 | 290 | 822 |
| Interest | | | 49 | 34 | 17 | 101 |
| Payments | | | (308) | (308) | (308) | (923) |
| Ending Balance | | 822 | 564 | 290 | 0 | 0 |
| | | | | | | |
| **County of Orange** | 6.00% | | | | | |
| Beginning Balance | | 267 | 267 | 183 | 94 | 267 |
| Interest | | | 16 | 11 | 6 | 33 |
| Payments | | | (100) | (100) | (100) | (299) |
| Ending Balance | | 267 | 183 | 94 | 0 | - |
| | | | | | | |
| **County of San Bernardino** | 6.00% | | | | | |
| Beginning Balance | | 1,162 | 1,162 | 797 | 410 | 1,162 |
| Interest | | | 70 | 48 | 25 | 142 |
| Payments | | | (435) | (435) | (435) | (1,304) |
| Ending Balance | | 1,162 | 797 | 410 | 0 | 0 |
| | | | | | | |
| **Total Priority Tax Payments** | | - | (743,155) | (743,155) | (743,155) | (2,229,465) |

GlassRatner Advisory & Capital Group, LLC

## DECLARATION OF JOHN A. BELCHER

I, John A. Belcher, declare as follows:

1.      I am personally familiar with the following facts and if called upon to testify as a witness thereto, I could and would competently do so.

2.      I am the litigation counsel for the Debtor in the Roadtrek action currently pending before the California Court of Appeal.  I am also the Debtor's counsel in the pending Federal Action between Debtor and Roadtrek.  I have also been retained by the Debtor in the bankruptcy case as special counsel to handle the Roadtrek matters.

3.      I make this Declaration in support of the attached memorandum (the "Memorandum") of the Plan Proponents in support of confirmation of the *Second Amended Joint Chapter 11 Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Debtor Dated August 4, 2015* (the "Plan").  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum or the Plan, as applicable.

4.      The Roadtrek Litigation is described in Section VI.M.1 of the Disclosure Statement, and as discussed, the Plan Proponents estimate that the recovery from the Roadtrek Litigation, net of fees, will range from $2,160,000 to $3,240,000.  This estimate is based on an expert report prepared in conjunction with the litigation between the Debtor and Mike Thompson RV, which arose from the same set of facts as the Roadtrek Litigation.

5.      In particular, Mega RV was an exclusive dealer for the motorhomes manufactured by Roadtrek.  Mega RV's exclusive territory covered essentially all of greater Los Angeles area.  Roadtrek, however, purported to terminate its exclusive franchise with Mega RV, and the Debtor alleges that Roadtrek did not provide proper statutory and contractual notice for the termination.   After the purported termination, Roadtrek also purported to grant an exclusive franchise to Mega RV's competitor, Mike Thompson, which operated within Mega RV's exclusive territory.

6.      Mega RV filed suit against Mike Thompson, alleging, among other things, interference with the Roadtrek franchise agreement and interference with prospective economic advantage.  This suit is styled *Mega RV v. Mike Thompson*, Los Angeles Superior Court Case No.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

16118-00002/2444931.4

BC470674 (the "Mike Thompson Action"). The Mike Thompson Action was based on the allegation that the Debtor was harmed because Mike Thompson induced Roadtrek to breach the exclusive franchise agreement. Separate actions were commenced against Roadtrek.

7.       The Debtor's damages expert, Edward Stockton, was deposed in the Mike Thompson Action. I was present at the deposition. Mr. Stockton estimated the Debtor's range of recovery by calculating the injury caused by the loss of the exclusive franchise agreement. In other words, the Debtor's expert concluded that the damages caused by Mike Thompson are essentially the same as the damages caused by Roadtrek.

8.       Notably, Mr. Stockton was deposed by Roadtrek's counsel, who was also representing Mike Thompson. Indeed, Roadtrek paid for Mike Thompson's defense under an indemnity agreement. The attorney representing Mike Thompson at the deposition was Louis Chronowski of Dykema Gossett LLP, who also was and still is counsel for Roadtrek.

9.       As discussed in the Disclosure Statement, Roadtrek vigorously disputes the Debtor's estimated range of recovery in the Roadtrek Litigation and asserts that it is entitled to affirmative recovery from the Debtor on certain claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August, 2015, at Pasadena, California.



_____
John A. Belcher

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1900 Avenue of the Stars, 21st Floor, Los Angeles, CA 90067-4590

A true and correct copy of the foregoing document entitled (*specify*): **MEMORANDUM OF PLAN PROPONENTS IN SUPPORT OF "SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND DEBTOR DATED AUGUST 4, 2015"; DECLARATIONS OF J. MICHAEL ISSA AND JOHN BELCHER** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 26, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL:**
On (*date*) August 26, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Mega RV Corp., a
California Corporation
c/o GlassRatner
Attn: Mike Issa
19800 MacArthur Blvd.,
Suite 820
Irvine, CA 92612

☐Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 26, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

NORCO OVERNIGHT DELIVERY
The Honorable Mark Wallace
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

VIA EMAIL
Winnebago: Scott Folkers -- sfolkers@winnebagoind.com
and jshenson@shensonlawgroup.com
Forest River: John Humphrey -- jhumphrey@taftlaw.com
Bank of the West: Mark Blackman --
mblackman@alpertbarr.com
Wayne R Terry - GE Commercial Distribution Finance
Corp. - wterry@hemar-rousso.com

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 26, 2015 | Julie King | /s/ Julie King |
|---|---|---|
| Date | Printed Name | Signature |

16118-00002/2444931.4

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Marc Andrews sandra.g.mcmasters@wellsfargo.com
- James C Bastian jbastian@shbllp.com
- James C Behrens jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com
- Alex L Benedict bkinfo.ablaw@gmail.com, alexbenedict2000@yahoo.com
- Michelle M Bertolino , dgeorge@fwwlaw.com
- Mark S Blackman MBlackman@AlpertBarr.Com
- J Scott Bovitz bovitz@bovitz-spitzer.com
- Keith Butler kbutler@fgppr.com
- Frank Cadigan frank.cadigan@usdoj.gov
- Ryan S Carrigan rscarriganecf@gmail.com, rscarriganlaw@gmail.com
- Louis S Chronowski lchronowski@dykema.com
- Donald H Cram dhc@severson.com, jc@severson.com
- Brian L Davidoff bdavidoff@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Rennee R Dehesa rdehesa@rstlegal.com, alopez@rstlegal.com
- Andrew S Elliott ase@severson.com, pag@severson.com;jc@severson.com
- Lauren N Gans lgans@shensonlawgroup.com
- Duane M Geck dmg@severson.com, pag@severson.com
- Janel M Glynn janel.glynn@gknet.com, rachel.milazzo@gknet.com
- Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Richard H Golubow rgolubow@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Gregory K Jones GJones@dykema.com, CPerez@dykema.com
- John H Kim jkim@cookseylaw.com
- Andy Kong Kong.Andy@ArentFox.com
- Andrew B Levin alevin@winthropcouchot.com, bayrelevin@hotmail.com;pj@winthropcouchot.com;mconour@winthropcouchot.com
- Elizabeth A Lossing elizabeth.lossing@usdoj.gov
- Marc S Mazer mazer@bwmlaw.com, elizabeth@bwmlaw.com
- David W. Meadows david@davidwmeadowslaw.com
- Joel S. Miliband jmiliband@brownrudnick.com
- Craig Millet cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Christopher Minier becky@ringstadlaw.com
- Nicholas E Mitchell nmitchell@lfcu.com
- Scott Montgomery smontgomery@abbeylaw.com, ldabbs@abbeylaw.com
- Gerard W O'Brien gerardwobrien@gmail.com, missjanperalta@gmail.com
- Barry L O'Connor udlawBK@aol.com
- Aram Ordubegian ordubegian.aram@arentfox.com
- R G Pagter gibson@ppilawyers.com, ecf@ppilawyers.com
- Courtney E Pozmantier cpozmantier@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- Holly Roark holly@roarklawoffices.com, G2978@notify.cincompass.com
- Yuval M Rogson yuval@rogsonlaw.com, chris@rogsonfirm.com
- Gregory M Salvato gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com
- Allan D Sarver ADSarver@aol.com
- Kenneth Schnur schnur@bwmlaw.com, elizabeth@bwmlaw.com
- Summer Shaw hanlaw@aol.com
- Jonathan Shenson jshenson@shensonlawgroup.com
- Arash Shirdel ashirdel@pacificpremierlaw.com, ECF@pacificpremierlaw.com
- Ramesh Singh claims@recoverycorp.com
- Arjun Sivakumar asivakumar@brownrudnick.com
- Wayne R Terry wterry@hemar-rousso.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- Danielle K Wakefield danielle@wakefieldlawfirm.com
- Sam X J Wu wuefile@yahoo.com
- Sam S Yebri syebri@mylawllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**
16118-00002/2444931.4